**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **DREWES FARM PARTNERSHIP** | : | |
| 3119 SR 235 | : | **Case No._____** |
| Custar, Ohio 43511, | : | |
| | : | **Judge_____** |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| **CITY OF TOLEDO, OHIO** | : | |
| c/o Dale R. Emch, Law Director | : | |
| One Government Center, Suite 2250 | : | |
| Toledo, Ohio 43604, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

COMES NOW Plaintiff Drewes Farms Partnership ("Drewes Farms") by and through its undersigned counsel, and hereby files the following Complaint against Defendant the City of Toledo, Ohio (the "City of Toledo" or the "City"):

## INTRODUCTION

1.     The City of Toledo has amended its Charter to add the "Lake Erie Bill of Rights" ("LEBOR").

2.     LEBOR is unconstitutional and unlawful.  Its unlawful nature has been publicly recognized by members of the Lucas County Board of Elections, members of the Toledo City Council, and legal experts.  Courts have routinely invalidated similar governmental overreaches across the country, including many backed by some of the same groups behind LEBOR.  Despite this, a member of the Toledo City Council and proponents of LEBOR have publicly stated that LEBOR was enacted to send a message.

1

3.      Rather than persuading a majority of federal and state legislators—or even executive branch officials—to reform existing federal and state environmental laws, the City of Toledo arbitrarily placed the entire burden on business entities throughout northern Ohio.  But the City of Toledo's "message" has very real and significant consequences for farmers and other businesses throughout northern Ohio.

4.      This unconstitutional and unlawful action by the City of Toledo has put the Drewes Farms' 5th-generation family farm at risk.  The ability to properly fertilize its fields is crucial to the success of Drewes Farms' farming operations.  Drewes Farms' fields are fertilized pursuant to Ohio law, best practices, scientific recommendations, and Drewes Farms has been recognized as a leader in implementing new methods to both reduce the amount of fertilizer used and to reduce runoff from its fields.

5.      Despite all of this, LEBOR exposes Drewes Farms to massive liability if Drewes Farms continues to fertilize its fields because it can never guarantee that all runoff will be prevented from entering the Lake Erie watershed.  If Drewes Farms cannot fertilize its fields, it will be unable to survive economically.  Drewes Farms soon must begin fertilizing its fields in March or April for this growing season.

6.      LEBOR causes real and concrete harms on Drewes Farms by violating the United States Constitution, including but not limited to:

    a.  Depriving Drewes Farms of its fundamental right to freedom of speech and to petition the courts under the First Amendment;

    b.  Violating Drewes Farms' right to equal protection by targeting it for liability based solely on the fact that it operates as a partnership business entity;

      c.   Violating the Fifth Amendment protection against vague laws by exposing Drewes Farms to strict criminal liability and massive damages and fines under a standardless Charter Amendment; and

      d.   Depriving Drewes Farms of its rights without due process.

7.     Beyond the constitutional violations, LEBOR exceeds Toledo's limited authority to pass legislation and intrudes on powers entrusted to the state and federal governments by meddling with international relations, invalidating state and federal permits, invalidating state law, altering the rights of state-sanctioned corporations, and creating new causes of action.

8.     The health of the Lake Erie watershed is integral to the success of the farms within its boundaries.  Indeed, farmers within the Lake Erie watershed have as great an interest as any to protect and preserve their environment as their livelihood depends on the health of the water and soil.  But any problems with the health of the Lake Erie watershed must be addressed lawfully and without trampling the constitutional rights of family farmers like Drewes Farms.

9.     Accordingly, Drewes Farms is entitled to a preliminary and permanent injunction prohibiting the enforcement of LEBOR and declaratory relief that LEBOR is void and unenforceable, as well as its costs and expenses, including attorneys' fees.

## **PARTIES**

10.     Plaintiff Drewes Farms Partnership is an Ohio general partnership organized pursuant to Ohio Revised Code Chapter 1776.  Drewes Farms' principal place of business is in Wood County, Ohio.

11.     Defendant the City of Toledo, Ohio is a chartered municipal corporation and body politic operating under the laws of the State of Ohio and is situated within Lucas County, Ohio.

## JURISDICTION AND VENUE

12.     This Complaint asserts claims arising under the Constitution and laws of the United States.  Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

13.     This Complaint also seeks redress pursuant to 42 U.S.C. § 1983 for the deprivation, under color of state law, of Plaintiff's constitutional rights.  This Court therefore has subject matter jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (a)(4).

14.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims are so related to the claims over which this Court has original jurisdiction that such claims form part of the same case or controversy.

15.     Plaintiff also seeks equitable relief and a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

16.     Venue is proper in this Court because Defendant City of Toledo is located in the Northern District of Ohio and the events and omissions giving rise to the claims in this Complaint occurred in this District.

## FACTUAL BACKGROUND
### Drewes Farms

17.     Drewes Farms is family owned and operated by husband and wife, Mark and Melody Drewes, and their son, Tyler Drewes.  The Drewes family has been farming in Ohio for five generations.

