<u>**MEMORANDUM IN SUPPORT**</u>

**I.      <u>FACTUAL BACKGROUND</u>**

Drewes Farms expressly incorporates the factual allegations set forth in its Verified Complaint, filed in this action on February 27, 2019. Drewes Farms is a partnership formed under the laws of the State of Ohio and is family owned and operated by husband and wife, Mark and Melody Drewes, and their son, Tyler Drewes. Compl., at ¶¶ 10, 17. The Drewes family has been farming in Ohio for five generations. *Id.* at ¶ 17.

Drewes Farms rents and farms land within the Lake Erie watershed. *Id.* at 18. It grows corn, soybeans, wheat, and alfalfa, which it harvests and markets for sale. *Id.* at 21. Drewes Farms has also entered into numerous production contracts through which it agrees to sell crops at a specified future date. *Id.* at ¶ 22. The amounts specified in the contracts are based on expected production using normal fertilization levels and practices. *Id.* Drewes Farms has entered into numerous leases with landowners of the land it farms, several of which require that Drewes Farms maintain current land fertilization levels. *Id.* at ¶ 19.

Proper fertilization is an essential part of Drewes Farms' operations. *Id.* at ¶ 23. Both manure and commercial fertilizer are applied to the farm property as needed. *Id.* at ¶ 24. In furtherance of these operations, both Mark and Tyler Drewes have obtained Fertilizer Applicator Certificates from the Ohio Department of Agriculture. *Id.* at ¶ 28. The fertilizer is applied pursuant to state legal requirements, industry best practices, and scientific recommendations, with the goal of minimizing both the amount of fertilizer applied and the amount of fertilizer-related runoff. *Id*. at ¶ 25. Drewes Farms is a leader in conservation efforts and has personally invested hundreds of thousands of dollars in developing techniques to minimize runoff. *Id.* at ¶¶ 25–36. Despite all of these efforts, some amount of runoff is unavoidable—runoff that has been identified by some as negatively affecting the Lake Erie watershed. *Id.* at ¶¶ 24, 51.

1

On February 26, 2019, Toledo enacted LEBOR as an amendment to its charter.  Compl., ¶ 45, Exh. A (a copy of the language submitted to the voters by City Council is attached hereto as Exh. A).[2]  As set forth in more detail in the Complaint and below, this sweeping municipal law has put the Drewes Farms' fifth-generation family farm at risk.  *Id.* at ¶¶ 4, 46–58. LEBOR unconstitutionally and unlawfully exposes farmers to massive liability for the use of *any* fertilizer or chemicals, even when such use comports with best practices, meets scientifically-recommended levels, and would otherwise be lawful under state and federal regulation.  *Id.* at ¶ 54.  If LEBOR forces Drewes Farms to halt fertilization, not only will the harvest fail, but also Drewes Farms will be in breach of its leases and production contracts.  *Id.* at ¶¶ 5, 56. Depending on the weather, planting season for wheat will likely begin in late March and for the rest of the crops in April—the farm will need to begin fertilizing at that time in order to have a successful harvest.  *Id.* at ¶ 58. Injunctive and declaratory relief is therefore needed quickly.

## II.    ARGUMENT OF LAW

### A.    Applicable Standard.

Injunctive relief is within the sound discretion of the court.  *Va. Ry. Co. v. Sys. Fed'n, R.E.D.*, 300 U.S. 515, 551 (1937).  In determining whether to grant injunctive relief, the Sixth Circuit requires the Court to weigh four factors:  (1) whether the movant has a "likelihood of success on the merits;" (2) whether the movant "could suffer irreparable harm without the injunction;" (3) whether the issuance of the injunction "will cause substantial harm to others;" and (4) "the impact of the injunction on the public interest."  *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996) (citation omitted).  The propriety of injunctive relief is determined

---

[2] According to the Lucas County Board of Elections, fewer than 10,000 votes were cast in favor of this sweeping law that vests in the citizens of Toledo control over the entirety of Lake Erie, its watershed, and its ecosystem.  That number constitutes about 5% of registered voters in Toledo and an infinitesimal percentage of the people across multiple jurisdictions now purportedly bound by LEBOR. *See* http://www.livevoterturnout.com/Lucas/LiveResults/en/Index_4.html.

by balancing these factors, not by requiring demonstration of each. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1994). The balance of each factor favors Drewes Farms; a preliminary injunction against the City is therefore warranted.

