**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **Drewes Farms Partnership**, | No. 3:19-cv-00434-JZ |
| Plaintiff, | The Honorable Jack Zouhary |
| v. | |
| **City of Toledo**, | **Intervenor-Defendants' Memorandum in Support of Motion to Intervene** |
| Defendant, and | |
| **Lake Erie Ecosystem** and **Toledoans for Safe Water, Inc.**, | *Oral Argument requested* |
| Intervenor-Defendants. | |

**INTERVENOR-DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

March 18, 2019

## Table of Contents

Table of Authorities.................................................................................................3

Statement of the Issues...........................................................................................5

Summary of the Argument.......................................................................................5

Background.............................................................................................................5

    I.   The Toledo water crisis and attempted solutions..............................................5

    II. Toledoans for Safe Water's efforts to affect rights-based protections for Lake Erie and the city's water supply..........................................................................................7

    III. The task of restoring the Lake Erie Ecosystem is in the political branches of government 9

    IV. The City of Toledo's position on the Lake Erie Bill of Rights.........................................10

    V. The Lake Erie Ecosystem as a legal entity.......................................................11

Argument...............................................................................................................15

    I. Legal Standards for Intervention.....................................................................15

    II. Lake Erie and Toledoans for Safe Water Should Be Allowed To Intervene As of Right...16

      A. The Motion To Intervene Is Timely................................................................16

      B. Lake Erie and TSW Have Significant Legal Interests In The Case...............................17

      C. The Intervenors Will Experience Impairment Of Their Interests If Excluded...............21

      D. The City of Toledo Cannot Adequately Represent Intervenors' Interests......................22

    III. Alternatively, Lake Erie and TSW Should Be Allowed To Permissively Intervene..........24

Conclusion..............................................................................................................24

Certificate of Memorandum Length.............................................................................26

Certificate of Service................................................................................................27

1

## Table of Authorities

### Cases

*Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011)............................................................15

*Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987).............................................................18

*Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007)..............15

*Don't Waste Washington Legal Defense Foundation v. Washington*,
461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983)...................................................................19

*Envtl. Law & Policy Ctr. v. U.S. E.P.A.*, Order on Oct. 3, 2018, (N.D. Ohio, No. 3:17-cv-1514)...9

*Forest Conservation Council v. United States Forest Serv.*,
66 F.3d 1489, 1498-99 (9th Cir.1995)...........................................................................................21

*Grutter v. Bollinger*, 188 F.3d 394, 397-98, 400-01 (6th Cir. 1999)................................15, 18, 211

*Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995).....................................19

*Jansen v. City of Cincinnati*, 904 F.2d 336, 343 (6th Cir. 1990).....................................................22

*Johnson v. City of Memphis*, 73 F.Appx. 123, 131 (6th Cir. 2003).................................................15

*Makah Indian Tribe v. United States*,
501 U.S. 1250, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991).............................................................19

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245-48 (6th Cir. 1997)....................18-19, 21

*Nuesse v. Camp*, 385 F.2d 694, 703, 128 U.S.App.D.C. 172 (D.C. Cir. 1967).............................22

*Providence Baptist Church v. Hillandale Committee, Ltd.*, 425 F.3d 309, 317 (6th Cir. 2005)....18

*Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991).....................................................18, 20

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983)...........................................19

*State of Idaho v. Freeman*, 625 F.2d 886 (9th Cir. 1980)..............................................................19

*Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 582 (6th Cir. 1982)..................................................16

*Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000).....................................................15

*Trbovich v. UMWA*, 404 U.S. 528, 539, 92 S.Ct. 630, 636, 30 L.Ed.2d 686 (1972)....................21

*United States v. BASF-Inmont Corp.*,

No. 93-1807, 1995 WL 234648, at *2 (6th Cir. Apr. 18, 1995)....................................................16

*United States v. Detroit Int'l Bridge Co.*, 7 F.3d 497, 501 (6th Cir. 1993)....................................18

*United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005)..................................................15, 23

*United States v. Oregon*, 913 F.2d 576, 587 (9th Cir. 1990)..........................................................19

*United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001).....................................................16

*Washington State Building & Construction Trades v. Spellman*,                                              684
F.2d 627, 630 (9th Cir. 1982)   ........................................................................................................19

**Rules**

Federal Rule of Civil Procedure 24...............................................................................14-15, 23

**Statement of the Issues**

1. Have Lake Erie Ecosystem and Toledoans for Safe Water timely filed for intervention?

2. Do Lake Erie Ecosystem and Toledoans for Safe Water have interests at stake in this litigation?

3. Do existing parties adequately represent Lake Erie Ecosystem and Toledoans for Safe Water's interests?

4. Should the Court grant permissive intervention?

**Summary of the Argument**

Lake Erie Ecosystem has rights recognized by the Toledo City Charter, which are in jeopardy from this lawsuit. Toledoans for Safe Water, Inc., members organized and petitioned for the adoption of the Lake Erie Bill of Rights.

These two parties seek to intervene in this lawsuit between Drewes Farms Partnership and the City of Toledo, to defend the Lake Erie Bill of Rights. Their intervention is timely, and they have interests at stake that could be impaired by the resolution of this case. The City of Toledo has opposed the Lake Erie Bill of Rights and therefore will not adequately represent proposed intervenor-defendants' interests in this case.

The Court should grant intervention by right and permissive intervention.

**Background**

**I.      The Toledo water crisis and attempted solutions**

Nearly half a million people in northwestern Ohio awoke Saturday to a dire warning from Toledo city officials: don't drink water from the tap. Don't give it to pets. Don't boil or cook with it, and restaurants should remain closed until further notice.

The dangers posed by the tap were grim: nausea, numbness, dizziness, diarrhea and liver damage. "Seek medical attention if you feel you have been exposed," a city-issued notice said.

