**DECLARATION OF MARKIE MILLER**

Now comes Markie Miller, Declarant herein, who deposes and says as follows:

1) My full legal name is Markie-Ann Miller, but my preferred name is Markie Miller. I am 29 years old and reside at 3754 Grantley Road, Toledo, OH 43613. I am a registered elector and have lived in Toledo since 2014. My roots are in a nearby suburb, Lambertville, Michigan. I attended high school in Toledo and attended the University of Toledo. I own real estate in Toledo. I am married. My family still lives in close-by Michigan suburbs of Toledo that are served by the City of Toledo water system.

2) I have a masters degree in Environmental Science. I was motivated to get this degree because I wanted to find meaningful work that allowed me to make a difference. I became increasingly overwhelmed with the world's problems. I was told that the only peaceful solutions to environmental problems was protesting regulatory agency decisions and/or applying for internships with them. I completed two years at Ohio University in Environmental Studies and transferred to an Environmental Science program elsewhere shortly after the Toledo water crisis of 2014. I became very motivated by the problems my community was facing and felt it was a call for me to finish my degree and find a way to get involved.

3) I got involved in the campaign to restore Lake Erie for several reasons. Apart from the obvious one of not having a safe, usable water to drink, bathe, or complete simply daily tasks with, I felt personally vulnerable and saw the place I called home and the community I contribute to suffer. I started going to meetings, forums, and whatever I could to learn more and found the conversation was often censored and void of any real action or solution. Joining Toledoans for Safe Water ("TSW") became my way to do meaningful work and make a difference.

4) I have been a TSW organizer since 2015 when the initiative petition for the Lake Erie Bill of Rights ("LEBOR") was being drafted. I joined Advocates for a Clean Lake Erie ("ACLE") in 2015, a group that aimed to see Lake Erie designated under regulatory laws as being impaired waters. I heard of TSW at an ACLE meeting and the TSW organizer filled in many gaps left in my environmental science education. LEBOR was something I felt could be an effective step.

5) TSW came together as a grassroots citizen group in 2016 following the major crisis in water quality that struck the City of Toledo's water intake, situated in Lake Erie, in August 2014. The system was overrun by algae-produced neurotoxic chemicals in turn caused by excessive phosphorus and nitrogen in the Lake Erie water column principally as a result of excessive nutrient loading from large-scale commercial agriculture. The water crisis resulted in a shutdown of the city's water intake for three days, cutting off water service to 500,000 people.

6) As a response, in 2016 TSW members drafted and proposed the Lake Erie Bill of Rights, enumerating a range of rights for residents of the City of Toledo, such as legislating a policy of "rights of nature" and citizens' rights to a healthy environment. The proposal also contains provisions to protect and enforce those rights.

7) Throughout 2017 and 2018, TSW members, including Bryan Twitchell, served as members of the Committee of Petitioners for the Lake Erie Bill of Rights Charter Amendment. TSW members and others circulated petitions to enact LEBOR into law in Toledo via initiative.

8) On August 6, 2018, TSW turned in part-petitions bearing approximately 10,500 signatures to require placement of LEBOR on the next electoral ballot. On August 10, 2018, the Lucas County Board of Elections ("BOE") notified the Clerk of Toledo City Council that at least 6,438 signatures were verified as those of current registered voters, easily surpassing the minimum requirement of 5,244 registered voter signatures and meeting the signature threshold required to qualify the initiative to the ballot. On August 28, 2018, the BOE voted to not put the initiative on the November 2018 ballot. The Committee of Petitioners, including Bryan Twitchell, sought a writ of mandamus from the Ohio Supreme Court to put the measure on the ballot. The Court denied the request on September 21, 2018. *State ex rel. Twitchell v. Saferin*, Slip Op. No. 2018-Ohio-3829 (S.Ct. Sept. 21, 2018).

