**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **Drewes Farms Partnership**, | No. 3:19-cv-00434-JZ |
| Plaintiff, | The Honorable Jack Zouhary |
| v. | |
| **City of Toledo**, | **[Proposed] Intervenor-Defendants' Memorandum in Support of Motion to Dismiss** |
| Defendant, and | |
| **Lake Erie Ecosystem** and **Toledoans for Safe Water, Inc.**, | *Oral Argument requested* |
| Intervenor-Defendants. | |

**[PROPOSED] INTERVENOR-DEFENDANTS' MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS**

March 18, 2019

## Table of Contents

Table of Authorities.....................................................................................................4

Statement of the Issues............................................................................................6

Summary of the Argument.......................................................................................6

Standard of Review..................................................................................................8

Argument..................................................................................................................8

    I.  DFP lacks standing...........................................................................................9

      A. DFP lacks standing because it has not shown that it is harmed by the
        protection of the Lake Erie Ecosystem's rights or by the people of the City
        of Toledo's right to a clean and healthy environment...................................9

        1.  DFP fails to state a concrete injury.............................................................10

        2.  DFP fails to state an actual or imminent injury.........................................12

        3.  DFP claims that the Constitution has been violated, but they claim nothing
          else. Claims of constitutional violations with nothing else are not injuries
          in fact........................................................................................................14

      B. DFP has no standing to raise foreign affairs or international relations
        claims..........................................................................................................16

    II.  DFP has failed to state a claim on its federal law claims, and therefore lacks
        supplemental jurisdiction on its state law claims..........................................16

      A. DFP's claims of constitutional right violations are premised on the
        assumption that a partnership has constitutional rights, an assumption for
        which DFP provides no supporting authority...............................................17

      B. Without DFP's alleged constitutional claims and "foreign affairs
        preemption" claim, the Court lacks subject matter jurisdiction to hear the
        remaining claim on whether Toledo has authority to enact the Lake Erie
        Bill of Rights Charter provisions...............................................................21

Conclusion..............................................................................................................23

Certificate of Memorandum Length.......................................................................25

Certificate of Service.............................................................................................26

1

## Table of Authorities

*Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007).........................................16

*Bellis v. United States*, 417 US 85 (1974)..................................................................18

*Carden v. Arkoma Associates*, 494 U.S. 185, 189 (1990)........................................19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).................................9

*Frothingham v. Mellon*, 262 U.S. 447, 487 (1923)...................................................10

*Gilmer-Glenville, Limited Partnership v. Farmer's Home Admin.*,
102 F. Supp. 2d 791 (N.D. Ohio, 2000)..................................................................19p.

*Hein v. Freedom from Religion Foundation, Inc.*, 551 U.S. 587, 598 (2007)...........8

*J.D. Partnership v. Berlin Township Board of Trustees*,
412 F. Supp. 2d 772 (S.D. Ohio, 2005)....................................................................19

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)............................8

*Los Angeles v. Lyons*, 461 US 95, 102, 107 (1983)............................................12-13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).....................10, 12-13

*Musson Theatrical, Inc. v. Federal Exp. Corp.*,
89 F.3d 1244, 1247 (6th Cir. 1998).....................................................................22-23

*Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir., 2011)…9

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L.Ed.2d 635 (2016)................10

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993)..........................................17

*Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).........8

*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)................................11, 23

*United States v. Richardson*, 418 U.S. 166 (1974)...................................................23

*Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 US 464 (1982)..........................................................................................15

*Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)..........................................................8

*Wedgewood Ltd. Partnership v. Township of Liberty*,
610 F.3d 340 (6th Cir. 2010)..........................................................................................19

## Constitutional Provisions

U.S. Const., Art. III..........................................................................................15

U.S. Const., 5th Amend..........................................................................................17

U.S. Const., 1st Amend..........................................................................................17

## Statutes

28 U.S.C. § 1331..........................................................................................22

28 U.S.C. § 1343..........................................................................................22

28 U.S.C. § 1367..........................................................................................22

42 U.S.C. § 1983..........................................................................................17-19, 21

O.R.C. Chapter 1776..........................................................................................18

## Rules

Fed. R. Civ. P. 12(b)(6)..........................................................................................16

## Secondary Sources

Oliver A. Houck, *Noah's Second Voyage: The Rights of Nature as Law*,
31 Tul. Envtl. L.J. 1, 29 (2017)..........................................................................................21

**Statement of the Issues**

1. Does Plaintiff have standing, when it fails to state a concrete injury, and fails to state an actual or imminent harm?

