**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO,
WESTERN DIVISION**

| | | |
|---|---|---|
| DREWES FARM PARTNERSHIP, | : | |
| | : | |
| Plaintiff, | : | CASE NO. 3:19-cv-00434-JZ |
| | : | |
| v. | : | |
| | : | JUDGE JACK ZOUHARY |
| CITY OF TOLEDO, | : | |
| Defendant, | : | |
| AND LAKE ERIE ECOSYSTEM et al., | : | |
| Intervenor-Defendants. | : | |

**MOTION TO INTERVENE
OF OHIO ATTORNEY GENERAL DAVE YOST**

Pursuant to Fed. R. Civ. P. 24(a) and (b), Ohio Attorney General Dave Yost respectfully requests leave to intervene as a Plaintiff in this proceeding. The State has a significant interest in the protection of Lake Erie, which is a vital state resource. Further, the State has a vested interest in the continued implementation and enforcement of environmental, agricultural, and natural resources regulatory programs. The State has been entrusted with the legal responsibility for exercising

this authority. As set forth in the attached memorandum in support, the State has a fundamental interest in the subject matter of this proceeding and the disposition of this action may impair or impede the State's ability to protect its interests.

Respectfully submitted,

DAVE YOST
Attorney General of Ohio

/S/ Daniel J. Martin
Daniel J. Martin (0065249)
Amanda M. Ferguson (0089576)
Assistant Attorneys General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215
Tel: 614-466-2766; Fax: 614-752-2441
Daniel.Martin@ohioattorneygeneral.gov
Amanda.Ferguson@ohioattorneygeneral.gov
*Attorneys for Movant and Proposed Intervenor-Plaintiff*

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

The City of Toledo Charter Amendment contradicts the State of Ohio's multi-faceted statutory, regulatory, and civil and criminal enforcement programs that control water pollution in the State of Ohio. This includes Ohio's environmental, agricultural, and natural resources regulatory programs affecting Lake Erie and the waters feeding it. Any ruling by this Court adverse to those laws would hinder the State's ability to enforce Ohio law. *Linton v. Comm'r of Health & Env't,* 973 F.2d 1311, 1319 (6th Cir. 1992) (acknowledging that potential *stare decisis* effects can be a sufficient basis for finding an impairment of interest). The State, not the City of Toledo, is uniquely positioned to carry out the policies behind those laws and to serve as their enforcement arm.

The Charter Amendment also contradicts the Ohio Constitution. The Ohio Constitution limits municipalities like Toledo in their exercise of their police powers to enact and enforce local regulations so long as they do not conflict with Ohio's general laws. Oh. Const. Art. XVIII, § 3. Typically, municipal corporations do not have the authority to enact laws that apply outside their limits. Instead, the general laws of Ohio apply. *See, e.g., State ex rel. Morrison v. Beck Energy Corp.*, 143 Ohio St. 3d 271, 2015-Ohio-485, 37 N.E.3d 128 (State laws with state-wide application preempt local ordinances that "discriminate, unfairly impede, or obstruct" general laws regulating oil and gas activities.). Thus, any attempt to assert the rights of local governments, which the Charter Amendment purports to

do, are subject to comprehensive statewide regulations that prescribe general rules of conduct for all Ohio citizens. *See, e.g., Mothers Against Drilling in our Neighborhood v. State*, 2016-Ohio-817, 60 N.E.3d 727, 731-33 (8th Dist.) (where a local community declared an inalienable right to local self-government over oil and gas drilling, asserting it to be unaffected by state or federal law, preemption is appropriate under Ohio's Constitution in light of a statewide regulatory scheme).

The Court should grant the State's timely motion to intervene under Fed. R. Civ. P. 24 in order to protect Ohio's substantial interests in supporting its agriculture, environmental, and natural resources laws. No other party in the action can adequately represent the State's interests. *See Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1007-08 (6th Cir. 2006) ("an adverse ruling could hinder the State's ability to litigate the validity of the Ohio law"). The State's Motion to Intervene is supported as a matter of right under Fed. R. Civ. P. 24(a) and by the permissive intervention provisions of Fed. R. Civ. P. 24(b).

