**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **DREWES FARMS PARTNERSHIP**, | : | |
| | : | **Civil Action No. 3:19-cv-00434** |
| *Plaintiff*, | : | |
| | : | **Judge Jack Zouhary** |
| v. | : | |
| | : | **Magistrate Judge James R. Knepp, II** |
| **THE CITY OF TOLEDO, OHIO**, | : | |
| | : | |
| *Defendant*. | | |

**PLAINTIFF DREWES FARMS PARTNERSHIP'S BRIEF IN OPPOSITION
TO MOTION TO INTERVENE (ECF NO. 10-1)**

I.       **INTRODUCTION**

The Lake Erie Ecosystem and Toledoans for Safe Water (TSW) (collectively, the

Applicants) seek to intervene in the above-captioned case. (ECF No. 10-1).  Under the Lake Erie

Bill of Rights (LEBOR), the Lake Erie Ecosystem purports to be an entity comprised of "all

natural water features, communities of organisms, soil as well as terrestrial and aquatic sub

ecosystems that are part of Lake Erie and its watershed."  LEBOR, Section 1(a).  TSW is, by its

own description, an organization that "drafted and proposed the Lake Erie Bill of Rights."  (*Id.* at

9).  LEBOR was drafted with the assistance of the Community Environmental Legal Defense

Fund (CELDF), which aided in LEBOR's passage by Toledo, and now purports to represent the

Applicants.[1] CELDF drafted similar legislation in other localities and has previously attempted

---

[1] *Media Release: Lake Erie and Local Residents File Court Motions to Defend Rights of Lake*,
CELDF, https://celdf.org/2019/03/media-release-lake-erie-and-local-residents-file-court-motions
-to-defend-rights-of-lake/ (last visited Mar. 25, 2019) ("The Community Environmental Legal
Defense Fund (CELDF) assisted TSW in drafting the *Lake Erie Bill of Rights* and is representing
Lake Erie and TSW in [the Motion to Intervene].").  CELDF recently identified Mr. Lindsey
Schromen-Wawrin, attorney for the Applicants, as a CELDF staff attorney.  *National Lawyers*

to intervene in subsequent litigation on behalf of non-sentient geographical features; in fact, one federal court has already sanctioned CELDF attorneys for seeking intervention on behalf of a watershed.  *Pa. Gen. Energy Co., LLC v. Grant Twp.*, No. 14-209ERIE, 2018 U.S. Dist. LEXIS 2069, at *19-20, 27 (W.D. Pa. Jan. 5, 2018).

This Motion to Intervene lacks merit and should be denied for multiple reasons. First, the Ecosystem cannot intervene because an ecosystem cannot be a party under Rule 17 of the Federal Rules of Civil Procedure.  Second, TSW lacks standing to intervene because it does not allege that it suffered tangible harm.  Third, TSW has not and cannot establish intervention as of right under Rule 24 of the Federal Rules of Civil Procedure.  Finally, TSW should not be afforded permissive intervention under Rule 24 because to do so would unduly delay this litigation and CELDF's prior conduct imputes to TSW.

## II.     ARGUMENT OF LAW

### A.     Applicable Legal Standards

Rule 17 of the Federal Rules of Civil Procedure details a list of entities that have the "[c]apacity to sue or be sued."  Fed. R. Civ. P. 17(b).  Rule 17(b)(3) provides, in pertinent part, that for parties other than individuals, corporations, and partnerships, the capacity to sue is "determined by the law of the state where the court is located."

