IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **Drewes Farms Partnership**, <br><br> Plaintiff, <br> v. <br><br> **City of Toledo**, <br><br> Defendant, <br> and <br><br> **Lake Erie Ecosystem** and <br> **Toledoans for Safe Water, Inc.**, <br><br> Intervenor-Defendants. | No. 3:19-cv-00434-JZ <br><br> The Honorable Jack Zouhary <br><br><br> **Intervenor-Defendants' Reply in Support of Motion to Intervene** |

**INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO INTERVENE**

April 22, 2019

**Table of Contents**

Procedural Summary..................................................................................................................3

Argument..................................................................................................................................5

    I.   Federal Rule of Civil Procedure 17(b) does not bar Lake Erie Ecosystem from being a party in this case because the Toledo City Charter, which is part of the "law of the state," authorizes Lake Erie Ecosystem to be a party in court.........................................................5

    II.  DFP's argument that Proposed Intervenors lack standing fails on its face because proposed intervenors need not show standing in order to intervene in district court..........6

    III. Proposed Intervenors have interests at stake in this litigation that satisfy the FRCP 24 test for intervention by right.........................................................................................................6

    IV. Proposed Intervenors are not adequately represented by existing parties because the City may not adequately represent their interests, which is all this rule requires........................8

Certificate of Service.............................................................................................................10

Drewes Farms Partnership ("DFP") makes four substantive arguments (in ECF No. 16) against intervention by Lake Erie Ecosystem and Toledoans for Safe Water ("Proposed Intervenors") (ECF No. 10). By leave of the Court (ECF No. 18), Proposed Intervenors address those four arguments in this Reply.

DFP also attempts to paint a narrative that portrays Proposed Intervenors and their interests as entirely unworthy of consideration by the Court. Proposed Intervenors do not plan to respond to these "arguments," particularly in light of the Court's reminder to counsel on the importance of civility and professionalism. (Civil Case Management Procedures, ECF No. 4, at 3.) If the Court does wish to explore these issues, then Proposed Intervenors request that the Court also inquire into who is really paying for DFP's counsel.[1]

**Procedural Summary**

This is a lawsuit filed by DFP against the City of Toledo, attempting to overturn a City Charter Amendment (the Lake Erie Bill of Rights or "LEBOR") that the voters of the City enacted through a popular vote at the ballot in February 2019.

LEBOR expands protections for Lake Erie, and DFP claims that these protections harm its business practices as a grain and soy farmer. However, nobody has claimed that DFP – which claims to follow (and voluntarily go beyond) current environmental best practices for phosphorus management – is a significant cause of the cyanobacteria problem in Lake Erie. For example, a recent report by Environmental Working Group and Environmental Law & Policy Center found that 69% of all the phosphorus added to the Maumee River watershed each year comes from factory farms in Ohio, and most of that is from unregulated farms with no permits or environmental oversight. ("Explosion of Unregulated Factory Farms in Maumee Watershed

---

1 *See* Toledo Blade Editorial Board, "BP wasted money fighting LEBOR" (Apr. 14, 2019), at https://www.toledoblade.com/opinion/editorials/2019/04/14/wasted-bp-money-lake-erie-bill-of-rights-election/stories/20190410118.

Reply in Support of Motion to Intervene – 3 of 10

Fuels Lake Erie's Toxic Blooms" interactive map page at https://www.ewg.org/interactive-maps/2019_maumee/.) Notably, the issue here is unregulated concentrated animal feeding operations (CAFOs) where animal manure, high in phosphorus, enters the watershed: 78% of hog manure comes from unregulated farms, 84% of cattle manure comes from unregulated farms, and overall, more than half of all animal manure comes from farms that are not required to have permits. *Id.* The report also found that between 2005 and 2018 there was a 42% increase in the number of CAFOs in the Maumee Watershed, and "the number of animals in the watershed more than doubled, from 9 million to 20.4 million." *Id.*

The senior attorney for one of the report author organizations identified "the crucial first step [for a solution to the cyanobacteria issue] is to develop a legal limit under the Clean Water Act, called a Total Maximum Daily Load, for the amount of phosphorus allowed to enter Lake Erie, rather than continuing to pursue ineffective voluntary approaches." (Donald Carr, "Manure From Unregulated Factory Farms Fuels Lake Erie's Toxic Algae Blooms" (Apr. 9, 2019).[2]) But Judge James Carr recently ruled that under the Clean Water Act, there is no deadline for establishing a TMDL, as long as the State of Ohio says it is working on it. *Envtl. Law & Policy Ctr. v. U.S. E.P.A.*, Order at 8, on Oct. 3, 2018, (N.D. Ohio, No. 3:17-cv-1514). The Lake Erie Bill of Rights could provide a legal mechanism for requiring the State to establish and follow a phosphorus TMDL in order to prevent the cyanbacteria outbreaks.

