IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Drewes Farms Partnership, | Case No. 3:19 CV 434 |
| Plaintiff, | ORDER DENYING |
| -vs- | MOTION TO INTERVENE |
| City of Toledo, | JUDGE JACK ZOUHARY |
| Defendant. | |

### INTRODUCTION

In a February 2019 special election, Toledo voters amended the City of Toledo municipal charter (Doc. 1 at ¶ 45). Plaintiff Drewes Farms Partnership contends the amendment is invalid (*id.* at 15–24). Toledoans for Safe Water, Inc. and Lake Erie Ecosystem seek to intervene in support of the amendment (Doc. 10). Drewes Farms opposes (Doc. 16), the City does not (Doc. 15), and the proposed Intervenors reply (Doc. 20).

### ANALYSIS: TOLEDOANS FOR SAFE WATER, INC.

Non-parties sometimes have a right to intervene in a lawsuit under Federal Civil Rule 24(a). If a non-party does not qualify for Rule 24(a) intervention, the district court may nonetheless allow intervention at its discretion under Rule 24(b). Toledoans for Safe Water, Inc. ("Nonprofit") argues it should be allowed to intervene by right or, in the alternative, at this Court's discretion. These two arguments are analyzed in turn below.

**Intervention by Right**

The Nonprofit seeks intervention by right under Federal Civil Rule 24(a)(2) (Doc. 10-1 at 15). To intervene under that subsection, a proposed intervenor must demonstrate that

> (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect [its] interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest.

*Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007). "The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied." *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005).

Here, the substantial-legal-interest factor is dispositive. The Nonprofit correctly points out (Doc. 20 at 8) that "[t]his circuit has opted for a rather expansive notion of the interest sufficient to invoke intervention of right." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). But "this does not mean that any articulated interest will do." *Granholm*, 501 F.3d at 780. "[W]ithout . . . limitations [on] the legal interest required for intervention, Rule 24 would be abused as a mechanism for the over-politicization of the judicial process." *Id.* at 783 (citation omitted).

The Nonprofit alleges two interests in this lawsuit. First, it states it played a key role in the amendment's enactment -- by drafting the amendment's language, circulating petitions, and advocating before the Ohio Supreme Court for the amendment's inclusion on the ballot -- and has an interest in defending the fruit of its efforts against invalidation (Doc. 10-1 at 21). In this Circuit, however, "an organization involved in the process leading to the adoption of a challenged law . . . does not have a substantial legal interest in the subject matter of a lawsuit challenging the legality of that already-enacted law." *Granholm*, 501 F.3d at 781. *See also Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 345 (6th Cir. 2007) ("[I]n a challenge to the

2

constitutionality of an already-enacted statute, . . . the public interest in its enforceability is entrusted for the most part to the government . . . ."). An organization's interest in "seeing that the government zealously enforces some piece of legislation that [it] supports" is not substantial, either. *Granholm*, 501 F.3d at 782. The Nonprofit's interest might have passed muster in a lawsuit challenging the procedure used to enact the amendment, *see Cox*, 487 F.3d at 345, but this lawsuit challenges the amendment's substance.

Second, the Nonprofit alleges a substantial legal interest in defending its members' rights to sue polluters under the amendment (Doc. 10-1 at 21; Doc. 20 at 7). These purported rights arise out of the amendment's third section, which states that "any resident of the City . . . may enforce the rights and prohibitions of this law through an action brought in [Ohio state court]" (Doc. 1-1 at 3). To be sure, the Sixth Circuit has recognized that public-interest groups "whose members are affected by" a new law "may likely have an ongoing legal interest in its enforcement after it is enacted." *Cox*, 487 F.3d at 345. But if the new law affects those members in the same way it affects the general public, the organization's interest falls short of Rule 24(a)'s requirements. *Granholm*, 501 F.3d at 782.

