**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **Drewes Farms Partnership**, <br><br> Plaintiff, <br> v. <br><br> **City of Toledo**, <br><br> Defendant, <br> and <br><br> **Lake Erie Ecosystem** and **Toledoans for Safe Water, Inc.**, <br><br> Intervenor-Defendants. | No. 3:19-cv-00434-JZ <br><br> The Honorable Jack Zouhary <br><br><br> **Intervenor-Defendants' Motion to Stay Pending Intervention Appeal** |

**INTERVENOR-DEFENDANTS' MOTION TO STAY PENDING INTERVENTION APPEAL**

May 8, 2019

**Table of Contents**

Introduction..................................................................................................................................3

Argument....................................................................................................................................4

    I.   Standard for Staying Trial Court......................................................................................4

       A.  It is likely the Lake Erie Ecosystem and Toledoans for Safe Water will prevail on the merits of the appeal..........................................................................................5

       B.  If the stay is not granted, the Lake Erie Ecosystem and Toledoans for Safe Water will be irreparably harmed.......................................................................................7

       C.  If the stay is granted, Drewes Farms Partnership will not be irreparably harmed..........10

       D.  Granting the stay is clearly in the public interest............................................12

       E.  Granting the stay is the best use of judicial resources......................................13

    II.  Proposed Intervenors Should Not Be Required To Post A Supersedeas Bond..................14

Conclusion................................................................................................................................15

Certificate of Memorandum Length.............................................................................................17

Certificate of Service..................................................................................................................18

**Introduction**

Proposed Intervenors, the Lake Erie Ecosystem ("Lake Erie") and Toledoans for Safe Water ("TSW"), by their undersigned counsel, respectfully request an unsecured stay of this case under Federal Rule of Civil Procedure 62 pending the resolution of their appeal of this Court's Order Denying Intervention (ECF No. 23 (hereinafter "Order")) in the United States Court of Appeals for the Sixth Circuit.

Proposed Intervenors' appeal is restricted to whether Lake Erie and TSW have a right to be parties in this case and not whether they are justified in their defense of the Lake Erie Bill of Rights (LEBOR). This Court's Order Denying Intervention was contrary to this Circuit's precedents and without support in the laws of the United States. Specifically, it is likely that Lake Erie and TSW will prevail on the merits of their appeal. Not granting the stay will irreparably harm Lake Erie and TSW while granting the stay will not irreparably harm the other parties. Granting the stay is also in the public interest and is the best use of judicial resources.

Proposed Intervenors also submit that this Court's Preliminary Injunction Order preventing the City's enforcement of the Lake Erie Bill of Rights ("LEBOR") and preserving the status quo until the merits of this action can be decided ensures that costs of appeal will be minimal so a supersedeas bond is unnecessary to protect the parties. DFP and the City stipulated to that Preliminary Injunction Order, which read, "To preserve the status quo until the merits of this action can be decided, the parties agree that the City of Toledo, its agents and employees, are enjoined from enforcing LEBOR." (ECF No. 9, at 2.)

Therefore, it is in the interest of all parties that this case be stayed without supersedeas bond so that, once intervention is granted by the Court of Appeals, any delay and prejudice to Lake Erie and TSW, or the parties, is diminished due to the improper denial of intervention.

Proposed Intervenors fear that the existing parties will agree on how the Court should

Motion to Stay Pending Intervention Appeal – 3 of 18

rule in a Judgment on the Pleadings (*see* ECF No. 24 (ordering letter briefing due May 10, and a phone conference on May 17)), and that this Court would then invalidate LEBOR before the Court of Appeals can review whether the Lake and Toledoans have a right to participate in this proceeding.

The Court acknowledged that a district court may not be the appropriate body to decide whether "the law should confer legal standing upon natural objects and features" (Order at 5), and that higher courts would be better venues for such questions. But if the Court does not allow Proposed Intervenors to seek an appeal, then the "appropriate body" does not have a chance to decide the question.

**Argument**

**I. Standard for Staying Trial Court**

In considering whether a stay pending appeal should issue, the court considers four factors: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006) (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). "All four factors are not prerequisites but are interconnected considerations that must be balanced together." *Id.* Additionally, a strong showing of one factor may overcome any weaknesses of the others. *Id.* at 252.

It is also well established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the

exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 US 248, 254-55 (1936). "The most important factor is the balance of the hardships, but the district court must also consider whether granting the stay will further the interest in economical use of judicial time and resources." *F.T.C v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627-28 (6th Cir. 2014) (internal citations omitted).

