**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO,
WESTERN DIVISION**

| | | |
|---|---|---|
| DREWES FARM PARTNERSHIP, | : | |
| Plaintiff, | : | |
| and | : | |
| STATE OF OHIO, EX REL. YOST, | : | |
| Intervenor-Plaintiff, | : | |
| | : | CASE NO. 3:19-cv-00434-JZ |
| v. | : | |
| | : | JUDGE JACK ZOUHARY |
| CITY OF TOLEDO, | : | |
| Defendant. | : | |

**STATE OF OHIO'S MOTION FOR JUDGMENT ON THE PLEADINGS**

The State of Ohio seeks a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Based upon the pleadings in Intervenor-Plaintiff's Complaint (Dkt. 31), and construed in a light most favorable to Defendant, there are no material issues of fact to be resolved and the State of Ohio is entitled to judgment as a matter of law.

1

Respectfully submitted,

DAVE YOST
Attorney General of Ohio


/S/ Daniel J. Martin
Daniel J. Martin (0065249)
Amanda M. Ferguson (0089576)
Gregg H. Bachmann (0039531)
Assistant Attorneys General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215
Tel: 614-466-2766; Fax: 614-752-2441
Daniel.Martin@ohioattorneygeneral.gov
Amanda.Ferguson@ohioattorneygeneral.gov
Gregg.Bachmann@ohioattorneygeneral.gov

*Attorneys for Intervenor-Plaintiff, the State of Ohio*

## I. INTRODUCTION

Regardless of how well-intentioned the City of Toledo's Charter Amendment is, it cannot change state and federal law. The "natural rights" theory promoted by it is based on a flawed legal premise that empowers natural features, in this case the "Lake Erie Ecosystem," by purporting to confer inherent rights and legal standing. The Charter Amendment asserts that a Lake Erie Bill of Rights "…elevates the rights of the community and its natural environment over powers claimed by certain corporations." The novel but ultimately unsupported natural rights concept has no support in the law, and this Court should not give it life here.

The Charter Amendment's declaration of natural rights conflicts with and contradicts a fundamental tenet of American law: that upon statehood, a state obtains title in public trust to navigable waters within its boundaries. This principle is embodied in the U.S. Constitution's equal footing doctrine, the federal Submerged Lands Act, and federal and state common law recognizing Ohio's public trust interest in Lake Erie. The Charter Amendment also seeks to upend state water pollution control permitting authority and enforcement, state management and regulation of the public and private uses of Lake Erie lands and coastal waters, and state court jurisdiction and authority to determine standing.

Because the Charter Amendment conflicts with federal and state law and attempts to confer rights beyond the scope of Toledo's municipal authority, the State seeks a declaratory judgment and permanent injunction in its favor.

## II. ALLEGATIONS

In a February 26, 2019 special election, the City of Toledo approved the Lake Erie Bill of Rights Charter Amendment, codified at Toledo Ord. 497-18. (Exhibit A to the State's Complaint (Dkt. 31) hereinafter referred to as "LEBOR" or "Charter Amendment"). The Charter

3

Amendment purports to grant "rights" to Toledo residents and to the Lake itself. It is a roughshod attempt to confer legal standing in all cases where those "rights" are asserted. By self-conferring these "rights," the Charter Amendment is unconstitutional under the U.S. and Ohio constitutions, and it is preempted by state and federal law as set forth in the State's Complaint. (Dkt. 31.)

