**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **DREWES FARMS PARTNERSHIP**, | : | |
| | : | **Civil Action No. 3:19-cv-00434** |
| *Plaintiff*, | : | |
| | : | **Judge Jack Zouhary** |
| and | : | |
| | : | **Magistrate Judge James R. Knepp, II** |
| **STATE OF OHIO,** | : | |
| | : | |
| *Intervenor*, | : | |
| | : | |
| v. | : | |
| | : | |
| **THE CITY OF TOLEDO, OHIO**, | : | |
| | : | |
| *Defendant*. | : | |

---

**PLAINTIFF DREWES FARMS PARTNERSHIP'S**
**BRIEF IN SUPPORT OF MOTION FOR  JUDGMENT ON THE PLEADINGS**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

STATEMENT OF THE ISSUES TO BE DECIDED.................................................. 1

SUMMARY OF THE ARGUMENT .......................................................................... 1

LAW AND ARGUMENT ......................................................................................... 1

I.     FACTUAL BACKGROUND ............................................................................ 1

II.     ARGUMENT OF LAW.................................................................................... 4

    A.    APPLICABLE STANDARD................................................................ 4

    B.    LEBOR IS UNCONSTITUTIONALLY VAGUE ON ITS FACE AND,
         THUS, VIOLATES DREWES FARMS' DUE PROCESS RIGHTS ................... 4

        1.    LEBOR is a criminal law that does not provide fair notice of the
             conduct it prohibits ............................................................... 5

        2.    LEBOR's vagueness chills speech protected by the First
             Amendment........................................................................ 7

        3.    LEBOR constitutes an unrestricted delegation of power to each
             "resident" of the City of Toledo.............................................. 8

    C.    ON ITS FACE, LEBOR VIOLATES DREWES FARMS' FIRST
         AMENDMENT RIGHTS ..................................................................... 9

    D.    ON ITS FACE, LEBOR VIOLATES THE EQUAL PROTECTION
         CLAUSE ........................................................................................ 12

    E.    ON ITS FACE, LEBOR VIOLATES THE DUE PROCESS CLAUSE ............. 14

    F.    DREWES FARMS IS ENTITLED TO DECLARATORY JUDGMENT
         THAT LEBOR IS PREEMPTED BY FEDERAL LAW ...................................... 15

    G.    DREWES FARMS IS ENTITLED TO DECLARATORY JUDGMENT
         THAT LEBOR IS PREEMPTED BY STATE LAW........................................... 15

        1.    Toledo violates Ohio law by trying to create new causes of action.......... 16

        2.    Toledo violates Ohio law by trying to create statutory standing ............. 17

        3.    Toledo violates Ohio law by trying to alter laws governing
             business entities ................................................................... 17

i

4.    Toledo violates Ohio law by purporting to exert authority over land held in the public trust...................................................................................... 18

H.    LEBOR MUST BE INVALIDATED IN ITS ENTIRETY ................................. 18

III.   CONCLUSION............................................................................................................ 20

CERTIFICATE OF MEMORANDUM LENGTH....................................................................... 21

CERTIFICATE OF SERVICE .................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*10280 Northfield Rd., LLC v. Vill. of Northfield*, No. 97-4207, 1999 U.S. App. LEXIS 3662 (6th Cir. Mar. 4, 1999) ............................................................................. 20

*Baggett v. Bullitt*, 377 U.S. 360 (1964) ................................................................... 7

*Bd. of Airport Comm'rs v. Jews for Jesus*, 482 U.S. 569 (1987) ............................ 10

*Bowers v. City of Flint*, 325 F.3d 758 (6th Cir. 2003) ............................................ 14

*Broadrick v. Okla.*, 413 U.S. 601, 612-15 (1973) .................................................. 12

*Burson v. Freeman*, 504 U.S. 191 (1992) ............................................................... 15

*Citizens United v. FEC*, 558 U.S. 310 (2010) .......................................................... 8

*City of Chi. v. Morales*, 527 U.S. 41 (1999) .......................................................... 12

*City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988) ........................ 19

*Clermont Envtl. Reclamation Co. v. Wiederhold*, 2 Ohio St. 3d 44, 442 N.E.2d 1278 (1982) ................................................................................................................. 19

*Colautti v. Franklin*, 439 U.S. 379 (1979) .............................................................. 5

*Cramp v. Bd. of Pub. Instruction*, 368 U.S. 279 (1961) ........................................... 7

*Dayton v. State*, 2017-Ohio-6909, 151 Ohio St. 3d 168, 87 N.E.3d 176 ................ 16

*Does v. Munoz*, 507 F.3d 961 (6th Cir. 2007) ........................................................ 14

*E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850 (6th Cir. 2001) ........................... 4

*Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214 ................................................................................................ 17

*First National Bank of Boston v. Bellotti*, 435 U.S. 765 (1978) ............................... 11

*Frost v. Corp. Com. of Okla.*, 278 U.S. 515 (1929) ................................................ 12

*Gitlow v. New York*, 268 U.S. 652 (1925) .............................................................. 13

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) .................................................. 7

*Grutter v. Bollinger*, 288 F.3d 732 (6th Cir. 2002) ................................................ 15

iii

*Gulf, Colo. & Santa Fe Ry.* v. *Ellis*, 165 U.S. 150 (1897) ............................................................ 12

*Haywood v. Drown*, 556 U.S. 729 (2009) ................................................................................... 10

*Johnson v. City of Cincinnati*, 310 F.3d 484 (6th Cir. 2002) ...................................................... 15

*Johnson v. United States*, 135 S. Ct. 2551 (2015) ....................................................................... 8

*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577 (6th Cir. 2007) ........................................ 4

*Kolender v. Lawson*, 461 U.S. 352 (1983) ............................................................................... 5, 9

*Lanzetta v. New Jersey*, 306 U.S. 451 (1939) .............................................................................. 8

