**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| DREWES FARMS PARTNERSHIP, | ) | Case No. 3:19-cv-00434-JZ |
| | ) | |
| Plaintiff, | ) | Hon. Jack Zouhary |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF TOLEDO, OHIO, | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT CITY OF TOLEDO'S COMBINED OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS, AND CROSS-MOTION UNDER
FED.CIV.R. 12(c) FOR JUDGMENT ON THE PLEADINGS**

---

Gerald R. Kowalski (0022323)
Sarah K. Skow (0081468)
Jennifer A. McHugh (0084842)
SPENGLER NATHANSON P.L.L.
900 Adams Street
Toledo, Ohio  43604-5505
Telephone:  (419) 241-2201
Facsimile:  (419) 241-8599
gkowalski@snlaw.com
sskow@snlaw.com
jmchugh@snlaw.com

*Counsel for Defendant, City of Toledo, Ohio*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ ii

LOCAL RULE 7.1 CERTIFICATION.......................................................................... iii

THE CITY'S COMBINED OPPOSITION TO PLAINTIFF'S RULE 12(c)
MOTION, AND CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS........................1

MEMORANDUM IN SUPPORT....................................................................................1

I.      Relevant Factual Background .........................................................................3

II.     Relevant Procedural History ..........................................................................4

III.    Legal Standards Governing This Opposition and Cross-Motion.......................5

IV.    Law and Argument ........................................................................................6

        A.     DFP's Complaint Should Be Dismissed Because DFP Lacks
              Standing. ............................................................................................6

              1.     DFP Has No Injury in Fact. ......................................................7

              2.     Any Alleged Injury to DFP is Not Fairly Traceable to the
                     Challenged Conduct of the City...............................................10

              3.     Any Alleged Injury to DFP is Not Likely to Be Redressed
                     by a Favorable Judicial Decision. .............................................10

              4.     DFP Lacks Standing to Allege Foreign Affairs or
                     International Relations Claims on Behalf of Others. .................11

        B.     DFP's  Complaint is Premature and Not Ripe. ......................................11

        C.     DFP's  Complaint Fails to Plead Viable §1983 Claims..........................12

              1.     DFP's Complaint Fails to Establish a *Prima Facie* §1983
                     Claim.......................................................................................12

               2.     DFP's Complaint Fails to Plead a *Monell* Claim......................12

               3.     DFP Fails to Plead a First Amendment Claim...........................13

               4.     DFP Fails to Plead an Equal Protection Claim. .........................13

               5.     DFP Fails to Plead a Fifth or Fourteenth Amendment Claim....14

D.     DFP Improperly Asks the Court to Nullify the Citizens' Initiative Petition, and to Undermine the Right to Self-Government...................................17

E.     DFP's Complaint Fails to State a Claim for Injunctive Relief. ...........................17

F.     DFP Fails to State a Viable Claim for Declaratory Relief...................................18

G.     DFP's Complaint Fails to State a Viable Claim for Preemption of Federal or State Law. ........................................................................................19

H.     DFP's State Law Claim Should be Dismissed.....................................................20

V.     Conclusion ........................................................................................................................20

CERTIFICATE OF SERVICE ........................................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................5

*Borman's, Inc. v. Michigan Prop. & Cas. Guar. Ass'n.*,
    925 F.2d 160 (6th Cir. 1991) ...............................................................14

*City of Canton v. Harris*,
    489 U.S. 378, (1989)............................................................................12

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013).........................1, 8, 10

*Commonwealth of Massachusetts v. Mellon*,
    262 U.S. 447, 487 (1923)........................................................................8

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*,
    466 F.3d 391 (6th Cir. 2006) ...............................................................17

*Ferner, et al. v. State of Ohio*,
    Lucas County Court of Common Pleas Case No. CI 201902904....................16

*Fowler v. Benson*,
    924 F.3d 247 (6th Cir. 2019) ...............................................................17

*Graham v. Fearon*,
    N.D. Ohio No. 1:16 CV 2366, 2017 WL 1113358 (March 24, 2017)..............10

*Grand Trunk Western R. Co. v. Consol. Rail Corp.*,
    746 F.2d 323 (6th Cir. 1984) ...............................................................18

*Huff v. TeleCheck Services, Inc.*,
    923 F.3d 458 (6th Cir. 2019) .................................................................6

*Juliana v. United States*,
    217 F.Supp.3d 1224 (D. Oregon 2016)....................................................17

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)..........................6, 7, 10

*Marsilio v. Vigluicci*,
    924 F.Supp.2d 837 (N.D.Ohio 2013).......................................................5

iii

*Monell v. Dept. of Social Services*,
    436 U.S. 658 (1978)..................................................................................4, 12

*Musson v. Theatrical, Inc. v. Federal Exp. Corp.*,
    89 F.3d 1244 (6th Cir. 1998) ...............................................................20

*Pennell v. City of San Jose*,
    485 U.S. 1, 108 S.Ct. 849 (1988)..........................................................14

*Rondigo, L.L.C. v. Twp. of Richmond*,
    641 F.3d 673 (6th Cir. 2011) ................................................................14

*Sampson v. Murray*,
    415 U.S. 61, 94 S.Ct.937 (1974)...........................................................18

*Spokeo, Inc. v. Robins*,
    136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), <u>as revised</u> (May 24, 2016) ......................6, 7, 10

*State ex rel. Abernathy v. Lucas Cty. Bd. of Elections*,
    156 Ohio St.3d 238, 2019-Ohio-201, 125 N.E.3d 832 .........................3

