**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DREWES FARMS PARTNERSHIP, | ) | Case No. 3:19-cv-00434-JZ |
| | ) | |
| Plaintiff, | ) | Hon. Jack Zouhary |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF TOLEDO, OHIO, | ) | |
| | ) | |
| Defendant. | ) | |

---

**CITY OF TOLEDO'S OPPOSITION TO INTERVENING PLAINTIFF**
**STATE OF OHIO'S MOTION FOR JUDGMENT ON THE PLEADINGS**
**AND CITY OF TOLEDO'S CROSS-MOTION UNDER CIVIL RULE 12(c)**

---

Gerald R. Kowalski (0022323)
Sarah K. Skow (0081468)
Jennifer A. McHugh (0084842)
SPENGLER NATHANSON P.L.L.
900 Adams Street
Toledo, Ohio  43604-5505
Telephone:  (419) 241-2201
Facsimile:  (419) 241-8599
gkowalski@snlaw.com
sskow@snlaw.com
jmchugh@snlaw.com

*Counsel for Defendant, City of Toledo, Ohio*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

LOCAL RULE 7.1 CERTIFICATION.......................................................................... vi

THE CITY'S COMBINED OPPOSITION TO THE STATE'S MOTION FOR
JUDGMENT ON THE PLEADINGS, AND CROSS-MOTION UNDER RULE
12(c) FOR JUDGMENT ON THE PLEADINGS ...........................................................1

MEMORANDUM IN SUPPORT.....................................................................................1

I.        INTRODUCTION .................................................................................................1

II.       RELEVANT FACTUAL BACKGROUND.........................................................7

III.      RELEVANT PROCEDURAL HISTORY ...........................................................9

IV.       LEGAL STANDARDS GOVERNING RULE 12(c) MOTIONS....................11

V.        LAW AND ARGUMENT ...................................................................................12

          A.       Intervenor's Complaint Should Be Dismissed in Its Entirety Because
                   the State Lacks Standing for Any of Its Claims against the City...........................13

          B.       The State Has Failed to Establish that LEBOR Conflicts with or
                   Contradicts the Equal Footing and Public Trust Doctrines, That It
                   Violates the Supremacy Clause of the U.S. Constitution, or That It
                   is Otherwise  Preempted by Federal or State Law. ................................................15

          C.       The State's Complaint Fails to State a Claim for Injunctive or
                   Declaratory Relief. ................................................................................................18

VI.       CONCLUSION....................................................................................................19

CERTIFICATE OF SERVICE ....................................................................................21

## **TABLE OF AUTHORITIES**

### CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................11

*Board of Lucas County Commissioners v. U.S. Environmental Protection
Agency, et al.*,
    N.D. Ohio Case No. 3:19-cv-00873.......................................................7

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*,
    466 F.3d 391 (6th Cir. 2006) ...............................................................18

*E.E.O.C. v. J.H. Routh Packing Co.*,
    246 F.3d 850 (6th Cir. 2001) ...............................................................11

*ELPC et al v. U.S. EPA et al.*,
    N.D. Ohio Case No. 17-cv-1514............................................................6

*Environmental Law & Policy Center, Advocates for a Clean Lake Erie
v. U.S. Environmental Protection Agency et al.*,
    N.D. Ohio Case No. 3:17-cv-01514.......................................................7

*Environmental Law & Policy Center, Advocates for a Clean Lake Erie
v. U.S. Environmental Protection Agency et al.*,
    N.D. Ohio Case No. 3:19-cv-00295.......................................................7

*Fairfield Cty. Bd. of Commrs. v. Nally*,
    143 Ohio St.3d 93, 2015-Ohio-991 .......................................................5

*Federal Gas & Fuel Co. v. City of Columbus*,
    96 Ohio St. 530, 118 N.E. 103 (1917) ..................................................2

*Ferner, et al. v. State of Ohio*,
    Lucas County Common Pleas Case No. CI 201902904 ........................14

*Fowler v. Benson*,
    924 F.3d 247 (6th Cir. 2019) ...............................................................18

*Graham v. Fearon*,
    N.D. Ohio No. 1:16 CV 2366, 2017 WL 1113358 (March 24, 2017)...............1

*Grand Trunk Western R. Co. v. Consol. Rail Corp.*,
    746 F.2d 323 (6th Cir. 1984) ...............................................................19

*JPMorgan Chase Bank, N.A. v. Winget*,
   510 F.3d 577 (6th Cir. 2007) ............................................................................11

*Juliana v. United States*,
   217 F.Supp.3d 1224 (D. Oregon 2016)..............................................................6

*Ky. Res. Council, Inc. v. United States EPA*,
   304 F.Supp.3d 920 (W.D. Ky. 2004) ...............................................................15

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)..........................................................................................13

*Marsilio v. Vigluicci*,
   924 F.Supp.2d 837 (N.D. Ohio 2013) ..............................................................11

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), <u>as revised</u> (May 24, 2016) ......................2, 13

*State ex rel. Abernathy v. Lucas Cty. Bd. of Elections*,
   156 Ohio St.3d 238, 2019-Ohio-201, 125 N.E.3d 832 ......................................8

*State ex rel. Hackley v. Edmonds*,
   150 Ohio St. 203 (1948)...................................................................................12

*State ex rel. Maxcy v. Saferin*,
   155 Ohio St.3d 496, 2018-Ohio-4035, 122 N.E.3d 165 ...................................8

*State ex rel. Morrison v. Beck Energy Corporation*,
   143 Ohio St.3d 271, 2015-Ohio-485 (2015)....................................................17

