

IN THE COURT OF COMMON PLEAS
LUCAS COUNTY, OHIO

LN

| | |
|---|---|
| MIKE FERNER, *et al.*, | 2019 JUL 30 P 3: 05 |
| Plaintiffs, | Case No. G-4801-CI-0201902904-000 |
| v. | COMMON PLEAS COURT<br>BERNIE QUILTER<br>CLERK OF COURTS |
| STATE OF OHIO, | : Judge Michael R. Goulding |
| Defendant. | : |

## STATE OF OHIO'S MOTION TO DISMISS

The State of Ohio respectfully seeks an order dismissing the Complaint for failure to state a claim for relief under Civ.R. 12(B)(6). Construing the Complaint most favorably to Plaintiffs, it is beyond doubt that there is no set of facts that would entitle Plaintiffs to relief. Accordingly, this Court should dismiss the Complaint. A Memorandum in Support is attached.

Respectfully submitted,

DAVE YOST
Attorney General of Ohio

*Wednesday M. Szollosi*
Daniel J. Martin (0065249)
Amanda M. Ferguson (0089576)
Gregg H. Bachmann (0039531)
Wednesday M. Szollosi (0075655)
Assistant Attorneys General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215
Tel: 614-466-2766; Fax: 614-752-2441
Daniel.Martin@ohioattorneygeneral.gov
Amanda.Ferguson@ohioattorneygeneral.gov
Gregg.Bachmann@ohioattorneygeneral.gov
Wednesday.Szollosi@ohioattorneygeneral.gov

*Attorneys for Defendant, the State of Ohio*

EXHIBIT A

## MEMORANDUM IN SUPPORT

### I. Introduction

This Court should dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. Plaintiffs seek a declaratory judgment against the State as to the lawfulness of a City of Toledo charter amendment, often referred to as the Lake Erie Bill of Rights ("Charter Amendment" or "LEBOR"). Complaint ("Cmplt.") ¶¶ 4, 6, and 10. As part of this action, Plaintiffs wrongly claim that the State's involvement in preexisting litigation to determine the lawfulness of the Charter Amendment violates Oh. Const. Art. I, Sections 1 and 2 and Section 2(a) of the Charter Amendment. Cmplt. ¶ 30. They ask this Court to prevent the State from "seeking or realizing the invalidation of LEBOR through federal court or any other court process," to declare the Charter Amendment valid under Ohio's constitution and laws, and to permanently enjoin any person or entity from abridging rights purportedly granted under the Charter Amendment. Cmplt. ¶¶ 31, (A), (B), and (C).

Plaintiff's Complaint fails for two independent reasons. *First*, Plaintiffs lack standing to bring this lawsuit. Plaintiffs do not allege any concrete harm caused by the State's participation in the preexisting litigation, and any potential harm caused by the invalidation of the Charter Amendment is speculative. In addition, a ruling from this Court on the state constitutional provisions cited in Plaintiffs' Complaint would not preclude a subsequent ruling from the Northern District Federal Court on the separate and distinct federal and state constitutional provisions alleged in that case. *Second*, Plaintiffs lack a legal basis to preclude the State, through its Attorney General, from defending state interests in Lake Erie and state environmental, natural resources, and agriculture laws. For these reasons, the State seeks dismissal of Plaintiffs' Complaint under Civ.R. 12(B)(6).

2

## II. Background

In a February 26, 2019 special election, the City of Toledo approved the Lake Erie Bill of Rights Charter Amendment, codified at Toledo Ord. 497-18. (Attached as Exhibit A). The Charter Amendment purports to grant rights to Toledo residents and to the Lake itself. LEBOR, Sec. 1 (including rights of the Lake Erie and its watershed to "exist, flourish, and naturally evolve;" rights of Toledo residents to "a clean and healthy environment" and a "clean and healthy Lake Erie and Lake Erie ecosystem."). It also prohibits any violation of those rights, purports to invalidate any permit, license, or other authorization that would violate those rights, and allows the City of Toledo and its residents to independently enforce those rights. LEBOR, Sec. 2 and 3. Soon after enactment, the Charter Amendment was challenged by Drewes Farm Partnership in the United States District Court for the Northern District of Ohio for a variety of reasons, including violations of the organization's rights to freedom of speech, to petition the courts, to equal protection, and to due process, and for exceeding its authority under state law. *Drewes Farms Partnership, et al. v. Toledo*, N.D. Ohio No. 19-cv-00434, Dkt. 1 (hereinafter "*Drewes*").

