**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO,
WESTERN DIVISION**

| | | |
|---|---|---|
| DREWES FARM PARTNERSHIP, | : | |
| Plaintiff, | : | |
| and | : | |
| STATE OF OHIO, EX REL. YOST, | : | |
| Intervenor-Plaintiff, | : | |
| | : | CASE NO. 3:19-cv-00434-JZ |
| v. | : | |
| | : | JUDGE JACK ZOUHARY |
| CITY OF TOLEDO, | : | |
| Defendant. | : | |

**STATE OF OHIO'S REPLY IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS
AND OPPOSITION TO DEFENDANT'S CROSS MOTION
FOR JUDGMENT ON THE PLEADINGS**

## I.    INTRODUCTION

The City of Toledo advances an untenable position: that its residents can adopt an amendment to its charter that conflicts with Ohio's constitutional limitations on municipal authority as well as state and federal law, yet the State has no recourse against the City. LEBOR is part of the City's charter and the City doesn't argue that there is another party better situated to defend it. Instead, the City argues that, even though it certified LEBOR to the county board of

elections for placement on the ballot, it cannot be sued by the State for its adoption.   That is not the law.

The City's fixes its aim on its legal authority as a municipality. But its position cannot be reconciled with the clear limits on municipal authority under Ohio Const. art. XVIII, §§ 3 and 7. The City also gives scant weight to LEBOR's text that would render meaningless state and federal law. Its position would elevate municipal authority over that of state and federal governments. That, too, is not how the law works.

The State's position does not undermine municipal authority or render the City's charter meaningless. What the State does ask the Court to do, which the City's argument would compromise, is to protect the purposeful balance of power under Ohio's constitution. The hierarchy of state and federal law applied to the text of LEBOR illustrates how this balance works. As set forth below and consistent with the State's motion, the State is entitled to a favorable judgment on the pleadings.

## II.    ARGUMENT

### A.  The State has standing to enforce its laws and protect its interests.

To establish standing, the State must show that it has "suffered some actual or threatened injury as a result of conduct by [the City], that the injury is traceable to the challenged action and that the injury can be redressed by a decision in [its] favor." *Kelley v. Selin*, 42 F.3d 1501, 1508 (6th Cir. 1995).  It is well established that a litigant does not have to "await the consummation of threatened injury to obtain preventive relief." *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923).  Rather, a certainly impending injury is sufficient. *Id.*

LEBOR took effect on the date of its enactment and requires no further implementing legislation prior to enforcement by the City, its residents, or the ecosystems and natural

communities protected by it.  LEBOR Sec. 1 and 5.  Thus, as of February 26, 2019, the State is strictly liable for any "activities that violate the rights of the Lake Erie Ecosystem." LEBOR Sec. 3(c).  In addition, LEBOR purports to invalidate all state laws and agency rules, as well as any applicable local, state, or federal permits,that violate LEBOR as of its effective date.  LEBOR Sec. 4 and 5.

The text of LEBOR is telling.  It is undisputed that the State is one of the primary targets of the charter amendment.  The preamble to LEBOR asserts that Lake Erie is "in imminent danger of irreversible devastation" due to "reckless government policies, permitting and licensing" and that it has "gone unprotected by government."  While the City disclaims its intent to enforce LEBOR, it simultaneously accuses the State of "not [taking] corrective action to sufficiently address and mitigate the sources of pollution in Lake Erie," "substantially failing to comply with its duties under the Clean Water Act," and asserts that "the State's failure to fulfill its duties under federal and State laws led to LEBOR.  Doc. 48 at 1, 5, and 11.  As the City notes, the State is the defendant in a pending lawsuit for violating LEBOR based solely on its participation in this case.  *Ferner v. State*, No. G-4801-CI-0201902904-000 (Lucas C.P. filed June 27, 2019) (citing LEBOR as the basis for an action against the State).  Further, all of the above cited allegations by the City give rise to claims under LEBOR, which could be brought by any or all of the approximately 275,000 residents of Toledo.  *See* LEBOR Sec. 2 and 3.  The State would also be a necessary party to any LEBOR lawsuit against a private party that seeks to use a lawfully issued State permit as a defense.  The State has suffered both actual and threatened harms by the adoption of LEBOR, and it would be unreasonable to force it to defend innumerous lawsuits based on provisions that are unconstitutional on their face.

