**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DREWES FARMS PARTNERSHIP, | ) | Case No. 3:19-cv-00434-JZ |
| | ) | |
| Plaintiff, | ) | Hon. Jack Zouhary |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF TOLEDO, OHIO, | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT CITY OF TOLEDO'S COMBINED REPLY IN SUPPORT OF**
**ITS CROSS-MOTION UNDER RULE 12(c) FOR JUDGMENT ON THE**
**PLEADINGS AS TO DREWES FARMS PARTNERSHIP (DOC. #47) AND**
**REPLY IN SUPPORT OF ITS CROSS-MOTION UNDER CIVIL RULE 12(c)**
**AS TO THE STATE OF OHIO (DOC. #48)**

---

Gerald R. Kowalski (0022323)
Sarah K. Skow (0081468)
Jennifer A. McHugh (0084842)
SPENGLER NATHANSON P.L.L.
900 Adams Street
Toledo, Ohio  43604-5505
Telephone:  (419) 241-2201
Facsimile:  (419) 241-8599
gkowalski@snlaw.com
sskow@snlaw.com
jmchugh@snlaw.com

*Counsel for Defendant, City of Toledo, Ohio*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

LOCAL RULE 7.1 CERTIFICATION .................................................................. v

THE CITY'S COMBINED REPLY IN SUPPORT OF ITS CROSS-MOTION
UNDER RULE 12(c) FOR JUDGMENT ON THE PLEADINGS AS TO
DREWES FARMS PARTNERSHIP (DOC. #47) AND REPLY IN SUPPORT
OF ITS CROSS-MOTION UNDER CIVIL RULE 12(c) AS TO THE STATE
OF OHIO (DOC. #48) ..........................................................................................1

I.      DFP's and the State's Complaints Should Be Dismissed Because
        Each Lacks Standing. ..............................................................................1

        A.      DFP and the State Have Failed to Satisfy Their Respective
                Burdens to Establish Standing....................................................... 2

        B.      DFP Has Failed to Meet Its Burden to Establish Standing. ......... 3

        C.      The State Has Failed to Meet Its Burden to Establish Standing. ................. 9

II.     DFP and the State Continue to Ignore the Fundamental Rights of
        Toledoans and the Critical Importance of the Citizens-Initiative
        Process and the Vote of an Electorate.....................................................13

III.    The State's Complaint Also Fails on Its Merits and Should Be
        Dismissed. ............................................................................................ 14

IV.     DFP's Complaint Also Fails on Its Merits and Should Be Dismissed. ..................17

V.      Conclusion. ........................................................................................... 19

CERTIFICATE OF SERVICE ...........................................................................20

## TABLE OF AUTHORITIES

### CASES

*Am. Fin. Servs. v. Cleveland,*
    112 Ohio St.3d 170, 2006-Ohio-6043 ...................................................................... 9

*Associated Builders & Contractors v. Perry,*
    16 F.3d 688 (6th Cir. 1994) ...................................................................................12

*Berkley v. Common Council of City of Charleston,*
    63 F.3d 295 (4th Cir. 1995) ................................................................................... 18

*Carroll Weir Funeral Home v. Miller,*
    2 Ohio St.2d 189, 207 N.E.2d 747 (1965) ............................................................... 6

*City of Canton v. Harris,*
    489 U.S. 378 (1989) ............................................................................................... 18

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) .......................................... 2

*Commonwealth of Pennsylvania v. State of West Virginia,*
    262 U.S. 553, 43 S.Ct. 658 (1923) ..........................................................................12

*Environmental Law and Policy Center v. U.S. Environmental Agency,*
    349 F.Supp.3d 703 (N.D. Ohio 2018) ...............................................................10, 16

*Federal Gas & Fuel Co. v. City of Columbus,*
    96 Ohio St. 530, 118 N.E. 103 (1917) .................................................................... 14

*Ferner, et al. v. State of Ohio,*
    Lucas County Court of Common Pleas
    Case No. G-4801-CI-0201902904-000 .................................................................... 11

*Grand Trunk Western R. Co. v. Consol. Rail Corp.,*
    746 F.2d 323 (6th Cir. 1984) ................................................................................. 19

*Greater Cincinnati Coalition for the Homeless v. City of Cincinnati,*
    56 F.3d 710 (6th Cir. 1995) ................................................................................. 2, 6

*Huff v. TeleCheck Services, Inc.,*
    923 F.3d 458 (6th Cir. 2019) ...................................................................................1

*Kelley v. Selin,*
    42 F.3d 1501 (6th Cir. 1995) ............................................................................ 11, 12

ii

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ............................................. 2

*Monell v. Dept. of Social Services,*
    436 U.S. 658 (1978) ................................................................................................... 18

*Muffett v. City of Yakima,*
    E.D. Wash. No. CV-10-3092-RMP, 2012 WL 2915472 (July 17, 2012) ............... 18

