IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Drewes Farms Partnership,　　　　　　　　　Case No. 3:19 CV 434

　　　　　　　　　Plaintiff,　　　　ORDER INVALIDATING
　　　　　　　　　　　　　　　　　LAKE ERIE BILL OF RIGHTS
　　　-and-
　　　　　　　　　　　　　　　　　JUDGE JACK ZOUHARY
State of Ohio,

　　　　　　　　　Intervenor,

　　　-vs-

City of Toledo,

　　　　　　　　　Defendant.


## INTRODUCTION

On a Saturday morning in August 2014, City of Toledo officials issued a warning to residents: Don't drink the water.  The City water supply contained unsafe levels of a toxic substance, and pollution in Lake Erie was the culprit.[1]  The water remained undrinkable for nearly three days.[2]

In response, Toledo residents began a multi-year campaign to add a Lake Erie Bill of Rights ("LEBOR") to the City Charter (Doc. 10-3 at ¶ 6).  They collected over ten thousand petition signatures, triggering a February 2019 special election under Article XVIII, Section 9 of the Ohio Constitution (Doc. 41 at 37–38).  LEBOR won about sixty percent of the 16,215 votes cast, so it became part of the Charter the next month (*id.* at 38).

_____

[1] Emma G. Fitzsimmons, *Tap Water Ban for Toledo Residents*, N.Y. TIMES (Aug. 3, 2014), https://www.nytimes.com/2014/08/04/us/toledo-faces-second-day-of-water-ban.html.
[2] Michael Wines, *Behind Toledo's Water Crisis, a Long-Troubled Lake Erie*, N.Y. TIMES (Aug. 4, 2014), https://www.nytimes.com/2014/08/04/us/toledo-faces-second-day-of-water-ban.html.

Plaintiff Drewes Farms Partnership, which grows crops in four counties near Toledo, initiated this lawsuit the day after the election (Doc. 1 at ¶¶ 18, 21). Intervenor State of Ohio joined a few months later (Doc. 21). Both ask this Court to declare LEBOR invalid under Federal Civil Rule 12(c) and 28 U.S.C. § 2201 (Docs. 34, 35, 52, 53, 59). Defendant City of Toledo opposes (Docs. 47, 48, 56, 60). The City contends neither Drewes Farms nor the State has a right to challenge LEBOR, and it further contends LEBOR is valid. With agreement from both sides, this Court issued a Preliminary Injunction last year (Doc. 9). The Injunction prevents enforcement of LEBOR until this lawsuit ends. This Court heard oral argument at a recent Hearing (Doc. 61) and received an amicus brief from Toledoans for Safe Water, Inc. (Doc. 51).

## LAKE ERIE BILL OF RIGHTS

LEBOR declares that "Lake Erie, and the Lake Erie watershed, possess the right to exist, flourish, and naturally evolve." TOLEDO MUN. CODE ch. XVII, § 254(a). Additionally, the Charter amendment grants Toledo residents "the right to a clean and healthy environment." *Id.* § 254(b). Under LEBOR, Toledoans also "possess both a collective and individual right to self-government in their local community, a right to a system of government that embodies that right, and the right to a system of government that protects and secures their human, civil, and collective rights." *Id.* § 254(c). LEBOR contains no definitions or other provisions that would clarify the meaning of these rights, although it does indicate that the protected Lake Erie watershed includes "natural water features, communities of organisms, soil [sic] as well as terrestrial and aquatic sub ecosystems." *Id.* § 254(a).

"The City of Toledo, or any resident of the City," may sue to enforce the three rights enumerated in LEBOR. *Id.* § 256(b). Businesses and governments that infringe the rights "shall be guilty of an offense and, upon conviction thereof, shall be sentenced to pay the maximum fine allowable under State law for that violation." *Id.* § 256(a). LEBOR applies to businesses and

2

governments "in or from any jurisdiction," *id.* § 256(c), and "implementing legislation shall not be required," *id.* § 254(d).  State laws, regulations, permits, and licenses are declared invalid in Toledo to the extent they conflict with LEBOR.  *Id.* §§ 255(b), 257(b).  LEBOR also purports to supersede federal permits and licenses.  *Id.* § 255(b).  The full Charter amendment is attached to this Order.

## STANDING

Before analyzing LEBOR, this Court must determine whether Drewes Farms or the State has a right to bring this lawsuit.  The relevant doctrine is called standing.  Litigants have standing to sue only if they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Standing ensures that federal courts do not issue advisory opinions, which the United States Constitution forbids.  *See Sierra Club v. Morton*, 405 U.S. 727, 732 n.3 (1972).  Federal courts adjudicate live disputes only.  *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 237 (1990).   This lawsuit may proceed if either Drewes Farms or the State has standing, even if one or the other does not.  *See Janus v. AFSCME, Council 31*, 851 F.3d 746, 748 (7th Cir. 2017) (citing *Vill. of Oakwood v. State Bank & Trust Co.*, 481 F.3d 364, 367 (6th Cir. 2007)), *rev'd on other grounds by* 138 S. Ct. 2448, 2486 (2018).

