**MEMORANDUM IN SUPPORT**

I. **INTRODUCTION**

Shortly after the enactment of the Lake Erie Bill of Rights ("LEBOR"), Drewes Farms filed suit to protect its family farm from the unlawful effects of LEBOR's unconstitutional provisions. Characterizing its decision as "not a close call," this Court held that LEBOR "is unconstitutionally vague and exceeds the power of municipal government in Ohio." This Court therefore invalided LEBOR in its entirety, granting Drewes Farms precisely the relief it sought.

"[A] plaintiff who obtains relief in a civil rights lawsuit does so not for himself alone but also as a private attorney general, vindicating a policy that Congress considered of the highest importance." *Riverside v. Rivera*, 477 U.S. 561, 575, 106 S. Ct. 2686, 2694 (1986) (internal citation and quotation marks omitted). Through its enactment of 42 U.S.C. § 1988, Congress dictated that "awarding counsel fees to prevailing plaintiffs in such litigation is particularly important and necessary if Federal civil and constitutional rights are to be adequately protected." *Id.* For these reasons and those set forth below, Drewes Farms is entitled to an award of attorneys' fees and costs.

II. **BACKGROUND**

Although the Court is no doubt familiar with the history of this litigation, a summary of the proceedings to date will be beneficial to illustrate the scope of necessary and reasonable attorneys' fees and costs in this matter.

A. **The City Adopts LEBOR.**

The City of Toledo received a petition proposing LEBOR, an amendment to the City Charter on August 6, 2018. (Compl. ¶ 37.) LEBOR states that "Lake Erie, and the Lake Erie watershed, possess the right to exist, flourish, and naturally evolve." Toledo Mun. Code Ch. XVII, § 254(a). Additionally, LEBOR purported to grant residents "the right to a clean and

healthy environment," the "right to self-government in their local community, a right to a system of government that embodies that right, and the right to a system of government that protects and secures their human, civil, and collective rights." *Id.* §§ 254(b), (c).  However, LEBOR did not contain any definitions or other provisions clarifying the meaning of these rights.  Nevertheless, the City placed LEBOR on the February 2019 ballot, and the LEBOR measure passed.

### B. Drewes Farms Files Suit against the City.

Drewes Farms is a family owned and operated farm located within the Lake Erie watershed.  (Compl. ¶¶ 17-18.)  As a farm that utilizes fertilizer, "Drewes Farms falls within LEBOR's crosshairs[.]"  (ECF No. 63 PageID #825.)  As such, Drewes Farms faced enormous potential liability under LEBOR, particularly "because enforcement [of LEBOR] does not depend on government prosecutors – Toledo residents may file suit themselves."  *Id.*

Drewes Farms therefore filed suit against the City on February 27, 2019, asserting six causes of action, including: (1) violation of the First and Fourteenth Amendment under 42 U.S.C. § 1983; (2) violation of equal protection under 42 U.S.C. § 1983; (3) violation of the Fifth and Fourteenth Amendments under 42 U.S.C. § 1983; (4) violation of procedural due process under 42 U.S.C. § 1983; (5) violation of substantive due process under 42 U.S.C. § 1983; and (6) declaratory judgment.  (ECF No. 1.)  At bottom, Drewes Farms sought to invalidate LEBOR in its entirety.  (*Id.*)

### C. The City's Litigation Tactics Increased the Time Required to Litigate This Case.

Drewes Farms's counsel sought to streamline and narrow the scope of this litigation from the outset, and Drewes Farms communicated this goal to the City.  For example, just one week after filing the Complaint, Drewes Farms's counsel proposed that the parties enter into an agreed preliminary injunction and briefing schedule in part to "minimize attorneys' fees on both

sides[.]" (Fusonie Decl. Ex. 3.) Likewise, Drewes Farms's counsel wrote a letter to the City asking that the City answer certain questions that would "reduce the number of disputed issues that are raised to the Court" in order to "limit Toledo's exposure under 42 U.S.C. § 1988. . . ." (*Id.* Ex. 4.)