18.     Drewes Farms farms land throughout Wood, Hancock, Putnam, and Henry Counties (the "Farm Property").  The Farm Property is wholly located within the Lake Erie watershed.

19.     Drewes Farms owns some of the Farm Property and also has entered into numerous leases with landowners of the remaining Farm Property (the "Leases").  Highlighting the

4

importance of proper fertilization levels of farmland, some of the Leases require that Drewes Farms maintain the current fertilization levels of the land.

20.     Drewes Farms employs Mark, Melody, and Tyler Drewes as well as three other full-time employees.  Drewes Farms also employs several part-time employees.

21.     On the Farm Property, Drewes Farms grows corn, soybeans, wheat, and alfalfa. Drewes Farms harvests and markets these crops for sale.

22.     Drewes Farms has also entered into numerous production contracts (the "Contracts"), where Drewes Farms agrees to sell a certain amount of a certain crop at a specified future date.  Drewes Farms entered into these agreements based on what it can produce utilizing its normal fertilization levels and practices.

23.     As with all crop farming, the proper fertilization of the Farm Property is an essential part of Drewes Farms' operations and the success of its harvest every year.

24.     The Farm Property is fertilized with manure and/or commercial fertilizers.  Both manure and commercial fertilizers contain phosphorus, a crucial and necessary nutrient in growing crops like those grown on the Farm Property.  However, phosphorous has been identified by some as negatively affecting the Lake Erie watershed.

25.     Both types of fertilizer are applied on the Farm Property pursuant to legal requirements, industry best practices, and scientific recommendations, with the goals of both minimizing the amount of fertilization applied and the amount of fertilizer-related runoff from the Farm Property.  These practices include, but are not limited to:

      a.   not applying fertilizer or manure on frozen ground or snow-covered ground.

     b.  utilizing the Ohio Nutrient Management Record Keeper ("ONMRK"), a computerized recordkeeping system, to identify the proper weather conditions to apply fertilizer and to minimize any runoff.

     c.  taking a soil sample from every 2.5 acres of farmland at least once every three years to determine nutrient levels.  The nutrient levels are used to determine the appropriate amount of fertilizer—if any—that should be used on each acre of the Farm Property pursuant to the Tri-State Fertilizer Recommendations released by Michigan State Univeristy, the Ohio State University, and Purdue University.

26.    Manure is applied to the Farm Property by a Wood County dairy farm, under the guidance of Drewes Farms.

27.    Drewes Farms applies commercial fertilizer, when needed, on the Farm Property. Drewes Farms has implemented processes to minimize the amount of fertilizer applied.  The amount of fertilizer used is based on scientific formulas derived from soil samples and the Tri-State Fertilizer Recommendations.  Drewes Farms inputs the formula results into a fertilizer applicator, which then electronically regulates the application of fertilizer across the property based on the data and formulas through Variable Rate Technology.  Drewes Farms also has invested in an applicator that allows it to apply fertilizer to a growing corn crop instead of doing preseason fertilizer application.

28.    In furtherance of Drewes Farms' farming operations, Mark and Tyler Drewes both obtained Fertilizer Applicator Certificates from the Ohio Department of Agriculture.  To obtain the Fertilizer Applicator Certificates, Mark and Tyler Drewes each attended a training class and paid a fee.  Their Fertilizer Applicator Certificates remain valid for three years.  Both Mark and Tyler currently hold valid Fertilizer Applicator Certificates.

29.     In furtherance of Drewes Farms' farming operations, Drewes Farms also applies necessary crop-protectant chemicals pursuant to legal requirements and best practices that is also essential to a successful harvest.

30.     Drewes Farms has been proactive in utilizing modern science and investing in techniques to limit runoff from its farms.

31.     Drewes Farms has installed filter strips along creeks and ditches to prevent runoff into waterways.

32.     Drewes Farms uses cover crops during the offseason to further prevent runoff.

33.     Drewes Farms has installed over 35 water control structures—which cost over $1,000 per structure—to control the flow of water out of field drainage tiles.

34.     Drewes Farms is also participating in an edge-of-field study being conducted by the Ohio State University and the United States Department of Agriculture.  This program tracks phosphorous and nitrate runoff and develops and measures different strategies to reduce runoff.

35.     Altogether, Drewes Farms has invested thousands upon thousands of dollars in nutrient conservation machinery, equipment, and techniques.

36.     The Ohio Department of Agriculture has recognized the efforts of Drewes Farms and certified Drewes Farms under its Ohio Agricultural Stewardship Verification Program.

## The Lake Erie Bill of Rights

37.     On August 6, 2018, the Toledo City Council received a petition proposing LEBOR, an amendment to the Toledo City Charter.

38.     On December 4, 2018, the Toledo City Council passed Ordinance 497-18, which declared that the clerk of council had received sufficient petition signatures to submit LEBOR to the voters and certified the measure to the board of elections for the February 26, 2019, special

election ballot.  A true and accurate copy of Ordinance 497-18, as provided by the City of Toledo in response to a public records request, is attached hereto as Exhibit A.