      **B.    Drewes Farms Will Likely Succeed on the Merits.**

      Drewes Farms need only demonstrate that it will likely succeed on one of its claims for this Court to issue a preliminary injunction. Drewes Farms asserts two types of claims: those under 42 U.S.C. § 1983 and a claim for declaratory judgment under 28 U.S.C. §§ 2201 and 2202. Regarding its § 1983 claims, Drewes Farms will likely succeed in proving that the City of Toledo acted "under the color of state law," and "deprive[d] the plaintiff of rights secured by federal law.'" *League of Women Voters v. Brunner*, 548 F.3d 463, 475 (6th Cir. 2008). Regarding the declaratory judgment claim, Drewes Farms will likely succeed in demonstrating that LEBOR is unconstitutional and unlawful and should be declared void and unenforceable.

      **1.    Drewes Farms will likely succeed on its § 1983 First Amendment Claim.**

      The Supreme Court has been clear: "First Amendment protection extends to corporations." *Citizens United v. FEC*, 558 U.S. 310, 342 (2010) (citing *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765 (1978). The Fourteenth Amendment safeguards a corporation's fundamental First Amendment rights because corporations are "persons" within the meaning of the Fourteenth Amendment. *See Bellotti*, 435 U.S. 765 at 780, n.15. LEBOR strips these rights away. It removes a corporation's status as a "person," which would remove it from the ambit of the Fourteenth Amendment's protections, and then it explicitly denies corporations the ability to make claims in court related to whether LEBOR is preempted by state or federal law or whether "the people of the City of Toledo lack the authority to adopt this law." (Section 4(a)).

      The City of Toledo cannot nullify the Constitution. *Haywood v. Drown*, 556 U.S. 729, 729 (2009). Yet LEBOR attempts to do so in several ways. First, it proscribes the ability to

make specific, otherwise-valid claims in court, which is an absolute and unjustified prohibition on speech.  The Supreme Court regularly rejects such blanket restrictions of the First Amendment.  *See, e.g., Bd. of Airport Comm'rs v. Jews for Jesus*, 482 U.S. 569 (1987).

Second, LEBOR is a viewpoint restriction: it prohibits opposition to the ordinance by criminalizing the assertion that the law is preempted by federal or state law or goes beyond the authority of the City.  Section 4(a).  The Supreme Court has described such discrimination as a "blatant" violation of the First Amendment and an "egregious form of content discrimination" that is presumptively unconstitutional: "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995) (invalidating university policy against funding student newspapers with religious content) (citing *Perry Ed. Assn.* v. *Perry Local Educators' Ass'n.,* 460 U.S. 37, 46 (1983)).

Third, it violates the First Amendment's prohibition on laws that abridge the right to "petition the Government for a redress of grievances."  U.S. Const. Amend. I; *see also Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896-897 (1984) ("[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.").  Here, the right to challenge LEBOR is not merely abridged—it is abrogated wholesale.

Other courts have ruled that similar language in other jurisdictions violates the First Amendment.  In New Mexico, a court invalidated a similar ordinance depriving corporations of personhood and First Amendment rights.  *Swepi, Ltd. P'ship v. Mora Cty.*, 81 F. Supp. 3d 1075, 1187-88, 1212 (D.N.M. 2015).  In Washington, a court affirmed a decision keeping a similar initiative off of the ballot because "municipalities cannot strip constitutional rights from entities and cannot undo decisions of the United States Supreme Court."  *Spokane Entrep. Ctr. v.*

*Spokane Moves to Amend the Const.,* 369 P.3d 140, 146 (Wash. 2016).  And in Pennsylvania, a court described the argument that a corporation lacks the right to complain about the ordinance as "contrary to over one hundred years of Supreme Court precedent." *Pa. Gen. Energy Co., LLC v. Grant Twp.*, 139 F. Supp. 3d 706, 714 (W.D. Pa. 2015).