1    *Toledo's Water Crisis: 'This Is Not Over Yet'*, NBC News (Aug. 4, 2014).[1]

2    During the water crisis, Collin O'Mara from the National Wildlife Federation told NBC

3    News, "There is a systemic challenge that we face out here on the Great Lakes that is actually

4    much bigger than this one crisis. Unfortunately, this crisis could just be the tip of the iceberg

5    unless we begin to address it." *Id.* (reporting that "officials have not mandated any [commercial

6    fertilizer] restrictions, even though a state task force said that the amount of phosphorus from

7    treatment plants and fertilizers needs to be scaled back by 40 percent").

8    The following year, the states of Ohio and Michigan, along with the province of Ontario,

9    agreed to a 40% reduction in phosphorus loading into western Lake Erie by 2025. Western Basin

10   of Lake Erie Collaborative Agreement (June 13, 2015).

11   "Decades of monitoring have led to an inescapable conclusion: phosphorus runoff,

12   primarily from agricultural lands, is feeding explosive cyanobacterial growth in the warm,

13   shallow waters of the western basin." National Center for Water Quality Research, Heidelberg

14   U., website at http://lakeeriealgae.com/. "The Maumee watershed, which empties into the lake at

15   Toledo, is the lake's largest source of phosphorus loading." Kurt Knebusch, "New Study will

16   track ways to cut runoff from elevated phosphorus fields," Ohio St. News (Nov. 7, 2018).[2]

17   Soil science researchers have identified numerous practices that farmers can employ to

18   reduce phosphorus runoff. *E.g.*, Tracy Turner, "Updating Ohio's Phosphorus Risk Index Is

19   Generating Positive Initial Results," Ohio St. U. (Mar. 31, 2016).[3]

20   But over two years after the 2015 Collaborative Agreement, environmental advocates

---

1    Available at https://www.nbcnews.com/news/us-news/toledos-water-crisis-not-over-yet-n171751.

2    Available at https://news.osu.edu/new-study-will-track-ways-to-cut-runoff-from-elevated-phosphorus-fields/.

3    Available at https://cfaes.osu.edu/news/articles/updating-ohios-phosphorus-risk-index-is-generating-positive-initial-results.

said, "the states and provinces have failed to offer workable solutions necessary to reduce

phosphorus pollution and shrink the algal blooms." James F. McCarty, "Lake Erie algal bloom

cleanup falling short of 40 percent phosphorus reduction goal," The Plain Dealer (Oct. 10,

2017).[4] One environmental advocate "praised farmers in the Maumee River watershed who have

obtained certification, and those who are employing practices that reduce phosphorus runoff such

as planting cover crops, buffer zones and wetlands. But voluntary compliance isn't sufficient to

reach a significant reduction. . . . We need to say enough is enough, it's time to get this done.

Every year there's a bloom. We need to make changes in a bigger way." *Id.*

A 2017 report on policy recommendations to reduce runoff pollution noted the top two

recommendations for Ohio were to ban spreading manure on frozen or saturated ground, and to

require best management practices for small concentrated animal feeding operations (CAFOs).

Alliance for the Great Lakes, "Rescuing Lake Erie: An Assessment of Progress," Ohio Fact Sheet

(Oct. 10, 2017).[5]

Notably, these agricultural practices that need to be reformed are caused by industrial

livestock facilities, not grain and soy farmers like Drewes Farms. The problem is not farming

with best practices, but factory "farms" that are not voluntarily "complying" with optional

regulations. *See generally* "Follow the Manure: Factory Farms and the Lake Erie Algal Crisis,"

Sierra Club Michigan Chapter (Nov. 17, 2015).[6]

## II.  Toledoans for Safe Water's efforts to effect rights-based protections for Lake Erie and the city's water supply

Toledoans for Safe Water, Inc. ("TSW") came together as a grassroots citizen group in

---

4   Available at
    https://www.cleveland.com/metro/2017/10/lake_erie_algal_bloom_cleanup_1.html.
5   Available at https://greatlakes.org/2017/10/rescuing-lake-erie-assessment-progress/.
6   Available at https://www.sierraclub.org/michigan/follow-manure-factory-farms-and-lake-erie-algal-crisis.

1  2016, in response to the 2014 water crisis. (Miller Decl. ¶¶ 5-6.) Toledoans for Safe Water

2  members are Toledo residents. (Durback Decl. ¶ 1; Miller Decl. ¶ 1; Twitchell Decl. ¶ 1.)

3  Toledoans for Safe Water member Markie Miller has a masters degree in environmental science,

4  in large part motivated to find real solutions to restore lake Erie. (Miller Decl. ¶¶ 2-3.) Markie

5  Miller joined the nascent Toledoans for Safe Water in 2015 as the Lake Erie Bill of Rights that

6  the group was drafting "was something I felt could be an effective step." (Miller Decl. ¶ 4.) Brian

7  Twitchell, who has a bachelors degree in environmental science, joined TSW "because I believe

8  that collective action by citizens is the only way to make meaningful change in the current

9  political system." (Twitchell Decl. ¶ 3.)

10      Toledoans for Safe Water recognized the cyanobacteria concentration at the root of the

11  2014 water crisis as "caused by excessive phosphorus and nitrogen in the Lake Erie water

12  column principally as a result of excessive nutrient loading from large-scale commercial

13  agriculture." (Miller Decl. ¶¶ 5, 17.) "Large scale industrial agriculture and confined animal

14  feeding operations ("CAFOs") that create, store, and apply manure (often in liquid form) are

15  contributing to the problem in a major way." (Miller Decl. ¶ 17.) Twitchell identified municipal

16  sewer overflows and CAFOs as the likely principle causes of the cyanobacteria problem.

17  (Twitchell Decl. ¶ 6.)

18      TSW member John Michael Durback also focused on CAFOs: "To even begin to solve

19  the problems of contamination and decline of Lake Erie, the single largest pollution source,

20  livestock waste from concentrated animal feeding operations, must be eliminated. Requiring

21  farms to deconcentrate populations of livestock, or at minimum, build sewage treatment facilities

22  to handle the waste, is also necessary. In general, there needs to be a shift from the highly

23  unsustainable practices of huge industrial agricultural operations to the kind of farming done by

24  many small family and organic farms whose activities don't have an enormous detrimental

1   impact on the ecosystem." (Durback Decl. ¶ 5.)