9) Subsequently, in another case involving a different charter initiative in Toledo (the "Jail Initiative"), the Ohio Supreme Court ruled on October 4, 2018, that henceforth, city councils may direct county boards of election to nondiscretionarily place a charter amendment initiative onto the ballot. *State ex rel. Maxcy v. Saferin*, Slip Op. No. 2018-Ohio-4035 (S.Ct. Oct, 4, 2018). In the same decision, the Court also expressly overruled precedent it had used to deny LEBOR placement on the ballot.

10) Following the ruling in *Maxcy*, the Toledo's Jail Initiative proponents successfully requested the Toledo City Council to pass an ordinance to put their initiative onto a February 26, 2019, special election ballot. The Lucas County Board of Elections ("BOE") complied with the ordinance and set up the February 26, 2019 election.

11) I, along with other members of TSW subsequently asked the Toledo City Council to put LEBOR on the same ballot, and Council unanimously passed an ordinance placing LEBOR on the February 26, 2019 ballot.

12) On December 10, 2018, a Toledoan, Josh Abernathy, filed a protest with the BOE, claiming that LEBOR could not properly be put on the ballot. A hearing was held on the protest on December 20, 2018, at the close of which the BOE voted unanimously to follow the city ordinance and put LEBOR to a vote of the people of Toledo.

13) Josh Abernathy then filed a complaint for a writ of prohibition in the Ohio Supreme Court on December 26, 2018. Bryan Mitchell and two other members of the Committee of Petitioners (all members of TSW), sought and obtained permission from the Court to intervene in that court action, and we filed a brief on the side of the respondent Lucas County Board of Elections. On January 23, 2019, the Ohio Supreme Court denied the writ to Josh Abernathy, which allowed LEBOR to proceed to a vote. *State ex rel. Abernathy v. Lucas County Board of Elections,* 2019-Ohio-201, 2018-1824 (S.Ct. January 23, 2019).

14) On March 13, 2019 the Lucas County Board of Elections certified the election result,

finding that LEBOR passed, 9,955 in favor and 6,260 against, for a total of 16,215 votes cast.

15) On February 28, 2019, I, along with John Michael Durback and Bryan Twitchell, incorporated Toledoans for Safe Water as a nonprofit corporation under Ohio law.

16) TSW continues to meeting. I attend most meetings and often lead the meetings. The group is planning various activities to follow upon the passage of LEBOR, including public presentations related to the poisoning of Lake Erie and the long campaign ahead to assert the ecosystem's rights of nature and protection of its waters.

17) I have studied the science of how Lake Erie has an algae contamination problem at length. As I understand it, the drainage tiles in the Great Black Swamp and surrounding rural areas send dissolved reactive phosphorus ("DRP", which is 100% bioavailable) and other nutrients to the drainage ditches and eventually into Lake Erie. These drainage tiles run under the buffer zones, which mainly reduce particulate phosphorus ("PP"). Total phosphorus includes DRP and PP. DRP has been increasing over time, even though total phosphorus has been reported to be decreasing. Large scale industrial agriculture and confined animal feeding operations ("CAFOs") that create, store, and apply manure (often in liquid form) are contributing to the problem in a major way. To my knowledge, phosphorous is the limiting factor of cyanobacteria -- it can fix its own nitrogen. Agriculture is of course not the only source of the problem, but it certainly plays a major role in the problem. Reducing nutrient pollution at the source shifts the accountability to the source. At present, the people of Toledo and other places in the region are being constantly burdened with the efforts to clean up Lake Erie water.

18) Local democracy figures into problem solving Lake Erie, because the governmental authorities and elected/appointed officials all have told us "no." It had to be the people who to say "yes!" If we as taxpayers are expected to pay for the clean up efforts - we should have a direct say in what burdens the watershed faces.

19) I do not believe the City of Toledo will do an adequate job of defending LEBOR because local elected officials actively campaigned against LEBOR and often leaned on the decisions of the city law department instead of forming their own opinion. The law department is entrenched in traditional laws that legalize the harms causing the problems that face Lake Erie and the greater Toledo area

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 17th day of March, 2019 at Toledo, Ohio.

*Markie Miller*
Markie Miller