2. Does Plaintiff, a partnership, state a claim under Section 1983, and if not, does the Court have subject matter jurisdiction?

**Summary of the Argument**

Intervenor-Defendants Toledoans for Safe Water and Lake Erie Ecosystem move to dismiss Plaintiff Drewes Farms Partnership's ("DFP") claims for lack of standing and failure to state a claim.

DFP seeks a judicial opinion on the Lake Erie Bill of Rights ("LEBOR"), which are new provisions in the Toledo City Charter that recognize certain rights for the Lake Erie Ecosystem and for residents of Toledo. LEBOR does not say that all pollution is unlawful. Or that all runoff is unlawful. LEBOR says that the Lake Erie Ecosystem has the right "to exist, flourish, and naturally evolve," the people have a right to a "clean and healthy Lake Erie and Ecosystem," and that what is unlawful is for a corporation to violate these rights.

DFP's Complaint never claims that DFP is polluting the Lake Erie watershed, and thus also never claims that it is doing so enough to violate the rights recognized in LEBOR. Instead, DFP maintains that it complies with relevant antipollution regulations (and voluntarily goes beyond those regulations), yet that

1  LEBOR is somehow injuring its plans to continue to minimize its runoff into the

2  Lake Erie watershed. Thus, Intervenor-Defendants challenge DFP's standing, as

3  DFP has not met its burden to show both the concreteness element and the actual

4  or imminent element of "injury in fact."

5      In addition, DFP seeks to invoke this Court's subject matter jurisdiction

6  through federal question. However, DFP fails to cite a single case recognizing that

7  a partnership has rights under the First, Fifth, or Fourteenth Amendments. Thus,

8  DFP's Section 1983 claims should be dismissed, as DFP has not met its burden to

9  state those claims. Since DFP's remaining claims (except its "foreign affairs

10  preemption" claim, which it also lacks standing to raise) are state law claims, this

11  Court should refuse to take supplemental jurisdiction over those claims, and so

12  should dismiss them too.

13      In essence, DFP's Complaint is merely an assertion that it *might* produce

14  phosphorous and nitrogen runoff, and that runoff *might* be a violation of the Lake

15  Erie Bill of Rights. The Complaint is an overreaction by the corporate agricultural

16  lobby, who poured dark money into the campaign against the Lake Erie Bill of

17  Rights, and now wants this Court to ignore constitutional justiciability, and

18  prudential judicial restraint, by reaching out and gaveling down a

19  democratically-enacted law. The people of Toledo enacted LEBOR at the ballot

20  box by a clear margin of 9,955 to 6,260. This Court should not countenance

Memorandum in Support of Motion to Dismiss – 7 of 26

1    Plaintiff's effort to get a quick judicial determination about the scope of rights

2    under LEBOR, and the quality of activity that would violate those rights, on the

3    basis of such a flimsy assertion of standing in the first place.

**Standard of Review**

5        The federal courts "are not empowered to seek out and strike down any

6    governmental act that they deem to be repugnant to the Constitution." *Hein v.*

7    *Freedom from Religion Foundation, Inc.*, 551 U.S. 587, 598 (2007) (plurality

8    opinion). Rather, federal courts can only hear cases where "the plaintiff has

9    'alleged such a personal stake in the outcome of the controversy' as to warrant his

10   invocation of federal-court jurisdiction and to justify exercise of the court's

11   remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)

12   (citations omitted).