**II. ARGUMENT**

    **A. The State of Ohio is entitled to intervene as a matter of right under Fed. R. Civ. P. 24(a).**

The State of Ohio is entitled to intervene as a matter of right because it has multiple important interests in this action and its interests will not be adequately represented by any other party. Federal Rule of Civil Procedure 24(a) requires courts to permit anyone to intervene (1) when a federal statute grants "an unconditional right to intervene," or (2) when the proposed intervenor claims an interest in the action "and is so situated that disposing of the action may as a

4

practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a).

The State of Ohio demonstrates the right to intervene as it satisfies the requirements of the second provision of Rule 24(a). The Sixth Circuit has interpreted that provision to establish four elements that a proposed intervenor under Rule 24(a) must meet: (1) the application to intervene is timely; (2) the proposed intervenor has a "substantial legal interest in the case"; (3) the proposed intervenor's ability to protect that legal interest in the absence of intervention would be impaired; and (4) the parties already before the court would not adequately represent the proposed intervenor's interest. *Northeast Ohio Coalition*, 467 F.3d at 1007. The State satisfies all four requirements.

### 1. The State's motion is timely.

The State filed this motion roughly one month after the Complaint was filed and within eleven days after Plaintiff and the City of Toledo agreed to a preliminary injunction enjoining the City from enforcing the Charter Amendment. This case is in opening stages and the current parties to this action will suffer no prejudice or undue burden due to the timing of the State's proposed intervention. In light of these circumstances, the motion is timely. *See Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990).

### 2. The State has numerous and substantial legal interests that support its intervention in this case.

The State of Ohio has a unique and substantial interest in defending its laws. The U.S. Supreme Court has repeatedly recognized this interest. *See, e.g.*, *Maine*

*v. Taylor*, 477 U.S. 131, 137 (1986) ("[A] State clearly has a legitimate interest in the continued enforceability of its own statutes."). Ohio courts have followed suit when considering the relationship between Ohio's laws and local ordinances. *See, e.g., Mothers Against Drilling,* 60 N.E.3d at 733. ("There is nothing in the Ohio Constitution to suggest that the 'people' of a municipal corporation possess the authority, independent and apart from the municipal corporation itself, to enact local ordinances that conflict with state law."). *See also Beck Energy,* 143 Ohio St. 3d *at* 133 (local powers of self-government cannot impinge on state-wide regulatory matters). The vast scope of Ohio's laws demonstrates the uniqueness of Ohio's interests. The Ohio Attorney General represents these interests as the chief law officer for the State and all its departments. R.C. 109.02.

### a. Lake Erie is held by the State of Ohio in Public Trust.

The Charter Amendment seeks to establish the Lake Erie Ecosystem as its own legal identity and extend its authority to Lake Erie generally. This conflicts with years of precedent and the Ohio Revised Code. The Ohio Supreme Court has long recognized that the State holds ownership of the waters of Lake Erie and its subaqueous land within the boundaries of Ohio as trustee for the protection of public rights. *State v. Cleveland & Pittsburgh RR. Co.*, 94 Ohio St. 61, syllabus para. 6, 79, 113 N.E. 677 (1916). Further, R.C. 1506.10 provides that the waters of Lake Erie together with the soil beneath and its contents "…do now belong and have always, since the organization of the state of Ohio, belonged to the state as

proprietor in trust for the people of the state, for the public uses to which they may be adapted, subject to the powers of the United States government…"

Ohio's public trust over Lake Erie is indisputably the law in Ohio. And any application and enforcement of the Charter Amendment conflicts with this law of general application. The Charter Amendment also seeks to create a legal status for Lake Erie that is distinct and independent of the State's ownership in public trust. As owner of these public trust lands and waters, Ohio has an important interest in the outcome of the issues pending in this litigation.