Rule 24 governs intervention.  A motion seeking intervention must be timely, Fed. R. Civ. P. 24(a), (b)(1), and it must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).  Intervention is permitted as of right if a party "claims an interest relating to the property or transaction that is the subject of the

---

*Guild Incorporates Rights of Nature Into Constitution*, CELDF,
https://celdf.org/2019/01/national-lawyers-guild-incorporates-rights-of-nature-into-constitution/
(last visited Mar. 25, 2019).

action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).  A court may also permit intervention if a party "has a claim or defense that shares with the main action a common question of law or fact," and in exercising its discretion, a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

### B. The Ecosystem Cannot Intervene Because it Cannot be a Party Under Rule 17.

A purported ecosystem cannot intervene in a federal case. Under Rule 17 of the Federal Rules of Civil Procedure, a party only has the "[c]apacity to sue or be sued" if it is an individual, a corporation, or if it is otherwise authorized by the law of the state in which the court is located. Fed. R. Civ. P. 17(b).

No precedent supports the proposition that an ecosystem has the capacity to sue or be sued as Rule 17 requires. Federal precedent in fact confirms the opposite: faced with an identical question, the United States District Court for the Western District of Pennsylvania held that "[a]n ecosystem is not an appropriate party under Federal Rule of Civil Procedure 17." *Seneca Res. Corp. v. Highland Twp.*, No. 16-cv-289, 2017 U.S. Dist. LEXIS 152737, at *6 n.5 (W.D. Pa. Sep. 20, 2017) (citing *Pa. Gen. Energy Co. v. Grant Township*, 658 Fed. Appx. 37 n. 2 (3rd Cir. 2016) ("We do not see, however, how a watershed could be considered a proper party under Rule 17. . . .  The plain language of Rule 17 does not permit an ecosystem such as the Little Mahoning Watershed to sue anyone or be sued by anyone . . . .").

Courts have reached the same conclusion with regard to fauna: dogs, turtles, dolphins, and crows have all failed the Rule 17 test. *Jameson v. Oakland Cty.*, No. 10-10366, 2011 U.S. Dist. LEXIS 83392, at *3 n.1 (E.D. Mich. July 29, 2011) (a dog was "simply not capable of

3

suing or being sued"); *Leatherback Sea Turtle v. Nat'l Marine Fisheries Serv.*, No. 99-00152 DAE, 1999 U.S. Dist. LEXIS 23317, at \*56 (D. Haw. Oct. 18, 1999) (holding that "the plain language of Rule 17" does not authorize turtles to sue); *Citizens to End Animal Suffering & Exploitation v. New England Aquarium*, 836 F. Supp. 45, 50 (D. Mass. 1993) (holding that because no state law endowed an individual dolphin with the capacity to sue, it could not do so under Rule 17); *Hawaiian Crow v. Lujan*, 906 F. Supp. 549, 552 (D. Haw. 1991) (finding that "plain language of Rule 17(c) and section 1540(g)" did not authorize a crow to sue.").

To the extent Applicants argue that Ohio law confers Rule 17 capacity on the purported ecosystem, they have not met their burden of identifying any Ohio law that does so.  To merely aver that LEBOR confers such capacity cannot suffice because LEBOR is an amendment to a municipal charter—it is not the law "of the state" of Ohio.  Fed. R. Civ. P. 17(b)(3); *cf. Plate v. Johnson*, 339 F. Supp. 3d 759, 766 (N.D. Ohio 2018) (noting that Ohio law applies to the question of capacity under Rule 17(b)(3)).  Indeed, to the extent LEBOR purports to confer the ability to sue or be sued on the Ecosystem, it *contravenes* Ohio law, under which the State of Ohio holds the relevant geography in trust for its citizens.  R.C. 1506.10 ("It is hereby declared that the waters of Lake Erie consisting of the territory within the boundaries of the state . . . do now belong and always, since the organization of the state of Ohio, belonged to the state as proprietor in trust for the people of the state . . . .).  The Ecosystem cannot be a party to this suit.