Thus, not surprisingly, the State of Ohio has also moved to intervene in this case as a proposed Intervenor-Plaintiff, to argue that LEBOR interferes with the State's trust responsibilities to manage Lake Erie. (ECF No. 13.) Fairly read, LEBOR is an extra layer of environmental protection on top of the federal and state laws already in place. Instead, the State appears to not want LEBOR to potentially interfere with the State of "Ohio's long-standing,

---

2  Available at https://www.ewg.org/agmag/2019/03/manure-unregulated-factory-farms-fuels-lake-erie-s-toxic-algae-blooms.

persistent reluctance and, on occasion, refusal, to comply with the CWA." *Envtl. Law & Policy Ctr. v. U.S. E.P.A.*, Order at 1, on Oct. 3, 2018, (N.D. Ohio, No. 3:17-cv-1514).

In response to Proposed Intervenors' Motion to Intervene, the City of Toledo filed a short response stating substantively that: "Although the City takes issue with several of the unfounded statements and mischaracterizations in that Motion, the City does not oppose Lake Erie Ecosystem and Toledoans for Safe Water, Inc.'s Motion to Intervene." (ECF No. 15, at 1.) Notably and dispositively here, the City did not argue that it will adequately represent Proposed Intervenors' interests in this litigation, meaning intervention is necessary.

DFP responded with substantive opposition, which Proposed Intervenors address below.

**Argument**

**I.  Federal Rule of Civil Procedure 17(b) does not bar Lake Erie Ecosystem from being a party in this case because the Toledo City Charter, which is part of the "law of the state," authorizes Lake Erie Ecosystem to be a party in court.**

DFP cites to opinions that did not consider the full text of Federal Rule of Civil Procedure 17(b), namely that Rule 17(b) provides that "capacity to sue or be sued . . . for all other parties [not individuals or corporations, is determined] by the law of the state where the court is located." Courts apply local law, in addition to state law, when considering capacity under "the law of the state where the court is located." *E.g.*, *Gaston v. New York City Dept. of Health Office of Chief Medical Examiner*, 432 F. Supp. 2d 321, 329 (S.D.N.Y. 2006) ("Under the New York City Charter, 'all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law.' Thus, the OCME is not a suable entity, and claims against OCME are subject to dismissal." (citation omitted)).

Here, there is a law on point that provides the Lake Erie Ecosystem with the capacity to

Reply in Support of Motion to Intervene – 5 of 10

sue. The City Charter provides, "The Lake Erie Ecosystem may enforce its rights, and this law's prohibitions, through an action prosecuted either by the City of Toledo or a resident or residents of the City in the Lucas County Court of Common Pleas, General Division. Such court action shall be brought in the name of the Lake Erie Ecosystem as the real party in interest." (ECF No. 1-1 (LEBOR § 3(d)). This is the relevant law for determining whether Lake Erie Ecosystem has capacity under Rule 17(b), and it clearly confers capacity on an ecosystem to defend its rights.

DFP cites to one case for its argument to the contrary, but that case does not address the question of whether a City Charter is part of "the law of the state" for Rule 17. (ECF No. 16, at 4 (citing *Plate v. Johnson*, 339 F. Supp. 3d 759, 766 (N.D. Ohio 2018)).) The order in *Plate* (along with Judge Carr's related July 25, 2018 order) address Rule 17 in the context of estate administrators and Ohio statutes, and are simply not on point.

The Federal Rules of Civil Procedure do not bar Lake Erie Ecosystem's participation.

**II. DFP's argument that Proposed Intervenors lack standing fails on its face because proposed intervenors need not show standing in order to intervene in district court.**

"An intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing." *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 536-39 (1972)); *see also King v. Governor of the State of New Jersey*, 767 F.3d 216, 245-46 (3d Cir. 2014), *cert. denied sub nom. King v. Christie*, 135 S. Ct. 2048 (2015) (discussing the merits for this rule, held by the majority of Circuit Courts). That settles the issue for our purposes here: standing is simply not an issue for intervenors in district court.

**III. Proposed Intervenors have interests at stake in this litigation that satisfy the FRCP 24 test for intervention by right.**

DFP attempts to minimize Lake Erie Ecosystem and Toledoans for Safe Water's interests,

Reply in Support of Motion to Intervene – 6 of 10

and asks the Court to unduly raise the bar for intervention interests.