*Granholm* is illustrative. There, plaintiffs challenged a Michigan constitutional amendment, enacted by ballot initiative, prohibiting "preferential treatment to . . . any individual or group on the basis of race, sex, color, ethnicity, or national origin in . . . public employment, public education, or public contracting." *Id.* at 777 (citation omitted). The district court had denied the Rule 24(a) motions of two nonprofit organizations (as well as of a third nonprofit not relevant here). *Id.* The Sixth Circuit affirmed, determining that the nonprofits lacked a substantial legal interest. *Id.* at 783. The nonprofits argued they had a substantial interest because their membership included Michigan residents who, as such, would be affected by the lawsuit's outcome. *Id.* at 782. The court held that this interest, which

3

was "shared by the entire Michigan citizenry," did "not support a claim for intervention as of right." *Id.* (citation omitted). *Cf. Grutter v. Bollinger*, 188 F.3d 394, 398–99 (6th Cir. 1999) (holding that organization had substantial legal interest because interest was greater than that of general public); *Miller*, 103 F.3d at 1246–47 (same).

The situation here is analogous. The Nonprofit members do have a right to sue polluters under the amendment's language -- but so does every other Toledo resident. Just as the *Granholm* movants had no right to intervene based on an interest shared by "the entire Michigan citizenry," 501 F.3d at 782, the Nonprofit has no right to intervene based on an interest shared by all Toledoans. Consequently, the Nonprofit's second interest in this lawsuit, like its first, is insufficient to meet the requirements of Federal Civil Rule 24(a)(2).

**Discretionary Intervention**

The Nonprofit also seeks discretionary intervention under Federal Civil Rule 24(b)(1)(B), which provides that "[o]n timely motion," a district court may allow intervention by "anyone . . . who . . . has a claim or defense that shares with the main action a common question of law or fact." The Motion to Intervene here is timely -- it was filed within three weeks of the Complaint. And the Nonprofit's proposed defense of the amendment shares a question of law with the main action. But the inquiry does not end there. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Federal Civil Rule 24(b)(3). *See also United States v. Michigan*, 424 F.3d at 445.

The Motion states the Nonprofit would defend the amendment on the following two grounds, among others: "Rights of Nature," a concept not recognized in United States jurisprudence; and Toledoans' right to "alter, reform, or abolish" the Ohio constitution (Doc. 10-1 at 23). Time would be better spent in this lawsuit on arguments more likely to be dispositive. *See Granholm*, 501 F.3d

at 784 (affirming denial of discretionary intervention where proposed intervenor would likely "inject issues that may not lead directly to a resolution of the issues circumscribed by the present pleadings") (citation omitted); *Cox*, 487 F.3d at 346 (affirming denial of discretionary intervention where motion to intervene took "an ideological approach to the litigation").  The Nonprofit's intervention would therefore unduly delay this lawsuit, and this Court declines the Nonprofit's Rule 24(b) request.  The Nonprofit may seek leave to file an amicus brief if likely to assist this Court.

### ANALYSIS: LAKE ERIE ECOSYSTEM

The Motion to Intervene also requests intervention on behalf of "Lake Erie Ecosystem, an ecosystem including living and nonliving components, in a surface and underground watershed" (Doc. 10 at 1).  This unusual request is meritless.  The only source of domestic law cited in the Motion supporting the Ecosystem's capacity to intervene is the amendment itself (Doc. 10-1 at 15).  The amendment, however, does not purport to allow intervention by the Ecosystem in federal district courts.  Rather, its third section states that "[t]he Lake Erie Ecosystem may enforce its rights . . . in the *Lucas County Court of Common Pleas*" (Doc. 1-1 at 3) (emphasis added).  Some may believe the law should confer legal standing upon natural objects and features.  *See, e.g.*, *Sierra Club v. Morton*, 405 U.S. 727, 741–42 (1972) (Douglas, J., dissenting) ("Contemporary public concern for protecting nature's ecological equilibrium should lead to the conferral of standing upon environmental objects to sue for their own preservation.").  But a district court -- bound by Congress and higher courts -- is not the appropriate body to take that leap.

### CONCLUSION

Toledoans for Safe Water, Inc. does not qualify for intervention by right, and its argument for discretionary intervention is not persuasive.  Lake Erie Ecosystem lacks capacity to intervene.  For these reasons, the Motion to Intervene (Doc. 10) is denied in its entirety.

IT IS SO ORDERED.

                                                s/ *Jack Zouhary*
                                                JACK ZOUHARY
                                                U. S. DISTRICT JUDGE

May 7, 2019