**A. It is likely the Lake Erie Ecosystem and Toledoans for Safe Water will prevail on the merits of the appeal.**

"To justify the granting of a stay…a movant need not always establish a high probability of success on the merits." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 at 153 (citing *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987). "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay." *Id.*

Here, Proposed Intervenor Lake Erie Ecosystem's very legal existence is at stake, for its rights to exist, flourish, and naturally evolve are recognized in the Toledo City Charter Amendment that DFP seeks to nullify. Toledoans for Safe Water is seeking the right to fight for the validity of a law that they themselves can choose to enforce, not simply a law that the City has exclusive prosecutorial discretion to enforce. LEBOR § 3(b) provides "The City of Toledo, or any resident of the City, may enforce the rights and prohibitions of this law through an action brought in the Lucas County Court of Common Pleas, General Division" (emphasis added). (ECF No. 1-1, at 3.)

Proposed Intervenors should have the opportunity to distinguish *Granholm*, which did not involve a law that the intervenors themselves would be enforcing. (*See* Order at 3-4.) The Court has ruled that TSW may not intervene by right under Federal Rule of Civil Procedure 24(a)(2). To intervene under that subsection, a proposed intervenor must demonstrate that

> (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect [its] interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest.

*Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007) (quoted in Order at 2).

Here, the Court has ruled that Toledoans for Safe Water fails the "substantial-legal-interest" factor. Despite this Court's reliance on discrete passages from *Granholm*, Proposed Intervenors assert that the pertinent rule from *Granholm* is, in its entirety:

> This is not to say that all organizations that advocate for the passage of a law lack a substantial legal interest in a suit challenging the government's subsequent enforcement of that law. Indeed, we have held that where a group is regulated by the new law, or similarly, whose members are affected by the law, may likely have an ongoing legal interest in its enforcement after it is enacted…Where, however, an organization has only a general ideological interest in the lawsuit – like seeing that the government zealously enforces some piece of legislation that the organization supports – and the lawsuit does not involve the regulation of the organization's conduct, without more, such an organization's interest in the lawsuit cannot be deemed substantial (internal citations omitted).

*Granholm*, 501 F.3d at 782.

TSW formed in response to the notorious harmful algal bloom that poisoned Toledo's drinking water in August, 2014. (*See* Durback Decl., ¶ 2.) TSW did not form specifically to pass LEBOR, it formed to secure meaningful protections for Lake Erie and all those who depend on its water. TSW plans on using LEBOR in the future to secure these protections.

TSW and its members have much more than a "general ideological interest" in the law. This case involves TSW's and its members ability to effectively protect Lake Erie, a major source of life, not to mention drinking water, in the region. Instead of being an ideological interest, this is a real, physical interest. It would not be too much to say that the interest in clean drinking water is among the most fundamental interests humans possess. Additionally, at this

point, TSW is not seeking that the government zealously enforce legislation the organization supports. Right now, TSW is only seeking to be allowed to defend the law from invalidation.

Finally, the law does regulate TSW's conduct. For, if TSW or its members seek to implement the amendment, LEBOR regulates where they may bring an action (Lucas County Court of Common Pleas, General Division) as well as who may be named as the real party in interest (the Lake Erie Ecosystem). So, Proposed Intervenors contend, TSW is a group regulated by the new law, its members are affected by the law, it has more than a general ideological interest in the law, and, instead of pushing for zealous enforcement of the law, TSW merely seeks to defend the law because the City will not adequately represent, never mind enforce, LEBOR. Therefore, contrary to this Court's ruling, the *Granholm* rule supports TSW's and Lake Erie's intervention in this case.

**B.   If the stay is not granted, the Lake Erie Ecosystem and Toledoans for Safe Water will be irreparably harmed.**

In the context of a motion to stay pending an appeal, three factors govern whether a party will be irreparably harmed: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). "In addition, the harm alleged must be both certain and immediate, rather than speculative or theoretical." *Id.*

There is no need more fundamental to all life than the need for clean water. In Northern Ohio, the Lake Erie Ecosystem and Watershed fulfill this need. The continued pollution of Lake Erie, then, is not just a substantial injury, it could very well prove to be a *mortal* one. And, the seriousness of this threat to all life in Northern Ohio is precisely what Lake Erie and TSW allege.