### III. STANDARD OF REVIEW

Motions for judgment on the pleadings under Federal Civil Rule 12(c) are reviewed under the same standard as Rule 12(b)(6) motions. *Coley v. Lucas County*, 799 F.3d 530, 536–37 (6th Cir. 2015). With a motion for judgment on the pleadings, it is presumed that all material allegations of the pleadings are true and reasonable inferences are made in the non-moving party's favor. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield,* 552 F.3d 430, 434 (6th Cir. 2008). Courts may consider the Complaint, the Answer, and any documents specifically referenced in the Complaint. *See* Federal Civil Rules 7(a), 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

### IV. LAW AND ARGUMENT

The purported rights in the Charter Amendment, including the vaguely described power to enforce civil and criminal "violations," are contrary to the U.S. Constitution, the Submerged Lands Act, federal case law, and the Ohio Constitution, statutes, and case law. By establishing a "Right of Local Community Self-Government," the Charter Amendment unlawfully seeks to substitute the City and its residents as the trustees of public trust rights and take away the rights and interests from the State of Ohio LEBOR Section 1(c). These declarations of the Charter

Amendment and ordinance squarely conflict with established law. Accordingly, Plaintiff-Intervenor, the State of Ohio, requests judgment in its favor based on the State's Complaint (Dkt. 31) and the corresponding claims of the Drewes Farm Complaint (Dkt. 1).

### A. THE CHARTER AMENDMENT CONFLICTS WITH AND CONTRADICTS THE EQUAL FOOTING AND PUBLIC TRUST DOCTRINES

The State of Ohio's rights over their navigable waters like Lake Erie and its submerged lands were reserved to the State pursuant to U.S. Const. art. I, § 8, cl. 16. *Martin v. Lessee of Waddell*, 41 U.S. 367, 410 (1842) (each state holds "the absolute right to all their navigable waters and the soils under them for their own common use"); *see also Shively v. Bowlby*, 152 U.S. 1, 16 (1894) (reaffirming each state's "absolute right to all their navigable waters * * * subject only to the rights since surrendered by the Constitution to the general government"). The Charter Amendment's "right to self-government" would eviscerate this bedrock legal principle. *See* LEBOR Sec. 1(c) ("right of local community self-government").

Ohio's title in trust to its territory including Lake Erie, like the other states in the Northwest Territory, is based upon the original deed of cessation granting all territory in the Northwest Territory to the states admitted to the federal union. *Pollard v. Hagan*, 44 U.S. 212, 221 (1845) (the deed of cessation from Virginia to the United States created the Northwest Territory "upon condition that the territory so ceded shall be laid out and formed into states"). Under the Ohio Enabling Act of April 30, 1802, 2 Stat. 175, sec. 1, Ohio was "admitted into the Union upon the same footing with the original States in all respects whatever." In it, Ohio's territory extended "through Lake Erie to the Pennsylvania line." *Id.* at sec. 2.

These rights were further affirmed in federal statute, serving as the foundation for the Submerged Lands Act enacted on May 22, 1953 (amended April 7, 1986). 43 U.S.C. § 1301, *et seq.* The Act confirmed the titles of the states to lands beneath navigable waters within state

5

boundaries and to the natural resources within such lands and waters. The Act also specified the broad scope of resources encompassed within the public trust. Under the Act, the term "natural resources" includes without limiting the applicability thereof "oil, gas, and all other minerals, and fish…and other marine animal and plant life…" 43 U.S.C. § 1301(2)(e). The Charter Amendment's claim to self-executing governance over these natural resources defies all constitutional, legal, and legislative history. *See* LEBOR Sec. 1(a), (b), and (d).

Sections 1 through 6 of the Charter Amendment conflict with not only established federal precedent but with Ohio law as well. The Ohio Supreme Court has long recognized that the State holds the title to the subaqueous land of Lake Erie within the boundaries of Ohio as trustee for the protection of public rights. *State v. Cleveland & Pittsburgh RR. Co.,* 94 Ohio St. 61, 79, 113 N.E. 677 (1916). Further, Ohio Rev. Code 1506.10, also known as the "Fleming Act," provides that the waters of Lake Erie together with the soil beneath and its contents "…do now belong and have always, since the organization of the state of Ohio, belonged to the state as proprietor in trust for the people of the state, for the public uses to which they may be adapted, subject to the powers of the United States government…" As a result, the City's Charter language is defective and contrary to law on its face.