*Leonardson v. E. Lansing*, 896 F.2d 190 (6th Cir. 1990) ............................................................. 4

*Marsilio v. Vigluicci*, 924 F. Supp. 2d 837 (N.D. Ohio 2013) .................................................... 4

*Mendenhall v. Akron*, 117 Ohio St. 3d 33, 2008-Ohio-270, 881 N.E.2d 24 ............................... 16

*Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38 (1st Cir. 1999) ........................................ 15

*Pa. Gen. Energy Co., LLC v. Grant Twp.*, 139 F. Supp. 3d 706 (W.D. Pa. 2015) ...................... 11

*Pac. Gas & Elec. Co. v. Pub. Utils. Com.*, 475 U.S. 1 (1986) ..................................................... 11

*Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972) ......................................................... 9

*Peoples Rights Org. v. City of Columbus*, 152 F.3d 522 (6th Cir. 1998) ................................. 5, 6

*Perry Ed. Assn.* v. *Perry Local Educators' Ass'n,* 460 U.S. 37 (1983) ...................................... 10

*Perry v. McGinnis*, 209 F.3d 597 (6th Cir. 2000) ...................................................................... 14

*Plyler v. Doe*, 457 U.S. 202 (1982) ........................................................................................... 13

*Roberts v. United States Jaycees*, 468 U.S. 609 (1984) ............................................................... 5

*Romer v. Evans*, 517 U.S. 620 .................................................................................................. 12

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995) .............................. 10

*San Ant. Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973) ...................................................... 12

*Schenker v. Cty. of Tuscarawas*, No. 5:12 CV 1020, 2012 U.S. Dist. LEXIS 131217
   (N.D. Ohio Sep. 14, 2012) ...................................................................................................... 14

*Shuttlesworth v. Birmingham*, 382 U.S. 87 (1965) ...................................................................... 9

*Smith v. Goguen*, 415 U.S. 566, 578 (1974) ............................................................................... 9

*Spokane Entrep. Ctr. v. Spokane Moves to Amend the Const.,* 369 P.3d 140 (Wash. 2016) ......................................................................................................... 11

*State ex rel. Bolzenius v. Preisse*, 2018-Ohio-3078 ............................................ 17

*State ex rel. Flak v. Betras*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329 .................... 17

*State ex rel. Maurer v. Sheward*, 1994-Ohio-496, 71 Ohio St. 3d 513, 644 N.E.2d 369 (Ohio 1994) ............................................................................... 19

*State ex rel. Maxcy v. Saferin*, 2018-Ohio-4035 ............................................... 17

*State v. Hochhausler*, 76 Ohio St. 3d 455, 1996 Ohio 374, 668 N.E.2d 457 (Ohio 1996).......... 19

*Sure-Tan, Inc. v. NLRB*, 467 U.S. 883 (1984) ................................................... 10

*Swepi, Ltd. P'ship v. Mora Cty.*, 81 F. Supp. 3d 1075 (D.N.M. 2015)............ 11, 13, 20

*Thornhill v. Alabama*, 310 U.S. 88 (1940) .......................................................... 9

*United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217 (1967) ...................... 13

*United States v. Cardiff*, 344 U.S. 174 (1952) .................................................... 5

*Wash. Mobilization Cmte. v. Cullinane*, 566 F.2d 107 (D.C. Cir. 1977)................ 4

*Wheatley v. A.I. Root Co.*, 147 Ohio St. 127, 140, 69 N.E.2d 187 (1946)............... 18

*Wooster v. Enviro-Tank Clean, Inc.*, 9th Dist. No. 13CA0012, 2015-Ohio-1876........ 17

*Wylie & Sons Landscaping LLC v. FedEx Ground Package Sys.*, No. 3:15 CV 706, 2016 U.S. Dist. LEXIS 112326 (N.D. Ohio Aug. 23, 2016) ............................. 2

*Zschernig v. Miller*, 389 U.S. 429 (1968) ......................................................... 15

**Statutes**

Ohio R.C. 1506.10 ............................................................................................ 18

Ohio R.C. 1776.37(A)....................................................................................... 18

Ohio R.C. Chapter 1701..................................................................................... 18

Ohio R.C. Chapter 1776..................................................................................... 18

**Other Authorities**

Boundary Waters Treaty of 1909, U.S.-Gr. Brit. (for Can.), Jan. 11, 1909, 36 Stat. 2448 .......... 15

Great Lakes Water Quality Agreement, U.S.-Can., Apr. 15, 1972, 23 U.S.T. 301,
 *codified at* 33 U.S.C.S. § 1268 ................................................................................. 15

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................. 4

Fed. R. Civ. P. 12(c) ...................................................................................................... 4

Fed. R. Evid. 201(b)....................................................................................................... 2

**Constitutional Provisions**

Ohio Const. Art. IV, §§1................................................................................................ 17

Ohio Const. Art. IV, §4(B) ............................................................................................ 17

Ohio Const. Art. XIII, § 2 ............................................................................................. 18

Ohio Const. Art. XVIII, § 3 ............................................................................... 16, 17, 18

U.S. Const. Amend. I..................................................................................................... 10

U.S. Const. Amend. XIV ............................................................................................... 12

**Local Charter Amendment**

Lake Erie Bill of Rights ......................................................................................... passim

**Federal Code**

28 U.S.C. § 2201............................................................................................................ 20

42 U.S.C. § 1983............................................................................................................ 20

## STATEMENT OF THE ISSUES TO BE DECIDED

Should the Lake Erie Bill of Rights (LEBOR) be invalidated in its entirety because it is unconstitutional and it violates and is preempted by federal and state law?