*State ex rel. Maxcy v. Saferin*,
    155 Ohio St.3d 496, 122 N.E.3d 1165, 2018-Ohio-4035 ....................3

*Tackett v. M & G Polymers, USA, LLC*,
    561 F.3d 478 (6th Cir. 2009) ..................................................................5

*Thomas v. City of Chattanooga*,
    398 F.3d 426 (6th Cir. 2005) ................................................................12

*Toledo v. Kilburn*,
    71 Ohio Misc. 2d 40, 654 N.E.2d 202 (Mun. 1995).............................19

*Warth v. Seldin*,
    422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)......................6, 11

*Weiner v. Klais & Co.*,
    108 F.3d 86 (6th Cir. 1997) ....................................................................5

*West v. Atkins*,
    487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)..........................12

*Williamson v. Lee Optical*,
    348 U.S. 483 (1955)..........................................................................14, 16

iv

## UNITED STATES CONSTITUTION

U.S. Constitution, Article III, Section 2 ................................................................................6

U.S. Constitution, First Amendment ...............................................................................5, 13

U.S. Constitution, Fifth Amendment ...........................................................................4, 5, 15

U.S. Constitution, Fourteenth Amendment ...........................................................4, 13, 15, 16

## FEDERAL STATUTES

28 U.S.C. §1367(c)(3) .....................................................................................................20

28 U.S.C. §2201 .......................................................................................................18, 20

28 U.S.C. §2202 ............................................................................................................18

42 U.S.C. §1983 ..................................................................................................2, 12, 18

42 U.S.C. §1988 ..............................................................................................................4

## FEDERAL RULES

Fed.Civ.R. 12(c) .......................................................................................................7, 20

Fed.Evid.R. 201 ............................................................................................................10

## LOCAL RULES

Local Rule 7.1 ............................................................................................................. iv

## STATE OF OHIO CONSTITUTION

Ohio Constitution, Article XVIII, Section 7 .........................................................................2

Ohio Constitution, Article XVIII, Section 8 ......................................................................2, 4

Ohio Constitution, Article XVIII, Section 9 ...................................................................2, 3, 4

## OHIO STATUTES

O.R.C. §715.67 .............................................................................................................15

O.R.C. §721.04 .............................................................................................................19

O.R.C. §2305.011 ..........................................................................................................11

**OHIO LEGISLATION**

2019 Ohio H.B. No. 166, Section 101.01, 133rd Gen.A. ............................................................11

**CITY OF TOLEDO CHARTER**

Charter of the City of Toledo, Ohio ........................................................................ passim

Charter of the City of Toledo, Ohio, Chapter VI, Section 84 .......................................................4

Charter of the City of Toledo, Ohio, Chapter VI, Section 86 .......................................................4

Charter of the City of Toledo, Ohio, Chapter XVII, Lake Erie Bill of Rights ..................... passim

## **LOCAL RULE 7.1 CERTIFICATION**

In accordance with the requirements of Local Rule 7.1, counsel for Defendant, City of Toledo, Ohio, certifies that this case has not yet been assigned to a track, and that the City's attached combined Opposition to Plaintiff Drewes Farms Partnership's Motion for Judgment on Pleadings and Cross-Motion under Fed.Civ.R. 12(c) for Judgment on the Pleadings complies with the 20-page limitation for unassigned cases provided in Local Rule 7.1.

**THE CITY'S COMBINED OPPOSITION TO PLAINTIFF'S RULE 12(c)
MOTION, AND CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant, City of Toledo ("City"), respectfully requests that the Court enter an Order denying Plaintiff Drewes Farms Partnership's ("DFP") Rule 12(c) Motion in its entirety. Due to DFP's lack of standing, the lack of ripeness of this lawsuit, and DFP's lack of a viable claim, the City further requests that the Court enter an Order under Rule 12(c) granting the City judgment on the pleadings and dismissing DFP's Complaint.

**MEMORANDUM IN SUPPORT**

DFP's Complaint asserts the citizens' initiative Charter amendment, Lake Erie Bill of Rights ("LEBOR"), Toledo City Ordinance, 497-18,[1] is unconstitutional and violates and is preempted by various federal and state laws. This lawsuit was filed within hours of Toledoans' vote passing LEBOR. DFP's Complaint and Rule 12(c) Motion are based upon DFP's opposition to the contents of LEBOR. But, the Court need not even reach a substantive analysis because DFP's Complaint suffers from procedural defects which require its dismissal. And, even if DFP could somehow overcome its fatal procedural flaws, its claims also fail on their merits.

DFP's Complaint is deficient because DFP lacks necessary standing. DFP is an 8-month old partnership created on January 1, 2019. DFP admits that it does not own property; does not operate in Toledo or Lucas County, Ohio; and has no presence in Toledo or Lucas County. (Doc. #35-1, DFP's Memorandum, PageID #383; Doc. #33, Declaration of Mark Drewes ("Decl."), ¶¶7-8). DFP's Complaint relies, at most, upon its purported fear of future speculative and unknown damage, and not on any concrete, particularized, actual, or imminent injury to it. But such future speculation is not sufficient to establish standing. *Clapper v. Amnesty Int'l USA*,

---

[1] Charter of the City of Toledo, Ohio, Chapter XVII, Lake Erie Bill of Rights. The City agrees that the Court may take judicial notice of the City Charter, available at https://toledo.oh.gov/government.

568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013). Nor does a sufficient causal connection exist between any of the City's actions related to LEBOR, and DFP's fear of potential future injuries.