*Tackett v. M & G Polymers, USA, LLC*,
   561 F.3d 478 (6th Cir. 2009) ...........................................................................11

*Thomas v. Sanders*,
   65 Ohio App.2d 5, 413 N.E.2d 1224 (6th Dist. 1979)......................................16

*Toledo v. Kilburn*,
   71 Ohio Misc. 2d 40, 654 N.E.2d 202 (Mun. 1995)..............................4, 16, 17

*Warth v. Seldin*,
   422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)......................................13

## U<small>NITED</small> S<small>TATES</small> C<small>ONSTITUTION</small>

U.S. Constitution, Article III ................................................................................2

### FEDERAL STATUTES

28 U.S.C. § 2201 ..........................................................................................................10, 19

28 U.S.C. § 2202 ..........................................................................................................10, 19

33 U.S.C. § 1251 ...................................................................................................................5

### FEDERAL RULES

Fed.Civ.R. 12(b)(6) ..............................................................................................................4

Fed.Civ.R. 12(c) .......................................................................................................4, 6, 20

Fed.Civ.R. 57 ......................................................................................................................10

Fed.Evid.R. 201 ....................................................................................................................1

### NORTHERN DISTRICT OF OHIO LOCAL RULES

Local Rule 7.1 ..................................................................................................................... vi

### OHIO CONSTITUTION

Ohio Const., Art. I §1 ...........................................................................................................6

Ohio Const., Art. I, §2 ..........................................................................................................2

Ohio Const., Art. II, §1 .........................................................................................................2

Ohio Const., Art. II, § 1a ......................................................................................................2

Ohio Const., Art. XVIII, § 3 .................................................................................................4

Ohio Const., Art. XVIII, § 7 .................................................................................................4

### OHIO STATUTES

Ohio Revised Code Chapter 119 ...........................................................................................6

Ohio Revised Code § 715.67 ................................................................................................4

Ohio Revised Code § 721.04 ....................................................................................3, 12, 16

Ohio Revised Code § 2305.011 ..........................................................................................12

## OHIO LEGISLATION

2019 Ohio H.B. No. 166, Section 101.01, 133rd Gen.A. ............................................................12

## OHIO ATTORNEY GENERAL OPINION

2006 Ohio Op. Atty. Gen. 2-415...............................................................................................16

## CITY OF TOLEDO CHARTER

Charter of the City of Toledo, Ohio................................................................................. passim

Charter of the City of Toledo, Chapter II, Sec. 8.....................................................................17

Charter of the City of Toledo, Ohio, Chapter VI, Section 84 ....................................................5

Charter of the City of Toledo, Ohio, Chapter VI, Section 86 ....................................................5

Charter of the City of Toledo, Ohio, Chapter XVII, Lake Erie Bill of Rights ..................... passim

Charter of the City of Toledo, Ohio, Chapter XV ...................................................................17

## CITY OF TOLEDO MUNICIPAL CODE

Toledo Municipal Code, Part VII ...............................................................................................17

Toledo Municipal Code, Title 11 ...............................................................................................17

## LOCAL RULE 7.1 CERTIFICATION

In accordance with the requirements of Local Rule 7.1, counsel for Defendant, City of Toledo, Ohio, certifies that this case has not yet been assigned to a track, and that the City's attached Opposition to Intervening Plaintiff State of Ohio's Motion for Judgment on Pleadings and Cross-Motion under Fed.Civ.R. 12(c) for Judgment on the Pleadings complies with the 20-page limitation for unassigned cases provided in Local Rule 7.1.

**THE CITY'S COMBINED OPPOSITION TO THE STATE'S MOTION
FOR JUDGMENT ON THE PLEADINGS, AND CROSS-MOTION
UNDER RULE 12(c) FOR JUDGMENT ON THE PLEADINGS**

Defendant, City of Toledo ("City"), respectfully requests that the Court enter an Order denying the State of Ohio's Motion for Judgment on the Pleadings (Doc. # 34, Intervenor's 12(c) Motion) ("12(c) Motion") in its entirety. As a preliminary matter, because the State lacks standing to pursue its action against the City, the City also requests that the Court grant its cross-motion under Civil Rule 12(c) and dismiss the State's Intervenor's Complaint. (Doc. #31, Intervenor's Complaint), with prejudice.

## MEMORANDUM IN SUPPORT

## I.    INTRODUCTION

Five years ago, in August 2014, citizens of the City of Toledo became acutely aware of the impact pollution has had on Lake Erie, including harmful algal blooms ("HAB"s). Since 2014, the City has spent over $527 million to protect the City's water supply, ensuring that Toledoans and their regional neighbors have access to high-quality and safe drinking water. Conversely, State and federal agencies have not taken corrective action to sufficiently address and mitigate the sources of pollution in Lake Erie and its watershed ecosystem. (Doc. #41, Answer to Intervenor's Complaint, Thirteenth Defense). On August 7, 2019, the Toledo Blade reported that "scientists fully expect [noxious green algae] to overwhelm much of western Lake Erie again this summer" and that the 2019 HAB will "likely be one of the five largest since record-keeping began in 2002."[1]

---

[1] The Court can take judicial notice of the Toledo Blade article, available at its website, https://www.toledoblade.com/local/environment/2019/08/07/summer-2019-algal-bloom-coming-strong-western-lake-erie-algae-scientists-canada/stories/20190807160. Fed.Evid.R. 201; *Graham v. Fearon*, N.D. Ohio No. 1:16 CV 2366, 2017 WL 1113358 (March 24, 2017).