The State intervened in the *Drewes* case, as a Plaintiff, to ensure the protection of its interests. *Drewes*, Dkt. 13, 21, 31. Generally, the State objects to the Charter Amendment's purported conferral of standing to represent Lake Erie, which is separate and distinct from the State's authority over the Lake under state and federal law, and to its express attempt to supersede state and federal laws and permits or approvals issued by the State to facilities in the Lake Erie watershed. Both the State and Drewes Farms have moved for judgment on the pleadings. *Drewes Farms*, Dkt. # 34, 35.

3

## III. Argument

This action should be dismissed for failure to state a claim under Civ.R. 12(B)(6). "[F]or a court to dismiss a complaint for failing to state a claim upon which relief can be granted, it must appear beyond a doubt that the allegations in the complaint can prove no set of facts, which when construed most favorably to the plaintiff would entitle him to relief." *O'Brien v. University Community Tenants Union*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975). With respect to a 12(B)(6) motion, "all the factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party." *Byrd v. Faber*, 57 Ohio St.3d 56, 60, 565 N.E.2d 584 (1991). Even accepting Plaintiffs' inflammatory allegations as true, it is clear that Plaintiffs cannot demonstrate an entitlement to relief as dismissal is supported by several different legal theories.

### A. Plaintiffs lack standing to bring this action.

Declaratory relief is only available to a plaintiff who demonstrates that (1) a real controversy exists between the parties, (2) the controversy is justiciable, and (3) speedy relief is necessary to preserve the rights of the parties. *Haig v. Ohio State Bd. of Edn.*, 62 Ohio St.3d 507, 511, 584 N.E.2d 704 (1992); *Burger Brewing Co. v. Ohio Liquor Control Comm.*, 34 Ohio St.2d 93, 97, 296 N.E.2d 261 (1973). Thus, "[c]ourts have the duty to ensure that plaintiffs plead these elements for purposes of declaratory-judgment actions and that the complaint sufficiently avers injury, causation, and redressability… If a party fails to establish any of the necessary showings to bring the claims, the judge must dismiss the cause." *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22; *see also ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St. 3d 520, 524, 2014-Ohio-2382, 13 N.E.3d 1101.

4

The three components of standing—injury, causation, and redressability—constitute "the irreducible constitutional minimum of standing." *State ex. rel. Food & Water Watch v. State*, 2018-Ohio-555, 100 N.E.3d 391, ¶ 19. Thus, Plaintiffs must show that they have "suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." *Id.* at ¶ 19. Plaintiffs cannot meet this burden.

### 1. Plaintiffs have not identified an injury fairly traceable to the State's allegedly unlawful conduct.

Here, the alleged unlawful conduct is the State's "litigation in federal court to invalidate LEBOR" in violation of Ohio Const. Art I, Sec. 1 and 2 and the Charter Amendment itself. Cmplt. ¶¶ 29, 30. Plaintiffs' requested relief is an order that "enjoins the State from seeking or realizing the invalidation of LEBOR through federal court or other court process" as well as a determination that the Charter Amendment is valid and enforceable. Cmplt. ¶ 31. However, Plaintiffs do not allege an injury that is fairly traceable to the State's allegedly unlawful conduct, i.e., its participation in the *Drewes* lawsuit. The reason is simple: any potential injury is predicated on the Northern District Federal Court's future invalidation of the Charter Amendment, not the State's involvement in the lawsuit. A potential, speculative injury is incompatible with standing in Ohio courts. *See, e.g., Corron v. Corron*, 40 Ohio St.3d 75, 79 (to seek a declaratory judgment "there must be an actual controversy, the resolution of which will confer certain rights or status upon the litigants"). Instead, standing requires "a concrete injury in fact, rather than an abstract or suspected injury." *Orser v. City of Perrysburg*, 2017-Ohio-5843 (citations omitted). The Complaint is devoid of any allegation that the State's participation in the *Drewes* lawsuit caused any injury to Plaintiffs.