Telling as well is the City's focus on the charter amendment process rather than the effects of LEBOR written into the city's charter. While the City claims it did not draft or prepare LEBOR, it did enact Ordinance 497-18, which certified the measure to the board of elections for placement on the ballot. *See* Cmplt., Exh. A; *State ex rel. Abernathy v. Lucas Cty. Bd. of Elections*, 156 Ohio St. 3d 238, 238 (2019). The Ohio Supreme Court found that Toledo's city council had "sole authority to determine whether the petition satisfie[d] the legal requirements for submission to the voters" and needn't submit the issue "unless satisfied of the sufficiency of the petitions." *Id.* at 240. The City's involvement in LEBOR wasn't passive; it exercised its authority by certifying LEBOR to the board of elections. *State ex rel. Hinchliffe v. Gibbons*, 156 N.E. 455, 456 (1927) ("A submission by the legislative authority clearly implies, if it does not definitely express, that some power and some duty is intrusted [sic] to that legislative authority."); *Abernathy*, 156 Ohio St. at 238 (county board of elections lacked authority to refuse to submit LEBOR to the electors despite believing it to be unconstitutional). The City is now saddled with its amended charter language.

Perhaps more importantly, the City is the proper party to enforce the content of its charter and the expressed interest of its electorate. The City cannot divorce itself from its own charter—the charter is "basically the constitution of the municipality." *Cleveland ex rel. Neelon v. Locher*, 266 N.E.2d 831, 833 (1971). And it is not uncommon for the City to sue to enforce the terms of its charter. *See, e.g., State ex rel. Toledo v. Lucas County Bd. of Elections*, 765 N.E.2d 854 (2002); *Toledo v. State*, 2008-Ohio-1957 (Ohio Ct. App.). That authority must cut both ways; it, too, can be sued.

A court's ruling on the issues raised by the State is the only means to redress the harms caused by LEBOR, including but not limited to the purported invalidation of its laws, rules, and

4

permits, infringement on its authority over Lake Erie, and exposure to frivolous lawsuits. Although the Ohio General Assembly recently passed legislation that would restrict lawsuits on behalf of nature or an ecosystem, that would not necessarily address all of the issues raised in the State's Complaint.  Rather, clarification of the applicability or constitutionality of a law is squarely within the purview of the Declaratory Judgment Act.  *See, e.g., MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-134 (2007).

### B. This Court can resolve the federal and state preemption claims even if the State lacks standing.

This Court need not consider the State's standing if it resolves this case on the federal and/or state preemption claims raised by both Plaintiff Drewes Farm Partnership and Intervenor-Plaintiff State of Ohio.  This is because an intervenor is not required to have independent standing to assert claims for the same relief sought by the plaintiff.  *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994); *cf. Town of Chester v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1651 (2017) (an intervenor as of right must demonstrate Article III standing *if it seeks additional relief beyond that which the plaintiff requests*).  Thus, the claims raised and relief requested by both Plaintiff Drewes Farm Partnership and Intervenor-Plaintiff State of Ohio can be resolved if either party has standing.  *Id.* ("For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a co-plaintiff, or an intervenor of right.").

### C. The City lacks concurrent jurisdiction over Lake Erie.

The City overstates its legal authority in regard to Lake Erie.  The General Assembly has narrowly carved out a municipality's limited interest in the shore and waters of the Lake – to construct docks, piers, and other improvements "in aid of navigation and water commerce." Ohio Rev. Code 721.04.  This statute provides no authority over pollution control and expressly

reserves to the State authority over "[a]ll mineral rights or other natural resources existing in the soil or waters in such territory." *Id.*  In fact, the case cited by the City as its basis for concurrent jurisdiction actually provides the opposite: "[A]ny acts of ownership or dominion over the waters and subaqueous terrain of Sandusky Bay [within Lake Erie] by the city of Sandusky, including the filing of the town plat and the acts of incorporation, *have been done subject to the superior authority of the state of Ohio*" (emphasis added).  *Thomas v. Sanders*, 413 N.E.2d 1224, 1228 (Ohio Ct. App. 1979).  LEBOR, on the other hand, has nothing to do with aiding navigation or water commerce—it has everything to do with water pollution control.