*Musson v. Theatrical, Inc. v. Federal Exp. Corp.,*
    89 F.3d 1244 (6th Cir. 1998) ................................................................................... 19

*Perry v. McGinnis,*
    209 F.3d 597 (6th Cir. 2000) ..................................................................................... 8

*Sampson v. Murray,*
    415 U.S. 61, 94 S.Ct.937 (1974) .............................................................................. 19

*Spokeo, Inc. v. Robins,*
    136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), <u>as revised</u> (May 24, 2016) ...................... 2

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ................................................................................................... 6

*Swepi, Ltd. P'ship v. Mora Cty.,*
    81 F.Supp.3d 1075 (D.N.M. 2015) ........................................................................... 7

*Warth v. Seldin,*
    422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ............................................ 1, 7

### FEDERAL STATUTES

28 U.S.C. §1367(c)(3) ........................................................................................................... 19

### LOCAL RULES

Local Rule 7.1 ....................................................................................................................... iv

### STATE OF OHIO CONSTITUTION

Ohio Const. Art. I, §2; Art. II, §§1, 1a .............................................................................. 14

Ohio Const. Art. XVIII, §2 ................................................................................................. 15

Ohio Const. Art. XVIII, §3 ................................................................................................. 15

Ohio Const. Art. XVIII, §7 ................................................................................................. 15

Ohio Const. Art. XVIII, §9 .................................................................................................15

## OHIO STATUTES

O.R.C. §721.04 ................................................................................................................ 16

## CITY OF TOLEDO CHARTER

Charter, Chapter II, Sec. 8 ...............................................................................................13

Charter, Chapter XV ........................................................................................................13

## TOLEDO MUNICIPAL CODE

Toledo Municipal Code, Part 7 .........................................................................................13

Toledo Municipal Code, Part 11 ......................................................................................13

Toledo Municipal Code, Part 9, Chapter 963 ............................................................. 13, 17

Toledo Municipal Code, Part 9, Chapter 963, Section 25 ............................................... 18

Toledo Municipal Code, Part 9, Chapter 963, Section 99 ............................................... 18

iv

## **LOCAL RULE 7.1 CERTIFICATION**

In accordance with the requirements of Local Rule 7.1, counsel for Defendant, City of Toledo, Ohio, certifies that this case has not yet been assigned to a track, and that the City's attached Combined Reply in Support of Its Cross-Motion under Rule 12(c) for Judgment on the Pleadings as to Drewes Farms Partnership (Doc. #47) and Reply in Support of Its Cross-Motion under Civil Rule 12(C) as to the State of Ohio (Doc. #48) complies with the 20-page limitation for unassigned cases provided in Local Rule 7.1.

**THE CITY'S COMBINED REPLY IN SUPPORT OF ITS CROSS-MOTION UNDER RULE 12(c) FOR JUDGMENT ON THE PLEADINGS AS TO DREWES FARMS PARTNERSHIP (DOC. #47) AND REPLY IN SUPPORT OF ITS CROSS-MOTION UNDER CIVIL RULE 12(c) AS TO THE STATE OF OHIO (DOC. #48)**

Plaintiff Drewes Farms Partnership's ("DFP") Opposition to the City's Rule 12(c) Cross-Motion (Doc. #53) and the State of Ohio's ("State") Opposition to the City's Rule 12(c) Cross-Motion (Doc #52) establish that DFP and the State lack requisite standing to pursue their Complaints. DFP's and the State's Oppositions further confirm that their respective claims against the City are not ripe, and are procedurally and substantively defective. For all of the reasons set forth herein, and in the City's Rule 12(c) Cross-Motions as to DFP and the State (Doc. ##47-48), this case should be dismissed on the pleadings in favor of the City.

**I.       DFP's and the State's Complaints Should Be Dismissed Because Each Lacks Standing.**

DFP attempts to downplay its lack of requisite standing by describing standing as a "procedural hurdle." But DFP's and the State's lack of standing is not a mere obstacle for DFP and the State to deflect; rather, it is a barrier to their pursuit of the Complaints before this Court.

DFP's and the State's failures to satisfy their respective burdens to prove standing must be addressed first because it is "the threshold question in every federal case," and a lack of standing equates to a lack of jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Huff v. TeleCheck Services, Inc.*, 923 F.3d 458, 462 (6th Cir. 2019). The inquiry can end here as to DFP and the State because neither has standing to bring this lawsuit.

1

## A.    DFP and the State Have Failed to Satisfy Their Respective Burdens to Establish Standing.

The City's Rule 12(c) Cross-Motions apply the correct standing test adopted and applied by the U.S. Supreme Court. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, paragraphs (a) and (b) of the syllabus, 194 L.Ed.2d 635 (2016), as revised (May 24, 2016) (internal citations omitted), *quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 556, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Applying that test, DFP and the State have failed to meet their respective burdens as to all three elements.