The central dispute here concerns the injury-in-fact requirement.  An injury in fact is an injury that is "concrete and particularized[,] and actual or imminent, not conjectural or hypothetical."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation and internal quotation marks omitted).  "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur."  *Id.* (citation and internal quotation marks omitted).  Likely targets of a law need not wait for prosecution to challenge its validity.  *See id.*

3

Drewes Farms and the State satisfy the injury-in-fact requirement.  LEBOR has already injured the State: at least on paper, State laws, regulations, licenses, and permits are invalid in Toledo to the extent they conflict with LEBOR.  *See Maine v. Taylor*, 477 U.S. 131, 136–37 (1986).  The State could also be sued under LEBOR for failing to sufficiently protect Lake Erie or for violating LEBOR's guarantee of local self-government.  Drewes Farms falls within LEBOR's crosshairs, too. The business spreads fertilizer on fields in the Lake Erie watershed (Doc. 1 at ¶¶ 18, 24, 51), arguably infringing the watershed's right to "exist, flourish, and naturally evolve" and the right of Toledoans to a "clean and healthy environment."  TOLEDO MUN. CODE ch. XVII, §§ 254(a), (b).  The risk of suit under LEBOR is particularly high because enforcement does not depend on government prosecutors -- Toledo residents may file suit themselves.  *See Driehaus*, 573 U.S. at 164.

Drewes Farms and the State also satisfy the other two standing requirements: traceability and redressability.  Their LEBOR-related injuries are traceable to the City -- LEBOR is part of the City Charter.  True, LEBOR was enacted by voters rather than legislators, but the City is a proper defendant in this lawsuit nevertheless.  *See, e.g.*, *Romer v. Evans*, 517 U.S. 620, 623 (1996); *Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 462–64 (1982); *Equal. Found. of Greater Cincinnati v. City of Cincinnati*, 128 F.3d 289, 291 (6th Cir. 1997).  Additionally, a court order invalidating LEBOR would redress the alleged injuries, meaning Drewes Farms and the State satisfy the third standing requirement.  Having demonstrated their right to bring this lawsuit, both litigants are entitled to an adjudication of their claims.  This Court therefore analyzes LEBOR next.

### DUE PROCESS

The Fourteenth Amendment to the United States Constitution protects the right to due process. An "essential" element of due process is clarity of the laws.  *Roberts v. United States Jaycees*, 468 U.S. 609, 629 (1984) (citation omitted).  If a law is so vague that "persons of common intelligence

4

must necessarily guess at its meaning," it is unconstitutional.  *Id.* (brackets and citation omitted).

Heightened scrutiny applies to laws that impose criminal penalties, burden the exercise of

constitutional rights, or apply a strict-liability standard.  *Vill. of Hoffman Estates v. Flipside, Hoffman*

*Estates*, 455 U.S. 489, 498–99 (1982).  Vague laws are unconstitutional for at least two reasons: they

"may trap the innocent by not providing fair warning," and they invite arbitrary enforcement by

prosecutors, judges, and juries.  *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).  The

clarity requirement also "ensures that [governmental] power will be exercised only on behalf of

policies reflecting an authoritative choice among competing social values."  *Roberts*, 468 U.S. at 629.

Federal courts have invalidated municipal legislation on vagueness grounds.  For example, a

Cincinnati ordinance criminalized gathering on sidewalks "in a manner annoying to persons passing

by."  *Coates v. City of Cincinnati*, 402 U.S. 611, 611 (1971).  The Supreme Court struck it down

because "[c]onduct that annoys some people does not annoy others."  *Id.* at 614.  A Detroit-area

township regulated the use of machines that keep water near boats and docks free from winter ice.

*Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 555 (6th Cir. 1999).  These ice-free

areas could not exceed a "reasonable radius."  *Id.*  The Sixth Circuit found the ordinance void for

vagueness, in part due to the "failure to include a definition of 'reasonable.'"  *Id.* at 558–59.  A

Columbus gun-safety ordinance met the same fate.  The ordinance banned forty-six specific guns, as

well as "other models by the same manufacturer . . . that have *slight* modifications or enhancements."

*Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250, 251 (6th Cir. 1994) (emphasis added)

(brackets omitted).  The Sixth Circuit saw "no reasoned basis" for determining what changes qualify

as "slight," so it invalidated the ordinance.  *Id.* at 253–54.

LEBOR's environmental rights are even less clear than the provisions struck down in those

cases.  What conduct infringes the right of Lake Erie and its watershed to "exist, flourish, and

5

naturally evolve"?  TOLEDO MUN. CODE ch. XVII, § 254(a).  How would a prosecutor, judge, or jury decide?  LEBOR offers no guidance.  Similar uncertainty shrouds the right of Toledoans to a "clean and healthy environment."  *Id.* § 254(b).  The line between clean and unclean, and between healthy and unhealthy, depends on who you ask.  Because of this vagueness, Drewes Farms reasonably fears that spreading even small amounts of fertilizer violates LEBOR.  Countless other activities might run afoul of LEBOR's amorphous environmental rights: catching fish, dredging a riverbed, removing invasive species, driving a gas-fueled vehicle, pulling up weeds, planting corn, irrigating a field -- and the list goes on.  LEBOR's authors failed to make hard choices regarding the appropriate balance between environmental protection and economic activity.  Instead, they employed language that sounds powerful but has no practical meaning.  Under even the most forgiving standard, the environmental rights identified in LEBOR are void for vagueness.