Despite these efforts, the City's litigation tactics complicated and prolonged this dispute. For example, the City refused to respond in writing to Drewes Farms's letter that was sent in compliance with the Court's case management procedures in order to "reduce the number of disputed issues that are raised to the Court."[1] (Fusonie Decl. ¶ 14 (a)-(b).) Drewes Farms's counsel was forced to seek assistance from the Court twice – and this Court had to issue two Orders – to compel the City to adequately respond. (ECF Nos. 29 and 42.) Despite the Court's Orders, the City continued to respond that "LEBOR speaks for itself" and claimed that it could not answer the questions posed. (Fusonie Decl. 14(h).) Without the benefit of narrowing the issues, Drewes Farms was forced to continue to litigate all issues raised in its Complaint.

Further, the City's conduct in discovery forced Drewes Farms's counsel to spend additional time on this litigation. For example, the Court ordered Drewes Farms to produce limited discovery pertaining to Drewes Farms's standing, and Drewes Farms complied with that Order. (ECF No. 29.) Nevertheless, the City continued to seek documents entirely unrelated to standing, including documents related to Drewes Farms's payment of its attorneys' fees. (Fusonie Decl. Ex. 7.) The parties were ordered to brief the issue and ultimately the Court held that "Plaintiff has produced adequate documentation regarding its standing. Further discovery on this issue would be disproportionate to the needs of the case." (ECF No. 45.) The unnecessary discovery into standing and extraneous issues were litigation tactics by the City that

---

[1] The Court's case management procedures require the parties to exchange letters in advance of filing any dispositive motion. (ECF No. 4.)

3

led both parties to incur substantial attorneys' fees.  In fact, the City did not rely on Drewes Farms's disclosures at all either in its Opposition to Drewes Farms' Motion for Judgment on the Pleadings or at the hearing on that Motion.  (ECF Nos. 47, 61.)

### D. The Court Issued an Order Invalidating LEBOR in Its Entirety.

On February 27, 2020 – exactly one year after Drewes Farms filed its Complaint – this Court issued an Order invalidating LEBOR in its entirety.  (ECF No. 63.)  The Court granted Drewes Farms's Motion for Judgment on the Pleadings on its Section 1983 claim, finding that LEBOR violated the Fifth and Fourteenth Amendments.  (*Id.*)  This Court stated,

> Frustrated by the status quo, LEBOR supporters knocked on doors, engaged their fellow citizens, and used the democratic process to pursue a well-intentioned goal: the protection of Lake Erie.  As written, however, LEBOR fails to achieve that goal.  **This is not a close call.  LEBOR is unconstitutionally vague and exceeds the power of municipal government in Ohio.  It is therefore invalid in its entirety**.

(*Id.* at PageID # 829 (emphasis added).)  The Court also recognized that "municipal laws enacted to protect Lake Erie are generally void if they conflict with Ohio law" and held that "LEBOR flagrantly violates this rule."  (*Id.* PageID #828-29.)

The City's counsel subsequently issued a statement to the media regarding the litigation.  Despite the obvious unconstitutionality of LEBOR, the City's counsel stated, "**[w]e defended the Lake Erie Bill of Rights and the charter amendment aggressively**."  (Fusonie Decl. Ex. 10 (emphasis added).)  Others agreed.  (*Id.*)

4

### III. LAW AND ARGUMENT

#### A. Drewes Farms Is Entitled to an Award of Reasonable Attorneys' Fees.

Pursuant to 42 U.S.C. § 1988, a prevailing party in an action under 42 U.S.C. § 1983 is entitled to an award of reasonable attorneys' fees. As set forth below, Drewes Farms is the prevailing party in this action, and the attorneys' fees sought by Drewes Farms are reasonable.

##### 1. Awarding Drewes Farms attorneys' fees is mandatory.

The Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizes courts to award reasonable attorneys' fees to prevailing parties in actions brought under 42 U.S.C. § 1983. Section 1988 states as follows:

> In any action or proceeding to enforce a provision of sections 1977, 1977A, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 USCS §§ 1981–1983, 1985, 1986] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . .

"Although 'may allow' has a permissive ring to it, the Supreme Court has read it as **mandatory** where the plaintiff prevails and special circumstances are absent." *Déjà Vu of Nashville, Inc. v. Metro. Govt. of Nashville and Davidson Cty., Tennessee*, 421 F.3d 417, 420 (6th Cir. 2005) (citing *Indep. Fedn. Of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989)) (emphasis added).

Drewes Farms is the prevailing party in this matter. The Sixth Circuit has held that "[t]o be a 'prevailing party,' a party must 'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Id.* In *Farrar v. Hobby*, the Supreme Court explained that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties . . . in a way that directly benefits the plaintiffs." 506 U.S. 103, 113, 121 L. Ed. 2d 494, 113 S. Ct. 566 (1992). For example, in *Déjà Vu*, the Sixth Circuit held that a series of injunctions effectively prohibiting the government from enforcing an unconstitutional code "[a]lmost continuously since the lawsuit was initiated"

5

constitutes "a legally sanctioned change in the relationship between the two parties more than ample to justify [the plaintiff's] 'prevailing party' status." *Deja Vu*, 421 F.3d at 424.

Here, Drewes Farms asserted four claims against the City under Section 1983, including violation of the First Amendment (Count I), violation of equal protection (Count II), violation of the Fifth and Fourteenth Amendments (Count III), violation of procedural due process (Count IV), and violation of substantive due process (Count V). (ECF No. 1.) Just weeks after Drewes Farms filed its Complaint, the Court issued a preliminary injunction to prohibit the enforcement of LEBOR pending resolution of this litigation. (ECF No. 9.) Drewes Farms then moved for judgment on the pleadings on its constitutional claims. (ECF No. 35.) On February 27, 2020, the Court held that Drewes Farms was entitled to judgment on the pleadings on the grounds that LEBOR is void for vagueness. (ECF No. 63.) The Court found that LEBOR "ignored basic legal principles and constitutional limitations" and held that LEBOR "is therefore invalid in its entirety." (*Id.* PageID # 829.) Accordingly, it is beyond dispute that Drewes Farms prevailed in this litigation.

Additionally, there are no "special circumstances" that would render an award of attorneys' fees unjust. While "little guidance has been provided by the Supreme Court as to precisely what constitutes a special circumstance that would defeat a fee award," the Sixth Circuit has "opted for a case-by-case approach[.]" *Deja Vu of Nashville, Inc.*, 421 F.3d at 422. "The defendant has the burden of showing special circumstances warrant a denial of fees, and the defendant's showing must be a strong one." *Morscott, Inc. v. Cleveland*, 936 F.2d 271, 273 (6th Cir. 1991). Here, the City cannot carry its burden of showing "special circumstances" that would support denial of Drewes Farms's motion. Therefore, Drewes Farms is entitled to an award of reasonable attorneys' fees under 42 U.S.C. § 1988.

6

### 2. The attorneys' fees sought by Drewes Farms are reasonable.

Drewes Farms is entitled to a reasonable attorneys' fees award of $293,752.00. To determine a "reasonable" attorneys' fee award, the court should calculate Drewes Farms's "lodestar," which is "the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate."[2] *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). "Generally, a strong presumption favors the prevailing lawyer's entitlement to his lodestar fee." *Id.* (internal citation and quotation marks omitted). Modifications to the lodestar are therefore "proper only in certain 'rare' and 'exceptional' cases. *Id.*

#### a. Drewes Farms seeks reasonable rates.

The rates that Drewes Farms seeks for the calculation of its lodestar are reasonable. The Sixth Circuit has held that "district courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases." *Sigley v. Kuhn*, No. 98-3977/99-3531, 2000 U.S. App. LEXIS 1465, at *18 (6th Cir. Jan. 31, 2000). Even where courts look to a local market to determine a reasonable rate, courts are permitted to use a higher rate where "non-local counsel possesses specialized expertise in the matter to be litigated." *Id.* Courts have recognized an expertise in civil rights and constitutional law. *See, e.g.*, *id.* (the district court was not limited to the city of Akron for determining market rates where the issues were "fairly complex," "making