39.    The relevant portions of the Lake Erie Bill of Rights that appeared on the ballot reads as follows:

**LAKE ERIE BILL OF RIGHTS**

**ESTABLISHING A BILL OF RIGHTS FOR LAKE ERIE, WHICH PROHIBITS ACTIVITIES AND PROJECTS THAT WOULD VIOLATE THE BILL OF RIGHTS**

*We the people of the City of Toledo* declare that Lake Erie and the Lake Erie watershed comprise an ecosystem upon which millions of people and countless species depend for health, drinking water and survival.  We further declare that this ecosystem, which has suffered for more than a century under continuous assault and ruin due to industrialization, is in imminent danger of irreversible devastation due to continued abuse by people and corporations enabled by reckless government policies, permitting and licensing of activities that unremittingly create cumulative harm, and lack of protective intervention.  Continued abuse consisting of direct dumping of industrial wastes, runoff of noxious substances from large scale agricultural practices, including factory hog and chicken farms, combined with the effects of global climate change, constitute an immediate emergency.

*We the people of the City of Toledo* find that this emergency requires shifting public governance from policies that urge voluntary action, or that merely regulate the amount of harm allowed by law over a given period of time, to adopting laws which prohibit activities that violate fundamental rights which, to date, have gone unprotected by government and suffered the indifference of state-chartered for-profit corporations.

*We the people of the City of Toledo* find that laws ostensibly enacted to protect us, and to foster our health, prosperity, and fundamental rights do neither; and that the very air, land, and water – on which our lives and happiness depend – are threatened.  Thus it has become necessary that we reclaim, reaffirm, and assert our inherent and inalienable rights, and to extend legal rights to our natural environment in order to ensure that the natural world, along with our values, our interest, and our rights, are no longer subordinated to the accumulation of surplus wealth and unaccountable political power.

*We the people of the City of Toledo* affirm Article 1, Section 1, of the Ohio State Constitution, which states: "All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending

life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."

*We the people of the City of Toledo* affirm Article 1, Section 2, of the Ohio State Constitution, which states: "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly."

*And since all power of governance is inherent in the people*, we, the people of the City of Toledo, declare and enact this Lake Erie Bill of Rights, which establishes irrevocable rights for the Lake Erie Ecosystem to exist, flourish and naturally evolve, a right to a healthy environment for the residents of Toledo, and which elevates the rights of the community and its natural environment over power claimed by certain corporations.

## Section 1 – Statements of Law – A Community Bill of Rights

(a) *Rights of the Lake Erie Ecosystem.* Lake Erie, and the Lake Erie watershed, possess the right to exist, flourish, and naturally evolve.  The Lake Erie Ecosystem shall include all natural water features, communities of organisms, soil as well as terrestrial and aquatic sub ecosystems that are part of Lake Erie and its watershed.

(b) *Right to a Clean and Healthy Environment.* The people of the City of Toledo possess the right to a clean and healthy environment, which shall include the right to a clean and healthy Lake Erie and Lake Erie ecosystem.

(c) *Right of Local Community Self-Government.* The people of the City of Toledo possess both a collective and individual right to self-government in their local community, a right to a system of government that embodies that right, and the right to a system of government that protects and secures their human, civil, and collective rights.

(d) *Rights as Self-Executing.* All rights secured by this law are inherent, fundamental, and unalienable, and shall be self-executing and enforceable against both private and public actors.  Further implementing legislation shall not be required for the City of Toledo, the residents of the City, or the ecosystems and natural communities protected by this law, to enforce all of the provisions of this law.

## Section 2 – Statements of Law – Prohibitions Necessary to Secure the Bill of Rights

(a) It shall be unlawful for any corporation or government to violate the rights recognized and secured by this law. "Corporation" shall include any business entity.

(b) No permit, license, privilege, charter, or other authorization issued to a corporation, by any state or federal entity, that would violate the prohibitions of this law or any rights secured by this law, shall be deemed valid within the City of Toledo.

## Section 3 – Enforcement

(a) Any corporation or government that violates any provision of this law shall be guilty of an offense and, upon conviction thereof, shall be sentenced to pay the maximum fine allowable under State law for that violation.  Each day or portion thereof, and violation of each section of this law, shall count as a separate violation.

(b) The City of Toledo, or any resident of the City, may enforce the rights and prohibitions of this law through an action brought in the Lucas County Court of Common Pleas, General Division.  In such an action, the City of Toledo or the resident shall be entitled to recover all costs of litigation, including, without limitation, witness and attorney fees.

(c) Governments and corporations engaged in activities that violate the rights of the Lake Erie Ecosystem, in or from any jurisdiction, shall be strictly liable for all harms and rights violations resulting from those activities.

(d) The Lake Erie Ecosystem may enforce its rights and this law's prohibitions, through an action prosecuted either by the City of Toledo or a resident or residents of the City in the Lucas County Court of Common Pleas, General Division.  Such court action shall be brought in the name of the Lake Erie Ecosystem as the real party in interest.  Damages shall be measured by the cost of restoring the Lake Erie Ecosystem and its constituent parts at least as to their status.