There are no legitimate applications of this provision; the law is therefore invalid on its face.  *See, e.g.*, *City of Chi. v. Morales*, 527 U.S. 41, 52 (1999) (noting that "the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep'" (quoting *Broadrick v. Okla.*, 413 U.S. 601, 612-15 (1973)).

**2.  Drewes Farms will likely succeed on its Equal Protection claim.**

The Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  In *Frost*, the Supreme Court observed that "a corporation is as much entitled to the equal protection of the laws as an individual" and that any law that attempts to classify between the two "'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.'" *Id.* at 522–23 (quoting *Gulf, Colo. & Santa Fe Ry.* v. *Ellis*, 165 U.S. 150, 155 (1897)).

An even more stringent analysis is required here.  When a state law "impinges upon a fundamental right explicitly or implicitly protected by the Constitution," like LEBOR does, it will be subject to "strict judicial scrutiny." *San Ant. Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973).  The Charter Amendment implicates two fundamental rights: freedom of speech, and the right to petition the government for redress of grievances.  *See, e.g.*, *Gitlow v. New York*, 268 U.S. 652, 666 (1925) (freedom of speech is a fundamental right); *United Mine Workers v. Ill.*

*State Bar Ass'n*, 389 U.S. 217, 222 (1967) (the right to petition the government is "among the most precious of the liberties safeguarded by the Bill of Rights").  The City must demonstrate that stripping corporations, but not individuals, of First Amendment rights is "precisely tailored to serve a compelling governmental interest." *Plyler v. Doe*, 457 U.S. 202, 217 (1982).

LEBOR cannot survive under either test because the law arbitrarily directs enforcement solely at corporations, despite the fact that corporations and individuals are similarly-situated for equal protection purposes.  *See Trihealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005).  The law's sweeping provisions cover an infinite amount of activities that are conducted by individuals, corporations, and governments alike, but only holds corporations and governments liable for those acts.  Although protecting Lake Erie may generally be a legitimate objective, by excluding individuals from its ambit, LEBOR pursues an arbitrary and irrational method of achieving that objective.  An individual dumping waste directly into Lake Erie could—indeed, certainly *would*—pose a greater risk to the health of the Lake Erie ecosystem than would, for example, *de minimis* fertilizer runoff from an incorporated farm 100 miles away from Toledo.  Imposing this type of liability on corporations and governments, but not on natural persons or unincorporated associations, bears no rational relationship to any legitimate governmental interest and certainly would not survive strict scrutiny.

### 3.  Drewes Farms will likely succeed on its § 1983 vagueness claim.

Under the void-for-vagueness doctrine, a criminal statute must "clearly define the conduct it proscribes." *Kolender v. Lawson*, 461 U.S. 352, 353 (1983).  Not only must a criminal statute give the ordinary citizen fair notice of the conduct it targets—including the quantum of punishment attached to conviction for the conduct—but also it must provide law enforcement sufficiently clear standards as avoid arbitrary and discriminatory enforcement.  *Johnson v.*

*United States*, 135 S. Ct. 2551, 2556 (2015).  The "vice" of vague criminal laws "is the treachery they conceal either in determining what persons are included or what acts are prohibited. Words which are vague and fluid . . . may be as much of a trap for the innocent as the ancient laws of Caligula." *United States v. Cardiff*, 344 U.S. 174, 176 (1952).