2       "As a response, in 2016 [Toledoans for Safe Water] members drafted and proposed the

3   Lake Erie Bill of Rights, enumerating a range of rights for residents of the City of Toledo, such

4   as legislating a policy of 'rights of nature' and citizens' rights to a healthy environment. The

5   proposal also contains provisions to protect and enforce those rights." (Miller Decl. ¶ 6.)

6       Throughout 2017 and 2018, TSW members, including Bryan Twitchell, served as

7   members of the Committee of Petitioners for the LEBORCharter Amendment and they circulated

8   petitions to enact LEBOR into law in Toledo via initiative." (Miller Decl. ¶ 7.)

9       "On August 6, 2018, TSW turned in part-petitions bearing approximately 10,500

10  signatures to require placement of LEBOR on the next electoral ballot." (Miller Decl. ¶ 8; *see*

11  *also* Durback Decl. ¶ 3.) After two trips to the Ohio Supreme Court over whether the measure

12  could go on the ballot, Toledoans for Safe Water succeeded in getting added to the February 26,

13  2019, special election, which the City had called for the purpose of a vote on a different measure.

14  (Miller Decl. ¶¶ 8-13.)

15      On March 13, 2019, the Lucas County Board of Elections certified the results of the

16  February 26 special election. (Miller Decl. ¶ 14.) The Lake Erie Bill of Rights received 9,955

17  votes (out of 16,215 votes cast on the measure) in the special election. (*Id.*)

18  **III.    The task of restoring the Lake Erie Ecosystem is in the political branches of**
19  **government**

20      Toledoans for Safe Water members "do not believe the City of Toledo will do an adequate

21  job of defending LEBOR because local elected officials actively campaigned against LEBOR."

22  (Miller Decl. ¶ 19.) TSW member Durback has spent two and a half years observing "how our

23  regulatory agencies and elected officials continually fail to protect our environment." (Durback

24  Decl. ¶ 3.) Durback adds that "State and federal regulatory agencies are captured by the very

Memorandum in Support of Motion to Intervene – 9 of 27

1  industries they are supposed to regulate. Our political system allows lobbyists from the Farm

2  Bureau to run the Ohio EPA." (*Id.*, ¶ 6.) Twitchell adds that the State Legislature's and Ohio

3  EPA's "inaction is a betrayal of the trust placed in them by the people of Ohio, and as such, they

4  can no longer be relied upon to effect the necessary changes to bring Erie back." ((Twitchell

5  Decl. ¶ 7.)

6          U.S. District Judge James Carr recently agreed with the sentiment that the state is putting

7  people at risk. In a Clean Water Act case, Judge Carr noted "Ohio's long-standing, persistent

8  reluctance and, on occasion, refusal, to comply with the CWA. As a result of the State's

9  inattention to the need, too long manifest, to take effective steps to ensure that Lake Erie (the

10  Lake) will dependably provide clean, healthful water, the risk remains that sometime in the

11  future, upwards of 500,000 Northwest Ohio residents will again, as they did in August 2014, be

12  deprived of clean, safe water for drinking, bathing, and other normal and necessary uses." *Envtl.*

13  *Law & Policy Ctr. v. U.S. E.P.A.*, Order at 1, on Oct. 3, 2018, (N.D. Ohio, No. 3:17-cv-1514).[7]

14  Judge Carr found the U.S. E.P.A.'s oversight of Ohio's compliance with the Clean Water Act to

15  "reflect[] an undue measure of confidence in Ohio's willingness to evaluate the condition of

16  Lake Erie's open waters. Indeed, in preparing its 2016 impaired waters list, Ohio, despite its

17  promise, gave no heed to the U.S. E.P.A.'s expectations." *Id.* at 4. While Judge Carr

18  "appreciate[s] plaintiffs' frustration with Ohio's possible continuation of its inaction," the court

19  ruled that it could not expedite Ohio's compliance with the Clean Water Act. *Id.* at 8.

20  **IV.    The City of Toledo's position on the Lake Erie Bill of Rights**

21          Specific to the City of Toledo, TSW member Durback declared "I am not confident that

22  the City of Toledo will do an adequate job of defending the Lake Erie Bill of Rights ("LEBOR")

---

7  Order available at https://www.govinfo.gov/content/pkg/USCOURTS-ohnd-3_17-cv-
01514/pdf/USCOURTS-ohnd-3_17-cv-01514-1.pdf.

1  in court because the entirety of Toledo's political establishment came out against LEBOR. The

2  president of City Council was vocally opposing LEBOR throughout the 2018-2019 initiative

3  campaign." (Durback Decl. ¶ 7.) At one of the protest hearings before the Board of Elections, the

4  city attorney, tasked with defending the City Council's ministerial vote to put LEBOR on the

5  ballot, "confessed he was himself ignorant of the contents of the Charter Amendment." (*Id.*)

6      Leading up to the February special election, the City Council President wrote an article in

7  the Mayor's weekly newsletter to urge residents to vote against LEBOR: "The Lake Erie issue

8  will be before voters next week. I am 100 percent against the "Lake Erie Bill of Rights." The

9  reason? It will immediately will go into litigation if it passes. Toledo also could end up spending

10  taxpayer dollars to defend the law in court." "Toledo City Council President Matt Cherry," in

11  City of Toledo News.[8]

12      Council President Cherry concluded his statement recognizing that LEBOR targets

13  CAFOs: "I respect those who have pushed for the Lake Erie Bill of Rights since they have

14  legitimate concerns about commercial animal-feeding operations that foul Lake Erie tributaries,

15  but that issue should be addressed at the state or federal level." *Id.*

16  **V.    The Lake Erie Ecosystem as a legal entity**

17      Legal systems around the world have begun to recognize the rights of ecosystems. The

18  leading example is Ecuador, where the people, in 2008, amended their constitution to recognize

19  the rights of nature to exist and flourish, as well as the power of the public to enforce those

20  rights. *See* Constitución de la Republica del Ecuador, Art. 10 ("Nature shall be the subject of

21  those rights that the Constitution recognizes for it."), Art. 71 ("Nature, or Pacha Mama, where

22  life is reproduced and occurs, has the right to full respect for its existence and for the

8    Available at https://myemail.constantcontact.com/Toledo-Friday-News.html?
soid=1126728129006&aid=LkP6b0E5Mdw.

1   maintenance and regeneration of its life cycles, structures, functions and evolutionary processes.