13       "It is to be presumed that a cause lies outside [federal courts'] limited

14   jurisdiction, and the burden of establishing the contrary rests upon the party

15   asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375

16   (1994) (citations omitted). "A federal court is presumed to lack jurisdiction in a

17   particular case unless the contrary affirmatively appears." *Stock West, Inc. v.*

18   *Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

**Argument**

20       The Court must dismiss DFP's Complaint for two reasons. First, DFP lacks

1 standing because it fails to demonstrate concrete, and actual or imminent, injury.

2 Second, DFP fails to state a claim that can be heard in federal court because it

3 provides no support for its assertion that it has federal constitutional rights.

**I.    DFP lacks standing.**

5     "To meet the minimum constitutional standards for individual standing

6 under Article III, a plaintiff must show (1) it has suffered an "injury in fact" that is

7 (a) concrete and particularized and (b) actual or imminent, not conjectural or

8 hypothetical; (2) the injury is fairly traceable to the challenged action of the

9 defendant; and (3) it is likely, as opposed to merely speculative, that the injury will

10 be redressed by a favorable decision." *Smith v. Jefferson Cnty. Bd. of Sch.*

11 *Comm'rs*, 641 F.3d 197, 206 (6th Cir., 2011) (citing *Friends of the Earth, Inc. v.*

12 *Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145

13 L.Ed.2d 610 (2000)).

14     Here, DFP lacks standing, as described below, because its purported injury is

15 not concrete, and is conjectural or hypothetical, as it has not shown in its

16 Complaint that it is violating the Lake Erie Bill of Rights.

**A.   DFP lacks standing because it has not shown that it is harmed by the
protection of the Lake Erie Ecosystem's rights or by the people of the
City of Toledo's right to a clean and healthy environment.**

20     Plaintiff must identify "an injury in fact—an invasion of a legally protected

21 interest which is (a) concrete and particularized . . . and (b) actual or imminent, not

1   conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

2   (1992) (citations and quotation marks omitted). The Court has consistently rejected

3   standing claims based on "remote, fluctuating and uncertain" injury. *Frothingham*

4   *v. Mellon*, 262 U.S. 447, 487 (1923).

5   **1.    DFP fails to state a concrete injury.**

6   "We have made it clear time and time again that an injury in fact must be

7   both concrete *and* particularized. A 'concrete' injury must be '*de facto*'; that is, it

8   must actually exist. When we have used the adjective 'concrete,' we have meant to

9   convey the usual meaning of the term – 'real,' and not 'abstract.'" *Spokeo, Inc. v.*

10  *Robins*, 136 S. Ct. 1540, 1548, 194 L.Ed.2d 635 (2016) (citations omitted).

11  "Article III standing requires a concrete injury even in the context of a statutory

12  violation." *Id.*, 136 S. Ct. at 1549.

13  Here, the Lake Erie Bill of Rights protects the Lake Erie Ecosystem's "right

14  to exist, flourish, and naturally evolve." (LEBOR § 1(a).) It also protects the

15  people of the City of Toledo's "right to a clean and healthy environment, which

16  shall include the right to a clean and healthy Lake Erie and Lake Erie ecosystem."

17  (*Id.*, § 1(b).)

18  DFP does not claim to be violating any of these provisions in Toledo's

19  Charter. Instead, DFP argues that it is taking many proactive measures to reduce or

20  eliminate phosphorous runoff from its fields. (Compl. ¶¶ 24-36.) Notably, DFP is

part of "an edge-of-field study being conducted by the Ohio State University and the United States Department of Agriculture. This program tracks phosphorous and nitrate runoff and develops and measures different strategies to reduce runoff." (Compl. ¶ 34.) However, even though DFP admits the data exists to show whether DFP is causing fertilizer runoff, the Complaint fails to state whether there actually is any phosphorous or nitrate runoff from DFP's fields. An injury must be concrete – it must be real. Absent an assertion of those facts, DFP lacks standing to challenge the Lake Erie Bill of Rights.