### b. General state laws regulate waters of the state, including Lake Erie.

Contrary to the Amendment's language, regulation of discharges to Ohio's waters is governed by state law and administered either by Ohio EPA or by the Ohio Department of Agriculture. Lake Erie and its tributaries are regulated. *See, e.g.*, R.C. 6111.01(H) (defining "waters of the state"). Ohio's water pollution control laws (R.C. Chapter 6111) and safe drinking water laws (R.C. Chapter 6109) are federally delegated programs that Ohio EPA administers. Under each of them, Ohio EPA exerts regulatory authority pursuant to express statutory language. *See, e.g.*, R.C. 6111.03 and 6109.04. It does so by developing administrative rules, issuing permits, licenses, certificates, etc., issuing administrative orders to cause compliance, and referring both civil and criminal matters to the Attorney General's Office for prosecution. *Id.*; *see also* R.C. 6109.32, 6109.33, 6111.07, and 6111.09.

Any of Ohio's applicable permitting, regulatory, and enforcement programs would be adversely affected by the Charter Amendment.

Similar to Ohio EPA, the Ohio Department of Agriculture has its own program for regulating water pollution from farm waste and runoff. *See* R.C. Chapter 903. In addition, its Division of Soil and Water Conservation has the authority to establish standards for management and conservation practices in farming and animal feeding operations. *See* R.C. Chapter 939. The purpose of these standards is to reduce pollution of waters of the state by soil sediment, animal manure, and residual farm products. Further, the Director of Agriculture has authority to designate watersheds in distress. Ohio Adm.Code 901:13-1-20. The agency also has jurisdiction over permitting and over administrative enforcement. *See, e.g.*, R.C. 903.02 and 903.03. Civil enforcement is via referral to the Ohio Attorney General. *See, e.g.*, R.C. 903.16 and 939.07(B), (C), and (F). The Charter Amendment would nullify the Department's regulatory structure.

Further, the Charter Amendment would undermine and conflict with permits issued by the State to regulated entities. When pollution control permits are issued by Ohio EPA or ODA, they undergo an administrative process and ultimately result in final administrative decisions. The Charter Amendment's provisions purport to provide a veto over these state permitting decisions. Not only is this counter to the doctrine of state preemption, but it also creates uncertainty and confusion about the rights and responsibilities of current or prospective permitees in the Lake Erie watershed.

Both the Ohio EPA and ODA water pollution control programs would be eviscerated if the Charter Amendment's provisions are enforced. Section 5 of the Amendment purports to supersede any existing permits. Thus, the Charter Amendment could potentially be used to claim that facilities permitted by either Ohio EPA or the Department of Agriculture are damaging the "Lake Erie Ecosystem." Further, Section 4 specifically purports to strip any "corporations" of any defense provided by the issuance of a federal or state permit, and would thus conflict with permits issued by the State.

The Charter Amendment conflicts with general state laws and should be subject to the same state preemption analysis the Ohio Supreme Court applied in *Beck Energy*.

### c. Additional state laws and agreements specifically regulate Lake Erie.

Ohio has many other legal interests—state, inter-state, and international—directly impacting Lake Erie. Pursuant to R.C. 1522.12, ODNR's Chief of the Division of Water Resources has established a program to issue permits for the withdrawal and consumptive use of water from Lake Erie. A permit holder may retain the permit until it is abandoned. The Chief shall issue a permit if the applicant meets the statutory criteria set forth under R.C. 1522.13.

Additionally, Ohio law provides for the State to be a member of the Great Lakes Basin Compact. R.C. 6161.01. The Compact is an intergovernmental agency that provides for the usage and welfare of all water resources—industrial, commercial, agricultural, water supply, residential, recreational, and other

legitimate uses—of the Great Lakes Basin, including Lake Erie and its tributaries. Its members are the states adjoining the Great Lakes and the provincial governments of Ontario and Quebec, Canada. Ohio is also a member of the Great Lakes-St. Lawrence River Basin Water Resources Compact, whose purpose is to govern consumptive use of water in Lake Erie and the other Great Lakes. Its membership and legal function are similar to the Great lakes Basin Compact. R.C. 1522.01 *et seq*.