Counsel for Applicants know as much. CELDF Attorney Schromen-Wawrin, who attempts to appear on behalf of the Applicants here, and who represented CELDF in *Grant Township*, recently conceded that an ecosystem lacks the capacity to sue under Rule 17: "Obviously, these rules [Rule 17(a)(1) and 17(b)] do not contemplate ecosystems as parties." Lindsey Schromen-Wawrin, *Representing Ecosystems in Court*, 31 Tul. Envtl. L. J. 279, 290

(Summer 2018). This concession may stem from the sanctioning of CELDF in *Grant Township* for seeking to intervene on behalf of an ecosystem.

In *Grant Township*, the court determined that CELDF's attempt to intervene on behalf of an ecosystem was filed in such bad faith that "no reasonable interpretation of existing case law rendered such motion appropriate." *Pa. Gen. Energy Co., LLC v. Grant Twp.*, No. 14-209ERIE, 2018 U.S. Dist. LEXIS 2069, at *19 (W.D. Pa. Jan. 5, 2018). Ultimately, the court exacted sanctions against certain CELDF attorneys. *Id.* at *33-34. In doing so, the court reviewed CELDF's history of drafting local ordinances similar to LEBOR and of engaging in meritless arguments to support those ordinances, and concluded that CELDF's strategy was "ill-conceived" and that CELDF "vexatiously multiplied the litigation" of the matter. *Id.* Mr. Schromen-Wawrin avoided sanctions in that Order, but the court made clear that its decision not to sanction Mr. Schromen-Wawrin "reflect[ed] only the untimeliness of the motion, and not the merits," and that it did not condone his "'fatally' flawed" attempts to intervene on behalf of a watershed. *Id.* at *19-20 (quoting *Pennsylvania Gen. Energy Co., LLC v. Grant Twp.*, 658 F. App'x at 41-42, 43).

### C. Toledoans for Safe Water Cannot Intervene.

#### 1. The Group Lacks Standing.

When an intervenor seeks relief beyond that sought by another party, it must independently meet the standing requirements of Article III. *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1648 (2017). Thus, a putative intervenor must show that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks

omitted)).  An injury is particular if it affects the litigant in a "personal and individual way" and is concrete if it "actually exist[s]." *Id.*

The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74.  The same is true of organizations: the Supreme Court has held that "an organization's abstract concern . . . does not substitute for the concrete injury required by Art. III." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976).  Instead, to establish standing, an organization must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *see also Tenn. Republican Party (16-3360) v. SEC*, 863 F.3d 507, 520 (6th Cir. 2017).

TSW does not articulate an interest in the litigation beyond TSW members' broad interest in Lake Erie and in legal vindication for LEBOR, and it never suggests that any particularized harm would befall it or its members should this Court invalidate LEBOR.  Without such a concrete interest, TSW lacks standing to intervene.  Nor may TSW rely on LEBOR itself to argue that it has standing: not even the United States Congress can confer standing on an entity that otherwise does not meet the requirements of Article III.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016) (". . . a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a right and purports to authorize a suit to vindicate it. Article III standing requires a concrete injury even in the context of a statutory violation.").

### 2.  TSW Cannot Intervene as of Right.

Even if it had standing, TSW cannot intervene as of right because it does not satisfy the requirements of Rule 24.  In the Sixth Circuit, a party seeking to intervene must establish each of the following elements: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *Providence Baptist Church v. Hillandale Comm., Ltd.,* 425 F.3d 309, 315 (6th Cir. 2005) (quoting *Michigan State AFL-CIO v. Miller,* 103 F.3d 1240, 1245 (6th Cir. 1997)).  "The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied." *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2006) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)). TSW's application fails on at least two counts.

#### a.  *TSW does not have a substantial legal interest in the action.*

To intervene, a third party must have a "direct and substantial interest" in the litigation which "must be significantly protectable." *Grubbs v. Norris*, 870 F.2d 343, 346 (6th Cir. 1989). TSW argues that it must be permitted to intervene because it "sponsored LEBOR" and because some of its members have "environmental science backgrounds." (ECF No. 10-1 at 21).