First, Lake Erie Ecosystem's very legal existence is at stake in this case. DFP makes it very clear that it is unable to conceive of the Lake having rights, instead clinging to the argument that the State of Ohio has all the interest in Lake Erie, since the State is the public trustee. (ECF No. 16, at 9.) Indeed, this argument underscores the Plaintiff's view that the Lake can only be property (held by the State as trustee), and could not have rights itself. But the Toledo City Charter now says otherwise, and the Lake should be able to defend those rights in this Court.

The founders of Toledoans for Safe Water did not only draft and petition for the Lake Erie Bill of Rights, but its members are among the potential plaintiff class who now have the legal power to enforce their rights recognized under LEBOR. LEBOR § 3(b) provides "The City of Toledo, *or any resident of the City*, may enforce the rights and prohibitions of this law through an action brought in the Lucas County Court of Common Pleas, General Division" (emphasis added). Thus, the intervention here is not analogous to cases where the intervenors seek to merely have the government prosecute or defend the government's own interests the way the intervenors want, like *Coal. Defend Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir. 2007). Instead, here, Proposed Intervenors are fighting for the validity of a law that they themselves can choose to enforce, regardless of the City's prosecutorial discretion.

This distinction is critical. The Sixth Circuit's holding in *Coalition to Defend Affirmative Action* relied on *Northland Family Planning*, which had "held that an organization involved in the process leading to the adoption of a challenged law, does not have a substantial legal interest in the subject matter of a lawsuit challenging the legality of that already-enacted law, *unless the challenged law regulates the organization or its members*." *Id.* at 781 (emphasis added) (describing the holding in *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007)). Lake Erie Ecosystem and Toledoans for Safe Water fit into that exception clause, as they

are seeking to intervene here to defend their own rights that are recognized through LEBOR.

"Rule 24 is broadly construed in favor of potential intervenors." *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991) (citations omitted). "This circuit has opted for a rather expansive notion of the interest sufficient to invoke intervention of right." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997) (citations omitted).

**IV. Proposed Intervenors are not adequately represented by existing parties because the City may not adequately represent their interests, which is all this rule requires.**

The test for whether the proposed intervenor's interests are already adequately represented "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (citation omitted); *see also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001) ("The possibility that the interests of the applicant and the parties may diverge 'need not be great' in order to satisfy the minimal burden." (citation omitted)).

Here, by not opposing Proposed Intervenors' assertion that the City does not adequately represent Proposed Intervenors' interests, the City of Toledo implicitly concedes that it does not adequately represent these interests for purposes of this Intervention Motion under FRCP 24. (*See* ECF No. 15.)

The City did not support enacting the Lake Erie Bill of Rights, and the City's Mayor allocated City resources to oppose the measure. (Intervention Memo at 11, ECF No. 10-1.)

This is sufficient to show that the City "may" not adequately represent Proposed Intervenors' interests, which is all that is required under U.S. Supreme Court interpretation of this element of the intervention by right test. And the fact that the City does not even pretend that it will adequately represent such interests seals it.

Respectfully submitted this Twenty-Second Day of April, 2019.

**/s/ Terry J. Lodge**
Terry J. Lodge, Esq. (S.Ct. #0029271)
316 N. Michigan St., Suite 520
Toledo, OH 43604-5627
Phone (419) 205-7084
tjlodge50@yahoo.com
lodgelaw@yahoo.com

**/s/ Lindsey Schromen-Wawrin**
Lindsey Schromen-Wawrin (WSBA #46352)
Shearwater Law PLLC
306 West Third Street
Port Angeles, WA 98362
Phone (360) 406-4321
Fax (360) 752-5767
lindsey@ShearwaterLaw.com

*Attorneys for Intervenor-Defendants*
*Lake Erie Ecosystem and Toledoans for Safe Water, Inc.*

**Certificate of Service**

I certify that I electronically filed this document with the Clerk of the Court for the United States District Court for the Northern District of Ohio by using the Court's CM/ECF system on April 22, 2019.

The other parties are Filing Users and are served electronically by the Notice of Docket Activity.

Dated: April 22, 2019

<u>**/s/ Lindsey Schromen-Wawrin**</u>
Lindsey Schromen-Wawrin (WSBA #46352)
Shearwater Law PLLC
306 West Third Street
Port Angeles, WA 98362
Phone (360) 406-4321
Fax (360) 752-5767
lindsey@ShearwaterLaw.com

*Attorney for Intervenor-Defendants*
*Lake Erie Ecosystem and Toledoans for Safe Water, Inc.*