Specifically, Lake Erie and TSW allege that, if the Lake Erie Bill of Rights is invalidated, the Lake Erie Ecosystem will continue to be "subject to an array of polluting events causing

multiple water quality issues which degrade and destroy the viability of water and economic sustainability of the region." (Motion for Leave to Intervene of Lake Erie Ecosystem and Toledoans for Safe Water, Inc., ¶ 3). Lake Erie and TSW have also alleged that "[t]he City water utility has no other good source of water and will suffer real and substantial harm if the Lake Erie Bill of Rights is invalidated and residents of the City of Toledo are deprived of a vital means of protecting the Lake Erie Ecosystem." (Motion for Leave, ¶ 4). Lake Erie and TSW allege that "If LEBOR is invalidated, the Lake Erie Ecosystem will lose the rights to exist, flourish, and naturally evolve, and will suffer the harms prevented by LEBOR's recognition." (Motion for Leave, ¶ 9).

The 6th Circuit clarified the second "irreparably harmed" factor explaining, "In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *State of Ohio ex rel. Celebrezze v. NRC*, 812 F.2d 288, 290 (6th Cir. 1987). The history of Lake Erie's pollution demonstrates not only that these injuries are likely, but that they are nearly certain, to continue. The 6th Circuit anticipated claims that parties have not alleged enough purely scientific proof in *Celebrezze* when it wrote, "We require that the record contain evidence from which we can make specific findings. It should be presented in a non-technical format, allowing the average adult reader to make a reasonable determination." 812 F.2d 288, 291 (6th Cir. 1987).

In a non-technical format, allowing the average adult reader to make a reasonable determination, Lake Erie and TSW have alleged that Toledo's 2014 water crisis is likely to occur again. They cite scientific reports including one by the National Center for Water Quality Research at Heidelberg University which concluded: "Decades of monitoring have led to an inescapable conclusion: phosphorous runoff, primarily from agricultural lands, is feeding explosive cyanobacterial growth in the warm, shallow waters of the western basin."

Motion to Stay Pending Intervention Appeal – 8 of 18

(Memorandum in Support of Motion to Intervene, at 6, 11-14). Additionally, despite a state task force declaring that the amount of phosphorous from treatment plants and fertilizers needs to be scaled back by 40 percent, Lake Erie and TSW allege that governments have failed to reach this goal explaining that governments "have failed to offer workable solutions necessary to reduce phosphorous pollution and shrink the algal blooms." (*Id.* at 7, 1-3.)

Lake Erie and TSW also offer statements from U.S. District Judge James Carr who has taken note of, "Ohio's long-standing, persistent reluctance and, on occasion, refusal to comply with the CWA. As a result of the State's inattention to the need, too long manifest, to take effective steps to ensure that Lake Erie (the Lake) will dependably provide clean, healthful water, the risk remains that sometime in the future, upwards of 500,000 Northwest Ohio residents will again, as they did in August 2014, be deprived of clean, safe water for drinking, bathing, and other normal and necessary uses." (*Id.* at 10, 6-12).

The proof that Lake Erie and TSW provide is more than adequate. In addition to the allegations provided above, Lake Erie and TSW provide statements by three Toledo citizens and members of TSW who describe how the City's water problems have personally affected them. One of these statements comes from Markie Miller who graduated from the University of Toledo with a Masters Degree in Environmental Science. Miller explains, "Large scale industrial agriculture and confined animal feeding operations ('CAFOS') that create, store, and apply manure (often in liquid form) are contributing to the problem in a major way." (Miller Decl., ¶ 17).

In fact, Lake Erie and TSW remind us that "[n]early half a million people in northwestern Ohio" experienced this proof firsthand when they awoke one Saturday morning in August, 2014, to dire warnings "from Toledo city officials: 'don't drink water from the tap. Don't give it to pets. Don't boil or cook with it, and restaurants should remain closed until further notice.'"

(Memo in Support, at 5, 20-22.) To drive this point home, Lake Erie and TSW cite a city-issued notice which said "Seek medical attention if you feel you have been exposed" to *water from the tap*. (*Id.* at 5, 23-25.)

Lake Erie and TSW allege very substantial injuries that are both certain and immediate rather than speculative or theoretical and that are nearly certain to continue. They support their allegations with more than adequate proof. Therefore, they demonstrate that if the stay is not granted, Lake Erie and TSW will be irreparably harmed.