The Charter Amendment seeks to abrogate the State's control of Lake Erie's waters and lands and substitute the residents of the city of Toledo, apparently at the exclusion of all other Ohio citizens, as standing in the position of holding control over the public trust resources of the Lake. LEBOR Sec. 2-6. *See e.g.*, LEBOR Sec. 5 ("the law shall apply to any and all actions that would violate this law regardless of the date of an applicable local, state, or federal permit"). Ignoring federal and state legal precedent, the Charter Amendment seeks to create "natural legal rights" in Lake Erie. LEBOR Sec. 1. None of it—whether its proclamations, "community bill of

rights," "statements of law," enforcement provisions, effect on existing permit holders, etc.— withstands any statutory or case law that dates back to Ohio's founding. Try as it might, the City of Toledo cannot uproot established law.

### B. THE CHARTER AMENDMENT IS PREEMPTED BY FEDERAL LAW AND VIOLATES THE SUPREMACY CLAUSE OF THE U.S. CONSTITUTION

#### 1. The Charter Amendment Cannot Decree Itself Superior to all Other Laws

One of the most fundamental precepts under the U.S. Constitution is that the "Constitution, and the laws of the United States * * * under the authority of the United States, shall be the Supreme Law of the Land." U.S. Const. art. VI, cl. 2. The Charter Amendment does not recognize this founding principle. Its newly-fashioned "bill of rights" declares generalized "rights" and jurisdiction over matters controlled long ago by the laws of the United States. Toledo Ord. 497-18, SECTION 3 Preamble ("Bill of Rights"), ¶¶ 1, 6. It purports to regulate each area covered by "government policies, permitting and licensing." *Id.* It subverts applicable federal environmental permits. LEBOR Sec. 2(b). It forces strict liability upon governments and corporations that "violate the rights of the Lake Erie Ecosystem." LEBOR Sec. 3(c). By claiming these and all other unspecified "rights" outlined in the State's Complaint (Dkt. 31), the City of Toledo is proclaiming its Charter to be superior to applicable federal and state law. *See, e.g.,* the Preamble at ¶ 6, which "elevates" the "rights" declared in the Charter Amendment to the exclusion of all others. Nowhere is that concept supported in American law.

Only a textbook application of the relevant law is necessary to find the Charter Amendment unconstitutional on its face. First, the laws enacted by Congress reign supreme. U.S. Const. art. VI, cl. 2; *see also Second Employers' Liability Cases*, 223 U.S. 1, 57, 32 S. Ct. 169, 56 L. Ed. 327 (1912) ("When Congress, in the exertion of the power confided to it by the Constitution, adopted [a federal law], it spoke for all the people and all the States, and thereby

established a policy for all. * * * The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are.")

Second, if there is a conflict between federal laws and laws created by any subordinate layer of government, i.e., state or local, any valid federal law preempts those subsidiary laws. *See, e.g., Ky. Res. Council, Inc. v. United States EPA,* 304 F. Supp. 2d 920, 926 (W.D. Kentucky 2004) (as applied to a conflict between the Clean Air Act and state law, "the Supremacy Clause of the United States Constitution says that a valid federal law will preempt a conflicting state law").

Third, a subordinate governmental entity like a municipality, "no matter how well it may intend to reflect the will of some of its constituents, cannot unilaterally change" how the regulatory process works. *Id.* at 927 (invalidating local air pollution control district's attempt to terminate a federally-sanctioned emission control testing program delegated to the state and authorized under the Clean Air Act); *accord Haywood v. Drown*, 556 U.S. 729, 740, 129 S. Ct. 2108, 173 L. Ed. 2d 920, (2009) (under the Supremacy Clause, a state "is not at liberty" to enact laws counteracting federal laws "that it considers at odds with its local policy"). The "unilateral change" attempted under the Charter Amendment is the same as that addressed in *Ky. Res. Council, Inc.* and is thus preempted by federal law and offends the Supremacy Clause.