## SUMMARY OF THE ARGUMENT

Unlawfulness pervades every provision of the Lake Erie Bill of Rights (LEBOR). It is a criminal law that deputizes every citizen of the City of Toledo with prosecutorial power to threaten businesses with potentially-crippling financial penalties, yet it is so vague that nobody who reads it would come away with any sense whatsoever of the types of activities it prohibits. It expressly purports to nullify the United States Constitution, including the First Amendment.  It irrationally discriminates against business entities, in direct contravention of Supreme Court precedent.  It violates fundamental principles of due process by depriving businesses of their property rights for arbitrary reasons.  And it violates basic principles of Ohio law.

The effect of these unlawful provisions cannot be overstated: LEBOR has not only put Plaintiff Drewes Farms' fifth-generation family farm at risk, but also it has endangered farms and businesses throughout Ohio, Michigan, Indiana, Pennsylvania, New York, and Canada.  This Court should therefore enter a judgment on the pleadings invalidating LEBOR in its entirety.

## LAW AND ARGUMENT

### I.     FACTUAL BACKGROUND

Drewes Farms is a partnership formed under the laws of the State of Ohio and is family owned and operated by husband and wife, Mark and Melody Drewes, and their son, Tyler Drewes.  Compl., at ¶¶ 10, 17.  The Drewes family has farmed in Ohio for five generations.  *Id.* at ¶ 17.

Drewes Farms grows crops on land in four different counties within the Lake Erie watershed, but not within Toledo or Lucas County.  *Id.* at ¶ 18. On the land it farms in the watershed, it plants corn, soybeans, wheat, and alfalfa, which it harvests and markets for sale. *Id.* at ¶ 21.

Proper fertilization is an essential part of Drewes Farms' operations.  *Id.* at ¶ 23.  Both manure and commercial fertilizer are applied to the farm property as needed.  *Id.* at ¶ 24.  The fertilizer is applied pursuant to state legal requirements, industry best practices, and scientific recommendations, with the goal of minimizing both the amount of fertilizer applied and the amount of fertilizer-related runoff.  *Id.* at ¶ 25.  Drewes Farms is a leader in conservation efforts and has personally invested hundreds of thousands of dollars in developing techniques to minimize runoff.  *Id.* at ¶¶ 25–36.  Despite all of these efforts, some de minimis amount of runoff is unavoidable—runoff that has been identified by some as negatively affecting the Lake Erie watershed.  *Id.* at ¶¶ 24, 51.

On February 26, 2019, Toledo enacted LEBOR as an amendment to its charter.  *Id.* at ¶ 45 (a copy of the language submitted to the voters by City Council is attached hereto as Exh. A).[1]

As the City indicated in its Answer, LEBOR "speaks for itself."  *See generally* ECF No. 12.  Section 1 of LEBOR purportedly creates a series of rights heretofore unrecognized by any jurisdiction, including the right of Lake Erie and the Lake Erie watershed to "exist, flourish, and

---

[1] The website for the City of Toledo contains a link for the Municipal Code which directs to the City Charter as published on the internet by the American Legal Publishing Corporation.  (*See* City of Toledo Website, https://toledo.oh.gov/government/ (follow "Government" hyperlink, then follow "Toledo Municipal Code" hyperlink)).  Both the State of Ohio and Drewes Farms cite to the sections of LEBOR in the version submitted to the voters, but this Court may take judicial notice of the official version.  *See Wylie & Sons Landscaping LLC v. FedEx Ground Package Sys.*, No. 3:15 CV 706, 2016 U.S. Dist. LEXIS 112326, at *2 (N.D. Ohio Aug. 23, 2016) (Zouhary, J.) ("[T]his Court may take judicial notice of public and government documents because their sources "cannot reasonably be questioned." (quoting Fed. R. Evid. 201(b)).

2

naturally evolve." Exh. A at §1(a). It does not further define these rights, but it does establish a putative protected entity, the "Lake Erie Ecosystem," which includes "all natural water features, communities of organisms, soil as well as terrestrial and aquatic sub ecosystems that are part of Lake Erie and its watershed." *Id.* It creates other putative rights, as well: it vests the people of the City of Toledo with a "right to a clean and healthy environment" and with a "collective and individual right to self-government in their local community . . . ." *Id.* at §1(b)-(c).

Section 2 of LEBOR makes it unlawful for any business or government entity to violate those rights. *Id.* at § 2(a). Section 3 then vests every resident of the City of Toledo with the power to prosecute any business entity or government that such resident deems to have violated "any provision" of LEBOR. *Id.* at §3(a)-(b). No defense as to intent is permitted, as LEBOR imposes strict liability for any violation of any of its provisions. *Id.* at §3(c). Nor may any business entity or government challenge LEBOR's validity. *Id.* at §4(a). The potential liability appears extreme: not only is the sentence for every purported violation the "maximum fine allowable under State law for that violation," but also it counts as separate violations each section violated on each day or portion thereof, and imposes a penalty of witness and attorney fees. *Id.* at §3(a)-(b). It does not define "maximum fine" nor does it identify a source to define the term. *Id.*

LEBOR thus puts Drewes Farms—and all other business entities in the Lake Erie watershed—in an impossible position: immediately cease all farming or other business operations that could potentially be construed as impacting the myriad "rights" of the Lake Erie watershed, or expose themselves to potentially massive civil and criminal penalties.

3

II.     **ARGUMENT OF LAW**

A.     **APPLICABLE STANDARD**

The standard for adjudicating a motion for judgment on the pleadings under Rule 12(c) is identical to that for a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *Marsilio v. Vigluicci*, 924 F. Supp. 2d 837, 846 (N.D. Ohio 2013) (citing *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001)).  Thus, a motion for judgment on the pleadings will be granted where all well-pleaded material allegations of the opposing party are taken as true and the movant is "nevertheless clearly entitled to judgment."  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

B.     **LEBOR IS UNCONSTITUTIONALLY VAGUE ON ITS FACE AND, THUS, VIOLATES DREWES FARMS' DUE PROCESS RIGHTS.**

"Vagueness may take two forms, both of which result in a denial of due process.  A vague ordinance denies fair notice of the standard of conduct to which a citizen is held accountable. At the same time an ordinance is void for vagueness if it is an unrestricted delegation of power, which in practice leaves the definition of its terms to law enforcement officers, and thereby invites arbitrary, discriminatory and overzealous enforcement."  *Leonardson v. E. Lansing*, 896 F.2d 190, 196 (6th Cir. 1990) (quoting *Wash. Mobilization Cmte. v. Cullinane*, 566 F.2d 107, 117 (D.C. Cir. 1977)).