DFP's Complaint also must be dismissed because it is premature and not ripe. The City has taken no action that has deprived DFP of any right; nor has the City taken any action to enforce LEBOR. Rather, the City has merely allowed the electoral process to play out under the Ohio Constitution, as reflected in the Charter of the City of Toledo, Ohio ("Charter") for citizens' initiative petitions. Charter, Chapter VI, Sections 84 and 86. DFP does not allege the City acted improperly in the electoral process. DFP's speculation about what the City might do if it were to enforce some aspect of LEBOR at some unknown future date does not create a viable claim. The City has taken no legislative action regarding LEBOR since it passed. Moreover, as to its constitutional claims, DFP fails to allege the required elements for a prima facie claim under 42 U.S.C. §1983 ("§1983").

DFP's Complaint also has the effect of asking the Court to nullify multiple provisions of the Charter which DFP does not allege are unconstitutional or unlawful; invalidate the citizens' initiative petition process; violate Toledoans' fundamental right to vote; improperly amend or repeal LEBOR contrary to the required process in the Charter; and undermine the right of local community self-government established by the City's Charter and the Ohio Constitution. *See* Article XVIII, Sections 7-9 of the Ohio Constitution. Finding in DFP's favor would communicate to all Ohio municipalities and voters that lawful citizens' initiative petitions, democratic votes, and city charters have no meaning.

Even if the Court would not dismiss DFP's Complaint on these compelling grounds, DFP's claims also fail on their merits. DFP has alleged no facts establishing any violation of the U.S. Constitution or federal or state law by the City.

2

I.    **Relevant Factual Background**

On August 6, 2018, a citizens group presented an initiative petition to Toledo's City Council proposing LEBOR as a charter amendment. Council did not adopt LEBOR in direct response to the citizens' initiative petition. On December 4, 2018, Council passed Ordinance 497-18, declaring that the Clerk of Council had received sufficient petition signatures to submit LEBOR to the voters and certifying the measure for a vote in the February 26, 2019 special election. (Doc. #1, Complaint, ¶38).

On December 20, 2018, the Lucas County Board of Elections held a hearing to consider a citizen protest to including LEBOR on the ballot. (Doc. #1, Complaint, ¶40). The Lucas County Board of Elections voted to include LEBOR on the ballot, as supported by Ohio election law. (*Id.* at ¶41). *See State ex rel. Maxcy v. Saferin*, 155 Ohio St.3d 496, 122 N.E.3d 1165, 2018-Ohio-4035; *State ex rel. Abernathy v. Lucas Cty. Bd. of Elections*, 156 Ohio St.3d 238, 2019-Ohio-201, 125 N.E.3d 832, ¶3. (*See, also, id.* at ¶¶40-41). Around the same time, DFP was created on January 1, 2019 as a three-person partnership. Despite DFP's description of itself as a "5th-generation family farm," the plaintiff in this case is only 8 months old. (Complaint, ¶4; Doc. #35-1, DFP's Memorandum, PageID #382).

In January 2019, the Ohio Supreme Court heard an action for a writ of prohibition seeking to prevent LEBOR from appearing on the special election ballot. (Doc. #1, Complaint, ¶42). On January 23, 2019, the Ohio Supreme Court denied the requested writ, finding that since Council passed the ordinance to place LEBOR on the ballot in accordance with Article XVIII, Section 9 of the Ohio Constitution, the Board of Elections "had no legal authority to review the substance of a proposed charter amendment and has no discretion to block the measure from the ballot based on an assessment of its suitability." *Abernathy*, 2019-Ohio-201, at ¶7.

3

Council certified the measure to the Lucas County Board of Elections to include on the ballot for the February 26, 2019 special election. (Doc. #1, Complaint, ¶¶37-38; Doc. #1-1, Ex. A, LEBOR). *See* Article XVIII, Sections 8-9 of the Ohio Constitution. On February 26, 2019, voters approved to enact LEBOR as an amendment to the Charter. (*Id.* at ¶45); See Charter, Chapter VI, Section 84, and Article XVIII, Section 9, of the Ohio Constitution. Chapter VI, Section 86 of the Charter provides: "After the people have legislated for themselves, either by initiating legislation or passing favorably [] upon legislation referred to them by any body, their action is final, and shall not be subject to amendment or repeal, <u>without a general vote of the people of Toledo on same.</u>" (Emphasis added.). So, the City lacks authority to modify, amend, or repeal LEBOR without further vote of the citizens of Toledo.

## II. <u>Relevant Procedural History</u>

On February 27, 2019, the day after the special election approving LEBOR, DFP filed its verified Complaint (Doc. #1) against the City, challenging LEBOR's substance. It does not challenge any other provision of the Charter, the citizens' initiative petition process, or the February 26, 2019 special election results.

DFP's verified Complaint contains 14 counts. These include federal constitutional claims based on the First and Fourteenth Amendments (Count I), the Fourteenth Amendment's equal protection clause (Count II), and the Fifth and Fourteenth Amendments (Count III). DFP's Complaint also alleges procedural and substantive due process violations under the Fifth and Fourteenth Amendments (Count IV and V), and seeks declaratory judgments (Counts VI and XIV). Seven other claims allege preemption of federal and state law (Counts VII-XIII). DFP seeks injunctive relief and a declaration that LEBOR is void and unenforceable in its entirety and on several specific grounds, in addition to praying for costs and attorneys' fees under 42 U.S.C. §1988.

On May 30, 2019, DFP filed the Declaration of Mark Drewes, which purports to "clarify" parts of DFP's Complaint he previously verified. Drewes now admits that "Drewes Farms Partnership does not itself own any of the Farm Property that it farms." (Doc. #33, Decl., ¶7).