The Ohio Constitution declares that "[a]ll power is inherent in the people" and further provides that the people "have the right to alter, reform, or abolish the same, whenever they may deem it necessary…" Ohio Const. Art. I, §2; Art. II, §§1, 1a. The Ohio Constitution provides the right and power of local self-government. *See, Federal Gas & Fuel Co. v. City of Columbus*, 96 Ohio St. 530, 118 N.E. 103 (1917). No party in this litigation disputes that citizens can create their own laws through the democratic citizens' initiative process.

Rather, by intervening as a plaintiff in this action, the State attempts to invalidate the Lake Erie Bill of Rights Amendment to the City's Charter ("LEBOR")[2] which resulted from a citizens' initiative petition and grassroots response by residents of the City of Toledo to address pollution in Lake Erie. See City of Toledo Charter, Sec. VI. Recognizing that LEBOR was a properly enacted citizens' initiative petition authorized under the processes set forth in the Ohio Constitution and the City of Toledo's Charter, the State has not filed any claim challenging the electoral process through which the grassroots citizens group submitted its initiative petition with the proposed charter amendment which was approved by a 61% vote of the electors in the February 2019 special election.[3]

Because the City has not taken any action that has resulted in or is likely to result in a concrete injury to the State, the State lacks standing necessary to pursue its claims. Thus, the Court should grant the City's cross-motion under Rule 12(c) and dismiss the State's Complaint.

"[T]he law of Article III standing ... serves to prevent the judicial process from being used to usurp the powers of the political branches…" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), <u>as revised</u> (May 24, 2016) (internal citations omitted). Even

---

[2] The City Charter is available at the City's website.  *See* https://toledo.oh.gov/government.

[3] https://www.toledoblade.com/local/politics/2019/02/26/Lake-Erie-Bill-of-Rights-gets-approval-from-Toledo-voters/stories/20190226159.

though the State's Complaint seeks to challenge LEBOR, it still must establish the three constitutional minimum standing requirements of: (1) injury in fact, (2) causal connection between the injury and the defendant's conduct, and (3) the injury must be able to be redressed by the Court's decision and not merely speculative. *Id.*

The State cannot establish standing because the City did not draft or prepare the LEBOR Charter Amendment, and the City has taken no action—legislative or otherwise—to enforce LEBOR against the State or any other person or entity. Here, since the City has not taken any action to enforce the provisions of LEBOR and has taken no further legislative action, the State lacks standing and its claims are also premature and not ripe. Accordingly, Intervening Plaintiff State of Ohio's 12(c) Motion should be denied and its Complaint against the City should be dismissed.

Due to the State's lack of standing, the Court need not consider the State's substantive arguments, including that a "natural rights theory" it believes is "promoted by" LEBOR conflicts with or contradicts the Equal Footing Doctrine, the federal Submerged Lands Act, and the State's public trust interest in Lake Erie. Moreover the speculative and unsupported nature of those arguments further establishes the State's lack of a concrete redressable injury, and commensurate lack of standing. (Doc. #34, Intervenor's 12(c) Motion, at 3).

Reviewing the State's Intervenor's Complaint and the City's Answer in a light most favorable to the City, at the very least, material issues preclude the Court from granting the State relief under Rule 12(c) because the State is not clearly entitled to judgment on its Complaint.

The State's 12(c) Motion ignores the City's authority and rights related to Lake Erie and its waters and land within the City's jurisdiction. Under Ohio Revised Code § 721.04, the State has delegated authority to the City related to the City's regulating commercial use of waters, soil, or submerged lands—to which the State has title—*i.e.*, Lake Erie's waters, shore, and littoral

land within the City's territorial limits and stretching out into Lake Erie from the shoreline. Indeed, the City has been found to have concurrent jurisdiction over Lake Erie and the legally-recognized authority to regulate commercial activities within the City's territorial limits, extending out two miles into Maumee Bay and the navigable waters of Lake Erie. *Toledo v. Kilburn*, 71 Ohio Misc. 2d 40, 654 N.E.2d 202 (Mun. 1995). The State also ignores that under Ohio Revised Code § 715.67, the City has authority to "make the violation of any of its ordinances a misdemeanor, and provide for the punishment thereof by fine or imprisonment, or both."

The face of LEBOR does not replace or supplant any State or federal law; it identifies the contours of the greater protections LEBOR provides in addition to State law as a matter of a local initiative municipal charter amendment. Ohio Const., Art. XVIII, §§ 3, 7. The City's authority as delegated to it by State law and the plain language of LEBOR can co-exist with—not conflict with—the State's authority related to Lake Erie.

Contrary to the State's assertion, the plain language of LEBOR does not change or alter state or federal law or regulations. Indeed, LEBOR does not expressly and specifically identify any federal or State law or regulation, and it does not impede upon the State's role as trustee to Lake Erie, or under the federal Equal Footing Doctrine or Submerged Lands Act. And the State's Complaint and 12(c) Motion fail to identify any federal law or regulation that LEBOR supplants. Accordingly, the State's 12(c) Motion arguments on federal preemption should be denied, because LEBOR does not conflict with or impede upon federal law. The State does not argue that it is impossible to comply with LEBOR, *i.e.*, not pollute Lake Erie, while also complying with any federal or State law.

The State further glosses over that LEBOR expressly states: "All laws adopted by the legislature of the State of Ohio, and rules adopted by any State agency, shall be the law of the

4

City of Toledo only to the extent that they do not violate the rights or prohibitions of this law." LEBOR, Section 4(b). This reinforces that LEBOR provides additional protections and rights to the local Toledo community other than those provided by State law for the local issues related to the Lake and largest source of fresh water within Toledo's territorial limits.