Rather, Plaintiffs allege generalized potential harm to Lake Erie and Toledo residents if the Charter Amendment's provisions cannot be enforced. Any such injuries depend on three

contingencies: (1) that the Charter Amendment will be enforced; (2) that such enforcement will alleviate harm to the Lake and Toledo residents; and (3) that enforcement will by stymied by the invalidation of the Charter Amendment as a result of the State's involvement in the *Drewes* lawsuit. These contingent, abstract injuries do not confer standing.

In addition, where "[t]he existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,' [] it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Clifton v. Vill. of Blanchester*, 131 Ohio St.3d 287, 290 (2012). Plaintiffs have not met this burden. The potential invalidation of the Charter Amendment is an outcome squarely within the control of the Northern District Federal Court, not the State.

## 2. The requested relief will not redress Plaintiffs' concerns.

Even if this Court bars the State's participation in the *Drewes* suit and upholds the Charter Amendment, it is not apparent that there would be any meaningful effect on the environmental concerns Plaintiffs raise. First, Plaintiffs point to no ongoing or planned future enforcement under the Charter Amendment. As a result, it is not clear that upholding the Charter Amendment would actually redress a specific harm to the Lake. Second, the State is an intervenor in the *Drewes* case. Barring the State's participation would not affect the ongoing litigation between Drewes Farm Partnership and the City of Toledo. Such an outcome would merely preclude the State from protecting its interests. In addition, a ruling from this Court on the state constitutional provisions cited in Plaintiffs' Complaint would not preclude a subsequent ruling from the Northern District Federal Court on the separate and distinct federal and state

6

constitutional provisions alleged in the complaint filed by Drewes Farm. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) (the pendency of a state court action does not bar a federal proceeding; if the state-court adjudication is completed first, disposition of the federal action is governed by preclusion law).

### B. Plaintiffs cannot be granted an injunction to restrain the State from defending its laws and prevent a constitutional officer from executing his duties.

Plaintiffs seek an order enjoining the State "from seeking or realizing the invalidation of LEBOR through federal court or other court process." Cmplt. ¶ 31. Plaintiffs also seek "[i]ssuance of a permanent injunction against the State of Ohio, any citizen, any person, and any legal or fictitious entity, enjoining them from abridging the rights of Plaintiffs under the Lake Erie Bill of Rights or denying them the right to enforce any provisions of LEBOR against any person, corporation, federal, state or local governmental entity, and any other legal entity." Cmplt. (C). Plaintiffs assert no legally supported basis allowing the requested relief against the State of Ohio and its counsel, the Ohio Attorney General.

#### 1. The State has a substantial interest in defending its laws.

The State of Ohio has a unique and substantial interest in defending its own laws. The U.S. Supreme Court has repeatedly recognized this interest. *See, e.g., Maine v. Taylor*, 477 U.S. 131, 137 (1986) ("[A] State clearly has a legitimate interest in the continued enforceability of its own statutes.") The injunction sought by Plaintiffs seeks to prevent the State of Ohio through its Attorney General from continuing its participation in the *Drewes* litigation, and effectively preclude Ohio, or any other person or entity, from challenging LEBOR in any circumstance, presumably from even mounting a defense in the instant case. By is nature, the State defense here and its claim in the *Drewes* litigation are predicated on defending Ohio's laws.

7

### 2. The Attorney General has an obligation to represent the State's interests.

Plaintiffs cannot be granted relief that prohibits the Ohio Attorney General from joining a lawsuit that involves determinations of state and federal law and that centers around a resource—Lake Erie—that is held by the State as a public trust resource for the benefit of all Ohio citizens. Section 1, Article III of the Ohio Constitution provides that the Attorney General is a constitutional officer. *State ex rel. Crabbe v. Plumb,* 116 Ohio St. 428 (1927). In the same vein, the Ohio General Assembly provides that "[t]he attorney general is the chief law officer for the state and all its departments..." and has a legal obligation to represent the State and its interests. R.C. 109.02; *see also State ex rel. Doerfler v. Price,* 101 Ohio St. 50, 57 (1920) (the Attorney General is "chargeable with such duties as usually pertain to an attorney general, and especially with those delegated to him by the general assembly of Ohio").