### D.  LEBOR cannot coexist with state law.

The City's argument that LEBOR does not attempt to replace or supplant state or federal law falls flat in light of LEBOR's text.  *Compare* Doc. 48 at 11-12 *with* LEBOR Sec. 2(b) and 4(b).  If LEBOR were consistent with state and federal law, significant portions of the amendment would have no purpose.  For example, Section 4(b) provides that all state laws and rules "shall be the law of the City of Toledo *only to the extent that they do not violate the rights or prohibitions of [LEBOR]*" (emphasis added).  Similarly, Section 2(b) purports to invalidate any federal- or state-issued "permit, license privilege, charter, or other authorization" that would violate the prohibitions of LEBOR.   The clear text of LEBOR cannot be disregarded, rather it is the "duty of [the] court to give effect to the words used."  *Cleveland Elec. Illuminating Co. v. Cleveland*, 524 N.E.2d 441, 444 (1988).

These provisions cannot be read in concert with state or federal law.  Federal and state laws apply throughout Ohio, yet Toledo seeks to limit those laws within its bounds.  It cannot do so.  *State ex rel. Paluf v. Feneli*, 630 N.E.2d 708, 711 (1994) ("The provisions of a home rule charter derive their authority from the Ohio Constitution itself, which is the source and, together

6

with the Constitution of the United States, is the measure of the extent of the validity of the provisions."); *Am. Fin. Servs. Ass'n v. Cleveland,* 858 N.E.2d 776, 787 (2006) ("It is a fundamental principle of Ohio law that, pursuant to the 'statewide concern' doctrine, a municipality may not, in the regulation of local matters, infringe on matters of general and statewide concern.")  While the City hangs its hat on the fact that LEBOR doesn't identify specific state or federal laws to be invalidated, that is only because LEBOR purports to invalidate *all* of them.  *Compare* Doc. 48 at 22-23 *with* LEBOR Sec. 2(a), 3(a) and (c), 4(b).

### E. Municipal authority, whether exercised by a city council or by citizen initiative, is not unfettered.

The amicus brief filed by Toledoans for Safe Water is premised on the existence of a fundamental constitutional right to "local community self-government" that purportedly trumps the express restrictions on municipal authority under Ohio's Constitution.  *Compare* Ohio Const. art. XVIII, §§ 3 and 7 *with* Doc. 51 at 20-22.  In a similar vein, the City's response implies that the State seeks to violate the constitutional rights of its residents.  Doc. 48 at 2, 6-7.  Yet, the Ohio Supreme Court has routinely recognized Ohio's constitutional limitations on municipal authority.  *See, e.g., Am. Fin. Servs. Ass'n,* 858 N.E.2d at 786-791 (explaining the distinction between state and municipal authority); *State ex rel. Morrison v. Beck Energy Corp.*, 37 N.E.3d 128, 133-138 (2015); *State ex rel. Expen v. Wood Cty. Bd. of Elections*, 154 Ohio St. 3d 1, 2 (2017) ("The limitations on municipal lawmaking in Article XVIII, Section 3 apply with equal force to municipal charter provisions.").  These same limits apply to citizen initiated proposals. *See* Ohio Const. art. II, Sec. 1(f); *Schmitt v. LaRose*, _____ F.3d _____, 2019 U.S. App. LEXIS 23594 (6th Cir. 2019) (recognizing restrictions on citizen initiated ballot initiatives). Thus, the law is written to preserve the purposeful balance of power under Ohio's constitution.

## III.     CONCLUSION

Because the City has failed to rebut the State's arguments for judgment on the pleadings, the State is entitled to its requested relief: a judgment declaring LEBOR to be void and enjoining its enforcement. Likewise, Defendant's Cross Motion for Judgment on the Pleadings must be denied.

Respectfully submitted,

DAVE YOST
Attorney General of Ohio

/s/Daniel J. Martin
Daniel J. Martin (0065249)
Amanda M. Ferguson (0089576)
Gregg H. Bachmann (0039531)
Assistant Attorneys General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215
Tel: 614-466-2766; Fax: 614-752-2441
Daniel.Martin@ohioattorneygeneral.gov
Amanda.Ferguson@ohioattorneygeneral.gov
Gregg.Bachmann@ohioattorneygeneral.gov

*Attorneys for Intervenor-Plaintiff, the State of Ohio*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2019, the foregoing was filed electronically through the Court's CM/ECF system, causing a copy of the same to be served by electronic mail upon all counsel of record.

/s/Daniel J. Martin
Daniel J. Martin (0065249)
*Attorney for Intervenor-Plaintiff*