Neither DFP nor the State has alleged any injury-in-fact that is concrete, particularized, actual, imminent, certainly impending, or, even as DFP alleges, has a substantial risk of occurring. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013). Rather, both improperly rely on conjecture and future speculative and hypothetical injuries, with no allegation that LEBOR has been or will be enforced against them, that the City or LEBOR has prevented them from doing anything; or that they have experienced any actual or imminent injury traceable to the City's conduct. *See Spokeo*, 136 S.Ct. 1540, at paragraph (b) of the syllabus. This amorphous speculation and conjecture does not establish standing.

Although DFP suggests it is irrelevant that the City has not enforced LEBOR, the Sixth Circuit has found plaintiffs lack standing where there is no injury-in-fact to satisfy the Article III case or controversy requirement, including because an ordinance has not been enforced in a way that infringes on constitutional rights. *See Greater Cincinnati Coalition for the Homeless v. City of Cincinnati*, 56 F.3d 710, 718 (6th Cir. 1995).

Nothing in DFP's or the State's Oppositions remedies their respective failures to establish a sufficient "fairly traceable" causal connection between any of the City's actions related to LEBOR and their fear of potential future injuries. In DFP's case, it

2

fails to establish any particular injury traceable to LEBOR, as its partners repeatedly have admitted to the media that the weather has caused them damages in the 2019 growing season.[1] Neither DFP nor the State has identified any action by the City which has caused or threatens to cause them harm. The City has not wronged DFP or the State, or threatened to do so. There is no injury to redress. The bottom line is that DFP and the State have failed to satisfy their burdens to establish standing, their claims are not ripe, and this case should be dismissed.

### B. <u>DFP Has Failed to Meet Its Burden to Establish Standing</u>.

It is not surprising that DFP's Opposition buries its response on standing after its merits-based discussion. DFP cannot distract the Court from its lack of standing and failure to satisfy its burden by asserting hyperbole, conjecture, and rhetoric related to its dislike of LEBOR and by seeking to garner sympathy for a convoluted future speculative injury. Contrary to DFP's bald statement, no evidence indicates DFP has suffered, continues to suffer, or will suffer any injury.

In an effort to generate an injury-in-fact where none exists, DFP's Opposition includes a bulleted list of "key verified facts" which it claims establish standing. For instance, DFP claims it has standing because it "is a partnership organized pursuant to Ohio law." But of course, the mere fact that DFP is an Ohio partnership does not create any injury-in-fact that is concrete, particularized, actual, imminent, and not conjectural or hypothetical, or satisfy any element of the standing test. Nor does DFP's claim that it has standing because it "has sued seeking to invalidate [LEBOR]." It is nonsensical that a plaintiff could acquire standing simply by bringing a lawsuit, as that would negate the entire concept of standing.

---

[1] Doc. #47-1, Media Articles attached to the City's Rule 12(c) Cross-Motion as to DFP.

DFP also claims it should have standing simply because it "farms land wholly within the Lake Erie Watershed" and because "LEBOR's scope appears to cover the entire Lake Erie Watershed." Even assuming LEBOR applies outside the City of Toledo,[2] DFP's farming in the watershed does not confer standing. These allegations do not indicate that DFP is violating LEBOR; that DFP has sustained any injury caused by the City or LEBOR, that LEBOR has ever been enforced against DFP; or that there is any possible injury beyond one that is purely speculative and conjectural. And, DFP's suggestion that "[p]robable economic injury is enough to establish standing" is irrelevant, because DFP lacks any probable economic injury caused by LEBOR or the City. Even DFP admits at p. 9 of its Opposition that it has no current injury, and that it is merely speculating that LEBOR may have some unknown negative effect on its economic interests and property rights in some unknown future year. Nothing suggests DFP has changed or curtailed its farming or fertilizing practices or stopped any farming or fertilizing activity as a result of LEBOR.

Additionally, DFP asserts it has standing because its "leases require DFP to maintain fertilization levels;" because it "has contracts to sell crops in the future in a sum certain amount, which were based on its ability to farm, including fertilizing the land it farms;" and because it "would be injured and forced to violate its leases and contracts if unable to farm or fertilize to avoid liability under LEBOR." DFP's Complaint only vaguely alleges that DFP has entered leases, some of which "require [DFP] to maintain the current fertilization levels of the land" and that if LEBOR forced DFP to

---

[2] Although DFP criticizes the City for not issuing a statement further defining and interpreting the body of LEBOR, LEBOR speaks for itself, and the City cannot redefine or amend the terms of its Charter without a further vote from its citizens.