The right of Toledoans to "self-government in their local community" is impermissibly vague as well.  *Id.* § 254(c).  At first blush, this provision seems to reiterate Article XVIII, Section 3 of the Ohio Constitution, which grants municipalities "authority to exercise all powers of local self-government."  Unlike the Ohio Constitution, however, LEBOR imposes a fine on any business or government that violates the right.  The amount of the fine is "the maximum . . . allowable under State law for that violation."  *Id.* § 256(a).  But Ohio law does not identify any fine for violating a right to self-government.  Additionally, this right includes "the right to a system of government that protects and secures . . . human, civil, and collective rights," but the nature of those human, civil, and collective rights is anybody's guess.  *Id.* § 254(c).  Like LEBOR's environmental rights, this self-government right is an aspirational statement, not a rule of law.

6

## SEVERABILITY

LEBOR contains a severability clause: "If any court decides that any . . . provision of this law is illegal . . . such decision shall not . . . invalidate any of the remaining . . . provisions of the law." *Id.* § 259.  Notwithstanding the clause, however, the unconstitutional parts of LEBOR are severable from the rest only if "the severability will not fundamentally disrupt the statutory scheme of which the unconstitutional provision is a part."  *State v. Hochhausler*, 76 Ohio St. 3d 455, 464 (1996); *accord Midwest Media Prop. v. Symmes Twp.*, 503 F.3d 456, 464 (6th Cir. 2007); *State v. Dean*, 170 Ohio App. 3d 292, ¶¶ 50, 52 (2007).  "Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself?"  *Hochhausler*, 76 Ohio St. 3d at 464 (citations omitted).  If not, the entire law must fall.  *Id.*

No part of LEBOR can be saved under this standard.  Once the three vague rights are stripped away, the remainder is meaningless.  The City urges this Court to at least leave in place LEBOR's preamble, but the preamble contains nothing to invalidate.  TOLEDO MUN. CODE ch. XVII, § 253.  It merely declares certain values and findings; it does not purport to create legal rights or obligations.

To be clear, several of LEBOR's other provisions fail on their own merits (*see, e.g.*, Doc. 61 at 19–21).  For example, LEBOR's attempt to invalidate Ohio law in the name of environmental protection is a textbook example of what municipal government cannot do.  Lake Erie is not a pond in Toledo.  It is one of the five Great Lakes and one of the largest lakes on Earth, bordering dozens of cities, four states, and two countries.  That means the Lake's health falls well outside the City's constitutional right to local self-government, which encompasses only "the government and administration of the internal affairs of the municipality."  *In re Complaint of Reynoldsburg*, 134 Ohio St. 3d 29, ¶ 25 (2012) (citation omitted).  Consequently, municipal laws enacted to protect Lake Erie are generally void if they conflict with Ohio law.  *See Mendenhall v. City of Akron*, 117 Ohio St.

7

3d 33, ¶¶ 17–18 (2008).  *See also Pa. Gen. Energy Co. v. Grant Twp.*, 139 F. Supp. 3d 706, 720 (W.D. Pa. 2015) (invalidating part of local ordinance similar to LEBOR due to conflict with Pennsylvania state law).  LEBOR flagrantly violates this rule.

With careful drafting, Toledo probably could enact valid legislation to reduce water pollution. For instance, a Madison, Wisconsin ordinance restricted the use of phosphorus-containing fertilizers within city limits in 2004.  *CropLife America, Inc. v. City of Madison*, 432 F.3d 732, 733 (7th Cir. 2005).  "[P]hosphorus . . . contributes to excessive growth of algae and other undesirable aquatic vegetation in water bodies."  *Id.* (brackets, citations, and internal quotation marks omitted). The ordinance survived a lawsuit like this one.  *Id.* at 735.  In contrast, LEBOR was not so carefully drafted.  Its authors ignored basic legal principles and constitutional limitations, and its invalidation should come as no surprise.

## CONCLUSION

Frustrated by the status quo, LEBOR supporters knocked on doors, engaged their fellow citizens, and used the democratic process to pursue a well-intentioned goal: the protection of Lake Erie.  As written, however, LEBOR fails to achieve that goal.  This is not a close call.  LEBOR is unconstitutionally vague and exceeds the power of municipal government in Ohio.  It is therefore invalid in its entirety.  The Motions of Drewes Farms Partnership and the State of Ohio (Docs. 34, 35) are granted, and the City of Toledo's Cross Motions (Docs. 47, 48) are denied.  The Preliminary Injunction (Doc. 9), now unnecessary, is lifted.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U.S. DISTRICT JUDGE

February 27, 2020

8