---

[2] "The trial judge may then, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation[,]" including the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Id.* "A highly important *Johnson* factor is the result achieved. Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* (internal citation and quotation marks omitted). Here, if the Court determines any adjustment to the lodestar is warranted, it should be an upward adjustment based upon Drewes Farms's excellent results.

7

it difficult to find competent and skilled counsel in law firms willing to undertake the risk and expense of pursuing this type of civil rights action").[3]

Here, the rates sought for Drewes Farms's counsel are reasonable in light of each attorneys' experience and expertise. As set forth more fully in the Fusonie Declaration, the rates sought for each attorney are as follows:

- Drewes Farms seeks an average per-entry rate of $546.21 for Kimberly W. Herlihy. (Fusonie Decl. ¶ 5(a) ($540 per hour for 2019 and $570 per hour in 2020), Ex. 1.) This is lower than Ms. Herlihy's standard hourly rate. (*Id.*) Ms. Herlihy has extensive experience as a trial attorney, including substantial experience with preliminary and permanent injunction hearings. (*Id.*) Ms. Herlihy is a fellow of the American College of Trial Lawyers. (*Id.*) In light of her experience and expertise, an average per-entry rate of $546.21 is reasonable. (*Id.* Ex. 2 (the OSBA states that the 95% for trial practice rates in civil litigation in Ohio is $610).)

- Drewes Farms seeks average per-entry rates of $529.07, $430.63, and $315.79 for Thomas H. Fusonie, Daniel E. Shuey, and Elizabeth S. Alexander, respectively. (*Id.* ¶¶ 5(b)-(d) ($525 per hour for 2019 and $550 per hour for 2020 for Mr. Fusonie, $425 per hour for 2019 and $460 per hour for 2020 for Mr. Shuey, and $300 per hour for 2019 and $330 per hour for 2020 for Ms. Alexander).) Messrs. Fusonie and Shuey and Ms. Alexander each have considerable expertise in constitutional and property law – a necessary expertise for this matter. (*Id.* ¶ 7) In light of their respective experience and expertise, these rates are reasonable. (*Id.*)

- Drewes Farms seeks a rate of $275.00 for Christopher A. LaRocco. (Fusonie Decl. ¶ 5(f).) This is lower than Mr. LaRocco's standard rate in 2019 of $300.00. (*Id.*) As a mid-level associate at Vorys, a rate of $275.00 for Mr. LaRocco's work is reasonable. (*Id.*)

- Drewes Farms seeks a rate of $240 for Lauren E. Bateman. (Fusonie Decl. ¶ 5(e).) As a legal intern – barred to practice law in the District of Columbia and working under the supervision of Ms. Herlihy, Mr. Fusonie, and Mr. Shuey – this rate for Ms. Bateman's work is reasonable. (*Id.*)

---

[3] *See also Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (accepting higher rates for counsel with First Amendment expertise, reasoning that "[t]o limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities where the rates are sufficient to attract experienced counsel").

8

Finally, Drewes Farms is seeking reasonable rates of $125 for the two paralegals who assisted with this matter.  (*Id.* ¶ 10.)

### b. The number of hours spent on this matter is reasonable.

The time that Drewes Farms's counsel spent on this matter is reasonable.  To determine the hours component of the lodestar calculation, courts look to "the number of hours reasonably expended on the litigation[.]"  *Webb v. Cty. Bd. of Educ.*, 471 U.S. 234, 242, 105 S. Ct. 1923, 1928 (1985). "[T]he party seeking an award of fees has the burden of submitting evidence supporting the hours worked[.]"  *Id.* (internal citation and quotation marks omitted).