## Section 4 – Enforcement – Corporate Powers

(a) Corporations that violate this law, or that seek to violate this law, shall not be deemed to be "persons" to the extent that such treatment would interfere with the rights or prohibitions enumerated by this law, nor shall they possess any other legal rights, powers, privileges, immunities, or duties that would interfere with the rights or prohibitions enumerated by this law, including the power to assert state or federal preemptive laws in an attempt to overturn this law, or the power that the people of the City of Toledo lack the authority to adopt this law.

10

(b) All laws adopted by the legislature of the State of Ohio, and rules adopted by any State agency, shall be the law of the City of Toledo only to the extent that they do not violate the rights or prohibitions of this law.

**Section 5 – Effective Date and Existing Permit Holders**
This law shall be effective immediately on the date of its enactment, at which point the law shall apply to any and all actions that would violate this law regardless of the date of any applicable local, state, or federal permit.

**Section 6 – Severability**
The provisions of this law are severable.  If any court decides that any section, clause, sentence, part, or provisions of this law is illegal, invalid, or unconstitutional, such decision shall not affect, impair, or invalidate any of the remaining sections, clauses, sentences, parts or provisions of the law.  This law would have been enacted without the invalid sections.

**Section 7 – Repealer**
All inconsistent provisions of prior laws adopted by the City of Toledo are hereby repealed, but only to the extent necessary to remedy the inconsistency.

40.    The Lucas County Board of Elections held a hearing on December 20, 2018, to consider a citizen protest to the inclusion of the measure on the ballot.

41.    After the hearing, the board members voted to deny the protest and place LEBOR on the ballot.  Two board members noted that LEBOR was "on its face unconstitutional and unenforceable" and "beyond the authority of the City of Toledo" but stated that they were nonetheless obligated to vote to place the measure on the ballot pursuant to State of Ohio election law as articulated in *State ex rel. Maxcy v. Saferin*, __ Ohio St.3d __, 2018-Ohio-4035, __ N.E.3d __.  *See State ex rel. Abernathy v. Lucas Cty. Bd. of Elections*, __ Ohio St.3d __, 2019-Ohio-201, __ N.E.3d __, ¶ 3.

42.    The Ohio Supreme Court heard an action for a writ of prohibition that sought to keep LEBOR off the special election ballot.

43.    The Ohio Supreme Court denied the writ on January 23, 2019, holding that, regardless of whether the measure was constitutional, once the City Council "passed the ordinance to place the LEBOR on the ballot in accordance with Article XVIII, Section 9 of the Ohio

Constitution, the board had no power to keep the proposed charter amendment off the ballot." *State ex rel. Abernathy v. Lucas Cty. Bd. of Elections*, __ Ohio St.3d __, 2019-Ohio-201, __ N.E.3d __.

44.     A Toledo City Council member was quoted in the New York Times on February 18, 2019, as saying that LEBOR "is probably unconstitutional" but that "coming from an activist background, it is important to send messages."

45.     On February 26, 2019, the special election was held.  The LEBOR measure passed.

### The Unconstitutional and Unlawful Impacts of LEBOR on Drewes Farms

46.     As a partnership formed pursuant to Ohio state law, Drewes Farms appears to be a business entity that would be a "Corporation" as defined by LEBOR.

47.     LEBOR exposes only "Corporations" and "Governments" to strict criminal liability for violating LEBOR, but not similarly situated individuals who may be engaged in the same actions or inactions.

48.     LEBOR purports to divest Corporations, such as Drewes Farms, of their constitutional right to petition the government for redress of grievances in that it strips corporations of (1) their status as "persons" under the law; (2) their power to assert that state or federal laws preempt LEBOR; (3) their power to assert that the City of Toledo lacks the authority to adopt LEBOR.

49.     LEBOR purports to target any conduct by a Corporation that impacts the "irrevocable rights for the Lake Erie Ecosystem to exist, flourish and naturally evolve[.]"  The terms "exist," "flourish," and "naturally evolve" are undefined in LEBOR.  LEBOR provides no standards for determining what activity would violate these undefined rights.

12

50.     In its preamble, LEBOR further purports to target "large scale agricultural practices" for "runoff of noxious substances."  The terms "large scale agricultural practices," "runoff," and "noxious substances" are undefined in LEBOR.

51.     Corn, soybean, wheat, and/or alfalfa farming, such as that conducted by Drewes Farms, requires the use of some form of fertilizer, such as manure and/or commercial fertilizers. Even with state-of-the-art technology and best management practices to reduce and minimize runoff, such as those utilized by Drewes Farms, the use of fertilizer unavoidably results in some runoff from agricultural fields.  For example, weather can impact runoff, so if a weather forecast is wrong and unexpected weather occurs, it can cause runoff despite a farmers' best efforts.

52.     As a direct and proximate cause of the City's adoption of LEBOR and its creation of vague, undefined criminal offenses, farmers such as Drewes Farms may face unconstitutional and unlawful enforcement proceedings, resulting in the imposition of fines and penalties set forth in LEBOR, based on even *nominal* or *potential* runoff from farming activities.