Multiple factors require this Court to review LEBOR under the strictest test for vagueness.  First, the enactment "reaches a substantial amount of constitutionally protected conduct." *Hoffman Est. v. Flipside*, 455 U.S. 489, 494 (1982).  Second, LEBOR is a criminal ordinance.  *See* Section 3(a) (any corporation violating LEBOR "shall be guilty of an offense" . . . "and, upon conviction thereof, shall be sentenced to pay the maximum fine").  Criminal ordinances are read under a strict vagueness test. *See Peoples Rights Org. v. City of Columbus*, 152 F.3d 522, 534 (6th Cir. 1998) (citing *Hoffman Est.*, 455 U.S. at 498-99).  Third, LEBOR imposes strict liability, rendering it "little more than a trap for those who act in good faith." *Id*.  Fourth, it vests enforcement discretion in every citizen of the City, thereby compounding the risk of arbitrary and discriminatory enforcement directed at "particular groups deemed to merit . . . displeasure." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170 (1972) (quoting *Thornhill v. Alabama*, 310 U.S. 88, 97-98 (1940)).

Every key provision of LEBOR is vague.  It criminalizes the "violation of any rights recognized and secured" by the law, including the right of "Lake Erie, and the Lake Erie watershed, possess the right to exist, flourish, and naturally evolve," the right of the people of the City of Toledo to "a clean and healthy environment," and the "collective and individual" right of Toledo citizens to "self-government in their local community, . . . a system of government that embodies that right, and . . . a system of government that protects and secures their human, civil, and collective rights."  Section 1(a)-(c).  It offers neither clarity as to what those rights mean in

practice nor standards to determine when those rights are violated. Further, LEBOR deprives ordinary people fair notice of targeted conduct because it: (1) is directed at "corporation[s] or government[s]," but does not provide a clear definition of "corporation"; (2) directs criminal sanction not only at corporations that violate LEBOR, but also at those that "seek to violate" the law; and (3) does not articulate the quantum of criminal sanction violators may face.

Laws, like LEBOR, that are impermissibly vague in all applications may be challenged on their face as violating due process. *See Hoffman Est.*, 455 U.S. at 497. For example, the Supreme Court invalidated on that basis an ordinance that made it a criminal offense for "three or more persons to assemble . . . on any of the sidewalks . . . and conduct themselves in a manner annoying to persons passing by. . . ." *Coates v. Cincinnati*, 402 U.S. 611 (1971). The Court concluded that the ordinance was vague because "'men [and women] of common intelligence must necessarily guess at its meaning.'" *Id.* at 614 (quoting *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926)). The Court similarly invalidated a statute that subjected to criminal penalty anyone who "treats contemptuously the flag of the United States. . . ." because it "had no core," based on the "absence of any ascertainable standard for inclusion and exclusion," and "the unfettered latitude thereby accorded law enforcement officials and triers of fact." *Smith v. Goguen*, 415 U.S. 566, 568-69, 578 (1974). LEBOR similarly has no ascertainable standards and leaves citizens guessing as to its meaning.

### 4. Drewes Farms will likely succeed on its other due process claims.

LEBOR violates Substantive Due Process by denying corporations, such as Drewes Farms, their rights under the First, the Fifth, and the Fourteenth Amendments of the United States Constitution. Further, the City, through LEBOR, deprives Drewes Farms of Procedural Due Process by depriving it of the Fertilizer Applicator Certificates and of its liberty interest in

petitioning courts without notice or opportunity to be heard. *See Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014).

### 5.  Drewes Farms will likely succeed on its request for declaratory judgment.

#### a.  LEBOR unlawfully impacts foreign affairs.

The United States Constitution entrusts foreign affairs and international relations "solely to the Federal Government." *Zschernig v. Miller*, 389 U.S. 429, 436 (1968).  When a local regulation directly impacts and adversely affects foreign affairs, it must give way to the federal policy. *Id.* at 440-41; *see also Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 45 (1st Cir. 1999) (invalidating a state law which restricted the ability of the state from purchasing goods or services from companies that did business with Burma).  LEBOR regulates all of Lake Erie, which includes parts of Canada and the U.S.-Canadian border, *see* LEBOR, Section 1(a), and imposes liability on any government or corporation "in or from any jurisdiction," *id.* at Section 3(c).  LEBOR therefore unavoidably impacts foreign trade, immigration policy, and impairs international obligations, such as the Boundary Waters Treaty of 1909, U.S.-Gr. Brit. (for Can.), Jan. 11, 1909, 36 Stat. 2448, and the Great Lakes Water Quality Agreement, U.S.-Can., Apr. 15, 1972, 23 U.S.T. 301, *codified at* 33 U.S.C.S. § 1268. "There is a threshold level of involvement in and impact on foreign affairs which the states may not exceed," *Natsios*, 181 F.3d at 52, and this municipal law crosses it.