2   Every person, community or nationality will be able to demand of the public authorities

3   compliance with the rights of nature."), Arts. 72-74.[9]

4        In 2011, in a case of first impression, an Ecuadorian court enforced the constitutional

5   rights of nature to protect the Vilcabamba River from erosion and flooding caused by the

6   dumping of debris from the construction of a nearby road. *See Wheeler c. Director de la*

7   *Procuraduria General Del Estado de Loja*, Acción de Protección No. 11121-2011-0010 (30 Mar.

8   2011) (Provincial Court of Justice in Loja, Ecuador).[10] In another case shortly thereafter, an

9   Ecuadorian provisional court issued an injunction to protect the rights of nature and people that

10  were threatened by pollution from illegal gold mining operations in the region. *See Medida*

11  *Cautelar para "la protección de los derechos de la naturaleza y la ciudadanía,"* No. 0016-2011

12  (19 May 2011) (Twenty-Second Criminal Judge of Pichincha).

13       In addition, Bolivia and New Zealand have taken legislative action to grant legal standing

14  to ecosystems. Bolivia passed two pioneering laws in recent years that protect the rights of

15  nature. The first, Ley de Derechos de la Madre Tierra ("Law on the Rights of Mother Earth"),

16  recognized the inherent rights of nature, and society's obligation to protect and enforce those

17  rights. *See* Ley No. 071, Dec. 21, 2010, Gaceta Oficial, Arts. 1, 5. Expanding on this law, Bolivia

18  enacted the Ley Marco de La Madre Tierra y Desarrollo Integral Para Vivir Bien ("Framework

19  Law on Mother Earth and Integral Development for Harmonious Living") in 2012, which

20  recognizes nature as a "living dynamic system" and grants nature comprehensive legal rights that

21  are comparable to human rights. *See* Ley No. 300, Oct. 15, 2012, Gaceta Oficial, Arts. 4, 5.

22       In 2014, the New Zealand Parliament enacted a law that recognized Te Urewera National

---

9   Unofficial English translation available at
    pdba.georgetown.edu/Constitutions/Ecuador/english08.html.
10  Available in Spanish at www.elaw.org/system/files/ec.wheeler.loja_.pdf.

1   Park with the rights of a legal person. Te Urewera Act 2014, Public Act 2014 No. 51 (27 July

2   2014), §§ 3(9) ("Te Urewera should have legal recognition in its own right . . . ."), 11(1) ("Te

3   Urewera is a legal entity, and has all the rights, powers, duties, and liabilities of a legal

4   person.").[11] Further, in 2017, the Parliament finalized a settlement between the Whanganui Iwi

5   and the government providing for recognition of legal rights of the Whanganui River – a river

6   significant both historically to the Iwi and nationally as New Zealand's third longest river – to

7   exist as an "indivisible" entity with "legal status." *See Te Awa Tupua (Whanganui River Claims*

8   *Settlement) Act 2017*, Public Act 2017, No. 7, Part 2, Subpart 2. The Act also provided for two

9   guardians appointed by the government and the Iwi to represent the river and protect its interests.

10  *Id.* at Part 2, Subpart 3, 20(2).

11         In Brazil, several municipalities in the State of Pernambuco have enacted laws securing

12  legal rights of nature. In 2017, the Municipality of Bonito enacted an amendment to the organic

13  law of the city, recognizing the right of nature to "to exist, thrive and evolve." *See* Municipality

14  of Bonito, Amendment to the Organic Law N. 01/2017, at Article 1.[12] In 2018, the Municipality

15  of Paudalho similarly amended its organic law to recognize the rights of nature. *See* Municipality

16  of Paudalho, Amendment to the Organic Law N. 03/2018, at Article 1.[13]

17         Over the past several years, courts in Colombia and India have issued decisions declaring

18  that certain aspects of nature possess legal rights. In 2016, Colombia's Constitutional Court

19  recognized Rio Atrato as a "subject of rights." *See* Judgment T-622 de 2016, at IV, 9.28.[14] The

20  Court declared that those legal rights included right to "protection, conservation, maintenance

21  and restoration." *Id*. at V, Fourth. In 2018, Colombia's Supreme Court recognized the Colombian

---

11  Available at www.legislation.govt.nz/act/public/2014/0051/latest/whole.html.
12  Available at http://www.bonito.pe.leg.br/leis/lei-organica-municipal/sumario/view.
13  Available at https://camarapaudalho.pe.gov.br/ (Menu >Serviços>Lei orgânico).
14  Available at http://www.corteconstitucional.gov.co/relatoria/2016/t-622-16.htm.

Memorandum in Support of Motion to Intervene – 13 of 27

1  Amazon as a "subject of rights." *See* STC4360-2018, at 14.[15] Also in 2018, the Administrative

2  Court of Boyacá in Colombia recognized the páramo region in Pisba, in the Andes, as a "subject

3  of rights." *See* 15238 3333 002 2018 00016 01, at 4.6.[16]

4  In 2018, two tribal nations in the United States enacted rights of nature laws. The Ponca

5  Tribe of Oklahoma adopted a customary law finding that the "inherent rights of Nature are

6  inalienable." *See* Ponca Nation of Oklahoma, Resolution #01-01092018, at Article 1(3). In

7  December, the White Earth band of Ojibwe, of the Minnesota Chippewa Tribe, enacted a law

8  recognizing legal rights of manoomin, or wild rice, a staple food with cultural and historic

9  significance for the Ojibwe people. This is the first rights of nature law to secure legal rights of a

10  specific plant species. *See* White Earth Band, Resolution No. 001-19-009.