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009), provides a useful analogy. There, Justice Scalia, writing for the majority, succinctly summarizes the issue in the first paragraph in the case:

> Respondents are a group of organizations dedicated to protecting the environment. (We will refer to them collectively as "Earth Island.") They seek to prevent the United States Forest Service from enforcing regulations that exempt small fire-rehabilitation and timber-salvage projects from the notice, comment, and appeal process used by the Forest Service for more significant land management decisions. We must determine whether respondents have standing to challenge the regulations in the absence of a live dispute over a concrete application of those regulations.

*Id.* at 490. Justice Scalia went on to note "[t]he regulations under challenge here neither require nor forbid any action on the part of respondents." *Id.* at 493.

DFP's case is analogous to Earth Island's claim. All are seeking to get the court to change government policies "in the absence of a live dispute over a

1    concrete application of those regulations." *Id.* at 490.

2        If DFP genuinely believes it has actual harm from the recognition of these

3    rights for Lake Erie and the people of Toledo, then it needs to allege facts sufficient

4    to show that harm. That means DFP needs to show that its activities would be

5    curtailed by the Lake Erie Bill of Rights, which means showing that it is harming

6    the Lake and the Toledo water supply at a level sufficient to violate the rights

7    recognized in LEBOR. Otherwise, as with Earth Island, the Lake Erie Bill of

8    Rights "neither require[s] nor forbid[s] any action on the part of [DFP]." *Id.* at 493.

9    Presenting the data would not require effort by Plaintiff, since DFP admits that

10   OSU and USDA have this data for its fields. (Compl. ¶ 34.) Otherwise, in the

11   absence of a concrete injury, DFP has no standing to sue to overturn a law that is

12   not affecting it.

13       **2.      DFP fails to state an actual or imminent injury.**

14       The second part of the *Lujan* injury-in-fact rule requires that the plaintiff's

15   injury be "actual or imminent, not conjectural or hypothetical." 504 US 55, 560. In

16   formulating this rule, the Court cited its earlier decision in *Los Angeles v. Lyons*

17   where Justice White wrote for the majority: "The plaintiff must show that he has

18   sustained or is immediately in danger of sustaining some direct injury as the result

19   of the challenged official conduct and the injury or threat of injury must be both

20   real and immediate not conjectural or hypothetical." 461 US 95, 102 (1983).

Memorandum in Support of Motion to Dismiss – 12 of 26

It is true, as the Court clarifies in *Lujan*, that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we must presume that general allegations embrace those specific facts that are necessary to a summary judgment motion." 504 US 55, 561. However, beyond the pleading stage, "the plaintiff can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for the purposes of the summary judgment motion will be taken to be true." *Id.* (citations omitted).

DFP claims that "[c]orn, soybean, wheat, and/or alfalfa farming, such as that conducted by Drewes Farms, requires the use of some form of fertilizer, such as manure and/or commercial fertilizers. Even with the state-of-the-art technology and best management practices to reduce and minimize runoff, such as those utilized by Drewes Farms, the use of fertilizer unavoidably results in some runoff from agricultural fields." (Compl. ¶ 51.)

In *Lyons*, the Supreme Court held that a plaintiff lacked standing to seek an injunction against the enforcement of a police chokehold policy because he could not credibly allege that he faced a realistic threat from the policy. 461 U.S. 95, 107. Here, DFP's specific allegations fail to describe an injury in fact because they cannot credibly allege that DFP faces a realistic threat from LEBOR.

It is tempting to make the logical connection that because DFP plans to use

fertilizers, DFP violates Lake Erie's and the people of Toledo's rights. This is exactly what DFP does in the Complaint where it claims "LEBOR exposes Drewes Farms to massive liability if Drewes Farms continues to fertilize its fields because it can never guarantee that all runoff will be prevented from entering the Lake Erie Watershed." (Compl. ¶ 5.) This falls well short of alleging that it is engaged in conduct that does violate LEBOR.

DFP needs to allege more to show it faces a realistic threat. At best, DFP claims it might cause runoff and that it fears it might be liable due to "even *nominal or potential* runoff from farming activities." (Compl. ¶¶ 51-52 (emphasis in original)). But "nominal or potential" are nearly the exact watch-words for claims that do not meet the requirements for standing in federal court.