### 3. Inability to intervene could substantially impair the State's ability to protect its interests.

The Sixth Circuit recognizes that Ohio has "an independent interest in defending the validity of Ohio laws and ensuring that those laws are enforced." *Northeast Ohio Coalition*, 467 F.3d at 1008. The State is not required to show the current representation would be inadequate; rather, it has the "minimal" burden to show that an adverse ruling without granting intervention could result in a "ruling [that] could hinder the State's ability to litigate the validity of the Ohio law." *Northeast Ohio Coalition*, 467 F.3d at 1007-08 and the cases cited therein. This case may have future *stare decisis* effects that would impair the State's ability to litigate the legal impact of the Charter Amendment on the State's legal authority in a later subsequent. *Id.* Intervention must be granted in light of these possible legal impairments and the Sixth Circuit's recognition that "a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th

Cir. 1997). As demonstrated above, numerous substantial legal impairments exist in this matter. The State satisfies this requirement.

### 4. No other party is in a position to represent the interests of the State.

The Ohio Attorney General is in the unique position of defending against the foregoing legal impairments as chief law officer of the state. Not only does the State hold Lake Erie in public trust, the Ohio EPA, the Department of Agriculture, and the Department of Natural Resources statutes give the Attorney General legal authority via referrals to enforce these laws. *See, e.g.,* R.C. 903.16(C), 939.07(B), 1509.04(G), 6109.32, 6111.07(B). Contrary to those statutes, the Charter Amendment is an attempt to assert enforcement authority, both civil and criminal, over entities within and well beyond Toledo that are already subject to state and/or federal regulation. The generally applicable principle of law is that a municipal ordinance will yield to a state statute if "(1) the ordinance is an exercise of the police power, rather than of local self-government, (2) the statute is a general law, and (3) the ordinance is in conflict with the statute." *Mendenhall v. Akron,* 117 Ohio St. 3d 33, 2008-Ohio-270, ¶ 17, 881 N.E.2d 255. While private parties may have other interests, only the State is positioned to safeguard all of Ohio's broad legal interests against conflicting local ordinances like the Charter Amendment, which must yield to state law.

This matter requires a statewide perspective. Jurisdiction to enforce Ohio's water pollution, safe drinking water, agriculture, and natural resources laws is exclusively at the state level. The Charter Amendment's reach is not local and

would extend across much of Ohio. Many of the regulatory functions now being claimed under the Charter Amendment have been delegated to Ohio by the federal government—Ohio thus bears a legal responsibility only the State can appropriately defend.

In short, the State satisfies all of the requirements to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2).

### B. In the alternative, the State of Ohio is entitled to permissive intervention under Fed. R. Civ. P. 24(b).

Alternatively, two provisions of Fed. R. Civ. P. 24(b) support the State's permissive intervention. First, the general provision grants courts discretion to allow anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Second, the government-specific provision allows courts to permit intervention when the proposed intervenor is an arm of a State and a "party's claim or defense is based on . . . a statute or executive order administered by the officer or agency." Fed. R. Civ. P. 24(b)(2)(A). For the same reasons explained above, the State has an interest in defending its statutes in this litigation. It thus qualifies for permissive intervention under either the general or government-specific provisions of Fed. R. Civ. P. 24(b).

### III. CONCLUSION

For these reasons, this Court should grant the State of Ohio's motion to intervene.

Respectfully submitted,

DAVE YOST
Attorney General of Ohio


/S/ Daniel J. Martin_____
Daniel J. Martin (0065249)
Amanda M. Ferguson (0089576)
Assistant Attorneys General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215
Tel: 614-466-2766; Fax: 614-752-2441
Daniel.Martin@ohioattorneygeneral.gov
Amanda.Ferguson@ohioattorneygeneral.gov

*Attorneys for Movant and Proposed Intervenor-Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2019, the foregoing was filed electronically through the Court's CM/ECF system, causing a copy of the same to be served by electronic mail upon all counsel of record.

/S/ Daniel J. Martin_____
Daniel J. Martin (0065249)
*Attorney for Movant and Proposed Intervenor-Plaintiff*