These factors do not create a substantial legal interest in the litigation.  Indeed, the Sixth Circuit has held that when "an organization has only a general ideological interest in the lawsuit—like seeing that the government zealously enforces some piece of legislation that the organization supports—and the lawsuit does not involve the regulation of the organization's conduct, without more, such an organization's interest in the lawsuit cannot be deemed substantial." *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 782 (6th Cir. 2007) (citing *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 346 (6th Cir. 2007)).

After the certification of the results of the special election, any legal interest that the Applicants may once have had in the litigation ceased to exist. *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309 (6th Cir. 2005) (affirming denial of intervention for committee members who circulated ballot measure).  As the Sixth Circuit explained, circulators and authors of initiated ballot measures do not have a cognizable legal interest in the outcome of the election on the ballot measure—their interest is simply in having the measure placed on the ballot. *Id.* at 316-317.

Applicants argue that "the Sixth Circuit concurs with the Ninth Circuit's view that interested organizations are to be accorded status to defend administrative actions or new legislation . . . ." (ECF No. 10-1 at 19). This is not so. Even the case that Applicants cite in support of this proposition—*Michigan State AFL-CIO v. Miller*—explains that it was *not* merely the putative intervenor's status as an interested citizen organization that supported intervention, but instead a "particularly compelling" combination of four facts: the intervenor was "(1) a vital participant in the political process that resulted in legislative adoption of the 1994 amendments in the first place, (2) a repeat player in Campaign Finance Act litigation, (3) a significant party which is adverse to the challenging union in the political process surrounding Michigan state government's regulation of practical campaign financing, and (4) an entity also regulated by at least three of the four statutory provisions challenged by plaintiffs."  *Mich. State v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997).  TSW is not a repeat player, nor is it a significant stakeholder in governmental regulation of Lake Erie.

Additionally, LEBOR does not purport to endow TSW with a substantive legal right to intervene.  And even if it contained language attempting to do so, that language would be a nullity.  As the Third Circuit explained in upholding an order denying intervention to a CELDF-

8

sponsored organization in *Grant Township*, "Rule 24(a)(1) provides that intervention of right exists when a statute of *the United States* confers an right to intervene but the rule does not provide for intervention of right" even when a state statute purports to confer an unconditional right to intervene. *Pa.Gen. Energy Co. v. Grant Twp. E. Run Hellbenders Soc'y, Inc.*, 658 F. App'x 37, 43 (3d Cir. 2016) (quoting *Harris v. Reeves*, 946 F.2d 214, 222 n.10 (3d Cir. 1991) (emphasis in original)).

Furthermore, even if TSW were an interested party, its interest cannot be legally cognizable. TSW describes its claimed interest as upholding the "rights of the Lake Erie Ecosystem" that are codified in LEBOR. (ECF No. 10-1 at 18). If any entity holds a right to intervene based on an interest in Lake Erie, it is not Applicants but the State of Ohio. *See* R.C. 1506.10. And, in fact, the State of Ohio has now moved to intervene. (ECF No. 13). In effect, Applicants are asking this Court to permit TSW, as a third party, to usurp a public trustee's authority over an interest held in public trust. This Court should not grant that improper request.

### b. TSW has not established that the City would represent its interests inadequately.

Even if it did have a legally cognizable interest, TSW has not and cannot establish that such interest would be impaired if the litigation proceeded without its participation. "The proposed intervenors bear the burden of demonstrating inadequate representation." *Purnell v. Akron*, 925 F. 2d 941, 949 (6th Cir. 1991). In making this judgment, courts consider several factors, including: "(1) if there is collusion between the representative and an opposing party; (2) if the representative fails in the fulfillment of his duty; and (3) if the representative has an interest adverse to the proposed intervenor." *Id.* at 949–50. There is a presumption that representation is adequate when a proposed intervenor and a party to the suit "have the same ultimate objective." *Id.* (quoting *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987)).