**C.     If the stay is granted, Drewes Farms Partnership will not be irreparably harmed.**

The same three factors that govern whether a movant will be irreparably harmed if the motion is not granted are applied in determining whether nonmoving parties will be irreparably harmed if the motion is granted. *See Cuomo v. United States Nuclear Regulatory Commission*, 772 F.2d 972, 977 (D.C. Cir. 1985) "[E]conomic loss does not constitute irreparable harm, in and of itself." *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987). Furthermore, "…the harm alleged must be both certain and great, rather than speculative or theoretical." *Id.*

In evaluating the degree of injury, the Supreme Court has explained:

> [t]he key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 US 61, 90 (1974).

First, if the stay is granted, DFP will not be harmed at all, let alone irreparably harmed, because DFP and the City of Toledo have stipulated to, and this Court has signed, an order preventing the City from enforcing LEBOR against anyone. This Court noted that the purpose of a preliminary injunction under Federal Civil Rule 65, is "to preserve the relative positions of the

Motion to Stay Pending Intervention Appeal – 10 of 18

parties until a trial on the merits can be held." PI Order, at 2 (internal quotation and citation omitted). And, indeed, this preliminary injunction was ordered "[t]o preserve the status quo until the merits of this action can be decided…" *Id.* at 2. The Preliminary Injunction Order will stand while the Court of Appeals decides whether Lake Erie and TSW will be allowed to intervene. So, DFP may continue with business as usual during the pendency of the case.[1]

Without more, DFP fails to allege that LEBOR causes it an injury in fact, in the first place – let alone a substantial injury or an injury that can be exacerbated to the level of *irreparable* harm by granting this motion to stay. There is no underlying injury in fact, so this motion to stay cannot irreparably harm DFP. Similarly, because DFP fails to allege an injury in fact, there are no grounds to assess whether any injury to DFP is likely to occur or whether DFP has provided adequate proof of an injury. Thus, DFP will not be harmed by granting the motion to stay.

Even if this Court disagrees and finds that DFP has alleged an injury in fact, granting this motion to stay would only postpone DFP's opportunity to obtain a ruling on the merits. DFP has alleged that:

> "An injunction and declaration is needed quickly in this case. Depending on the weather, planting season for wheat will likely begin in late March and for the rest of the crops in April. Fertilization will need to begin at that time in order to successfully operate Drewes Farms' farming operation and to meet Drewes Farms' various Contracts." (Complaint ¶ 58).

This is the kind of "economic loss" the 6th Circuit has ruled "does not constitute irreparable harm, in and of itself." *Celebrezze* at 290. These are also the kinds of "mere injuries, however substantial, in terms of money, time, and energy" that the Supreme Court has ruled are not

---

[1] Even if there was no Preliminary Injunction Order, DFP has failed to allege injury in fact in the first place, so it cannot be harmed by a stay in this case. Lake Erie and Toledoans incorporate, here, the arguments made in their Proposed Motion to Dismiss and the Proposed Memorandum in Support of the Motion to Dismiss. In summary, for DFP to be affected by LEBOR, DFP must actually pollute Lake Erie. Nowhere does DFP admit that it engages in this pollution. Instead, DFP only maintains that it complies with relevant antipollution regulations (and voluntarily goes beyond those regulations).

Motion to Stay Pending Intervention Appeal – 11 of 18

enough. *Sampson v. Murray* at 90. Granting this motion to stay will also do nothing to affect "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation." *Id.* This reality "weighs heavily against a claim of irreparable harm." *Id.*

**D. Granting the stay is clearly in the public interest.**

In evaluating whether granting a stay is in the public interest, "[t]he interests of private litigants must give way to the realization of public purposes." *Virginia Petroleum Jobbers Association v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958). Denying this motion to stay would be a text book example of the interests of private litigants trumping the realization of public purposes. It is difficult to imagine an interest more common to the entire public than the interest in clean water. Life is simply impossible without it. Right now, however, industrial practices are poisoning Lake Erie, the source of northern Ohio's water. LEBOR is a tool protecting everyone in northern Ohio's water and it should have its day in court.

At this stage of the proceedings, this Court is not being asked to define LEBOR's role in protecting the region's water. Instead, after barring the most essential ecosystem to life in the region (Lake Erie) and the group responsible for placing LEBOR on the ballot and invested in their ability to use LEBOR in the future, from the first case interpreting LEBOR, this Court is simply being asked to pause the proceedings so that Lake Erie and LEBOR can ask the opinion of the Court of Appeals on whether they have a right to be parties in the case.