In assessing preemption, the Court's role is to determine whether the local or state law being contested stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 761 S. Ct. 399, 85 L. Ed. 581 (1941) (applied to federal preemption over the field of foreign affairs invalidating a state alien registration law). Here, the answer is a resounding yes. The Charter Amendment cannot "self-elevate" its "rights" over all other laws.

## 2. Federal Law Delegates Water Pollution Control and Drinking Water Enforcement to the State of Ohio

Perhaps more importantly, Congress has decisively delegated surface water pollution control and drinking water programs to the states, including Ohio. Congress designed federal water pollution control policy to "recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources." 33 U.S.C. § 1251(b). That legal authority, including policy, permitting, standards, and enforcement, in this area comes from the Clean Water Act, 33 U.S.C. Chapter 26 - Water Pollution Prevention and Control and Safe Drinking Water Act, 42 U.S.C. § 300g-2. And that federally-delegated authority cannot be reconciled with the Charter Amendment's "Community Bill of Rights" (LEBOR Sec. 1), "Prohibitions Necessary to Secure the Bill of Rights" (LEBOR Sec. 2), enforcement provisions (LEBOR Sec. 3 and 4), or local, state, or federal permit preemption provisions (LEBOR Sec. 5).

Ohio has accepted the federally-delegated National Pollution Discharge Elimination System ("NPDES") program that grants states legal authority to administer their own wastewater pollution discharge permit programs under the Clean Water Act, 33 U.S.C. § 1342(b). *See* Ohio Rev. Code 6111.03(J) (wastewater), Ohio Rev. Code 6111.035 (stormwater and other discharges). The same is true for state sewage sludge disposal programs with delegated permitting authority via 33 U.S.C. § 1345(c). *See* Ohio Rev. Code 6111.03(J) and (R) (sewage sludge program) and 6111.03(P) (publicly owned treatment works pretreatment program). Maintaining water quality was also delegated to the states pursuant to 33 U.S.C. § 1341, under which Ohio accepted delegation in Ohio Rev. Code 6111.03(O). All of Ohio's surface water

pollution control laws, civil and criminal, are enforced by the Attorney General pursuant to Ohio Rev. Code 6111.07 and 6111.09.

The same federal delegation applies to drinking water under the Safe Drinking Water Act. Congress delegated primary enforcement responsibility to the states for public water systems. 42 U.S.C. § 300g-2. Ohio EPA accepted the State's responsibility for the collection, treatment, storage, and distribution of water for human consumption under Ohio Rev. Code 6109.04. Like the water pollution control laws, enforcement of Ohio's drinking water laws, civil and criminal, is handled by the Attorney General. Ohio Rev. Code 6109.32 and 6109.33.

While the Charter Amendment purports to preempt these federal or federally-delegated laws and permits, the converse is true. *See, e.g.,* LEBOR Sec. 5 (the Charter Amendment "shall apply to any and all actions that would violate this law regardless of the date of any applicable local, state, or federal permit") and LEBOR Sec. 2(b) ("No permit, license, privilege, charter, or other authorization issued to a corporation, by any state or federal entity, that would violate the prohibitions of this law or any rights secured by this law, shall be deemed valid within the City of Toledo.") Because these federal laws were enacted by Congress, the Supremacy Clause under article VI, cl. 2 reduces the Charter Amendment to a legal nullity. As a result, it is void and unenforceable.