LEBOR constitutes the most pernicious type of criminal law because it fails on both counts: it is harsh in its response, yet it gives the ordinary citizen no notice whatsoever of the conduct it prohibits, and it leaves in practice the definition of its terms not just to law enforcement officers, but to *any and all residents of the City of Toledo as special prosecutors* of LEBOR "to enforce all of the provisions" of the charter amendment.  Exh. A, § 1(d).  And because it is a criminal law that imposes strict liability, this Court must review it under the

4

strictest test for vagueness.  *See Peoples Rights Org. v. City of Columbus*, 152 F.3d 522, 534 (6th Cir. 1998) (noting that "in the absence of a scienter requirement . . . [a] statute is little more than a trap for those who act in good faith" (quoting *Colautti v. Franklin*, 439 U.S. 379, 395 (1979)).

> **1.     LEBOR is a criminal law that does not provide fair notice of the conduct it prohibits.**

Under the void-for-vagueness doctrine, a criminal statute must "clearly define the conduct it proscribes."  *Kolender v. Lawson*, 461 U.S. 352, 353 (1983).  "The requirement that government articulate its aims with a reasonable degree of clarity ensures that state power will be exercised only on behalf of policies reflecting an authoritative choice among competing social values, reduces the danger of caprice and discrimination in the administration of the laws, enables individuals to conform their conduct to the requirements of law, and permits meaningful judicial review."  *Roberts v. United States Jaycees*, 468 U.S. 609, 629 (1984).  This requirement is even more crucial in the criminal context: the "vice" of vague criminal laws "is the treachery they conceal either in determining what persons are included or what acts are prohibited. Words which are vague and fluid . . . may be as much of a trap for the innocent as the ancient laws of Caligula."  *United States v. Cardiff*, 344 U.S. 174, 176 (1952).

Such a trap has been set.  The moment LEBOR was passed, a pall of potential criminal liability was cast over farmers in the watershed.  And LEBOR's vagueness is so extreme that no farming entity could possibly answer questions as to the extent of its potential liability in a meaningful way.  What does it mean to interfere with the right to "exist, flourish, and naturally evolve" when it comes to "soil," for example?  Does that mean a farmer cannot plant any crops because the acts of tilling and seeding constitute manipulation of the soil?  What does interference with the right to "exist, flourish, and naturally evolve" mean when it comes to "communities of organisms?"  Does that mean that, if there were an outbreak of West Nile virus

in the watershed, a business entity or government could not take steps to control the mosquito population?  Does fertilizing wheat crops interfere with the right of the ecosystem to "naturally evolve" when a farmer, farming in "any business entity," admits she cannot completely and unequivocally prevent all fertilizer runoff?  And may a resident of Toledo exercise her newfound prosecutorial discretion to bring a criminal case against a single farmer who produces a de minimis amount of runoff while operating as a business entity 100 miles away from Toledo?  May a business entity mow grass?  May it erect a grain bin knowing that to do so may impact worms and other organisms that live in the soil, possibly denying their rights to "flourish" or "naturally evolve"?  LEBOR gives no guidance as to these and many, many other scenarios.

Courts "insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."  *Peoples Rights Org.*, 152 F.3d at 533.  Here, even a person of extraordinary intelligence would not be able to ascertain what LEBOR permits and what it prohibits.  Moreover, LEBOR provides that "[f]urther implementing legislation shall not be required . . . to enforce all of the provisions of this law."  Exh. A.  Thus, each Toledo resident gets to decide what actions violate LEBOR and prosecute such violations for a strict liability crime—and the defendant cannot even challenge the validity of LEBOR.

The other newly-created putative rights are just as vague.  Under what circumstances will a business entity become criminally liable for violating a "collective and individual right to self-government"?  And what does it mean to possess "the right to a clean and healthy Lake Erie and Lake Erie ecosystem?"  LEBOR offers neither clarity as to what those rights mean in practice nor standards to determine when those rights are violated.  Potential defendants are left only to guess.

6

Further, LEBOR deprives ordinary people of fair notice of the targeted conduct because it: (1) directs criminal sanction not only at business entities that violate LEBOR, but also at those that "seek to violate" the law; and (2) does not articulate the quantum of criminal sanction violators may face.  Does simply establishing a business entity for the purpose of farming in the Lake Erie watershed constitute "seek[ing] to violate" LEBOR, which can expose the business entity to unknown criminal sanctions?

### 2.    LEBOR's vagueness chills speech protected by the First Amendment.

The Constitution takes a particularly dim view of vague laws like LEBOR that interfere with the freedom of speech.  *See, e.g.*, *Baggett v. Bullitt*, 377 U.S. 360, 372-73 (1964). This is so because, "where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (first quoting *Cramp v. Bd. of Pub. Instruction*, 368 U.S. 279, 287 (1961), then quoting *Baggett*, 377 U.S. at 372)).