While the City has actively defended its Charter before this Court, it has taken no enforcement or other action regarding LEBOR. *See* March 18, 2019 Preliminary Injunction Order (Doc. #9). DFP filed its Motion for Judgment on the Pleadings on June 7, 2019.

## III.    Legal Standards Governing this Opposition and Cross-Motion

Rule 12(c) motions are subject to the same legal standard as Rule 12(b)(6) motions to dismiss. *Marsilio v. Vigluicci*, 924 F.Supp.2d 837, 846 (N.D.Ohio 2013). To survive a Rule 12 motion, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009), *quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). A plaintiff must provide more than "an unadorned, the Defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). For purposes of a Rule 12(c) Motion, the Court may consider the Complaint, the City's Answer (Doc. #41), and any documents specifically referenced in the Complaint. Fed.Civ.R. 7(a), 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), overruled on other grounds. Because DFP lacks standing, DFP's Rule 12(c) Motion and Complaint are based on speculation, and its Complaint states no plausible claim for relief, DFP's Motion should be denied, and the City's Rule 12(c) Motion should be granted.

IV.  **Law and Argument**

A.     **DFP's Complaint Should Be Dismissed Because DFP Lacks Standing.**

Standing is "the threshold question in every federal case;" if the plaintiff lacks standing, the court lacks jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (finding non-resident's lacked standing to assert claims related to a neighboring municipality's zoning ordinance); *Huff v. TeleCheck Services, Inc.*, 923 F.3d 458, 462 (6th Cir. 2019). The doctrine of standing is "rooted in the traditional understanding of a case or controversy," and developed "to ensure that federal courts do not exceed their authority as it has been traditionally understood" and to "confine[] the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016), as revised (May 24, 2016) (internal citations omitted). *See, also,* Article III, Section 2, of the U.S. Constitution.

To establish standing, DFP has "the burden of establishing the 'irreducible constitutional minimum' of standing by demonstrating three elements: (1) an injury in fact, which is (a) concrete and particularized, and (b) actual and imminent, and not conjectural or hypothetical, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. 1540, at paragraphs (a) and (b) of the syllabus, *quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 556, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). At the pleading stage, to survive dismissal, DFP "must 'clearly * * * allege facts demonstrating' each element." *Spokeo*, 136 S.Ct. at 1547. A "'generalized grievance' shared in substantially equal measure by all or a large class of citizens * * * normally does not warrant an exercise of jurisdiction." *Warth*, 422 U.S. at 499.

In its Brief in Opposition (Doc. #16, Page ID ##196-97) to the Motion to Intervene filed by the Lake Erie Ecosystem and Toledoans for Safe Water ("TSW"), DFP argued that "TSW lacks standing to intervene because it does not allege that it suffered tangible harm." (Doc. #16,

DFP's Opposition to Motion to Intervene, Page ID #193). Yet, despite its awareness of the standing test, DFP has failed to "clearly allege" any facts establishing any of the three required elements, and its Complaint must be dismissed for lack of DFP's standing.

### 1.    DFP Has No Injury in Fact.

To establish an injury in fact, DFP's Complaint must clearly allege facts demonstrating a concrete and particularized injury and "show that he or she suffered 'an invasion of a legally protected interest.'" *Spokeo*, 136 S.Ct. 1540, at paragraph (b) of the syllabus, *quoting Lujan*, 504 U.S. at 560. Within this inquiry, DFP must clearly allege:

    (a)   Facts demonstrating an injury in fact which is concrete and particularized; and

    (b)   Facts demonstrating an injury in fact that is "'actual and imminent, not conjectural or hypothetical.'"

*Id*.  "[C]oncrete" is separate and "quite different from particularization."  *Spokeo*, 136 S.Ct. at 1548. To be particularized, the alleged injury must "'affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S.Ct. at 1548, *quoting Lujan*, 504 U.S. at 560. To be concrete, an injury "must be 'de facto;' that is, it must actually exist" and be "'real,' and not abstract.'" *Spokeo*, 136 S.Ct. at 1548. The alleged injury in fact further "must be real, not abstract, actual, not theoretical, concrete, not amorphous." *Huff*, 923 F.3d at 462 (citing *Spokeo,* 136 S. Ct. at 1548). Further, "a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a right and purports to authorize a suit to vindicate it. Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S.Ct. at 1549.

DFP also must clearly plead that its alleged injury is "'actual and imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S.Ct. 1540, at paragraph (b) of the syllabus. (Emphasis added.) Standing cannot be based upon a "remote fluctuating and uncertain" injury."

*Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 487 (1923). The Supreme Court has rejected the idea that a party can establish standing "by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 401. In *Clapper*, the plaintiffs included attorneys and organizations allegedly fearing legislation concerning government surveillance of their communications with sources and clients in foreign countries. To reduce their risk of surveillance, the plaintiffs curtailed their electronic and telephone communications and increased foreign travel. *Id.* The Court decided this was insufficient to establish an injury in fact, finding: "the costs [the plaintiffs] have incurred to avoid surveillance are simply the product of their own fear of surveillance, and * * * such a fear is insufficient to create standing." *Id.* at 417 (internal citations omitted).

LEBOR has not affected DFP in any personal or individual way. DFP is not a resident, voter, or taxpayer of Toledo or Lucas County; it owns no real property; it owns no property which it purports to farm; it has no Toledo or Lucas County operations; it was formed only 8 months ago and did not even exist in prior farming seasons such that it would have to change or modify its practices in response to LEBOR; and it does not allege it farms contiguous to Lake Erie. (Doc. #35-1, DFP's Motion, PageID #383). Although DFP's Complaint alleges that LEBOR has put the family farm "at risk," the Declaration submitted by Mark Drewes clarifies that DFP has no family farm and owns no real property. (Doc. #1, Complaint, ¶4; Doc. #33, Decl., ¶7).