Nor does any of LEBOR's language usurp or interfere with the State's holding title to Lake Erie in the public trust. Indeed, LEBOR is entirely silent on the matter of title, and by incorporating all Ohio laws, further adopts Ohio law regarding the State's title and rights to Lake Erie as trustee. See LEBOR, Section 4(b). To support its argument that LEBOR "unlawfully seeks to substitute the City and its residents as the trustees of public trust rights and take away the rights and interests from the State," the State cites to Section 1(c) of LEBOR. (Doc. #34, Intervenor's 12(c) Motion, at 4). But the plain language of Section 1(c) contains no such language or provision. In fact, there is no such language in the charter amendment. LEBOR does not contain any language purporting to make any citizen or the City the "trustee" for Lake Erie or its watershed. The State should not be permitted to defeat LEBOR by inventing language that does not exist in the charter amendment.

Although the State concedes it holds Lake Erie in trust for the benefit of the public it ignores its inaction regarding those duties entrusted to it. While the State repeatedly shouts that it is the trustee for the Lake Erie and the public, it does not allege or argue that it has fulfilled its duties to address the HABs and environmental deterioration of Lake Erie and its watershed. The State has substantially failed to comply with its duties under the Clean Water Act.[4] (Doc. #41,

---

[4] In 2015, the Ohio Supreme Court clearly held in *Fairfield Cty. Bd. of Commrs. v. Nally*, 143 Ohio St.3d 93, 2015-Ohio-991 (syllabus paragraph 1):

> A total maximum daily load [TMDL] established by the Ohio Environmental Protection Agency pursuant to the Federal Water Pollution Control Act, 33 U.S.C. 1251 et seq., is a rule that is

5

Answer to Intervenor's Complaint, Eighteenth Defense citing *ELPC et al v. U.S. EPA et al.*, N.D. Ohio Case No. 17-cv-1514, Apr. 11, 2018 Order at 5, and Oct. 3, 2018 Order at 1-4, by failing to establish a Total Maximum Daily Load ("TMDL") as required by federal law).

The State's 12(c) Motion and Complaint overlook that in recognizing that the Lake Erie Ecosystem should be healthy and flourish, LEBOR recognizes the rights of the citizens of Toledo to a safe and healthy environment. LEBOR, Preamble and Section 1(b). In its 12(c) Motion, the State attempts to characterize LEBOR as only attempting to establish a "novel" concept about natural rights for the environment. See State's 12(c) Motion at 2. But the State's Motion does not address LEBOR's provisions that provide and recognize the rights of the citizens of the City of Toledo to a "clean and healthy environment" which includes "the right to a clean and healthy Lake Erie and Lake Erie ecosystem." LEBOR, Preamble and Section 1(b). LEBOR's recognition of those citizens' rights is compatible with and expressly incorporates the inalienable rights protected by the Ohio Const., Art. I §1; LEBOR Preamble, ¶4. At least one federal court has found that citizens have due process rights to a clean and healthy environment. *See, e.g., Juliana v. United States*, 217 F.Supp.3d 1224, 1250 (D. Oregon 2016) (finding that "the right to a climate system capable of sustaining human life is fundamental to a free and ordered society.") Individual citizens availed themselves of the citizen initiative petition and electoral process provided for under the Ohio Constitution and the Charter, and the voters' voices were heard with the passage of LEBOR.

The State has asked the Court to nullify multiple provisions of the Charter which it does not allege are unconstitutional or unlawful; invalidate the citizens' initiative petition process which is based upon Article XVIII, Sections 7-9 of the Ohio Constitution; violate Toledoans'

---

subject to the requirements of R.C. Chapter 119, the Ohio Administrative Procedure Act.

fundamental right to vote; improperly amend or repeal LEBOR contrary to the required process in the Charter; and undermine the right of local community self-government and the democratic authority inherent in and established by the City's Charter and the Ohio Constitution. Finding in the State's favor would communicate to all Ohio municipalities and voters that lawful citizens' initiative petitions, democratic votes, and city charters have no meaning.

## II.     RELEVANT FACTUAL BACKGROUND

LEBOR was a grassroots initiative-petition that resulted from citizens' concerns about pollution in Lake Erie, including phosphorus runoff, cyanobacteria problems, and HABs that have impacted the citizens' use of natural resources in Lake Erie and its watershed, since at least 2014.[5] (Doc. #41, Answer to Intervenor's Complaint, Fourth Defense). Some of these citizens expressed concerns that various levels of government, including the federal government and the State, had failed to take adequate measures to regulate pollution in Lake Erie and the Lake Erie Watershed, in spite of the fact that Lake Erie was eventually designated as "impaired" under the Clean Water Act.[6] (Doc. #41, Answer to Intervenor's Complaint, Fourth Defense).

LEBOR is a statement by the citizens of the City of Toledo, also residents of the State of Ohio, expressing their concerns about pollution in Lake Erie. On August 6, 2018, the citizens group Toledoans for Safe Water turned in part-petitions with approximately 10,500 signatures to

---

[5] https://www.toledoblade.com/local/politics/2019/02/26/Lake-Erie-Bill-of-Rights-gets-approval-from-Toledo-voters/stories/20190226159; LEBOR, Preamble.