The Ohio Supreme Court has spoken to the issue of the Attorney General's inherent common law authority to bring lawsuits. In *State ex rel. Cordray v. Marshall,* 123 Ohio St.3d 229, 2009-Ohio-4986, the Court found that the Attorney General had the authority to bring a writ of prohibition to vacate an entry granting relief from a murder conviction. The Attorney General's statutory as well as common law authority as chief law officer of the State are supported by additional Supreme Court jurisprudence as well. *State ex rel. Little v. Dayton & South-Eastern RR Co.,* 36 Ohio St. 434, 440 (1881) (finding that the attorney general has common law and statutory authority to institute suit without a relator); *State ex rel. Crabbe v. Plumb,* 116 Ohio St. 428, 430, 156 N.E. 457 (1927) (finding the Attorney General had authority to institute a mandamus action against a public officer).

### 3. The Ohio Constitutional provisions cited by Plaintiffs cannot be used to prevent the State or its Attorney General from defending state law.

Plaintiffs do not set out a cognizable basis to seek their requested relief to enjoin the State's legal activities related to LEBOR. Plaintiffs appear to rely on the Article I, Sections 1 and 2 of the Ohio Constitution, which express citizen's inalienable rights and the vesting of power inherently in the people. Cmplt. ¶¶ 23, 25, 30. Plaintiffs assert that by challenging the validity of LEBOR the State has violated a "social contract" between the government and the people they contend is derived under Article I, Sections 1 and 2. Cmplt. ¶ 30. However, those provisions cannot be interpreted to conclude that the State is prohibited from seeking a determination of the lawfulness of a municipal charter provision or that the Attorney General is barred from carrying out his duties as chief legal officer of the State. In fact, Ohio courts have held that Article I, Sections 1 and 2are not self-executing and thus cannot be the foundation for a cause of action. *State v. Williams*, 88 Ohio St. 3d 513, 521-24 (2000) (the "natural law rights" in Article I, Section 1, "in and of themselves, are of no legal force"); *PDU, Inc. v. City of Cleveland*, 2003-Ohio-3671, P17-27 (8th Dist.) (Article I, Section 2 "is not an independent source of self-executing protections"); *Autumn Care Ctr., Inc. v. Todd*, 2014-Ohio-5235, P14 (5th Dist.) (Article I, Section 2 "lacks the completeness required to offer meaningful guidance for judicial enforcement" and thus is not self-executing).

### 4. Similarly, the provisions of LEBOR do not provide a right of recourse against the State.

Plaintiffs claim that, simply by intervening in *Drewes*, Ohio is violating LEBOR itself. They cite to §2(a) of LEBOR, which purports to insulate the provision from any legal challenge. This attempted application of LEBOR against the State underscores the need for the State's involvement in the judicial interpretation of LEBOR. This is especially poignant in the context

of the *Drewes* litigation, where a third party seeks the resolution of important questions of state and federal constitutional law. Ohio cannot remain silent while a federal court considers, among other issues, A) legal issues that directly affect a natural resource controlled by the State, B) conflicts between State law and a local charter, and C) the validity of the State's environmental, natural resources, and agricultural regulations as applied to a portion of the State.

These intuitive reasons to deny Plaintiffs the relief they seek are also bolstered by compelling legal authority: LEBOR has been stayed and, even if it weren't, the provisions of the Charter Amendment on which Plaintiffs rely are unenforceable.

### a. Enforcement of LEBOR has been stayed by stipulation in *Drewes*.

In the pending LEBOR litigation in the Northern District Federal Court, the enforcement of LEBOR was enjoined by agreement of the parties pending further order of the court. Dkt. 9. While Plaintiffs were not parties to that action, the City of Toledo appeared and gave its assent to an injunction. It would be impractical for that court to specify the scope of the injunction by identifying by name, each resident of Toledo who may arguably assert standing to enforce LEBOR. The purpose of the injunction was to maintain the status quo while that court reviews and decides the many constitutional questions raised by LEBOR. Plaintiffs seek to invoke this Court's jurisdiction to enforce LEBOR against the State, notwithstanding the injunction of the LEBOR charter provision, which the City supported. A narrow reading of the Northern District's injunction could result in multifarious and unnecessary litigation, especially given that LEBOR seeks to give blanket standing and subvert the otherwise applicable laws of standing and jurisdiction.