"halt fertilization," it might place DFP in breach of contract and deprive it of benefits dependent on fertilization. (Doc. #1, Complaint, ¶¶19, 22, 56)

Despite DFP having the burden to establish standing, it has not placed any purported leases or agreements before the Court. It is unclear what provisions DFP claims confer property rights, whether the leased property is within the Lake Erie watershed, or what terms of the leases DFP claims are inconsistent with LEBOR. DFP cites no language from the alleged leases, much less language suggesting that complying with the leases would violate LEBOR, that LEBOR requires halting fertilization, or that DFP could not comply with both LEBOR and its agreements. Of the 11 leases that DFP produced in standing-related discovery, 4 of the leases are not in the name of Drewes Farm Partnership as the lessee. Moreover, the leases produced do not indicate any specific fertilization requirements that appear to conflict with LEBOR. Indeed, the leases DFP produced indicate that DFP is to comply with federal, state, and local environmental and hazardous waste and substance regulations, and that DFP is to minimize runoff and pollution. Regardless, the Court cannot interpret documents not before it, nor can it adopt DFP's self-serving interpretation that LEBOR might prevent it from complying with its purported agreements. Nothing in LEBOR contains a blanket prohibition against farming or fertilizing. DFP is asking the Court to add language to LEBOR that is not there.

There is no evidence that LEBOR impacts DFP's fertilization requirements, and DFP identifies no aspect of the leases or agreements, including any purported property right, that would be affected by LEBOR. The only provisions of the leases which DFP has identified as inconsistent with LEBOR are fertilization provisions. Fertilizing is not a property right, and DFP cites no authority suggesting any constitutional right to

fertilize. DFP's citation to *Carroll Weir Funeral Home v. Miller*, 2 Ohio St.2d 189, 207 N.E.2d 747 (1965), does not actually recognize a property right for lessees and is entirely distinguishable. *Carroll Weir* does not provide that, as a matter of Ohio law, DFP has a protectable property interest. And, it gives no indication of any property right whatsoever related to a lessee's fertilizing leased property.

DFP also claims it should have standing because it "applies fertilizer to land it farms in the Lake Erie Watershed" and its "application of fertilizer, despite best practices, leads to runoff." This is not a situation, like in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014), where DFP or the State allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." To the contrary, DFP claims it is following best practices, is a "leader in conservation efforts," and has "personally invested hundreds of thousands of dollars in developing techniques to minimize runoff." (Doc. #35-1, DFP's Memo, PageID #383). DFP does not allege it has any phosphorous or nitrate runoff, that it has polluted Lake Erie or its watershed, or that it is violating LEBOR.  Even if DFP has "some runoff," LEBOR does not regulate or prohibit all runoff, and not all runoff necessarily amounts to pollution.

The Sixth Circuit has found no standing in such situations where the plaintiff is not violating or does not intend to violate an ordinance. *See Greater Cincinnati*, 56 F.3d at 716 (finding no standing where plaintiff "admitted he has not in the past violated the terms of the 1992 enactment and that he has no intention of violating the explicit terms of the ordinance in the future"). Taking DFP's allegations as true regarding its own conduct as a leader in conservation following best practices, there can be no "credible threat of prosecution" under LEBOR, which on its face applies to polluters. DFP's new

6

assertion in its Opposition that it is "seeking to engage in activities that violate LEBOR," clearly was made in a last-ditch effort to create standing and should be disregarded, as it contradicts DFP's Complaint.

DFP also suggests it has standing to assert interference with the federal government's superintendence of foreign affairs simply because it "operates under and is a beneficiary of the international framework of laws governing Lake Erie." This would require the Court to find that any citizen or entity anywhere could inject his, her, or itself into the complicated realm of international trade or relations whenever the citizen or entity disfavored a validly passed citizens-initiative petition. DFP does not have standing to assert the rights or legal interests of others to obtain relief for itself, particularly when it has no injury-in-fact. *Warth*, 422 U.S. at paragraph (b) of the syllabus. DFP admits it owns no property - in Ohio, any other State, or any other country. It cites no actual or imminent interference with foreign policy, trade, or immigration which has resulted in any injury-in-fact to DFP. DFP only barely speculates with no support that LEBOR impacts foreign trade or impairs international obligations. This does not confer standing.

Further as to DFP's constitutional claims, DFP's speech has never been chilled, its right to freedom of expression has not been affected, and its First Amendment and due process rights have not been stripped or violated. Nor does it have any "objectively justified fear of real consequences" that would chill its First Amendment or due process rights or create a cognizable injury. DFP's citation to *Swepi, Ltd. P'ship v. Mora Cty.*, 81 F.Supp.3d 1075, 1154 (D.N.M. 2015) is inapposite because *Swepi* involved an ordinance expressly revoking First Amendment, Fifth Amendment, and other federal constitutional rights, as well as corresponding sections of the New Mexico Constitution,

7

including stripping commerce clause rights under the New Mexico Constitution. The lawsuit in *Swepi* involved a plaintiff which attempted to engage in activities specifically prohibited by the ordinance. That is not the case here.