Here, counsel for Drewes Farms seeks its fees for 748.9 hours spent on this litigation.  By way of example only, Drewes Farms's counsel was required to gather factual bases for its case, research its claims, draft the pleadings, draft a motion for preliminary injunction, oppose the motion to intervene, oppose a motion to stay pending appeal, participate in numerous status conferences, discovery dispute conferences, research various arguments of City concerning standing, gather and produce various disclosures, engage in pre-dispositive motion practice that included having to obtain an order from the Court compelling the City to comply with the Court's rules on pre-dispositive motion practice, draft a motion for judgment on the pleadings and reply brief in support of same/opposition to a cross-motion of Defendant, respond to multiple disclosure requests, and attend an in-person hearing before the Court.  (Fusonie Decl. Ex. 1.)  The time spent on this matter by Drewes Farms's counsel was both reasonable and necessary to adequately and properly protect Drewes Farms's interests and to achieve Drewes Farms's successful prosecution of its claims and vindication of constitutional rights.  (*Id.* ¶ 12.)

Additionally, counsel for Drewes Farms attempted to minimize the attorneys' fees incurred in this matter from the outset and communicated this aim to counsel for the City several

9

times. For example, at the outset of the litigation, Drewes Farms's counsel asked the City's counsel to agree to a briefing schedule in part to "minimize attorneys' fees on both sides to resolve the matter." (Fusonie Decl. Ex. 3.) Likewise, on April 9, 2019, Drewes Farms's counsel sent a letter to the City in part to "make another attempt to limit Toledo's exposure under 42 U.S.C. § 1988. . . ." (*Id.* Ex. 4.) As set forth below, Drewes Farms's counsel also reminded the City that the City's discovery practices were unnecessarily increasing attorneys' fees for both sides. (*Id.* Ex. 5.)

Furthermore, the City's conduct with respect to the Court's procedures regarding the exchange of letters prior to filing dispositive motions increased the number of hours Drewes Farms's counsel was required to spend on this matter. (Fusonie Decl. ¶ 14.) On April 9, 2019, Drewes Farms's counsel sent a letter to the City with 24 questions posed to "reduce the number of disputed issues that are raised to the Court." (*Id.* ¶ 14, Ex. 4.) When the City's counsel refused to respond in writing pursuant to the Court's case management requirements, the City compelled Drewes Farms to seek assistance from the Court. (*Id.* ¶ 14(b).) The Court ordered written responses from the City. (*Id.* ¶ 14(c).) Nevertheless, the City continued to refuse to adequately respond to the 24 questions raised in the April 9, 2019 letter. (*Id.* ¶ 14(d), Ex. 6.) The Court again ordered the City to respond, stating,

> On May 20 (Doc. 29 at 1), this Court ordered Defendant to "respond" to certain questions posed by Plaintiff (Doc. 27-2 at 2-3). Defendant responded in a May 24 email [] indicating it "cannot agree to the questions." Defendant should supplement its response as best it can to help streamline this discovery dispute and this lawsuit. *See* **Federal Civil Rule 1**.

(ECF No. 42 (emphasis added)).[4]  Despite the Court's order, the City then responded that "the text of LEBOR speaks for itself," and that it "cannot answer the . . . questions" or "provide an advisory opinion . . . on these issues."  (Fusonie Decl. Ex. 8.)  It was not even until the January 28, 2020 hearing – almost a year after the filing of the Complaint – that the City even attempted to answer whether LEBOR applied outside the City of Toledo. (ECF No. 61.)  The City's refusal to answer straightforward questions to narrow the scope of the litigation increased the number of hours that Drewes Farms's counsel was required to spend on this case.