53.     The potential liability to a family farm under LEBOR is enormous, and a LEBOR action could bankrupt any farm, as LEBOR imposes the maximum daily fine allowable under state law *per day*, purports to impose damages equal to restoring the Lake Erie Ecosystem without providing any standards for determining those damages, and would require a defendant to pay all costs of LEBOR litigation.

54.     Thus, this vague and standardless charter amendment exposes farmers to massive liability for the use of any fertilizer or chemicals, even when the application of fertilizer or chemicals would otherwise be lawful under state and federal regulation, comports with best practices, and meets scientifically recommended levels.  It essentially outlaws, or at minimum, has a chilling effect on, farming under the protections of a business entity—such as a partnership,

limited liability company, or corporation—none of which can survive or compete economically if they cannot properly apply fertilizer and other chemicals on their crops.

55.    LEBOR purports to invalidate any "permit, license, privilege, charter, or other authorization issued to a corporation, by any state or federal entity, that would violate the prohibitions of this law or any rights secured by this law. . . ." and invalidates all laws adopted by the Ohio legislature and rules adopted by any State agency to the extent they contradict LEBOR. As a result, Drewes Farms' Fertilizer Applicator Certificate issued by the Ohio Department of Agriculture may be deemed invalid to the extent it is found to violate LEBOR.  Further, by invalidating state and federal permits, state laws, and rules by state agencies, LEBOR could deprive Drewes Farms of its sources of manure and fertilizer to the extent such permits, laws, and rules had permitted the sale and provision of manure and fertilizer to Drewes Farms.

56.    If forced to halt fertilization of the Farm Property because of LEBOR, LEBOR may place Drewes Farms in breach of Leases and Contracts and deprive it of the benefits of its Leases and Contracts that are dependent upon ongoing fertilization.

57.    Plaintiff has suffered and will continue to suffer injury and damages if LEBOR is deemed valid and enforceable.

58.    An injunction and declaration is needed quickly in this case.  Depending on the weather, planting season for wheat will likely begin in late March and for the rest of the crops in April.  Fertilization will need to begin at that time in order to successfully operate Drewes Farms' farming operations and to meet Drewes Farms' various Contracts.

14

## COUNT I
### 42 U.S.C. § 1983 – Violation of the First and Fourteenth Amendments

59.     The First Amendment of the United States Constitution provides that no law shall abridge "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I.

60.     LEBOR purports to divest corporations of their constitutional right to petition the government for redress of grievances in that it strips corporations of (1) their status as "persons" under the law; (2) their power to assert that state or federal laws preempt LEBOR; and (3) their power to assert that the City of Toledo lacks the authority to adopt LEBOR.

61.     Thus, LEBOR suppresses Plaintiff's right to make a complaint to, or seek the assistance of, the government for redress of grievances related to LEBOR.

62.     Accordingly, LEBOR violates the First and Fourteenth Amendment of the United States Constitution and this Court must enjoin its application and enforcement.

## COUNT II
### 42 U.S.C. § 1983 – Violation of Equal Protection

63.     The Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Plaintiff is a "person" within the meaning of the Fourteenth Amendment and is entitled to the protections afforded thereunder, including that of equal protection of the laws.

64.     LEBOR denies to Plaintiff equal protection because it arbitrarily restricts the activities of corporate persons while imposing no similar restriction on similar activities undertaken by natural persons or unincorporated associations.  *See Frost v. Corp. Comm'n of Oklahoma¸* 278 U.S. 515 (1929).

65.     Specifically, Section 2(a) of LEBOR provides that "[i]t shall be unlawful for any corporation or government to violate the rights recognized and secured by this law," which

includes, inter alia, the stated rights of "Lake Erie, and the Lake Erie watershed . . . to exist, flourish, and naturally evolve" and of "[t]he people of the City of Toledo . . . to a clean and healthy environment."

66.    Imposing this type of liability on corporations alone, to the exclusion of natural persons or unincorporated associations, bears no rational relationship to any legitimate governmental interest.  Instead, LEBOR's exclusive restriction on the activities of business entities is unreasonable, arbitrary, and invidious.

67.    LEBOR is facially invalid because it denies to Plaintiff the equal protection of the laws and this Court must enjoin its application and enforcement.

### COUNT III
### 42 U.S.C. § 1983 – Violation of the Fifth and Fourteenth Amendments

68.    The Fifth Amendment prohibits the enforcement of criminal laws so vague that they fail to give ordinary people fair notice of the conduct they seek to punish, or so standardless that they invite arbitrary enforcement.

69.    Section 3(a) of LEBOR creates a strict liability criminal offense: "[a]ny corporation or government that violates any provision of this law shall be guilty of an offense . . . ."

70.    Under LEBOR, such criminal offenses include the violation of any "rights recognized and secured by this law."  Section 2(a).

71.    LEBOR is unconstitutionally vague in that it does not specify what conduct would interfere with the purported right of Lake Erie and the Lake Erie watershed to "exist, flourish, and naturally evolve."