#### b.  LEBOR is preempted by Article XVIII, § 3 of the Ohio Constitution.

Article XVIII, § 3 of the Ohio Constitution provides that a municipality may exercise local self-government provided its regulations are "not in conflict with general laws."  As a result, "a municipal ordinance must yield to a state statute if '(1) the ordinance is an exercise of the police power, rather than of local self-government, (2) the statute is a general law, and (3) the ordinance is in conflict with the statute.'" *City of Dayton v. State*, 2017-Ohio-6909, ¶ 13,

151 Ohio St. 3d 168, 171, 87 N.E.3d 176, 182 (quoting *Mendenhall v. Akron*, 117 Ohio St. 3d 33, 2008-Ohio-270, ¶ 17, 881 N.E.2d 25).  LEBOR expressly purports to nullify *any* State of Ohio laws and regulations in conflict with its provisions.  *See* Section 4(b).  It does not except general laws from this provision.   Accordingly, Section 4(b) violates the Ohio Constitution, and must be declared void.

LEBOR also expressly purports to nullify state authorizations.  Section 2 includes in its ambit authorizations from the State such as the Fertilizer Applicator Certificates issued by the Ohio Department of Agriculture.  Because it "restricts an activity which a state license permits," LEBOR "is in conflict with a general law of the state and violates Section 3, Article XVIII of the Ohio Constitution."  *See Ohio Ass'n of Private Detective Agencies v. City of N. Olmsted*, 1992-Ohio-65, 65 Ohio St. 3d 242, 245, 602 N.E.2d 1147, 1150.

### c.   LEBOR is preempted by Section 1506.10 of the Ohio Revised Code.

R.C. 1506.10 provides that "the waters of Lake Erie consisting of the territory within the boundaries of the state . . . together with the soil beneath and their contents . . .  do now belong and have always, since the organization of the state of Ohio, belonged to the state as proprietor in trust for the people of the state . . . " and vests the Ohio Department of Natural Resources with authority over "all matters pertaining to the care, protection, and enforcement" of Ohio's interests in Lake Erie. O.R.C. 1506.10.  R.C. 1506.10 is a general law because it holds the property in trust for all Ohioans, is a statewide and comprehensive legislative enactment that applies equally to all parts of the state alike, and it vests police authority in a statewide agency. *See City of Canton v. State*, 2002-Ohio-2005, ¶ 21, 95 Ohio St. 3d 149, 153, 766 N.E.2d 963, 968 (setting forth test for general laws); *see also Clermont Envtl. Reclam. Co. v. Wiederhold*, 2 Ohio St. 3d 44, 49, 442 N.E.2d 1278, 1282 (1982).

LEBOR conflicts with this statewide statutory scheme in three ways: first, it unlawfully declares that it preempts State law (*see Wiederhold*, 2 Ohio St. 3d 44); second, it restricts activity that the State licensing scheme permits (*see City of N. Olmsted*, 65 Ohio St. 3d 242); and third, it makes criminal activities that the state regulatory structure permits (*see Cincinnati v. Hoffman*, 31 Ohio St. 2d 163, 180, 285 N.E.2d 714, 725 (1972)).  These conflicts render LEBOR beyond the scope of municipal power and invalid and unenforceable under the Ohio Constitution.  Ohio Const., Art. XVIII, § 3.