11  Discussions about constitutional and legislative reform to enact and protect the rights of

12  nature are ongoing in other countries, including Australia, India, and Nepal. Civil society

13  organizations presented draft national legislation to Indian Prime Minister Narendra Modi's

14  government, that would recognize the inherent rights of the Ganga River basin, an important yet

15  vastly polluted and endangered river system. *See* Shailvee Sharda, *Harish Rawat Launches*

16  *National Ganga Rights Campaign at Mahakumbh*, Times of India (Feb. 23, 2013)[17]; *see also The*

17  *Ganga Rights Act*, National Ganga Rights Movement.[18] As well, in 2018, civil society

18  organizations in Australia launched a public campaign to recognize legal rights of the Great

19  Barrier Reef. *See* Michelle Maloney, *Recognizing the rights of nature*, Toledo Blade, January 12,

---

15  Available at http://www.cortesuprema.gov.co/corte/index.php/2018/04/05/corte-suprema-ordena-proteccion-inmediata-de-la-amazonia-colombiana/.

16  Available at https://redjusticiaambientalcolombia.files.wordpress.com/2018/08/fallo-pisba.pdf (last accessed March 7, 2019).

17  Available at timesofindia.indiatimes.com/city/allahabad/Harish-Rawat-launches-national-Ganga-rights-campaign-at-Mahakumbh/articleshow/18647281.cms.

18  www.gangarights.org/ganga-right-act/.

1   2019.[19]

2       The Toledo City Charter now recognizes rights of the Lake Erie ecosystem, specifically:

3   "Lake Erie, and the Lake Erie watershed, possess the right to exist, flourish, and naturally

4   evolve. The Lake Erie Ecosystem shall include all natural water features, communities of

5   organisms, soil as well as terrestrial and aquatic sub ecosystems that are part of Lake Erie and its

6   watershed." LEBOR, § 1(a). In addition, the Charter provides:

7       The Lake Erie Ecosystem may enforce its rights, and this law's prohibitions, through
8       an action prosecuted either by the City of Toledo or a resident or residents of the City
9       in the Lucas County Court of Common Pleas, General Division. Such court action
10      shall be brought in the name of the Lake Erie Ecosystem as the real party in interest.
11      Damages shall be measured by the cost of restoring the Lake Erie Ecosystem and its
12      constituent parts at least to their status immediately before the commencement of the
13      acts resulting in injury, and shall be paid to the City of Toledo to be used exclusively
14      for the full and complete restoration of the Lake Erie Ecosystem and its constituent
15      parts to that status.

16  *Id.*, § 3(d).

17                              **Argument**

18  **I.    Legal Standards for Intervention**

19      There are two forms of intervention, intervention as of right, and permissive intervention.

20      Federal Rule of Civil Procedure 24(a) addresses intervention as of right and provides in

21  pertinent part that:

22      On timely motion, the court must permit anyone to intervene who . . . (2) claims an
23      interest relating to the property or transaction that is the subject of the action, and is
24      so situated that disposing of the action may as a practical matter impair or impede the
25      movant's ability to protect its interest, unless existing parties adequately represent
26      that interest

27      "[A] proposed intervenor must establish four factors before being entitled to intervene:

28  (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest

---

19  Available at https://www.toledoblade.com/opinion/letters-to-the-
    editor/2019/01/12/recognizing-the-rights-of-nature/stories/20190109100.

1    in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may

2    be impaired in the absence of intervention; and (4) the parties already before the court cannot

3    adequately protect the proposed intervenor's interest." *Coalition to Defend Affirmative Action v.*

4    *Granholm*, 501 F.3d 775, 779 (6th Cir. 2007) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397-98

5    (6th Cir. 1999)). "The applicant has the burden of demonstrating the four prongs, and the failure

6    to satisfy any of the four prongs prevents the applicant from intervening as of right." *Johnson v.*

7    *City of Memphis*, 73 F.Appx. 123, 131 (6th Cir. 2003)

8        Permissive intervention is governed by FRCP 24(b)(1)(B), which provides that "[o]n

9    timely motion, the court may permit anyone to intervene who . . . has a claim or defense that

10   shares with the main action a common question of law or fact."

11       "To intervene permissively, a proposed intervenor must establish that the motion for

12   intervention is timely and alleges at least one common question of law or fact. Once these two

13   requirements are established, the district court must then balance undue delay and prejudice to

14   the original parties, if any, and any other relevant factors to determine whether, in the court's

15   discretion, intervention should be allowed." *United States v. Michigan*, 424 F.3d 438, 445 (6th

16   Cir. 2005). Whether to permit intervention under Rule 24(b) is within the sound discretion of the

17   court. *Id.*

18   **II.    Lake Erie and Toledoans for Safe Water Should Be Allowed To Intervene As of Right**

19       **A.    The Motion To Intervene Is Timely**

20       Turning to the first of the *Coalition* factors for intervention as of right–timeliness–there

21   can be no serious assertion that this Motion is not timely. Intervention under either Rule 24(a) or

22   Rule 24(b) must be "timely," *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011); *Stupak-*

23   *Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000). And the determination of timeliness under

1 | both types of intervention is within the discretion of the trial court. *Id.*; *Stotts v. Memphis Fire*

2 | *Dep't*, 679 F.2d 579, 582 (6th Cir. 1982). "[T]he purpose of the timeliness inquiry is to prevent a

3 | tardy intervenor from derailing a lawsuit within sight of the terminal." *United States v. BASF-*

4 | *Inmont Corp.*, No. 93-1807, 1995 WL 234648, at *2 (6th Cir. Apr. 18, 1995) (internal quotation

5 | marks and citation omitted).

6 |       This lawsuit is nowhere near its "terminal." This Motion is being filed prior to the rule

7 | day for the sole Defendant, the City of Toledo, to answer DFP's lawsuit. Assessing this Motion

8 | against the Sixth Circuit factors respecting timeliness,[20] neither Lake Erie nor TSW are

9 | prejudicing any other parties' rights or options at this juncture of the litigation. The intervention

10 | motion is timely.