DFP's standing claim is exactly the kind of speculative assertion that the federal standing doctrine that enforces Article III is supposed to prevent. DFP has not alleged a concrete injury, nor actual or imminent harm. Thus, the Court must dismiss Plaintiff's claims because Plaintiff lacks standing.

> **3.** **DFP claims that the Constitution has been violated, but they claim nothing else. Claims of constitutional violations with nothing else are not injuries in fact.**

The only "real and concrete harms" DFP claims LEBOR causes it are violations of the United States Constitution. (Compl. ¶ 6.) These claims are similar to claims the Supreme Court dismissed as not rising to the level of an injury in fact

1  in *Valley Forge Christian College v. Americans United for Separation of Church*

2  *and State*, 454 US 464 (1982). In that case, Americans United for Separation of

3  Church and State, Inc. brought suit to challenge the conveyance of federal property

4  to the Valley Forge Christian College as a violation of the Establishment Clause of

5  the First Amendment.

6       The Court dismissed the claims and explained, "Although respondents claim

7  that the Constitution has been violated, they claim nothing else. They fail to

8  identify any personal injury suffered by them *as a consequence* of the alleged

9  constitutional error, other than the psychological consequence presumably

10 produced by observation of conduct with which one disagrees. That is not an injury

11 sufficient to confer standing under Art. III, even though the disagreement is

12 phrased in constitutional terms." *Id.* at 485-86 (emphasis in original).

13      The Court also wrote, "This Court repeatedly has rejected claims of standing

14 predicated on the right, possessed by every citizen, to require that the Government

15 be administered according to law. . . . Such claims amount to little more than

16 attempts to employ a federal court as a forum in which to air generalized

17 grievances about the conduct of government." *Id.* at 482-83 (citations and

18 quotations omitted).

19      DFP's claims are analogous to the claims made by Americans United for

20 Separation of Church and State, Inc. in *Valley Forge*. The City of Toledo, by direct

democratic processes, voted to enact LEBOR. Just because DFP dislikes the result, it cannot employ this court as a forum in which to air its grievances. DFP has only alleged that LEBOR violates its constitutional rights. This is not enough to grant standing as an injury in fact.

### B.   DFP has no standing to raise foreign affairs or international relations claims.

DFP lacks standing to assert its vaguely argued "Federal Law Preemption - Foreign Affairs Preemption" claim. (Compl. ¶¶ 91-99.) This claim argues that corporations and governments in Canada will be subject to liability for violating the Lake Erie Bill of Rights. (*Id.*, ¶¶ 95-96.) However, DFP makes no claim itself to be operating in Canada or even anywhere outside of Ohio, nor to be anything more than an Ohio partnership. DFP lacks standing to assert this claim.

### II.   DFP has failed to state a claim on its federal law claims, and therefore lacks supplemental jurisdiction on its state law claims.

Under Rule 12(b)(6), the Court may dismiss a complaint if it fails to "state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of its entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007). Additionally, DFP has the burden of production to come

1 forward with facts demonstrating a *prima facie* case. *St. Mary's Honor Center v.*

2 *Hicks*, 509 U.S. 502 (1993).

3       In its Complaint, DFP seeks redress pursuant to 42 U.S.C. § 1983 for the

4 deprivation of its constitutional rights, under color of state law. Specifically, DFP

5 alleges that LEBOR violates its purported fundamental right to freedom of speech

6 and to petition the courts under the First Amendment; violates its right to equal

7 protection; violates its Fifth Amendment protection against vague laws; and

8 deprives it of its rights without due process (Compl. ¶¶ 6 (a)-(d), 59-87 (Counts I

9 through V), 133(a)-(e), 136(a)-(e).) All of these claims are premised on the

10 assumption – unsupported by any authority cited in DFP's Complaint – that

11 partnerships have constitutional rights.