9

Here, TSW did not meet its burden.  As evidenced by the City's Answer (ECF No. 12), the City seeks to defend the lawfulness of LEBOR.  TSW asserts the same objective.  Rule 24(a)'s requirement can only be satisfied "if the applicant shows that representation of his interest 'may' be inadequate."  *Trbovich v. United Mineworkers of Am.*, 404 U.S. 528, 538 n.10 (1972).  TSW offers the Court no reason to credit its conclusory allegation that "the City is unlikely to advance and might even actively oppose" the legal arguments that TSW seeks to proffer.  (ECF No. 10-1 at 22-23).

That the Applicants prematurely attempted to guess at the City's position is amply illustrated by the City's Answer.  Three of the five interests the Applicants identify as implicating legal arguments "the City is unlikely to advance and might even actively oppose" are advanced by the City: the City asserts that "Plaintiff lacks standing and capacity to sue and bring some or all of Plaintiff's claims," that "[a]ll of Plaintiff's causes of action are barred on the grounds that they are premature, speculative, and not ripe for adjudication," and that  "the relief requested would violate the rights of the citizens and residents of the City of Toledo."  (Answer, ECF No. 12,  ¶¶ 141, 143 and 148.)

The City's Answer does not directly state a position on the "rights of nature" issue, but that should not be considered as part of the intervention analysis: Applicants' position lacks merit and has been repeatedly discredited.  CELDF has pushed and sought to defend laws that purport to establish the "rights of nature" across the United States—and courts have rejected those efforts each time.  *See, e.g.*, *Grant Twp.*, 2018 U.S. Dist. LEXIS 2069, at *35 (referring to CELDF's "continued pursuit of frivolous claims and defenses"); *Seneca Res. Corp. v. Highland Twp.*, No. 16-cv-289, 2017 U.S. Dist. LEXIS 162629, at *31 (W.D. Pa. Sep. 29, 2017) (invalidating in toto a CELDF-drafted home rule charter amendment); *Spokane Entrep. Ctr. v.*

10

*Spokane Moves to Amend the Const.*, 369 P.3d 140, 146 (Wash. 2016) (prohibiting a CELDF-sponsored proposed ordinance from inclusion on the ballot because "municipalities cannot strip constitutional rights from entities and cannot undo decisions of the United States Supreme Court"); *Swepi, Ltd. P'ship v. Mora Cty.*, 81 F. Supp. 3d 1075 (D.N.M. 2015) (invalidating in toto a CELDF-drafted Community Bill of Rights Ordinance).[2]  Thus, for Toledo to try and advance a "rights of nature" theory would put it at risk of sanctions.

The last alleged basis for inadequate representation is the fact that "the City consented to a preliminary injunction in this case, suspending the effect of LEBOR."  But differences in temporary litigation strategy do not demonstrate inadequacy of representation.  *See Geier v. Sundquist*, NO. 95-5844, 1996 U.S. App. LEXIS 22376, at *7 (6th Cir. Aug. 14, 1996) (citing *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) ("A mere disagreement over litigation strategy or individual aspects of a remediation plan does not, in and of itself, establish inadequacy of representation")).

TSW has not met its burden of demonstrating inadequacy of representation and its motion to intervene should be denied.

### 3.    TSW Should Not be Permitted to Intervene.

Under Rule 24(b), a district court may grant intervention to certain interested parties:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the

---

[2]    *Press Release: Democracy Ruled Dead in Highland Township*, CELDF, https://celdf.org/2016/08/press-release-democracy-ruled-dead-highland-township/ (last visited Mar. 25, 2019) (noting that CELDF "assisted in the drafting" of the Community Bill of Rights Ordinance); *Mora County Legal Defense Fund*, CELDF, https://celdf.org/2014/05/mora-county-legal-defense-fund/ (last visited Mar. 25, 2019) (referring to the Community Bill of Rights Ordinance as "CELDF-drafted"); *Spokane*, CELDF, https://celdf.org/2014/09/spokane/ (last visited Mar. 25, 2019) (referring to the Spokane ordinance as "drafted by CELDF").

intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b).  The Court should not exercise its discretion to grant intervention.  First, Applicants have already failed to comply with the Federal Rules of Civil Procedure and this Court's Civil Case Management Procedures.  Rule 24(c) provides that a motion to intervene must be "accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).  Applicants have not submitted a pleading as defined in Rules 7(a) and 8(a), but have instead submitted a Motion to Dismiss.  *Jacobs v. Jacobs*,1:07-CV-1043, 2008 U.S. Dist. LEXIS 97070, at *9 (N.D. Ohio Nov. 18, 2008) (explaining that "a [m]otion to [d]ismiss . . . is not a pleading under the Federal Civil Rules[.]")  Moreover, Applicants' inclusion of a motion to dismiss seeks to contravene this Court's Case Management Procedures Order, which "require[s] counsel to discuss the basis for any Motion to Dismiss" prior to its filing. (ECF No. 4).

Additionally, Applicants' bid to intervene would cause undue delay.  Indeed, it already has: Applicants have advanced arguments, with little regard for the procedural rules governing parties before this Court, that they themselves concede are contrary to established law and have been uniformly rejected by other courts.

Other courts have determined that CELDF's efforts to advance plainly unreasonable legal arguments constituted a strategy that resulted only in creating "enormous expense to parties and tax[ing] limited judicial resources" and that despite warnings, "no lessons in good faith legal argument have been learned." *Grant Twp.*, 2018 U.S. Dist. LEXIS 2069, at *29.  And in response to these Court rulings, CELDF not only continues to pursue its strategy, but also has attacked the federal judiciary: "[a]t a time when Americans more and more are looking to the courts for reason and justice, today we find neither[.]" *Press Release: Federal Court Sanctions*

12

*Lawyers for Defending Community's Right to Say "No" to Frack Wastewater Injection Wells*,

CELDF, https://celdf.org/2018/01/press-release-federal-court-sanctions-lawyers-defending-communitys-right-say-no-frack-wastewater-injection-wells/ (last visited Mar. 25, 2019).

TSW has teamed with CELDF and its staff counsel.   As such, CELDF's prior behavior in federal courts and continued pursuit of discredited legal arguments impute to TSW.   The Court should exercise its discretion to reject TSW and CELDF's attempt to interject here those failed arguments—an attempt which can only delay this action.

## III.    CONCLUSION

Drewes Farms requests that the Court deny Lake Erie Ecosystem and Toledoans for Safe Water's Motion to Intervene.

Respectfully submitted,

VORYS, SATER, SEYMOUR AND PEASE LLP

s/ *Thomas H. Fusonie*
Kimberly W. Herlihy (0068668)
Thomas H. Fusonie (0074201), *Trial Attorney*
Daniel E. Shuey (0085398)
Christopher L. Ingram (0086325)
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-8261
Fax: (614) 719-4886
kwherlihy@vorys.com
thfusonie@vorys.com
deshuey@vorys.com
clingram@vorys.com

*Counsel for Plaintiff Drewes Farms Partnership*

## CERTIFICATE OF MEMORANDUM LENGTH

To the extent ECF No. 10-1 is considered a dispositive motion, pursuant to Local Rule 7.1(f)'s

requirements for unassigned track cases, this memorandum does not exceed 20 pages.


s/*Thomas H. Fusonie*
Thomas H. Fusonie (0074201)
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-8261
Fax: (614) 719-4886
thfusonie@vorys.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing was served electronically through this Court's electronic service system upon all parties and/or counsel of record on this 5th day of April, 2019.  Notice of this filing is sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

s/*Thomas H. Fusonie*
Thomas H. Fusonie (0074201)
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-8261
Fax: (614) 719-4886
thfusonie@vorys.com