The public interest favors settling Lake Erie's and TSW's status as a party now. In *Coalition to Defend Affirmative Action v. Granholm*, the people of Michigan approved a statewide ballot initiative which amended the Michigan Constitution to prohibit discrimination or preferential treatment based on race or gender in the operation of public employment, public education, or public contracting in the State. 473 F.3d 237 (6th Cir. 2006). Several organizations

Motion to Stay Pending Intervention Appeal – 12 of 18

and individuals opposed to the initiative filed suit against the Governor of Michigan and the regents or boards of several Michigan universities. The Attorney General also successfully intervened. Then, all the parties – the Governor, Attorney General, the Universities, and the plaintiffs – stipulated to a "temporary injunction." Later, a white man who had applied to the University of Michigan law school successfully intervened and filed an "Emergency Motion for a Stay Pending Appeal" of the temporary injunction.

In a similar situation to the one at hand, the 6th Circuit applied the four factors governing a motion to stay appending appeal to ultimately grant the stay preventing the stipulated temporary injunction from taking effect. The Court wrote about the public interest factor: "[T]he public interest lies…ultimately…upon the will of the people of Michigan being effected in accordance with Michigan law." *Coalition to Defend Affirmative Action*, 473 F.3d at 252 (internal quotation and citation omitted).

The will of the people of Toledo is reflected in LEBOR's election results. Ohio's ballot initiative process represents the most directly democratic process available to Ohio citizens. Nowhere else may the public participate so directly in lawmaking. Meanwhile, the City of Toledo has a long record of expressing opposition to LEBOR. And, with the City consenting to a preliminary injunction in this case, it appears that the City is well on its way to refusing to enforce LEBOR. If this Court does not grant this motion to stay, then no one will represent the interests of the voting public. To lose on the merits is one thing, but to never even gain the chance to argue on the merits is quite another.

**E. Granting the stay is the best use of judicial resources.**

The 6th Circuit often grants motions to stay pending an appeal. *See American Civil Liberties Union v. National Security Agency/Central Security Service*, 467 F.3d 590 (6th Cir. 2006); *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237 (6th Cir. 2006);

Motion to Stay Pending Intervention Appeal – 13 of 18

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th Cir. 1991); *State of Ohio ex rel. Celebrezze v. NRC*, 812 F.2d 288 (6th Cir. 1987).

This Court should stay the litigation pending the outcome of Proposed Intervenors' appeal to preserve judicial resources. Denying this motion to stay would likely result in this case progressing to summary judgment motions (or worse yet, and entirely likely, proceeding to a stipulated judgment gutting LEBOR entirely) without Lake Erie having any input on a new tool that could be used to help it recover. Denying this motion to stay would also bar Toledoans from contributing input, too. If the Court of Appeals reverses this Court's denial and grants intervention, this case will be subject to further delay as Lake Erie and TSW will file their own motion for summary judgment and participate at trial.

## II.   Proposed Intervenors Should Not Be Required To Post A Supersedeas Bond.

Proposed Intervenors request that this Court authorize an unsecured stay, under Fed. R. Civ. P. 62(d), while the Sixth Circuit considers the appeal of this Court's denial of intervention. Fed. R. Civ. P. 62(d) "does not prohibit the district court from exercising a sound discretion to authorize unsecured stays in cases it considers appropriate." *Federal Prescription Serv. Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 758 (D.C. Cir. 1980).

The purpose of Rule 62(d) "is to ensure 'that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed." *Cohen v. Metro. Life Ins. Co.*, 334 F. App'x. 375, 378 (2d Cir. 2009) (quoting *Cleveland Hair Clinic Inc. v. Puig*, 104 F.3d 123, 125 (7th Cir. 1997)) Because Rule 62(d) potentially deprives the appellee of the "right to enforce a valid judgment immediately," the appellant normally must "post the bond to provide both insurance and compensation to the appellee." *Hamlin v. Charter Twp. of Flint*, 181 F.R.D. 348, 351 (E.D. Mich. 1998). "Because of 62(d)'s dual protective role, a full supersedeas bond should

Motion to Stay Pending Intervention Appeal – 14 of 18

almost always be required." *Id.* (emphasis added).