### 3. Federal Law Delegates Great Lakes Protection to the State of Ohio

These same constitutional and preemption legal barriers for the Charter Amendment are established by federal delegation to Ohio's Department of Natural Resources. The Charter Amendment seeks to create and maintain authority to manage and regulate the public and private uses of lands and waters in the coastal area of Lake Erie. (LEBOR Sec. 1 (a) (ecosystem rights); Sec. 2 (b) (invalidating state and federal permits); Sec. 5 (superseding local, state, federal

permits)). This conflicts with federal law. The Coastal Zone Management Act, 16 U.S.C. §§ 1451 *et seq.*, establishes that states, including Ohio, shall exercise control over their coastal zones and develop a coastal management plan. The "intent of this legislation is to enhance state authority by encouraging and assisting the states to assume planning and regulatory powers over their coastal zones…." S. Rep. 92-753 (Senate Commerce Committee). Federal law extends Ohio's Coastal Zone north within Lake Erie's Central Basin to the international boundary between the United States and Canada. 16 U.S.C. § 1453(1). Ohio has incorporated those boundaries into its own laws. Ohio Rev. Code 1506.10.

The Ohio Department of Natural Resources is Ohio's lead agency for developing and implementing a coastal management program. Ohio Rev. Code 1506.02(A). Through that program, Ohio enacts enforceable policies that regulate Ohio's coastal zone. Ohio Rev. Code 1506.01(B) (regulated matters include protection of air, water, wildlife, rare and endangered species, wetlands and natural areas, and other natural resources in the coastal area). Violations of rules, administrative orders, and permits are subject to enforcement by the Attorney General, who may seek injunctive relief and civil penalties. Ohio Rev. Code 1506.09(A)(2).

Similarly, the United States Congress enacted the Submerged Lands Act on May 22, 1953 (amended April 7, 1986). 43 U.S.C. § 1301, *et seq*. The Act confirms state title to lands beneath navigable waters within state boundaries and to the natural resources within such lands and waters. 43 U.S.C. § 1311(a). The Charter Amendment claims it is "unlawful for any corporation or government to violate the rights recognized and secured by this law." LEBOR Sec. 2 (a); *see also* LEBOR Sec. 5 (effective date against existing permit holders). This "prohibition" interferes with Ohio's federally-delegated ability to manage and use the lands, waters, and resources of Lake Erie that are within Ohio's boundaries.

The Charter Amendment impermissibly attempts to provide the "Lake Erie Ecosystem" with a distinct legal identity and to confer legal standing, including the right to bring an action to enforce its own legal rights not through the State of Ohio as trustee for the people of the state but through the City of Toledo or its residents. LEBOR Sec. 3. The City cannot do this. When Congress created the Coastal Zone Management Act and the Submerged Lands Act, it delegated certain authority to the states and it preempted regulation of any state lands and waters by any subordinate unit of government, including the City of Toledo. Because of these federal laws, the Supremacy Clause reduces the Charter Amendment to a legal nullity. The Charter Amendment is therefore unconstitutionally void and unenforceable.

### C. STATE PREEMPTION ABROGATES THE CHARTER AMENDMENT UNDER THE OHIO CONSTITUTION

State preemption furnishes the same constitutional nullifying effect on the Charter Amendment as does federal preemption. Art. XVIII, § 3 of the Ohio Constitution expressly contrasts the exercise of "all powers of local self-government" with the "general laws" of the State. In doing so, it specifically limits municipal authority to those laws that do not "*conflict* with general laws." *Id.* (emphasis added.); *see also* art. XVIII, § 7 (subjecting the authority to amend a charter to the limitations of art. XVIII, § 3). *See also State ex rel. Flak v. Betras*, 152 Ohio St. 3d 244, ¶ 15, 2017-Ohio-8109 (per Ohio Constitution art. XVIII, § 3, "a municipality is not authorized to create new causes of action"). The result is that a municipality cannot enact an ordinance prohibiting regulated activity otherwise authorized under state permits that have been issued pursuant to state laws of general applicability. *State ex rel. Morrison v. Beck Energy Corp.*, 143 Ohio St. 3d 271, 280, 2015-Ohio-485, 37 N.E.3d 128 (State laws with state-wide application preempt local ordinances that "discriminate, unfairly impede, or obstruct" general laws regulating oil and gas activities.).