As discussed in greater detail below, LEBOR explicitly seeks to nullify the First Amendment by eliminating the rights of business entities to make arguments in court related to state or federal preemption of LEBOR or to the City's authority to pass LEBOR.  Exh. A at §4(a).  But even beyond those explicit provisions, its other restrictions on speech are so vague that they would chill protected speech, thereby offending the due process clause.  *See Baggett*, 377 U.S. at 372.  LEBOR punishes business entities that violate or "seek to violate" any of the rights or prohibitions enumerated therein.  Exh A. at §4(a).  Those sanctions include deeming them not "to be 'persons'"—thereby stripping them of rights associated with legal personhood— and taking away other "legal rights, powers, privileges, immunities, or duties" in conflict with

7

LEBOR's provisions.  *Id.*  Thus, business entities may only retain their protections under the law as long as they do not violate or seek to violate the series of nebulous new rights LEBOR purports to create.  This arrangement inexorably chills speech protected by the First Amendment. For example, the category of activities that could be described as "seek[ing] to violate" the "collective and individual right [of Toledo residents] to self-government in their local community" could be quite broad.  Exh. A. at §§ 1(c), 4(a).  It may include First Amendment protected activities, such as lobbying against laws passed by popular ordinance.  *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 350 (2010).  Indeed, it may include the filing of this suit. Again, LEBOR offers no guidance.

Vagueness thus infects every operative provision of LEBOR; it is impermissibly vague in all of its applications. Such a provision cannot withstand constitutional scrutiny on its face: "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939).

### 3.      LEBOR constitutes an unrestricted delegation of power to each "resident" of the City of Toledo.

Not only must a criminal statute give the ordinary citizen fair notice of the conduct it targets—including the quantum of punishment attached to conviction for the conduct—but also it must provide law enforcement sufficiently clear standards as to avoid arbitrary and discriminatory enforcement.  *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015).  Here, the risk of arbitrary and discriminatory enforcement directed at "particular groups deemed to merit . . . displeasure" is compounded because LEBOR vests enforcement discretion in every resident of the City.  *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170 (1972) (quoting *Thornhill v. Alabama*, 310 U.S. 88, 97-98 (1940)).

In *Papachristou*, for example, the Supreme Court invalidated a criminal law prohibiting vagrancy because it was so vague that it result[ed] in a regime in which the poor and the unpopular are permitted to 'stand on a public sidewalk . . . only at the whim of any police officer.'" *Papachristou*, 405 U.S. at 170 (quoting *Shuttlesworth v. Birmingham*, 382 U.S. 87, 90 (1965)). And in *Goguen*, the Court invalidated a statute that subjected to criminal penalty anyone who "treats contemptuously the flag of the United States. . . ." because it "had no core," based on the "absence of any ascertainable standard for inclusion and exclusion," and "the unfettered latitude thereby accorded law enforcement officials and triers of fact." *Smith v. Goguen*, 415 U.S. 566, 568-69, 578 (1974).

LEBOR similarly has no ascertainable standards: it creates a regime where business entities are permitted to operate only at the whim of any individual citizen of the City of Toledo. It does not take much imagination to envision the parade of horribles that would result from a scenario where individual Toledoans are permitted unfettered latitude to inflict strict criminal liability on any business in the Lake Erie watershed, particularly when defendants are stripped of defenses related to intent or to the validity of LEBOR. The Constitution does not allow such unconstrained latitude. *See Kolender v. Lawson*, 461 U.S. 352, 358 (1983) ("Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" (quoting *Goguen*, 415 U.S. at 574)).

## C.     ON ITS FACE, LEBOR VIOLATES DREWES FARMS' FIRST AMENDMENT RIGHTS.

The City of Toledo cannot nullify the Constitution. *Haywood v. Drown*, 556 U.S. 729, 729 (2009). Yet LEBOR attempts to do so in several ways. First, it proscribes the ability to make specific, otherwise-valid claims in court, which is an absolute and unjustified prohibition

9

on speech.  Exh A. at §4(a) (eliminating the "power to assert state or federal laws in an attempt to overturn this law, or the power that the people of the City of Toledo lack the authority to adopt this law").  The Supreme Court regularly rejects such blanket restrictions of the First Amendment.  *See, e.g., Bd. of Airport Comm'rs v. Jews for Jesus*, 482 U.S. 569 (1987).

Second, LEBOR is a viewpoint restriction: it prohibits opposition to the ordinance by criminalizing the assertion that the law is preempted by federal or state law or goes beyond the authority of the City.  Exh. A at §4(a).  The Supreme Court has described such discrimination as a "blatant" violation of the First Amendment and an "egregious form of content discrimination" that is presumptively unconstitutional: "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."  *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995) (invalidating university policy against funding student newspapers with religious content) (citing *Perry Ed. Assn.* v. *Perry Local Educators' Ass'n.,* 460 U.S. 37, 46 (1983)).

Third, it violates the First Amendment's prohibition on laws that abridge the right to "petition the Government for a redress of grievances."  U.S. Const. Amend. I; *see also Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896-897 (1984) ("[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.").  Here, the right to challenge LEBOR is not merely abridged—it is abrogated wholesale.

This analysis does not change just because the law is directed at business entities.  The Supreme Court has been clear: "The identity of the speaker is not decisive in determining whether speech is protected. Corporations and other associations, like individuals, contribute to the 'discussion, debate, and the dissemination of information and ideas' that the First

Amendment seeks to foster." *Pac. Gas & Elec. Co. v. Pub. Utils. Com.*, 475 U.S. 1, 8 (1986) (citing *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978)).