DFP does not allege, and cannot allege, that LEBOR has been enforced against it, that it has been sued under LEBOR, that the City or LEBOR has prevented DFP from engaging in any activity, or that DFP has experienced any actual injury caused by or traceable to the City's alleged conduct. (*See* Doc. #1, Complaint, ¶53, referring to only "potential liability"; Doc. #33, Decl., ¶¶7-8). The Preliminary Injunction Order (Doc. #19) further negates any concrete or

particularized injury on DFP's part. DFP's unsupported conclusory allegation calling its speculative possible future injury "real and concrete" cannot overcome the facts establishing it has no concrete injury.

DFP's purported fear of potentially being a polluter does not establish an injury in fact. DFP is a self-professed "leader in conservation efforts" and claims to have "personally invested hundreds of thousands of dollars in developing techniques to minimize runoff." (Doc. #35-1, DFP's Memo., PageID #383). It alleges it is complying with "Ohio law, best practices, [and] scientific recommendations," and is a self-professed "leader in implementing new methods to both reduce the amount of fertilizer used and to reduce runoff from its fields." (*Id*. at ¶¶4, 25-29). DFP alleges it has taken measures to prevent runoff and control water flow, and that it has been certified under the Ohio Agricultural Stewardship Verification Program. (*Id.* at ¶¶28-36). As part of "an edge-of-field study being conducted by the Ohio State University and the United States Department of Agriculture," DFP has also allegedly developed runoff-reduction strategies. (*Id*. at ¶34).

DFP's speculative fear of potential future liability due to possible "nominal or potential" runoff does not clearly plead an injury in fact. The Complaint does <u>not</u> allege that DFP has any phosphorous or nitrate runoff, nor that DFP has polluted Lake Erie or its watershed, that DFP's activities would be prohibited or limited by LEBOR, or that DFP believes it is violating LEBOR. Yet, DFP hypothesizes that LEBOR <u>might</u> mean it could breach an unidentified lease or contract (not attached to the complaint), or <u>might</u> mean it cannot plant crops, till the soil, control mosquitoes, mow grass, or erect a grain bin. (Doc. #35-1, DFP's Memo., pp. 5-6). LEBOR contains no such prohibitions or regulations. While DFP suggests it might have "some runoff" or "some de minimum amount of runoff" for weather-related or other reasons, LEBOR does not regulate or prohibit all runoff, and not all runoff necessarily equates to pollution, or pollution of

Lake Erie or any place in its watershed. (Doc. #1, Complaint, ¶51; Doc. #35-1, DFP's Memo., PageID #383).

DFP's reliance on a "speculative chain of possibilities" does not establish standing. *Clapper*, 568 U.S. at paragraph (b) of the syllabus. DFP fails to articulate any interest beyond its disdain for LEBOR. But, LEBOR has had no effect on DFP, and the face of DFP's Complaint confirms that DFP is seeking a mere advisory opinion from this Court on LEBOR. This is not sufficient to satisfy even the first element of standing. The Court's analysis can end here.

### 2. Any Alleged Injury to DFP is Not Fairly Traceable to the Challenged Conduct of the City.

DFP cannot satisfy the second element of the standing test because any purported alleged injury is not "fairly traceable to the challenged conduct of" the City. *Spokeo*, 136 S.Ct. 1540, at paragraph (a) of the syllabus, *quoting Lujan*, 504 U.S. at 556. The Sixth Circuit has interpreted this element to mean the plaintiff must establish that its alleged injury was "caused by" the defendant. *Huff*, 923 F.3d at 462. And, DFP's partners recently have admitted to the media that they have incurred significant damage and difficulties during the 2019 growing season and future growing seasons caused by recent weather conditions.[2] Since the City has caused DFP no injury, there can be no causal connection, and DFP cannot satisfy the standing test.

### 3. Any Alleged Injury to DFP is Not Likely to Be Redressed by a Favorable Judicial Decision.

Because DFP has no injury in fact, there is no injury to "redress" in this lawsuit. Even if LEBOR were voided in its entirety, nothing would change for DFP. And, given DFP's allegations that it believes it is already employing best fertilization and farming practices, the existence of LEBOR would have no effect on DFP, again leaving nothing to redress in this case.

---

[2] Copies of such media articles are attached hereto as Exhibit A, and the Court can take judicial notice of them. Fed.Evid.R. 201; *Graham v. Fearon*, N.D. Ohio No. 1:16 CV 2366, 2017 WL 1113358 (March 24, 2017), *aff'd at* 721 Fed. Appx. 429 (6th Cir. 2018).

4.    **DFP Lacks Standing to Allege Foreign Affairs or International Relations Claims on Behalf of Others.**

DFP alleges that corporations or governments in Michigan, Indiana, Pennsylvania, New York, and Canada might be subject to liability for violating LEBOR. (Doc. #35-1, DFP's Memorandum, PageID #382). But DFP does not allege that it operates or owns property in any foreign state or country, or that any interference with foreign policy, trade, or immigration has actually occurred; nor does it give any reason why such non-Ohio entities could not assert their own rights if they had standing. (Doc. #1, Complaint, ¶¶91-99; Doc. #33, Decl., ¶7). DFP has no standing to assert claims on behalf of any unidentified entity operating in any of those other jurisdictions. *See Warth*, 422 U.S. at paragraph (b) of the syllabus (noting "the prudential standing rule that normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves").