[6] The Environmental Law & Policy Center, Advocates for a Clean Lake Erie, and the Lucas County Commissioners have filed respective suits against the U.S. EPA based in part upon the federal agency's failure to hold the Ohio EPA accountable for the Ohio EPA's noncompliance with its duties under the Clean Water Act. *See*, *Environmental Law & Policy Center, Advocates for a Clean Lake Erie v. U.S. Environmental Protection Agency et al.*, N.D. Ohio Case No. 3:17-cv-01514; *Environmental Law & Policy Center, Advocates for a Clean Lake Erie v. U.S. Environmental Protection Agency et al.*, N.D. Ohio Case No. 3:19-cv-00295; and *Board of Lucas County Commissioners v. U.S. Environmental Protection Agency, et al.*, N.D. Ohio Case No. 3:19-cv-00873.

place the citizens-initiative LEBOR as an amendment to the Toledo City Charter on the next electoral ballot. (Doc. #41, Answer to Intervenor's Complaint, Sixth Defense). The City did not prepare, circulate, or draft the citizens-initiative LEBOR charter amendment. (Doc. #41, Answer to Intervenor's Complaint, Fifth Defense). On December 4, 2018, the Toledo City Council passed Ordinance 497-18, as its Charter obligated it to do in response to the citizens-initiative petition, declaring that the clerk of council had received sufficient petition signatures to submit LEBOR to the voters.

On December 20, 2018, the Lucas County Board of Elections held a hearing to consider a citizen protest to including LEBOR on the ballot. The Board of Elections voted to include LEBOR on the February 26, 2019 special election ballot, as supported by Ohio election law.  *See State ex rel. Maxcy v. Saferin*, 155 Ohio St.3d 496, 2018-Ohio-4035, 122 N.E.3d 165; *State ex rel. Abernathy v. Lucas Cty. Bd. of Elections*, 156 Ohio St.3d 238, 2019-Ohio-201, 125 N.E.3d 832, ¶3.  (*See, also,* Doc. #1, Plaintiff's Complaint, ¶¶40-41).

In January 2019, the Ohio Supreme Court considered an action for a writ of prohibition seeking to prevent LEBOR from appearing on the special election ballot. (Doc. #1, Plaintiff's Complaint, ¶¶42-43). On January 23, 2019, the Ohio Supreme Court denied the requested writ, finding that once Toledo City Council "passed the ordinance to place LEBOR on the ballot in accordance with Article XVIII, Section 9 of the Ohio Constitution, the [B]oard [of Elections] had no power to keep the proposed charter amendment off the ballot." *Abernathy*, 2019-Ohio-201, at ¶9.

On February 26, 2019, Toledo voters enacted LEBOR as an amendment to the Charter. (Doc. #31, Intervenor's Complaint, ¶2, Ex. A to Complaint, Ordinance 497-18). On March 13, 2019, the Lucas County Board of Elections certified this result. (Doc. #41, Answer to Intervenor's Complaint, Seventh Defense). Because the citizens voted to enact LEBOR, it

became part of the Charter. Charter, Section 84; *see, also,* Article XVIII, Section 9, of the Ohio Constitution. Section 86 of the Charter provides: "After the people have legislated for themselves, either by initiating legislation or passing favorably [] upon legislation referred to them by anybody, their action is final, and shall not be subject to amendment or repeal, <u>without a general vote of the people of Toledo on same.</u>"  (Emphasis added.)  So, the City lacks authority to modify, amend, or repeal LEBOR without further vote of the citizens of Toledo.

## III.    RELEVANT PROCEDURAL HISTORY

On February 27, 2019, the day after the City's citizens voted in the special election to approve LEBOR, Plaintiff Drewes Farms Partnership filed its verified Complaint (Doc. #1, Plaintiff's Complaint) against the City as the sole Defendant, claiming that LEBOR is unconstitutional and violates and is preempted by federal and state law, and seeking its attorneys' fees and costs in this litigation.

On March 18, 2019, Toledoans for Safe Water, Inc. ("TSW"), the non-profit corporation that worked with the citizens who circulated petitions, promoted, prepared, and submitted LEBOR, moved to intervene as a defendant in the litigation. (Doc. #10, TSW's Motion to Intervene). The Court denied TSW's request to intervene on May 7, 2019. (Doc. #27, Order Denying TSW's Motion to Intervene).

On March 29, 2019, the State of Ohio filed its Motion to Intervene as a plaintiff in this action. The Court granted the State's request to intervene as a plaintiff in this action on May 1, 2019. (Doc. #21, Order Granting the State's Motion to Intervene). On May 24, 2019, the State filed its Intervenor's Complaint for a Declaratory Judgment and Injunctive Relief pertaining to LEBOR. (Doc. #31, Intervenor's Complaint). Intervenor's Complaint contains six counts against the City, in summary as follows:

Count One: LEBOR conflicts with the Equal Footing Doctrine under the U.S. Constitution;

Count Two: LEBOR conflicts with the Submerged Lands Act;

Count Three: LEBOR is void for vagueness under the Fifth and Fourteenth Amendments to the U.S. Constitution because it provides a generalized declaration of rights and prohibitions;

Count Four: LEBOR is preempted by federal law that delegates enforcement responsibility for water quality, drinking water, Great Lakes protection, and Coastal Management to the State;

Count Five: LEBOR exceeds the City's authority and is preempted by State laws about drinking water, water pollution, agriculture regulation, and corporate formation;

Count Six: LEBOR conflicts with and is preempted by the Ohio Constitution and Ohio Revised Code because it determines jurisdiction in the Lucas County Court of Common Pleas and provides legal standing for Lake Erie.

The State seeks relief under 28 U.S.C. §§ 2201, 2202, and Rule 57, for a judgment declaring that the entirety of LEBOR is void and unenforceable, and the issuance of a permanent injunction against the City and any other person or entity enjoining them from enforcing any provision of LEBOR against any person, corporation, government entity, or any other legal entity. (Doc. #31, Intervenor's Complaint, Prayer for Relief).