### b. Plaintiffs cannot rely on the Charter Amendment's jurisdiction and standing provisions.

Even in the absence of a stay, Plaintiffs cannot rely on the Charter Amendment for jurisdiction or standing.

#### i. The Ohio General Assembly has exclusive authority to confer jurisdiction.

A municipal charter cannot vest jurisdiction in a common pleas court. *Cupps v. Toledo*, 170 Ohio St. 144, 149-50 (1959). That court's authority derives from state statutes pursuant to Article IV, Section 4 of the Ohio Constitution. *Id.*; Ohio Constitution, Article IV, Section 4(B) (creating "original jurisdiction over all justiciable matters * * * as may be provided by law"). Yet LEBOR manufactures its own "original jurisdiction" that is exclusive to the Lucas County Court of Common Pleas to enforce the "rights and prohibitions" drawn up under the "Lake Erie Bill of Rights." LEBOR Sec. 3(b). Plaintiffs' assertion that jurisdiction is proper in Lucas County pursuant to LEBOR does not comport with Article IV, Section 4(B). The "judicial power of the state" must be "established by law," and that law-making function is entrusted to the exclusive authority of the General Assembly. Ohio Constitution, Article IV, Section 1; Ohio Constitution, Article II, Section 1.

Ohio's environmental, agriculture, and natural resources laws contain multiple provisions that touch upon and regulate the water quality concerns Plaintiffs express. Those laws confer jurisdiction in various courts of common pleas throughout Ohio, including the counties that border or overlie Lake Erie and that lie within the Lake Erie watershed. The General Assembly has declared that civil jurisdiction to enforce Ohio's environmental laws is limited to the provisions under R.C. 6109.32, 6109.33, 6111.07, and 6111.09 that provide for enforcement actions to be brought by the Attorney General in courts of competent jurisdiction. The same

11

applies to enforcing Ohio's agricultural laws under R.C. 903.16, 903.30, and 939.07. Enforcement of Ohio's Department of Natural Resources Division of Water Resources laws is limited to the "the court of common pleas of Franklin county or the county where the applicable facility is located" pursuant to R.C. 1522.20(C). Because the Ohio Constitution allows only the General Assembly to confer jurisdiction over justiciable matters, the Plaintiffs' reliance on LEBOR Sec. 3(b)) to vest jurisdiction in the Lucas County Court of Common Pleas over their various claims and requests for relief is inconsistent with and/or conflicts with these state laws and Ohio's Constitution. Thus, jurisdiction based on any provision of LEBOR is defective.

### ii. The Ohio General Assembly confers, and courts determine, standing to sue.

A similar analysis under Articles II and IV of the Ohio Constitution applies to LEBOR's standing provisions. LEBOR purports to confer standing to any Toledo resident to enforce its provisions, in the name of the Lake Erie ecosystem, in the Lucas County Court of Common Pleas. LEBOR, Sec. 3(b) and (d). This conflicts with state law. All the courts of common pleas referenced in R.C. 903.16, 903.30, 1522.20(C), 6109.32, 6109.33, 6111.07, and 6111.09—and not exclusively the Lucas County Court of Common Pleas—have jurisdiction to determine legal standing in any given case.

LEBOR seeks to create an unlawful legal status different from that recognized by the United States and Ohio—and contrary to title in the state of Ohio—by purporting to give Lake Erie its own right to bring a legal action vicariously through Toledo or its citizens. LEBOR, Sec. 3(b) and (d); *compare* R.C. 1506.10 ("It is hereby declared that the waters of Lake Erie * * * do now belong and have always, since the organization of the state of Ohio, belonged to the state as proprietor in trust for the people of the state.") The City of Toledo cannot, through its charter,

12

dictate the law of standing for any cause of action alleging that "rights" under the LEBOR have been violated.