DFP's citation to *Perry v. McGinnis*, 209 F.3d 597 (6th Cir. 2000), is likewise misplaced. That case involved an employee's race discrimination claim under the Fourteenth Amendment and Michigan law related to decisions the employee made in disciplinary hearings. Here, conversely, DFP has not been sued or subjected to any other discipline or legal repercussion caused by the City's actions regarding LEBOR. DFP has filed this case, albeit without standing; asserted its arguments about state and federal preemption; and suffered no ill consequences or "sanctions" for doing so. LEBOR does not strip corporations of their federal or state constitutional rights; nor has it prevented DFP from filing this lawsuit. DFP has identified no credible threat of prosecution for asserting a void for vagueness or First Amendment claim. Nor can DFP establish standing based upon its allegation that LEBOR is overbroad, given that LEBOR has yet to be enforced at all and is consistent with existing federal and state law. There has been no threatened action by the City government.

Moreover, DFP's vague purported "economic interest in farming" is not sufficient to confer standing for an equal protection claim. Certainly, not all farmers or partnerships are polluters. Nor does DFP generate standing by claiming disparate treatment by LEBOR as to business entities, versus individuals. LEBOR is consistent with other provisions of the City's Code, discussed in more detail below, imposing criminal liability, fines, costs, and potential jail time on individuals and entities which litter and improperly dispose of waste, including into public waterways. DFP's

8

suggestion that individuals can pollute however they wish is not true, as individuals are already subject to similar prohibitions in other sections of the City's Code.

The City has never, as DFP suggests, "recognize[d] LEBOR's vagueness." The City <u>did</u> identify ways, other than filing this lawsuit without standing, for DFP to address its apparent belief that LEBOR is vague, including pursing an amendment or new Charter section through the citizens-initiative process. Although DFP suggests that federal litigation is an appropriate vehicle to allege deprivations of fundamental rights, that is only true where the plaintiff has standing. Here, DFP has not been deprived of any right, fundamental or not, and no imminent threat exists suggesting it ever will be deprived of one. Thus, it lacks standing.

### C.    <u>The State Has Failed to Meet Its Burden to Establish Standing</u>.

The State is not targeted by LEBOR, and nothing suggests the State has been, continues to, or will suffer any injury as a result of LEBOR.  Rather, LEBOR's preamble identifies where the State has not acted, and where Toledoans were using their State-given right to self-government to act where the State has not. *See Am. Fin. Servs. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, ¶43 (recognizing that "[i]f an allegedly conflicting city ordinance relates solely to self-government, the analysis stops because the [Ohio] Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction").

The State has no injury or threatened injury; it seeks an advisory opinion from this Court on a hypothetical set of facts. This is not enough for this case to proceed. The State cannot establish standing or create ripeness by asking this Court to negate the valid provisions of the City's Charter, which the State does not claim are unconstitutional or unlawful; invalidate the citizens' initiative petition process; violate

Toledoans' fundamental right to vote; improperly amend or repeal LEBOR contrary to the required process in the Charter; or undermine the right of local community self-government established by the City's Charter and the Ohio Constitution. *See* Article XVIII, Sections 7-9 of the Ohio Constitution. The State has failed to sustain its burden to show any actual or live case or controversy for this Court to resolve under the Declaratory Judgment Act. It points to nothing definite or concrete, or real and substantial, for this Court to resolve through a declaratory judgment.

The State also fails to identify anything suggesting LEBOR cannot co-exist with Ohio law. The City has taken no action in conflict with state law, and the State has identified nothing in LEBOR invalidating any federal or state law. The State has recognized that state permit holders and private parties may use a lawfully state-issued permit as a defense to LEBOR. Nothing in state law is invalidated by LEBOR, even under the State's interpretation.

The State has not indicated in any way that it believes it will be subject liability under LEBOR. To the contrary, it takes umbridge with the City's reference to Judge Carr's decision finding that the State has not acted. *See Environmental Law and Policy Center v. U.S. Environmental Agency*, 349 F.Supp.3d 703 (N.D. Ohio 2018). The State's contention that it would be a necessary party to any lawsuit under LEBOR is unsupported by any authority. There is no indication that the State views itself as a necessary party in other types of actions involving State permits or licenses, and the State has not identified any license or permit which would be affected by LEBOR. Nor has it shown it is facing "innumerous" lawsuits based upon LEBOR's provisions, or that such lawsuits would be certainly impending against the State because of LEBOR. To the contrary, the City is aware of no such lawsuits.

10

It is irrelevant to standing in this case that the State is a defendant in the matter *Ferner v. State*, Case No. G-4801-CI-0201902904-000, Lucas County Court of Common Pleas. The *Ferner* suit is not one against the State brought <u>under</u> or <u>pursuant to</u> LEBOR. It is about the State violating the Ohio Constitution's right to local self-government and the State's overreaching into the purview of self-government.

The cases cited by the State support the City's arguments regarding lack of standing as to the State and DFP.  In *Kelley v. Selin*, 42 F.3d 1501, 1508 (6th Cir. 1995), *cert. denied*, 515 U.S. 1159, 115 S.Ct. 2611 (1995), the Sixth Circuit evaluated the standing of the petitioners to challenge a final rule of the Nuclear Regulatory Commission permitting storage of spent nuclear fuels in a particular type of concrete cask. *Id*. at 1503. The petitioners included three landowners near the involved plant, Michigan's acting attorney general, and two environmental membership organizations. They sought a temporary restraining order preventing the rule from becoming effective and prohibiting the loading of spent fuel into the casks.  *Id*. at 1507.