Finally, the City's conduct with respect to discovery also increased the number of hours that counsel for Drewes Farms was required to spend on the case.  For example, the Court ordered Drewes Farms to disclose documents pertaining to standing on May 20, 2019.  (ECF No. 29.)  Despite the Order's reference to "documents . . . supporting Plaintiff's standing," *id.*, on May 24, 2019, the City emailed counsel for Drewes Farms with 24 topics for discovery, including "Documents regarding the payment of DFP's attorneys' fees, including engagement or retention agreements."  (Fusonie Decl. Ex. 7.)  In May and June 2019, Drewes Farms's counsel collected, reviewed, and produced documents related to standing.  (*Id.* ¶ 15(c))  Thereafter, the City informed Drewes Farms that it believed it had not received sufficient documentation regarding standing, and the City contacted the Court for a status conference.  (*Id.* ¶ 15(d) Ex. 9.)  Counsel for Drewes Farms sent a letter to the City stating that the City "demand that we disclose additional documents beyond the Court's order **seems intended to unnecessarily drive up the cost of litigation for the Plaintiff** and delay Toledo having to address the merits of LEBOR."  (*Id.* ¶ 15(f), Ex. 5 (emphasis added).)  Thereafter, the Court ordered briefing on the discovery

---

[4] Rule 1 provides that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

dispute. (ECF No. 42.) Ultimately, the Court ordered that "Plaintiff has produced adequate documentation regarding its standing. Further discovery on this issue would be disproportionate to the needs of the case." (ECF No. 45.)

In sum, the number of hours Drewes Farms's counsel spent on this case were both reasonable and necessary in light of the complexity of the case and the City's litigation tactics.

### B. Drewes Farms Is Entitled to Its Costs.

Drewes Farms is entitled to its costs under 28 U.S.C. § 1920 and 42 U.S.C. § 1988. Under Fed. R. Civ. P. 54(d)(1), "costs . . . should be allowed to the prevailing party." Under 28 U.S.C. § 1920, a district court may tax as costs filing fees and process server fees. *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 995 F. Supp. 2d 835, 853 (S.D. Ohio 2014) (awarding filing fee); *Bass v. Spitz*, 522 F. Supp. 1343 (E.D. Mich. 1981) (awarding expenses for private process server). Further, "[a]s part of an attorneys' fees award, § 1988 allows district courts to award 'those incidental and necessary expenses incurred in furnishing effective and competent representation.'" *Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 605 (6th Cir. 2014).

Here, Drewes Farms is entitled to recover its costs, totaling $532.50. As set forth in the Fusonie Declaration, Drewes Farms incurred costs of $400.00 for filing the Complaint and $132.50 for the process server to serve the Summons and Complaint. (Fusonie Decl. ¶ 17.) These costs are taxable under Section 1920 and therefore recoverable. *Schumacher*, 995 F. Supp. 2d at 853; *Bass*, 522 F. Supp. at 1343. Additionally, these costs are recoverable under Section 1988, as they were "incidental and necessary expenses incurred in furnishing effective and competent representation." *Ohio Right to Life Soc'y, Inc.*, 590 F. App'x at 605.

**IV.    CONCLUSION**

For these reasons, Plaintiff's Motion for Attorneys' Fees and Costs should be granted.

                                            Respectfully submitted,

                                            VORYS, SATER, SEYMOUR AND PEASE LLP

                                            s/*Thomas H. Fusonie*
                                            Kimberly W. Herlihy (0068668)
                                            Thomas H. Fusonie (0074201), *Trial Attorney*
                                            Daniel E. Shuey (0085398)
                                            52 East Gay Street
                                            P.O. Box 1008
                                            Columbus, Ohio 43216-1008
                                            Phone: (614) 464-8261
                                            Fax: (614) 719-4886
                                            kwherlihy@vorys.com
                                            thfusonie@vorys.com
                                            deshuey@vorys.com
                                            clingram@vorys.com

                                            *Counsel for Plaintiff Drewes Farms Partnership*

**CERTIFICATE OF MEMORANDUM LENGTH**

Pursuant to Local Rule 7.1(f)'s requirements, this memorandum does not exceed 15 pages.

                                                  s/*Thomas H. Fusonie*
Thomas H. Fusonie (0074201)
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-8261
Fax: (614) 719-4886
thfusonie@vorys.com