72.    LEBOR is unconstitutionally vague in that it does not specify what conduct would interfere with the purported right of the people of the City of Toledo to "a clean and healthy

16

environment, which shall include the right to a clean and healthy Lake Erie and Lake Erie ecosystem."

73.     LEBOR is unconstitutionally vague in that it does not specify what conduct would interfere with the purported right of the people of the City of Toledo to "possess both a collective and individual right to self-government in their local community, a right to a system of government that embodies that right, and the right to a system of government that protects and secures their human, civil, and collective rights."

74.     LEBOR is unconstitutionally vague in that it is directed at "corporation[s] or government[s]," but does not provide a definition of "corporation" that would give ordinary people fair notice of whom it seeks to punish.

75.     LEBOR is unconstitutionally vague in that it directs criminal sanction not only at corporations that violate the law, but also to those that "seek to violate" LEBOR, but does not specify what conduct would constitute such an offense.

76.     LEBOR is unconstitutionally vague in that it does not provide ordinary people fair notice of the quantum of criminal sanction they may face for violating the law.

77.     Because there are no standards differentiating between criminal and non-criminal behavior, LEBOR invites unconstitutional arbitrary enforcement.

78.     Accordingly, LEBOR is an unconstitutionally vague criminal statute and this Court must enjoin its application and enforcement.

**COUNT IV**
**42 U.S.C. § 1983 – Procedural Due Process**

79.     The Due Process Clause of the United States Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V, amend. XIV, § 1.

80.     LEBOR purports to apply to all actions "that would violate this law regardless of the date of any applicable local, state, or federal permit."

81.     LEBOR deprives Drewes Farms of their liberty interest to seek redress in court by asserting that state or federal laws preempt LEBOR and challenging that the City of Toledo lacks the authority to adopt LEBOR.

82.     LEBOR provides no process or procedure through which Plaintiff and similarly-situated persons could challenge the provision that purports to render invalid applicable local, state, and federal permits or the deprivation of its liberty interests.

83.     LEBOR violates the Fifth and Fourteenth Amendments to the United States Constitution and this Court must enjoin its application and enforcement.

## COUNT V
### 42 U.S.C. § 1983 – Substantive Due Process

84.     The doctrine of Substantive Due Process under the Fifth and Fourteenth Amendment of the United States Constitution prohibits the government from, among other things, abrogating a person's constitutional rights. U.S. Const. amend. V, amend. XIV.

85.     LEBOR denies "corporations," such as Drewes Farms, their legal and long-standing Constitutional rights, including, but not limited to, their rights under the First, the Fifth, and the Fourteenth Amendments.

86.     The City of Toledo's conduct in abrogating Drewes Farms' interest in its Fertilizer Applicator Certificate is deliberate, arbitrary, irrational, exceeds the limits of governmental authority, amounts to an abuse of official power, and shocks the conscience.

87.     Accordingly, in enacting LEBOR, the City of Toledo and its officials have denied Plaintiff substantive due process under the Fifth and Fourteenth Amendments of the United States Constitution and this Court must enjoin its application and enforcement.

18

## COUNT VI
### U.S.C. §§ 2201 and 2202 - Declaratory Judgment

88.     As set forth above, in Counts I through V of this Complaint, the City, through LEBOR, is causing Drewes Farms irreparable harm by violating several of Drewes Farms' constitutional rights.

89.     As set forth below, LEBOR is also illegal because it is preempted by and/or violates several other Federal and State laws.

90.     Declaratory judgment is necessary here because Drewes Farms has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to its rights.

**Federal Law Preemption - Foreign Affairs Preemption**

91.     The United States Constitution entrusts foreign affairs and international relations "solely to the Federal Government."  *Zschernig v. Miller*, 389 U.S. 429, 436 (1968).

92.     Moreover, the Federal Government has entered into treaties and agreements with Canada regarding Lake Erie.

93.     The northern shore of Lake Erie is in Ontario, Canada, and the Lake is situated over the border between the United States and Canada.

94.     LEBOR purports to govern "all natural water features, communities of organisms, soil as well as terrestrial and aquatic sub ecosystems that are part of Lake Erie and its watershed."

95.     LEBOR also provides that governments and corporations engaged in activities that violate the rights of the Lake Erie Ecosystem, in or from any jurisdiction, shall be strictly liable for all harms and rights violations resulting from those activities.

96.     The government of Canada and the Province of Ontario and the corporate citizens residing therein are therefore subject to strict criminal liability under LEBOR.

97.    LEBOR, a municipal regulation, therefore has a direct impact upon United States foreign policy, including foreign trade and immigration, and adversely affects the power of the United States Federal Government to administer foreign relations.

98.    LEBOR cannot be enforced without impairing the federal superintendence of the field.

99.    LEBOR is therefore preempted because it takes a position on a matter of foreign policy with no serious claim to be addressing a traditional municipal responsibility.

### State Law Preemption -- Ohio Constitution, Article XVIII § 3

100.    Article XVIII § 3 of the Ohio Constitution provides a municipality may exercise local self-government provided its regulations are "not in conflict with general laws."

101.    LEBOR expressly purports to nullify any State of Ohio laws and regulations in conflict with its provisions.  See Section 4(b).  It does not except general laws from this provision.