### d.  Toledo is not authorized to create new causes of action.

LEBOR creates new causes of action and endows "any resident of the City [of Toledo]" the power to "enforce the rights and prohibitions of this law through an action brought in the Lucas County Court of Common Pleas, General Division."  *See* Sections 2(b), 3(a)-(d), 4(a). Under Ohio law, municipalities are not authorized to create new causes of action. *State ex rel. Bolzenius v. Preisse*, 2018-Ohio-3708, ¶ 12.  The Supreme Court of Ohio has previously rejected attempts by municipalities to endow private citizens with similar private-attorney-general-type authority on this very basis.  *Preisse*, at 13 (finding City of Columbus "clearly lacks the power to enact" an ordinance that authorized "any resident" to enforce a community bill of rights); *State ex rel. Flak v. Betras*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, ¶ 15 ("Just as a municipality may not create a felony, a municipality is not authorized to create new causes of action.") (distinguished on other grounds in *State ex rel. Maxcy v. Saferin*, 2018-Ohio-4035, ¶ 13).  LEBOR is therefore beyond the scope of municipal power and is invalid and unenforceable under the Ohio Constitution.  Ohio Const., Art. XVIII, § 3.

**e.  Toledo is not permitted to create statutory standing.**

Under the Ohio Constitution, individuals or entities seeking redress in the common pleas courts must have standing to sue.  Ohio Const. Art. IV, § 4(B); *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 41.  By purporting to endow the "Lake Erie Ecosystem" with the power to sue in the Lucas County Court of Common Pleas in Section 3(d), LEBOR attempts to grant the Lake Erie Ecosystem with statutory standing. *Wooster v. Enviro-Tank Clean, Inc.*, 9th Dist. No. 13CA0012, 2015-Ohio-1876, ¶ 12.  But the Courts of Common Pleas in the State of Ohio are creatures of state law and the power to confer statutory standing to parties in Ohio State Courts is reserved to the Ohio Legislature. Ohio Const. Art. IV., §§1, 18. The conferral of standing on the Lake Erie Ecosystem is therefore invalid under the Ohio Constitution.  Ohio Const., Art. XVIII, § 3

**f.  LEBOR is preempted by Article XIII, § 2 of the Ohio Constitution.**

LEBOR purports to diminish the "rights, powers, privileged, immunities, [and] duties" of corporations that "violate . . . or seek to violate" the law.  Section 4(a).  The Ohio Constitution reserves power exclusively to the General Assembly to promulgate legislation governing the formation, structure, and organization of corporations.  Ohio Const. Art. XIII, § 2; *Wheatley v. A. I. Root Co.*, 147 Ohio St. 127, 140, 69 N.E.2d 187, 194 (1946) (noting that the provision articulates a "specific grant of authority to alter or repeal corporation laws").  Moreover, the General Assembly has, in fact, promulgated such legislation. *See, e.g.*, R.C. Chapter 1701 (General Corporation Law) and R.C. Chapter 1776 (Ohio Uniform Partnership Act). Accordingly, Section 4(a) violates the Ohio Constitution and is invalid.

**g. LEBOR unlawfully denies privileges issued by administrative action.**

Section 2(b) of LEBOR affects, ignores, and invalidates "permit[s], license[s], privilege[s], charter[s] or other authorization[s]" issued through administrative actions by the State of Ohio, other states, and the United States Federal Government. Affected privileges include Drewes Farms' Fertilizer Application Certificates. But under Ohio law, administrative actions are not subject to initiative. *State ex rel. N. Main St. Coalition*, 106 Ohio St.3d 437, 2005-Ohio- 5009, 835 N.E.2d 1222 at ¶ 34. Section 2(b) is therefore invalid and void.

**6. LEBOR must be enjoined in its entirety.**

LEBOR must be enjoined in its entirety. The presence of a severability clause in LEBOR does not change this conclusion. Ohio law will govern the question of severability. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988). Under Ohio law, before severing a portion of a law, a court "must first find that such a severance will not fundamentally disrupt the statutory scheme of which the unconstitutional provision is a part." *State ex rel. Maurer v. Sheward*, 1994-Ohio-496, 71 Ohio St. 3d 513, 523, 644 N.E.2d 369, 377 (Ohio 1994). Three questions guide courts in ascertaining whether such a disruption has occurred:

> (1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?