11 | **B.    Lake Erie and TSW Have Significant Legal Interests In The Case**

12 |       Turning to the second *Coalition* factor, the proposed intervenors have a significant legal

13 | interest in the subject matter of the case. Lake Erie's stake in this controversy is at the heart of

14 | LEBOR. In the preamble to LEBOR, the People of the City of Toledo assert as follows:

15 |       *We the people of the City of Toledo* declare that Lake Erie and the Lake Erie
16 | watershed comprise an ecosystem upon which millions of people and countless
17 | species depend for health, drinking water and survival. We further declare that this
18 | ecosystem, which has suffered for more than a century under continuous assault and
19 | ruin due to industrialization, is in imminent danger of irreversible devastation due to
20 | continued abuse by people and corporations enabled by reckless government
21 | policies, permitting and licensing of activities that unremittingly create cumulative
22 | harm, and lack of protective intervention. Continued abuse consisting of direct
23 | dumping of industrial wastes, runoff of noxious substances from large scale
24 | agricultural practices, including factory hog and chicken farms, combined with the
25 | effects of global climate change, constitute an immediate emergency.

---

20  The factors are: (1) the point to which the suit has progressed; (2) the purpose for which
intervention is sought; (3) the length of time preceding the application during which the
proposed intervenor knew or reasonably should have known of his interest in the case; (4) the
prejudice to the original parties due to the proposed intervenor's failure, after he or she knew
or reasonably should have known of his interest in the case, to apply promptly for
intervention; and (5) the existence of unusual circumstances militating against or in favor of
intervention. *United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001).

*We the people of the City of Toledo* find that this emergency requires shifting public policies from policies that urge voluntary action, or that merely regulate the amount of harm allowed by law over a given period of time, to adopting laws which prohibit activities that violate fundamental rights which, to date, have gone unprotected by government and suffered the indifference of state-chartered for-profit corporations.

Moreover, the passage of LEBOR by the electors established both that the Lake Erie Ecosystem has enforceable rights of existence on which the citizens depend, and that Toledo's citizens have a right to a clean and healthy environment and the power under LEBOR to enforce those rights:

(a) *Rights of Lake Erie Ecosystem*. Lake Erie, and the Lake Erie watershed, possess the right to exist, flourish, and naturally evolve. The Lake Erie Ecosystem shall include all natural water features, communities of organisms, soil as well as terrestrial and aquatic sub-ecosystems that are part of Lake Erie and its watershed.

(b) *Right to a Clean and Healthy Environment*. The people of the City of Toledo possess the right to a clean and healthy environment, which shall include the right to a clean and healthy Lake Erie and Lake Erie ecosystem.

(c) *Right of Local Community Self-Government*. The people of the City of Toledo possess both a collective and individual right to self-government in their local community, a right to a system of government that embodies that right, and the right to a system of government that protects and secures their human, civil, and collective rights.

(d) *Rights as Self -Executing*. All rights secured by this law are inherent, fundamental, and unalienable, and shall be self-executing and enforceable against both private and public actors. Further implementing legislation shall not be required for the City of Toledo, the residents of the City, or the ecosystems and natural communities protected by this law, to enforce all of the provisions of this law.

LEBOR § 1. Thus Lake Erie, which is accorded the rights of nature by LEBOR, and TSW, via members' declarations, have timely manifested significant core interests in the outcome of this litigation.

The interest of the Lake Erie Ecosystem reposes in its right to exist, flourish, and naturally evolve, as denominated in LEBOR. And TSW's three member declarations assert legal, environmental, and practical interests in upholding the rights of the Lake Erie Ecosystem.

Memorandum in Support of Motion to Intervene – 18 of 27

The Sixth Circuit "subscribe[s] to a rather expansive notion of the interest sufficient to invoke intervention of right," *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (prospective minority applicants had substantial interest in action challenging University of Michigan's admissions policy, and corresponding right to intervene in the litigation); *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). For example, an intervenor need not have the standing necessary to initiate a lawsuit. *See Miller*, 103 F.3d 1240; *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991). The Sixth Circuit also has "cited with approval decisions of other courts 'reject[ing] the notion that Rule 24(a)(2) requires a specific legal or equitable interest." *Miller*, 103 F.3d at 1245. "The inquiry into the substantiality of the claimed interest is necessarily fact-specific." *Id.* Petitioning intervenors must show "a direct, significant legally protectable interest" in the subject matter of the litigation, *United States v. Detroit Int'l Bridge Co.*, 7 F.3d 497, 501 (6th Cir. 1993), sufficient "to make it a real party in interest in the transaction which is the subject of the proceeding." *Providence Baptist Church v. Hillandale Committee, Ltd.*, 425 F.3d 309, 317 (6th Cir. 2005) (citation omitted). But "that 'interest' is to be construed liberally." *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987).

Regarding the allowance of intervenor status to citizen organizations when they have been involved in shaping the act under challenge, the Sixth Circuit concurs with the Ninth Circuit's view that interested organizations are to be accorded status to defend administrative decisions or new legislation:

> "While none of our cases have addressed the significance to be accorded a proposed intervenor's interest in the validity of legislation, the Ninth Circuit has adopted a broader rule that a public interest group that is involved in the process leading to adoption of legislation has a cognizable interest in defending that legislation. *See Idaho Farm Bureau Fed'n v. Babbitt*,[21] 58 F.3d 1392, 1397 (9th Cir. 1995);

---

[21] Idaho Conservation League and Committee for Idaho's High Desert were granted intervenor status in a challenge to listing of the Bruneau Hot Springs Snail to federal Endangered Species list. They had previously commented on the proposed listing and had sued to force

*Sagebrush Rebellion, Inc. v. Watt*,[22] 713 F.2d 525, 527 (9th Cir. 1983); *see also State of Idaho v. Freeman*,[23] 625 F.2d 886 (9th Cir. 1980). *Idaho Farm Bureau* supports our conclusion in this case that the rules governing intervention are "construed broadly in favor of the applicants." 58 F.3d at 1397 (citing *United States v. Oregon*, 913 F.2d 576, 587 (9th Cir. 1990), *cert. denied, Makah Indian Tribe v. United States*, 501 U.S. 1250, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991)). There, the intervening public interest group had been involved in a separate suit in a matter related to the issues in controversy."