12       Without its Section 1983 claims (and its foreign affairs preemption claim, for

13 which it lacks standing as discussed above), DFP lacks federal question subject

14 matter jurisdiction. Therefore, the Court should not exercise its discretion to extend

15 supplemental jurisdiction to the remaining state law claims, and should instead

16 dismiss all of DFP's claims.

17
18
19 **A.  DFP's claims of constitutional right violations are premised on the assumption that a partnership has constitutional rights, an assumption for which DFP provides no supporting authority.**

20       A *prima facie* claim under 42 U.S.C. § 1983 requires DFP to demonstrate

21 that (1) a person deprived it of a federal right; and (2) the person who deprived it of

Memorandum in Support of Motion to Dismiss – 17 of 26

1    that right acted under color of state law.

2         DFP has not satisfied the first element. The constitutional rights that DFP

3    alleges LEBOR violates might satisfy the first element for a *prima facie* claim

4    under 42 U.S.C § 1983 if DFP were a legal person under the Fourteenth

5    Amendment. However, DFP admits that it is an Ohio general partnership organized

6    pursuant to Ohio Revised Code Chapter 1776. (Compl. ¶ 10.) DFP presumes that

7    partnerships possess constitutional rights, and it fails to allege that a federal court

8    has ever ruled that partnerships possess constitutional rights in order to support its

9    presumption.

10        This failure may stem from the possibility that no federal court has ever

11   expressly recognized the constitutional rights for partnerships that DFP claims

12   LEBOR violates. Indeed, Intervenor-Defendants' preliminary research

13   demonstrates that constitutional rights of partnerships have only been addressed in

14   the context of the Fifth Amendment privilege against self-incrimination. And, in

15   this context, the Supreme Court has routinely ruled that partnerships may *not* avail

16   themselves of the Fifth Amendment privilege against self-incrimination. *See Bellis*

17   *v. United States*, 417 US 85 (1974).

18        It is not clear from the Complaint, but DFP seemingly assumes it should be

19   treated just like a corporation. (Compl. ¶ 46.) Federal courts have not always

20   viewed partnerships as being synonymous with corporations. In the context of

Memorandum in Support of Motion to Dismiss – 18 of 26

finding complete diversity, for example, the Supreme Court has ruled that a limited partnership is not in its own right a citizen of the State it claims created it and explained, "While the rule regarding the treatment of corporations as 'citizens' has become firmly established, we have . . . just as firmly resisted extending that treatment to other entities." *Carden v. Arkoma Associates*, 494 U.S. 185, 189 (1990).

Partnerships sometimes do bring claims under 42 U.S.C. § 1983 alleging violations of constitutional rights. Federal courts have ruled on these cases without ever addressing the existence or nonexistence of a partnership's constitutional rights. *See Wedgewood Ltd. Partnership v. Township of Liberty*, 610 F.3d 340 (6th Cir. 2010); *J.D. Partnership v. Berlin Township Board of Trustees*, 412 F. Supp. 2d 772 (S.D. Ohio, 2005); *Gilmer-Glenville, Limited Partnership v. Farmer's Home Admin.*, 102 F. Supp. 2d 791 (N.D. Ohio, 2000). It seems that some courts and partnerships, like DFP, presume that partnerships possess constitutional rights. But the mere presumption of possession of constitutional rights is not an affirmative recognition of the possession of constitutional rights.

Examining some of these cases more closely shows that this question has not been answered; rather, it has merely sometimes been assumed. As the burden is on DFP to state a claim, DFP must produce an authority showing such rights. In *Wedgewood Ltd. Partnership v. Township of Liberty*, 610 F.3d 340 (6th Cir. 2010),

1    the appellate court ruled that the Township of Liberty, Ohio, violated a limited

2    partnership's procedural due process rights when the Township adopted zoning

3    instructions that, in effect, amended a planned unit development without providing

4    the partnership with notice and an opportunity to be heard. There was no

5    discussion about the partnership's constitutional rights as a partnership. *Id.* Instead,

6    the court asked whether the partnership had a vested property interest as a property

7    owner and answered affirmatively by looking to substantive state zoning laws. *Id.*

8           Similarly, in *Gilmer-Glenville, Limited Partnership v. Farmer's Home*

9    *Admin.*, 102 F. Supp. 2d 791 (N.D. Ohio, 2000), the plaintiff partnership brought a

10   claim under the Fifth Amendment takings clause along with several other claims.