Here, this Court has already ordered a preliminary injunction "[t]o preserve the status quo until the merits of this action can be decided…" PI Order, at 2. Therefore, any costs on appeal are likely to be minimal, if not nonexistent, and there is no need to require Proposed Intervenors to file a bond or provide other security in any form. While a full supersedeas bond should *almost always* be required and, because the Preliminary Injunction Order adequately protects the other parties' interests, and because the case does not involve claims for monetary damages by the Plaintiff, the case at hand is one situation where a supersedeas bond should not be required.

While Rule 62(d) entitles a party who files a satisfactory supersedeas bond to a stay as a matter of right, "the rule in no way necessarily implies that filing a bond is the only way to obtain a stay." *Arban v. West Publishing Corp.*, 345 F.3d 390, 409 (6th Cir. 2003) (citing *Federal Prescription Serv. Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980). "Courts may waive the bond requirement entirely, but, "[t]he Sixth Circuit has not defined a specific test to guide the Court's discretion when considering whether to grant an unsecured stay." *Exel, Inc. v. Southern Refrigerated Transport, Inc.*, No. 2:10-cv-994 (S.D. Ohio Dec. 5, 2014) (citing *Buckhorn Inc. v. Orbis Corp.*, No. 3:08-cv-459, 2014 WL 4377811 at *1 (S.D. Ohio Sept. 3, 2014)).

Again, this Court's Preliminary Injunction Order controls during the pendency of Proposed Intervenors' appeal, thus ensuring that DFP suffers no harm during this appeal.

**Conclusion**

The Court should stay this case pending a decision by the Sixth Circuit on whether Lake Erie Ecosystem and Toledoans for Safe Water have a right to intervene because the Court's Order did not consider the full *Granholm* rule and thus misapplied that case to support denying intervention, the Proposed Intervenors will be irreparably harmed absent a stay as their interests

Motion to Stay Pending Intervention Appeal – 15 of 18

1 in defending LEBOR will be decided in their absence, existing parties will not suffer any harm in

2 delaying the resolution of this case as there is a preliminary injunction order in place preserving

3 the status quo, and the public interest is supported by allowing a full discussion of the merits of

4 LEBOR before this Court, which will happen best when all parties who have an interest are

5 before the Court.

Respectfully submitted this May 8, 2019.

        **/s/ Terry J. Lodge**
        Terry J. Lodge, Esq. (S.Ct. #0029271)
        316 N. Michigan St., Suite 520
        Toledo, OH 43604-5627
        Phone (419) 205-7084
        tjlodge50@yahoo.com
        lodgelaw@yahoo.com

        **/s/ Lindsey Schromen-Wawrin**
        Lindsey Schromen-Wawrin (WSBA #46352)
        Shearwater Law PLLC
        306 West Third Street
        Port Angeles, WA 98362
        Phone (360) 406-4321
        Fax (360) 752-5767
        lindsey@ShearwaterLaw.com

        *Attorneys for Intervenor-Defendants*
        *Lake Erie Ecosystem and Toledoans for Safe Water, Inc.*

**Certificate of Memorandum Length**

Pursuant to Local Rule 7.1(f), this brief does not exceed 20 pages, as this case is currently unassigned to a track.

Dated: May 8, 2019.

**/s/ Terry J. Lodge**
Terry J. Lodge, Esq. (S.Ct. #0029271)
316 N. Michigan St., Suite 520
Toledo, OH 43604-5627
Phone (419) 205-7084
tjlodge50@yahoo.com
lodgelaw@yahoo.com

**/s/ Lindsey Schromen-Wawrin**
Lindsey Schromen-Wawrin (WSBA #46352)
Shearwater Law PLLC
306 West Third Street
Port Angeles, WA 98362
Phone (360) 406-4321
Fax (360) 752-5767
lindsey@ShearwaterLaw.com

*Attorneys for Intervenor-Defendants*
*Lake Erie Ecosystem and Toledoans for Safe Water, Inc.*

**Certificate of Service**

I certify that I electronically filed this document with the Clerk of the Court for the United States District Court for the Northern District of Ohio by using the Court's CM/ECF system on May 8, 2019.

The other parties are Filing Users and are served electronically by the Notice of Docket Activity.

Dated: May 8, 2019

<u>**/s/ Lindsey Schromen-Wawrin**</u>
Lindsey Schromen-Wawrin (WSBA #46352)
Shearwater Law PLLC
306 West Third Street
Port Angeles, WA 98362
Phone (360) 406-4321
Fax (360) 752-5767
lindsey@ShearwaterLaw.com

*Attorney for Intervenor-Defendants*
*Lake Erie Ecosystem and Toledoans for Safe Water, Inc.*