12

The Charter Amendment turns municipal authority under Art. XVIII, § 3 on its head. Here's how. The Charter Amendment's plain language purports to have the twin effects of A) regulating or policing certain conduct already regulated under state and federal law (LEBOR Sec. 3-4) and B) prohibiting any government or corporation from operating under a lawfully issued permit within or somehow impacting the City of Toledo (LEBOR Sec. 2.) The net effect is a local ordinance that would outrank state law. *See* LEBOR Sec. 1(c) (system of self-government). It thereby abuses the time-honored principle that "state law determines what injuries are recognized and what remedies are available." *Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, 740 F.2d 1362, 1370 (6th Cir. 1984). Its self-authorizing language exposes that, even under even the simplest reading of Ohio Constitution art. XVIII, § 3, the Charter Amendment is unconstitutional.

It purports to preempt all duly enacted laws—Ohio and federal—by decreeing that the Charter Amendment "shall apply to any and all actions that would violate this law regardless of the date of any applicable local, state, or federal permit." LEBOR Sec. 5. It declares that the "rights" and "prohibitions" under it are the only law regulating Lake Erie and its watershed to be recognized in the City of Toledo to the exclusion of all state and federal laws. *See, e.g.,* LEBOR Sec. 2(a) ("It shall be unlawful for any corporation or government to violate the rights recognized and secured by this law."); LEBOR Sec. 2(b) ("No permit, license, privilege, charter, or other authorization issued to a corporation, by any state or federal entity, that would violate the prohibitions of this law or any rights secured by this law, shall be deemed valid within the City of Toledo."); LEBOR Sec. 3(c) ("activities that violate the rights of the Lake Erie Ecosystem, in or from any jurisdiction, shall be strictly liable for all harms and rights violations"); LEBOR Sec. 4(b) ("All laws adopted by the legislature of the State of Ohio, and

rules adopted by any State agency, shall be the law of the City of Toledo only to the extent that they do not violate the rights or prohibitions of this law."). It declares all of this to be "self-executing." LEBOR Sec. 1(d). And if one part is struck down, another survives. LEBOR Sec. 6. (severability). This is how the City's Charter Amendment attempts to elevate itself above Ohio law. This they cannot do.

These and every other provision of LEBOR constitute "police powers" that regulate the public health and general welfare in the city of Toledo and beyond. *See, e.g., Mendenhall v. City of Akron*, 117 Ohio St. 3d 33, ¶ 19, 2008-Ohio-270 (traffic regulation is not an exercise of self-government under Ohio's Constitution, but it is "an exercise of police power that relates to public health and safety, as well as to the general welfare of the public"). The Charter Amendment would exercise much more than the "powers of local self-government" granted under Ohio Constitution art. XVIII, § 3. *See State ex rel. Bolzenius v. Preisse*, 155 Ohio St. 3d 45, ¶ 13, 2018-Ohio-3708 (community bill of rights for natural communities and ecosystems was properly kept off a municipal ballot because "the proposed ordinance here would create a new cause of action—something we have held municipalities lack the power to do").

Perhaps most astonishing is that the Charter Amendment strips corporations holding lawfully issued permits of basic legal safeguards, creating widespread regulatory uncertainty. *See* LEBOR Sec. 4(a). Shorn are "legal rights, powers, privileges, immunities, or duties" and the "power to assert preemptive laws in an attempt to overturn this law." *Id.* The Charter Amendment's sweeping preemptive reach recklessly disregards lawfully held legal rights and economic interests.