The United States District Court for the District of New Mexico considered a nearly-identical provision in *Swepi*, and held that it was "substantially overly broad" and that no "'conceivable governmental interest would justify such an absolute prohibition of' First Amendment Rights." *Swepi, Ltd. P'ship v. Mora Cty.*, 81 F. Supp. 3d 1075, 1188 (D.N.M. 2015). The *Swepi* court continued: "SWEPI, LP is currently exercising its First Amendment rights by filing suit to overturn the Ordinance—i.e. seeking to violate the Ordinance. According to Section 5.5, because of SWEPI, LP's exercise of its First Amendment rights, it no longer has First Amendment rights. Such a law is illogical and cannot stand. Section 5.5 is overly broad in its restriction of First Amendment rights, and, as such, must be invalidated." *Id.* In Washington, a court affirmed a decision keeping a similar initiative off of the ballot because "municipalities cannot strip constitutional rights from entities and cannot undo decisions of the United States Supreme Court." *Spokane Entrep. Ctr. v. Spokane Moves to Amend the Const.,* 369 P.3d 140, 146 (Wash. 2016). And in Pennsylvania, a court described an argument that business entities lacked the right to complain about an ordinance as "contrary to over one hundred years of Supreme Court precedent." *Pa. Gen. Energy Co., LLC v. Grant Twp.*, 139 F. Supp. 3d 706, 714 (W.D. Pa. 2015).

There are no legitimate applications of a law that eliminates the right to assert legitimate legal defenses to criminal prosecution; the law is therefore invalid on its face. *See, e.g.*, *City of Chi. v. Morales*, 527 U.S. 41, 52 (1999) (noting that "the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible

11

applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep'" (quoting *Broadrick v. Okla.*, 413 U.S. 601, 612-15 (1973)).

### D. ON ITS FACE, LEBOR VIOLATES THE EQUAL PROTECTION CLAUSE.

The Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Any distinction a law draws between groups—such as between individuals and business entities—"must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis." *Frost v. Corp. Com. of Okla.*, 278 U.S. 515, 522–23 (1929) (quoting *Gulf, Colo. & Santa Fe Ry.* v. *Ellis*, 165 U.S. 150, 155 (1897)); *see also Romer v. Evans*, 517 U.S. 620, 633 ("[E]ven in the ordinary equal protection case calling for the most deferential of standards, we insist on knowing the relation between the classification adopted and the object to be attained. The search for the link between classification and objective gives substance to the Equal Protection Clause").

The impingement on fundamental rights involved here requires "strict judicial scrutiny." *San Ant. Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973) (holding that when a state law "impinges upon a fundamental right explicitly or implicitly protected by the Constitution" it will be subject to "strict judicial scrutiny"). LEBOR implicates two fundamental rights: it chills freedom of speech by, for example, penalizing mere objection to the law and it abrogates the right to petition the government for redress of grievances. *See, e.g.*, *Gitlow v. New York*, 268 U.S. 652, 666 (1925) (freedom of speech is a fundamental right); *United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967) (the right to petition the government is "among the most precious of the liberties safeguarded by the Bill of Rights"). Thus, the City must

12

demonstrate that stripping all business entities, but not individuals, of those rights is "precisely tailored to serve a compelling governmental interest." *Plyler v. Doe*, 457 U.S. 202, 217 (1982).

LEBOR cannot survive rational basis review, let alone strict scrutiny. The law's sweeping provisions cover an infinite amount of activities that are conducted by individuals, businesses, and governments alike, but only holds businesses and governments liable for those acts. Although protecting Lake Erie may generally be a legitimate objective, by excluding individuals from its ambit, LEBOR pursues an arbitrary and irrational method of achieving that objective. In *Swepi*, the United States District Court for the District of New Mexico concluded that a similar provision survived rational basis review because defendants "could have concluded that corporations were more likely to drill for oil and gas and to engage in fracking than individuals." *Swepi, Ltd. P'ship v. Mora Cty.*, 81 F. Supp. 3d 1075, 1180 (D.N.M. 2015). But defendants could make no such conclusion here: an individual dumping waste directly into Lake Erie could—indeed, certainly *would*—pose a greater risk to the health of the Lake Erie ecosystem than would, for example, de minimis fertilizer runoff from a farm operated by a partnership 100 miles away from Toledo.

Moreover, LEBOR purports to create rights that are "inherent, fundamental, and unalienable, and shall be self-executing and enforceable against both private and public actors." Exh. A at §1(d). But, in the same breath, it declares that violations of those purportedly fundamental rights are enforceable *only* against business entities and governments, not against individuals. *Id.* at §2(a). In other words, LEBOR arbitrarily assigns who may violate the allegedly "inherent, fundamental, and unalienable" rights of the Lake Erie Ecosystem and the people of the City of Toledo. Imposing this type of liability on businesses and governments, but

not on natural persons or unincorporated associations, bears no rational relationship to any legitimate governmental interest and certainly does not survive strict scrutiny.

### E.    ON ITS FACE, LEBOR VIOLATES THE DUE PROCESS CLAUSE.

The doctrine of substantive due process "serves as a vehicle to limit various aspects of potentially oppressive government action." *Schenker v. Cty. of Tuscarawas*, No. 5:12 CV 1020, 2012 U.S. Dist. LEXIS 131217, at *27 (N.D. Ohio Sep. 14, 2012).  It serves that goal by providing that governmental deprivations of fundamental rights—including life, liberty, and property—"are subject to limitations regardless of the adequacy of the procedures employed." *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007) (quoting *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003)).  Thus, "[g]overnment actions that burden the exercise of those fundamental rights or liberty interests are subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling governmental interest." *Id.*

As discussed in detail above, LEBOR burdens Drewes Farms' fundamental right to freedom of expression.  *Cf. Perry v. McGinnis*, 209 F.3d 597, 609 (6th Cir. 2000) (holding that the right to freedom of expression is fundamental right in the substantive due process analysis). Accordingly, it can only be upheld if it is necessary to achieve a compelling government interest. The extreme measure of stripping business entities of fundamental rights cannot meet this exacting standard.  Moreover, "when constitutional rights are at issue, strict scrutiny requires legislative clarity and evidence demonstrating the ineffectiveness of proposed alternatives." *Johnson v. City of Cincinnati*, 310 F.3d 484, 504 (6th Cir. 2002) (citing *Grutter v. Bollinger*, 288 F.3d 732, 749-51 (6th Cir. 2002)).  No such clarity exists.  And because the City has already indicated that LEBOR "speaks for itself," it cannot claim that any extrinsic evidence would lead to such clarity.  (*See generally* ECF No. 12).  As the Supreme Court has held, once strict scrutiny

14

is applied, it is the "rare case" that survives its scythe.  *Burson v. Freeman*, 504 U.S. 191, 211 (1992).  This is not one of those cases.