B.    **DFP's Complaint is Premature and Not Ripe.**

In addition to the lack of standing for failure to satisfy the Supreme Court's three-part test, DFP's Complaint should be dismissed in its entirety because it is premature to evaluate the substantive merits of LEBOR. DFP is asking the Court to issue an advisory and speculative opinion when the City has taken no enforcement action regarding LEBOR, and no injury or damage has occurred to DFP.[3] As a result, DFP's Complaint should be dismissed in its entirety.

---

[3] The 2020-2021 Budget Bill, Am. Sub. House Bill 166, signed by Gov. DeWine on July 18, 2019, further establishes the lack of ripeness, as it includes the creation of R.C. §2305.011, specifically prohibiting nature or an ecosystem from having standing in a common pleas court, and individuals from suing on behalf of an ecosystem or nature. https://www.legislature.ohio.gov/legislation/legislation-status?id=GA133-HB-166. 2019 Ohio H.B. No. 166, Section 101.01, 133rd Gen.A.

11

C.    **DFP's Complaint Fails to Plead Viable §1983 Claims.**

    1.    **DFP's Complaint Fails to Establish a *Prima Facie* §1983 Claim.**

DFP's constitutional claims are defective under §1983. To establish a *prima facie* §1983 case, DFP must show: (1) that a person deprived it of a legal right; and (2) that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (internal citations omitted). But, the City has taken no "action" under color of state law. The action DFP is complaining about is not attributable to the City; it is attributable to the electorate. LEBOR is not legislation drawn up by the City law department and presented to and approved by Council. The City has engaged in no action under color of state law related DFP's alleged harm.

DFP has not challenged the citizens' initiative process. Rather, DFP's Complaint opposes LEBOR's substance, over which the City had no input or control, and complains about what impact it believes LEBOR might have if it is enforced. Because the City has taken no state action enforcing LEBOR or deprived DFP of any constitutional right, DFP's §1983 claims are premature, fail to state a claim, and should be dismissed.

    2.    **DFP's Complaint Fails to Plead a *Monell* Claim.**

The City can be exposed to liability under §1983 only if its policies or customs have directly caused a constitutional violation. *See City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (abrogated on other grounds) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)). Generally, there are four methods by which a plaintiff may try to establish that a municipal policy or custom has caused an alleged constitutional violation under *Monell*: (a) through unconstitutional legislative actions or official agency policy; (b) through actions taken by officials with final decision-making authority; (c) by a policy of inadequate training or supervision; or (d) by a custom of tolerance or acquiescence of federal rights violations. *Thomas*

*v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005) (citations omitted). Here, the City has taken no unconstitutional action through following its lawful process for citizens' initiative petitions. It is premature to evaluate LEBOR as "official agency policy," as the City has not enforced it. And, this case does not involve training or supervision, or a custom of tolerance or acquiescence of federal rights violations, particularly given that LEBOR has not yet been enforced.

### 3.    DFP Fails to Plead a First Amendment Claim.

Despite DFP's allegations that LEBOR divests "corporations" of their First and Fourteenth Amendment right to petition the government for redress of grievances and to free speech, DFP has failed to allege any facts establishing that the City actually has burdened any of its fundamental rights. (Doc. #1, Complaint, ¶6(a)). DFP's speech has not been chilled, and it is currently having its day in Court. If DFP finds provisions of LEBOR vague, it can attempt to coordinate another citizens' initiative petition and vote to amend or repeal LEBOR. No part of LEBOR purports to nullify any aspect of the U.S. Constitution, including the First Amendment, or to strip DFP of any fundamental right. Conversely, the real chilling effect would occur if the Court granted DFP's Motion and considered its request for attorney fees, since this would give DFP – a non-resident – the ability to use a speculative and theoretical future injury to nullify a citizens' initiative petition and vote of the Toledo electorate.

### 4.    DFP Fails to Plead an Equal Protection Claim.

DFP asserts that LEBOR's application to corporations and governments, and not individuals, "bears no rational relationship to any legitimate governmental interest," and "is unreasonable, arbitrary, and invidious." DFP concludes that LEBOR is facially invalid. But, in alleging no "rational relationship to any legitimate governmental interest," DFP correctly admits that the equal protection analysis is subject to a low level of scrutiny and rational basis review.

13

Count II does <u>not</u> allege any burden on a fundamental right or other claims suggesting a stricter level of scrutiny. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011).

DFP's Rule 12(c) Motion ignores its Complaint's admission that rational basis review applies, and now asks the Court to apply strict scrutiny to Count II. But, DFP is bound by its allegations in Count II, and its claim is subject to rational basis review. "Under the rational basis test, which is applicable to economic and social legislation not involving 'suspect classes' or impinging upon fundamental rights, '[a] statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it.'" *Borman's, Inc. v. Michigan Prop. & Cas. Guar. Ass'n.*, 925 F.2d 160, 162 (6th Cir. 1991). "[T]he test for constitutional purposes is <u>not</u> whether the legislative scheme is imperfect, but whether it is wholly irrational." *Id.* at 163, *citing Pennell v. City of San Jose*, 485 U.S. 1, 13-14, 108 S.Ct. 849, 858-59 (1988). (Emphasis added.) So long as a classification has a legitimate purpose, and the governmental action has a rational relationship to that purpose, the law should be upheld. *Williamson v. Lee Optical*, 348 U.S. 483 (1955).