On June 28, 2019, the City filed its answer denying the State's complaint and asserting defenses including the City's home rule authority under the Ohio Constitution, the City's jurisdiction and authority to regulate and enforce its laws on the waters of Lake Erie as provided by State law; that the State's failure to fulfill its duties under federal and State laws led to

LEBOR and the DFP suit against the City; and, the lack of conflict between LEBOR's provisions and State and federal laws. (Doc. # 41, Answer to Intervenor's Complaint).

The State and DFP filed their respective motions under Rule 12(c) on June 7, 2019.

## IV.    LEGAL STANDARDS GOVERNING RULE 12(c) MOTIONS

Rule 12(c) motions for judgment on the pleadings are subject to the same legal standard as motions to dismiss pursuant to Rule 12(b)(6). *Marsilio v. Vigluicci*, 924 F.Supp.2d 837, 846 (N.D. Ohio 2013), *citing E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). To survive a Rule 12 motion, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *see, also, Ashcroft v. Iqbal,* 556 U.S. 662 (2009). The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Marsilio*, 924 F.Supp.2d at 846. While a plaintiff need not include detailed factual allegations, it must provide more than "an unadorned, the Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Here, the State's Rule 12(c) Motion is based upon pure speculation, relates to a Complaint stating no plausible claim for relief, and is comprised entirely of claims the State lacks standing to assert. Because the State lacks standing to assert its claims, its 12(c) Motion should be denied, and the City's cross-motion under Rule 12(c) should be granted. Even taking the State's allegations as true, it states no plausible claim for relief, and the City—not the State— is "clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

## V.    LAW AND ARGUMENT

Article XVIII, Section 3 of the Ohio Constitution establishes municipal home rule: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." The Ohio Supreme Court has declared that municipalities have "the broadest possible powers of self-government in connection with all matters which are strictly local and do not impinge upon matters which are of a state-wide nature of interest." *State ex rel. Hackley v. Edmonds*, 150 Ohio St. 203, 212 (1948). The electors of the City of Toledo prepared and passed the LEBOR charter amendment relating to the local matter of protecting the City's water supply and to address pollution in Lake Erie, which is within the City's territorial limits. Ohio Revised Code § 721.04.

Here, since the City has not taken any action to enforce the provisions of LEBOR and has taken no further legislative action regarding LEBOR, the State has not suffered any concrete injury attributable to the City's conduct, lacks prerequisite standing to pursue its Complaint, and its claims are also not ripe.[7]

---

[7] 2019 Ohio H.B. No. 166, Section 101.01, 133rd Gen.A. The 2020-2021 Budget Bill, Am. Sub. House Bill 166 ("2020-2021 Budget Bill") was signed by Governor DeWine on July 18, 2019. The 2020-2021 Budget Bill, which was introduced by the Ohio House of Representatives on March 25, 2019, includes the creation of Ohio Revised Code § 2305.011, which specifically prohibits nature or an ecosystem from having standing in a common pleas court and prohibits an individual from filing suit on behalf of nature or an ecosystem. Neither the State's Complaint nor its 12(c) Motion allege or refer to this forthcoming statute, as it did not exist as a draft until after LEBOR was passed by Toledo's voters. The forthcoming statute in the 2020-2021 Budget Bill further establishes that the State's Complaint is not ripe. https://www.legislature.ohio.gov/legislation/legislation-status?id=GA133-HB-166. The Court can take judicial notice of the legislative history. Fed.Evid.R. 201.

### A. Intervenor's Complaint Should Be Dismissed in Its Entirety Because the State Lacks Standing for Any of Its Claims against the City.

The Supreme Court requires a plaintiff, as the party invoking jurisdiction, to satisfy three elements to establish standing: (1) injury in fact; (2) a causal connection between the injury and the defendant's conduct complained of; and (3) an injury that is "likely" (and not merely speculatively) redressable by a favorable decision from the court. *Spokeo,* 136 S.Ct. at 1547, *quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 556 (1992). At the pleading stage, the plaintiff must clearly allege facts demonstrating each of the three elements. Federal courts typically only permit a litigant to assert its own legal rights and interests, and not those of third parties. *See Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), at paragraph (b) of the syllabus (noting "the prudential standing rule that normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves").

The State's Complaint fails to clearly allege facts demonstrating each of the three requisite standing elements. At the outset, the State has failed to allege that it has suffered any concrete injury that is fairly traceable to the City's alleged conduct, *i.e.*, the City's following its procedural processes for citizen initiative petitions contained in its governing Charter. The State has not claimed that the City acted unlawfully when it allowed the citizens' initiative charter amendment to proceed through the democratic process. While the State's Complaint generally alleges that it has general dominion over Lake Erie and it and its agencies have rights and duties under various state and federal statutes (Clean Water Act, Coastal Zone Management Act, Great Lakes-St. Lawrence River Basin Water Resources Compact, Federal Water Pollution Act, etc.), there are no allegations that the City has caused a concrete injury to the State or its agencies under any of those federal or State laws or regulations by letting an initiative petition proceed to the vote of the electorate.

Rather, the State merely alleges generalized potential harm to its interests if the City were to take action to enforce LEBOR. The State's purported harm depends upon three hypothetical contingencies: (1) that the City will take legislative action to implement and enforce LEBOR, (2) that such hypothetical legislative action and enforcement action would lead to the City or a Toledo resident taking enforcement action and filing a potential legal action that would somehow harm the State's and its agencies' authority and duties under various state and federal laws, and (3) that the State's and its agencies' environmental, agricultural, and corporate authority would somehow be usurped by enforcement of LEBOR.