Because the Ohio Constitution allows only the General Assembly to confer and Ohio courts to determine standing in justiciable matters, the LEBOR's act of creating legal standing on "the Lake Erie Ecosystem as the real party in interest" is preempted by, inconsistent with, and/or conflicts with state law and Ohio's Constitution. Therefore, Plaintiffs cannot simply rest on LEBOR to demonstrate standing, but must demonstrate the usual legal elements, including a particularized injury. Here, Plaintiffs rely on nothing more than their residency status to confer standing via LEBOR in the text of their Complaint. That, as explained here, is not how Ohio law works.

### C. In the event this Court does not dismiss this case, a stay is appropriate.

As set forth above, dismissal of this case is appropriate. However, if this Court does not dismiss Plaintiffs' Complaint, in the interest of judicial economy and the efficient use of resources, the State requests a stay of this case pending the resolution of the legality of the Charter Amendment in *Drewes*. "A motion for a stay of proceedings is, of course, primarily addressed to the court's discretion. When such a stay is sought consideration is pertinent to '* * * whether it is in the state or in the federal forum that a more complete disposition of the issues may be obtained and whether it is the federal or the state court that possesses a greater familiarity and expertise with the trial of such issues.'" *State ex rel. Zellner v. Board of Education, 34 Ohio St.2d 199*. Because the Charter Amendment would affect multiple states and an international boundary, and seeks to veto permits and approvals made pursuant to federally delegated programs, a comprehensive resolution of its lawfulness may be provided by the Northern District, which is already is in the process of receiving dispositive pleadings. It is appropriate to

13

stay this case until the Northern District Federal Court has completed their review and rendered a final decision.

## IV. Conclusion

For the reasons set forth above, the State requests this Court to Dismiss Plaintiffs' Complaint or, in the alternative, stay this case pending the resolution of *Drewes* by the Northern District Federal Court.

Respectfully submitted,

DAVE YOST
Attorney General of Ohio

*Wednesday M. Szollosi*
Daniel J. Martin (0065249)
Amanda M. Ferguson (0089576)
Gregg H. Bachmann (0039531)
Wednesday M. Szollosi (0075655)
Assistant Attorneys General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215
Tel: 614-466-2766; Fax: 614-752-2441
Daniel.Martin@ohioattorneygeneral.gov
Amanda.Ferguson@ohioattorneygeneral.gov
Gregg.Bachmann@ohioattorneygeneral.gov
Wednesday.Szollosi@ohioattorneygeneral.gov

*Attorneys for Defendant, the State of Ohio*

## CERTIFICATE OF SERVICE

I hereby certify that on July **30th**, 2019, the foregoing was served by regular, U.S. mail, postage prepaid to the following:

Mike Ferner
2975 113th St.
Toledo, OH 43611

Bryan Twitchell
2509 Aldringham
Toledo, OH 43606

John Michael Durback
4134 Stannard Drive
Toledo, OH 43613

_____
Wednesday M. Szollosi (0075655)
*Attorney for Defendant*

15

Lake Erie Bill of Rights Charter Amendment
Department of Law

### ORD. 497-18

**Providing for the submission to the electors of the City of Toledo at a special election on February 26, 2019, an amendment to the Charter of the City of Toledo for the purpose of adding a new Section to the Charter entitled "Lake Erie Bill of Rights"; and declaring an emergency.**

Be it ordained by the Council of the City of Toledo:

SECTION 1. Whereas, the Clerk of Council has received the adequate number of petition signatures as required by law for the following proposed Charter amendment to be submitted to the electors of the City of Toledo and pursuant to the Charter and the Constitution of the State of Ohio, the Toledo City Council hereby presents the proposed amendment for consideration and for certification to the Board of Elections of Lucas County, Ohio.

SECTION 2. That the amendment to the Charter of the City of Toledo, as hereinafter set forth, be submitted to the electors of said City at a special election to be held on February 26, 2019, pursuant to Ohio law and the Charter of the City of Toledo.