The Sixth Circuit observed: "To establish standing, a party must demonstrate a personal stake in the outcome of the dispute" and "show that they have suffered some actual or threatened injury as a result of conduct by respondents, that the injury is traceable to the challenged action and that the injury can be redressed by a decision in their favor." *Id*. at 1508. The alleged injury "must be 'distinct and palpable,' * * * not merely a hypothetical or imagined detriment." *Id*. Although the Sixth Circuit found the property owners had standing in *Kelley*, that situation is distinguishable because the petitioners owned property in close proximity to the plant, asserted harm to their property's aesthetics and their own physical health, and asserted that their property values would be diminished by the close proximity of stored nuclear waste. *Id*. at 1509.

11

Of note, the court rejected the petitioners' substantive arguments, and denied their petitions for review.

Certainly, the petitioners' threatened injury to the real property they owned from the actual nearby presence of nuclear waste in *Kelley* differs from the State's hypothetical and subjective fear of future speculative harm, and from DFP's claimed future speculative injury, where it denies being a polluter, owns no property; and does not operate in Toledo or Lucas Count. (Doc. #35-1, DFP's Memo, PageID #383; Doc. #33, Dec. of Mark Drewes, ¶¶7-8). The only "injury" the State's Opposition alleges is "the purported invalidation of its laws, rules, and permits, infringement on its authority over Lake Erie, and exposure to frivolous lawsuits." None of this has actually occurred; nor is it certainly impending or substantially likely, and neither the State nor DFP has identified any threatened injury. The State's citation to *Commonwealth of Pennsylvania v. State of West Virginia*, 262 U.S. 553, 593, 43 S.Ct. 658 (1923), merely confirms that an injury must at least be "certainly impending." The face of LEBOR establishes it does not invalidate any state law, rule, permit, or authority over Lake Erie; rather, LEBOR incorporates and relies on it.  Nor does LEBOR expose the State to frivolous lawsuits.

Finally, the State's reliance on *Associated Builders & Contractors v. Perry*, 16 F.3d 688 (6th Cir. 1994) (finding that intervenor appellant lacked standing to appeal), to attempt to "piggyback" as an intervenor on DFP's purported standing is misplaced. Since DFP <u>and</u> the State lack standing, the State's suggestion that it can rely on DFP's non-existent standing to make up for the State's lack of standing is a non-starter.

II.    **DFP and the State Continue to Ignore the Fundamental Rights of
       Toledoans and the Critical Importance of the Citizens-Initiative
       Process and the Vote of an Electorate.**

All of DFP's and the State's assertions made in the course of Rule 12(c) briefing
must be viewed in context with the fact that neither the State's nor DFP's Complaints
allege any claim challenging the citizens-initiative petition process in the City's Charter,
how that process was followed here, or the electorate's vote adopting LEBOR. Nor has
the State or DFP objected to any other provision of the City's Charter or the Toledo
Municipal Code beyond the language of LEBOR, including provisions regarding the use
and control of water and drinking water, regulation of business, and garbage, rubbish,
and litter (*See, e.g.,* Charter, Chapter II, Sec. 8; Charter, Chapter XV; Toledo Municipal
Code, Part 11 and Part 7; Toledo Municipal Code, Part 9, Chapter 963). DFP and the
State have waived all arguments regarding the citizens-initiative process; the vote of the
electorate; the City updating the Charter after the duly-enacted measure was passed by
the electorate as the City was permitted to do, and as DFP agreed in the consent
injunction (Doc. #19); and the validity of the City's Charter and Municipal Code.

DFP's Opposition cites several cases it now claims support invalidating the
Toledo citizens' initiative and electoral process passing LEBOR. But, DFP's Complaint
does not seek invalidation of those processes, or allege any improper or unconstitutional
action or claim related to them. DFP is asking this Court to read allegations and claims
into its Complaint which do not exist. Regardless, DFP's cases are distinguishable
because they involve plaintiffs who suffered actual deprivations of constitutional rights
or at least a legitimate threat thereof. DFP has not been deprived of a constitutional
right, or even the threat of a deprivation.

### III.   <u>The State's Complaint Also Fails on Its Merits and Should Be Dismissed</u>.

The City incorporates into this section its above discussion concerning the deficiencies in the State's Complaint. In addition to the arguments above and in the City's Rule 12(c) Cross-Motion, even if the Court addressed the State's preemption arguments on the merits, the City's actions related to LEBOR are consistent, and do not conflict, with the Ohio Constitution or other applicable law, including the Ohio Constitution's declaration that "[a]ll power is inherent in the people" and its provision that the people "have the right to alter, reform, or abolish the same, whenever they may deem it necessary..." Ohio Const. Art. I, §2; Art. II, §§1, 1a. The State asks the Court to ignore authority and right and power to local self-government granted by the Ohio Constitution to municipalities and Ohio's citizens. *See Federal Gas & Fuel Co. v. City of Columbus*, 96 Ohio St. 530, 118 N.E. 103 (1917).