102.    LEBOR also expressly purports to nullify state permits.

103.    Accordingly, Section 4(b) violates the Ohio Constitution, and must be declared void.

### State Law Preemption -- O.R.C. 1506.10

104.    LEBOR purports to regulate the "Lake Erie Ecosystem," including "all natural water features, communities of organisms, soil as well as terrestrial and aquatic sub ecosystems that are part of Lake Erie and its watershed."  Section 1(a).

105.    LEBOR purports to invalidate certain permits, licenses, charters, and other authorizations granted to corporations by the State of Ohio that touch and concern the "Lake Erie Ecosystem."  Section 2(b).

106.    LEBOR purports make criminal the violation of any provision therein.  Section 3(a).

107.     LEBOR is therefore an exercise of the police power, rather than of local self-government.

108.     Section 1506.10 of the Ohio Revised Code provides that "the waters of Lake Erie consisting of the territory within the boundaries of the state . . . together with the soil beneath and their contents . . .  do now belong and have always, since the organization of the state of Ohio, belonged to the state as proprietor in trust for the people of the state . . . ."

109.     This provision centralizes regulatory authority over the Ohio portions of Lake Erie and its watershed in the state government and vests the Ohio Department of Natural Resources with authority over "all matters pertaining to the care, protection, and enforcement" of Ohio's interests in Lake Erie.

110.     O.R.C. 1506.10 is therefore a general law that is part of a statewide, comprehensive legislative enactment, applies to all parts of the state and operates uniformly throughout the state, sets forth regulations, and prescribes a rule of conduct upon citizens generally.

111.     LEBOR is in direct conflict with O.R.C. 1506.10 because the State statute expressly preempts municipal regulation of Lake Erie.

112.     LEBOR is further in direct conflict with O.R.C. 1506.10 because it restricts activity that a state-licensing scheme permits.

113.     LEBOR is further in direct conflict with O.R.C. 1506.10 because it makes criminal activities that the state regulatory structure permits.

114.     These conflicts render LEBOR beyond the scope of municipal power and invalid and unenforceable under the Ohio Constitution.  Ohio Const., Article XVIII §3.

### State Law Preemption -- Private Causes of Action

115.    Section 3(b) of LEBOR purports to create a private cause of action by endowing "any resident of the City [of Toledo]" the power to "enforce the rights and prohibitions of this law through an action brought in the Lucas County Court of Common Pleas, General Division."

116.    Those rights and prohibitions include the right of the "Lake Erie Ecosystem" to "exist, flourish, and naturally evolve," the right of the "people of the City of Toledo" to a "clean and healthy environment" which includes "the right to a clean and healthy Lake Erie and Lake Erie Ecosystem," and the right of the "people of the City of Toledo" to "self-government in their local community," "a system of government that embodies that right," and to "a system of government that protects and secures their human, civil, and collective rights." *See* Sections 1(a)-(c)

117.    LEBOR specifies penalties for the purported offenses of violating those rights.  See Sections 2(b), 3(a)-(d), 4(a).

118.    These provisions create new causes of action.

119.    Under Ohio law, municipalities are not authorized to create new causes of action. *State ex rel. Bolzenius v. Preisse*, 2018-Ohio-3708, ¶ 12.

120.    LEBOR is therefore beyond the scope of municipal power and invalid and unenforceable under the Ohio Constitution.  Ohio Const., Art. XVIII.03.

### State Law Preemption -- State Court Jurisdiction

121.    Under the Ohio Constitution, individuals or entities seeking redress in the common pleas courts must have standing to sue.  Ohio Const. Art IV, Sec. 4(B); *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 41 ("It is fundamental that a party commencing litigation must have standing to sue in order to present a justiciable controversy").

122.     Section 3(d) of LEBOR purports to endow the "Lake Erie Ecosystem" with the power to "enforce its rights and this law's prohibitions, through an action prosecuted either by the City of Toledo or a resident or residents of the City in the Lucas County Court of Common Pleas, General Division."

123.     By purporting to endow the "Lake Erie Ecosystem" with the power to sue in the Lucas County Court of Common Pleas, LEBOR attempts to grant the Lake Erie Ecosystem with statutory standing. *Wooster v. Enviro-Tank Clean, Inc.*, 9th Dist. No. 13CA0012, 2015-Ohio-1876, ¶ 12 ("'Statutory standing' in Ohio has been described as the statutory grant of authority to sue.").

124.     The Courts of Common Pleas in the State of Ohio are creatures of state law and the power to confer statutory standing to parties in Ohio State Courts is reserved to the Ohio Legislature.

125.     The conferral of standing on the Lake Erie Ecosystem is therefore invalid and must be declared void.

**State Law Preemption -- Corporate Law**

126.     LEBOR purports to diminish the rights of corporations that "violate . . . or seek to violate" the law.  Section 4(a).

127.     The Ohio Constitution reserves exclusive power to the General Assembly to promulgate legislation governing the formation, structure, and organization of corporations.  Ohio Const. Art. XII, § 2.