*State v. Hochhausler*, 76 Ohio St. 3d 455, 1996 Ohio 374, 668 N.E.2d 457, 466-67 (Ohio 1996).

Legal and constitutional infirmities permeate Sections 1 through 5—every operative section—of LEBOR. It must therefore be invalidated *in toto*. To strike ***any one of these sections*** would gut LEBOR's enforcement mechanism and purpose, thereby fundamentally disrupting the statutory scheme. *See 10280 Northfield Rd., LLC v. Vill. of Northfield*, No. 97-

13

4207, 1999 U.S. App. LEXIS 3662, at *17 (6th Cir. Mar. 4, 1999). And when these legal infirmities are considered in *conjunction*, nothing operative remains other than Section 7, the repealer clause. When faced with a similar ordinance, the United States District Court for the District of New Mexico made the same conclusion: the purpose of the law could not be accomplished without the invalid portions, so the entire ordinance must be invalidated. *Swepi, Ltd. P'ship v. Mora Cty.*, 81 F. Supp. 3d 1075, 1203 (D.N.M. 2015).

### C. Drewes Farms Will Be Irreparably Harmed Absent an Injunction.

Drewes Farms has been and will continue to be irreparably harmed by LEBOR. The loss of one's constitutional rights, "for even minimal periods of time, unquestionably constitutes irreparable injury[.]" *See e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Sixth Circuit has thus concluded that when a party successfully shows a substantial likelihood of succeeding on the merits of a constitutional claim, a finding of irreparable harm is "mandate[d]." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001).

### D. The Issuance of an Injunction Will Not Cause Harm to Others.

The requested Preliminary Injunction will not harm others. Drewes Farms will continue to farm its fields pursuant to state and federal requirements, best practices, and scientific recommendations. *See* Compl., ¶¶ 25–34. Moreover, an injunction will ensure that the livelihood of family farms and other businesses affected by this law in the Lake Erie region, as well as that of the local economies that depend on them, will not be unduly disrupted.

### E. The Issuance of an Injunction Would Serve the Public Interest.

The requested injunction would serve the public interest. As a matter of law, "the public interest is promoted by the robust enforcement of constitutional rights." *Am. Freedom Def. Initiative v. Suburban 15 Mobility for Reg. Transp.*, 698 F.3d 885, 896 (6th Cir. 2012); *G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("[I]t is always in

14

the public interest to prevent violation of a party's constitutional rights.").  Further, the public interest is served by honoring State of Ohio law that holds the Ohio portions of Lake Erie in trust for *all* Ohio citizens, not just those residing in a single municipality.  *See* R.C. 1506.10.

## III.    CONCLUSION

Drewes Farms requests that the Court issue a preliminary injunction enjoining the City and its agents and/or employees from taking any action to enforce or implement LEBOR.

Respectfully submitted,

VORYS, SATER, SEYMOUR AND PEASE LLP

s/ *Thomas H. Fusonie*
Kimberly W. Herlihy (0068668)
Thomas H. Fusonie (0074201), *Trial Attorney*
Daniel E. Shuey (0085398)
Christopher L. Ingram (0086325)
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-8261
Fax: (614) 719-4886
kwherlihy@vorys.com
thfusonie@vorys.com
deshuey@vorys.com
clingram@vorys.com

*Counsel for Plaintiff Drewes Farms Partnership*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2019, a copy of the foregoing Motion for Preliminary Injunction was served by overnight U.S. mail on the following:

The City of Toledo, Ohio
c/o Dale R. Emch, Law Director
One Government Center, Suite 2250
Toledo, Ohio 43604

s/*Thomas H. Fusonie*_____
Thomas H. Fusonie (0074201)
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-8261
Fax: (614) 719-4886
thfusonie@vorys.com