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245-1246 (6th Cir. 1997). In *Miller*, the Michigan Chamber of Commerce sought intervenor status to defend a campaign contribution-limitations law, passage of which it had supported. The Sixth Circuit found that:

> The evidence shows that the Chamber was (1) a vital participant in the political process that resulted in legislative adoption of the 1994 amendments in the first place, (2) a repeat player in Campaign Finance Act litigation, (3) a significant party which is adverse to the challenging union in the political process surrounding Michigan state government's regulation of practical campaign financing, and (4) an entity also regulated by at least three of the four statutory provisions challenged by plaintiffs. Admittedly, the intervention issue raised in this appeal is a close one, but in view of the facts unique to this particular case, and in the belief that close cases should be resolved in favor of recognizing an interest under Rule 24(a), we hold that the Chamber has a substantial legal interest in this litigation.

*Id.* at 1246-1247. *See also Washington State Building & Construction Trades v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982), *cert. denied sub nom. Don't Waste Washington Legal Defense Foundation v. Washington*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983) (public interest group was entitled as a matter of right to intervene in an action challenging the legality of a statewide initiative which it had sponsored). The Ninth Circuit stated that "Rule 24 traditionally has received a liberal construction in favor of applications for intervention." *Id.* at 630.

---

U.S. Fish and Wildlife Service to issue a final rule listing the snail. Their request to intervene on the side of FWS to defend the listing was then granted.

22 The Audubon Society granted intervention as of right in challenge to federal government designation of Snake River Birds of Prey National Conservation Area in Idaho, a designation for which it had advocated.

23 National Organization for Women granted intervention as of right in suit challenging procedures for ratification of the proposed Equal Rights Amendment to the Constitution of the United States, a cause which the organization had championed.

1      Similarly, Toledoans for Safe Water directly sponsored LEBOR. Its members wrote the

2    proposed legislation and circulated petitions gathering signatures for its ballot placement. TSW

3    members made up the legal sponsorship to litigate in support of LEBOR. In their Declarations,

4    Twitchell, Durback, and Miller describe their respective deeds as members of TSW in collecting

5    literally hundreds of signatures to place LEBOR on the Ballot. Twitchell Decl., ¶ 3; Durback

6    Decl., ¶ 3. Bryan Twitchell served as one of the five-members of the legal committee sponsoring

7    the LEBOR petition that sued in the Ohio Supreme Court to put LEBOR on the ballot, and

8    defended as respondent-intervenors in that Court to keep LEBOR on the ballot. Miller Decl., ¶ 7.

9    Durback, Twitchell and Miller have environmental science backgrounds and possess a grasp of

10   the scientific principles which underlie the ongoing algae contamination and pollution problems

11   afflicting Lake Erie. As citizens, they're part of the potential plaintiff class which may invoke

12   LEBOR to enforce the rights of nature conferred on the Lake Erie Ecosystem. Their member

13   declarations illustrate TSW's unique legal interests needed for intervention as of right.

14   **C.    The Intervenors Will Experience Impairment Of Their Interests If Excluded**

15       In the Sixth Circuit, a would-be intervenor must show only that impairment of its

16   substantial legal interest is possible if intervention is denied. *Purnell v. City of Akron*, 925 F.2d

17   941, 948 (6th Cir. 1991). This burden is minimal. An adverse ruling in the district court would

18   cut off the rights of the Lake Erie Ecosystem to be recognized in the legal system. Moreover,

19   Intervenors' right under LEBOR to litigate in the future against polluters, on behalf of Lake Erie

20   would be curtailed.

21       Under LEBOR, three potential classes of plaintiffs may seek to enforce the rights of the

22   Lake Erie Ecosystem. One is the City of Toledo. LEBOR § 3(b). The others are the Ecosystem

23   and "any resident of the City." *Id.* TSW asserts, through its members, the rights of City residents

and Lake Erie to bring enforcement actions on the authority of LEBOR. The City of Toledo may make its own decisions as to how to protect its right to sue under LEBOR § 3(b), but does not have the power to compromise or protect the separate and distinct right of Toledo residents to sue for enforcement. TSW seeks participation as representative of potential plaintiffs.

**D.    The City of Toledo Cannot Adequately Represent Intervenors' Interests**

Although a would-be intervenor shoulders the burden with respect to establishing that its interest is not adequately protected by the existing parties to the action, this burden "is minimal because it is sufficient that the movant[ ] prove that representation *may* be inadequate." *Linton*, 973 F.2d at 1319 (Emphasis added); *Trbovich v. UMWA*, 404 U.S. 528, 539, 92 S.Ct. 630, 636, 30 L.Ed.2d 686 (1972) (Burden of proof is minimal; it is sufficient that the movants prove that representation may be inadequate).

"One is not required to show that the representation will in fact be inadequate. For example, it may be enough to show that the existing party, who purports to seek the same outcome will not make all of the prospective intervenor's arguments. *See Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1498-99 (9th Cir.1995)," quoted in *Michigan State AFL-CIO v. Miller*, 103 F.3d at 1247-1248; *Grutter v. Bollinger*, 188 F.3d 394, 400-01 (6th Cir.1999) (quoting *Miller*, 103 F.3d at 1247).

The public record of the City's strong opposition to LEBOR establishes that the City cannot and will not adequately represent the interests TSW seeks to represent for the Lake and the people. In particular, the Intervenors proffer several legal arguments the City is unlikely to advance and might even actively oppose:

● As specified in their Motion to Dismiss, proffered with this Motion to Intervene, DFP is a general partnership and accordingly does not possess standing to sue.

1    ● Even if DFP has standing, it has not established injury-in-fact because it alleges only

2    disagreement with the policy represented by LEBOR, not that the policy has caused it any but

3    speculative harm.