11   The Northern District of Ohio ultimately found that the plaintiff had failed to

12   establish a claim under the Takings Clause because the Takings Clause "has limited

13   application to the relative property rights of party litigants when those rights have

14   been voluntarily created by contract." *Id.* at 797.  Again, the partnership's

15   constitutional rights as a partnership were not discussed. *Id. passim*.

16          In the context of LEBOR, it is easy to wonder why an artificial legal entity

17   like a partnership is presumed to possess rights while Lake Erie, a real, life-giving

18   ecosystem, is not. Scholars who have explored this question – why "legal fictions"

19   like corporations have more rights than the physical and biological real world –

20   have concluded that courts have been "bounded more by our perceptions than by

Memorandum in Support of Motion to Dismiss – 20 of 26

1  law." Oliver A. Houck, *Noah's Second Voyage: The Rights of Nature as Law*, 31

2  TUL. ENVTL. L.J. 1, 29 (2017).

3  Nor can DFP claim that the constitutional rights of its partners are violated

4  by the Lake Erie Bill of Rights, and thereby confer on the partnership itself the

5  constituent partners' constitutional rights, because the Lake Erie Bill of Rights only

6  applies to restrict the activities of business entities and governments, not

7  individuals. (LEBOR § 2(a), at Dkt. 1-1 ("It shall be unlawful for any corporation

8  or government to violate the rights recognized and secured by this law.

9  'Corporation' shall include any business entity."); *id.* § 3(a) ("Any corporation or

10  government that violates any provision of this law . . . .").) Thus, the individual

11  partners' constitutional rights are unaffected by the Lake Erie Bill of Rights.

12  Regardless, in order for DFP's Complaint to survive this Rule 12(b)(6)

13  challenge, it must produce facts establishing a *prima facie* claim under 42 U.S.C §

14  1983. And, to do that, it must demonstrate that a partnership is entitled to

15  constitutional rights. It has failed to do that. Therefore, DFP fails to state a claim

16  upon which relief can be granted, and its Section 1983 claims must be dismissed.

17  **B.  Without DFP's alleged constitutional claims and "foreign affairs**
18  **preemption" claim, the Court lacks subject matter jurisdiction to hear**
19  **the remaining claim on whether Toledo has authority to enact the Lake**
20  **Erie Bill of Rights Charter provisions.**

21  DFP argues it has subject matter jurisdiction, but all the sources of that

22  jurisdiction rest on its claim to have federal constitutional rights, an assumption

1 which DFP has not provided any authority to support.

2    In paragraph 12 of its Complaint, DFP cites to 28 U.S.C. § 1331 (federal

3 question jurisdiction) which provides district courts with "original jurisdiction of

4 all civil actions arising under the Constitution, laws, or treaties *of the United*

5 *States*" (emphasis added). In paragraph 13, DFP cites to civil rights law giving

6 district courts original jurisdiction to address "right, privilege or immunity secured

7 by the Constitution *of the United States* or by any Act of *Congress*" and for

8 violations of "any Act of *Congress* providing for the protection of civil rights." 28

9 U.S.C. § 1343(a)(3) and (a)(4) (emphasis added in both subsections).

10    Thus, DFP admits that it has no subject matter jurisdiction in federal court

11 without its purported constitutional rights claims. (Compl. ¶¶ 12-13.) DFP admits

12 that its remaining claims are "state law claims" and should be heard by the court

13 under supplemental jurisdiction. (Compl. ¶ 14.) But the supplemental jurisdiction

14 statute recommends a district court "decline to exercise supplemental jurisdiction

15 [when] the district court has dismissed all claims over which it has original

16 jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Musson Theatrical, Inc. v. Federal*

17 *Exp. Corp.*, 89 F.3d 1244 (6th Cir. 1998) ("When all federal claims are dismissed

18 before trial, the balance of considerations usually will point to dismissing the state

19 law claims, or remanding them to state court if the action was removed." (citations

20 omitted)).