While Ohio's Constitution allows cities to govern "matters which are strictly local," it does not allow any local government to "impinge upon matters which are of a state-wide nature

14

or interest." *State ex rel. Hackley v. Edmonds*, 150 Ohio St. 203, 212, 80 N.E.2d 769 (1948). Each of Ohio's statutes listed in the State's Complaint is a law of general application with state-wide effect—the laws listed under Ohio Rev. Code Chapters 6109 and 6111 (Ohio EPA); Chapters 903 and 939 (Ohio Department of Agriculture); Chapters 1506, 1522, and 6161 (Ohio Department of Natural Resources); and Ohio Rev. Code Title 17 (Ohio corporate code). The General Assembly enacted general laws like these "to safeguard the peace, health, morals, and safety, and to protect the property of the people of the state." *Schneiderman v. Sesanstein*, 121 Ohio St. 80, 82-83, 167 N.E. 158 (1929). Because the Charter Amendment conflicts with all of these laws, it is preempted under Art. XVIII, Section 3 of Ohio's Constitution.

### D. THE CHARTER AMENDMENT CONFLICTS WITH AND IS PREEMPTED BY THE OHIO CONSTITUTION AND THE OHIO REVISED CODE'S JURISDICTION AND STANDING PROVISIONS

The natural rights declaration made in the Charter Amendment is contrary to Ohio's statutes and rules pertaining to jurisdiction and venue (Ohio R. Civ. P. 3) in Ohio courts. Only the Ohio Constitution may confer jurisdiction in Ohio courts of common pleas. Oh. Const. art. IV, § 4 (B) (creating "original jurisdiction over all justiciable matters * * * as may be provided by law." The Charter Amendment, on the other hand, manufactures its own "original jurisdiction" in the Lucas County Court of Common Pleas to enforce the "rights and prohibitions" drawn up under the "Lake Erie Bill of Rights." LEBOR Sec. 3(b). The Charter Amendment's claim that Lucas County has jurisdiction does not comport with Art. IV, Section 4 (B)'s requirements for justiciability. Since the "judicial power of the state" must be "established by law," the law-making function is entrusted to the exclusive authority of the General Assembly. Oh. Const. art. IV, § 1; Oh. Const. art. II, § 1. And that law-making authority is

"deemed [a] limitation[ ] on the power of the people to enact laws." Oh. Const. art. II, § 1. That includes the Charter Amendment.

The law relevant to this case creating justiciable matters and governing jurisdiction over them has been methodically and constitutionally crafted under Ohio's environmental, agriculture, and natural resources laws. Those laws confer jurisdiction in various courts of common pleas throughout the state, including the counties that border or overlie Lake Erie and that lie within the Lake Erie watershed. The General Assembly has declared that civil jurisdiction to enforce Ohio's environmental laws is limited to the provisions under Ohio Rev. Code 6109.32, 6109.33, 6111.07, and 6111.09 that provide for enforcement actions to be brought by the Attorney General in courts of competent jurisdiction. The same applies to enforcing Ohio's agricultural laws under Ohio Rev. Code 903.16, 903.30, and 939.07. Enforcement of Ohio's Department of Natural Resources Division of Water Resources laws is limited to the "the court of common pleas of Franklin county or the county where the applicable facility is located" pursuant to Ohio Rev. Code 1522.20(C). Because the Ohio Constitution allows only the General Assembly to confer jurisdiction over justiciable matters, the Charter Amendment's act (LEBOR Sec. 3(b)) of vesting jurisdiction in the Lucas County Court of Common Pleas is preempted by, inconsistent with, and conflicts with these state laws and Ohio's Constitution.

A similar constitutional analysis under Articles II and IV of the Ohio Constitution applies to standing. All the courts of common pleas referenced in Ohio Rev. Code §§ 903.16, 903.30, 939.07, 1522.20(C), 6109.32, 6109.33, 6111.07, and 6111.09—and not exclusively the Lucas County Court of Common Pleas—have jurisdiction to determine legal standing in any given case. Undeterred, the Charter Amendment unlawfully attempts to create legal standing under LEBOR Sec. 3(d) ("Such court action shall be brought in the name of the Lake Erie Ecosystem