### F.  DREWES FARMS IS ENTITLED TO DECLARATORY JUDGMENT THAT LEBOR IS PREEMPTED BY FEDERAL LAW.

The United States Constitution entrusts foreign affairs and international relations "solely to the Federal Government."  *Zschernig v. Miller*, 389 U.S. 429, 436 (1968).  When a local regulation directly impacts and adversely affects foreign affairs, it must give way to the federal policy.  *Id.* at 440-41; *see also Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 45 (1st Cir. 1999) (invalidating a state law which restricted the ability of the state from purchasing goods or services from companies that did business with Burma).  LEBOR purports to regulate all of Lake Erie and its watershed, which includes parts of Canada and the U.S.-Canadian border, *see* Exh. A. at §1(a), and imposes liability on any government or business "in or from any jurisdiction," *id.* at §3(c).  It therefore unavoidably impacts foreign trade and impairs international obligations, such as the Boundary Waters Treaty of 1909, U.S.-Gr. Brit. (for Can.), Jan. 11, 1909, 36 Stat. 2448, and the Great Lakes Water Quality Agreement, U.S.-Can., Apr. 15, 1972, 23 U.S.T. 301, *codified at* 33 U.S.C.S. § 1268.  "There is a threshold level of involvement in and impact on foreign affairs which the states may not exceed," *Natsios*,  181 F.3d at 52, and this municipal law crosses it.  Drewes Farm, which plants and harvests various crops for sale within the Lake Erie watershed, is therefore entitled to a declaratory judgment that LEBOR is preempted by federal law.

### G.  DREWES FARMS IS ENTITLED TO DECLARATORY JUDGMENT THAT LEBOR IS PREEMPTED BY STATE LAW.

In addition to violating the United States Constitution and federal law, LEBOR conflicts with and is preempted by the laws of the State of Ohio.  (Mindful of this Court's instruction not to duplicate arguments unnecessarily, Drewes Farms also adopts the preemption arguments

raised by the State of Ohio.)  Specifically, Article XVIII, § 3 of the Ohio Constitution provides that a municipality may exercise local self-government provided its regulations are "not in conflict with general laws."  As a result, "a municipal ordinance must yield to a state statute if '(1) the ordinance is an exercise of the police power, rather than of local self-government, (2) the statute is a general law, and (3) the ordinance is in conflict with the statute.'"  *Dayton v. State*, 2017-Ohio-6909, ¶ 13, 151 Ohio St. 3d 168, 171, 87 N.E.3d 176, 182 (quoting *Mendenhall v. Akron*, 117 Ohio St. 3d 33, 2008-Ohio-270, ¶ 17, 881 N.E.2d 24).  LEBOR expressly purports to nullify *any* State of Ohio laws and regulations in conflict with its provisions.  Exh. A. at §4(b) ("All laws adopted by the legislature of the State of Ohio, and rules adopted by any State agency, shall be the law of the City of Toledo only to the extent that they do not violate the rights or prohibitions of this law.").  It does not except general laws from this provision.  Drewes Farms is entitled to a declaratory judgment on this basis, and also because it conflicts with the following general laws:

### 1. Toledo violates Ohio law by trying to create new causes of action.

LEBOR creates new causes of action and endows "any resident of the City [of Toledo]" the power to "enforce the rights and prohibitions of this law through an action brought in the Lucas County Court of Common Pleas, General Division."  Exh. A. at §§ 2(b), 3(a)-(d), 4(a).  Under Ohio law, municipalities are not authorized to create new causes of action.  *State ex rel. Bolzenius v. Preisse*, 2018-Ohio-3078, ¶ 12-13.  The Supreme Court of Ohio has previously rejected attempts by municipalities to endow private citizens with similar private-attorney-general-type authority on this very basis.  *Preisse*, at 13 (finding City of Columbus "clearly lacks the power to enact" an ordinance that authorized "any resident" to enforce a community bill of rights); *State ex rel. Flak v. Betras*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, ¶ 15

("Just as a municipality may not create a felony, a municipality is not authorized to create new causes of action.") (distinguished on other grounds in *State ex rel. Maxcy v. Saferin*, 2018-Ohio-4035, ¶ 13).  LEBOR is therefore beyond the scope of municipal power and, thus, invalid and unenforceable under the Ohio Constitution.  Ohio Const., Art. XVIII, § 3.

### 2. Toledo violates Ohio law by trying to create statutory standing.

Under the Ohio Constitution, individuals or entities seeking redress in the common pleas courts must have standing to sue.  Ohio Const. Art. IV, §4(B); *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 41.  By purporting to endow the "Lake Erie Ecosystem" with the power to sue in the Lucas County Court of Common Pleas in Section 3(d), LEBOR attempts to grant the Lake Erie Ecosystem certain statutory standing.  *Wooster v. Enviro-Tank Clean, Inc.*, 9th Dist. No. 13CA0012, 2015-Ohio-1876, ¶ 12. But the Courts of Common Pleas in the State of Ohio are creatures of state law, and the power to confer statutory standing to parties in Ohio state courts is reserved to the Ohio Legislature.  Ohio Const. Art. IV, §§1, 18. The conferral of statutory standing on the Lake Erie Ecosystem is therefore invalid under the Ohio Constitution.  Ohio Const., Art. XVIII, §3.