LEBOR has a legitimate purpose – curbing pollution in Lake Erie and its watershed. LEBOR does not single out or distinguish partnerships, farmers, or DFP from any other corporation or government subject to LEBOR. LEBOR specifically defines "Corporation" to "include any business entity." It applies to all business entities in the same way, regardless of the nature of their business or trade, and applies to public and private actors. There is no constitutional requirement that a Charter section adopted via the citizens' initiative petition process define every term therein. LEBOR satisfies the rational basis test, and does not violate the equal protection clause as a matter of law.

14

5.     **DFP Fails to Plead a Fifth or Fourteenth Amendment Claim**.

DFP mischaracterizes LEBOR as a purely criminal law imposing strict liability, and improperly asserts that the "strictest test for vagueness" should apply. But DFP ignores that the City has authority to "make the violation of any of its ordinances a misdemeanor, and provide for the punishment thereof by fine or imprisonment, or both." O.R.C. §715.67.

DFP's analysis also ignores the rest of LEBOR, which confirms it is <u>not</u> a strictly criminal statute. Read in its entirety, it is evident that Section 3(a) of LEBOR does not refer to any criminal liability other than what is allowable under and consistent with State law. Its provisions related to enforcement of LEBOR's rights and prohibitions clearly refer to civil, not criminal action. Section 3(d), for example, refers to monetary damages in a civil action.

Because the City has not attempted to enforce LEBOR, and the City has taken no further legislative action, DFP's allegations of vagueness, or other assertions as to why it believes LEBOR's contents are unconstitutional, are premature, and DFP lacks standing to bring them.

Moreover, while LEBOR has a strict liability provision, it is clear from its face that this means a corporation or government cannot point to a permit as a <u>conclusive</u> means to establish a defense to or compliance with LEBOR. Nothing in LEBOR expressly states that a defendant, civil or criminal, could not raise <u>any</u> defenses related to a permit or Fertilizer Applicator Certificate alleged to violate LEBOR. And, Section 2(b) of LEBOR specifically provides that it only applies to validity of a permit, license, privilege, charter, or other authorization "<u>within the City of Toledo.</u>" Since DFP admits it does not operate in the City, there can be no constitutional violation as to DFP related to this provision (and, of course, DFP also lacks standing).

DFP also asserts that LEBOR "violates fundamental principles of [procedural] due process by depriving business of their property rights for arbitrary reasons." (Doc. #35-1, DFP's Motion, p. 1). But, LEBOR does not burden any fundamental right of DFP. DFP owns no

15

property. (Doc. #33, Decl., ¶7). Further, there is no constitutional right to fertilize in whatever manner a partnership chooses. To the contrary, fertilization activities are highly-regulated at federal, state, and local levels. Contrary to DFP's speculation and hypotheticals, nothing in LEBOR bans all fertilizers or chemicals; forces DFP to halt all fertilization; invalidates state law or State agency rules; or suggests that DFP's purported Fertilizer Applicator Certificate issued by the Department of Agriculture violates LEBOR or is invalid. (Doc. #1, Complaint, ¶55). DFP's due process claim further fails because the City has taken no action against it, the City has not deprived DFP of anything, and the City's action in following the citizens' initiative process was not random or unauthorized.

DFP's suggestions that LEBOR is vague for lack of notice and as an unrestricted delegation of power, is harsh, or gives Toledo residents enforcement abilities as special prosecutors are premature, as the City has enforced none of those provisions. To the extent DFP may suggest that lawsuit filed in *Ferner, et al. v. State of Ohio*, Lucas County Court of Common Pleas Case No. CI 201902904, is an enforcement action under LEBOR, it is not. The *Ferner* case is inherently different than the enforcement actions contemplated in LEBOR, as *Ferner* is a lawsuit against the State related to the rights of a local elector; it is not a lawsuit against an alleged polluter violating LEBOR, and it does nothing to create standing for DFP in this case.

As the Supreme Court emphasized in *Williamson*: "The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions because they may be unwise, improvident, or out of harmony with a particular school of thought." *Williamson*, 348 U.S. 483 (1955). Rather, "'[f]or protection against abuses by legislatures the people must resort to the polls, not to the courts.'" *Id*. The electorate resorted to the polls to pass LEBOR; if DFP is not happy with this decision, its proper vehicle for changing that decision is through the electoral process, not this Court.

16

**D.**    **DFP Improperly Asks the Court to Nullify the Citizens' Initiative Petition and to Undermine the Right to Self-Government.**

A finding in DFP's favor would nullify the citizens' initiative petition process, and citizens' fundamental right to vote. It further would interfere with Toledoans' due process rights to a clean and healthy environment. *See, Juliana v. United States*, 217 F.Supp.3d 1224, 1250 (D. Oregon 2016) (finding that "the right to a climate system capable of sustaining human life is fundamental to a free and ordered society.") DFP's lawsuit asks the Court to grant a non-resident's request to overturn a duly-enacted charter amendment, and to amend the City's Charter without following the procedural requirements for doing so. This lawsuit is not an appropriate vehicle for DFP's assertions, as DFP has failed to follow the required process for amending or repealing LEBOR under the Charter.

It is particularly critical to preserve the rights of Toledoans to mobilize, petition, and vote given that the challenge to these rights comes from DFP – a non-resident owning no property, paying no taxes, and not operating in Toledo; which has suffered no injury in fact and has no standing. (Doc. #33, Decl., ¶¶7-8). DFP's Complaint ignores all of this, and instead suggests that LEBOR exceeds the City's legislative authority and intrudes on the powers of the state and federal governments. (Doc. #1, Complaint, ¶7). But, the City at all times has complied with state and federal law, and the Charter concerning citizens-based initiatives.