The State's abstract, contingent, and hypothetical injuries fail to establish requisite standing. Even if LEBOR were voided in its entirety, nothing would change for the State; it has no redressable injury. Notably, in the state court action recently filed by three Toledo residents against the State (*Ferner, et al. v. State of Ohio*, Lucas County Common Pleas Case No. CI 201902904), the State argues at page 6 of its July 30, 2019 Motion to Dismiss, that the three Toledo residents lack standing to pursue the State because the Toledoans' complaint "point[s] to *no ongoing or planned future enforcement under the Charter Amendment*." See Ex. A attached (emphasis added). For those same reasons, the State lacks a concrete, redressable, injury in fact fairly traceable to the City's alleged conduct.

The State's Complaint is devoid of any allegation that the City's following its procedural processes for citizen initiative petitions has caused any concrete, particularized, or imminent injury to the State. Indeed, the Charter and initiative petition process is based upon the Ohio Constitution. And there is no allegation that the City has taken any action related to any provision under LEBOR since it was passed by voters on February 26, 2019. Accordingly, the Court should deny the State's 12(c) Motion and grant the City's cross-motion under Rule 12(c) because the State's Complaint does not establish requisite standing.

**B.** **The State has failed to establish that LEBOR conflicts with or contradicts the Equal Footing and Public Trust Doctrines, that it violates the Supremacy Clause of the U.S. Constitution, or that it is otherwise preempted by federal or State law.**

The City recognizes that the State holds Lake Erie under the trust doctrine for the benefit of the public and that the State acquired rights to Lake Erie at the time of its statehood under the Equal Footing Doctrine. There is no language in LEBOR that conflicts with or attempts to declare itself superior to federal or State law. The plain language of LEBOR does not specifically reference any federal or State law or regulation, and it incorporates and adopts all laws of the State and rules of the State's agencies.

The State's truncated, selective quotation from Paragraph 6 of LEBOR's Preamble that LEBOR somehow "'elevates' the 'rights' declared in the Charter Amendment to the exclusion of all others" is misleading and taken out of context. (Doc. #34 at 7). The actual language states:

> And since all power of governance is inherent in the people, we, the people of the City of Toledo, declare and enact this Lake Erie Bill of Rights, which establishes irrevocable rights for the Lake Erie Ecosystem to exist, flourish and naturally evolve, a right to a healthy environment for the residents of Toledo, and *which elevates the rights of the community and its natural environment over powers claimed by certain corporations*.

LEBOR, Preamble, ¶6 (Emphasis added). Nothing in the plain language of LEBOR mentions, addresses, or usurps any federal law; and the State offers no support for its conclusory argument that LEBOR somehow violates the Supremacy Clause or any valid federal law or regulation. See Doc. #34 at 7-10. Unlike the local air pollution control district's attempt to terminate a federally-sanctioned emission control testing program, which the federal government had delegated to the state and the state had attempted to delegate its statutory duty to a local agency, in *Ky. Res. Council, Inc. v. United States EPA*, 304 F.Supp.2d 920 (W.D. Ky. 2004), LEBOR includes no language or provision attempting to invalidate any identified federal law. And in spite of its

15

rhetoric, the State fails to allege or establish how any portion of LEBOR violates the Supremacy Clause or federal law.

Nor does the State establish that LEBOR is somehow preempted by State law. LEBOR does not specifically identify any State law or regulation, and in fact, adopts State law and State agency rules—LEBOR just provides additional measures beyond those in State law. The 2020-2021 Budget Bill highlights the lack of State preemption on the subject of the "rights of nature" language the State finds offensive in LEBOR because had State law actually and already regulated or prohibited such rights, then the legislature would not have had to introduce such a measure.

Moreover, the State's 12(c) Motion fails because the State ignores Ohio law providing the City's authority, control, and dominion over the waters, submerged lands, and soil of Lake Erie within its corporate limits, which co-exist with that of the State. *Thomas v. Sanders*, 65 Ohio App.2d 5, 7-8, 413 N.E.2d 1224 (6th Dist. 1979). When a municipality and the State both assert dominion over part of Lake Erie, they "are not required to do so to the exclusion of each other." "There is nothing inconsistent with the city's corporate limits extending to the center of the bay and the holding that the same territory is held in trust by the state." *Id*. at 8.

The City does not dispute that the State has an interest in Lake Erie and the Lake Erie Watershed, the State's laws, the State's agencies and their rules, and the State's duties under federal environmental laws and regulations. But Ohio law also provides that the City has its own interests in and authority to regulate activities—including commercial activities—on the waters and submerged lands of Lake Erie within the City's territorial limits. *See* R.C. 721.04; *Kilburn*, 71 Ohio Misc. 2d at 46. Indeed, the Ohio Attorney General's Office has officially recognized that municipal law enforcement officers "can enforce the laws of Ohio on the waters of Lake Erie that are within the [municipality's] territorial boundaries." 2006 Ohio Op. Atty. Gen. 2-415,

paragraph 1 of the syllabus, and at *7 (finding that the jurisdiction of the Ohio Department of Natural Resource's officers are concurrent with that of municipalities and citing *Kilburn* for the proposition that "there is nothing inconsistent with a city's corporate limits extending two miles out to the center of a bay that is part of Lake Erie and 'the holding that the same territory is held in trust by the state.'").