SECTION 3. That the amendment reads as follows:

### "LAKE ERIE BILL OF RIGHTS

### ESTABLISHING A BILL OF RIGHTS FOR LAKE ERIE, WHICH PROHIBITS ACTIVITIES AND PROJECTS THAT WOULD VIOLATE THE BILL OF RIGHTS

*We the people of the City of Toledo* declare that Lake Erie and the Lake Erie watershed comprise an ecosystem upon which millions of people and countless species depend for health, drinking water and survival. We further declare that this ecosystem, which has suffered for more than a century under continuous assault and ruin due to industrialization, is in imminent danger of irreversible devastation due to continued abuse by people and corporations enabled by reckless government policies, permitting and licensing of activities that unremittingly create cumulative harm, and lack of protective intervention. Continued abuse consisting of direct dumping of industrial wastes, runoff of noxious substances from large scale agricultural practices, including factory hog and chicken farms, combined with the effects of global climate change, constitute an immediate emergency.

*We the people of the City of Toledo* find that this emergency requires shifting public governance from policies that urge voluntary action, or that merely regulate the amount of harm allowed by law over a given period of time, to adopting laws which prohibit activities that violate fundamental rights which, to date, have gone unprotected by government and suffered the indifference of state-chartered for-profit corporations.

1

EXHIBIT A

*We the people of the City of Toledo* find that laws ostensibly enacted to protect us, and to foster our health, prosperity, and fundamental rights do neither; and that the very air, land, and water – on which our lives and happiness depend – are threatened. Thus it has become necessary that we reclaim, reaffirm, and assert our inherent and inalienable rights, and to extend legal rights to our natural environment in order to ensure that the natural world, along with our values, our interests, and our rights, are no longer subordinated to the accumulation of surplus wealth and unaccountable political power.

*We the people of the City of Toledo* affirm Article 1, Section 1, of the Ohio State Constitution, which states: "All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."

*We the people of the City of Toledo* affirm Article 1, Section 2, of the Ohio State Constitution, which states: "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly."

*And since all power of governance is inherent in the people,* we, the people of the City of Toledo, declare and enact this Lake Erie Bill of Rights, which establishes irrevocable rights for the Lake Erie Ecosystem to exist, flourish and naturally evolve, a right to a healthy environment for the residents of Toledo, and which elevates the rights of the community and its natural environment over powers claimed by certain corporations.

## Section 1 – Statements of Law – A Community Bill of Rights

(a) *Rights of Lake Erie Ecosystem.* Lake Erie, and the Lake Erie watershed, possess the right to exist, flourish, and naturally evolve. The Lake Erie Ecosystem shall include all natural water features, communities of organisms, soil as well as terrestrial and aquatic sub ecosystems that are part of Lake Erie and its watershed.

(b) *Right to a Clean and Healthy Environment.* The people of the City of Toledo possess the right to a clean and healthy environment, which shall include the right to a clean and healthy Lake Erie and Lake Erie ecosystem.

(c) *Right of Local Community Self-Government.* The people of the City of Toledo possess both a collective and individual right to self-government in their local community, a right to a system of government that embodies that right, and the right to a system of government that protects and secures their human, civil, and collective rights.

(d) *Rights as Self-Executing.* All rights secured by this law are inherent, fundamental, and unalienable, and shall be self-executing and enforceable against both private and

2

public actors. Further implementing legislation shall not be required for the City of Toledo, the residents of the City, or the ecosystems and natural communities protected by this law, to enforce all of the provisions of this law.

### Section 2 – Statements of Law – Prohibitions Necessary to Secure the Bill of Rights

(a) It shall be unlawful for any corporation or government to violate the rights recognized and secured by this law. "Corporation" shall include any business entity.

(b) No permit, license, privilege, charter, or other authorization issued to a corporation, by any state or federal entity, that would violate the prohibitions of this law or any rights secured by this law, shall be deemed valid within the City of Toledo.

### Section 3 – Enforcement

(a) Any corporation or government that violates any provision of this law shall be guilty of an offense and, upon conviction thereof, shall be sentenced to pay the maximum fine allowable under State law for that violation. Each day or portion thereof, and violation of each section of this law, shall count as a separate violation.

(b) The City of Toledo, or any resident of the City, may enforce the rights and prohibitions of this law through an action brought in the Lucas County Court of Common Pleas, General Division. In such an action, the City of Toledo or the resident shall be entitled to recover all costs of litigation, including, without limitation, witness and attorney fees.