But, the State does not explain how LEBOR conflicts with any state or federal law, or how LEBOR conflicts with "Ohio's constitutional limitations on municipal authority" (Doc. #52, State's Opposition, p. 2). Rather, the face of LEBOR establishes there is no conflict. Pursuant to home rule, the State sets the floor, and the locality can exercise powers of governance delegated to it by the State, including a municipality's power to exercise local self-government. This is what LEBOR does. It works within applicable State law, incorporates it by reference, and is not contrary to it. The State has failed to show how LEBOR infringes on matters of general or statewide concern. The Sections of LEBOR cited in the State's Opposition, Sections 2(a), 3(a), 3(c), and 4(b), do not say that LEBOR invalidates any federal or state law; in fact, Section 4(b) incorporates state law and merely indicates that LEBOR expands upon state law, as is appropriate for local self-government. The State's suggestion that Council's passage of

14

Ordinance 497-18 constituted anything other than properly following the City's Charter for citizens-initiative petitions is inaccurate. The City has taken no action to deprive the State of any right; nor has the City taken any action to enforce LEBOR.

The State's assertion at page 2 of its Opposition that LEBOR "would render meaningless state and federal law" and "elevate municipal authority over that of state and federal governments" is unsupported, and ignores the plain language of the Ohio Constitution that laws may be passed "for the government of municipalities," which "shall become operative in any municipality" after submission to its electors who affirm it with a majority vote. Ohio Const. Art. XVIII, §2. The State further disregards the plain language of Ohio Const. Art. XVIII, §7, which authorizes municipalities to "frame and adopt or amend a charter for its government" and, subject to Art. XVIII, §3, to "exercise thereunder all powers of local self-government." And, the State ignores the provisions of Ohio Const. Art. XVIII, §9, that when an amendment to a charter "is approved by a majority of the electors voting thereon, it shall become part of the charter of the municipality." Nor does the State explain how LEBOR supposedly conflicts with Ohio Const. Art. XVIII, §3, which authorizes municipalities "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

The Ohio Constitution does not "limit" the City's conduct in this case; it supports and authorizes the City's actions responding to the citizens-initiative process and the vote of the electorate. The State's obvious efforts to downplay its delegation of authority to municipalities to self-govern ignore the rights of municipalities and Ohio's citizens to engage in citizens-initiative petitions and participate in the electoral process. The State

15

cannot divorce itself from the right to self-government afforded to municipalities and Ohio's citizens.

The City further does not overstate its legal authority regarding Lake Erie. The City accurately cited and applied R.C. §721.04. This statute is not nearly so limited as the State suggests, and further evidences that the State legislature did not intend to preempt the entire field of authority or activities related to Lake Erie, and instead specifically delegated authority to the City. Federal, state, and local legislation can address Lake Erie; no evidence suggests LEBOR has flouted state or federal environmental regulations or laws; and the City does not seek to limit state or federal laws within its bounds.[3] The State's suggestion that LEBOR "purports to invalidate *all*" state and federal laws is inaccurate and contrary to the face of LEBOR, and confirms that the State can identify no specific federal or state law invalidated by LEBOR.

Finally, the State appears to take umbridge with the reference in LEBOR's preamble to Lake Erie's "imminent danger of irreversible devastation" due to "reckless government policies, permitting and licensing" and that it has "gone unprotected by government." But, the fact is that Lake Erie is in grave danger, the State has not taken corrective action to solve the problem, the State has failed to comply with its duties under the Clean Water Act, and the State has not protected Lake Erie. These are not new theories advanced by the City, as this Court has already recognized the State's failings in this area. *See Environmental Law and Policy Center*, 349 F.Supp.3d 703. In short, the State has alleged no viable claim.

---

[3] Neither the cases nor the arguments on page 7 of the State's Opposition demonstrate that either the citizens-initiative petition or LEBOR itself exceed the bounds of municipal or self-government authority provided by the Ohio Constitution.

IV.     <u>**DFP's Complaint Also Fails on Its Merits and Should Be Dismissed**</u>.

In establishing that DFP's claims are procedurally defective, the City has never "avoided the merits" of any claim. To the contrary, the City's Rule 12(c) Cross-Motion establishes multiple reasons why DFP's Complaint should be dismissed on its substantive merits, setting aside that DFP lacks requisite standing to bring this case in the first place. The City incorporates into this section by reference its above arguments related to the merits-based deficiencies in its Complaint, which overlap in many respects with its lack of standing. The City supplements its arguments in its Rule 12(c) Cross-Motion and above in this brief with the following:

DFP's Opposition does nothing to remedy the substantive defects in its constitutional claims, as discussed in the City's Rule 12(c) Cross-Motion. DFP continues to allege only future speculative potential injuries, and no actual chilling or restriction on any First Amendment-protected area. Nothing suggests LEBOR is impacting, has impacted, or will impact DFP's constitutional rights. DFP also tries to backpedal from its Complaint's allegations that rational basis review applies to its equal protection claims, suggesting that strict scrutiny should apply "because LEBOR's disparate treatment impacts First Amendment rights." But, there is no basis for applying a heightened standard of review in this case, and DFP's claims fail the applicable rational basis test.