128.     The General Assembly has, in fact, promulgated such legislation.  *See*, *e.g.,* R.C. Chapter 1701 (General Corporation Law) and R.C. Chapter 1776 (Ohio Uniform Partnership Act).

129.     Accordingly, Section 4(a) violates the Ohio Constitution, is preempted by state statute, and is invalid.

23

**State Law Preemption -- Administrative Action**

130.    Under Ohio law, administrative actions are not subject to initiative.  *State ex rel. N. Main St. Coalition*, 106 Ohio St.3d 437, 2005-Ohio- 5009, 835 N.E.2d 1222 at ¶ 34.

131.    LEBOR affects, ignores, and invalidates permits and licenses issued through administrative actions by the State of Ohio, other states, and the United States Federal Government.

132.    Section 2(b) of LEBOR—which invalidates permits, licenses, privilege, charters, or other authorizations issued by any state or federal entities that would conflict with its provisions—is therefore invalid and must be declared void.

**Declaratory Relief**

133.    Plaintiffs are therefore entitled to a declaratory judgment stating that LEBOR is void and unenforceable in its entirety, and to specific declarations that:

    a.  LEBOR is void because it violates the First and Fourteenth Amendments to the United States Constitution.

    b.  LEBOR is void because it violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

    c.  LEBOR is void because it is an unconstitutionally vague criminal law in violation of the Fifth and Fourteenth Amendments.

    d.  LEBOR is void because it violates procedural due process under the Fourteenth Amendment to the Constitution.

    e.  LEBOR is void because it violates substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution.

     f.   LEBOR is void because it is preempted by United States Constitution insofar as the Constitution entrusts the power to regulate foreign affairs and international relations solely to the Federal Government.

     g.   Section 4(b) of LEBOR is void because it is preempted by Article XVIII § 3 of the Ohio Constitution and Ohio statute.

     h.   LEBOR is void because it is preempted by O.R.C. 1506.10.

     i.   LEBOR is void because it violates the Ohio Constitution by creating a new cause of action.

     j.   LEBOR is void because it violates the Ohio Constitution by conferring statutory standing to parties in Ohio State Courts.

     k.   LEBOR is void because it violates Article XIII of the Ohio Constitution.

     l.   LEBOR is void because it unlawfully subjects administrative action to initiative.

134.   Any of the violations alleged in this Count must result in a declaration that LEBOR is void and unenforceable in its entirety.  The presence of a severability clause does not change this outcome.  Defendant would not have enacted LEBOR without each of the invalid provisions and the valid and invalid provisions of LEBOR are so intertwined that it would be rendered meaningless if the offending provisions were severed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

135.   A preliminary and permanent injunction prohibiting Defendant and its agents and/or employees from taking any action to enforce or otherwise implement LEBOR.

136.   Entry of judgment declaring that LEBOR is void and unenforceable in its entirety and specific declarations that:

a. LEBOR is void because it violates the First and Fourteenth Amendments to the United States Constitution.

b. LEBOR is void because it violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

c. LEBOR is void because it is an unconstitutionally vague criminal law in violation of the Fifth and Fourteenth Amendments.

d. LEBOR is void because it violates procedural due process under the Fourteenth Amendment to the Constitution.

e. LEBOR is void because it violates substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution.

f. LEBOR is void because it is preempted by United States Constitution insofar as the Constitution entrusts the power to regulate foreign affairs and international relations solely to the Federal Government

g. Section 4(b) of LEBOR is void because it is preempted by Article XVIII § 3 of the Ohio Constitution.

h. LEBOR is void because it is preempted by O.R.C. 1506.10.

i. LEBOR is void because it violates the Ohio Constitution by creating a new cause of action.

j. LEBOR is void because it violates the Ohio Constitution by conferring statutory standing to parties in Ohio State Courts.

k. LEBOR is void because it violates Article XIII of the Ohio Constitution.

l. LEBOR is void because it unlawfully subjects administrative action to initiative.

137.    Awarding Plaintiffs all fees and costs incurred in this action, including all attorneys' fees and expert fees pursuant to 42 U.S.C. § 1988(b) and (c);

138.    Granting other such relief as the Court may deem just and proper.

Dated this 27th day of February, 2019.

Respectfully submitted,

VORYS, SATER, SEYMOUR AND PEASE LLP

/s/ Thomas H. Fusonie
Kimberly W. Herlihy (0068668)
Thomas H. Fusonie (0074201), *Trial Attorney*
Daniel E. Shuey (0085398)
Christopher L. Ingram (0086325)
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-8261
Fax: (614) 719-4886
kwherlihy@vorys.com
thfusonie@vorys.com
deshuey@vorys.com
clingram@vorys.com

*Counsel for Plaintiffs Drewes Farm Partnership*

27

## <u>VERIFICATION</u>

I, Mark Drewes, verify under penalty of perjury that I have read the foregoing Verified

Complaint and am familiar with the matters stated herein; and that the facts stated herein regarding

Drewes Farms and its operations are true and accurate.

Mark Drewes

Executed on 2/26/19

28