4    ● The Lake Erie Bill of Rights endows the Lake Erie Ecosystem with "rights of nature,"

5    the unique concept that "Lake Erie, and the Lake Erie watershed, possess the right to exist,

6    flourish, and naturally evolve." LEBOR § 1(a). The City of Toledo is unlikely to argue the

7    validity of this concept in American jurisprudence. TSW's members, in consultation with

8    counsel, initiated and voted the concept into law and are prepared to advance arguments in

9    support of Rights of Nature.

10    ● The City has consented to a preliminary injunction in this case, suspending the effect

11    of LEBOR. (Docket #9). TSW would have opposed it strenuously.

12    ● TSW will argue that under Ohio Const. Art. I, § 2, the citizens of Toledo "have the right

13    to alter, reform, or abolish the same, whenever they may deem it necessary." It is doubtful that

14    the City of Toledo will seek application of Art. I, § 2 to support LEBOR's legality.

15    "'[T]hat there is a slight difference in interests between the [proposed intervenors] and

16    the supposed representative does not necessarily show inadequacy, if they both seek the same

17    outcome. . . . However, interests need not be wholly "adverse" before there is a basis for

18    concluding that existing representation of a "different" interest may be inadequate.'" *Jansen v.*

19    *City of Cincinnati*, 904 F.2d 336, 343 (6th Cir. 1990) (quoting *Nuesse v. Camp*, 385 F.2d 694,

20    703, 128 U.S.App.D.C. 172 (D.C. Cir. 1967)). The Intervenors have shown more than a "slight"

21    difference in their approach as compared to that of the City, certainly enough to demonstrate that

22    the City will not adequately represent their interests in upholding the lawfulness of LEBOR. The

23    Lake Erie Ecosystem and TSW have timely brought their Motion; have demonstrated a

24    distinctive interest in the litigation; and have shown that their interests will be impaired if they

Memorandum in Support of Motion to Intervene – 23 of 27

1   are denied intervenor status. They have established entitlement to intervention in these

2   proceedings as of right.

3   **III.   Alternatively, Lake Erie and TSW Should Be Allowed To Permissively Intervene**

4        Under FRCP 24(b), the Court may permissively allow anyone to intervene who files a

5   timely motion and "has a claim or defense that shares with the main action a common question

6   of law or fact." Fed.R.Civ.P. 24(b)(1)(B). "Once these two requirements are established, the

7   district court must then balance undue delay and prejudice to the original parties, if any, and any

8   other relevant factors to determine whether, in the court's discretion, intervention should be

9   allowed." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005). Permissive intervention

10  under Rule 24(b) is within the sound discretion of the court. *Id.*

11       Since the Intervenors have brought their Motion extremely early in this litigation, before

12  the City of Toledo has answered, neither DFP nor the City can realistically assert any prejudice.

13  Intervenors' challenges to the bases for this litigation, and their arguments in favor of a finding of

14  lawfulness of the Lake Erie Bill of Rights, are tied to the common goal upholding the

15  enforceability of LEBOR by the City and TSW. However, the approaches of TSW and the City

16  diverge at key points, and accordingly, TSW and Lake Erie Ecosystem should be granted leave to

17  permissively intervene in these proceedings on the side of the City to assert their unique points

18  and authorities.

19                         **Conclusion**

20       Proposed Intervenor-Defendants respectfully request the Court grant their motion to

21  intervene by rights, and leave for permissive intervention, to defend their interests in this lawsuit.

     Respectfully submitted this Eighteenth Day of March, 2019.

               **/s/ Terry J. Lodge**
               Terry J. Lodge, Esq. (S.Ct. #0029271)

Memorandum in Support of Motion to Intervene – 24 of 27

316 N. Michigan St., Suite 520
Toledo, OH 43604-5627
Phone (419) 205-7084
tjlodge50@yahoo.com
lodgelaw@yahoo.com

**/s/ Lindsey Schromen-Wawrin**
Lindsey Schromen-Wawrin (WSBA #46352)
Shearwater Law PLLC
306 West Third Street
Port Angeles, WA 98362
Phone (360) 406-4321
Fax (360) 752-5767
lindsey@ShearwaterLaw.com

*Attorneys for Intervenor-Defendants*
*Lake Erie Ecosystem and Toledoans for Safe Water, Inc.*

1                                 **Certificate of Memorandum Length**

2         Pursuant to Local Rule 7.1(f), this brief does not exceed 20 pages, as this case is currently

3 unassigned to a track.


Dated: March 18, 2019.

                    **/s/ Terry J. Lodge**
                    Terry J. Lodge, Esq. (S.Ct. #0029271)
                    316 N. Michigan St., Suite 520
                    Toledo, OH 43604-5627
                    Phone (419) 205-7084
                    tjlodge50@yahoo.com
                    lodgelaw@yahoo.com

                    **/s/ Lindsey Schromen-Wawrin**
                    Lindsey Schromen-Wawrin (WSBA #46352)
                    Shearwater Law PLLC
                    306 West Third Street
                    Port Angeles, WA 98362
                    Phone (360) 406-4321
                    Fax (360) 752-5767
                    lindsey@ShearwaterLaw.com

                    *Attorneys for Intervenor-Defendants*
                    *Lake Erie Ecosystem and Toledoans for Safe Water, Inc.*

**Certificate of Service**

1

2    I certify that I electronically filed this document with the Clerk of the Court for the

3 United States District Court for the Northern District of Ohio by using the Court's CM/ECF

4 system on March 18, 2019.

5    The other parties are Filing Users and are served electronically by the Notice of Docket

6 Activity.

Dated: March 18, 2019

**/s/ Terry J. Lodge**
Terry J. Lodge, Esq. (S.Ct. #0029271)
316 N. Michigan St., Suite 520
Toledo, OH 43604-5627
Phone (419) 205-7084
tjlodge50@yahoo.com

*Attorney for Intervenor-Defendants*
*Lake Erie Ecosystem and Toledoans for Safe Water, Inc.*