1    Here, without its constitutional claims and "foreign affairs preemption"

2  claim, which do not exist because DFP is an Ohio partnership that only operates in

3  Ohio, the only remaining claims are, in DFP's own words, "State Law Preemption"

4  claims. (Compl. ¶¶ 100-132.)

5    When a federal court lacks subject matter jurisdiction, it must dismiss. *See*

6  *also Musson*, 89 F.3d at 1247 (holding that state law claims dismissed due to lack

7  of supplemental jurisdiction should be dismissed without prejudice).

8                                    **Conclusion**

9    Where the complaining party lacks an injury in fact, the court must not

10  "oversee legislative or executive action [because doing so] would significantly

11  alter the allocation of power away from a democratic form of government."

12  *Summers*, 555 U.S. at 493 (quoting *United States v. Richardson*, 418 U.S. 166

13  (1974)) (quotation and modification omitted).

14    Here, Plaintiff lacks injury in fact due to the concreteness element, lacks

15  injury in fact due to actual or imminent element, and Plaintiff has failed to state a

16  claim that invokes federal question jurisdiction. As a result, the Court should

17  dismiss all of Plaintiffs' claims.

18    This case certainly raises important questions about the legislative action by

19  the people of Toledo in their Charter. But those questions are not properly before

20  this Court and thus this Court must not damage our democratic form of

1 government by entertaining those questions at the request of a party who has no

2 standing.

Respectfully submitted this Eighteenth Day of March, 2019.

**/s/ Terry J. Lodge**
Terry J. Lodge, Esq. (S.Ct. #0029271)
316 N. Michigan St., Suite 520
Toledo, OH 43604-5627
Phone (419) 205-7084
tjlodge50@yahoo.com
lodgelaw@yahoo.com

**/s/ Lindsey Schromen-Wawrin**
Lindsey Schromen-Wawrin (WSBA #46352)
Shearwater Law PLLC
306 West Third Street
Port Angeles, WA 98362
Phone (360) 406-4321
Fax (360) 752-5767
lindsey@ShearwaterLaw.com

*Attorneys for Intervenor-Defendants*
*Lake Erie Ecosystem and Toledoans for Safe Water, Inc.*

1
## Certificate of Memorandum Length

2        Pursuant to Local Rule 7.1(f), this brief does not exceed 20 pages, as this

3  case is currently unassigned to a track.


Dated: March 18, 2019.

> **/s/ Terry J. Lodge**
> Terry J. Lodge, Esq. (S.Ct. #0029271)
> 316 N. Michigan St., Suite 520
> Toledo, OH 43604-5627
> Phone (419) 205-7084
> tjlodge50@yahoo.com
> lodgelaw@yahoo.com
>
> **/s/ Lindsey Schromen-Wawrin**
> Lindsey Schromen-Wawrin (WSBA #46352)
> Shearwater Law PLLC
> 306 West Third Street
> Port Angeles, WA 98362
> Phone (360) 406-4321
> Fax (360) 752-5767
> lindsey@ShearwaterLaw.com
>
> *Attorneys for Intervenor-Defendants*
> *Lake Erie Ecosystem and Toledoans for Safe Water, Inc.*

**Certificate of Service**

I certify that I electronically filed this document with the Clerk of the Court for the United States District Court for the Northern District of Ohio by using the Court's CM/ECF system on March 18, 2019.

The other parties are Filing Users and are served electronically by the Notice of Docket Activity.

Dated: March 18, 2019

**/s/ Terry J. Lodge**
Terry J. Lodge, Esq. (S.Ct. #0029271)
316 N. Michigan St., Suite 520
Toledo, OH 43604-5627
Phone (419) 205-7084
tjlodge50@yahoo.com

*Attorney for Intervenor-Defendants*
*Lake Erie Ecosystem and Toledoans for Safe Water, Inc.*