as the real party in interest."). The Charter Amendment seeks to create an unlawful legal status different from that recognized by the United States and Ohio—and contrary to title in the state of Ohio—by purporting to give Lake Erie its own right to bring a legal action vicariously through Toledo or its residents. The City of Toledo cannot dictate the law of standing for any cause of action alleging that "rights" under the Charter Amendment have been violated. *Hartford Fire Ins., supra, Flak, supra,* and *Bolzenius, supra.* Because the Ohio Constitution allows only the General Assembly to confer and Ohio courts to determine standing in justiciable matters, the Charter Amendment's act of creating legal standing on "the Lake Erie Ecosystem as the real party in interest" is preempted by, inconsistent with, and/or conflicts with state law and Ohio's Constitution.

### E. THE ENTIRETY OF THE CHARTER AMENDMENT MUST BE STRICKEN

The Charter Amendment includes a non-severability clause: "[i]f any court decides that any section, clause, sentence, part, or provision of this law is illegal, invalid, or unconstitutional, such decision shall not affect, impair, or invalidate any of the remaining sections, clauses, sentences, parts, or provisions of the law." *See* LEBOR Sec 6. However, the purportedly "irrevocable rights," nullification of state and federal laws and permits, and enforcement provisions cannot operate in a vacuum. Indeed, the Charter Amendment is interlaced with reciprocating references throughout to rights, prohibitions, violations, and sanctions. Where lawful and unlawful provisions are "essentially connected," neither can stand. *See Ctr. For Powell Crossing, LLC v. City of Powell*, 173 F.Supp.3d 639, 684-85 (S.D. Ohio 2016) (discussing the severability of a charter amendment). If this Court does not strike the Charter Amendment in its entirety for the reasons set forth above, any remaining provisions of the Charter Amendment are so connected with the larger scheme of the Charter Amendment as to be

17

inseparable and must also be stricken. *See, e.g., Midwest Media Prop., LLC v. Symmes Twp.*, 503 F.3d 456, 497 (6th Circ. 2007).

## V.     CONCLUSION

The State recognizes the immense importance and value of Lake Erie to Ohio's social and economic well-being, and is striving to ensure that the environmental integrity of this outstanding natural resource is protected. The Charter Amendment, however, is not a lawful or reasonable measure to achieve that goal.

The attempts by the Charter Amendment to usher in new law—establish "natural rights," confer standing for the City of Toledo, its residents, and Lake Erie itself to bring actions for undefined violations, strip state common pleas courts of their jurisdiction, invalidate state rights and state and federal permits, and penalize both private and public entities, civilly and criminally—for indistinct harms to Lake Erie are in direct conflict with state and federal law. Each provision of the Charter Amendment is so intertwined in the overall unlawful scheme as to be inseparable.

Accordingly, the State respectfully requests this Court to issue a declaratory judgment finding the Charter Amendment invalid in its entirety pursuant to 28 U.S.C. §§ 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure and to permanently enjoin the City of Toledo from enforcing the Charter Amendment and its corresponding city ordinance, consistent with the State's Complaint.

Respectfully submitted,

DAVE YOST
Attorney General of Ohio


/S/ Daniel J. Martin
Daniel J. Martin (0065249)
Amanda M. Ferguson (0089576)
Gregg H. Bachmann (0039531)
Assistant Attorneys General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215
Tel: 614-466-2766; Fax: 614-752-2441
Daniel.Martin@ohioattorneygeneral.gov
Amanda.Ferguson@ohioattorneygeneral.gov
Gregg.Bachmann@ohioattorneygeneral.gov

*Attorneys for Intervenor-Plaintiff, the State of Ohio*

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2019, the foregoing was filed electronically through the Court's CM/ECF system, causing a copy of the same to be served by electronic mail upon all counsel of record.

/S/ Daniel J. Martin
Daniel J. Martin (0065249)
*Attorney for Intervenor-Plaintiff*