### 3. Toledo violates Ohio law by trying to alter laws governing business entities.

LEBOR purports to strip away the "rights, powers, privileges, immunities, [and] duties" of business entities that "violate . . . or that seek to violate" the law.  Exh. A at §4(a).  The Ohio Constitution reserves power exclusively to the General Assembly to promulgate legislation governing the formation, structure, and organization of corporations.  Ohio Const. Art. XIII, § 2; *Wheatley v. A.I. Root Co.*, 147 Ohio St. 127, 140, 69 N.E.2d 187, 194 (1946) (noting that the provision articulates a "specific grant of authority to alter or repeal corporation laws").  Moreover, the General Assembly has, in fact, promulgated such legislation.  *See, e.g.*, R.C.

17

Chapter 1701 (General Corporation Law) and R.C. Chapter 1776 (Ohio Uniform Partnership Act).

Additionally, the Ohio Uniform Partnership Act constitutes a general law that, among other things, endows partnerships with the right to sue and be sued. R.C. 1776.37(A). It therefore directly preempts both LEBOR's prohibition against asserting "state or federal preemptive laws in an attempt to overturn" LEBOR and LEBOR's mandate that business entities that run afoul of LEBOR may be stripped of their "legal rights, powers, privileges, immunities or duties." Exh. A at §4(a). Accordingly, under Article XVIII, § 3 of the Ohio Constitution, Section 4(a) of LEBOR is preempted and therefore invalid.

### 4. Toledo violates Ohio law by purporting to exert authority over land held in the public trust.

R.C. 1506.10 provides that "the waters of Lake Erie consisting of the territory within the boundaries of the state . . . together with the soil beneath their contents . . . do now belong and have always, since the organization of the state of Ohio, belonged to the state as proprietor in trust for the people of the state . . . " and vests the Ohio Department of Natural Resources with authority over "all matters pertaining to the care, protection, and enforcement" of Ohio's interests in Lake Erie. LEBOR conflicts with this statewide statutory scheme because it unlawfully declares that it preempts the state's power over the public trust. *Cf. Clermont Envtl. Reclamation Co. v. Wiederhold*, 2 Ohio St. 3d 44, 50, 442 N.E.2d 1278, 1283 (1982) (holding that an Ohio law governing hazardous waste disposal was a general law that took precedence over municipal laws).

### H. LEBOR MUST BE INVALIDATED IN ITS ENTIRETY.

This Court must invalidate LEBOR in its entirety. The presence of a severability clause in LEBOR does not change this conclusion. Ohio law will govern the question of severability.

*City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988).  Under Ohio law, before severing a portion of a law, a court "must first find that such a severance will not fundamentally disrupt the statutory scheme of which the unconstitutional provision is a part." *State ex rel. Maurer v. Sheward*, 1994-Ohio-496, 71 Ohio St. 3d 513, 523, 644 N.E.2d 369, 377 (Ohio 1994). Three questions guide courts in ascertaining whether such a disruption has occurred:

> (1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?

*State v. Hochhausler*, 76 Ohio St. 3d 455, 1996 Ohio 374, 668 N.E.2d 457, 466-67 (Ohio 1996).

Legal and constitutional infirmities permeate Sections 1 through 5—every operative section—of LEBOR.  It must therefore be invalidated *in toto*.  When faced with a similar ordinance, the United States District Court for the District of New Mexico made the same conclusion:  the purpose of the law could not be accomplished without the invalid portions, so the entire ordinance must be invalidated.  *Swepi, Ltd. P'ship v. Mora Cty.*, 81 F. Supp. 3d 1075, 1203 (D.N.M. 2015).

Indeed, to strike *any one of these sections* would gut LEBOR's enforcement mechanism and purpose, thereby fundamentally disrupting the statutory scheme.  *See 10280 Northfield Rd., LLC v. Vill. of Northfield*, No. 97-4207, 1999 U.S. App. LEXIS 3662, at *17 (6th Cir. Mar. 4, 1999).  And when these legal infirmities are considered in conjunction, nothing operative remains.

III.    **CONCLUSION**

Consistent with 42 U.S.C. § 1983 and 28 U.S.C. § 2201, Drewes Farms respectfully requests an entry of judgment declaring that LEBOR is void and unenforceable in its entirety, and specific declarations that (i) LEBOR is an unconstitutionally vague criminal law in violation of the Fifth and Fourteenth Amendments; (ii) LEBOR is void because it violates the First Amendment; (iii) LEBOR is void because it violates the Equal Protection Clause of the Fourteenth Amendment; (iv) LEBOR is void because it violates substantive due process under the Fifth and Fourteenth Amendments, (v) LEBOR is void because it is preempted by the Constitution's entrustment of the power to regulate foreign affairs and international relations solely to the federal government; and (vi) LEBOR is void because it is violates the Ohio Constitution and is otherwise preempted by Ohio law.

VORYS, SATER, SEYMOUR AND PEASE LLP

s/ *Thomas H. Fusonie*
Thomas H. Fusonie (0074201), *Trial Attorney*
Kimberly Weber Herlihy (0068668)
Daniel E. Shuey (0085398)
Christopher L. Ingram (0086325)
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-8261; Fax: (614) 719-4886
thfusonie@vorys.com
kwherlihy@vorys.com
deshuey@vorys.com
clingram@vorys.com

*Counsel for Plaintiff Drewes Farms Partnership*

20

## <u>CERTIFICATE OF MEMORANDUM LENGTH</u>

Pursuant to Local Rule 7.1(f)'s requirements, this memorandum does not exceed 20 pages.


s/*Thomas H. Fusonie* _____
Thomas H. Fusonie (0074201)
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-8261
Fax: (614) 719-4886
thfusonie@vorys.com

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was served electronically through this Court's electronic service system upon all parties and/or counsel of record on this 7th day of June, 2019.  Notice of this filing is sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

s/ *Thomas H. Fusonie*
Thomas H. Fusonie (0074201)
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-8261
Fax: (614) 719-4886
thfusonie@vorys.com