**E.**    **DFP's Complaint Fails to State a Claim for Injunctive Relief.**

To establish a right to injunctive relief, DFP must show that: (1) it "is likely to succeed on the merits," (2) it "is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest." *Fowler v. Benson*, 924 F.3d 247 (6th Cir. 2019). To obtain a permanent injunction, a party must "establish that it suffered a constitutional violation and will suffer 'continuing irreparable injury' for which there is no adequate remedy at law." *Deja Vu of Nashville, Inc. v. Metro. Gov't of*

17

*Nashville & Davidson County,* 466 F.3d 391, 394 (6th Cir. 2006). DFP's Complaint fails every element. DFP is not likely to succeed on the merits because it lacks standing, has asserted premature claims, has failed to assert viable §1983 claims, and its claims otherwise fail. DFP fails to articulate any irreparable harm by the required clear and convincing evidence, and alleges only bare speculation and fear of possible future injury. *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct.937 (1974) (mere injuries of money, time, and energy do not constitute irreparable harm). Finally, the balance of equities does not tip in DFP's favor, and injunctive relief is not in the public interest, as granting DFP's requested injunctive relief would improperly invalidate multiple provisions of the Charter and the citizens' initiative process, and contradict the common interest in protecting and preserving the environment.[4]

      **F.**      **DFP Fails to State a Viable Claim for Declaratory Relief.**

To the extent DFP's Complaint seeks declaratory relief, those derivative claims fail for because DFP's other claims fail, for the reasons described herein. Further, DFP's request for declaratory judgment under 28 U.S.C. §§2201-2202, fails to satisfy the Sixth Circuit's five-factor analysis:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for res judicata'; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk Western R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

DFP's declaratory claims would not settle this controversy or clarify the legal relations at issue, given that DFP lacks standing and asks the Court to decide issues that are premature and

---

[4] DFP agrees in its Complaint that "farmers within the Lake Erie watershed have as great an interest as any to protect and preserve their environment as their livelihood depends on the health of the water and soil." (Doc. #1, Complaint, ¶8)

not ripe. Rather, DFP is attempting to use this lawsuit as "procedural fencing" to obtain a result – the demise of LEBOR - which the Toledoans refused at the polls. Further, an alternative remedy exists for questions or disputes about LEBOR through the citizens' initiative petition process and vote of the electorate, as contained in the Charter.

**G.**    **DFP's Complaint Fails to State a Viable Claim for Preemption of Federal or State Law.**

DFP incorporates by reference the State of Ohio's preemption and public trust arguments in its 12(c) Motion. The City incorporates by reference its arguments and authorities contained in its Opposition to Intervening Plaintiff State of Ohio's 12(c) Motion, filed contemporaneously herewith. Counts VII-XIII of DFP's Complaint allege federal and state law preemption. There is nothing in either complaint or 12(c) Motion that identifies that the federal government or State government intended to occupy the entire field of environmental law, or regulation of pollution or commercial activities pertaining to Lake Erie. Neither the State nor DFP contend that it is impossible to comply with LEBOR, *i.e.*, not polluting, and any specific State or federal law. Because nothing in LEBOR expressly replaces or supplants federal or state law or regulations, Counts VII-XIII should be dismissed.

LEBOR does not supplant State law; instead, it incorporates "[a]ll laws adopted by the legislature of the State of Ohio, and rules adopted by any State agency," except to the extent that LEBOR provides additional protection beyond those State laws and rules. (LEBOR, Section 4(b)). As a matter of Ohio law, the City has authority and jurisdiction concurrent with the State to regulate uses of Lake Erie, including commercial activities, within its jurisdictional territory and two miles out into Maumee Bay. R.C. §721.04; *Toledo v. Kilburn*, 71 Ohio Misc. 2d 40, 654 N.E.2d 202 (Mun. 1995).

19

**H.**     **DFP's State Law Claims Should be Dismissed.**

Since DFP has no standing or basis to bring any claim within this Court's original jurisdiction, any remaining state law claims should be dismissed for lack of supplemental jurisdiction. 28 U.S.C. §1367(c)(3); *Musson v. Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244 (6th Cir. 1998).

**V.     Conclusion**

Based up on the foregoing, the City respectfully requests that the Court enter an Order denying DFP's Motion for Judgment on the Pleadings in its entirety. The City further requests that the Court enter an Order under Fed.Civ.R. 12(c) granting the City judgment on the pleadings and dismissing DFP's Complaint against the City in its entirety because DFP lacks standing for all claims in its Complaint against the City. Alternatively, should the Court find that certain provisions of the citizens-initiated LEBOR are unlawful or unconstitutional, the City requests that the Court strike only that provision or provisions. In making this request, the City reminds the Court that LEBOR contains a severability clause. At the very least, the Court should permit the voiced concerns of Toledo's electorate as established in LEBOR to remain part of the City's Charter.

Respectfully submitted,

*/s/ Jennifer A. McHugh*
Gerald R. Kowalski (0022323)
Sarah K. Skow (0081468)
Jennifer A. McHugh (0084842)
SPENGLER NATHANSON P.L.L.
900 Adams Street
Toledo, Ohio  43604-5505
Telephone:  (419) 241-2201
Facsimile:  (419) 241-8599
gkowalski@snlaw.com
sskow@snlaw.com

*Counsel for Defendant, City of Toledo, Ohio*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing has been electronically filed this 9th day of August, 2019. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Jennifer A. McHugh*
Jennifer A. McHugh

450730