Under its Code, the City has authority for various aspects of the use and control of water and drinking water, including but not limited to its General Powers involving water as a utility (Charter, Chapter II, Sec. 8), zoning regulations related to flooding (Toledo Municipal Code ("Code"), Title 11),[8] and Regional Water Commission (Charter, Chapter XV). So too, does the City have the authority to regulate businesses within its jurisdiction. See, Code, Part VII (Business Regulation Generally). The State has failed to allege or point to any provision of LEBOR that prohibits regulated activity otherwise authorized by the State. (Doc. #34, Intervenor's 12(c) Motion at 12).

Unlike the municipal ordinance found to be preempted in *State ex rel. Morrison v. Beck Energy Corporation*, 143 Ohio St.3d 271, 2015-Ohio-485 (2015), LEBOR does not require a certain certificate or zoning certificate, does not require the payment of a fee or bond, and does not require a public hearing as a condition of being able to do anything. The *Morrison* Court found that municipal zoning ordinances conflicted with a specific state statute that licensed a company to engage in oil and gas production and drilling within that municipality. *Id*. at ¶¶24-28. The Court also found that the local oil and gas ordinances were in direct conflict with, and preempted by the state statute, because the city ordinances prohibited conduct that the state had authorized, and because the state statute retained "to the exclusion of local governments, the right to regulate all aspects of" oil and gas wells, including permitting. *Id*. at ¶¶29-31. Here, the

---

[8] The Toledo Municipal Code is available at the City's website. *See* https://toledo.oh.gov/government.

State law expressly allows the City to regulate the use of Lake Erie within its jurisdiction, and LEBOR does not extinguish any privilege established by State law. LEBOR does not try to establish the authority to legally designate Lake Erie as distressed. LEBOR does not address coastal management of Lake Erie or set any standards related thereto. LEBOR does not preclude experimental use of Lake Erie, the withdrawal of water from Lake Erie, or set any drinking water standards. LEBOR does not set agriculture, farming, fertilizer, or runoff regulations. LEBOR does not address corporate formation requirements. LEBOR does not discriminate between types of businesses or entities; it generally applies to governments and corporate entities who pollute Lake Erie—public and private actors. The State does not allege or suggest that any of its laws or regulations permit the pollution of Lake Erie. Because the State fails to show how LEBOR is an obstacle to the accomplishment and execution of any federal or State law, its motion for judgment on the pleadings should be denied.

### C. The State's Complaint Fails to State a Claim for Injunctive or Declaratory Relief.

To establish a right to injunctive relief, the State must show: (1) that it "is likely to succeed on the merits," (2) that it "is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Fowler v. Benson*, 924 F.3d 247, 256 (6th Cir. 2019). To obtain a permanent injunction, a party must "establish that it suffered a constitutional violation and will suffer 'continuing irreparable injury' for which there is no adequate remedy at law." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County,* 466 F.3d 391, 394 (6th Cir. 2006). The State requests that the Court grant it permanent injunctive relief. But, it has failed to articulate any irreparable harm by clear and convincing evidence or otherwise. As explained above, additional legislative action by the City would need to occur for LEBOR's provisions to be enforceable. The City has taken no enforcement action regarding any aspect or provision of

18

LEBOR. Accordingly, the State has failed to prove that it has or will suffer any irreparable harm if LEBOR and its aspirational provisions proposed and passed by electors remain part of the City's Charter.

Further, the State's declaratory judgment request under 28 U.S.C. §§2201-2202, fails to satisfy the Sixth Circuit's five factors:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for res judicata'; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk Western R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). The State's declaratory claims would not settle this controversy or clarify the legal relations at issue, given that the State lacks standing, has no injury in fact, and asks the Court to decide issues that are premature and not ripe. Like DFP, the State is attempting to use this lawsuit as "procedural fencing" to obtain a result – the rejection of LEBOR – which Toledoans refused to do at the polls. Further, an alternative remedy exists for questions or disputes about LEBOR through the citizens' initiative petition process and vote of the electorate, as contained in the City's Charter.

## VI. CONCLUSION

The State's Complaint should not proceed against the City because it has no injury in fact fairly traceable to the City's conduct, thereby lacking requisite standing. The State is not entitled to judgment in its favor on its Complaint because its 12(c) Motion fails to specifically identify any portion of LEBOR that conflicts with or is preempted by federal or state law. And although in its 12(c) Motion, the State requests judgment in DFP's favor on DFP's complaint, the State fails to articulate any argument or basis to do so. Based up on the foregoing, the City respectfully requests that the Court enter an Order denying Intervening Plaintiff State of Ohio's Motion for

Judgment on the Pleadings in its entirety. For the foregoing reasons, the City further requests that the Court enter an Order under Fed.Civ.R. 12(c) granting the City judgment on the pleadings and dismissing the State's Complaint against the City in its entirety because the State lacks standing for all claims in its Intervenor's Complaint against the City.

Alternatively, should the Court find that certain provisions of the citizens-initiated LEBOR are unlawful or unconstitutional, the City requests that the Court strike only that provision or those provisions. In making this request, the City reminds the Court that LEBOR contains a severability provision. At the very least, the Court should permit the voiced concerns of Toledo's electorate about the condition of Lake Erie and the Lake Erie watershed as established in LEBOR to remain part of the City's Charter.

Respectfully submitted,

*/s/ Sarah K. Skow*
Gerald R. Kowalski (0022323)
Sarah K. Skow (0081468)
Jennifer A. McHugh (0084842)
SPENGLER NATHANSON P.L.L.
900 Adams Street
Toledo, Ohio  43604-5505
Telephone:  (419) 241-2201
Facsimile:  (419) 241-8599
gkowalski@snlaw.com
sskow@snlaw.com
jmchugh@snlaw.com

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing has been electronically filed this 9th day of August, 2019. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Sarah K. Skow*
Sarah K. Skow

450795