(c) Governments and corporations engaged in activities that violate the rights of the Lake Erie Ecosystem, in or from any jurisdiction, shall be strictly liable for all harms and rights violations resulting from those activities.

(d) The Lake Erie Ecosystem may enforce its rights, and this law's prohibitions, through an action prosecuted either by the City of Toledo or a resident or residents of the City in the Lucas County Court of Common Pleas, General Division. Such court action shall be brought in the name of the Lake Erie Ecosystem as the real party in interest. Damages shall be measured by the cost of restoring the Lake Erie Ecosystem and its constituent parts at least to their status immediately before the commencement of the acts resulting in injury, and shall be paid to the City of Toledo to be used exclusively for the full and complete restoration of the Lake Erie Ecosystem and its constituent parts to that status.

3

### Section 4 – Enforcement – Corporate Powers

(a) Corporations that violate this law, or that seek to violate this law, shall not be deemed to be "persons" to the extent that such treatment would interfere with the rights or prohibitions enumerated by this law, nor shall they possess any other legal rights, powers, privileges, immunities, or duties that would interfere with the rights or prohibitions enumerated by this law, including the power to assert state or federal preemptive laws in an attempt to overturn this law, or the power to assert that the people of the City of Toledo lack the authority to adopt this law.

(b) All laws adopted by the legislature of the State of Ohio, and rules adopted by any State agency, shall be the law of the City of Toledo only to the extent that they do not violate the rights or prohibitions of this law.

### Section 5 – Effective Date and Existing Permit Holders

This law shall be effective immediately on the date of its enactment, at which point the law shall apply to any and all actions that would violate this law regardless of the date of any applicable local, state, or federal permit.

### Section 6 – Severability

The provisions of this law are severable. If any court decides that any section, clause, sentence, part, or provision of this law is illegal, invalid, or unconstitutional, such decision shall not affect, impair, or invalidate any of the remaining sections, clauses, sentences, parts, or provisions of the law. This law would have been enacted without the invalid sections.

### Section 7 – Repealer

All inconsistent provisions of prior laws adopted by the City of Toledo are hereby repealed, but only to the extent necessary to remedy the inconsistency."

SECTION 4. That the foregoing amendment shall take effect immediately upon approval by the electors of the foregoing amendment and in accordance with provisions in the said amendment. The Clerk of Council is hereby ordered and directed to provide a copy hereof to the Ohio Secretary of State, within thirty (30) days after such vote of approval by the electors.

SECTION 5. The Clerk of Council is hereby ordered and directed to certify to the Board of Elections of Lucas County, Ohio, the enactment of this Ordinance for the submission of the aforesaid amendment at an election to be held at the time hereinabove mentioned, and the Clerk is directed to request the said Board of Elections to provide for the submission of the question of adopting the said amendment at the said election. The Clerk of Council is further ordered and directed to cause the publication of the full text of the proposed charter amendment once a week for not less than two (2) consecutive weeks in a newspaper published in the City of Toledo, with the first publication thereof being at least fifteen (15) days prior to the election at which the amendment is to be submitted to the

electors.

SECTION_6. It is hereby found and determined that all formal actions of this Council concerning and relating to the Adoption of this Ordinance were taken in an open meeting of this Council, and that all deliberations of this Council and any of its committees that resulted in such formal action were in meetings open to the Public, in compliance with all legal requirements for open meetings, including section 121.22, Ohio Revised Code.

SECTION_7. That this Ordinance hereby is declared to be an emergency measure and shall be in force and effect from and after its adoption. The reason for the emergency lies in the fact that same is necessary for the immediate preservation of the public peace, health, safety and property, and for the further reason that the Ordinance must be immediately effective in order to permit the question of the aforesaid Charter amendment to be submitted at the next available election pursuant to Ohio law; wherefore this Ordinance shall be in force and effect immediately upon its adoption.

Vote on emergency clause: yeas 11, nays 0.

Passed: December 4, 2018, as an emergency measure: yeas 11, nays 0.

Attest:
Gerald E. Dendinger          Matt Cherry
Clerk of Council             President of Council

Approved:                    December 7, 2018
                             Wade Kapszukiewicz
                             Mayor

5