DFP's ongoing assertions that LEBOR has a disparate impact on corporations, as opposed to individuals, are untrue. LEBOR's application to businesses and governmental entities is supplemental, but consistent with, the City's other Code provisions preventing individuals <u>and</u> businesses from polluting. That LEBOR applies to corporations and governments does not mean individuals are free to pollute. The City's Code, and particularly Chapter 963, already specifically prohibits individuals <u>and</u>

businesses from polluting and from dumping chemical waste and other substances into public waters. *See* Toledo Municipal Code, Chapter 963.25. DFP, of course, has not challenged Chapter 963 as unconstitutional, even though it, like LEBOR, imposes strict liability, results in criminal penalties, and counts each day as a separate violation. Toledo Municipal Code, Section 963.99.

Moreover, DFP's suggestion that the City could be exposed to *Monell* liability arising from LEBOR as a City policy or custom ignores the necessary preliminary inquiry that a City policy or custom has directly caused a constitutional violation. Here, it has not. *See City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (abrogated on other grounds) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)). There is no allegation of an unconstitutional legislative action. Nor can LEBOR be evaluated as an unconstitutional official agency policy because it has yet to be enforced in any way, much less an unconstitutional one, and it has caused no injury. The City's defense of this case does not create *Monell* liability where it does not otherwise exist.

The non-binding cases DFP cites from other circuits and district courts do not change this result. In *Muffett v. City of Yakima*, E.D. Wash. No. CV-10-3092-RMP, 2012 WL 2915472 (July 17, 2012), the plaintiff wanted to open an adult entertainment business, but his application was denied by a hearing examiner who found his proposed use violated a zoning ordinance. *Id.* at *1. The parties agreed that the City had complied with the ordinance it enforced against the plaintiff, and proceeded with evaluating the plaintiff's *Monell* claims. *Muffett* differs from the present case in at least two key ways – namely, the plaintiff in *Muffett* had an actual injury because his application was denied, and the city actually applied and enforced the ordinance. *See, also, Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 299 (4th Cir. 1995) (en banc) (involving

18

plaintiffs, a group of city employees, alleging an actual injury because they did not receive raises after supporting a mayoral candidate not supported by a majority of council).

Regarding DFP's request for injunctive relief, its Opposition still fails to allege any irreparable harm, and continues to rely on bare speculation and fear of possible future injury. *See Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct.937 (1974). DFP does not dispute that the balance of equities does not tip in its favor, and that injunctive relief is not in the public interest, given that granting DFP's requested relief would invalidate multiple provisions of the City's Charter, and contradict the common interest in protecting and preserving the environment.

As to DFP's request for declaratory relief, its claims fails because they are derivative and, regardless, DFP offers no argument to overcome its failure to satisfy the Sixth Circuit's five-factor analysis under *Grand Trunk Western R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984), or the City's arguments in its Rule 12(c) Cross-Motion.

Finally, DFP's Opposition does not dispute that, if the Court agrees that DFP lacks standing to bring claims within this Court's original jurisdiction, any remaining state law claims should be dismissed for lack of supplemental jurisdiction. 28 U.S.C. §1367(c)(3); *Musson v. Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244 (6th Cir. 1998).

## V.  <u>Conclusion</u>

Based upon the foregoing, and the City's arguments in its Rule 12(c) Cross-Motions as to DFP and the State (Doc. ##47-48), the City requests that the Court enter an Order under Fed.Civ.R. 12(c) granting the City judgment on the pleadings and

dismissing DFP's and the State's Complaints against the City in their entirety. Alternatively, as stated in more detail in the City's Rule 12(c) Cross-Motions, should the Court find that certain provisions of the citizens-initiated LEBOR are unlawful or unconstitutional, the City requests that the Court strike only that provision or provisions, and allow at least the voiced concerns of the electorate in the preamble to remain.

Respectfully submitted,

*/s/ Jennifer A. McHugh*
Gerald R. Kowalski (0022323)
Sarah K. Skow (0081468)
Jennifer A. McHugh (0084842)
SPENGLER NATHANSON P.L.L.
900 Adams Street
Toledo, Ohio  43604-5505
Telephone:  (419) 241-2201
Facsimile:  (419) 241-8599
gkowalski@snlaw.com
sskow@snlaw.com
jmchugh@snlaw.com

*Counsel for Defendant, City of Toledo, Ohio*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been electronically filed this 6th day of September, 2019. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Jennifer A. McHugh*
Jennifer A. McHugh

453325_3