**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **DREWES FARMS PARTNERSHIP,** | : | |
| | : | **Civil Action No. 3:19-cv-00434** |
| *Plaintiff,* | : | |
| | : | **Judge Jack Zouhary** |
| v. | : | |
| | : | **Magistrate Judge James R. Knepp, II** |
| **THE CITY OF TOLEDO, OHIO,** | : | |
| | : | |
| *Defendant.* | : | |

## DECLARATION OF THOMAS H. FUSONIE

I, Thomas H. Fusonie, declare under the penalty of perjury and state as follows:

1. I am a partner at the law firm of Vorys, Sater, Seymour and Pease, LLP ("Vorys"). I serve as counsel for Plaintiff Drewes Farms Partnership ("Drewes Farms") in the above-captioned matter (the "Matter"). I am also the billing attorney for Vorys's representation of Drewes Farms in this Matter. I submit this Declaration in support of Drewes Farms's Motion for Attorneys' Fees and Costs. I have personal knowledge of all of the facts set forth herein, and if called as a witness under oath, I could and would competently testify thereto.

2. I submit this Declaration in support of Drewes Farms's Motion for Attorneys' Fees and Costs (the "Motion").

3. The total amount of attorneys' fees sought from the City of Toledo, Ohio (the "City") in connection with this Matter is $293,752.00.

4. Attached hereto as Exhibit 1 is a true and accurate copy of a chart that I prepared listing the services rendered in this Matter for which Drewes Farms seeks to recover, the number of hours spent on those services, the hourly rates for those services and a tabulation of hours per

attorney or paralegal, the total amount for such services, and an average rate per entry for such services.  In addition to the hours set forth in Exhibit 1, I estimate an additional two hours required for myself, an additional one hour for Kimberly Weber Herlihy, and an additional five hours for Elizabeth S. Alexander to finalize this Motion and supporting evidence.

5.      The billing rates sought for Drewes Farms's attorneys who have worked on this Matter ranged from $240 to $570 an hour during the representation.  The hourly rates increased from 2019 to 2020, as they have in almost every year I have been practicing law in Ohio. The following Vorys attorneys worked on the Matter at the following rates:

      a.      Kimberly Weber Herlihy worked on the Matter as a partner at $540 per hour in 2019 and $570 per hour in 2020.  Ms. Herlihy has been barred to practice law in Ohio since 1997 and has been a partner in Vorys' litigation group since January 2005.  She has extensive trial experience, including substantial experience with preliminary and permanent injunction hearings.  I understand that Ms. Herlihy is a fellow of the American College of Trial Lawyers.  I understand that Ms. Herlihy clerked for United States District Court Judge James G. Carr of the Northern District of Ohio, Western Division.

      b.      I worked on the Matter as a partner at $525 per hour in 2019 and $550 per hour for 2020.  I have been barred to practice law in Ohio since 2001 and have been a partner in Vorys's litigation group since January 2012.  I am admitted in various federal courts, including the Northern District of Ohio, the Southern District of Ohio, the District of Colorado, the United States Sixth Circuit Court of Appeals and the United States Supreme Court.  I

have considerable experience working on cases involving constitutional and property rights law in both the Northern and Southern District Courts of Ohio and in state courts throughout Ohio. Such work includes orally arguing constitutional and/or property rights issues on multiple occasions before the Supreme Court of Ohio. I have been recognized as a Best Lawyers in America, Commercial Litigation 2016-2020 and an Ohio Super Lawyers Rising Stars, Eminent Domain, 2013-2015. Additionally, I have considerable experience representing farmers in cases involving issues of constitutional and property rights law. As a result, I am a practice contact for the agricultural sub-group at Vorys.

c. Daniel E. Shuey worked on the Matter as a partner at $425 per hour for 2019 and $460 per hour for 2020. Mr. Shuey has been barred to practice law in Ohio since 2009 and has been a partner in Vorys's litigation group since 2018. I understand that Mr. Shuey clerked for Supreme Court of Ohio Chief Justice Thomas Moyer. Mr. Shuey is admitted to the following federal courts: The United States District Court for the Northern District of Ohio, The United States District Court for the Southern District of Ohio, The United States Court of Appeals for the Sixth Circuit, and the United States Supreme Court. Mr. Shuey has considerable experience working on cases involving constitutional and property rights law. Additionally, Mr. Shuey also has considerable experience representing farmers in cases involving issues of constitutional

and property rights law. As a result, Mr. Shuey is also a practice contact for the Vorys agricultural sub-group.

d. Elizabeth S. Alexander worked on the Matter as a mid-level litigation associate at $300 per hour for 2019 and $330 per hour for 2020. I understand that Ms. Alexander has been barred to practice law in Colorado since 2015 and in Ohio since 2017. I understand that prior to joining Vorys, Ms. Alexander completed a judicial clerkship with the Honorable Brooke Jackson of the United States District Court of the District of Colorado. Ms. Alexander has considerable experience working on cases involving constitutional and property rights law.

e. Lauren E. Bateman worked on the Matter as a legal intern in the litigation group at $240 per hour. I understand that Ms. Bateman became barred to practice law in Alaska in 2015 and in the District of Columbia in 2017. I understand that prior to joining Vorys, Ms. Bateman completed a judicial clerkship with The Honorable Algenon L. Marbley of the United States District Court of the Southern District of Ohio. During the time that she worked on the Matter, Ms. Bateman was in good standing to practice law in the District of Columbia. Ms. Bateman worked on this Matter under the supervision of the Vorys partners working on this Matter. Ms. Bateman left Vorys in August 2019 for a judicial clerkship with The Honorable R. Guy Cole, Jr. of the United States Court of Appeals for the Sixth Circuit.

f. Christopher A. LaRocco worked on the Matter as a mid-level litigation associate at $275 per hour. I understand that Mr. LaRocco has been

barred to practice law in Ohio since 2015.  Mr. LaRocco became involved in the Matter when Ms. Bateman left Vorys to pursue a judicial clerkship. Mr. LaRocco has significant experience involving property rights litigation throughout Ohio.

6.      Based on my 19 years of practice throughout Ohio and based on my experience in constitutional rights actions and in billing various clients for professional services in connection with such actions, the rates charged by the above-referenced Vorys attorneys are reasonable.

7.      Several of Drewes Farms's counsel – including me, Mr. Shuey and Ms. Alexander – have an expertise in constitutional and property rights law.  The rates set forth in Paragraph 5 for me, Mr. Shuey, and Ms. Alexander are reasonable in light of our respective experience and expertise in that specialty.  These rates are consistent with the rates Vorys has billed other clients for prosecuting constitutional rights actions.

8.      In addition, Ms. Herlihy has extensive federal and state trial practice experience, including preliminary injunction hearings, bench trials and jury trials that establish the reasonableness of her rates set forth in Paragraph 5.  Ms. Herlihy's standard hourly rates for other matters are $595 for 2019 and $625 for 2020.  The rates sought in this Matter are lower than Ms. Herlihy's standard hourly rates to account for this Matter's location and Ms. Herlihy focuses more on commercial and antitrust litigation than constitutional and property rights law disputes.

9.      Mr. LaRocco's standard hourly rate for 2019 was $300.  Mr. LaRocco's rate sought in this Matter is lower than Mr. LaRocco's standard hourly rate to account for this Matter's location and Mr. LaRocco's limited experience on constitutional rights litigation.  Mr.

LaRocco has significant experience in civil litigation and property rights litigation that establish the reasonableness of his rate set forth in Paragraph 5.

10.     Two paralegals, Lindsay M. Whetstone and Colleen S. Brandt, also worked on the Matter and we are seeking to recover their time at the rate of $125 per hour.  This rate has been lowered to account for this Matter's location and my review of awards for paralegal services in Ohio District Courts.

11.     Attached hereto as Exhibit 2 is a true and accurate copy of an Ohio State Bar Association publication titled The Economics of Law Practice in Ohio in 2019.

12.     The time expended by Drewes Farms's attorneys on this Matter through March 11, 2020 totaled 748.9 hours.  Based on my 19 years of practice throughout Ohio, my experience in constitutional and property law actions, and my experience billing various clients for professional services in connection with such actions, the time expended in this Matter for which Drewes Farms moves for an award of attorneys' fees is reasonable and consistent with the complexity of and amount of labor involved in litigating this matter.  The time expended was necessary in order to adequately and properly protect Drewes Farms's interests and to achieve Drewes Farms's successful prosecution of its claims and vindication of its constitutional rights.

13.     Additionally, counsel for Drewes Farms attempted to minimize attorneys' fees and costs in the Matter from the outset, and counsel for Drewes Farms communicated this to counsel for the City several times.  By way of example only, Drewes Farms's counsel sent the following communications to the City's counsel:

          a.     On March 6, 2019, Daniel Shuey emailed Dale Emch regarding a proposed briefing schedule in part to "minimize attorney's fees on both

sides to resolve this matter."  A true and accurate copy of the email thread containing the March 6, 2019 email is attached hereto as Exhibit 3.

b.   On April 9, 2019, I sent a letter to the City's counsel in part to "make another attempt to limit Toledo's exposure under 42 U.S.C. § 1988. . . ." A true and accurate copy of the April 9, 2019 letter is attached hereto as Exhibit 4.

c.   On June 28, 2019, I sent a letter to the City's counsel regarding discovery. I stated that the City's "demand that we disclose additional documents beyond the Court's order seems intended to unnecessarily drive up the cost of litigation for the Plaintiff and delay Toledo having to address the merits of LEBOR."  A true and accurate copy of the June 28, 2019 letter is attached hereto as Exhibit 5.

14.   Further, the City's conduct with respect to the Court's procedures regarding the exchange of letters prior to filing a dispositive motion increased the number of hours that Drewes Farms's counsel was required to spend on the Matter.

a.   On April 9, 2019, I sent a letter to the City's counsel regarding a motion for judgment on the pleadings.  I asked the City to respond to 24 questions in part to "reduce the number of disputed issues that are raised to the Court."  Exhibit 4.

b.   When the City's counsel refused to respond adequately in writing pursuant to the Court's case management requirements, counsel for Drewes Farms was forced to seek assistance from the Court.

c.   The Court ordered written responses from the City.

d. On May 9, 2019, the City's counsel sent a letter to Drewes Farms's counsel in response to the April 9, 2019 letter. A true and accurate copy of the May 9, 2019 letter is attached hereto as Exhibit 6.

e. On May 20, 2019, the Court issued an order regarding the City's responses to the questions posed in the April 9, 2019 letter.

f. On May 24, 2019, the City's counsel emailed counsel for Drewes Farms regarding the questions posed in the April 9, 2019 letter. A true and accurate copy of the May 24, 2019 email is attached hereto as Exhibit 7.

g. On July 9, 2019, the Court issued an order regarding the City's responses to the questions posed in Drewes Farms's April 9, 2019 letter.

h. On July 12, 2019, the City's counsel emailed counsel for Drewes Farms regarding the questions posed in the April 9, 2019 letter. A true and accurate copy of the July 12, 2019 email is attached hereto as Exhibit 8.

15. The City's conduct with respect to discovery also increased the number of hours that Drewes Farms's counsel was required to spend on the Matter.

a. On May 20, 2019, the Court ordered Drewes Farms to disclose documents that Drewes Farms relies upon to support its Drewes Farms's standing.

b. On May 24, 2019, the City emailed counsel for Drewes Farms with 24 topics for discovery, including "Documents regarding the payment of DFP's attorneys fees, including engagement or retention agreements." Exhibit 7.

c. In May and June 2019, Drewes Farms's counsel collected, reviewed, and produced documents related to standing.

    d.    On June 25, 2019, the City emailed counsel for Drewes Farms indicating that they believed they had not received sufficient documentation regarding standing.  Attached hereto as Exhibit 9 is a true and accurate copy of the June 25, 2019 correspondence from the City.

    e.    On June 28, 2019, the City asked the Court for a status conference.

    f.    On June 28, 2019, I sent a letter to the City's counsel explaining that Drewes Farms had complied with the Court's Order.  I stated that the City's "demand that we disclose additional documents beyond the Court's order seems intended to unnecessarily drive up the cost of litigation for the Plaintiff and delay Toledo having to address the merits of LEBOR." Exhibit 5.

    g.    On July 9, 2019, the Court ordered briefing on the discovery dispute.

    h.    On July 12, 2019, in a good faith effort to resolve the discovery dispute, Drewes Farms produced additional documents.

    i.    On July 18, 2019, the Court denied the City's request to compel additional standing-related discovery, stating that "Plaintiff has produced adequate documentation regarding its standing.  Further discovery on this issue would be disproportionate to the needs of the case."

16.    Attached hereto as Exhibit 10 is a true and accurate copy of a February 27, 2020 news article regarding the Matter that I have read.

17.    Drewes Farms also seeks recovery of its costs in the Matter.  The costs sought from the City in connection with this Matter total $532.50.  The costs include a $400.00 filing

fee for filing the Complaint and a $132.50 fee for the process server to serve the Summons and the Complaint.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 12th day of March, 2020 in Columbus, Ohio.

Thomas H. Fusonie

Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 2/11/2019 | FUSONIE, THOMAS H. | 1.20 | 525.00 | 630.00 | Outline of items related to factual background/claims. |
| 2/11/2019 | SHUEY, DANIEL E. | 3.20 | 425.00 | 1,360.00 | Research regarding LEBOR, potential causes of action, Drewes Farms, other community bills of rights, and standing issues. |
| 2/11/2019 | BATEMAN, LAUREN E. | 0.80 | 240.00 | 192.00 | Review and analyze LEBOR background documents. |
| 2/12/2019 | FUSONIE, THOMAS H. | 1.40 | 525.00 | 735.00 | Research related to claims to pursue including interstate commerce and First Amendment claims. Discussions with Mr. Shuey related to same. |
| 2/12/2019 | SHUEY, DANIEL E. | 1.50 | 425.00 | 637.50 | Conference with Ms. Bateman regarding LEBOR research. Review research regarding commerce and contract clauses. |
| 2/12/2019 | BATEMAN, LAUREN E. | 0.50 | 240.00 | 120.00 | Review and analyze LEBOR background materials. Office conference with D. Shuey to discuss Complaint strategy. |
| 2/13/2019 | FUSONIE, THOMAS H. | 0.30 | 525.00 | 157.50 | Discuss with Mr. Shuey standing, review of proposed Charter Amendment related to same and planning. |
| 2/13/2019 | BATEMAN, LAUREN E. | 2.80 | 240.00 | 672.00 | Draft Complaint. |
| 2/14/2019 | SHUEY, DANIEL E. | 2.50 | 425.00 | 1,062.50 | Research regarding community rights bills in other instances and commentary on their legality. Initial research on potential constitutional and preemption issues raised by LEBOR. Review Supreme Court of Ohio rulings on LEBOR. |
| 2/14/2019 | BATEMAN, LAUREN E. | 2.70 | 240.00 | 648.00 | Draft Complaint. |
| 2/15/2019 | FUSONIE, THOMAS H. | 0.70 | 525.00 | 367.50 | Consider Mr. Drewes' business structure and plan for call with him on [redacted]. Emails with team on public records requests to consider and preparation of same. |
| 2/15/2019 | SHUEY, DANIEL E. | 3.20 | 425.00 | 1,360.00 | Research regarding community rights bills in other instances and commentary on their legality. Conference with Ms. Bateman and Ms. Alexander regarding draft complaint. Review research on standing. |
| 2/15/2019 | ALEXANDER, ELIZABETH S. | 3.50 | 300.00 | 1,050.00 | Draft and revise public records request regarding the Lake Erie Bill of Rights. Revise and finalize the same for service. Conference with Mr. Shuey and Ms. Bateman regarding draft complaint and strategy moving forward. |
| 2/15/2019 | BATEMAN, LAUREN E. | 7.30 | 240.00 | 1,752.00 | Draft Complaint. |
| 2/17/2019 | BATEMAN, LAUREN E. | 9.30 | 240.00 | 2,232.00 | Draft Complaint. |
| 2/18/2019 | FUSONIE, THOMAS H. | 2.00 | 525.00 | 1,050.00 | Prepare for and participate in extended call with Mr. Drewes on [redacted]. Call with Mr. Shuey and Ms. Alexander regarding same. |
| 2/18/2019 | SHUEY, DANIEL E. | 4.50 | 425.00 | 1,912.50 | Prepare for and conduct interview of Drewes Farms Partnership to [redacted]. |
| 2/18/2019 | ALEXANDER, ELIZABETH S. | 3.40 | 300.00 | 1,020.00 | Prepare for and participate in interview of Messrs. Drewes to [redacted]. |
| 2/18/2019 | BATEMAN, LAUREN E. | 0.30 | 240.00 | 72.00 | Draft Complaint. |
| 2/19/2019 | SHUEY, DANIEL E. | 0.40 | 425.00 | 170.00 | Telephone conference with Ms. Bateman regarding LEBOR complaint. Review of LEBOR supporters' comments in media regarding purpose and intent of law. |
| 2/19/2019 | ALEXANDER, ELIZABETH S. | 0.40 | 300.00 | 120.00 | Draft and revise complaint to incorporate factual allegations pertaining to the Drewes Farms Partnership. |
| 2/19/2019 | BATEMAN, LAUREN E. | 1.30 | 240.00 | 312.00 | Draft Complaint. |
| 2/19/2019 | BATEMAN, LAUREN E. | 0.50 | 240.00 | 120.00 | Phone call with D. Shuey regarding Complaint strategy. |
| 2/19/2019 | BATEMAN, LAUREN E. | 0.20 | 240.00 | 48.00 | Review factual background of Drewes' farming operations. |
| 2/20/2019 | FUSONIE, THOMAS H. | 0.30 | 525.00 | 157.50 | Review of public records from Toledo. |
| 2/20/2019 | SHUEY, DANIEL E. | 3.00 | 425.00 | 1,275.00 | Review of documents from other community rights cases where CELDF was involved. |

EXHIBIT 1

Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 2/20/2019 | BATEMAN, LAUREN E. | 2.50 | 240.00 | 600.00 | Draft Complaint. |
| 2/21/2019 | SHUEY, DANIEL E. | 2.00 | 425.00 | 850.00 | Edit complaint. Continue research in support. |
| 2/21/2019 | ALEXANDER, ELIZABETH S. | 5.60 | 300.00 | 1,680.00 | Draft and revise complaint to incorporate factual allegations pertaining to Drewes Farms Partnership. Draft and revise complaint to incorporate factual allegations pertaining to LEBOR. Draft and revise the legal claims set forth in the complaint. Draft and revise introduction to complaint. |
| 2/21/2019 | BATEMAN, LAUREN E. | 5.70 | 240.00 | 1,368.00 | Draft Complaint. |
| 2/22/2019 | FUSONIE, THOMAS H. | 0.20 | 525.00 | 105.00 | Review of documents from Mr. Drewes. |
| 2/22/2019 | SHUEY, DANIEL E. | 4.20 | 425.00 | 1,785.00 | Review research in support of complaint and preliminary injunction. Review Drewes entity agreements. Communication with client regarding [redacted]. |
| 2/22/2019 | ALEXANDER, ELIZABETH S. | 0.30 | 300.00 | 90.00 | Draft and revise complaint to incorporate Ms. Bateman's revisions. |
| 2/22/2019 | BATEMAN, LAUREN E. | 1.10 | 240.00 | 264.00 | Draft Complaint. |
| 2/23/2019 | FUSONIE, THOMAS H. | 0.20 | 525.00 | 105.00 | Review of documents from Mr. Drewes. |
| 2/24/2019 | FUSONIE, THOMAS H. | 0.50 | 525.00 | 262.50 | Discuss with Mr. Shuey injunctive remedy. Email with same and Mr. Ingram on same issue and declaratory judgment relief. |
| 2/24/2019 | SHUEY, DANIEL E. | 2.30 | 425.00 | 977.50 | Research regarding scope of injunctive relief and impact on private citizen suits. Communicate with Mr. Drewes regarding [redacted]. Review of documents provided by client. |
| 2/24/2019 | ALEXANDER, ELIZABETH S. | 2.40 | 300.00 | 720.00 | Review and analysis of contracts to determine which contracts to incorporate into complaint. |
| 2/24/2019 | BATEMAN, LAUREN E. | 2.90 | 240.00 | 696.00 | Legal research as to scope of preliminary injunction. |
| 2/25/2019 | FUSONIE, THOMAS H. | 1.20 | 525.00 | 630.00 | Review of Drewes documents (.2). Meeting with Mr. Shuey on Complaint (.5). Call with Messrs. Drewes and Shuey on [redacted] (.5). |
| 2/25/2019 | SHUEY, DANIEL E. | 8.50 | 425.00 | 3,612.50 | Draft and edit complaint. Research regarding availability of certain constitutional claims under 42 U.S.C. 1983. Research regarding due process. Review documents provided by client. Telephone conference with Mr. Drewes. |
| 2/25/2019 | ALEXANDER, ELIZABETH S. | 1.40 | 300.00 | 420.00 | Draft and revise civil cover sheet, summons, and corporate disclosure form. |
| 2/25/2019 | BATEMAN, LAUREN E. | 10.70 | 240.00 | 2,568.00 | Draft Motion for Preliminary Injunction. |
| 2/26/2019 | FUSONIE, THOMAS H. | 4.80 | 525.00 | 2,520.00 | Continued preparation of complaint. Discussions on same with Mr. Shuey. Monitor election results. |
| 2/26/2019 | SHUEY, DANIEL E. | 8.40 | 425.00 | 3,570.00 | Draft and edit complaint and preliminary injunction. Communicate with Mr. Fusonie and Ms. Bateman regarding comments, edits, and research. Research regarding constitutional claims. Communicate with Mr. Drewes regarding [redacted]. Review social media and articles regarding public comments from city and supporters of LEBOR. |
| 2/26/2019 | ALEXANDER, ELIZABETH S. | 1.30 | 300.00 | 390.00 | Draft and revise complaint. |
| 2/26/2019 | BATEMAN, LAUREN E. | 11.60 | 240.00 | 2,784.00 | Draft Motion for Preliminary Injunction. |
| 2/27/2019 | FUSONIE, THOMAS H. | 2.10 | 525.00 | 1,102.50 | Continued preparation of complaint. Preparation of injunction brief. Review of case management order. |
| 2/27/2019 | SHUEY, DANIEL E. | 8.30 | 425.00 | 3,527.50 | Conduct research in support of complaint and motion for preliminary injunction. Draft and edit complaint and motion. Communicate with client regarding [redacted]. |
| 2/27/2019 | BATEMAN, LAUREN E. | 10.40 | 240.00 | 2,496.00 | Draft and revise Motion for Preliminary Injunction. |
| 2/28/2019 | FUSONIE, THOMAS H. | 2.30 | 525.00 | 1,207.50 | Continued preparation of motion for injunction. Emails and discussions with Mr. Shuey and Ms. Bateman on motion for injunction, research related to same and strategy related to same . |
| 2/28/2019 | SHUEY, DANIEL E. | 5.70 | 425.00 | 2,422.50 | Edit and finalize motion for preliminary injunction. Respond to comments and questions from Mr. Fusonie and Ms. Bateman. Research regarding declaratory judgment statutes. |
| 2/28/2019 | ALEXANDER, ELIZABETH S. | 0.70 | 300.00 | 210.00 | Draft and revise motion for preliminary injunction. |

Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 2/28/2019 | BATEMAN, LAUREN E. | 4.60 | 240.00 | 1,104.00 | Draft and revise Motion for Preliminary Injunction. |
| 3/1/2019 | FUSONIE, THOMAS H. | 1.00 | 525.00 | 525.00 | Evaluate consent decree options and timing or potential planning/strategy related to same. |
| 3/4/2019 | HERLIHY, KIMBERLY W. | 1.10 | 540.00 | 594.00 | Preparation for and participation in conference with court to discuss preliminary injunction and briefing schedule. |
| 3/4/2019 | FUSONIE, THOMAS H. | 4.00 | 525.00 | 2,100.00 | Call with court staff. Review complaint. Calls with Toledo counsel. Strategy discussions with Mr. Shuey and Mr. Ingram. Participate in court call. Post-call discussion with Mr. Shuey and Ms. Herlihy on same and potential next steps. |
| 3/4/2019 | SHUEY, DANIEL E. | 2.30 | 425.00 | 977.50 | Telephone conferences with Mr. Ingram and Mr. Fusonie regarding strategy for approaching opposing counsel and path forward. Prepare for and attend telephone conference with Court regarding preliminary injunction. Begin outlining consent documents to send to opposing counsel. |
| 3/5/2019 | FUSONIE, THOMAS H. | 1.70 | 525.00 | 892.50 | Review and revised proposed PI order. Research related to scope and bond items. Discuss proposed revisions with Mr. Shuey. |
| 3/5/2019 | SHUEY, DANIEL E. | 2.50 | 425.00 | 1,062.50 | Research regarding minimum requirements of a preliminary injunction. Draft agreed order regarding preliminary injunction. Telephone conference with Mr. Drewes regarding [redacted]. |
| 3/6/2019 | FUSONIE, THOMAS H. | 1.50 | 525.00 | 787.50 | Review and revise PI order. Discuss same and strategy with Mr. Shuey. Consider strategy related to declaratory judgment claims and how the City could reasonably challenge validity of claims. Review of same claims to consider options in convincing City it is in best interest to resolve claims to mitigate attorneys' fees. Consider email to Mr. Emch on same. |
| 3/6/2019 | SHUEY, DANIEL E. | 1.30 | 425.00 | 552.50 | Edit draft agreed order on preliminary injunction. Draft proposed briefing schedule on merits. Draft email to opposing counsel regarding the agreed order and briefing schedule. |
| 3/7/2019 | FUSONIE, THOMAS H. | 0.10 | 525.00 | 52.50 | Review of Mr. Emch's email on Toledo's reviewing of proposed order. |
| 3/13/2019 | HERLIHY, KIMBERLY W. | 0.30 | 540.00 | 162.00 | Correspondence with Messrs. Fusonie and Shuey regarding new counsel. Review of proposed preliminary injunction order. |
| 3/13/2019 | FUSONIE, THOMAS H. | 0.30 | 525.00 | 157.50 | Emails from Mr. Emch and Mr. Shuey related to Toledo retaining outside counsel and Mr. Emch's indication it will work on preliminary injunction order terms. Consider strategy related to obtaining preliminary injunction order. |
| 3/13/2019 | SHUEY, DANIEL E. | 1.20 | 425.00 | 510.00 | Draft communications to City of Toledo regarding agreed preliminary injunction and case schedule. Analysis of new opposing counsel and draft email to new counsel regarding agreed preliminary injunction. |
| 3/14/2019 | HERLIHY, KIMBERLY W. | 0.30 | 540.00 | 162.00 | Preparation for and participation in conference with opposing counsel and Mr. Shuey. Court conference regarding scheduling of call with judge. Review proposed correspondence to opposing counsel. |
| 3/14/2019 | FUSONIE, THOMAS H. | 1.00 | 525.00 | 525.00 | Discuss agreed order proposals/edits by Toledo with Mr. Shuey. Discuss with Mr. Shuey strategy and potential negotiations on agreed preliminary injunction order. |
| 3/14/2019 | SHUEY, DANIEL E. | 1.90 | 425.00 | 807.50 | Prepare for and attend telephone conference with opposing counsel regarding agreed preliminary injunction. Draft email to opposing counsel regarding proposed schedule and discussion points for judge. |

Case: 3:19-cv-00434-JZ Doc #: 65-2 Filed: 03/12/20 14 of 124. PageID #: 864
Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 3/15/2019 | HERLIHY, KIMBERLY W. | 1.80 | 540.00 | 972.00 | Review of case law provided by Mr. Shuey to support proposed preliminary injunction order. Review of revised preliminary injunction order, and correspondence with Messrs. Fusonie and Shuey regarding same. Revise preliminary injunction order, and correspondence with opposing counsel and court regarding same. Conference with court regarding rescheduling of call with judge. Further correspondence to opposing counsel regarding preliminary injunction order. |
| 3/15/2019 | FUSONIE, THOMAS H. | 3.60 | 525.00 | 1,890.00 | Review and revise proposed agreed order on PI. Emails from opposing counsel regarding same. Conference with Ms. Herlihy and then with Mr. Shuey on agree order. Participate in court call. Review agreed order. |
| 3/15/2019 | SHUEY, DANIEL E. | 5.70 | 425.00 | 2,422.50 | Preliminary injunction research to prepare for opposing counsel's edits. Review opposing counsel's edits to preliminary injunction and prepare potential responses. Prepare for and attend telephone conferences with the Court. Edit agreed preliminary injunction in response to call with the Court and distribute for comment. |
| 3/18/2019 | FUSONIE, THOMAS H. | 4.00 | 525.00 | 2,100.00 | Review of motion to intervene. Review of proposed revision to order. Emails and discussions with Mr. Shuey regarding same. Email to Court and counsel regarding same. Further emails with Counsel and Court. Review of further version of draft order from Court. Review final order. Meeting with Mr. Shuey on next steps. |
| 3/18/2019 | SHUEY, DANIEL E. | 1.30 | 425.00 | 552.50 | Review motion to intervene and conduct research to prepare for opposition. |
| 3/18/2019 | SHUEY, DANIEL E. | 4.10 | 425.00 | 1,742.50 | Draft multiple communications to the Court and opposing counsel regarding agreed preliminary injunction language. Conduct further research regarding points raised by opposing counsel. Draft emails and attend telephone conferences with the Dreweses regarding [redacted]. |
| 3/19/2019 | FUSONIE, THOMAS H. | 2.30 | 525.00 | 1,207.50 | Meeting with Mr. Shuey and Ms. Bateman on intervention. Research related to same and ecosystems. Research related to legal entities and standing. |
| 3/19/2019 | SHUEY, DANIEL E. | 1.70 | 425.00 | 722.50 | Conference with Mr. Fusonie and Ms. Bateman regarding motion to intervene response strategy. Research regarding intervention rules. |
| 3/19/2019 | BATEMAN, LAUREN E. | 2.30 | 240.00 | 552.00 | Discuss strategy and perform legal research regarding Motion to Intervene. |
| 3/20/2019 | SHUEY, DANIEL E. | 1.30 | 425.00 | 552.50 | Research regarding intervention. |
| 3/20/2019 | BATEMAN, LAUREN E. | 1.60 | 240.00 | 384.00 | Draft opposition to Motion to Intervene. |
| 3/21/2019 | BATEMAN, LAUREN E. | 5.00 | 240.00 | 1,200.00 | Draft opposition to Motion to Intervene. |
| 3/22/2019 | BATEMAN, LAUREN E. | 7.90 | 240.00 | 1,896.00 | Draft opposition to Motion to Intervene. |
| 3/24/2019 | BATEMAN, LAUREN E. | 2.00 | 240.00 | 480.00 | Draft opposition to Motion to Intervene. |
| 3/25/2019 | SHUEY, DANIEL E. | 0.50 | 425.00 | 212.50 | Attention to arguments in opposition to motion to intervene. |
| 3/25/2019 | BATEMAN, LAUREN E. | 10.20 | 240.00 | 2,448.00 | Draft opposition to Motion to Intervene. |
| 3/26/2019 | FUSONIE, THOMAS H. | 0.50 | 525.00 | 262.50 | Conference with Mr. Shuey on responding to motion to intervene. Emails with Court staff on opposing same and timing of opposition. |
| 3/26/2019 | SHUEY, DANIEL E. | 0.30 | 425.00 | 127.50 | Conference with Mr. Fusonie regarding strategy for opposing motion to intervene. |
| 3/26/2019 | BATEMAN, LAUREN E. | 5.20 | 240.00 | 1,248.00 | Draft opposition to Motion to Intervene. |
| 3/27/2019 | FUSONIE, THOMAS H. | 0.80 | 525.00 | 420.00 | Research on intervention related to CELDF. Review of admissions of CELDF's involvement. Review of sanctions issues related to CELDF. Review initial draft of opposition to motion to intervene. Discuss same issues with Mr. Shuey. |
| 3/27/2019 | SHUEY, DANIEL E. | 0.80 | 425.00 | 340.00 | Continue editing memorandum opposing intervention. |
| 3/27/2019 | BATEMAN, LAUREN E. | 2.00 | 240.00 | 480.00 | Draft opposition to Motion to Intervene. |

Page 4

Case: 3:19-cv-00434-JZ Doc #: 65-2 Filed: 03/12/20 15 of 124. PageID #: 865

Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 3/28/2019 | FUSONIE, THOMAS H. | 2.40 | 525.00 | 1,260.00 | Analyze Answer from Toledo. Review of adequately defend issue with intervention. Review of Ms. Bateman's comparision of arguments for intervention vs. defenses raised by Toledo to address adequately defend issue. Research on CELDF and involvement in other suits/sanctions for meritless arguments. Communications with Mr. Shuey regarding same and opposition to motion to intervene. |
| 3/28/2019 | SHUEY, DANIEL E. | 1.60 | 425.00 | 680.00 | Review answer. Edit memorandum opposing intervention. |
| 3/28/2019 | BATEMAN, LAUREN E. | 1.70 | 240.00 | 408.00 | Draft opposition to Motion to Intervene. |
| 3/29/2019 | FUSONIE, THOMAS H. | 3.00 | 525.00 | 1,575.00 | Review of draft opposition to intervention. Meeting with Ms. Bateman and Mr. Shuey regarding same. Review of State of Ohio intervention motion. Discuss same with Mr. Shuey. |
| 3/29/2019 | SHUEY, DANIEL E. | 2.80 | 425.00 | 1,190.00 | Edit motion opposing intervention. Conference with Mr. Fusonie and Ms. Bateman regarding edits to motion. Review of AG Yost motion to intervene. |
| 3/29/2019 | BATEMAN, LAUREN E. | 1.40 | 240.00 | 336.00 | Draft opposition to Motion to Intervene. |
| 3/30/2019 | FUSONIE, THOMAS H. | 0.50 | 525.00 | 262.50 | Consider strategy and potential outreach to State intervenor. |
| 3/31/2019 | FUSONIE, THOMAS H. | 0.60 | 525.00 | 315.00 | Compare complaint with answers to assess admissions, denials and massive extent of speak for itself avoidances. |
| 3/31/2019 | FUSONIE, THOMAS H. | 0.90 | 525.00 | 472.50 | Further review of AG Yost's motion to intervene. Email team regarding same. Further review and editing of opposition to "Ecosystem" intervention motion. |
| 3/31/2019 | BATEMAN, LAUREN E. | 3.70 | 240.00 | 888.00 | Draft opposition to Motion to Intervene. |
| 4/1/2019 | FUSONIE, THOMAS H. | 0.40 | 525.00 | 210.00 | Further review of State's motion to intervene to consider strategy related to same (.2). Consider comments of CELDF regarding lawsuit and State's intervention (.2 hours). |
| 4/1/2019 | BATEMAN, LAUREN E. | 8.30 | 240.00 | 1,992.00 | Draft opposition to Motion to Intervene. |
| 4/2/2019 | FUSONIE, THOMAS H. | 1.90 | 525.00 | 997.50 | Preparation of opposition to motion to intervene of TSW and "Lake Erie". |
| 4/2/2019 | SHUEY, DANIEL E. | 1.80 | 425.00 | 765.00 | Edit opposition to motion to intervene. |
| 4/2/2019 | BATEMAN, LAUREN E. | 2.00 | 240.00 | 480.00 | Draft opposition to Motion to Intervene. |
| 4/3/2019 | FUSONIE, THOMAS H. | 1.70 | 525.00 | 892.50 | Continued preparation of opposition to TSW and "Lake Erie" intervention. (1.1) Call with Mr. Kowalski on intervenors (.1). Call with counsel for AG Yost on intervention and case status (.5). |
| 4/3/2019 | SHUEY, DANIEL E. | 2.60 | 425.00 | 1,105.00 | Edit opposition to motion to intervene. Telephone conference with counsel for the state of Ohio. Telephone conference with opposing counsel. |
| 4/4/2019 | FUSONIE, THOMAS H. | 1.20 | 525.00 | 630.00 | Continued preparation of intervention opposition. Develop strategy related to same and to dispositive motion. |
| 4/4/2019 | SHUEY, DANIEL E. | 0.50 | 425.00 | 212.50 | Edit opposition to motion to intervene. |
| 4/4/2019 | BATEMAN, LAUREN E. | 0.70 | 240.00 | 168.00 | Draft opposition to Motion to Intervene. |
| 4/5/2019 | FUSONIE, THOMAS H. | 3.50 | 525.00 | 1,837.50 | Continued preparation of opposition to motion to intervene. Meet with Ms Bateman regarding same. Review law review article and case law to prepare arguments in opposition to motion to intervene. Review of odd response by Toledo to motion to intervene that failed to even address Rule 11 problems with motion to intervene. |
| 4/5/2019 | BATEMAN, LAUREN E. | 2.80 | 240.00 | 672.00 | Draft opposition to Motion to Intervene. |
| 4/8/2019 | FUSONIE, THOMAS H. | 1.90 | 525.00 | 997.50 | Prepare pre-dispositive motion letter to Toledo. |
| 4/8/2019 | SHUEY, DANIEL E. | 0.80 | 425.00 | 340.00 | Edit letter to opposing counsel. Review motion for leave to file a reply brief. |
| 4/9/2019 | FUSONIE, THOMAS H. | 1.40 | 525.00 | 735.00 | Continued preparation of pre-dispositive motion to Toledo. Emails internally regarding same. Emails with Mr. Kowalski regarding same. |

Page 5

Case: 3:19-cv-00434-JZ Doc #: 65-2 Filed: 03/12/20 16 of 124. PageID #: 866
Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 4/12/2019 | FUSONIE, THOMAS H. | 0.60 | 525.00 | 315.00 | Call with Mr. Kowalski regarding pre-dispositive motion letter and Toledo's response and general discussion about litigation. Discuss same with Mr. Shuey and report by email to entire team. Consider referendum claim by Toledo. |
| 4/12/2019 | SHUEY, DANIEL E. | 0.40 | 425.00 | 170.00 | Research regarding city's ability to enter into a consent decree finding its charter unconstitutional. |
| 4/15/2019 | FUSONIE, THOMAS H. | 0.60 | 525.00 | 315.00 | Consider and review case law on consent decree option. Further consider referendum claim by Mr. Kowalski. |
| 4/16/2019 | FUSONIE, THOMAS H. | 0.70 | 525.00 | 367.50 | Review of CELDF communications and public posting. Review of Mayor's comments and attack on farmers and support for defense of lawsuit. Review of comments attributed to Mr. Emch regarding same. Consider impact on strategy and potential for consent decree option. |
| 4/22/2019 | FUSONIE, THOMAS H. | 0.10 | 525.00 | 52.50 | Email to Mr. Kowalski on responding to pre-Rule 12 motion letter. |
| 4/22/2019 | FUSONIE, THOMAS H. | 0.30 | 525.00 | 157.50 | Review and analyze reply of motion to intervene by "Lake Erie " and citizen group. |
| 4/22/2019 | SHUEY, DANIEL E. | 1.00 | 425.00 | 425.00 | Analyze reply in support of intervention. |
| 4/22/2019 | BATEMAN, LAUREN E. | 0.50 | 240.00 | 120.00 | Review and analyze Ecosystem and TSW's Reply Brief in support of Motion to Intervene. |
| 4/23/2019 | FUSONIE, THOMAS H. | 0.40 | 525.00 | 210.00 | Review of Mr. Shuey's email on Toledo's position on response to our letter and dispositive motion plan. Discuss same and proposed response with same. |
| 4/23/2019 | SHUEY, DANIEL E. | 0.60 | 425.00 | 255.00 | Telephone conference with opposing counsel regarding dispositive motions and Toledo's position on same. Review local court procedures for dispositive motions. Draft follow up email to opposing counsel regarding request for position in writing. |
| 4/25/2019 | FUSONIE, THOMAS H. | 0.20 | 525.00 | 105.00 | Email from Court regarding Phone Conference on proposed motion for judgment on the pleadings. Emails internally regarding same. |
| 5/1/2019 | HERLIHY, KIMBERLY W. | 0.20 | 540.00 | 108.00 | Review of court order regarding intervenor and correspondence with team regarding same. |
| 5/1/2019 | FUSONIE, THOMAS H. | 0.50 | 525.00 | 262.50 | Review of Court order granting State intervention. (0.20) Emails with Mr. Drewes on [redacted] [redacted]. (0.30) |
| 5/1/2019 | SHUEY, DANIEL E. | 0.50 | 425.00 | 212.50 | Review of order granting intervention to state of Ohio. |
| 5/2/2019 | HERLIHY, KIMBERLY W. | 0.20 | 540.00 | 108.00 | Conference Mr. Fusonie regarding status of motions pending before Judge Zouhary and upcoming conference |
| 5/2/2019 | FUSONIE, THOMAS H. | 0.20 | 525.00 | 105.00 | Discuss with Ms. Herlihy intervention motions pending and order of Court granting State intervention. |
| 5/7/2019 | HERLIHY, KIMBERLY W. | 0.10 | 540.00 | 54.00 | Review order regarding intervenors. |
| 5/7/2019 | FUSONIE, THOMAS H. | 0.40 | 525.00 | 210.00 | Review and analysis of Order denying intervention for "ecosystem" and TSW on their motion that Toledo refused to oppose or aid in defending against and instead supported. Email to Mr. Drewes regarding [redacted]. |
| 5/7/2019 | SHUEY, DANIEL E. | 0.50 | 425.00 | 212.50 | Review lower court's order on intervention. |
| 5/8/2019 | FUSONIE, THOMAS H. | 1.00 | 525.00 | 525.00 | Review of motion to stay in District Court by denied intervenors and analyze and develop response. |
| 5/8/2019 | SHUEY, DANIEL E. | 1.40 | 425.00 | 595.00 | Attention to court's order regarding intervention and preparation for response to potential appeal. |
| 5/8/2019 | BATEMAN, LAUREN E. | 1.10 | 240.00 | 264.00 | Review and analyze Motion to Stay |
| 5/9/2019 | HERLIHY, KIMBERLY W. | 0.20 | 540.00 | 108.00 | Review of correspondence from opposing counsel to court regarding joint filing, and correspondence with Mr. Fusonie regarding same. |
| 5/9/2019 | FUSONIE, THOMAS H. | 0.30 | 525.00 | 157.50 | Review of Ms. Skow's email on Rule 12 motion. (0.20) Review of Mr. Martin's letter on same. (0.10) |
| 5/9/2019 | BATEMAN, LAUREN E. | 8.00 | 240.00 | 1,920.00 | Draft Opposition to Motion to Stay. |
| 5/10/2019 | HERLIHY, KIMBERLY W. | 0.50 | 540.00 | 270.00 | Review of correspondence from city and state counsel regarding position with respect to issues for motion for judgment on the pleadings, and correspondence with Mr. Fusonie and Mr. Shuey regarding same. |

Page 6

Case: 3:19-cv-00434-JZ Doc #: 65-2 Filed: 03/12/20 17 of 124. PageID #: 867

Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 5/10/2019 | FUSONIE, THOMAS H. | 0.90 | 525.00 | 472.50 | Meeting with Ms. Bateman and Mr. Shuey on oppositon motion to stay. Meeting with same on Toledo's response letter and next steps related to motion for judgment on the pleadings. Emails with Ms. Herlihy on Toledo's response letter and plans for record phone conference on same. |
| 5/10/2019 | SHUEY, DANIEL E. | 1.80 | 425.00 | 765.00 | Review of letters from other parties. Conference with Mr. Fusonie regarding letters from other parties. Review court order and email from opposing counsel regarding how to transmit letters to court. Draft and send emails to court and counsel regarding exchanged letters. |
| 5/10/2019 | BATEMAN, LAUREN E. | 0.50 | 240.00 | 120.00 | Meet with D. Shuey and T. Fusonie regarding case strategy. |
| 5/10/2019 | BATEMAN, LAUREN E. | 8.00 | 240.00 | 1,920.00 | Draft Opposition to Motion to Stay. |
| 5/13/2019 | HERLIHY, KIMBERLY W. | 1.00 | 540.00 | 540.00 | Review of opposition to motion to stay and notice of filing of letters. Correspondence with team regarding same. |
| 5/13/2019 | FUSONIE, THOMAS H. | 0.80 | 525.00 | 420.00 | Prepartion of opposition to motion to stay filed in District Court. Discuss same with Ms. Bateman. Emails with Ms. Bateman and Herlihy and Mr. Shuey regarding use of exchanged letters in opposition to motion to stay filed in District Court given denied intervenors claim of urgency based on "private" claim as to the exchanged letters. |
| 5/13/2019 | SHUEY, DANIEL E. | 3.00 | 425.00 | 1,275.00 | Review and edit response to motion to stay in District Court. |
| 5/14/2019 | HERLIHY, KIMBERLY W. | 0.60 | 540.00 | 324.00 | Review and revise opposition to motion to stay in district and various correspondence regarding same. |
| 5/14/2019 | FUSONIE, THOMAS H. | 1.30 | 525.00 | 682.50 | Continued preparation and revisions to opposition to stay in District Court. Discussions with Ms. Bateman and Mr. Shuey regarding same. Emails with Ms. Herlihy regarding same. |
| 5/14/2019 | SHUEY, DANIEL E. | 2.00 | 425.00 | 850.00 | Edit District Court filings. |
| 5/14/2019 | BATEMAN, LAUREN E. | 2.40 | 240.00 | 576.00 | Draft Opposition to Motion to Stay. |
| 5/15/2019 | HERLIHY, KIMBERLY W. | 0.20 | 540.00 | 108.00 | Review court order regarding motion to stay and correspondence with team regarding same. |
| 5/15/2019 | FUSONIE, THOMAS H. | 0.30 | 525.00 | 157.50 | Review of District Court's order denying denied intervenors' motion to stay. |
| 5/15/2019 | SHUEY, DANIEL E. | 0.70 | 425.00 | 297.50 | Review of Court's decision on motion to stay and discussion with Mr. Fusonie regarding impact on strategy. |
| 5/16/2019 | FUSONIE, THOMAS H. | 3.00 | 525.00 | 1,575.00 | Prepare for court call by review of complaint, answer, motion for PI, Charter Amendment, briefing by denied intervenors on issues and Toledo's letter attempting to dodge taking a position on the scope of LEBOR. |
| 5/16/2019 | SHUEY, DANIEL E. | 1.30 | 425.00 | 552.50 | Prepare for status conference. |
| 5/16/2019 | BATEMAN, LAUREN E. | 0.70 | 240.00 | 168.00 | Draft talking points on federal supremacy for T. Fusonie |
| 5/17/2019 | HERLIHY, KIMBERLY W. | 1.00 | 540.00 | 540.00 | Preparation for and participation in telephone conference before Judge Zouhary to discuss proposed motion for judgment on the pleadings, discovery sought by city, and other matters. |
| 5/17/2019 | FUSONIE, THOMAS H. | 3.70 | 525.00 | 1,942.50 | Prepare for oral argument on Rule 12 request including draft talking points outline, review of Charter Amendment, complaint and answer and exchanged letters. (2.20) Call with State of Ohio attorneys and Mr. Shuey related to Court record phone conference. (0.50) Participate in Court record phone conference and post-call meeting with Ms. Herlihy and Mr. Shuey. (1.0) |
| 5/17/2019 | SHUEY, DANIEL E. | 4.40 | 425.00 | 1,870.00 | Prepare for and attend record telephone conference with court. Telephone conference with state of Ohio in preparation for status conference. Conference with Mr. Fusonie and Ms. Herlihy regarding strategy for conference. Draft updates to client regarding [redacted]. |
| 5/20/2019 | HERLIHY, KIMBERLY W. | 0.20 | 540.00 | 108.00 | Review court order regarding motion for judgment on the pleading and discovery issues discussed at conference, and correspondence with team regarding same. |

Page 7

Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 5/20/2019 | FUSONIE, THOMAS H. | 2.10 | 525.00 | 1,102.50 | Review of client documents. (0.90) Review of court order on Rule 12 motion and disclosures. (0.20) Call with Shuey on same. (0.10) Call with Messrs. Drewes and Drewes and Shuey on [redacted]. (1.00) |
| 5/20/2019 | SHUEY, DANIEL E. | 1.20 | 425.00 | 510.00 | Conference with Mr. Fusonie and telephone conference with Mr. Drewes regarding [redacted]. |
| 5/22/2019 | FUSONIE, THOMAS H. | 0.50 | 525.00 | 262.50 | Review of production contracts. (0.25) Call with Mr. Shuey on his meeting and document gathering with Messrs. Drewes and Drewes. (0.25) |
| 5/22/2019 | SHUEY, DANIEL E. | 4.00 | 425.00 | 1,700.00 | Travel to and from Drewes Farm for document collection. |
| 5/22/2019 | SHUEY, DANIEL E. | 1.80 | 425.00 | 765.00 | Meet with Drewes family regarding [redacted]. |
| 5/23/2019 | FUSONIE, THOMAS H. | 1.00 | 525.00 | 525.00 | Analyze and review of motion for preliminary injunction and complaint to develop/outline motion for judgment on the pleadings arguments and additional research/arguments for same. |
| 5/23/2019 | SHUEY, DANIEL E. | 1.70 | 425.00 | 722.50 | Review of Drewes Farms documents. Conference with Ms. Bateman and Mr. Fusonie regarding arguments for motion for judgment on the pleadings. |
| 5/23/2019 | BATEMAN, LAUREN E. | 0.50 | 240.00 | 120.00 | Draft Motion for Judgment on the Pleadings. |
| 5/24/2019 | FUSONIE, THOMAS H. | 0.60 | 525.00 | 315.00 | Review of intervenor's complaint. Review of Ms. Skow email with excessive and groundless requests for documents to delay litigation. Meet with Mr. Shuey regarding Skow email. |
| 5/24/2019 | SHUEY, DANIEL E. | 0.90 | 425.00 | 382.50 | Attention to preparing documents and drafting email for disclosure. |
| 5/28/2019 | HERLIHY, KIMBERLY W. | 0.70 | 540.00 | 378.00 | Conference Mr. Fusonie and Mr. Shuey regarding city's refusal to answer questions required by court order and production of documents. |
| 5/28/2019 | FUSONIE, THOMAS H. | 0.70 | 525.00 | 367.50 | Meeting with Mr. Shuey and Ms. Herlihy on Toledo's bad faith refusal to respond to questions on scope of LEBOR and request for certain irrelevant data/documents. |
| 5/28/2019 | SHUEY, DANIEL E. | 0.70 | 425.00 | 297.50 | Conference with Mr. Fusonie and Ms. Herlihy regarding case strategy and response to court order. |
| 5/28/2019 | SHUEY, DANIEL E. | 0.50 | 425.00 | 212.50 | Research in support of motion for judgment on the pleadings. |
| 5/29/2019 | SHUEY, DANIEL E. | 0.50 | 425.00 | 212.50 | Attention to document production issues. |
| 5/30/2019 | WHETSTONE, LINDSAY M. | 1.70 | 125.00 | 212.50 | Review Farm leases and redact pricing information. Review and preparation of documents for production. |
| 5/30/2019 | FUSONIE, THOMAS H. | 1.80 | 525.00 | 945.00 | Research on void for vagueness and First Amendment case law for motion for judgment on pleadings. (1.30) Emails to Ms. Bateman regarding same. (0.20) Planning call on motion with Mr. Shuey. (0.30) |
| 5/30/2019 | SHUEY, DANIEL E. | 1.90 | 425.00 | 807.50 | Attention to preparing documents for production. Research in support of motion for judgment on the pleadings. |
| 5/31/2019 | FUSONIE, THOMAS H. | 1.30 | 525.00 | 682.50 | Review of potential document production and emails with Mr. Shuey related to same. (0.30) Preparation of email to counsel on document production and declaration and emails internally regarding same. (0.70) Call with Ms Bateman regarding certain arguments to develop for Rule 12 motion. (0.30) |
| 5/31/2019 | SHUEY, DANIEL E. | 1.20 | 425.00 | 510.00 | Draft notice for filing. Correspond with Mr. Fusonie regarding document disclosures. Research in support of motion. |
| 6/2/2019 | BATEMAN, LAUREN E. | 4.60 | 240.00 | 1,104.00 | Draft Motion for Judgment on the Pleadings. |
| 6/3/2019 | FUSONIE, THOMAS H. | 1.40 | 525.00 | 735.00 | Revise and further drafting of Rule 12 motion (1.0). Meeting with Mr. Shuey on Rule 12 motion (.4) |
| 6/3/2019 | FUSONIE, THOMAS H. | 0.20 | 525.00 | 105.00 | Review Drewes Farms leases. |
| 6/3/2019 | BATEMAN, LAUREN E. | 12.50 | 240.00 | 3,000.00 | Draft Motion for Judgment on the Pleadings. |

Case: 3:19-cv-00434-JZ Doc #: 65-2 Filed: 03/12/20 19 of 124. PageID #: 869
Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 6/4/2019 | FUSONIE, THOMAS H. | 2.70 | 525.00 | 1,417.50 | Review and revise motion for judgment on the pleadings (1.1). Review of case law on various claims to develop motion (.7) Meeting with Ms. Bateman and Mr. Shuey on motion for judgment on pleadings, arguments to further develop, further research and other matters related to motion for judgment on the pleadings (.9). |
| 6/4/2019 | SHUEY, DANIEL E. | 2.40 | 425.00 | 1,020.00 | Conference with Mr. Fusone and Ms. Bateman regarding draft motion. Review and edit motion. |
| 6/4/2019 | BATEMAN, LAUREN E. | 8.60 | 240.00 | 2,064.00 | Draft Motion for Judgment on the Pleadings. |
| 6/5/2019 | FUSONIE, THOMAS H. | 0.20 | 525.00 | 105.00 | Call with Mr. Bachman to comply with Court order to try and avoid duplicate motion for judgment on the pleading arguments. |
| 6/5/2019 | FUSONIE, THOMAS H. | 3.10 | 525.00 | 1,627.50 | Continued preparation and revisions to motion for judgment on the pleadings (2.7). Discussions with Ms Bateman on developing certain points/arguments in same motion (.4). |
| 6/5/2019 | SHUEY, DANIEL E. | 1.10 | 425.00 | 467.50 | Review and edit motion for judgment on the pleadings. |
| 6/5/2019 | BATEMAN, LAUREN E. | 1.00 | 240.00 | 240.00 | Draft Motion for Judgment on the Pleadings. |
| 6/6/2019 | HERLIHY, KIMBERLY W. | 1.50 | 540.00 | 810.00 | Review and revise motion for judgment on the pleadings. |
| 6/6/2019 | FUSONIE, THOMAS H. | 1.20 | 525.00 | 630.00 | Continued preparation of motion fo judgment on the pleadings (.5). Meeting with Mr. Shuey and Ms. Bateman regarding further preparation of same (.7). |
| 6/6/2019 | SHUEY, DANIEL E. | 1.50 | 425.00 | 637.50 | Conference with Mr. Fusonie and Ms. Bateman regarding motion. Review and analyze state's motion. |
| 6/6/2019 | BATEMAN, LAUREN E. | 1.50 | 240.00 | 360.00 | Draft Motion for Judgment on the Pleadings. |
| 6/6/2019 | BATEMAN, LAUREN E. | 0.70 | 240.00 | 168.00 | Meet with T. Fusonie and D. Shuey regarding strategy for Motion for Judgment on the Pleadings. |
| 6/6/2019 | BATEMAN, LAUREN E. | 0.40 | 240.00 | 96.00 | Review and analyze State of Ohio Motion for Judgment on the Pleadings. |
| 6/7/2019 | HERLIHY, KIMBERLY W. | 1.80 | 540.00 | 972.00 | Further review of motion for judgment on the pleadings and conference Ms. Bateman, Mr. Shuey and Mr. Fusonie regarding same. Additional review of motion. |
| 6/7/2019 | FUSONIE, THOMAS H. | 1.00 | 525.00 | 525.00 | Meeting with Ms. Herlihy, Ms. Bateman and Mr. Shuey on motion for judgment on the pleadings (.6). Review of further draft of same (.4). |
| 6/7/2019 | SHUEY, DANIEL E. | 3.80 | 425.00 | 1,615.00 | Attention to review and preparation of documents for redaction and designation. Conference regarding edits to motion for judgment on the pleadings with Mr. Fusonie, Ms. Herlihy, and Ms. Bateman. Revise and file motion for judgment on the pleadings. |
| 6/7/2019 | BATEMAN, LAUREN E. | 7.70 | 240.00 | 1,848.00 | Draft Motion for Judgment on the Pleadings. |
| 6/11/2019 | FUSONIE, THOMAS H. | 0.30 | 525.00 | 157.50 | Research regarding City council minutes related Lake Erie Bill of Rights. |
| 6/24/2019 | FUSONIE, THOMAS H. | 0.20 | 525.00 | 105.00 | Review of new U.S. Supreme Court case on void for vagueness |
| 6/25/2019 | SHUEY, DANIEL E. | 0.50 | 425.00 | 212.50 | Review correspondence from opposing counsel. |
| 6/26/2019 | FUSONIE, THOMAS H. | 0.70 | 525.00 | 367.50 | Review of case law on nature of Section 1988 award (.2). Meeting with Mr. Shuey to respond to Toledo's delay tactics to avoid staking positions on the merits (.5). |
| 6/26/2019 | SHUEY, DANIEL E. | 1.40 | 425.00 | 595.00 | Research regarding correspondence from opposing counsel regarding attorney's fees and other standing issues. Conference with Mr. Fusonie regarding response. |
| 6/27/2019 | HERLIHY, KIMBERLY W. | 0.50 | 540.00 | 270.00 | Review of draft correspondence to City regarding document production deficiencies and conference Messrs. Fusonie and Shuey regarding same. |
| 6/27/2019 | FUSONIE, THOMAS H. | 0.50 | 525.00 | 262.50 | Review and revise letter to Toledo (.2). Call with Mr. Shuey and Ms. Herlihy regarding same (.3) |
| 6/27/2019 | SHUEY, DANIEL E. | 3.80 | 425.00 | 1,615.00 | Continue research regarding correspondence from opposing counsel. Draft response letter. Conference with Mr. Fusonie and Ms. Herlihy regarding response strategy. Review state complaint filed against state regarding LEBOR. |

Page 9

Case: 3:19-cv-00434-JZ Doc #: 65-2 Filed: 03/12/20 20 of 124. PageID #: 870
Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 6/28/2019 | FUSONIE, THOMAS H. | 1.90 | 525.00 | 997.50 | Review of lawsuit by agents of Toledo against State of Ohio (.4). Call with AG's office regarding same (.4). Revise and finalize letter to Toledo's counsel on Toledo's bad faith efforts to delay ruling on merits (.5). Emails and address Toledo's tactic in reaching out to Court when gave client through June 28 to respond to email served after end of business hours on Tuesday, June 25 (.6). |
| 6/28/2019 | FUSONIE, THOMAS H. | 0.20 | 525.00 | 105.00 | Call with Mr. Shuey to discuss adding lawsuit filed by Toledo's agents against State of Ohio and alleging by said agents that pursuing a lawsuit to invalidate LEBOR violates LEBOR. |
| 6/28/2019 | FUSONIE, THOMAS H. | 0.30 | 525.00 | 157.50 | Review of Toledo's answer to the State. |
| 6/28/2019 | SHUEY, DANIEL E. | 1.30 | 425.00 | 552.50 | Finalize letter to opposing counsel. Review correspondence from opposing counsel and court. Telephone conference with Mr. Fusonie regarding correspondence from opposing counsel. |
| 6/30/2019 | SHUEY, DANIEL E. | 0.50 | 425.00 | 212.50 | Conference with Mr. Fusonie regarding preparation for upcoming status conference. |
| 7/1/2019 | FUSONIE, THOMAS H. | 0.10 | 525.00 | 52.50 | Review Ms. Skow's email to Court and consider strategy related to same and whether to burden the Court with filing of all documents disclosed to Toledo. |
| 7/2/2019 | FUSONIE, THOMAS H. | 0.40 | 525.00 | 210.00 | Prepare outline of argument for discovery dispute initiated by Toledo related to disclosures, standing and purported real party in interest issue. |
| 7/3/2019 | HERLIHY, KIMBERLY W. | 1.90 | 540.00 | 1,026.00 | Conference Mssrs. Fusonie and Shuey to prepare for upcoming conference call with court regarding discovery issues raised by opposing counsel and regarding briefing on motion for judgment on the pleadings. Participate in court conference. Follow up conference with Mssrs. Fusonie and Shuey to discuss next steps. |
| 7/3/2019 | FUSONIE, THOMAS H. | 4.30 | 525.00 | 2,257.50 | Prepare for court call on discovery dispute by reviewing correspondence, court orders and pleadings/motions (1.5). Outline talking points for same court call (1.3). Meeting with Ms. Herlihy and Mr. Shuey to plan for court call (.7). Participate in court call on discovery dispute (.8) |
| 7/3/2019 | SHUEY, DANIEL E. | 3.90 | 425.00 | 1,657.50 | Prepare for conference call with Court. Conference with Ms. Herlihy and Mr. Fusonie regarding the same. Attend conference call with Court. |
| 7/5/2019 | FUSONIE, THOMAS H. | 1.00 | 525.00 | 525.00 | Prepare for telephone meeting with Mr. Shuey on responding to Court's orders on exchanging questions and on position on certain items requested by Toledo by outlining options and reviewing items requested by Toledo. (.5). Call with Mr. Shuey regarding same (.5) |
| 7/5/2019 | SHUEY, DANIEL E. | 0.70 | 425.00 | 297.50 | Attention to task list to prepare for upcoming hearing. Conference with Mr. Fusonie regarding the same. |
| 7/8/2019 | HERLIHY, KIMBERLY W. | 0.20 | 540.00 | 108.00 | Correspondence with Mr. Fusonie regarding strategy for responding to requests from city for additional documentation. Review and revise correspondence to city. |
| 7/8/2019 | FUSONIE, THOMAS H. | 0.30 | 525.00 | 157.50 | Review of Mr. Shuey's proposed list of questions and revise same. |
| 7/8/2019 | FUSONIE, THOMAS H. | 0.50 | 525.00 | 262.50 | Review of potential documents for disclosure (.3). Review of Mr. Shuey's email to Mr. and Mr. Drewes on [redacted] [redacted]. (.2) |
| 7/8/2019 | SHUEY, DANIEL E. | 3.80 | 425.00 | 1,615.00 | Call with client regarding [redacted]. Draft email to opposing counsel regarding questions about standing and LEBOR. Edit email to opposing counsel based on edits from Mr. Fusonie, Ms. Herlihy, and Ms. Bateman. |
| 7/9/2019 | FUSONIE, THOMAS H. | 0.70 | 525.00 | 367.50 | Meeting with Ms. Bateman and Mr. Shuey on standing for each claim in complaint and research confirming same and planning for Court call on Toledo's insistence in needs further disclosures related to standing despite admitting LEBOR speaks for itself. |
| 7/9/2019 | FUSONIE, THOMAS H. | 0.10 | 525.00 | 52.50 | Review of Court order from July 3, 2019 Court telephone conference. |
| 7/9/2019 | SHUEY, DANIEL E. | 1.00 | 425.00 | 425.00 | Send email to opposing counsel regarding questions on standing and LEBOR. Review standing research and conference with Mr. Fusonie regarding standing. Review court order. |

Page 10

Case: 3:19-cv-00434-JZ Doc #: 65-2 Filed: 03/12/20 21 of 124. PageID #: 871

Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 7/9/2019 | BATEMAN, LAUREN E. | 2.50 | 240.00 | 600.00 | Research standing. |
| 7/9/2019 | BATEMAN, LAUREN E. | 1.00 | 240.00 | 240.00 | Meet with D. Shuey and T. Fusonie to discuss standing issues. |
| 7/9/2019 | BATEMAN, LAUREN E. | 0.20 | 240.00 | 48.00 | Review email to opposing counsel on standing. |
| 7/10/2019 | FUSONIE, THOMAS H. | 0.40 | 525.00 | 210.00 | Review of documents for additional disclosures. |
| 7/10/2019 | SHUEY, DANIEL E. | 0.50 | 425.00 | 212.50 | Review documents from client for disclosure regarding standing. |
| 7/10/2019 | BATEMAN, LAUREN E. | 4.40 | 240.00 | 1,056.00 | Research standing issues. |
| 7/11/2019 | BRANDT, COLLEEN S. | 1.00 | 125.00 | 125.00 | Assist with preparation of documents for production, Telephone conference with T. Fusonie regarding preparation of documents. Service of same. |
| 7/11/2019 | FUSONIE, THOMAS H. | 1.10 | 525.00 | 577.50 | Conference with Mr. Shuey on each categories of claimed documents needed from Toledo and develop response plans for same. |
| 7/11/2019 | FUSONIE, THOMAS H. | 0.40 | 525.00 | 210.00 | Review and analyze Ms. Bateman's memo on standing and each facial challenge to LEBOR. |
| 7/11/2019 | SHUEY, DANIEL E. | 2.50 | 425.00 | 1,062.50 | Review of additional documents for disclosure related to standing. Analyze standing issuesto prepare for upcoming hearing. Conference with Mr. Fusonie regarding hearing preparation. |
| 7/11/2019 | BATEMAN, LAUREN E. | 0.80 | 240.00 | 192.00 | Research standing issue. |
| 7/12/2019 | BRANDT, COLLEEN S. | 1.00 | 125.00 | 125.00 | Assist with preparation of documents for production, Telephone conference with T. Fusonie regarding preparation of documents. Service of same. |
| 7/12/2019 | FUSONIE, THOMAS H. | 1.20 | 525.00 | 630.00 | Final review of further disclosures. (.3) Discussions with Ms Brandt regarding same. (.1) Email to Ms. Skow regarding same. (.2) Review of Ms. Skow's email on questions posed to Toledo and consider potential impact on Court conference for July 17 (.6) |
| 7/12/2019 | SHUEY, DANIEL E. | 2.80 | 425.00 | 1,190.00 | Attention to additional documents for disclosure related to standing. Draft email to opposing counsel regarding disclosure. |
| 7/12/2019 | BATEMAN, LAUREN E. | 0.70 | 240.00 | 168.00 | Research standing issues in response to email from S. Skow. |
| 7/13/2019 | SHUEY, DANIEL E. | 0.50 | 425.00 | 212.50 | Outline memorandum regarding discovery dispute. |
| 7/14/2019 | FUSONIE, THOMAS H. | 0.40 | 525.00 | 210.00 | Outline of points and email to Mr. Shuey same on arguments/statements to develop in court submission on discovery dispute. |
| 7/14/2019 | SHUEY, DANIEL E. | 0.50 | 425.00 | 212.50 | Continue outlining memorandum regarding discovery dispute. |
| 7/15/2019 | HERLIHY, KIMBERLY W. | 0.30 | 540.00 | 162.00 | Review and revise memorandum regarding discovery issues and correspondence with Mssrs. Fusonie and Shuey regarding same. |
| 7/15/2019 | SHUEY, DANIEL E. | 5.00 | 425.00 | 2,125.00 | Draft and prepare memorandum to court regarding discovery dispute. Research in support of memorandum and other preparation for upcoming hearing. Review of City's filing. |
| 7/15/2019 | BATEMAN, LAUREN E. | 2.50 | 240.00 | 600.00 | Review and edit memorandum to the Court on standing. |
| 7/16/2019 | FUSONIE, THOMAS H. | 0.70 | 525.00 | 367.50 | Review of disclosures to prepare for court conference on discovery dispute. |
| 7/16/2019 | FUSONIE, THOMAS H. | 1.60 | 525.00 | 840.00 | Prepare outline of arguments on standing and disclosures. (1.0) Review of case law on standing (.6) |
| 7/16/2019 | SHUEY, DANIEL E. | 1.50 | 425.00 | 637.50 | Research standing issues and review discovery materials to prepare for hearing. |
| 7/17/2019 | HERLIHY, KIMBERLY W. | 1.50 | 540.00 | 810.00 | Conference Mssrs. Fusonie and Shuey in preparation for upcoming hearing on discovery issues. Participation in same. |
| 7/17/2019 | FUSONIE, THOMAS H. | 4.50 | 525.00 | 2,362.50 | Prepare for court call on discovery dispute related to standing, review of court briefing, disclosed documents and case law on standing as part of preparation along with preparing talking points (3.2 hours). Conference with Ms. Herlihy and Mr. Shuey on strategy related to court conference on discovery dispute (.9). Participate in court conference telephonically (.4) |
| 7/17/2019 | SHUEY, DANIEL E. | 1.50 | 425.00 | 637.50 | Conference with Mr. Fusonie and Ms. Herlihy to prepare for hearing. Prepare for and attend hearing. |
| 7/18/2019 | FUSONIE, THOMAS H. | 0.10 | 525.00 | 52.50 | Review of Court order on discovery and briefing. |

Page 11

Case: 3:19-cv-00434-JZ Doc #: 65-2 Filed: 03/12/20 22 of 124. PageID #: 872
Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 8/1/2019 | BATEMAN, LAUREN E. | 2.50 | 240.00 | 600.00 | Research issues related to standing. Draft sections for reply brief. |
| 8/2/2019 | FUSONIE, THOMAS H. | 0.50 | 525.00 | 262.50 | Review of corporate personhood case law (.2). Call with Ms Bateman to develop any counter arguments related to any argument by Toledo that somehow despite clear case law DFP cannot have constitutional rights (.3). |
| 8/5/2019 | FUSONIE, THOMAS H. | 0.20 | 525.00 | 105.00 | Meeting with Mr. Shuey to develop plan for research related to anticipated arguments of Toledo. |
| 8/5/2019 | SHUEY, DANIEL E. | 0.20 | 425.00 | 85.00 | Conference with Mr. Fusonie regarding reply brief. |
| 8/7/2019 | SHUEY, DANIEL E. | 1.20 | 425.00 | 510.00 | Review motion, complaint and other materials to prepare for upcoming reply brief. |
| 8/9/2019 | FUSONIE, THOMAS H. | 0.80 | 525.00 | 420.00 | Plan for reply brief. Consider cross-motion filed and strategy to respond to same with anticipation Toledo did so to get last word even though it never requested leave to file motion despite multiple court conferences, court filings, correspondence and court orders. |
| 8/9/2019 | SHUEY, DANIEL E. | 3.00 | 425.00 | 1,275.00 | Review standing research. Review responses to motions for judgment on the pleadings. Begin outlining potential responses. |
| 8/9/2019 | BATEMAN, LAUREN E. | 4.60 | 240.00 | 1,104.00 | Research issues related to standing. Draft sections for reply brief. |
| 8/10/2019 | FUSONIE, THOMAS H. | 1.00 | 525.00 | 525.00 | Review of Mr. Shuey's summary of opposition (.2) and consider cross-motion response options (.2). Call with Mr. Shuey to discuss response by Toledo and plans for reply to same (.6). |
| 8/10/2019 | SHUEY, DANIEL E. | 1.50 | 425.00 | 637.50 | Review responses to motions and draft email with initial thoughts on reply. |
| 8/11/2019 | LAROCCO, CHRISTOPHER A. | 4.00 | 275.00 | 1,100.00 | Review of motion for judgment on the pleading and city's response. |
| 8/12/2019 | FUSONIE, THOMAS H. | 0.50 | 525.00 | 262.50 | Review of amicus and consider potential responses. |
| 8/12/2019 | FUSONIE, THOMAS H. | 3.00 | 525.00 | 1,575.00 | Review of Charter referendum defense claim and spot reasons for lack of merit (.3). Review of SWEPI decision on facial challenges and also liability (.5). Develop arguments in response to claim of lack of Toledo action when its own Charter contradicts that and it answers defending and prosecuting defense of the Charter Amendment (.5). Email to Mr. Drewes regarding [redacted]. Meeting with Mr. Shuey to discuss opposition and plan on reply preparation and research (.5). Develop counter arguments for reply (.8). Call with Mr. Shuey on Toledo's arguments about Monell and need to get another citizen's initiative and how both defy basic constitutional and 1983 protections of constitutional civil rights (.3). |
| 8/12/2019 | SHUEY, DANIEL E. | 5.30 | 425.00 | 2,252.50 | Research case law in support of reply brief regarding Monell. Begin drafting sections of reply brief. Conferences with Mr. Fusonie and Mr. LaRocco regarding reply brief. Review amicus brief. |
| 8/12/2019 | LAROCCO, CHRISTOPHER A. | 1.60 | 275.00 | 440.00 | Research regarding standing issues with focus on standing to bring facial challenges to charter amendments passed by referendum/initiative. |
| 8/12/2019 | LAROCCO, CHRISTOPHER A. | 0.50 | 275.00 | 137.50 | Review of materials provided by Mr. Shuey including court order, cases, and previous correspondences with opposing counsel. |
| 8/12/2019 | LAROCCO, CHRISTOPHER A. | 0.20 | 275.00 | 55.00 | Correspondence with Mr. Shuey regarding arguments for response brief. |
| 8/12/2019 | LAROCCO, CHRISTOPHER A. | 1.20 | 275.00 | 330.00 | Research regarding void for vagueness and review of correspondence with Mr. Shuey regarding the same. |
| 8/12/2019 | LAROCCO, CHRISTOPHER A. | 1.60 | 275.00 | 440.00 | Research regarding Monell pleading standard as it relates to standing. |
| 8/13/2019 | FUSONIE, THOMAS H. | 2.30 | 525.00 | 1,207.50 | Research regarding Monell and develop response to meritless raising of Monell (.8). Review of authorities on void for vagueness (.8). Discussions with Mr. Shuey on Monell, standing and First Amendment/void for Vagueness (.7). |
| 8/13/2019 | SHUEY, DANIEL E. | 3.40 | 425.00 | 1,445.00 | Continue research in support of reply brief. Conference with Mr. Fusonie regarding Monell and other issues in brief. |

Page 12

Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 8/13/2019 | LAROCCO, CHRISTOPHER A. | 7.50 | 275.00 | 2,062.50 | Outlining of reply brief and initial drafting of sections of same. Communications with Mr. Shuey concerning arguments for same. |
| 8/14/2019 | FUSONIE, THOMAS H. | 1.70 | 525.00 | 892.50 | Develop amicus response and consider strategy related to same (.6). Develop arguments for reply to Toledo on federal constitutional claims. Consider Toledo's standing arguments and develop responses to same (.5) |
| 8/14/2019 | SHUEY, DANIEL E. | 3.10 | 425.00 | 1,317.50 | Draft reply to amicus brief. Continue research in support of reply brief. |
| 8/14/2019 | LAROCCO, CHRISTOPHER A. | 3.40 | 275.00 | 935.00 | Drafting of reply brief in support of MJOP. Review of case law authorities for same. |
| 8/15/2019 | FUSONIE, THOMAS H. | 0.80 | 525.00 | 420.00 | Develop arguments related to First Amendment and Void for Vagueness claims. |
| 8/15/2019 | SHUEY, DANIEL E. | 3.80 | 425.00 | 1,615.00 | Draft and revise reply brief. |
| 8/15/2019 | LAROCCO, CHRISTOPHER A. | 1.60 | 275.00 | 440.00 | Correspondence with Mr. Shuey regarding brief and continued to review and make edits. |
| 8/15/2019 | LAROCCO, CHRISTOPHER A. | 1.40 | 275.00 | 385.00 | Review of Mr. Shuey's edits to the brief and research regarding to points of authority Mr. Shuey requested. |
| 8/16/2019 | FUSONIE, THOMAS H. | 2.70 | 525.00 | 1,417.50 | Meeting with Mr. Shuey to develop reply arguments (.5). Consider developing reply to amicus (.2). Review and revise draft reply to Toledo (1.5). Meeting with Mr. Shuey to discuss revisions and further arguments related to the absurdity of Toledo's arguments which would nullify the U.S. Constitution and the federal judiciary's role in ensuring civil rights. (.5) |
| 8/16/2019 | SHUEY, DANIEL E. | 3.80 | 425.00 | 1,615.00 | Continue revising and drafting reply brief. Review comments from Mr. Fusonie. |
| 8/18/2019 | FUSONIE, THOMAS H. | 2.50 | 525.00 | 1,312.50 | Review and revise reply in support and opposition to cross-motion for judgment on the pleadings. |
| 8/18/2019 | SHUEY, DANIEL E. | 5.20 | 425.00 | 2,210.00 | Continue drafting and revising reply brief. Telephone conference with Mr. Fusonie regarding edits. |
| 8/19/2019 | HERLIHY, KIMBERLY W. | 0.80 | 540.00 | 432.00 | Review and revise reply in support of motion for judgment on the pleadings, and correspondence with Messrs. Fusonie and Shuey regarding same. |
| 8/19/2019 | FUSONIE, THOMAS H. | 3.00 | 525.00 | 1,575.00 | Review amicus and revise reply to same (1.0). Continued preparation of reply to Toledo (1.8). Review of State's reply to Toledo (.2). |
| 8/19/2019 | SHUEY, DANIEL E. | 8.30 | 425.00 | 3,527.50 | Edit, finalize, and file replies in support of motion for judgment on the pleadings. Respond to and incorporate edits from Mr. Fusonie and Ms. Herlihy. |
| 8/20/2019 | SHUEY, DANIEL E. | 1.30 | 425.00 | 552.50 | Review State's reply in support of motion for judgment on the pleadings. Update client regarding [redacted] [redacted]. |
| 8/22/2019 | FUSONIE, THOMAS H. | 0.50 | 525.00 | 262.50 | Review of motion for leave by Toledo for a reply on cross-motion filed without leave. (.2). Consider Toledo's gamesmanship and how to respond to same. (.3). |
| 8/22/2019 | SHUEY, DANIEL E. | 1.00 | 425.00 | 425.00 | Review motion for leave to file reply and conference with Mr. Fusonie regarding potential response. |
| 8/23/2019 | FUSONIE, THOMAS H. | 0.30 | 525.00 | 157.50 | Call with State counsel on Toledo's motion for leave to file reply and other matters related to pending action. |
| 8/23/2019 | SHUEY, DANIEL E. | 0.30 | 425.00 | 127.50 | Respond to client questions regarding [redacted]. |
| 9/6/2019 | SHUEY, DANIEL E. | 0.40 | 425.00 | 170.00 | Review Toledo's reply brief. |
| 9/7/2019 | FUSONIE, THOMAS H. | 0.90 | 525.00 | 472.50 | Review of Toledo's reply, review of cases on Monell and consider mischaracterizations as to Monell cases in Toledo's reply. |
| 9/7/2019 | SHUEY, DANIEL E. | 1.00 | 425.00 | 425.00 | Review Toledo's reply brief and draft email to Mr. Fusonie regarding analysis. |
| 9/9/2019 | FUSONIE, THOMAS H. | 0.30 | 525.00 | 157.50 | Further review of Toledo's reply to consider lack of merit and mischaracterizations in same, including as to references to certain Toledo Charter provisions. |
| 9/13/2019 | FUSONIE, THOMAS H. | 1.00 | 525.00 | 525.00 | Review of fee decisions in Northern District of Ohio on lodestar, enhancements and factors for lodestar. |

Case: 3:19-cv-00434-JZ Doc #: 65-2 Filed: 03/12/20 24 of 124. PageID #: 874
Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 10/24/2019 | FUSONIE, THOMAS H. | 0.50 | 525.00 | 262.50 | Emails with Court and opposing counsel on hearing. Discuss same with Mr. Shuey. Consider request for hearing. |
| 10/24/2019 | SHUEY, DANIEL E. | 1.00 | 425.00 | 425.00 | Attention to hearing request and develop response and preparation strategy. Update client regarding [redacted] [redacted]. |
| 10/25/2019 | FUSONIE, THOMAS H. | 0.60 | 525.00 | 315.00 | Review of briefing to assess Court request for hearing and consider focuses of hearing. Emails with Court to schedule hearing (.1). |
| 10/25/2019 | SHUEY, DANIEL E. | 0.40 | 425.00 | 170.00 | Attention to court' s request for hearing and conference with Mr. Fusonie regarding preparation strategy. |
| 10/28/2019 | FUSONIE, THOMAS H. | 0.20 | 525.00 | 105.00 | Review and assess court order for hearing and that Court will prepare and send questions that set agenda for hearing. |
| 1/8/2020 | FUSONIE, THOMAS H. | 0.30 | 550.00 | 165.00 | Begin review of briefing to prepare for hearing. |
| 1/9/2020 | FUSONIE, THOMAS H. | 0.20 | 550.00 | 110.00 | Further review of briefing to begin preparation for hearing. |
| 1/20/2020 | SHUEY, DANIEL E. | 0.30 | 460.00 | 138.00 | Review emails regarding strategy for upcoming hearing. |
| 1/21/2020 | FUSONIE, THOMAS H. | 3.00 | 550.00 | 1,650.00 | Call with Mr. Martin on agenda (.2). Call with Messrs. Martin and Bachmann on questions from court and discussions on certain questions as to which party questions each should focus upon. (.4). Review and analyze agenda questions and develop a plan for preparing for same. (.8). Discuss agenda with Mr. Shuey (.2). Develop argument for question 1 on scope of LEBOR by reviewing and analyzing pleadings, LEBOR and Toledo's refusal to answer same questions during disclosures and court requests for same. (1.4). |
| 1/21/2020 | SHUEY, DANIEL E. | 2.50 | 460.00 | 1,150.00 | Review questions and agenda and research to support potential answers. |
| 1/21/2020 | SHUEY, DANIEL E. | 0.40 | 460.00 | 184.00 | Telephone conference with Mr. Martin regarding strategy for upcoming hearing. |
| 1/22/2020 | FUSONIE, THOMAS H. | 3.50 | 550.00 | 1,925.00 | Review of briefing on vagueness and First Amendment claims and develop initial sketch outline of arguments concerning questions 5 and 6 (1.1). Meet with Mr. Shuey on course of action for hearing and questions from Court and how to coordinate response/hearing argument concerning same (1.0). Review and analyze briefing on standing, severability and Monell to develop initial points concerning questions connected to same. (1.4) |
| 1/22/2020 | SHUEY, DANIEL E. | 1.10 | 460.00 | 506.00 | Prepare responses to questions from judge and research regarding Monell argument. |
| 1/22/2020 | SHUEY, DANIEL E. | 1.00 | 460.00 | 460.00 | Conference with Mr. Fusonie regarding upcoming hearing and responses to questions from judge. |
| 1/23/2020 | FUSONIE, THOMAS H. | 3.70 | 550.00 | 2,035.00 | Review of briefing on void for vagueness (.4). Develop argument for hearing on same (1.0). Review of case law on void for vagueness cited in briefs (2.3). |
| 1/23/2020 | SHUEY, DANIEL E. | 1.90 | 460.00 | 874.00 | Research regarding question 4 on Court's hearing agenda. |
| 1/24/2020 | FUSONIE, THOMAS H. | 3.40 | 550.00 | 1,870.00 | Prepare for oral hearing by review of void for vagueness case law cited in briefs to develop answers/arguments for questions 5 and 6 and contemporaneously with review prepare outline of argument for those questions. |
| 1/24/2020 | SHUEY, DANIEL E. | 3.00 | 460.00 | 1,380.00 | Draft outline for response to Question 4 to prepare for hearing. (1.5 hours) Research regarding vagueness questions. (1 hour) Review previous emails and statements made by city to demonstrate their adoption of LEBOR. (.5) |
| 1/25/2020 | HERLIHY, KIMBERLY W. | 1.00 | 570.00 | 570.00 | Review of briefs in advance of hearing on motion for judgment on the pleadings. |
| 1/25/2020 | FUSONIE, THOMAS H. | 1.00 | 550.00 | 550.00 | Continued preparation for hearing as to questions concerning void for vagueness, including prepare outline of argument and review of case law. |
| 1/26/2020 | FUSONIE, THOMAS H. | 1.30 | 550.00 | 715.00 | Continued preparation of argument. (1.0). Review of supplemental authority filing by Toledo and analyze arguments set out in same (.3). |

Page 14

Case: 3:19-cv-00434-JZ Doc #: 65-2 Filed: 03/12/20 25 of 124. PageID #: 875
Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 1/26/2020 | SHUEY, DANIEL E. | 1.00 | 460.00 | 460.00 | Review case supplements from State and City. |
| 1/26/2020 | SHUEY, DANIEL E. | 1.00 | 460.00 | 460.00 | Prepare for and outline Monell arguments for hearing. |
| 1/27/2020 | HERLIHY, KIMBERLY W. | 3.20 | 570.00 | 1,824.00 | Review briefing in advance of hearing on motion for judgment on the pleadings. Conference Messrs. Fusonie and Shuey regarding same. Review of case law and outline argument. |
| 1/27/2020 | FUSONIE, THOMAS H. | 6.60 | 550.00 | 3,630.00 | Further review of Toledo's supplemental authority and develop arguments concerning same (1.0 hours). Meeting with Mr. Shuey and Ms. Herlihy to prepare for hearing arguments (1.0). Continued preparation of argument, presentation talking points, review of cases and pleadings/briefings as part of preparation. (4.6 hours) |
| 1/27/2020 | SHUEY, DANIEL E. | 3.30 | 460.00 | 1,518.00 | Attend conference with Mr. Fusonie and Ms. Herlihy regarding strategy for hearing. (1.3 hours) Prepare for hearing. (2 hours) |
| 1/28/2020 | HERLIHY, KIMBERLY W. | 8.00 | 570.00 | 4,560.00 | Continued preparation for hearing on cross-motions for judgment on the pleadings (3.0 hours). Attend hearing on same (1.8 hours). Post-hearing conference with Messrs. Fusonie and Shuey to de-brief on hearing (1.0 hours). Post-hearing travel to Columbus (2.2 hours). |
| 1/28/2020 | FUSONIE, THOMAS H. | 8.00 | 550.00 | 4,400.00 | Continued preparation for hearing on cross-motions for judgment on the pleadings (3.0 hours). Attend hearing on same (1.8 hours). Post-hearing conference with Ms. Herlihy and Mr. Shuey to de-brief on hearing (1.0 hours). Post-hearing travel to Columbus (2.2 hours). |
| 1/28/2020 | SHUEY, DANIEL E. | 8.50 | 460.00 | 3,910.00 | Continued preparation for hearing on cross-motions and review of produced documents. (3.5 hours). Attend hearing on same. (1.8 hours) Post-hearing conference with Mr. Fusonie and Ms. Herlihy to debrief and discuss next steps. (1.0 hours). Post-hearing travel to Columbus. (2.2 hours). Telephone conference with client regarding [REDACTED]. (.5 hours) |
| 2/27/2020 | FUSONIE, THOMAS H. | 1.50 | 550.00 | 825.00 | Review and analyze entry invalidating LEBOR (.5). Discuss same with Mr. Shuey (.2). Call with Mr. Shuey and Mr. Drewes concerning [REDACTED] (.3) Develop initial plans for fee application and review of certain authorities concerning same (.5). |
| 2/27/2020 | SHUEY, DANIEL E. | 0.50 | 460.00 | 230.00 | Telephone conferences with Mr. Fusonie and client regarding [REDACTED]. |
| 2/27/2020 | SHUEY, DANIEL E. | 1.00 | 460.00 | 460.00 | Review of court decision and potential next steps. |
| 2/28/2020 | FUSONIE, THOMAS H. | 2.50 | 550.00 | 1,375.00 | Review of case law on fee application requirements. Meeting with Mr. Shuey and Ms. Alexander on same and next steps. Conduct initial lodestar analysis. |
| 2/28/2020 | SHUEY, DANIEL E. | 2.00 | 460.00 | 920.00 | Research in support of application for attorneys' fees. Outline potential arguments in support of application. |
| 2/28/2020 | ALEXANDER, ELIZABETH S. | 3.40 | 330.00 | 1,122.00 | Review and analysis of Rule 54 requirements for motion for attorneys' fees. Conference with Messrs. Fusonie and Shuey regarding motion for attorneys' fees. Research and analysis of case law regarding same. |
| 3/2/2020 | FUSONIE, THOMAS H. | 0.70 | 550.00 | 385.00 | Review of Ms. Alexander's summary of research on 54(d) requirements (.3). Develop steps needed to prepare motion for fees and declaration in support (.4). |
| 3/2/2020 | ALEXANDER, ELIZABETH S. | 3.00 | 330.00 | 990.00 | Review and analysis of authority regarding requirements and evidence necessary for Rule 54 motion. Review and analysis of authority regarding legal standard for entitlement to fees under Section 1988. Review and analysis of authority regarding legal standard for calculation of fees under Section 1988. |
| 3/3/2020 | HERLIHY, KIMBERLY W. | 1.20 | 570.00 | 684.00 | Review of research gathered and summary by Ms. Alexander regarding application for attorney's fees. Conference Mssrs. Fusonie and Shuey and Ms. Alexander regarding application for attorney's fees. |

Page 15

Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 3/3/2020 | FUSONIE, THOMAS H. | 2.30 | 550.00 | 1,265.00 | Further analysis of Ms. Alexander's memo on 54(d) requirements. (.3) Prepare for meeting on fee application with team including review key decisions by Toledo that prevent a swift resolution of LEBOR despite it clear constitutional violations and flagrant violation of Ohio law (.8). Meeting with Mses. Herlihy, Alexander and Shuey on fee application and next steps and action item plan for same (.8). Review of OSBA 2019 law economics study (.4). |
| 3/3/2020 | SHUEY, DANIEL E. | 1.00 | 460.00 | 460.00 | Analysis of claims for legal fees and reasonable rates. |
| 3/3/2020 | ALEXANDER, ELIZABETH S. | 2.50 | 330.00 | 825.00 | Review and analysis of authority regarding calculation of attorneys' fees. Draft and revise email memorandum regarding same. Conference with Ms. Herlihy and Messrs. Fusonie and Shuey regarding motion for attorneys' fees and costs and evidence necessary in support of same. |
| 3/4/2020 | ALEXANDER, ELIZABETH S. | 3.50 | 330.00 | 1,155.00 | Outline declaration in support of motion for attorneys' fees and costs. Draft and revise same. Review and analysis of authority regarding calculation of reasonable rates for attorneys with expertise. Draft and revise email memorandum regarding same. |
| 3/5/2020 | FUSONIE, THOMAS H. | 1.00 | 550.00 | 550.00 | Fee application lodestar analysis and develop reasonableness factors. (.5) Call with Ms. Alexander concerning declaration facts to develop and lodestar factors. (.5) |
| 3/5/2020 | ALEXANDER, ELIZABETH S. | 1.50 | 330.00 | 495.00 | Conference with Mr. Fusonie regarding Rule 54 motion and necessary evidence in support of same. Review and analysis of authority regarding lodestar calculation. |
| 3/6/2020 | FUSONIE, THOMAS H. | 0.30 | 550.00 | 165.00 | Continued lodestar analysis of time in matter. (.3) |
| 3/6/2020 | SHUEY, DANIEL E. | 1.20 | 460.00 | 552.00 | Research regarding conduct of opposing party in submitting fee application. Review of key case documents in support of fee application. |
| 3/6/2020 | ALEXANDER, ELIZABETH S. | 2.00 | 330.00 | 660.00 | Draft and revise declaration in support of motion for attorneys' fees and costs. |
| 3/7/2020 | FUSONIE, THOMAS H. | 0.30 | 550.00 | 165.00 | Continued review and analysis of entries for lodestar. |
| 3/9/2020 | FUSONIE, THOMAS H. | 0.90 | 550.00 | 495.00 | Further analysis and review of hours and work for lodestar analysis. (.6) Review for privilege (.3). |
| 3/9/2020 | SHUEY, DANIEL E. | 1.30 | 460.00 | 598.00 | Review case documents and communications relevant to fee application. |
| 3/9/2020 | ALEXANDER, ELIZABETH S. | 1.40 | 330.00 | 462.00 | Review and analysis of documents in support of motion for attorneys' fees and costs. Draft and revise declaration in support of motion for attorneys' fees and costs to incorporate same. |
| 3/10/2020 | FUSONIE, THOMAS H. | 0.30 | 550.00 | 165.00 | Review and revise declaration in support of fee application. |
| 3/10/2020 | FUSONIE, THOMAS H. | 0.90 | 550.00 | 495.00 | Further review of hours/time for privilege to prepare fee chart in support of motion for fees. |
| 3/10/2020 | SHUEY, DANIEL E. | 2.60 | 460.00 | 1,196.00 | Draft outline of background facts and key documents for fee application. |
| 3/10/2020 | ALEXANDER, ELIZABETH S. | 7.20 | 330.00 | 2,376.00 | Draft and revise declaration in support of motion for attorneys' fees. Review and analysis of authority regarding entitlement to costs. Draft and revise section of same regarding legal authority pertaining to entitlement to fees. Draft and revise analysis section of same. Review and analysis of authority regarding entitlement to costs. Draft and revise section of same regarding legal authority pertaining to costs. |
| 3/11/2020 | FUSONIE, THOMAS H. | 2.40 | 550.00 | 1,320.00 | Continued preparation of declaration in support of fee motion and review of materials to prepare same (1.7). Review and revise draft motion for fees (.7). |
| 3/11/2020 | ALEXANDER, ELIZABETH S. | 6.70 | 330.00 | 2,211.00 | Draft and revise introduction to motion for attorneys' fees and costs. Draft and revise background and facts section of same. Draft and revise section of same regarding legal authority pertaining to entitlement to fees. Draft and revise analysis section of same. Draft and revise section of same regarding legal authority pertaining to costs. Draft and revise analysis section of costs. |
| 3/11/2020 | HERLIHY, KIMBERLY W. | 0.50 | 570.00 | 285.00 | Review and revise declaration of Mr. Fusonie in support of fee application and circulate comments. |

Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms For Which Drewes Farms Seeks Fee Award

| Date | Name | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 3/12/2020 | FUSONIE, THOMAS H. | 2.50 | 550.00 | 1,375.00 | Continued preparation of fee chart, including privilege review/redaction. Continued preparation of declaration in support of fee application. Continued preparation of motion for fees. ESTIMATED TIME FOR 3/12/2020 |
| 3/12/2020 | HERLIHY, KIMBERLY W. | 1.00 | 570.00 | 570.00 | Review and revise motion and provide comments to Ms. Alexander on further revisions to consider. ESTIMATED TIME FOR 3/12/2020 |
| 3/12/2020 | ALEXANDER, ELIZABETH S. | 5.00 | 330.00 | 1,650.00 | Continued preparation of motion for award of fees and costs. Continued preparation of declaration and exhibits to same. Final review of motion, declaration and exhibits. ESTIMATED TIME FOR 3/12/2020 |
| | | | | 293,752.00 | |

Drewes Farms Partnership, et al. v. City of Toledo
Case No. 3:19 CV 434
VORYS, SATER, SEYMOUR AND PEASE LLP'S
Services Rendered Through March 12, 2020 to Drewes Farms  For Which Drewes Farms  Seeks Fee Award

| Row Labels | Sum of Amount | Sum of Hours | Average of Rate Entry |
|---|---|---|---|
| ALEXANDER, ELIZABETH S. | $ 17,646.00 | 55.2 | $ 315.79 |
| BATEMAN, LAUREN E. | $ 50,376.00 | 209.9 | $ 240.00 |
| BRANDT, COLLEEN S. | $ 250.00 | 2 | $ 125.00 |
| FUSONIE, THOMAS H. | $ 96,872.50 | 182.3 | $ 529.07 |
| HERLIHY, KIMBERLY W. | $ 17,619.00 | 31.8 | $ 546.21 |
| LAROCCO, CHRISTOPHER A. | $ 6,325.00 | 23 | $ 275.00 |
| SHUEY, DANIEL E. | $ 104,451.00 | 243 | $ 430.63 |
| WHETSTONE, LINDSAY M. | $ 212.50 | 1.7 | $ 125.00 |
| **Grand Total** | **$ 293,752.00** | **748.9** | **$ 433.17** |



# The Economics of Law Practice in Ohio in 2019

*A Desktop Reference*



EXHIBIT 2



Ohio State Bar Association
Connect. Advance. Succeed.

# Thank You!

Periodically, the Ohio State Bar Association (OSBA) surveys its membership to gain a better outlook on the economics of law practice in Ohio. We would like to thank the following sections for their sponsorship and support. The Economics of Law Practice in Ohio 2019 Desktop Reference would not be possible without their generous contributions:

**OSBA Solo, Small Firm and General Practice Section | Robert H. Meyer, IV, Chair**

**OSBA Litigation Section | Joseph Simms, Chair**

**OSBA Corporate Counsel Section | James Cummins, Chair**

For additional questions, please contact Jocelyn Armstrong, Director of Inclusion and Outreach at the OSBA at jarmstrong@ohiobar.org or (614) 487-4404.



# Table of Contents

Not all exhibits are referenced in the table of contents.
Please visit pages 3-5 for a complete list of exhibits.

**Introduction**
Methods and Measures
Interpreting Findings

**Summary Profiles of the Typical Ohio Attorney and Firm**
Private Practitioners (Exhibit 2)
Government Attorney (Exhibit 3)
In-House Counsel (Exhibit 4)
Position or Practice Setting (Exhibits 5-7)

## Profile of Attorney 2018 Net Income

**Private Practitioners**
Practice Class (Exhibits 25, 27, 29)
Primary Field of Law (Exhibits 33, 34)
Years in Practice (Exhibit 36)
Firm Size (Exhibit 37)
Office Location (Exhibits 38, 39)
Gender (Exhibits 42, 43, 44)

**Government Attorneys**
Practice Class (Exhibits 26, 28, 30)
Primary Field of Law (Exhibit 35)
Years in Practice (Exhibit 36)
Firm Size (Exhibit 37)
Office Location (Exhibit 41)
Gender (Exhibits 42, 43, 46)

**In-House Counsel**
Practice Class (Exhibits 26, 28, 30)
Primary Field of Law (Exhibit 35)
Years in Practice (Exhibit 36)
Firm Size (Exhibit 37)
Office Location (Exhibit 40)
Gender (Exhibits 42, 43, 45)

## Profile of Billing Rates and Practices

**Attorney Billing Rates**
Years in Practice (Exhibit 47)
Firm Size (Exhibit 47)
Office Location (Exhibit 47)
Field of Law (Exhibit 48)
Practice Class (Exhibit 48)

**Associate Billing Rates**
Years in Practice (Exhibits 49, 52)
Office Location (Exhibit 50)
Firm Size (Exhibit 52)

**Legal Assistant Billing Rates**
Years in Practice (Exhibits 49, 50)
Office Location (Exhibit 51)
Firm Size (Exhibits 53, 54)

## Profile of Workweek and Time-Keeping Practices

Average Hours in Workweek (Exhibit 55)
Hourly/Flat Fee/Contingency (Exhibit 56)
Non-Billable Work (Exhibit 57)

**Profile of Law Office Management Trends**
Alternative Fee Arrangements (Exhibits 58-61C)
Keeping Time Records (Exhibits 62-63)
Hourly Rate Setting (Exhibits 64-65)
Uncollectable Fees (Exhibits 66-67)
Contingency Fee Practices (Exhibits 68-69)
Use of Online Research Tools (Exhibits 70-72)
Use of Law Office Technology (Exhibits 73-75)
Use of Law Office Marketing Technology (Exhibit 75A)

**Other Aspects of Law Office Economics**
Client Fee Payment Behavior (Exhibit 76)
Law Office Overhead and Gross Receipts (Exhibits 77-78)

**Associate Salaries**
Years of Experience (Exhibit 79)
Firm Size (Exhibit 80)
Office Location (Exhibit 81)

**Legal Assistant Salaries**
Years of Experience (Exhibit 79)
Firm Size (Exhibit 82)
Office Location (Exhibit 83)

**Administrative Assistant/Secretary**
Years of Experience (Exhibit 79)
Firm Size (Exhibit 84)
Office Location (Exhibit 85)

**List of Exhibits**



## Desktop Reference Exhibit Guide

| Exhibit | Chart Name | Page |
|---|---|---|
| 1 | Response Counts by Target Group | 10 |
| 2 | Selected Summary Demographics - Private Practitioners | 11 |
| 3 | Selected Summary Demographics - Government Attorneys | 12 |
| 4 | Selected Summary Demographics - In-House Counsel | 13 |
| 5 | Ranked Distribution of 2019 Survey Respondents by Practice Class and Gender | 13 |
| 6 | Distribution of Respondents by Practice Class and Gender | 14 |
| 7 | Distribution of Respondents by Practice Class and Gender - All Practice Classes | 14 |
| 8 | Percent of Distribution of Per Attorney Fixed Expenses, Ohio Practices and Firms, 2006-2018 | 15 |
| 9 | Percent of Distribution of Per Attorney Gross Revenues, Ohio Practices and Firms, 2006-2018 | 16 |
| 10 | Percent Change in Attorney Net Incomes, 2000-2018 | 16 |
| 11 | Percent Change in Median Hourly Billing Rates by Gender, 2001-2019 | 17 |
| 12 | Trends in Median Hours Worked per Week with Average Hourly Billing Rate, 2001-2019 | 17 |
| 13 | Summary of Economic Sentiment and Job Satisfaction Levels, Three Categories of Attorneys, 2019 | 18 |
| 14 | Shifts in Sentiment on Economic Conditions, Three Classes of Attorneys, 2019 and 2020 | 19 |
| 15 | Ranking of Agreement on Factors Influencing Switching Practice Area/Job Class, Private Practitioners, 2019 | 20 |
| 16 | Ranking of Agreement on Factors Influencing Switching Practice Area/Job Class, In-House Counsel, 2019 | 21 |
| 17 | Ranking of Agreement on Factors Influencing Switching Practice Area/Job Class, Government Attorneys, 2019 | 21 |
| 18 | Ranked Factors Perceived to Create Job-Related Stress, Private Practitioners, 2019 | 22 |
| 19 | Ranked Factors Perceived to Create Job-Related Stress, Government Attorneys, 2019 | 23 |
| 20 | Ranked Factors Perceived to Create Job-Related Stress, In-House Counsel, 2019 | 23 |
| 21 | Private Practitioners' Involvement in Bar, Community, Corporate and Civic Affairs, 2019 | 24 |
| 22 | Government Attorney's Involvement in Bar, Community, Corporate and Civic Affairs, 2019 | 24 |
| 23 | In-House Counsels' Involvement in Bar, Community, Corporate and Civic Affairs, 2019 | 24 |
| 24 | Summary of Income, Billing Rate and Time Expenditure Changes, 2000 - 2018 | 25 |
| 25 | 2018 Private Practitioner Net Income by Practice Class | 26 |
| 26 | 2018 Government Attorney and In-House Counsel Net Income by Practice Class | 27 |
| 27 | 2018 Net Income by Practice Category (Full-time Only) | 28 |
| 28 | 2018 Net Income of Government Attorneys and In-House Counsel by Practice Category (Full-time Only) | 28 |
| 29 | Percent Distribution of 2018 Private Practice Attorney Net Income by Income Group and Practice Class | 29 |
| 30 | Percent Distribution of Three Classes of Attorneys by Income Group, 2012 and 2018 | 29 |



## Desktop Reference Exhibit Guide

| Exhibit | Chart Name | Page |
|---|---|---|
| 31 | Distributions of 2019 Total Cumulative Law School Debt and Current Monthly Payments by Generation | 31 |
| 32 | Distributions of 2019 Remaining Years of Payment by Generation | 32 |
| 33 | 2018 Net Income by Primary Field of Law, Private Practitioners | 33 |
| 34 | 2018 Net Income by Field of Law, Full-time Private Practitioners | 34 |
| 35 | 2018 Net Income by Primary Field of Law, Government Attorney and In-House Counsel by Field of Law and Practice Emphases | 35 |
| 36 | 2018 Net Income by Years of Practice, All Attorney Classes | 36 |
| 37 | 2018 Net Income by Firm Size, All Classes of Attorneys | 37 |
| 38 | 2018 Net Income, All Private Practitioners by Office Location | 38 |
| 39 | 2018 Net Income, All Full-time Private Practitioners by Office Location | 39 |
| 40 | 2018 Net Income, All In-House Counsel by Office Location | 40 |
| 41 | 2018 Net Income, All Government Attorneys by Office Location | 40 |
| 42 | 2018 Attorney Median Net Income by Gender and Practice Class | 41 |
| 43 | 2018 Full-time Attorney Median Net Income by Practice Class and Gender | 41 |
| 44 | Full-time Private Practitioner 2018 Median Net Income by Years in Practice and Gender | 42 |
| 45 | Full-time In-House Counsel 2018 Median Net Income by Years in Practice and Gender | 42 |
| 46 | Full-time Government Lawyer 2018 Median Net Income by Years in Practice and Gender | 43 |
| 47 | 2019 Hourly Billing Rates by Firm Size, Years in Practice and Office Location | 44 |
| 48 | 2019 Hourly Billing Rates by Field of Law and Practice Class | 45 |
| 49 | Distributions of 2019 Hourly Billing Rates for Associates and Legal Assistants by Four Levels of Experience | 46 |
| 50 | 2019 Hourly Billing Rates for Associates by Office Location and Experience | 47 |
| 51 | 2019 Hourly Billing Rates, Legal Assistants by Office Location and Experience | 48 |
| 52 | 2019 Hourly Billing Rates for Associates by Firm Size and Experience | 49 |
| 53 | Distributions of 2019 Hourly Billing Rates for Legal Assistants by Firm Size and Experience | 50 |
| 54 | Legal Assistant Client Billing Methods by Size of Firm, 2019 vs. 2013 | 51 |
| 55 | Distributions of Hours in Average Workweek, 2019 | 52 |
| 56 | Distributions of Hours in Average Workweek, by Billing Method, 2019 | 53 |
| 57 | Distributions of Work Week Components - Networking, Administration and Non-Legal Employment, 2019 | 53 |
| 58 | Frequency of AFA Users by Private Practitioners | 54 |
| 59 | Obstacles that Seem to Hinder Wider Adoption of AFAs Fees Over Time | 54 |
| 60 | Perceived Drivers Toward AFAs | 55 |



## Desktop Reference Exhibit Guide

| Exhibit | Chart Name | Page |
|---|---|---|
| 61A | Level of Increase in Use of AFAs over Past Few Years | 55 |
| 61B | Perceived AFA Use in the Future | 56 |
| 61C | Assignment of Work to Outside Counsel | 56 |
| 62 | Frequency of Keeping Records | 57 |
| 63 | Frequency of Keeping Records - Tracking Unit in Minutes | 57 |
| 64 | Hourly Rate Setting Practices - Months Since Change | 57 |
| 65 | Hourly Rate Setting Practices - Amount of Increase | 57 |
| 66 | Uncollectables - Amount of Increase | 58 |
| 67 | Uncollectables - Use of Service Charge on Delinquent Accounts | 58 |
| 68 | Use of Contingency Fees | 58 |
| 69 | Contingency Fees- Rate Schedule | 58 |
| 70 | Use of Online Research Tools, Private Practitioners, 2019 | 59 |
| 71 | Use of Online Research Tools, Government Attorneys, 2019 | 59 |
| 72 | Use of Online Research Tools, In-House Counsel, 2019 | 59 |
| 73 | Use of Hardware and Software Products and Tools, Private Practitioners, 2019 | 60 |
| 74 | Use of Hardware and Software Products and Tools, Government Lawyers, 2019 | 60 |
| 75 | Use of Hardware and Software Products and Tools, In-House Counsel, 2019 | 61 |
| 75A | Ranked Current and Historic Use of Law Office Marketing Tools and Channels | 61 |
| 76 | Client Bill Payment Behaviors, Private Practitioners, 2019 | 62 |
| 77 | Distributions of 2018 Fixed Expenses and Gross Receipts Per Attorney, and Overhead Rates by Size of Firm | 63 |
| 78 | Distributions of 2018 Fixed Expenses and Gross Receipts Per Attorney, and Overhead Rates by Office Location | 64 |
| 79 | Distributions of 2019 Administrative Assistant/Secretary, Legal Assistant and Associate Salaries by Years of Experience | 65 |
| 80 | Distributions of 2019 Salary Levels of Associates by Location and Years of Experience | 66 |
| 81 | Distributions of 2019 Salary Levels of Associates by Location and Years of experience | 67 |
| 82 | Distributions of 2019 Salary Levels of Legal Assistants by Level of Experience and Firm Size | 68 |
| 83 | Distributions of 2019 Salary Levels of Legal Assistants by Level of Experience and Office Location | 69 |
| 84 | Percent Distributions of 2019 Administrative Assistant/Secretary Salary Levels by Firm Size | 70 |
| 85 | Percent Distributions of 2019 Administrative Assistant/Secretary Salary Levels by Experience and Office Location | 71 |



# The Economics of Law Practice in Ohio in 2019 – A Desktop Benchmarking Reference

## Introduction

During the spring of 2019, the Ohio State Bar Association (OSBA) surveyed its membership on the economics of law practice to gain a better outlook on the legal profession. The survey was jointly sponsored by the OSBA's Solo, Small Firm and General Practice Section, the Litigation Section and the Corporate Counsel Section.

Previous surveys were completed in 2013, 2010, 2007, 2004, 2001, 1998, 1994 and 1990. These efforts have created the longest continuous time series legal economics project in the United States.

Some common objectives spanning the 2019 fielding were to derive, analyze and report benchmarks denoting:

- Changing patterns of member attorney demographics;
- 2018 attorney income derived from legal work by practice category/class, gender, field of law, office location, work status (full- vs. part-time work), years in practice and firm/organization size;
- 2019 associate, legal assistant and administrative assistant/secretary salaries by years of experience and office location;
- Prevailing 2019 attorney hourly billing rates by a variety of indicators and for paralegals/legal assistants by years of experience, firm size and office location;
- Attorney time allocated to billable and non-billable professional activities in 2019;
- 2018 revenues, expenses and overhead rates for private practitioners by office location and firm size;
- Law practice technology embracement, marketing management, civic duties of attorneys and law firm administrators and billing practices focused on sentinel management trends over time; and
- Issues regarding economic sentiment, stress and job satisfaction.

To help guide attorneys as they plan and manage their professional lives, the above information has been consolidated into this reference document accessible on the OSBA website. Based on 86 tables, charts and graphs, attorneys and firms can compare themselves and their firms against norms established by the aggregation of survey data. Several exhibits concentrate on government attorneys and in-house counsel responses in addition to hired counsel responses.



Case: 3:19-cv-02434-JZ Doc #: 65-2 Filed: 03/12/20 36 of 124. PageID #: 886

Assistance interpreting and applying information can be obtained at no charge to OSBA members by contacting Dr. Lawrence Stiffman of the Applied Statistics Laboratory (ASL) at (734) 417-5151 or aslinfo@aol.com. ASL fielded the surveys, analyzed derived data and prepared this *Desktop Reference* under the guidance of the OSBA staff, volunteers and sponsors.

## Methods and Measures

Survey results are based on online surveys fielded during April and May of 2019, which targeted private practitioners, in-house counsel and government attorneys. Each target group was surveyed three times reaching in-state/ non-retiree respondents with current email addresses. There were about 1,040 usable returns.

To help practitioners interpret range information provided in the exhibits in the reference, here is a brief discussion of **measures of central tendency** (median and mean) and **dispersion** (spread).

## Measures of Central Tendency

The **mean** (also called the average or arithmetic average) is calculated by adding the values of all responses and then dividing by the number of responses.

> *Example*: Three responses – 1, 2 and 3 – are reported. The average is calculated by adding their values (1 + 2 + 3 = 6), then dividing by the number of responses or 6 ÷ 3 = 2.

The **median** is the middle value of a series of values, which is initially rank ordered (from low to high or vice versa). By definition, half the numbers are greater, and half are less than the median. Both mean and median values are used throughout this survey report to measure central tendency.

Use of the median as a statistic for central tendency **reduces the effect of "outliers"** (extremely high or low values, such as 30), while the average does not.

> *Example*: Three responses – 1, 2 and 30 – are reported. The median is the middle number of the distribution (1, 2, 30) or 2. The average of this same distribution is 33 divided by 3 = 11.

## Measures of Dispersion (Spread)

The dispersion of data around the median (the 50th percentile) is based here on three values:

> The 25th percentile (lower quartile). 25% of the values are less and 75% are more than this value;
>
> The 75th percentile (upper quartile). 75% of the values are less and 25% are more than this value; and
>
> The 95th percentile. 95% of the values are less and five percent are more than this value.



## Geographic Areas Defined

Sixteen geographic areas were included to indicate office location. Some exhibits in this reference included all 16 areas, but most display fewer, collapsed regions to maintain a reasonable number of observations for reporting findings. Regions are defined as follows:

| REGION NAME | GEOGRAPHIC AREAS INCLUDED: |
|---|---|
| Greater Cleveland | Downtown only / suburban areas |
| Greater Cincinnati | Downtown only / suburban areas |
| Greater Columbus | Downtown only / suburban areas |
| Dayton | Dayton |
| Northeast Region | Canton, Akron, Youngstown and other northeastern Ohio areas |
| Northwest Region | Toledo and other northwestern cities and areas |
| Southern Region | Includes southeastern, southwestern and central regions excluding cities named above |

## Interpreting Findings

Because the survey was conducted in the spring of 2019, net income, gross revenue and overhead expenses represent 2018 values. All other data represent 2019 values. Net income represents all personal/taxable income from legal work (after expenses) or salaries from the practice of law, before taxes, for 2018. Bonus information was not addressed as a separate question and may or may not have been included by respondents.

To denote gaps such as the "gender gap" of reported incomes, the term "gap" is used on selected exhibits as a proportion calculated as the *median value of one group divided by another*. Hypothetically, a reported median income of $75,000 for a group of female attorneys divided by $100,000 for a like group of male attorneys yields the proportion of .75. This could be interpreted in plain English as "*This group of females earns 75 cents on the dollar compared with their male counterparts*."

Despite the use of the median to reduce the effect of extremely high or low values (outliers), readers should use caution in interpreting data when only a small number of responses are available. In such cases, readers are advised to "group up" to a larger geographic area or practice category to not distort reality. Generally, no value is represented if fewer than four responses were reported. In some instances, an exhibit may list fewer than four responses if the data were deemed important enough, with the understanding that the reader should use care when drawing inferences from such a small sample.

This reference is meant to assist with the development of sound and equitable hiring and compensation policies.



### Confidence Intervals/Margins of Error and Representativeness of Sample

Confidence intervals (upper and lower bounds around the mean at the 95% confidence level) are shown for three selected variables:

+/- 10% for Private Practitioners' **2018 net income** ($116,787; $128,958; $141,128)

+/- 3.5% for Private Practitioners' **total hours of chargeable work/week in 2019** (28.8, 29.9, 30.9)

+/- 3.5% for Private Practitioners' **2019 average hourly billing rate** ($252, $261, $270)

For example, the average 2019 hourly billing rate is plus or minus 3.5% of $261 with a 95% likelihood that the rate would fall between $252/hour and $270/hour.

**Exhibit 1** compares the sample with retained OSBA membership data (the universe).

**EXHIBIT 1:** RESPONSE COUNTS BY TARGET GROUP

| **Category** | Survey Responses |
|---|---|
| Private Practitioners | 790 |
| Government Attorneys | 165 |
| In-House Counsel | 102 |
| Column Totals | **1,057** |

# Summary Profiles of the Typical Ohio Attorney and Firm

This section summarizes key statistics derived from the current and recent surveys. Emphasis here is on the concerns of the average attorney and the average firm with respect to shifting demographics, and core relationships of income, hourly billing rates, time expenditure and resultant practice and firm revenues and expenses.

### Membership Demographics

**Exhibits 2 to 4** summarize the average years in practice and 2018 attorney net income for three attorney practice classes: private practitioners (**Exhibit 2**), government attorney (including the judiciary) (**Exhibit 3**) and in-house counsel (**Exhibit 4**). Each group is stratified by work status, gender and office location. The data is benchmarked against the last survey findings collected in 2013.

The "years in practice" private practitioner survey respondents reported "aged" 12% overall between 2013 and 2019. The average changed from 26 years in practice in 2013 to 29 years in practice in 2019. (See last row in Exhibit 2.) This was consistent across the state except for Columbus and the Northwest Ohio region where the average years of practice for private practitioners actually decreased. In Columbus, the reported number of practicing years changed by -7%. The Northwest region changed by -4%.



During this period, respondent nominal (not adjusted for inflation) incomes were stagnant with, for example, females working both full- and part-time. That group reported a 14% cumulative increase over a six-year period, whereas males' reported income decreased by 6%. Cleveland –based incomes dropped 2% overall, whereas Columbus attorneys saw a median increase of 14% overall. Considering all private practitioners reported net income, the median value of $100,000 in 2018 was unchanged from 2012. See last column in **Exhibit 2**.

**EXHIBIT 2:** SELECTED SUMMARY DEMOGRAPHICS – PRIVATE PRACTITIONERS

| | Years in Practice | | | | | 2018 Net Income | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Private Practitioners by Work Status and Gender** | **N** | **Mean** | **2019 Median** | **2013 Median** | **% Change 2013-2019** | **N** | **Mean** | **2018 Median** | **2012 Median** | **% Change 2012-2018** |
| Full-time females | 209 | 20 | 19 | 15 | 27% | 99 | $119,201 | $86,000 | $80,000 | 8% |
| Part-time females | 38 | 26 | 24 | 17 | 41% | 19 | $48,302 | $45,931 | $39,300 | 17% |
| **All females** | **247** | **21** | **21** | **15** | **40%** | **118** | **$107,785** | **$80,000** | **$70,000** | **14%** |
| Full-time males | 437 | 29 | 31 | 29 | 7% | 221 | $151,234 | $115,000 | $120,000 | -4% |
| Part-time males | 101 | 39 | 41 | 37 | 11% | 41 | $69,278 | $60,000 | $145,000 | -59% |
| **All males** | **538** | **30** | **33** | **30** | **10%** | **262** | **$138,493** | **$103,000** | **$110,000** | **-6%** |
| All full-time | 646 | 26 | 27 | 26 | 4% | 320 | $141,393 | $107,400 | $105,000 | 2% |
| All part-time | 139 | 35 | 40 | 29 | 38% | 60 | $62,635 | $48,500 | $44,000 | 10% |
| **All respondents** | **785** | **27** | **29** | **26** | **12%** | **380** | **$128,958** | **$100,000** | **$100,000** | **0%** |
| **By Office Location** | | | | | | | | | | |
| Greater Cleveland | 167 | 28 | 28 | 25 | 12% | 79 | $129,000 | $99,000 | $101,000 | -2% |
| Greater Cincinnati | 72 | 29 | 32 | 28 | 14% | 29 | $134,293 | $105,000 | $102,000 | 3% |
| Greater Columbus | 192 | 26 | 25 | 27 | -7% | 92 | $159,093 | $120,000 | $105,000 | 14% |
| Greater Dayton | 48 | 27 | 29 | 23 | 26% | 26 | $115,127 | $78,000 | $110,000 | -29% |
| Northeast Region | 150 | 28 | 30 | 24 | 25% | 79 | $100,407 | $90,000 | $83,000 | 8% |
| Northwest Region | 75 | 27 | 27 | 28 | -4% | 44 | $122,532 | $110,500 | $85,000 | 30% |
| Southern Region | 74 | 29 | 32 | 27 | 19% | 30 | $126,163 | $92,500 | $93,500 | -1% |
| **All respondents** | **778** | **27** | **29** | **26** | **12%** | **379** | **$128,823** | **$100,000** | **$100,000** | **0%** |





With respect to government attorneys, including the judiciary, only part-time lawyers aged while full-time lawyers saw a decrease in average years in practice. Income levels were mostly stagnant over the six-year period. Overall, all respondents' net income increased only 2% over six years (See last column of Exhibit 3.)

**EXHIBIT 3:** SELECTED SUMMARY DEMOGRAPHICS – GOVERNMENT ATTORNEYS

| | Years in Practice | | | | | 2018 Net Income | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Private Practitioners by Work Status and Gender** | **N** | **Mean** | **2019 Median** | **2013 Median** | **% Change 2013-2019** | **N** | **Mean** | **2018 Median** | **2012 Me-dian** | **% Change 2012-2018** |
| Full-time females | 91 | 16 | 14 | 17 | -18% | 41 | $76,049 | $84,464 | $68,000 | 24% |
| Part-time females | 6 | 22 | 16 | 21 | -24% | - | - | - | - | - |
| **All females** | **98** | **16** | **14** | **17** | **-18%** | **42** | **$76,000** | **$71,000** | **$65,000** | **9%** |
| Full-time males | 58 | 21 | 20 | 26 | -23% | 27 | $84,464 | $75,000 | $80,000 | -6% |
| Part-time males | 5 | 38 | 44 | 29 | 52% | - | - | - | - | - |
| **All males** | **63** | **23** | **22** | **27** | **-19%** | **28** | **$86,805** | **$77,000** | **$8,000** | **-4%** |
| All full-time | 150 | 18 | 16 | 20 | -20% | 68 | $79,390 | $72,500 | $7,300 | -1% |
| All part-time | 11 | 29 | 39 | 27 | 44% | - | - | - | - | - |
| **All respondents** | **163** | **19** | **18** | **21** | **-14%** | **70** | **$80,293** | **$73,500** | **$72,000** | **2%** |
| **By Office Location** | | | | | | | | | | |
| Greater Cleveland | 10 | 25 | 24 | 23 | 4% | 5 | $93,910 | $92,000 | $86,000 | 21% |
| Greater Cincinnati | 7 | 21 | 17 | 25 | -32% | 23 | $84,109 | $85,000 | $46,000 | 2% |
| Greater Columbus | 66 | 18 | 15 | 22 | -32% | 21 | $59,950 | $59,950 | $83,000 | 20% |
| Greater Dayton | 5 | 29 | 33 | 22 | 83% | - | - | - | - | - |
| Northeast Region | 10 | 16 | 15 | 22 | -32% | 60 | $71,112 | $86,500 | $71,000 | 22% |
| Northwest Region | 23 | 17 | 18 | 24 | -25% | 43 | $73,158 | $65,000 | $68,000 | -4% |
| Southern Region | 29 | 18 | 15 | 20 | -25% | 53 | $70,964 | $74,500 | $65,000 | 15% |
| **All respondents** | **150** | **19** | **18** | **21** | **-14%** | **296** | **$79,431** | **$73,500** | **$72,000** | **2%** |

With respect to in-house counsel, respondents saw an overall 11% drop in years in practice, while income was steady at 2-3% (over six years). Cleveland-based in-house counsel saw a decrease in years in practice and a drop of 33% in income over six years.



**EXHIBIT 4:** SELECTED SUMMARY DEMOGRAPHICS – IN-HOUSE COUNSEL

| | Years in Practice | | | | | 2018 Net Income | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **In-House Counsel by Work Status and Gender** | **N** | **Mean** | **2019 Median** | **2013 Median** | **% Change 2013-2019** | **N** | **Mean** | **2018 Median** | **2012 Median** | **% Change 2012-2018** |
| Full-time females | 38 | 18 | 17 | 12 | 41.7% | 14 | $112,000 | $109,000 | $110,000 | -0.9% |
| **All females** | **31** | **19** | **19** | **13** | **46.2%** | **14** | **$112,000** | **$109,000** | **$110,000** | **-0.9%** |
| Full-time males | 59 | 17 | 12 | 24 | -50.0% | 33 | $156,341 | $125,000 | $130,000 | -3.8% |
| **All males** | **59** | **17** | **12** | **24** | **-50.0%** | **33** | **$156,341** | **$125,000** | **$130,000** | **-3.8%** |
| All full-time | 97 | 18 | 15 | 17 | -11.8% | 47 | $143,113 | $123,000 | $121,000 | 1.7% |
| **All respondents** | **100** | **18** | **16** | **18** | **-11.1%** | **47** | **$143,113** | **$123,000** | **$120,000** | **2.5%** |
| **By Office Location** | | | | | | | | | | |
| Greater Cleveland | 21 | 16 | 15 | 26 | -42.3% | 7 | $145,286 | $85,000 | $127,500 | -33.3% |
| Greater Cincinnati | 13 | 19 | 15 | 13 | 15.4% | 6 | $105,133 | $110,000 | $117,500 | -6.4% |
| Greater Columbus | 31 | 18 | 13 | 21 | -38.1% | 18 | $127,833 | $121,500 | $135,000 | -10.0% |
| Northeast Region | 12 | 20 | 18 | 19 | -5.3% | 4 | $138,864 | $152,000 | $95,000 | 60.0% |
| Northwest Region | 10 | 15 | 12 | 12 | 0.0% | 4 | $204,250 | $186,000 | $122,000 | 52.5% |
| Southern Region | 8 | 22 | 24 | 20 | 20.0% | 4 | $204,250 | $186,000 | $117,500 | 58.3% |
| **All respondents** | **96** | **18** | **16** | **18** | **-11.1%** | **44** | **$140,256** | **$122,399** | **$120,000** | **2.0%** |

**EXHIBIT 5:** RANKED DISTRIBUTION OF 2019 SURVEY RESPONDENTS BY PRACTICE CLASS AND GENDER

**Exhibit 5** ranks respondents' practice class by gender. About 62% to 65% of government attorneys are female, while 27% of large firm partners are female.



**EXHIBIT 6:** DISTRIBUTION OF RESPONDENTS BY PRACTICE CLASS AND GENDER

**Exhibit 6** distributes counts of respondents by gender across practice class showing the proportion of each major practice category to the overall bar population. Male private practitioners dominate the respondent database.

**EXHIBIT 7:** DISTRIBUTION OF SURVEY RESPONDENTS BY PRACTICE CLASS AND GENDER –ALL PRACTICE CLASSES

**Exhibit 7** distributes survey respondents by gender, work status and practice class. Considering **all attorneys**, 10% of males work part-time and 4% of female private practitioners work part-time. Full-time females comprise one third of the responses, whereas males working full-time represent over half of the responses (53%). Most attorneys who report that they practice part-time are sole practitioners/space sharers. Female respondents comprise 58% of government attorneys, including the judiciary, and they comprise 27% of private practitioners.



## 2018 Attorney Income Compared with 2012

Median 2018 net income reported for **all respondents** is $90,461 (down from $95,872 reported for 2012). This value is a weighted average (by count) combining three classes of attorneys-private practitioners, government attorneys (including judges and judiciary staff) and in-house counsel. For private practitioners specifically, median net income ($100,000) was unchanged from 2012 to 2018.

Median 2018 net income reported for private practitioner respondents working full-time is $106,000 (up from $105,000 in 2012). Mean (average) net income for private practitioner respondents working full-time is $141,392 (down from $151,660 in 2012.)

## 2019 Hourly Billing Rates and Work Volume Compared with 2013

The 2019 reported median hourly billing rate is $250 (up from $225 in 2013). The mean value is $261 (up from $234 in 2013). The median hourly rate reported by male attorneys working full-time is $250 (up from $225 in 2013), while it is $225 for female attorneys working full-time (up from $200 in 2013).

Median values for Private Practitioner compensable work time is 30 hours/week (down from 33 hours in 2013) and 45 hours/week for total professional hours worked (up from 48 hours in 2013). Detailed and longer-term trend analyses for incomes, billing rates and time allocations are summarized in **Exhibit 24** found at the end of this section.

## 2018 vs. 2012 Office Expenditures and Revenues

Both office expenditures and gross revenues, on a per-attorney basis, vary across a wide distribution of Private Practitioners, as shown in **Exhibits 8** and **9**.

**Exhibit 8** tracks trends over four years (noted by the colored bars). The left vertical axis shows the percentage of firms by year. For attorneys reporting fixed expenses between $60,000 and $89,999 in calendar year ("CY") 2006, 16% of all practices and firms reported expenses/attorney in CY 2009, 14%; in CY2012, 10%; and in CY 2018, 9%.

There is a drift to lower overall reported expenses per attorney since 2006. Distributions on the left of the chart, the four stacks beginning with <5K through $25-35K, show expenses increasing over time. The remaining expense groups ($35,000-$45,000 to over $180,000) generally show a decreasing proportion of fixed expenses/attorney over time.

**EXHIBIT 8:** PERCENT DISTRIBUTION PER ATTORNEY FIXED EXPENSES, OHIO PRACTICES AND FIRMS, 2006 - 2018

Revenues /attorney for CY 2018 drift somewhat higher above the $210,000-$245,000 category.



**EXHIBIT 9:** PERCENT DISTRIBUTION OF PER ATTORNEY GROSS REVENUES, OHIO PRACTICES AND FIRMS, 2006-2018




### Trends in Income, Hourly Billing Rates and Time Expended, 2000-2018/2019

**Exhibit 10** breaks down the respondents into four categories of attorneys. Compared to the 2000-2003 reporting period, growth in net income has diminished drastically, especially for the 2012-2018 period. The drop also preceded the financial crisis starting in 2008. The red bar represents all private practitioners, while the blue bar represents only full-time private practitioners.

**EXHIBIT 10:** PERCENT CHANGE IN ATTORNEY NET INCOMES





**Exhibit 11** highlights shifts in pricing power over the past decade isolating the effects of work-status and gender. Female attorneys working full-time display a higher percent of hourly rate increases than male attorneys in all reporting periods. During the 2001-2004 period, hourly billing rates rose 16.7% for full-time males and rose 28% among female respondents.  Since that period, the increase for males has dropped to between 5% and 11% per reporting period and about 10% for females.

**EXHIBIT 11:** PERCENT CHANGE IN MEDIAN HOURLY BILLING RATES BY GENDER, 2001-2019

For full time private practitioners, over the last decade, compensable time held more or less constant at 35 hours for all private practitioners, and total hours worked held at 50 hours. Pricing power remained, throughout all reporting periods as reflected by the increasing average hourly billing rate (the top red line). *Total hours worked/week* is represented by the blue line and *billable hours worked/week* is represented by the yellow line. See **Exhibit 12.**

**EXHIBIT 12:** TRENDS IN MEDIAN HOURS WORKED PER WEEK WITH AVERAGE HOURLY BILLING RATE, 2001-2019

| | 2001 | 2004 | 2007 | 2010 | 2013 | 2019 |
|---|---|---|---|---|---|---|
| Total Hours Worked | 46 | 50 | 50 | 46 | 48 | 45 |
| Billable Hours | 35 | 35 | 35 | 34 | 33 | 30 |
| Billing Rate | $150 | $170 | $180 | $200 | $210 | $250 |



## Economic Sentiment and Job Satisfaction

**Exhibit 13** indicates current and future perceptions on economic conditions with current and future levels of job satisfaction for three categories of attorneys. Private practitioners and government attorneys are somewhat more optimistic with current and future economic conditions when compared to 2013 data.

With respect to job satisfaction, government attorneys are less satisfied about their jobs currently, as well as in the future, compared with the 2013 data. In-house counsel are relatively more satisfied about both current and future job satisfaction.

**EXHIBIT 13:** SUMMARY OF ECONOMIC SENTIMENT AND JOB SATISFACTION LEVELS, THREE CATEGORIES OF ATTORNEYS, 2019

| | 2013 | | | 2019 | | |
|---|---|---|---|---|---|---|
| **Current Conditions** | **Private Practice** | **In-house Counsel** | **Government** | **Private Practice** | **In-house Counsel** | **Government** |
| | **%** | **%** | **%** | **%** | **%** | **%** |
| Better | 28.4 | 36.6 | 17.8 | 35.9 | 36.6 | 33.5 |
| Worse | 23 | 6.3 | 20 | 11.8 | 1 | 12.2 |
| About the same | 45.9 | 54.9 | 59.4 | 50.4 | 59.4 | 51.8 |
| Don't know | 0.4 | 0.7 | 2.9 | 1 | 2 | 2.4 |
| NA/new attorney | 2.4 | 1.4 | - | 0.9 | 1 | - |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |
| **Future Conditions** | **Private Practice** | **In-house Counsel** | **Government** | **Private Practice** | **In-house Counsel** | **Government** |
| | **%** | **%** | **%** | **%** | **%** | **%** |
| Better | 38.4 | 37.1 | 15.8 | 39.2 | 45.5 | 34.4 |
| Worse | 13.4 | 9.8 | 16.1 | 9.9 | 4 | 12.3 |
| About the same | 39.5 | 46.9 | 59.2 | 42 | 44.6 | 47.2 |
| Don't know/no opinion | 8.7 | 6.3 | 9 | 9 | 5.9 | 6.1 |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |
| **Current Satisfaction** | **Private Practice** | **In-house Counsel** | **Government** | **Private Practice** | **In-house Counsel** | **Government** |
| | **%** | **%** | **%** | **%** | **%** | **%** |
| A great deal | 48.5 | 49.3 | 67.3 | 53.9 | 62 | 57.3 |
| Some | 43.1 | 45.1 | 29.2 | 40.2 | 34 | 35.4 |
| Very little | 8.4 | 5.6 | 3.5 | 5.9 | 4 | 7.3 |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |
| **Future Satisfaction** | **Private Practice** | **In-House Counsel** | **Govern-ment** | **Private Practice** | **In-House Counsel** | **Govern-ment** |
| | **%** | **%** | **%** | **%** | **%** | **%** |
| Becoming more satisfiying | 15.5 | 23.2 | 16.9 | 16.6 | 25.3 | 18.5 |
| Remaining the same | 59.7 | 62.7 | 70.8 | 62.6 | 68.7 | 66.7 |
| Becoming less satisfiying | 17.6 | 10.6 | 8.4 | 14.1 | 6.1 | 9.3 |
| Ready to change practice area | 3.1 | 0.7 | 1.6 | 1.8 | - | 3.1 |
| Unsatisfying enough to quit | 4.1 | 2.8 | 2.3 | 2.9 | - | 2.5 |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



Combining current and future perceptions, 28.5% of private practitioners think current economic conditions are better than in the past and will also be better in the future, while 26.9% feel both current and future conditions will remain about the same. These percentages are similar for in-house counsel and government attorneys, but 7.4% of government attorneys feel conditions have worsened and will worsen in the future. See **Exhibit 14**.

**EXHIBIT 14:** SHIFTS IN SENTIMENT ON ECONOMIC CONDITIONS, THREE CLASSES OF ATTORNEYS, 2019 AND 2020

| **Private Practitoners** | **Future Conditions** | | | | |
|---|---|---|---|---|---|
| **Current Conditions** | **Better** | **Worse** | **About the Same** | **Don't Know/No Opinion** | **Total** |
| Better | 28.5% | 0.6% | 8.9% | 1.4% | 39.3% |
| Worse | 2.2% | 3.4% | 3.6% | 1.1% | 10.3% |
| About the same | 12.0% | 5.6% | 26.9% | 4.0% | 48.5% |
| Don't know | 0.3% | 0.0% | 0.2% | 0.5% | 0.9% |
| NA/new attorney | 0.6% | 0.0% | 0.2% | 0.2% | 0.9% |
| **Total** | **43.5%** | **9.6%** | **39.7%** | **7.2%** | **100.0%** |

| **In-House Counsel** | **Future Conditions** | | | | |
|---|---|---|---|---|---|
| **Current Conditions** | **Better** | **Worse** | **About the Same** | **Don't Know/No Opinion** | **Total** |
| Better | 27.7% | 1.0% | 7.9% | 0.0% | 36.6% |
| Worse | 0.0% | 0.0% | 0.0% | 1.0% | 1.0% |
| About the same | 15.8% | 3.0% | 36.6% | 4.0% | 59.4% |
| Don't know | 1.0% | 0.0% | 0.0% | 1.0% | 2.0% |
| NA/new attorney | 1.0% | 0.0% | 0.0% | 0.0% | 1.0% |
| **Total** | **45.5%** | **4.0%** | **44.6%** | **5.9%** | **100.0%** |

| **Government Attorneys** | **Future Conditions** | | | | |
|---|---|---|---|---|---|
| **Current Conditions** | **Better** | **Worse** | **About the Same** | **Don't Know/No Opinion** | **Total** |
| Better | 20.2% | 1.2% | 11.0% | 1.2% | 33.7% |
| Worse | 1.8% | 7.4% | 1.2% | 1.8% | 12.3% |
| About the same | 10.4% | 3.7% | 35.0% | 2.5% | 51.5% |
| Don't know | 1.8% | 0.0% | 0.0% | 0.6% | 2.5% |
| **Total** | **34.4%** | **12.3%** | **47.2%** | **6.1%** | **100.0%** |





## Potential Factors Influencing Decisions to Switch to New Practice Areas or Job Classification

Private practitioners express relatively more interest in quality of life issues than technical requirements or market supply-demand conditions when considering switching practice area or jobs. In-house counsel and government attorneys show similar sentiments (**Exhibits 15-17**).

**EXHIBIT 15:** RANKING OF AGREEMENT ON FACTORS INFLUENCING SWITCHING PRACTICE AREA/JOB CLASS, PRIVATE PRACTITIONERS, 2019





Case: 3:19-cv-02434-JZ Doc #: 65-2 Filed: 03/12/20 49 of 124. PageID #: 899

OHIO STATE BAR ASSOCIATION
Connect. Advance. Succeed.

**EXHIBIT 16:** RANKING OF AGREEMENT ON FACTORS INFLUENCING SWITCHING PRACTICE AREA/JOB CLASS, IN-HOUSE COUNSEL, 2019

Having benefits with gov./priv. pract. is appealing
27%
27%
26%
19%
Switching to salaried legal work is appealing
22%
24%
14%
41%
Court rules and /or administrative regs too tedious
8%
20%
58%
15%
Getting too old to switch
7%
23%
68%
3%
New content area too complex to quickly learn and master
4%
20%
70%
7%
Essential new marketing costs are too high
3%
9%
49%
39%
Incumbents have likely or will flood other markets
3%
12%
59%
26%
Incumbents have flooded the market where I currently practice
13%
67%
20%
My computer skills are insufficient to leverage software apps
8%
89%
3%
0%
10%
20%
30%
40%
50%
60%
70%
80%
90%
100%
Very Much Agree
Agree
Do Not Agree
NA/Don't know

**EXHIBIT 17:** RANKING OF AGREEMENT ON FACTORS INFLUENCING SWITCHING PRACTICE AREA/JOB CLASS, GOVERNMENT ATTORNEY, 2019

Having benefits with gov./priv. pract. is appealing
29%
27%
12%
32%
Switching to salaried legal work is appealing
18%
22%
18%
42%
New content area too complex to quickly learn and master
9%
19%
60%
13%
Getting too old to switch
8%
28%
53%
11%
Court rules and /or administrative regs too tedious
4%
15%
72%
9%
Essential new marketing costs are too high
4%
15%
40%
42%
Incumbents have likely or will flood other markets
3%
17%
51%
29%
Incumbents have flooded the market where I currently practice
19%
56%
23%
My computer skills are insufficient to leverage software apps
7%
89%
4%
0%
10%
20%
30%
40%
50%
60%
70%
80%
90%
100%
Very Much Agree
Agree
Do Not Agree
NA/Don't know

21





## Relative Importance of Factors Perceived to Create Job-Related Stress

Private practitioners are relatively more concerned about income, fringe benefit costs, and dealing with difficult clients; whereas government attorneys focus on dealing with agencies, courts and clients. In-house counsel are relatively more concerned about workload management, work-life balance and office/agency politics (See **Exhibits 18-20**).



**EXHIBIT 18:**  RANKED FACTORS PERCEIVED TO CREATE JOB-RELATED STRESS, PRIVATE PRACTITIONERS, 2019





OHIO STATE BAR ASSOCIATION
Connect. Advance. Succeed.

**EXHIBIT 19:** RANKED FACTORS PERCEIVED TO CREATE JOB-RELATED STRESS, GOVERNMENT ATTORNEYS, 2019

**EXHIBIT 20:** RANKED FACTORS PERCEIVED TO CREATE JOB-RELATED STRESS, IN-HOUSE COUNSEL, 2019





## Civic Engagement Profile

Attorneys broadly represent themselves as community leaders. **Exhibits 21** to **23** rank OSBA member's current and historic involvement in bar-related, civic and business leadership roles.

**EXHIBIT 21:** PRIVATE PRACTITIONERS' INVOLVEMENT IN BAR, COMMUNITY, CORPORATE AND CIVIC AFFAIRS, 2019

**EXHIBIT 22:** GOVERNMENT ATTORNEY INVOLVEMENT IN BAR, COMMUNITY, CORPORATE AND CIVIC AFFAIRS 2019

**EXHIBIT 23:** IN-HOUSE COUNSELS' INVOLVEMENT IN BAR, COMMUNITY, CORPORATE AND CIVIC AFFAIRS, 2019









## Summary

**Exhibit 24** is a summary of income, billing rates and weekly professional time expenditures between six reporting periods. Median values are displayed. A weighted average is calculated for 2012 and 2018 attorney income, which weighs the three categories of responses by the number of responses.

Median net income remains unchanged at $100,000 between 2012 and 2018. The number of total hours worked/week has remained relatively constant (down 1% over six years) and the number of billable hours in the workweek has decreased over time (1.5% over the past six years). Only the average hourly billing rate increased over the time periods reported.

**EXHIBIT 24:** SUMMARY OF NET INCOME, HOURLY BILLING RATE & TIME EXPENDITURE CHANGES, 2000 - 2019

| | Median | Median | Median | Median | Median | Median | Annual % Change | Annual % Change | Annual % Change | Annual % Change | Annual % Change |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Net Income | 2018* | 2012* | 2009 | 2006 | 2003 | 2000 | 2000-2003 | 2003-2006 | 2006-2009 | 2009-2012 | 2012-2018 |
| | *weighted avg. | | | | | | | | | | |
| All attorneys | $90,461 | $95,872 | $84,000 | $85,000 | $80,000 | $75,000 | 2.2% | 0.0% | 0.0% | 0.0% | -0.9% |
| (Full-time only) | $103,551 | $96,173 | $90,000 | $88,500 | $85,000 | $80,000 | 2.1% | 1.4% | 0.6% | 2.3% | 1.3% |
| Private Practitioners | $100,000 | $100,000 | $89,000 | $95,000 | $90,000 | $70,000 | 9.5% | 1.9% | -2.1% | 4.1% | 0.0% |
| (Full-time only) | $106,000 | $105,000 | $94,750 | $98,000 | $100,000 | $82,000 | 7.3% | -0.7% | -1.1% | 3.6% | 0.2% |
| Full-time males | $115,000 | $114,520 | $100,000 | $100,000 | $94,500 | $85,000 | 3.7% | 1.9% | 0.0% | 4.8% | 0.1% |
| Full-time females | $86,000 | $78,841 | $74,000 | $70,000 | $70,000 | $55,000 | 9.1% | 0.0% | 1.9% | 2.2% | 1.5% |
| Part-time males | $60,000 | $45,891 | $38,000 | $80,000 | $50,000 | $31,000 | 20.4% | 20.0% | -17.5% | 6.9% | 5.1% |
| Part-time females | $46,000 | $46,856 | $45,000 | $45,000 | $30,000 | $30,000 | 0.0% | 16.7% | 0.0% | 1.4% | -0.3% |

| | Median | Median | Median | Median | Median | Median | Annual % Change | Annual % Change | Annual % Change | Annual % Change | Annual % Change |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Avg. Hourly Billing Rate | 2019 | 2013 | 2010 | 2007 | 2004 | 2001 | 2001-2004 | 2004-2007 | 2007-2010 | 2010-2013 | 2013-2019 |
| All Private Practitioners | $225 | $207 | $200 | $185 | $175 | $150 | 5.6% | 1.9% | 2.7% | 1.2% | 1.4% |
| (Full-time only) | $250 | $220 | $200 | $185 | $175 | $150 | 5.6% | 1.9% | 2.7% | 3.3% | 2.3% |
| Full-time males | $250 | $225 | $200 | $190 | $175 | $150 | 5.6% | 2.9% | 1.8% | 4.2% | 1.9% |
| Full-time females | $225 | $200 | $195 | $175 | $160 | $125 | 9.3% | 3.1% | 3.8% | 0.9% | 2.1% |
| Part-time males | $200 | $195 | $183 | $190 | $160 | $130 | 7.7% | 6.3% | -1.2% | 2.2% | 0.4% |
| Part-time females | $200 | $175 | $150 | $150 | $125 | $125 | 0.0% | 6.7% | 0.0% | 5.6% | 2.4% |

| | Median | Median | Median | Median | Median | Median | Annual % Change | Annual % Change | Annual % Change | Annual % Change | Annual % Change |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Hours in Workweek | 2019 | 2013 | 2010 | 2007 | 2004 | 2001 | 2001-2004 | 2004-2007 | 2007-2010 | 2010-2013 | 2013-2019 |
| All Private Practitioners | 45 | 48 | 47 | 50 | 50 | 47 | 2.1% | 0.0% | -2.0% | 0.7% | -1.0% |
| (Full-time only) | 48 | 50 | 50 | 50 | 50 | 48 | 1.4% | 0.0% | 0.0% | 0.0% | -0.7% |
| Full-time males | 48 | 50 | 50 | 50 | 50 | 48 | 1.4% | 0.0% | 0.0% | 0.0% | -0.7% |
| Full-time females | 50 | 48 | 45 | 50 | 45 | 45 | 0.0% | 3.7% | -3.3% | 2.2% | 0.7% |
| Part-time males | 25 | 30 | 30 | 40 | 36 | 34 | 2.0% | 3.7% | 8.3% | 0.0% | -2.8% |
| Part-time females | 25 | 25 | 28 | 30 | 30 | 39 | -7.7% | 0.0% | -2.2% | -3.6% | 0 |

| | Median | Median | Median | Median | Median | Median | Annual % Change | Annual % Change | Annual % Change | Annual % Change | Annual % Change |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Billable Hours in Workweek | 2019 | 2013 | 2010 | 2007 | 2004 | 2001 | 2001-2004 | 2004-2007 | 2007-2010 | 2010-2013 | 2013-2019 |
| All Private Practitioners | 30 | 33 | 34 | 35 | 35 | 35 | 0.0% | 0.0% | -1.0% | -1.0% | -1.5% |
| (Full-time only) | 34 | 35 | 35 | 35 | 40 | 35 | 4.8% | -4.2% | 0.0% | 0.0% | -0.5% |
| Full-time males | 33 | 35 | 35 | 35 | 36 | 35 | 1.0% | -0.9% | 0.0% | 0.0% | -1.0% |
| Full-time females | 35 | 34 | 33 | 35 | 35 | 35 | 0.0% | 0.0% | -1.9% | 1.0% | 0.5% |
| Part-time males | 16 | 15 | 18 | 25 | 14 | 15 | -2.2% | 26.2% | -9.3% | -5.6% | 1.1% |
| Part-time females | 12 | 18 | 20 | 20 | 14 | 20 | -10.0% | 14.3% | 0.0% | -3.3% | -5.6% |



# Profiling Ohio Attorney 2018 Net Income

## Introduction

Many interacting factors impact attorney income. Clues to explain income variation, both at a given point in time and across time, can be derived from seven factors addressed in the survey:

- Practice category or classification/class
- Primary field of law or area of specialization
- Years in practice
- Gender
- Firm size (number of attorneys in firm or organization)
- Office location (county where law office is located)
- Work status: full-time (working 30 hours/week) vs. part-time (working <30 hours/week)

## 2018 Attorney Net Income by Practice Class and Field of Law

**Exhibit 25** summarizes 2018 attorney net income by eleven practice categories reported by 374 private practitioner respondents (denoted by **N**). **Exhibit 26** covers government attorneys and in-house counsel.

By convention, this, and subsequent exhibits providing percentile information, offer four data points – the 25th, 50th (Median), 75th and 95th percentiles – on the variable (item) of interest.

For example, 25 percent of all space sharers earn less than $48,500, half earn less than $85,000, while half earn more than $77,000 and 25 percent earn more than $150,000. The range of net income is large within groups; for example, it ranges from $135,000 for partners in firms with eight+ partners at the 25th percentile to $750,000 at the 95th percentile level.

**EXHIBIT 25:** 2018 PRIVATE PRACTITIONER NET INCOME BY PRACTICE CLASS

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Private Practitioner Class** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Solo, office outside home | 90 | $128,678 | $60,000 | $97,000 | $150,000 | $300,000 |
| Solo, home office | 41 | $64,993 | $8,000 | $48,000 | $86,000 | $200,000 |
| Solo wiith 1+ associate | 16 | $167,063 | $100,000 | $140,000 | $215,000 | $403,000 |
| Space sharer | 14 | $96,557 | $48,000 | $85,000 | $150,000 | $265,000 |
| Partner in firm with 2-7 partners | 91 | $151,291 | $84,000 | $125,000 | $200,000 | $340,000 |
| Partner in firm with 8+ partners | 33 | $254,909 | $135,000 | $200,000 | $300,000 | $750,000 |
| Of Counsel | 7 | $106,429 | $60,000 | $100,000 | $180,000 | $180,000 |
| Associate with sole practitioner | 14 | $83,085 | $58,000 | $72,500 | $92,000 | $220,000 |
| Associate in firm with 2-7 partners | 39 | $80,132 | $55,000 | $75,000 | $90,000 | $180,000 |
| Associate in firm with 8+ partners | 26 | $101,865 | $78,000 | $102,000 | $127,000 | $150,000 |
| **All Private Practitioners** | **374** | **$129,804** | **$65,000** | **$100,000** | **$150,000** | **$300,000** |



**EXHIBIT 26:** 2018 GOVERNMENT LAWYER AND IN-HOUSE COUNSEL NET INCOME BY PRACTICE CLASS

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Government Attorneys** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Judge/Magistrate (full-time) | 12 | $99,538 | $70,000 | $96,000 | $135,000 | $140,550 |
| County government | 20 | $64,300 | $48,500 | $64,000 | $76,500 | $101,500 |
| State government- AG office | 7 | $84,000 | $58,000 | $70,000 | $95,000 | $165,000 |
| State government - other | 8 | $76,063 | $55,500 | $82,000 | $103,000 | $123,000 |
| Public interest/non-profit attorney | 10 | $83,189 | $64,900 | $85,500 | $92,000 | $125,000 |
| **Total** | **66** | **$80,251** | **$58,000** | **$73,500** | **$95,000** | **$140,550** |
| | Value by Percentile | | | | | |
| **In-House Counsel** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| CLO or General Counsel (GC) | 9 | $176,667 | $140,000 | $160,000 | $190,000 | $385,000 |
| Senior Counsel | 5 | $215,200 | $181,000 | $195,000 | $228,000 | $350,000 |
| Associate/Assistant GC | 7 | $185,000 | $80,000 | $125,000 | $300,000 | $500,000 |
| Counsel | 7 | $89,143 | $67,500 | $88,000 | $120,000 | $141,000 |
| Corporate Counsel | 9 | $141,644 | $120,000 | $123,000 | $125,000 | $280,000 |
| Staff Attorney | 5 | $101,000 | $75,000 | $100,000 | $129,000 | $141,000 |
| **Total** | **42** | **$151,543** | **$85,000** | **$125,000** | **$181,000** | **$350,000** |





## Full-Time Private Practitioner Net Income by Practice Class

**Exhibit 27** includes only 314 private practitioners who report working on a full-time basis. **Exhibit 28** includes government attorneys and in-house counsel.

**EXHIBIT 27:** 2018 NET INCOME BY PRACTICE CATEGORY (FULL-TIME ONLY)

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Private Practitioners** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Solo, office outside home | 71 | $148,282 | $70,000 | $100,000 | $160,000 | $357,000 |
| Solo, home office | 19 | $99,505 | $37,000 | $80,000 | $165,000 | $300,000 |
| Solo with 1+ associate | 16 | $167,063 | $100,000 | $140,000 | $215,000 | $403,000 |
| Space sharer | 10 | $114,680 | $55,000 | $99,400 | $150,000 | $265,000 |
| Partner in firm with 2-7 partners | 86 | $151,110 | $84,000 | $122,500 | $200,000 | $340,000 |
| Partner in firm with 8+ partners | 32 | $256,469 | $132,500 | $195,000 | $303,500 | $750,000 |
| Of Counsel | 4 | $132,500 | $85,000 | $145,000 | $180,000 | $180,000 |
| Associate with sole practitioner | 12 | $84,516 | $59,000 | $72,500 | $91,000 | $220,000 |
| Associate in firm with 2-7 partners | 38 | $75,662 | $55,000 | $73,500 | $90,000 | $155,000 |
| Associate in firm with 8+ partners | 26 | $101,865 | $78,000 | $102,000 | $127,000 | $150,000 |
| **All Private Practitioners** | **314** | **$141,393** | **$75,000** | **$107,400** | **$165,000** | **$325,000** |

**EXHIBIT 28:** 2018 NET INCOME OF GOVERNMENT ATTORNEYS AND IN-HOUSE COUNSEL BY PRACTICE CATEGORY (FULL-TIME ONLY)

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Government Attorney** | **Valid N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Judge/Magistrate (full-time) | 12 | $99,538 | $70,000 | $96,000 | $135,000 | $140,550 |
| County government | 20 | $64,300 | $48,500 | $64,000 | $76,500 | $101,500 |
| State government- AG office | 7 | $84,000 | $58,000 | $70,000 | $95,000 | $165,000 |
| State government - other | 7 | $76,643 | $55,000 | $92,000 | $106,000 | $123,000 |
| Public interest/non-profit attorney | 10 | $83,189 | $64,900 | $85,500 | $92,000 | $125,000 |
| **Total** | **64** | **$79,290** | **$57,925** | **$72,500** | **$93,500** | **$140,000** |
| | **Value by Percentile** | | | | | |
| **In-House Counsel** | **Valid N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| CLO or General Counsel (GC) | 9 | $176,667 | $140,000 | $160,000 | $190,000 | $385,000 |
| Senior Counsel | 5 | $215,200 | $181,000 | $195,000 | $228,000 | $350,000 |
| Associate/Assistant GC | 7 | $185,000 | $80,000 | $125,000 | $300,000 | $500,000 |
| Counsel | 7 | $89,143 | $67,500 | $88,000 | $120,000 | $141,000 |
| Corporate Counsel | 9 | $141,644 | $120,000 | $123,000 | $125,000 | $280,000 |
| Staff Attorney | 5 | $101,000 | $75,000 | $100,000 | $129,000 | $141,000 |
| **Total** | **42** | **$151,543** | **$85,000** | **$125,000** | **$181,000** | **$350,000** |



**Exhibits 29 and 30** reveal income clustering among all practice categories. Not surprisingly, there is a large spread of income within most categories, which reflect different forms and styles of practice. **Exhibit 30** covers changes since 2013 for all three practice classes.

**EXHIBIT 29:** PERCENT DISTRIBUTION OF 2018 PRIVATE PRACTICE ATTORNEY NET INCOME BY INCOME GROUP AND PRACTICE CLASS

| 2018 Income Group | Solo Office Outside of Home | Solo with Home Office | Solo with 1+ Associate | Partner in Firm with 2-7 Partners | Partner in Firm with 8+ Partners | Associate in Firm with 2-7 Partners | Associate in Firm with 8+ Partners | All Private Practitoners |
|---|---|---|---|---|---|---|---|---|
| <$30K | 11% | 42% | - | - | - | - | - | 9% |
| $30-45.9K | 9% | 7% | - | - | - | - | - | 5% |
| $46-55.9K | 4% | 5% | - | - | - | - | - | 5% |
| $56-65.9K | 8% | - | - | 6% | - | 13% | - | 7% |
| $66-75.9K | 7% | - | - | 9% | - | 13% | 15% | 7% |
| $76-85.9K | 7% | 10% | - | 8% | - | 21% | 15% | 9% |
| $86-95.9K | 4% | - | - | - | - | 13% | 12% | 6% |
| $96-115.9K | 14% | - | 19% | 17% | 9% | - | - | 13% |
| $116-135.9K | 8% | 7% | - | 17% | 15% | - | 27% | 10% |
| $136-175.9K | 10% | - | - | 8% | 15% | | 12% | 8% |
| $176-249.9K | 8% | 7% | 25% | 20% | 24% | - | - | 12% |
| $250-479K | 7% | - | 19% | 8% | 24% | - | - | 7% |
| $480K+ | 3% | - | - | 3% | 9% | - | - | 2% |
| **Count** | **90** | **41** | **16** | **91** | **33** | **39** | **26** | **374** |
| **All Private Practitioners** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

**EXHIBIT 30:** PERCENT DISTRIBUTION OF THREE CLASSES OF ATTORNEYS BY INCOME GROUP, 2012 AND 2018

| | Column Percents | | | | | |
|---|---|---|---|---|---|---|
| **Income Group** | **2012 Private Practitioner** | **2018 Private Practitioner** | **2012 Government** | **2018 Government** | **2012 In-House Counsel** | **2018 In-House Counsel** |
| <$30K | 11.2% | 8.4% | 2.1% | 1.4% | 0 | 0 |
| $30-45.9K | 6.3% | 5.3% | 6.7% | 8.6% | 0 | 2.1% |
| $46-55.9K | 7.4% | 5.3% | 12.0% | 10.0% | 0 | 4.3% |
| $56-65.9K | 8.2% | 7.1% | 19.4% | 17.1% | 0 | 17.0% |
| $66-75.9K | 5.5% | 7.4% | 15.8% | 14.3% | 13.3% | 6.4% |
| $76-85.9K | 4.5% | 8.7% | 9.5% | 14.3% | 6.7% | 4.3% |
| $86-95.9K | 4.9% | 5.5% | 11.3% | 11.4% | 8.6% | 2.1% |
| $96-115.9K | 10.7% | 12.4% | 11.6% | 5.7% | 15.2% | 25.0% |
| $116-135.9K | 9.0% | 10.3% | 8.5% | 8.6% | 18.1% | 12.8% |
| $136-175.9K | 9.0% | 7.9% | 1.4% | 8.6% | 16.2% | 12.8% |
| $176-249.9K | 10.8% | 12.4% | 1.4% | 0.0% | 10.5% | 8.5% |
| $250-479K | 9.2% | 7.1% | 0.4% | 0.0% | 11.4% | 2.1% |
| $480K+ | 3.1% | 2.4% | 0 | 0.0% | 0.0% | 1.0% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



## Issues Related to Law School Debt

Law school student debt issues not only affect students, but are of vital concern to the legal services industry and the general economy itself. The OSBA's current economic survey separately targeted these questions to private practitioners, in-house counsel and government attorneys:

- If you borrowed money to attend school, please approximate your total, cumulative law school-related debt.
- What is your current monthly payment on your educational debt?
- About how many remaining years of payment do you have?

The first part of **Exhibit 31** stratifies total reported cumulative law school-related debt by generation (Millennials, Generation Xers and Baby Boomers). Private Practitioners report a median debt of $60,000, government attorneys report $45,000, and In-house Counsel report $70,000. Debt is long-lived.

The second part of **Exhibit 31** stratifies current monthly payments to reduce law school debt by generation. Private Practitioners report a median payment of $470/month, government attorneys report a median payment of $153/month, and in-house counsel report a median payment of $375/month.





**EXHIBIT 31:** DISTRIBUTIONS OF 2019 TOTAL CUMULATIVE LAW SCHOOL DEBT AND CURRENT MONTHLY PAYMENTS BY GENERATION

| Private Practitioners Generation | Total Cumulative Law School Debt | | | | | |
|---|---|---|---|---|---|---|
| | **N** | **25th Percentile** | **Median** | **Mean** | **75th Percentile** | **95th Percentile** |
| Millennials (1980-1994) | 63 | 45,000 | 80,000 | 98,810 | 140,000 | 210,000 |
| Generation Xers (1965-1979) | 74 | 30,000 | 60,000 | 71,088 | 90,000 | 160,000 |
| Baby boomers (1944-1964) | 43 | 10,000 | 15,000 | 32,228 | 40,000 | 132,000 |
| **Total** | **181** | **$25,000** | **$60,000** | **$71,499** | **$100,000** | **$200,000** |

| Government Attorneys | Government Attorneys | | | | | |
|---|---|---|---|---|---|---|
| | **N** | **25th Percentile** | **Median** | **Mean** | **75th Percentile** | **95th Percentile** |
| Millennials (1980-1994) | 30 | 75,000 | 110,000 | 113,380 | 150,000 | 275,000 |
| Generation Xers (1965-1979) | 20 | - | 47,500 | 67,450 | 130,000 | 207,500 |
| Baby boomers (1944-1964) | 21 | - | - | 6,738 | 6,000 | 25,000 |
| **Total** | **71** | **-** | **$45,000** | **$68,900** | **$125,000** | **$200,000** |

| In-House Counsel | In-House Counsel | | | | | |
|---|---|---|---|---|---|---|
| | **N** | **25th Percentile** | **Median** | **Mean** | **75th Percentile** | **95th Percentile** |
| Millennials (1980-1994) | 17 | 50,000 | 90,000 | 87,706 | 116,000 | 240,000 |
| Generation Xers (1965-1979) | 15 | 15,000 | 70,000 | 72,000 | 130,000 | 190,000 |
| Baby boomers (1944-1964) | 7 | - | 10,000 | 41,000 | 100,000 | 152,000 |
| **Total** | **39** | **$15,000** | **$70,000** | **$73,282** | **$120,000** | **$190,000** |

| | CURRENT MONTHLY PAYMENT FOR: | | | | | |
|---|---|---|---|---|---|---|
| Private Practitioners Generation | Private Practitioners | | | | | |
| | **N** | **25th Percentile** | **Median** | **Mean** | **75th Percentile** | **95th Percentile** |
| Millennials (1980-1994) | 80 | 302 | 470 | 577 | 775 | 1450 |
| Generation Xers (1965-1979) | 59 | 300 | 418 | 535 | 725 | 1200 |
| Baby Boomers (1944-1964) | 8 | 244 | 425 | 553 | 675 | 1600 |
| **Total** | **148** | **$300** | **$470** | **$559** | **$738** | **$1,200** |

| Government Attorneys | Government Attorneys | | | | | |
|---|---|---|---|---|---|---|
| | **N** | **25th Percentile** | **Median** | **Mean** | **75th Percentile** | **95th Percentile** |
| Millennials (1980-1994) | 39 | 145 | 315 | 414 | 500 | 1,400 |
| Generation Xers (1965-1979) | 35 | - | 200 | 292 | 450 | 1,200 |
| Baby Boomers (1944-1964) | 29 | - | - | 34 | - | 385 |
| **Total** | **104** | **$0** | **$153** | **$250** | **$412** | **$1,200** |

| In-House Counsel | In-House Counsel | | | | | |
|---|---|---|---|---|---|---|
| | **N** | **25th Percentile** | **Median** | **Mean** | **75th Percentile** | **95th Percentile** |
| Millennials (1980-1994) | 26 | 250 | 500 | 639 | 1,087 | 1800 |
| Generation Xers (1965-1979) | 24 | - | 397 | 583 | 1,100 | 1500 |
| Baby Boomers (1944-1964) | 11 | - | - | 211 | 325 | 1000 |
| **Total** | **61** | **$0** | **$375** | **$540** | **$1,000** | **1500** |



Respondents report the number of remaining years of payments with a median of 15 years for Private Practitioners, five years for government attorneys and nine years for In-house Counsel. **Exhibit 32** distributes remaining years of payment by generation.

The survey queried as to the degree of deferrals experienced by practice class. About 9.3% of private practitioners are in deferral on paying off educational debt, while 5.2% of government attorneys and 4.8% of in-house counsel report deferral status.

**EXHIBIT 32:** DISTRIBUTIONS OF 2019 REMAINING YEARS OF PAYMENT BY GENERATION

| | Private Practitioners | | | | | |
|---|---|---|---|---|---|---|
| **Generation** | **N** | **25th Percentile** | **Median** | **Mean** | **75th Percentile** | **95th Percentile** |
| Millennials (after 1980) | 93 | 9 | 19 | 20 | 22 | 35 |
| Generation Xers (1961-1980) | 64 | 7 | 13 | 13 | 18 | 25 |
| Baby Boomers (1944-1960) | 16 | 5 | 9 | 11 | 18 | 30 |
| **Total** | **174** | **7** | **15** | **17** | **20** | **30** |

| | Government Attorneys | | | | | |
|---|---|---|---|---|---|---|
| **Generation** | **N** | **25th Percentile** | **Median** | **Mean** | **75th Percentile** | **95th Percentile** |
| Millennials (after 1980) | 42 | 6 | 10 | 12 | 18 | 30 |
| Generation Xers (1961-1980) | 37 | - | 3 | 6 | 9 | 20 |
| Baby Boomers (1944-1960) | 29 | - | - | 1 | 0 | 8 |
| **Total** | **109** | **0** | **5** | **7** | **10** | **22** |

| | In-House Counsel | | | | | |
|---|---|---|---|---|---|---|
| **Generation** | **N** | **25th Percentile** | **Median** | **Mean** | **75th Percentile** | **95th Percentile** |
| Millennials (after 1980) | 29 | 7 | 12 | 12 | 19 | 21 |
| Generation Xers (1961-1980) | 25 | - | 9 | 9 | 14 | 20 |
| Baby Boomers (1944-1960) | 10 | - | - | 2 | 3 | 10 |
| **Total** | **64** | **-** | **9** | **9** | **15** | **20** |





## Income by Field of Law

Attorneys were asked to select from a list of various fields of law those that provided their highest sources of income, which is defined here as primary field of law. **Exhibit 33** distributes 2018 net incomes of all private practice respondents by their reported primary source of income. **Exhibit 34** considers full-time private practitioners only. **Exhibit 35**, in addition to field of law, includes practice emphasis for government attorneys and in-house counsel.

**EXHIBIT 33:** 2018 NET INCOME BY PRIMARY FIELD OF LAW, PRIVATE PRACTITIONERS

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Primary Field of Law** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Administrative Law | 7 | $97,714 | $14,000 | $77,000 | $205,000 | $236,000 |
| Bankruptcy/Debtor Law | 10 | $134,467 | $82,000 | $135,000 | $200,000 | $264,400 |
| Consumer Law | 5 | $88,000 | $60,000 | $80,000 | $90,000 | $150,000 |
| Corporate/Business Law | 25 | $174,664 | $78,000 | $120,000 | $190,000 | $500,000 |
| Criminal (Public Defendant) | 7 | $68,571 | $30,000 | $60,000 | $120,000 | $130,000 |
| Criminal (Private Defendant) | 11 | $193,818 | $80,000 | $100,000 | $145,000 | $1,000,000 |
| Domestic Relations/Family Law/ Juvenile Law | 45 | $92,403 | $45,000 | $75,000 | $110,000 | $210,000 |
| Education Law | 7 | $106,095 | $66,667 | $84,000 | $135,000 | $200,000 |
| Elder Law/Public Benefits/ERISA | 20 | $139,900 | $97,500 | $129,500 | $182,500 | $250,000 |
| General Practice | 14 | $65,357 | $35,000 | $60,000 | $90,000 | $188,000 |
| Insurance Law | 8 | $132,125 | $85,000 | $103,000 | $154,500 | $300,000 |
| Intellectual Property | 10 | $142,193 | $59,000 | $142,500 | $200,000 | $325,000 |
| Labor Law (Labor) | 7 | $140,143 | $84,000 | $92,000 | $180,000 | $277,000 |
| Employment Law (Labor) | 7 | $198,143 | $77,000 | $140,000 | $200,000 | $675,000 |
| Medical Malpractice | 4 | $450,000 | $250,000 | $450,000 | $650,000 | $700,000 |
| Municipal/Public Entity Law | 5 | $130,000 | $125,000 | $140,000 | $150,000 | $150,000 |
| Personal Injury (Defendant) | 4 | $167,250 | $112,000 | $175,000 | $222,500 | $245,000 |
| Personal Injury (Plaintiff) | 14 | $116,450 | $70,000 | $93,148 | $165,000 | $250,000 |
| Real Property Law | 25 | $120,680 | $60,000 | $110,000 | $130,000 | $300,000 |
| Trial Practice, not PI (General Civil) | 13 | $196,346 | $75,000 | $96,000 | $180,000 | $750,000 |
| Trial Practice, not PI (Commercial) | 8 | $218,125 | $90,000 | $142,500 | $275,000 | $650,000 |
| Estate Planning/Wealth Man-agement | 26 | $131,112 | $79,000 | $110,000 | $150,000 | $300,000 |
| Probate/Decedent's Estates | 47 | $91,320 | $50,000 | $80,000 | $128,000 | $185,000 |
| Workers' Compensation (Plaintiff) | 7 | $157,000 | $65,000 | $130,000 | $220,000 | $357,000 |
| Workers' Compensation (Defendant) | 5 | $147,000 | $115,000 | $120,000 | $200,000 | $240,000 |
| **Total** | **371** | **$130,001** | **$65,000** | **$100,000** | **$150,000** | **$300,000** |



**EXHIBIT 34:** 2018 NET INCOME BY FIELD OF LAW, FULL-TIME PRIVATE PRACTITIONERS

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Primary Field of Law** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Administrative Law | 6 | $114,000 | $52,000 | $88,500 | $205,000 | $236,000 |
| Bankruptcy/Debtor Law | 9 | $148,552 | $103,000 | $160,000 | $200,000 | $264,400 |
| Consumer Law | 5 | $88,000 | $60,000 | $80,000 | $90,000 | $150,000 |
| Corporate/Business Law | 23 | $179,983 | $78,000 | $120,000 | $190,000 | $500,000 |
| Criminal (Public Defendant) | 6 | $74,167 | $30,000 | $67,500 | $120,000 | $130,000 |
| Criminal (Private Defendant) | 11 | $193,818 | $80,000 | $100,000 | $145,000 | $1,000,000 |
| Domestic Relations/Family Law/ Juvenile Law | 39 | $101,875 | $55,000 | $80,000 | $120,000 | $280,000 |
| Education Law | 6 | $109,778 | $66,667 | $100,000 | $135,000 | $200,000 |
| Elder Law/Public Benefits/ERISA | 17 | $138,118 | $100,000 | $129,000 | $150,000 | $250,000 |
| General Practice | 7 | $88,286 | $50,000 | $90,000 | $100,000 | $188,000 |
| Insurance Law | 7 | $137,429 | $75,000 | $104,000 | $159,000 | $300,000 |
| Intellectual Property | 9 | $152,889 | $72,000 | $155,000 | $200,000 | $325,000 |
| Labor Law (Labor) | 6 | $149,500 | $90,000 | $136,000 | $180,000 | $277,000 |
| Employment Law (Labor) | 7 | $198,143 | $77,000 | $140,000 | $200,000 | $675,000 |
| Medical Malpractice | 4 | $450,000 | $250,000 | $450,000 | $650,000 | $700,000 |
| Municipal/Public Entity Law | 5 | $130,000 | $125,000 | $140,000 | $150,000 | $150,000 |
| Personal Injury (Plaintiff) | 13 | $106,177 | $70,000 | $86,296 | $125,000 | $210,000 |
| Real Property Law | 19 | $144,947 | $65,000 | $120,000 | $240,000 | $307,000 |
| Trial Practice, not PI (General Civil) | 12 | $211,875 | $79,500 | $98,000 | $250,000 | $750,000 |
| Trial Practice, not PI (Commercial) | 7 | $234,286 | $90,000 | $180,000 | $360,000 | $650,000 |
| Estate Planning/Wealth Management | 23 | $135,978 | $79,000 | $110,000 | $170,000 | $300,000 |
| Probate, Decedent's Estates | 38 | $104,498 | $59,000 | $97,500 | $131,000 | $250,000 |
| Workers' Compensation (Plaintiff) | 5 | $187,000 | $130,000 | $220,000 | $220,000 | $357,000 |
| Workers' Compensation (Defendant) | 4 | $153,750 | $87,500 | $157,500 | $220,000 | $240,000 |
| **All Full-time Private Practitoners** | **315** | **$141,715** | **$75,000** | **$108,800** | **$165,000** | **$325,000** |





Case: 3:19-cv-02434-JZ Doc #: 65-2 Filed: 03/12/20 63 of 124. PageID #: 913

**EXHIBIT 35:** 2018 NET INCOME BY PRIMARY FIELD OF LAW, GOVERNMENT ATTORNEYS AND IN-HOUSE COUNSEL BY FIELD OF LAW AND PRACTICE EMPHASES

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Primary Field of Law** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Judge/Magistrate (full-time) | 12 | $99,538 | $70,000 | $96,000 | $135,000 | $140,550 |
| City government | 3 | $68,233 | $49,700 | $70,000 | $85,000 | $85,000 |
| County government | 20 | $64,300 | $48,500 | $64,000 | $76,500 | $101,500 |
| State government- AG office | 7 | $84,000 | $58,000 | $70,000 | $95,000 | $165,000 |
| State government - other | 8 | $76,062 | $55,500 | $82,000 | $103,000 | $123,000 |
| Public interest/non-profit attorney | 10 | $83,189 | $64,900 | $85,500 | $92,000 | $125,000 |
| **All Government Attorneys** | **66** | **$80,251** | **$58,000** | **$73,500** | **$95,000** | **$140,550** |

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Practice Emphasis** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Criminal prosecution | 13 | $64,769 | $56,000 | $66,000 | $78,000 | $87,000 |
| Criminal defense | 6 | $69,067 | $40,000 | $59,950 | $100,000 | $150,000 |
| Litigation | 16 | $81,000 | $57,000 | $72,500 | $104,500 | $140,000 |
| Government affairs/ external relations | 8 | $78,999 | $64,995 | $71,000 | $92,000 | $116,000 |
| Preside over hearings/ cases | 11 | $103,586 | $85,000 | $97,000 | $140,000 | $140,550 |
| **All Government Attorneys** | **58** | **$80,785** | **$58,000** | **$71,000** | **$95,000** | **$140,550** |

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Organization Type** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Public company (for-profit) | 19 | $157,726 | $100,000 | $125,000 | $190,000 | $500,000 |
| Private company (for-profit) | 18 | $143,136 | $72,000 | $121,500 | $175,000 | $385,000 |
| Wholly owned subsidiary | 3 | $119,000 | $75,000 | $122,000 | $160,000 | $160,000 |
| Not-for-profit organization | 6 | $122,833 | $80,000 | $110,000 | $140,000 | $228,000 |
| **All In-House Counsel** | **46** | **$144,940** | **$80,000** | **$124,000** | **$175,000** | **$350,000** |





## Income by Years in Practice

Attorney income increases with tenure, as displayed in **Exhibit 36**.

**EXHIBIT 36:** 2018 NET INCOME BY YEARS OF PRACTICE, ALL ATTORNEY CLASSES

| All Private Practitioners | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Years in Practice** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| 1 to 2 | 12 | $61,758 | $43,000 | $50,000 | $75,500 | $145,000 |
| 3 to 5 | 30 | $77,667 | $57,000 | $73,000 | $82,000 | $180,000 |
| 6 to 10 | 51 | $95,416 | $60,000 | $86,000 | $127,000 | $202,000 |
| 11 to 15 | 30 | $128,383 | $72,000 | $100,000 | $130,000 | $675,000 |
| 16 to 25 | 73 | $149,658 | $84,000 | $110,000 | $200,000 | $340,000 |
| 26 to 35 | 78 | $160,014 | $75,000 | $127,000 | $200,000 | $403,000 |
| 36+ | 105 | $130,952 | $65,000 | $100,000 | $180,000 | $277,000 |
| **All Attorneys** | **379** | **$129,142** | **$65,000** | **$100,000** | **$150,000** | **$300,000** |

| Full-time Private Practitioners Only | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Years in Practice** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| 1 to 2 | 9 | $70,667 | $50,000 | $50,000 | $79,000 | $145,000 |
| 3 to 5 | 27 | $83,333 | $59,000 | $75,000 | $90,000 | $180,000 |
| 6 to 10 | 45 | $103,827 | $70,000 | $95,000 | $130,000 | $202,000 |
| 11 to 15 | 27 | $139,141 | $77,000 | $100,000 | $130,000 | $675,000 |
| 16 to 25 | 63 | $160,240 | $90,000 | $112,000 | $200,000 | $340,000 |
| 26 to 35 | 70 | $173,344 | $84,000 | $135,500 | $225,000 | $403,000 |
| 36+ | 78 | $149,264 | $75,000 | $120,000 | $200,000 | $300,000 |
| **All Full-time Private Practitioners** | **319** | **$141,651** | **$75,000** | **$108,800** | **$165,000** | **$325,000** |

| Government Attorney | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Years in Practice** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| 1 to 2 | 6 | $38,917 | $39,000 | $42,500 | $45,000 | $60,000 |
| 3 to 5 | 8 | $51,463 | $46,350 | $50,500 | $54,000 | $78,000 |
| 6 to 10 | 14 | $73,964 | $58,000 | $70,000 | $86,500 | $125,000 |
| 11 to 15 | 7 | $98,141 | $70,000 | $84,000 | $130,000 | $165,000 |
| 16 to 25 | 16 | $85,241 | $65,500 | $82,500 | $94,500 | $140,000 |
| 26 to 35 | 10 | $88,090 | $70,000 | $82,000 | $92,000 | $140,000 |
| 36+ | 9 | $112,011 | $95,000 | $107,000 | $140,550 | $150,000 |
| **All Government Attorneys** | **70** | **$80,293** | **$58,000** | **$73,500** | **$95,000** | **$140,550** |

| In-House Counsel | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Years in Practice** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| 3 to 5 | 4 | $79,614 | $51,729 | $75,729 | $107,500 | $125,000 |
| 6 to 10 | 16 | $112,563 | $80,000 | $121,500 | $134,500 | $175,000 |
| 11 to 15 | 10 | $128,280 | $88,000 | $122,399 | $140,000 | $220,000 |
| 16 to 25 | 7 | $143,286 | $72,000 | $135,000 | $200,000 | $280,000 |
| 26 to 35 | 4 | $267,000 | $209,000 | $264,000 | $325,000 | $350,000 |
| 36+ | 4 | $280,000 | $117,500 | $272,500 | $442,500 | $500,000 |
| **All In-House Counsel** | **47** | **$143,133** | **$75,000** | **$123,000** | **$175,000** | **$350,000** |



Case: 3:19-cv-02434-JZ Doc #: 65-2 Filed: 03/12/20 65 of 124. PageID #: 915

## Attorney Income by Firm Size

**Exhibit 37** displays 2018 attorney net income by firm size. Within larger firms, lower percentile values generally represent associates, while higher percentile values represent partners. Median levels, in this exhibit, represent a mix of both categories.

**EXHIBIT 37:** 2018 NET INCOME BY FIRM SIZE, ALL CLASSES OF ATTORNEYS

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Size of Firm (Number of Attorneys)** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| 1 | 144 | $107,679 | $40,000 | $80,000 | $129,000 | $265,000 |
| 2 | 40 | $138,179 | $75,000 | $100,000 | $169,000 | $351,500 |
| 3 to 6 | 96 | $123,125 | $75,000 | $98,000 | $150,000 | $250,000 |
| 7 to 10 | 27 | $136,758 | $66,667 | $108,800 | $150,000 | $350,000 |
| 11 to 20 | 14 | $145,571 | $96,000 | $145,000 | $180,000 | $250,000 |
| 21 to 50 | 27 | $156,148 | $72,000 | $110,000 | $190,000 | $400,000 |
| >50 | 24 | $223,813 | $106,500 | $147,500 | $240,000 | $750,000 |
| **All Private Practitioners** | **372** | **$129,492** | **$65,000** | **$100,000** | **$150,000** | **$300,000** |

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Size of Firm (Number of Attorneys)** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| 1 | 99 | $135,946 | $63,750 | $100,000 | $160,000 | $300,000 |
| 2 | 38 | $140,925 | $75,000 | $101,000 | $180,000 | $403,000 |
| 3 to 6 | 90 | $122,789 | $75,000 | $95,500 | $150,000 | $250,000 |
| 7 to 10 | 27 | $136,758 | $66,667 | $108,800 | $150,000 | $350,000 |
| 11 to 20 | 12 | $131,917 | $91,000 | $127,500 | $170,000 | $200,000 |
| 21 to 50 | 25 | $162,240 | $72,000 | $115,000 | $190,000 | $400,000 |
| >50 | 24 | $223,813 | $106,500 | $147,500 | $240,000 | $750,000 |
| **All Full-time Private Practitioners** | **315** | **$141,485** | **$75,000** | **$106,000** | **$165,000** | **$325,000** |

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Size of Firm (Number of Attorneys)** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| 1 | 4 | $79,750 | $70,000 | $78,500 | $89,500 | $92,000 |
| 3 to 6 | 20 | 69,192 | $50,500 | $60,000 | $85,000 | $128,000 |
| 7 to 10 | 8 | $88,063 | $75,500 | $83,250 | $99,000 | $123,000 |
| 11 to 20 | 14 | $88,793 | $56,000 | $80,500 | $125,000 | $140,550 |
| 21 to 50 | 6 | $76,983 | $55,000 | $71,450 | $87,000 | $122,000 |
| >50 | 11 | $74,018 | $50,000 | $70,000 | $85,000 | $165,000 |
| **All Government Attorneys** | **65** | **$78,054** | **$57,850** | **$70,000** | **$92,000** | **$140,000** |

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Size of Firm (Number of Attorneys)** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| 1 | 12 | $142,205 | $79,500 | $132,500 | $185,500 | $280,000 |
| 2 | 9 | 105,778 | $85,000 | $123,000 | $125,000 | $141,000 |
| 3 to 6 | 17 | 127,353 | $70,000 | $118,000 | $141,000 | $350,000 |
| 7 to 10 | 5 | 132,359 | $72,000 | $122,797 | $125,000 | $300,000 |
| **All In-House Counsel** | **46** | **$137,875** | **$75,000** | **$122,899** | **$160,000** | **$300,000** |



## Attorney Income by Office Location

**Exhibit 38** displays 2018 annual net income of Ohio attorneys within major metropolitan areas and regions, along with all major jurisdictions. **Exhibits 39-41** only include full-time private practitioners and in-house counsel.

**EXHIBIT 38:** 2018 NET INCOME, ALL PRIVATE PRACTITIONERS BY OFFICE LOCATION

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Office Location Combined Areas** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Greater Cleveland | 79 | $129,000 | $65,000 | $99,000 | $180,000 | $325,000 |
| Greater Cincinnati | 29 | $134,293 | $72,000 | $105,000 | $132,500 | $210,000 |
| Greater Columbus | 92 | $159,093 | $75,000 | $120,000 | $200,000 | $403,000 |
| Greater Dayton | 26 | $115,127 | $45,000 | $78,000 | $128,000 | $300,000 |
| Northeast Region | 79 | $100,407 | $60,000 | $90,000 | $115,192 | $277,000 |
| Northwest Region | 44 | $122,532 | $84,500 | $110,500 | $147,500 | $243,000 |
| Southern Region | 30 | $126,163 | $40,000 | $92,500 | $150,000 | $240,000 |
| **All Private Practitioners** | **379** | **$128,823** | **$65,000** | **$100,000** | **$150,000** | **$300,000** |

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Office Location Detailed** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Downtown Cleveland | 25 | $176,384 | $80,000 | $130,000 | $200,000 | $500,000 |
| Suburban Cleveland | 54 | $107,064 | $60,000 | $82,000 | $150,000 | $265,000 |
| Downtown Cincinnati | 17 | $148,647 | $72,000 | $100,000 | $127,000 | $950,000 |
| Suburban Cincinnati | 12 | $113,958 | $71,500 | $124,500 | $138,750 | $210,000 |
| Downtown Columbus | 43 | $168,081 | $77,000 | $125,000 | $220,000 | $340,000 |
| Suburban Columbus | 49 | $151,206 | $72,000 | $115,000 | $180,000 | $403,000 |
| Akron | 29 | $95,851 | $55,000 | $75,000 | $108,800 | $277,000 |
| Canton | 8 | $135,196 | $75,500 | $102,500 | $178,784 | $360,000 |
| Dayton | 26 | $115,127 | $45,000 | $78,000 | $128,000 | $300,000 |
| Toledo | 23 | $120,261 | $80,000 | $100,000 | $150,000 | $236,000 |
| Youngstown | 8 | $110,875 | $87,500 | $96,500 | $137,500 | $160,000 |
| Northeast Ohio | 34 | $93,644 | $55,000 | $77,500 | $110,000 | $250,000 |
| Northwest Ohio | 21 | $125,019 | $90,000 | $112,000 | $145,000 | $243,000 |
| Southeast Ohio | 10 | $212,200 | $100,000 | $135,000 | $200,000 | $1,000,000 |
| Southwest Ohio | 7 | $59,200 | $39,400 | $55,000 | $100,000 | $125,000 |
| Central Ohio | 13 | $96,038 | $40,000 | $79,500 | $135,000 | $240,000 |
| **All Private Practitioners** | **380** | **$128,958** | **$65,000** | **$100,000** | **$150,000** | **$300,000** |





**EXHIBIT 39:** 2018 NET INCOME, ALL FULL-TIME PRIVATE PRACTITIONERS BY OFFICE LOCATION

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Office Location Combined Areas** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Greater Cleveland | 68 | $142,781 | $72,000 | $112,500 | $187,500 | $325,000 |
| Greater Cincinnati | 21 | $151,690 | $80,000 | $120,000 | $132,500 | $210,000 |
| Greater Columbus | 78 | $176,045 | $78,000 | $126,000 | $205,000 | $600,000 |
| Greater Dayton | 21 | $133,252 | $57,000 | $80,000 | $140,000 | $300,000 |
| Northeast Region | 65 | $107,607 | $70,000 | $90,000 | $120,000 | $277,000 |
| Northwest Region | 42 | $121,224 | $84,000 | $110,500 | $145,000 | $243,000 |
| Southern Region | 24 | $148,146 | $57,000 | $110,000 | $167,500 | $240,000 |
| **All Full-time Private Practitioners** | **319** | **$141,272** | **$75,000** | **$106,000** | **$165,000** | **$325,000** |

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Office Location Detailed** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Downtown Cleveland | 24 | $181,233 | $92,000 | $137,500 | $212,500 | $500,000 |
| Suburban Cleveland | 44 | $121,807 | $65,000 | $85,500 | $172,500 | $265,000 |
| Downtown Cincinnati | 13 | $161,231 | $79,000 | $100,000 | $127,000 | $950,000 |
| Suburban Cincinnati | 8 | $136,188 | $115,000 | $129,500 | $166,250 | $210,000 |
| Downtown Columbus | 39 | $172,936 | $77,000 | $125,000 | $230,000 | $600,000 |
| Suburban Columbus | 39 | $179,154 | $90,000 | $130,000 | $200,000 | $675,000 |
| Akron | 24 | $101,333 | $52,500 | $77,500 | $115,096 | $277,000 |
| Canton | 8 | $135,196 | $75,500 | $102,500 | $178,784 | $360,000 |
| Dayton | 21 | $133,252 | $57,000 | $80,000 | $140,000 | $300,000 |
| Toledo | 21 | $117,429 | $80,000 | $100,000 | $130,000 | $236,000 |
| Youngstown | 7 | $112,857 | $85,000 | $96,000 | $140,000 | $160,000 |
| Northeast Ohio | 26 | $103,496 | $63,750 | $90,000 | $120,000 | $180,000 |
| Northwest Ohio | 21 | $125,019 | $90,000 | $112,000 | $145,000 | $243,000 |
| Southeast Ohio | 8 | $255,250 | $120,000 | $150,000 | $201,000 | $1,000,000 |
| Southwest Ohio | 6 | $62,500 | $40,000 | $55,000 | $100,000 | $125,000 |
| Central Ohio | 10 | $113,850 | $59,000 | $92,500 | $185,000 | $240,000 |
| **All Full-time Private Practitioners** | **320** | **$141,393** | **$75,000** | **$107,400** | **$165,000** | **$322,500** |





**EXHIBIT 40:** 2018 NET INCOME, ALL IN-HOUSE COUNSEL BY OFFICE LOCATION

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Office Location** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Greater Cleveland | 7 | $145,286 | $80,000 | $85,000 | $228,000 | $350,000 |
| Greater Cincinnati | 6 | $105,133 | $88,000 | $110,000 | $122,797 | $125,000 |
| Greater Columbus | 18 | $127,833 | $69,000 | $121,500 | $140,000 | $500,000 |
| Northeast Region | 4 | $142,500 | $122,500 | $124,000 | $162,500 | $200,000 |
| Northwest Region | 4 | $138,864 | $95,229 | $152,000 | $182,500 | $190,000 |
| Southern Region | 4 | $204,250 | $66,000 | $186,000 | $342,500 | $385,000 |
| **All Locations** | **44** | **$140,256** | **$75,000** | **$122,399** | **$150,500** | **$350,000** |

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Detail Office Location** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Downtown Cleveland | 3 | $185,000 | $85,000 | $120,000 | $350,000 | $350,000 |
| Suburban Cleveland | 4 | $115,500 | $75,000 | $82,000 | $156,000 | $228,000 |
| Suburban Cincinnati | 4 | $105,699 | $87,500 | $111,399 | $123,899 | $125,000 |
| Downtown Columbus | 6 | $91,500 | $69,000 | $82,500 | $125,000 | $140,000 |
| Suburban Columbus | 12 | $146,000 | $71,250 | $130,000 | $150,500 | $500,000 |
| Northwest Ohio (exc. Toledo) | 4 | $138,864 | $95,229 | $152,000 | $182,500 | $190,000 |
| **Detailed Locations** | **44** | **$140,256** | **$75,000** | **$122,399** | **$150,500** | **$350,000** |

**EXHIBIT 41:** 2018 NET INCOME, ALL GOVERNMENT ATTORNEYS BY OFFICE LOCATION

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Office Location** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Greater Cleveland | 2 | $54,850 | $49,700 | $54,850 | $60,000 | $60,000 |
| Greater Cincinnati | 5 | $93,910 | $60,000 | $92,000 | $125,000 | $140,550 |
| Greater Columbus | 23 | $84,109 | $58,000 | $85,000 | $100,000 | $140,000 |
| Greater Dayton | 2 | $59,950 | $55,000 | $59,950 | $64,900 | $64,900 |
| Northeast Region | 5 | $92,900 | $78,000 | $86,500 | $107,000 | $130,000 |
| Northwest Region | 15 | $67,657 | $56,000 | $65,000 | $83,000 | $122,000 |
| Southern Region | 14 | $82,999 | $66,000 | $74,500 | $97,000 | $150,000 |
| **Total** | **66** | **$79,924** | **$58,000** | **$73,500** | **$92,000** | **$140,000** |

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Detailed Office Location** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Downtown Columbus | 23 | $84,109 | $58,000 | $85,000 | $100,000 | $140,000 |
| Toledo | 6 | $88,333 | $78,000 | $84,000 | $87,000 | $122,000 |
| Northeast Ohio (exc. Akron, Canton, Cleveland, Youngstown) | 4 | $83,625 | $70,500 | $82,250 | $96,750 | $107,000 |
| Northwest Ohio (exc. Toledo) | 9 | $53,872 | $45,000 | $57,850 | $60,000 | $70,000 |
| Southeast Ohio | 4 | $81,750 | $72,500 | $82,000 | $91,000 | $97,000 |
| Central Ohio (exc. Metro Columbus) | 7 | $81,284 | $45,000 | $69,990 | $140,000 | $150,000 |
| **Total** | **68** | **$81,037** | **$59,000** | **$76,500** | **$95,000** | **$140,550** |



## Gender Variations in Attorney Income

The 2018 median net income for full-time female attorneys in private practice ($86,000) is 75% of the 2018 median net income for male attorneys in private practice ($115,000). The "gap" for part-time attorneys is 77% ($60,000 for males versus $46,000 for females).

When considering the major practice classification groups of the survey respondents, median income for males exceeds attorney income of females for all classes except space-sharers and city/county government attorney (**Exhibit 42**). The gender gap is smaller for in-house counsel and government attorneys than it is for private practitioners (**Exhibit 43**).



**EXHIBIT 42:** 2018 ATTORNEY MEDIAN NET INCOME BY GENDER AND PRACTICE CLASS



**EXHIBIT 43:** 2018 FULL-TIME ATTORNEY MEDIAN NET INCOME BY PRACTICE CLASS AND GENDER





With respect to private practitioners, female income exceeds male income in the 1-10 and the 16-25 years-in-practice categories. Male income exceeds female income significantly in the 11-15 and 26-35 years-in-practice categories. The gender gap is smallest among younger cohorts of respondents (**Exhibit 44**).



**EXHIBIT 44:** FULL-TIME PRIVATE PRACTITIONER 2018 MEDIAN NET INCOME BY YEARS IN PRACTICE AND GENDER



For in-house counsel, male incomes exceed female incomes in all years-in-practice categories (**Exhibit 45**).

**EXHIBIT 45:** FULL-TIME IN-HOUSE COUNSEL 2018 MEDIAN NET INCOME BY YEARS IN PRACTICE AND GENDER





Government attorneys express near parity in gender-associated income gaps due to female income exceeding male income at the 11-25 years-in-practice category (**Exhibit 46**).

**EXHIBIT 46:** FULL-TIME GOVERNMENT ATTORNEY 2018 MEDIAN NET INCOME BY YEARS IN PRACTICE AND GENDER







OHIO STATE BAR
ASSOCIATION
Connect. Advance. Succeed.

# 2019 Attorney Hourly Billing Rates and Practices

## Attorney Hourly Billing Rates

The 2019 median hourly billing rate is $250 ($207 in 2013). While many factors affect the setting of hourly billing rates, **Exhibit 47** includes three: respondents' firm size, years in practice and office location. **Exhibit 48** identifies primary field of law and practice classification.

**EXHIBIT 47:** 2019 HOURLY BILLING RATES BY FIRM SIZE, YEARS IN PRACTICE AND OFFICE LOCATION

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Size of Firm** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| 1 | 289 | $232 | $180 | $225 | $250 | $395 |
| 2 | 71 | $248 | $200 | $250 | $285 | $400 |
| 3 to 6 | 158 | $266 | $200 | $250 | $300 | $450 |
| 7 to 10 | 37 | $301 | $200 | $240 | $300 | $425 |
| 11 to 20 | 31 | $278 | $200 | $270 | $325 | $435 |
| 21 to 50 | 49 | $272 | $200 | $250 | $310 | $430 |
| >50 | 51 | $369 | $255 | $350 | $475 | $610 |
| **Total** | **686** | **$260** | **$200** | **$250** | **$300** | **$450** |

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Years in Practice** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| 1 to 2 | 20 | $164 | $128 | $165 | $208 | $295 |
| 3 to 5 | 39 | $210 | $175 | $200 | $245 | $285 |
| 6 to 10 | 70 | $225 | $195 | $215 | $250 | $325 |
| 11 to 15 | 49 | $273 | $225 | $250 | $300 | $425 |
| 16 to 25 | 127 | $252 | $200 | $250 | $300 | $435 |
| 26 to 35 | 161 | $260 | $200 | $250 | $300 | $495 |
| 36+ | 234 | $293 | $200 | $250 | $350 | $525 |
| **Total** | **700** | **$261** | **$200** | **$250** | **$300** | **$460** |

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Office Location** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Downtown Cleveland | 46 | $320 | $240 | $313 | $395 | $595 |
| Suburban Cleveland | 102 | $268 | $200 | $250 | $300 | $425 |
| Downtown Cincinnati | 37 | $311 | $245 | $300 | $350 | $600 |
| Suburban Cincinnati | 28 | $290 | $240 | $250 | $300 | $525 |
| Downtown Columbus | 77 | $324 | $250 | $300 | $375 | $555 |
| Suburban Columbus | 94 | $248 | $200 | $250 | $300 | $420 |
| Akron | 45 | $231 | $175 | $205 | $300 | $350 |
| Canton | 14 | $242 | $225 | $250 | $285 | $350 |
| Dayton | 45 | $225 | $175 | $220 | $270 | $325 |
| Toledo | 33 | $264 | $200 | $225 | $275 | $470 |
| Youngstown | 16 | $210 | $175 | $200 | $215 | $375 |
| Northeast Ohio | 56 | $217 | $190 | $203 | $250 | $300 |
| Northwest Ohio | 34 | $260 | $185 | $200 | $225 | $425 |
| Southeast Ohio | 22 | $249 | $200 | $243 | $300 | $350 |
| Southwest Ohio | 17 | $203 | $190 | $200 | $225 | $250 |
| Central Ohio | 29 | $198 | $160 | $200 | $250 | $275 |
| **Total** | **702** | **$261** | **$200** | **$250** | **$300** | **$460** |



Case: 3:19-cv-02434-JZ Doc #: 65-2 Filed: 03/12/20 73 of 124. PageID #: 923

**EXHIBIT 48:** 2019 HOURLY BILLING RATES BY FIELD OF LAW AND PRACTICE CLASS

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Specialty** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Administrative Law | 9 | $256 | $240 | $290 | $325 | $350 |
| Appelate Law | 6 | $202 | $185 | $200 | $225 | $250 |
| Bankruptcy/Debtor Law | 11 | $273 | $250 | $265 | $300 | $350 |
| Collections | 9 | $281 | $250 | $250 | $350 | $430 |
| Consumer Law | 11 | $424 | $275 | $435 | $515 | $650 |
| Corporate/Business Law | 52 | $292 | $210 | $250 | $325 | $600 |
| Criminal (Public Defendant) | 14 | $176 | $125 | $188 | $225 | $300 |
| Criminal (Private Defendant) | 13 | $259 | $200 | $250 | $300 | $370 |
| Domestic Relations/Family Law/Juvenile Law | 90 | $233 | $200 | $225 | $275 | $375 |
| Education Law | 8 | $254 | $213 | $243 | $263 | $400 |
| Elder Law/Public Benefits/ERISA | 24 | $278 | $238 | $275 | $300 | $405 |
| Environmental/Natural Resources Law | 7 | $325 | $250 | $300 | $390 | $480 |
| General Practice | 26 | $219 | $200 | $200 | $250 | $325 |
| Immigration Law | 4 | $193 | $150 | $210 | $235 | $250 |
| Insurance law | 19 | $207 | $150 | $170 | $275 | $400 |
| Intellectual Property | 14 | $328 | $245 | $305 | $420 | $595 |
| Labor Law (Labor) | 11 | $227 | $170 | $250 | $280 | $285 |
| Employment Law (Management) | 11 | $279 | $200 | $260 | $345 | $495 |
| Employment Law (Labor) | 19 | $353 | $250 | $375 | $425 | $525 |
| Medical Malpractice | 8 | $313 | $223 | $300 | $400 | $450 |
| Municipal/Public Entity Law | 10 | $195 | $175 | $200 | $200 | $300 |
| Personal Injury (Defendant) | 6 | $164 | $140 | $155 | $200 | $205 |
| Personal Injury (Plaintiff) | 27 | $231 | $195 | $225 | $250 | $325 |
| Professional Liability | 4 | $356 | $238 | $338 | $475 | $600 |
| Real Property Law | 45 | $292 | $180 | $250 | $310 | $465 |
| Social Security | 4 | $336 | $288 | $363 | $385 | $395 |
| Taxation | 7 | $359 | $180 | $300 | $625 | $660 |
| Trial Practice, not PI (General Civil) | 29 | $290 | $200 | $250 | $300 | $610 |
| Trial Practice, not PI (Commercial) | 17 | $308 | $225 | $285 | $350 | $525 |
| Estate Planning/Wealth Management | 46 | $251 | $200 | $250 | $285 | $375 |
| Probate/Decedent's Estates | 83 | $223 | $190 | $225 | $250 | $300 |
| Workers' Compensation (Plaintiff) | 9 | $200 | $200 | $200 | $250 | $300 |
| Workers' Compensation (Defendant) | 10 | $240 | $190 | $215 | $235 | $455 |
| **Total** | **680** | **$261** | **$200** | **$250** | **$300** | **$460** |

| | Value by Percentile | | | | | |
|---|---|---|---|---|---|---|
| **Practice Classification** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Sole Practitioner with office outside of home | 201 | $239 | $200 | $225 | $250 | $395 |
| Sole Practitioner with home office only | 72 | $224 | $150 | $200 | $265 | $450 |
| Sole Practitioner with 1+ associates | 32 | $290 | $250 | $268 | $325 | $480 |
| Space sharer | 17 | $234 | $200 | $225 | $250 | $395 |
| Partner in firm with 2-7 partners | 154 | $277 | $210 | $250 | $300 | $425 |
| Partner in firm with 8+ partners | 77 | $350 | $265 | $340 | $425 | $600 |
| Of Counsel | 23 | $330 | $250 | $300 | $425 | $500 |
| Associate with Sole Practitioner | 18 | $218 | $175 | $200 | $275 | $375 |
| Associate in firm with 2-7 partners | 52 | $224 | $200 | $208 | $250 | $350 |
| Associate in firm with 8+ partners | 40 | $229 | $183 | $235 | $265 | $313 |
| **Total** | **690** | **$261** | **$200** | **$250** | **$300** | **$460** |



## Hourly Billing Rates for Associates and Legal Assistants

The distribution of hourly billing rates for associates and legal assistants are summarized by years of experience (**Exhibit 49**), by office location (**Exhibits 50** and **51**) and by firm size (**Exhibits 52** and **53**).

**EXHIBIT 49:** DISTRIBUTIONS OF 2019 HOURLY BILLING RATES FOR ASSOCIATES AND LEGAL ASSISTANTS BY FOUR LEVELS OF EXPERIENCE

| | Column Percents | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Associate Billing Rate Category** | **None** | | **3 Years Experience** | | **5 Years Experience** | | **10 Years Experience** | |
| | **N** | **%** | **N** | **%** | **N** | **%** | **N** | **%** |
| <$146 | 89 | 37.2 | 37 | 15.5 | 28 | 12.7 | 27 | 11.7 |
| $146-155 | 42 | 17.6 | 41 | 17.2 | 15 | 6.8 | 9 | 3.9 |
| $156-165 | 13 | 5.4 | 12 | 5.0 | 17 | 7.7 | 7 | 3.0 |
| $166-175 | 21 | 8.8 | 29 | 12.2 | 20 | 9.0 | 13 | 5.6 |
| $176-199 | 30 | 12.6 | 29 | 12.2 | 16 | 7.2 | 21 | 9.1 |
| $200-224 | 28 | 11.7 | 49 | 20.6 | 43 | 19.5 | 30 | 13.0 |
| $225-249 | 11 | 4.6 | 17 | 7.1 | 30 | 13.6 | 23 | 10.0 |
| $250-274 | 3 | 1.3 | 16 | 6.7 | 21 | 9.5 | 36 | 15.6 |
| $275-299 | - | - | 4 | 1.7 | 18 | 8.1 | 21 | 9.1 |
| $300-324 | - | - | 3 | 1.3 | 8 | 3.6 | 19 | 8.2 |
| $325-349 | - | - | - | - | 3 | 1.4 | 8 | 3.5 |
| $350-379 | - | - | - | - | - | - | 7 | 3.0 |
| $380-425 | - | - | - | - | - | - | 5 | 2.2 |
| >$425 | - | - | - | - | - | - | 5 | 2.2 |
| **Total** | **270** | **100%** | **238** | **100%** | **219** | **100%** | **231** | **100%** |

| | Column Percents | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Legal Assistant Billing Rate Category** | **None** | | **3 Years Experience** | | **5 Years Experience** | | **10 Years Experience** | |
| | **N** | **%** | **N** | **%** | **N** | **%** | **N** | **%** |
| <$71 | 57 | 33.5 | 31 | 17.9 | 30 | 16.6 | 27 | 11.9 |
| $71-80 | 24 | 14.1 | 26 | 15.0 | 19 | 10.5 | 18 | 7.9 |
| $81-90 | 15 | 8.8 | 18 | 10.4 | 17 | 9.4 | 18 | 7.9 |
| $91-100 | 33 | 19.4 | 35 | 20.2 | 27 | 14.9 | 35 | 15.4 |
| $101-110 | 10 | 5.9 | 17 | 9.8 | 19 | 10.5 | 18 | 7.9 |
| $111-120 | 5 | 2.9 | 8 | 4.6 | 17 | 9.4 | 19 | 8.4 |
| $121-130 | 11 | 6.5 | 16 | 9.2 | 19 | 10.5 | 33 | 14.5 |
| $131-140 | - | - | 3 | 1.7 | 6 | 3.3 | 7 | 3.1 |
| $141-150 | 3 | 1.8 | 7 | 4.0 | 12 | 6.6 | 21 | 9.3 |
| 151-160 | 4 | 2.4 | - | - | - | - | 4 | 1.8 |
| 161-170 | - | - | 4 | 2.3 | 3 | 1.7 | 4 | 1.8 |
| >$170 | 5 | 2.9 | 7 | 4.0 | 11 | 6.1 | 23 | 10.1 |
| **Total** | **170** | **100%** | **173** | **100%** | **181** | **100%** | **227** | **100%** |



**EXHIBIT 50:** 2019 HOURLY BILLING RATES FOR ASSOCIATES BY OFFICE LOCATION AND EXPERIENCE

| Associate Billing Rate Group | Column Percents | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
| **No Experience** | | | | | | | | |
| <$146 | 27.8% | - | 34.4% | 58.3% | 37.2% | 57.6% | 54.5% | 36.9% |
| $146-155 | 16.7% | 17.2% | 13.1% | - | 18.6% | 27.3% | 27.3% | 17.8% |
| $156-165 | - | - | - | - | - | - | - | 5.5% |
| $166-175 | 13.9% | - | - | - | 18.6% | - | - | 8.9% |
| $176-199 | - | 24.1% | 18.0% | - | 11.6% | - | - | 12.3% |
| $200-224 | 16.7% | 17.2% | 16.4% | - | - | - | - | 11.9% |
| $225-249 | - | - | - | - | - | - | - | 4.7% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| **3 Years Experience** | | | | | | | | |
| <$116 | 1.7% | - | 1.7% | 11.1% | - | 6.7% | 7.1% | 3.0% |
| $116-125 | 5.2% | 12.8% | 5.2% | 16.7% | 5.7% | 13.3% | 10.7% | 8.6% |
| $126-135 | 3.4% | 7.7% | 8.6% | - | 11.4% | 3.3% | 10.7% | 6.8% |
| $136-145 | 5.7% | 6.9% | 14.8% | 26.7% | 15.9% | 21.2% | 33.3% | 15.7% |
| $146-155 | 20.0% | 3.4% | 14.8% | 13.3% | 15.9% | 33.3% | 16.7% | 17.0% |
| $156-165 | 5.7% | 10.3% | 4.9% | 0.0% | 0.0% | 3.0% | 11.1% | 4.7% |
| $166-175 | 8.6% | 13.8% | 9.8% | 13.3% | 18.2% | 12.1% | 11.1% | 12.3% |
| $176-199 | 20.0% | 10.3% | 8.2% | 13.3% | 18.2% | 6.1% | 5.6% | 11.9% |
| $200-224 | 17.1% | 20.7% | 26.2% | 13.3% | 25.0% | 15.2% | 16.7% | 20.9% |
| $225-249 | 14.3% | 13.8% | 8.2% | 20.0% | - | - | - | 7.2% |
| $250-274 | 2.9% | 17.2% | 9.8% | - | 4.5% | 3.0% | 5.6% | 6.8% |
| $300-324 | - | 3.4% | 1.6% | - | - | 3.0% | - | 1.3% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| **5 Years Experience** | | | | | | | | |
| <$146 | 2.9% | 4.3% | 12.7% | 16.7% | 11.6% | 20.0% | 30.0% | 12.8% |
| $146-155 | 5.7% | - | 7.3% | 25.0% | 11.6% | 3.3% | - | 6.9% |
| $156-165 | 8.6% | - | 7.3% | - | 4.7% | 20.0% | 5.0% | 7.3% |
| $166-175 | 8.6% | 8.7% | 5.5% | 8.3% | 4.7% | 13.3% | 20.0% | 8.7% |
| $176-199 | 11.4% | 4.3% | 7.3% | - | 16.3% | - | - | 7.3% |
| $200-224 | 20.0% | 13.0% | 9.1% | 16.7% | 20.9% | 26.7% | 40.0% | 19.3% |
| $225-249 | 17.1% | 21.7% | 10.9% | 16.7% | 23.3% | 3.3% | | 13.8% |
| $250-274 | 14.3% | 13.0% | 14.5% | - | 2.3% | 10.0% | 5.0% | 9.6% |
| $275-299 | 5.7% | 26.1% | 12.7% | 8.3% | 2.3% | 3.3% | 0.0% | 8.3% |
| $300-324 | 3% | 4% | 7% | 8% | 2% | - | - | 3.7% |
| $325-349 | 3% | - | 4% | - | - | - | - | 1.4% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| **10 Years Experience** | | | | | | | | |
| <$146 | 5.7% | 7.7% | 12.7% | 16.7% | 6.8% | 13.3% | 33.3% | 11.8% |
| $146-155 | - | - | 4.8% | 8.3% | 6.8% | 6.7% | - | 3.9% |
| $156-165 | 2.9% | - | 1.6% | 16.7% | 4.5% | 3.3% | - | 3.1% |
| $166-175 | 5.7% | 3.8% | 4.8% | 0.0% | 4.5% | 13.3% | 5.6% | 5.7% |
| $176-199 | 14.3% | 3.8% | 4.8% | 8.3% | 11.4% | 6.7% | 16.7% | 8.8% |
| $200-224 | 5.7% | 11.5% | 3.2% | 0.0% | 20.5% | 30.0% | 16.7% | 12.3% |
| $225-249 | 14.3% | 7.7% | 12.7% | 0.0% | 11.4% | 3.3% | 11.1% | 10.1% |
| $250-274 | 17.1% | 23.1% | 9.5% | 25.0% | 22.7% | 10.0% | 11.1% | 15.8% |
| $275-299 | 14.3% | 19.2% | 9.5% | 8.3% | 4.5% | 6.7% | - | 9.2% |
| $300-324 | 14.3% | 11.5% | 11.1% | 0.0% | 4.5% | 3.3% | 5.6% | 8.3% |
| $325-349 | - | 3.8% | 6.3% | 8.3% | 2.3% | 3% | - | 3.5% |
| $350-379 | - | - | 9.5 | 8.3 | - | - | - | 3.1% |
| $380-425 | 2.9 | 7.7 | 3.2 | - | - | - | - | 2.2% |
| >$425 | 2.9 | 0.0 | 6.3 | - | - | - | - | 2.2% |
| **Total** | **100.0%** | **100.0%** | **100.0%** | **100.0%** | **100.0%** | **100.0%** | **100.0%** | **100.0%** |


**EXHIBIT 51:** 2019 HOURLY BILLING RATES, LEGAL ASSISTANTS BY OFFICE LOCATION AND EXPERIENCE

| | Column Percents | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Legal Assistant Billing Rate Group** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
| **No Experience** | | | | | | | | |
| <$71 | 28.1% | 22.2% | 27.0% | 36.4% | 44.1% | 42.9% | 46.2% | 34.3% |
| $71-80 | 15.6% | 11.1% | 10.8% | 18.2% | 14.7% | 14.3% | 7.7% | 13.3% |
| $81-90 | 6.3% | - | 13.5% | 18.2% | 2.9% | 19.0% | 7.7% | 9.0% |
| $91-100 | 12.5% | 38.9% | 18.9% | 18.2% | 23.5% | 14.3% | 7.7% | 19.3% |
| $101-$110 | 6.3% | - | 10.8% | - | 8.8% | - | 7.7% | 6.0% |
| $111-120 | 12.5% | - | - | - | - | - | 7.7% | 3.0% |
| $121-130 | 6.3% | 11.1% | 10.8% | - | 2.9% | 9.5% | - | 6.6% |
| $131-140 | - | 5.6% | - | - | - | - | - | 0.6% |
| $141-150 | - | - | 2.7% | - | - | - | 15.4% | 1.8% |
| $151-160 | - | 11.1% | - | 9.1% | - | - | - | 1.8% |
| $161-170 | 3.1% | - | - | - | 2.9% | - | - | 1.2% |
| >$170 | 9.4% | - | 5.4% | - | - | - | - | 3.0% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| **3 Years Experience** | | | | | | | | |
| <$71 | 12.1% | 10.0% | 13.2% | 25.0% | 20.6% | 26.3% | 35.7% | 18.2% |
| $71-80 | 15.2% | 10.0% | 10.5% | - | 23.5% | 26.3% | 14.3% | 15.3% |
| $81-90 | 3.0% | 5.0% | 13.2% | 33.3% | 11.8% | 10.5% | - | 10.0% |
| $91-100 | 27.3% | 15.0% | 21.1% | 16.7% | 14.7% | 21.1% | 21.4% | 20.0% |
| $101-$110 | 9.1% | 20.0% | 7.9% | - | 17.6% | 5.3% | - | 10.0% |
| $111-120 | - | 5.0% | 5.3% | 8.3% | 5.9% | - | 7.1% | 4.1% |
| $121-130 | 15.2% | 5.0% | 15.8% | 8.3% | - | 10.5% | 7.1% | 9.4% |
| $131-140 | - | 10.0% | - | - | 2.9% | - | - | 1.8% |
| $141-150 | 3.0% | 5.0% | 7.9% | - | - | - | 14.3% | 4.1% |
| $151-160 | 3.0% | - | - | - | - | - | - | 0.6% |
| $161-170 | - | 10.0% | - | 8.3% | 2.9% | - | - | 2.4% |
| >$170 | 12.1% | 5.0% | 5.3% | - | - | - | - | 4.1% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| **5 Years Experience** | | | | | | | | |
| <$71 | 11.8% | 11.1% | 11.9% | 15.4% | 24.3% | 15.8% | 33.3% | 16.9% |
| $71-80 | 11.8% | 5.6% | 7.1% | 7.7% | 13.5% | 15.8% | 13.3% | 10.7% |
| $81-90 | 2.9% | 5.6% | 11.9% | 23.1% | 13.5% | 10.5% | - | 9.6% |
| $91-100 | 14.7% | 11.1% | 11.9% | 15.4% | 13.5% | 31.6% | 13.3% | 15.2% |
| $101-$110 | 17.6% | 5.6% | 11.9% | 15.4% | 8.1% | 5.3% | 6.7% | 10.7% |
| $111-120 | 2.9% | 22.2% | 7.1% | - | 10.8% | 10.5% | - | 7.9% |
| $121-130 | 14.7% | 11.1% | 11.9% | - | 8.1% | 10.5% | 13.3% | 10.7% |
| $131-140 | 5.9% | - | 7.1% | - | 2.7% | - | - | 3.4% |
| $141-150 | - | 11.1% | 9.5% | 15.4% | 2.7% | - | 20.0% | 6.7% |
| $151-160 | - | - | 2.4% | - | - | - | - | 0.6% |
| $161-170 | - | 5.6% | 2.4% | - | 2.7% | - | - | 1.7% |
| >$170 | 17.6% | 11.1% | 4.8% | 7.7% | - | - | - | 6.2% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| **10 Years Experience** | | | | | | | | |
| <$71 | 10.3% | 3.7% | 9.8% | 15.0% | 12.8% | 9.1% | 33.3% | 12.1% |
| $71-80 | 12.8% | 3.7% | 3.9% | 5.0% | 8.5% | 13.6% | 11.1% | 8.0% |
| $81-90 | 5.1% | 7.4% | 7.8% | 15.0% | 12.8% | 4.5% | - | 8.0% |
| $91-100 | 2.6% | 7.4% | 15.7% | 15.0% | 23.4% | 31.8% | 16.7% | 15.6% |
| $101-$110 | 12.8% | 14.8% | 5.9% | 10.0% | 2.1% | 13.6% | - | 8.0% |
| $111-120 | 10.3% | 3.7% | 11.8% | 5.0% | 6.4% | 9.1% | 11.1% | 8.5% |
| $121-130 | 17.9% | 18.5% | 13.7% | 5.0% | 17.0% | 13.6% | 5.6% | 14.3% |
| $131-140 | - | 3.7% | 5.9% | 5.0% | 4.3% | - | - | 3.1% |
| $141-150 | 5.1% | 22.2% | 5.9% | 5.0% | 6.4% | 4.5% | 22.2% | 8.9% |
| $151-160 | - | - | 2.0% | - | 4.3% | - | - | 1.3% |
| $161-170 | 2.6% | 3.7% | 2.0% | - | 2.1% | - | - | 2% |
| >$170 | 20.5% | 11.1% | 15.7% | 20.0% | - | - | - | 10% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



**EXHIBIT 52:** 2019 HOURLY BILLING RATES FOR ASSOCIATES BY FIRM SIZE AND EXPERIENCE

| | Firm Size (Number of Attorneys) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Associate Billing Rate Group** | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
| **No Experience** | | | | | | | | |
| <$146 | 72.2% | 52.9% | 40.5% | 42.3% | 37.5% | 25.0% | 11.8% | 37.2% |
| $146-155 | 11.1% | 5.9% | 22.8% | 19.2% | 12.5% | 19.4% | 14.7% | 17.5% |
| $156-165 | 5.6% | 5.9% | 5.1% | - | 8.3% | 11.1% | 2.9% | 5.6% |
| $166-175 | 5.6% | 17.6% | 6.3% | 15.4% | 8.3% | 11.1% | 5.9% | 9.0% |
| $176-199 | - | 5.9% | 5.1% | 7.7% | 20.8% | 19.4% | 26.5% | 12.0% |
| $200-224 | 5.6% | 5.9% | 12.7% | 7.7% | 8.3% | 8.3% | 26.5% | 12.0% |
| $225-249 | - | - | 5.1% | 3.8% | - | 5.6% | 11.8% | 4.7% |
| $250-274 | - | 5.9% | 1.3% | - | 4.2% | - | - | 1.3% |
| $275-299 | - | - | 1.3% | - | - | - | - | 0.4% |
| $300-324 | - | - | - | 3.8% | - | - | - | 0.4% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |
| | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
| **3 Years Experience** | | | | | | | | |
| <$146 | 46.7% | 17.4% | 17.4% | 15.8% | 12.5% | 11.8% | - | 15.5% |
| $146-155 | 13.3% | 17.4% | 20.9% | 21.1% | 12.5% | 14.7% | 12.5% | 17.2% |
| $156-165 | 6.7% | - | 8.1% | - | 12.5% | 2.9% | - | 5.2% |
| $166-175 | 20.0% | 13.0% | 11.6% | 10.5% | 12.5% | 14.7% | 6.3% | 12.0% |
| $176-199 | 6.7% | 8.7% | 12.8% | 5.3% | 12.5% | 26.5% | 6.3% | 12.4% |
| $200-224 | 6.7% | 21.7% | 16.3% | 26.3% | 20.8% | 17.6% | 37.5% | 20.6% |
| $225-249 | - | 8.7% | 2.3% | 15.8% | 8.3% | 8.8% | 12.5% | 6.9% |
| $250-274 | - | 8.7% | 8.1% | 5.3% | - | 2.9% | 15.6% | 6.9% |
| $275-299 | - | 4.3% | 1.2% | - | 4.2% | - | 3.1% | 1.7% |
| $300-324 | - | - | 1.2% | - | 4.2% | - | 3.1% | 1.3% |
| >$425 | - | - | - | - | - | - | 3.1% | 0.4% |
| **Total** | **100.0%** | **100.0%** | **100.0%** | **100.0%** | **100.0%** | **100.0%** | **100.0%** | **100.0%** |
| | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
| **5 Years Experience** | | | | | | | | |
| <$146 | 50.0% | 21.1% | 10.1% | 12.5% | 8.7% | 11.4% | - | 12.5% |
| $146-155 | - | 5.3% | 10.1% | 18.8% | 4.3% | 5.7% | - | 6.9% |
| $156-165 | 14.3% | - | 8.9% | - | 13.0% | 2.9% | 10.0% | 7.4% |
| $166-175 | - | 10.5% | 15.2% | 6.3% | 13.0% | 5.7% | - | 9.3% |
| $176-199 | - | 15.8% | 7.6% | 6.3% | 13.0% | 8.6% | - | 7.4% |
| $200-224 | 21.4% | 15.8% | 21.5% | - | 21.7% | 34.3% | 6.7% | 19.4% |
| $225-249 | - | 10.5% | 7.6% | 18.8% | 13.0% | 20.0% | 26.7% | 13.4% |
| $250-274 | 14.3% | - | 7.6% | 31.3% | 4.3% | 5.7% | 16.7% | 9.7% |
| $275-299 | - | 10.5% | 6.3% | 6.3% | 4.3% | 2.9% | 23.3% | 7.9% |
| $300-324 | - | 10.5% | 2.5% | - | 4.3% | 2.9% | 6.7% | 3.7% |
| $325-349 | - | - | 1.3% | - | - | - | 6.7% | 1.4% |
| $350-379 | - | - | 1.3% | - | - | - | - | 0.5% |
| >$425 | - | - | - | - | - | - | 3.3% | 0.5% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |
| | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
| **10 Years Experience** | | | | | | | | |
| <$146 | 46.2% | 14.8% | 9.9% | 15.0% | 10.0% | 9.1% | - | 11.6% |
| $146-155 | 7.7% | 3.7% | 6.2% | - | 5.0% | 3.0% | - | 4.0% |
| $156-165 | - | - | 4.9% | 10.0% | - | 3.0% | - | 3.1% |
| $166-175 | 15.4% | - | 7.4% | 5.0% | 10.0% | 3.0% | 3.2% | 5.8% |
| $176-199 | - | 14.8% | 11.1% | 15.0% | 15.0% | - | 3.2% | 8.9% |
| $200-224 | - | 14.8% | 19.8% | 10.0% | 15.0% | 12.1% | 3.2% | 13.3% |
| $225-249 | - | 7.4% | 6.2% | 5.0% | 20.0% | 33.3% | - | 10.2% |
| $250-274 | 15.4% | 11.1% | 16.0% | 15.0% | 5.0% | 24.2% | 16.1% | 15.6% |
| $275-299 | 7.7% | 11.1% | 7.4% | 5.0% | - | 9.1% | 19.4% | 8.9% |
| $300-324 | 7.7% | 3.7% | 8.6% | 10.0% | 10.0% | - | 19.4% | 8.4% |
| $325-349 | - | - | - | 5.0% | 10.0% | - | 12.9% | 3.1% |
| $350-379 | - | 7.4% | - | - | - | 3.0% | 9.7% | 2.7% |
| $380-425 | - | 7.4% | - | 5.0% | - | - | 6.5% | 2.2% |
| >$425 | - | 3.7% | 2.5% | - | - | - | 6.5% | 2.2% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



**EXHIBIT 53:** DISTRIBUTIONS OF 2019 HOURLY BILLING RATES FOR LEGAL ASSISTANTS BY FIRM SIZE AND EXPERIENCE

| | Firm Size (Number of Attorneys) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Legal Assistant Billing Rate Group** | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
| **No Experience** | | | | | | | | |
| <$71 | 55.0% | 58.3% | 40.7% | 23.5% | 33.3% | 25.8% | 5.0% | 34.3% |
| $71-80 | 10.0% | - | 18.5% | 17.6% | 16.7% | 6.5% | 10.0% | 12.7% |
| $81-90 | 5.0% | 16.7% | 3.7% | 17.6% | 8.3% | 6.5% | 15.0% | 8.4% |
| $91-100 | 25.0% | 16.7% | 11.1% | 23.5% | 25.0% | 29.0% | 20.0% | 19.9% |
| $101-$110 | - | - | 5.6% | - | 16.7% | 9.7% | 10.0% | 6.0% |
| $111-120 | - | - | 3.7% | - | - | 6.5% | 5.0% | 3.0% |
| $121-130 | 5.0% | 8.3% | 7.4% | 5.9% | - | 6.5% | 10.0% | 6.6% |
| $131-140 | - | - | - | - | - | 3.2% | - | 0.6% |
| $141-150 | - | - | 3.7% | - | - | - | 5.0% | 1.8% |
| $151-160 | - | - | 3.7% | 5.9% | - | 3.2% | - | 2.4% |
| $161-170 | - | - | - | - | - | 3.2% | 5.0% | 1.2% |
| >$170 | - | - | 1.9% | 5.9% | - | - | 15.0% | 3.0% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| **3 Years Experience** | | | | | | | | |
| <$71 | 27.3% | 36.4% | 21.4% | 20.0% | 23.1% | 9.1% | - | 18.2% |
| $71-80 | 18.2% | 27.3% | 21.4% | 6.7% | 15.4% | 9.1% | 5.0% | 15.3% |
| $81-90 | 9.1% | - | 5.4% | 26.7% | 15.4% | 12.1% | 10.0% | 10.0% |
| $91-100 | 36.4% | 18.2% | 17.9% | 33.3% | - | 18.2% | 15.0% | 20.0% |
| $101-$110 | - | - | 7.1% | - | 23.1% | 15.2% | 20.0% | 9.4% |
| $111-120 | - | - | 1.8% | - | 23.1% | 9.1% | 5.0% | 4.7% |
| $121-130 | 4.5% | - | 12.5% | 6.7% | - | 15.2% | 10.0% | 9.4% |
| $131-140 | - | 9.1% | - | - | - | 6.1% | - | 1.8% |
| $141-150 | 4.5% | - | 7.1% | - | - | - | 10.0% | 4.1% |
| $151-160 | - | - | - | - | - | - | 5.0% | 0.6% |
| $161-170 | - | - | 3.6% | - | - | 3.0% | 5.0% | 2.4% |
| >$170 | - | 9.1% | 1.8% | 6.7% | - | 3.0% | 15.0% | 4.1% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| **5 Years Experience** | | | | | | | | |
| <$71 | 28.0% | 25.0% | 20.7% | 18.8% | 15.4% | 8.8% | - | 16.9% |
| $71-80 | 12.0% | 16.7% | 15.5% | 12.5% | 15.4% | 2.9% | - | 10.7% |
| $81-90 | 8.0% | - | 6.9% | 12.5% | 15.4% | 11.8% | 10.0% | 9.0% |
| $91-100 | 28.0% | 25.0% | 13.8% | 31.3% | - | 11.8% | - | 15.2% |
| $101-$110 | 8.0% | - | 12.1% | 6.3% | 15.4% | 8.8% | 15.0% | 10.1% |
| $111-120 | - | 8.3% | 1.7% | - | 15.4% | 20.6% | 25.0% | 9.0% |
| $121-130 | 8.0% | 8.3% | 12.1% | 6.3% | 23.1% | 11.8% | 5.0% | 10.7% |
| $131-140 | 4.0% | - | 1.7% | - | - | 5.9% | 10.0% | 3.4% |
| $141-150 | 4.0% | 16.7% | 5.2% | 6.3% | - | 8.8% | 10.0% | 6.7% |
| $151-160 | - | - | 1.7% | - | - | - | - | 0.6% |
| $161-170 | - | - | - | - | - | 2.9% | 10.0% | 1.7% |
| >$170 | - | - | 8.6% | 6.3% | - | 5.9% | 15.0% | 6.2% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| **10 Years Experience** | | | | | | | | |
| <$71 | 16.2% | 11.1% | 15.4% | 15.0% | 12.5% | 6.1% | - | 12.1% |
| $71-80 | 2.7% | 16.7% | 11.5% | 10.0% | 12.5% | 3.0% | - | 8.0% |
| $81-90 | 16.2% | 11.1% | 3.8% | 10.0% | 12.5% | 3.0% | 4.5% | 7.6% |
| $91-100 | 16.2% | 27.8% | 16.7% | 30.0% | - | 12.1% | 4.5% | 15.6% |
| $101-$110 | 5.4% | - | 11.5% | 5.0% | 18.8% | 9.1% | - | 8.0% |
| $111-120 | 5.4% | - | 5.1% | 10.0% | 18.8% | 15.2% | 9.1% | 8.0% |
| $121-130 | 13.5% | 5.6% | 16.7% | 10.0% | 6.3% | 18.2% | 22.7% | 14.7% |
| $131-140 | 5.4% | - | 1.3% | - | 12.5% | 6.1% | - | 3.1% |
| $141-150 | 10.8% | 22.2% | 7.7% | 5.0% | 6.3% | 6.1% | 13.6% | 9.4% |
| $151-160 | 2.7% | 5.6% | - | - | - | 3.0% | - | 1.3% |
| $161-170 | - | - | 1.3% | - | - | 6.1% | 4.5% | 1.8% |
| >$170 | 5.4% | - | 9.0% | 5.0% | - | 12.1% | 40.9% | 10.3% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



**Exhibit 54** displays the impact of firm size on methods for client billing over time for legal assistants. The larger the firm, the more likely they bill on a time basis.

**EXHIBIT 54:** LEGAL ASSISTANT CLIENT BILLING METHODS BY SIZE OF FIRM, 2019 VS. 2013

| | Firm Size (Number of Attorneys) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Billing Method for Legal Assistants** | **Year** | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
| Included with attorney fee | **2013** | 43.0% | 31.7% | 35.5% | 10.4% | 24.6% | 10.0% | 2.4% | 24.7% |
| | **2019** | 43.8% | 42.5% | 31.6% | 23.1% | 25.9% | - | - | 27.5% |
| Time | **2013** | 50.0% | 56.1% | 56.2% | 79.2% | 73.7% | 85.0% | 90.4% | 68.0% |
| | **2019** | 49.3% | 55.0% | 56.1% | 73.1% | 66.7% | 100.0% | 89.2% | 65.0% |
| Fee schedule | **2013** | 7.0% | 12.2% | 8.3% | 10.4% | 1.8% | 5.0% | 7.2% | 7.3% |
| | **2019** | 6.8% | 2.5% | 12.3% | 3.8% | 7.4% | - | 10.8% | 7.6% |
| **Total (2013)** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |
| **Total (2019)** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |





## Average Workweek and Time-Keeping Practices

Attorneys report a varied workweek regarding billable hours and other activities comprising their professional time. **Exhibit 55** shows the range of time spent on various activities.

For private practitioners, median values for compensable work time are 30 hours/week (compared with 33 in 2013). For in-house counsel, median compensable hours remain at 40 hours/week. For government attorneys, median compensable hours are 31 (30 in 2013).

For total professional hours, private practitioners report 45 hours/week (48 hours in 2013). In-house counsel report 45 hours/week (unchanged from 2013). Government attorneys report 44 hours/week (unchanged from 2013).

**EXHIBIT 55:** DISTRIBUTIONS OF HOURS IN AVERAGE WORKWEEK, 2019

| Private Practitioners | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Total billable hours | 721 | 30 | 25 | 30 | 40 | 50 |
| Total hours | 753 | 42 | 55 | 45 | 52 | 65 |
| Administration | 776 | 4 | 2 | 4 | 5 | 8 |
| Networking/marketing | 776 | 3 | 1 | 3 | 4 | 8 |
| Nonlegal work | 712 | 7 | 8 | 8 | 8 | 8 |
| Pro Bono hours/year | 730 | 36 | 0 | 15 | 45 | 125 |
| CLE/learning hours/year | 752 | 27 | 15 | 20 | 30 | 60 |

| In-House Counsel | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Total billable hours | 99 | 54 | 30 | 40 | 45 | 60 |
| Total hours | 100 | 45 | 40 | 45 | 50 | 68 |

| Government Attorneys | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Total billable hours | 159 | 37 | 31 | 40 | 40 | 50 |
| Total hours | 157 | 42 | 40 | 44 | 50 | 60 |
| Administration | 164 | 5 | 3 | 5 | 8 | 8 |
| Networking/marketing | 164 | 5 | 2 | 4 | 8 | 8 |





Hourly rate billing dominates flat rate and contingency fee billing (**Exhibit 56**). Approximately one day per week is devoted to office administration and networking (median hours spent per week are approximately five for administration and three for marketing) (**Exhibit 57**).

**EXHIBIT 56:** DISTRIBUTIONS OF HOURS IN AVERAGE WORK WEEK, BY BILLING METHOD, 2019

| Billable Time | Hourly Billing | | Flat Rate Hours | | Contingency Fee Hours | |
|---|---|---|---|---|---|---|
| **Hours/Week** | **N** | **%** | **N** | **%** | **N** | **%** |
| <6 | 107 | 14.3 | 196 | 29.1 | 155 | 23.4 |
| 6 to 12 | 93 | 12.4 | 115 | 17.1 | 62 | 9.4 |
| 13-19 | 91 | 12.2 | 57 | 8.5 | 34 | 5.1 |
| 20-26 | 103 | 13.8 | 64 | 9.5 | 23 | 3.5 |
| 27-33 | 87 | 11.6 | 31 | 4.6 | 16 | 2.4 |
| 34-40 | 94 | 12.6 | 28 | 4.2 | 32 | 4.8 |
| 41-47 | 61 | 8.2 | 4 | 0.6 | 19 | 2.9 |
| 48+ | 59 | 7.9 | 13 | 1.9 | 30 | 4.5 |
| NA | 53 | 7.1 | 165 | 24.5 | 292 | 44 |
| **Total** | **748** | **100%** | **673** | **100%** | **663** | **100%** |

**EXHIBIT 57:** DISTRIBUTIONS OF WORK WEEK COMPONENTS – NETWORKING, ADMINISTRATION AND NON-LEGAL EMPLOYMENT, 2019

| Non-Billable Time | Networking | | Administration | | Non-legal Employment | |
|---|---|---|---|---|---|---|
| **Hours/Week** | **N** | **%** | **N** | **%** | **N** | **%** |
| 1 | 208 | 27.2 | 73 | 9.4 | 47 | 6.6 |
| 2 | 173 | 22.6 | 124 | 16 | 25 | 3.5 |
| 3 | 119 | 15.5 | 133 | 17.1 | 15 | 2.1 |
| 4 to 6 | 146 | 19.1 | 248 | 32 | 25 | 3.5 |
| 7 to 11 | 34 | 4.4 | 101 | 13 | 13 | 1.8 |
| 16 to 12 | 8 | 1 | 36 | 4.6 | 6 | 0.8 |
| 17+ | 8 | 1 | 22 | 2.8 | 26 | 3.7 |
| NA | 70 | 9.1 | 39 | 5 | 555 | 77.9 |
| **Total** | **766** | **100%** | **776** | **100%** | **712** | **100%** |





## Use of Alternative Fee Arrangements

The 2019 OSBA Survey included questions regarding the use and disposition of alternative fee arrangements (AFAs) compared with the traditional hourly billing rate. The questions cover the following topics targeting private practices, firms and in-house counsel:

- Frequency of flat fees usage compared with other AFAs
- Obstacles hindering wider adoption of AFA fees
- Perceived "drivers" leading the charge toward AFAs
- Degree of progress in AFA adoption
- Perceived AFA usage in the future
- Proportion of AFA work assigned to outside counsel
- Sources of AFA initiation

**EXHIBIT 58:** FREQUENCY OF AFA USERS BY PRIVATE PRACTITIONERS



**Exhibit 58** reveals that private practitioners have a high use of flat fees, 27% "always or often", as an alternative fee arrangement tool compared with other alternatives. Only 5% of respondents "always" use flat fees. 54% of private practitioners "often or sometimes" use flat fees.

**EXHIBIT 59:** OBSTACLES THAT SEEM TO HINDER WIDER ADOPTION OF AFA FEES OVER TIME



Why are there obstacles in setting AFAs? **Exhibit 59** rank orders four issues centered on uncertainties regarding price setting, reluctance on the part of partners and general comfort with the status quo. Movement is being made toward problem reduction, both behaviorally and technically.



Combined responses from both private practitioners and in-house counsel place the primary drivers for AFAs with in-house counsel - between 21 and 26% of responses revealing private practitioners are the initiators (**Exhibit 60**).

**EXHIBIT 60:** PERCIEVED DRIVERS TOWARD AFAS



Combined responses are from both private practitioners and in-house counsel. Over the past few years, about 47% of in-house counsel respondents saw an increase in AFA usage (4% "a lot" and 43% "somewhat"), while only 30% see hardly any increased use. Similarly, 45% of private practitioners see an increase in AFA usage (8% "a lot" and 37% "somewhat"), whereas only 27% see "hardly any" increased use over the past few years (**Exhibit 61A**).

**EXHIBIT 61A:** LEVEL OF INCREASE IN USE OF AFAS OVER PAST FEW YEARS



**EXHIBIT 61B:** PERCEIVED AFA USE IN THE FUTURE

Considering perceived future use of AFAs, 25% of in-house counsel see increased use compared with 19% of private practitioners. An even greater percent of respondents perceives a decrease in AFA use in the future (24% of private practitioners and 31% of in-house counsel). While 20 to 25% of respondents will use AFAs in the future, 44-57% perceive that their use will remain the same (**Exhibit 61B**).

**EXHIBIT 61C:** ASSIGNMENT OF WORK TO OUTSIDE COUNSEL

72% of respondents report that they assign AFA work to outside counsel 25% of the time, while only 10% assign work to outside counsel more than 50% of the time (**Exhibit 61C**).



# Office Management Practices

Over time, private practitioners varied only slightly as to keeping time records, while their choice of tracking unit for their time has drifted towards six minutes, as shown in **Exhibits 62** and **63**.

**EXHIBIT 62:** FREQUENCY OF KEEPING RECORDS

| Frequency of Keeping Records | % of Respondents (2019) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) |
|---|---|---|---|---|---|---|
| Always | 61% | 63% | 62% | 68% | 69% | 56% |
| Usually | 20% | 21 | 21 | 19 | 20 | 25 |
| Sometimes | 15% | 13 | 13 | 11 | 9 | 15 |
| Never | 3 | 3 | 4 | 2 | 2 | 4 |

**EXHIBIT 63:** FREQUENCY OF KEEPING RECORDS – TRACKING UNIT IN MINUTES

| Tracking Unit (In Minutes) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) | % of Respondents (2001) |
|---|---|---|---|---|---|---|
| 6 | 78% | 73% | 69% | 65% | 65% | 62% |
| 10 | 7 | 9 | 9 | 10 | 10 | 9 |
| 15 | 13 | 15 | 19 | 21 | 21 | 22 |
| 30 | 1 | 2 | 2 | 2 | 2 | 2 |
| None | 1 | 1 | 1 | 2 | 2 | 5 |

## Hourly Rate Setting Practices

The time since respondents last changed their hourly rate is shown in **Exhibit 64**. Rate increases are occurring less frequently than in the past. Currently, in 2019, 35% of respondents have not changed their rates in more than 2 years (>24 months), while 31% of respondents have not changed their rates in 12-24 months. This behavior is similar to previous responses.

**EXHIBIT 64:** HOURLY RATE SETTING PRACTICES – MONTHS SINCE CHANGE

| Months Since Change | % of Respondents (2019) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) |
|---|---|---|---|---|---|---|
| 0 to 6 | | 28% | 23% | 32% | 29% | 24% |
| 7 to 11 | | 8 | 10 | 14 | 16 | 15 |
| 12 to 24 | | 30 | 35 | 33 | 32 | 33 |
| >24 | | 34 | 32 | 21 | 24 | 28 |

The percent increase in the level of hourly rates since the last change varies over time, as shown in **Exhibit 65**. The percentage increase of 10% or less was reported by 68% of respondents in 2019 compared with 76% of respondents in 2013.

**EXHIBIT 65:** HOURLY RATE SETTING PRACTICES – AMOUNT OF INCREASE

| Amount of Increase | % of Respondents (2019) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) |
|---|---|---|---|---|---|---|
| 5% or less | 27% | 36% | 33% | 26% | 23% | 22% |
| 6-10% | 33 | 40 | 34 | 45 | 41 | 38 |
| 11-19% | 15 | 13 | 18 | 19 | 23 | 20 |
| 20+% | 13 | 12 | 15 | 10 | 14 | 20 |



## Uncollectables

Uncollectables are an important issue in many practices and firms. Over time, there has been some improvement in the proportion of bad debts, as shown in **Exhibit 66**.

**EXHIBIT 66:** UNCOLLECTABLES – AMOUNT OF INCREASE

| Percent Uncollectable | % of Respondents (2019) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) |
|---|---|---|---|---|---|---|
| 2% or less | 40% | 42% | 35% | 36% | 30% | 37% |
| 3-8% | 25 | 28 | 30 | 28 | 33 | 30 |
| 9-12% | 10 | 18 | 18 | 19 | 21 | 18 |
| 13+% | 11 | 12 | 17 | 17 | 6 | 15 |

Over time, less than 30% of respondents add a service charge on a delinquent account, as shown in **Exhibit 67**.

**EXHIBIT 67:** UNCOLLECTABLES – USE OF SERVICE CHARGE ON DELINQUENT ACCOUNTS

| Use of Service Charge on Delinquent Accounts | % of Respondents (2019) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) |
|---|---|---|---|---|---|---|
| Always | 5% | 5% | 7% | 3% | 3% | 22% |
| Often | 6 | 6 | 7 | 7 | 7 | 38 |
| Rarely | 17 | 17 | 16 | 18 | 18 | 20 |
| Never | 72 | 73 | 71 | 72 | 72 | 20 |

## Practices Regarding Contingency Fees

About 16% of attorneys report using contingent fees for billing a majority of their work, while 23% report using them for less than half of their work, as shown in **Exhibit 68**. Rate schedules vary little, but combinations of rate schedules have grown in usage over time, as shown in **Exhibit 69**.

**EXHIBIT 68:** USE OF CONTINGENCY FEES

| Use of Contingency Fees | % of Respondents (2019) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) |
|---|---|---|---|---|---|---|
| For a majority of work | 16% | 13% | 11% | 10% | 13% | 10% |
| For less than half of work | 23 | 31 | 30 | 33 | 27 | 34 |
| No/Not Applicable | 56 | 55 | 59 | 52 | 53 | 56 |
| Other | 6 | NA | NA | 6 | 16 | NA |

**EXHIBIT 69:** USE OF CONTINGENCY FEES – RATE SCHEDULE

| Rate Schedule | % of Respondents (2019) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) |
|---|---|---|---|---|---|---|
| 33.3% usually; 40% (complex cases) | 38% | 45% | 38% | 36% | 35% | 36% |
| 33.3% for all cases | 32 | 38 | 36 | 42 | 41 | 45 |
| 20-25% for all cases; 33.3%+ (complex cases) | 10 | 5 | 11 | 7 | 14 | 9 |
| Varied/ combinations of above | 20 | 11 | 9 | 9 | 10 | 8 |



# Comparative Use of Online Research Tools

Except for low penetration of Casemaker in government settings, respondents report relatively consistent use of online research tools, as shown in **Exhibits 70** to **72**.

**EXHIBIT 70:** USE OF ONLINE RESEARCH TOOLS, PRIVATE PRACTITIONERS, 2019

**EXHIBIT 71:** USE OF ONLINE RESEARCH TOOLS, GOVERNMENT ATTORNEYS, 2019

**EXHIBIT 72:** USE OF ONLINE RESEARCH TOOLS, IN-HOUSE COUNSEL, 2019



## Comparative Use of Law Office Hardware and Software Technologies

Respondents vary by practice category as to the office management tools and applications they embrace. WordPerfect usage persists for in-house counsel settings, whereas on-premises IT is barely in use.

**EXHIBIT 73:** USE OF HARDWARE AND SOFTWARE PRODUCTS AND TOOLS, PRIVATE PRACTITIONERS, 2019

**EXHIBIT 74:** USE OF HARDWARE AND SOFTWARE PRODUCTS AND TOOLS, GOVERNMENT ATTORNEYS, 2019





Case: 3:19-cv-02434-JZ Doc #: 65-2 Filed: 03/12/20 89 of 124. PageID #: 939

OHIO STATE BAR ASSOCIATION
Connect. Advance. Succeed.

**EXHIBIT 75:** USE OF HARDWARE/SOFTWARE PRODUCTS AND TOOLS, IN-HOUSE COUNSEL, 2019

## Comparative Use of Law Office Marketing Technologies, 2019

Attorneys have many alternatives to choose from regarding how to market their practices. Each alternative comes with high and low costs of entry and maintenance (**Exhibit 75A**).

Respondents rank their relative preferences on both their current and historic embracing of various vehicles and channels, while having a website and networking lead the pack (over 70% of respondents indicate current usage). While there is about a 10% abandonment of general and trade association networking, other drops identified include lawyer referral services and Martindale Hubbell (about 19%), listings in printed directories (17%), newspaper and magazine ads (14%) and client entertainment (12%).



# Other Aspects of Law Office Economics

This section summarizes the following economic aspects of the private practice of law in Ohio:

- Changes in client payment behaviors (2019 vs 2013)
- Law office overhead expenses and gross receipts
- Staffing patterns for administrative assistants/secretaries and legal assistants
- Salary levels for associates, legal assistants and administrative assistants/secretaries

Since 2013, private practitioners report moderate changes in their clients' behaviors with respect to billing and payments, however, there is an increased use of credit cards. Client payment practices shift with changing technologies. This is demonstrated in the two charts below (**Exhibit 76**).

**EXHIBIT 76:** CLIENT BILL PAYMENT BEHAVIORS, 2013 VS 2019

| | Much more often | | More often | | Slightly less often | | Not at all | |
|---|---|---|---|---|---|---|---|---|
| **Policy** | **2019** | **2013** | **2019** | **2013** | **2019** | **2013** | **2019** | **2013** |
| Paying Bills Later | 14% | 18% | 36% | 44% | 10% | 6% | 41% | 31% |
| Seeking to pay bills Over Time | 17% | 20% | 31% | 39% | 6% | 4% | 44% | 37% |
| Seeking Discounts | 17% | 22% | 30% | 32% | 7% | 4% | 47% | 42% |
| Seeking to Use Credit Cards | 31% | 17% | 34% | 34% | 3% | 3% | 32% | 46% |





## 2018 Fixed Expenses and Gross Receipts per Attorney

Sole practitioners and firms provided financial information on 2018 fixed/operating expenses and gross revenues per attorney, which included self-reported overhead rates by firm size (**Exhibit 77**) and by office location (**Exhibit 78**). Both expenses and revenues are influenced by firm size with lower values clustered among small firms and larger values clustered by large firms.

The **median fixed expense per attorney** falls within the $25,000-35,000 category by adjusting the Ohio column percentage total to reach 50%. The **median revenue per attorney** falls within $175,000-210,000, determined by adjusting the Ohio column percentage to 50%. The median self-reported overhead rate lies between 27-32% (**Exhibit 77**).

**EXHIBIT 77:** DISTRIBUTIONS OF 2018 FIXED EXPENSES AND GROSS RECEIPTS PER ATTORNEY, AND OVERHEAD RATES BY SIZE OF FIRM

| | Size of Firm | | | | | | |
|---|---|---|---|---|---|---|---|
| **Fixed Expenses/ Attorney** | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** |
| <$5K | 29.8% | 9.1% | 16.5% | 11.1% | 11.8% | 9.7% | 11.5% |
| $5-14.9K | 21.4% | 9.1% | 17.4% | 11.1% | 29.4% | 9.7% | 7.7% |
| $15-24.9K | 11.8% | 12.7% | 11.6% | 22.2% | 5.9% | 12.9% | - |
| $25-34.9K | 10.1% | 9.1% | 13.2% | 7.4% | - | 6.5% | 11.5% |
| $35-44.9K | 5.0% | 14.5% | 3.3% | - | 5.9% | 9.7% | - |
| $45-55.9K | 4.6% | 12.7% | 8.3% | 7.4% | 11.8% | 6.5% | 3.8% |
| $60-89.9K | 8.0% | 10.9% | 9.9% | 11.1% | 17.6% | 6.5% | 7.7% |
| $90-119.9K | 3.4% | 10.9% | 9.1% | 18.5% | 5.9% | 19.4% | 3.8% |
| $120-149.9K | 3.4% | 5.5% | 5.8% | 3.7% | 11.8% | 9.7% | 15.4% |
| $150-179.9K | 1.3% | - | 1.7% | 3.7% | - | 6.5% | 7.7% |
| $180K or > | 1.3% | 5.5% | 3.3% | 3.7% | - | 3.2% | 30.8% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **Gross Revenues/ Attorney** | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** |
|---|---|---|---|---|---|---|---|
| <$35K | 14.8% | 1.6% | 1.5% | 3.6% | - | 3.1% | - |
| $35-69.9K | 14.00% | 6.3% | 2.3% | - | 5.0% | - | - |
| $70-104.9K | 18.90% | 9.5% | 7.5% | 10.7% | 10.0% | - | - |
| $105-139.9K | 13.3% | 12.7% | 12.0% | - | 5.0% | 3.1% | - |
| $140-174.9K | 9.8% | 7.9% | 13.5% | 3.6% | 15.0% | 3.1% | |
| $175-209.9K | 6.1% | 14.3% | 25.6% | 10.7% | 5.0% | 6.3% | 7.1% |
| $210-244.9K | 4.2% | 15.9% | 12.0% | 28.6% | 20.0% | 28.1% | - |
| $245-299.9K | 8.3% | 11.1% | 12.0% | 25.0% | 10.0% | 21.9% | 14.3% |
| $300-499.9K | 6.8% | 15.9% | 9.0% | 10.7% | 25.0% | 31.3% | 57.1% |
| $500K+ | 3.8% | 4.8% | 4.5% | 7.1% | 5.0% | 3.1% | 21.4% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **Overhead Rate** | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** |
|---|---|---|---|---|---|---|---|
| <9% | 20.6% | - | 5.7% | 7.4% | 10.5% | 3.3% | 4.8% |
| 9-14% | 14.9% | 13.3% | 6.5% | 3.7% | 10.5% | 6.7% | 9.5% |
| 15-20% | 12.6% | 15.0% | 10.6% | 14.8% | 5.3% | 23.3% | 19.0% |
| 21-26% | 7.3% | 3.3% | 11.4% | 7.4% | 5.3% | 16.7% | - |
| 27-32% | 7.3% | 16.7% | 11.4% | 14.8% | 26.3% | 3.3% | 28.6% |
| 33-38% | 7.6% | 5.0% | 15.4% | 11.1% | 10.5% | 10.0% | 14.3% |
| 39-44% | 6.9% | 11.7% | 4.9% | 18.5% | 21.1% | 10.0% | 9.5% |
| 45-50% | 11.5% | 16.7% | 16.3% | 11.1% | 5.3% | 20.0% | - |
| 51-56% | 3.1% | 8.3% | 4.9% | 3.7% | - | 6.7% | - |
| 57-62% | 2.3% | 6.7% | 6.5% | 3.7% | 5.3% | - | 4.8% |
| >62% | 6.1% | 3.3% | 6.5% | 3.7% | - | - | 9.5% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



Case: 3:19-cv-02434-JZ Doc #: 65-2 Filed: 03/12/20 92 of 124. PageID #: 942

**EXHIBIT 78:** DISTRIBUTIONS OF 2018 FIXED EXPENSES AND GROSS RECEIPTS PER ATTORNEY, AND OVERHEAD RATES BY OFFICE LOCATION

| | Office Location | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Fixed Expenses/ Attorney** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
| <$5K | 26.4% | 18.0% | 21.9% | 17.1% | 21.6% | 11.8% | 22.0% | 21.2% |
| $5-14.9K | 22.6% | 16.0% | 13.2% | 8.6% | 12.7% | 23.5% | 25.4% | 17.3% |
| $15-24.9K | 10.4% | 6.0% | 11.4% | 20.0% | 12.7% | 7.8% | 15.3% | 11.5% |
| $25-34.9K | 8.5% | 16.0% | 10.5% | 5.7% | 13.7% | 7.8% | 5.1% | 10.0% |
| $35-44.9K | 5.7% | 10.0% | 4.4% | 8.6% | 2.9% | - | 8.5% | 5.4% |
| $45-55.9K | 5.7% | 2.0% | 10.5% | 11.4% | 6.9% | 5.9% | 3.4% | 6.7% |
| $60-89.9K | 8.5% | 2.0% | 7.9% | 5.7% | 8.8% | 17.6% | 13.6% | 9.0% |
| $90-119.9K | 4.7% | - | 7.0% | 5.7% | 7.8% | 21.6% | 6.8% | 7.3% |
| $120-149.9K | 2.8% | 14.0% | 5.3% | 8.6% | 8.8% | 2.0% | - | 5.6% |
| $150-179.9K | 2.8% | 6.0% | 2.6% | - | 2.0% | - | - | 2.1% |
| $180K or > | 1.9% | 10.0% | 5.3% | 8.6% | 2.0% | 2.0% | - | 3.8% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **Gross Revenues/ Attorney** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| <$35K | 10.8% | 3.8% | 8.1% | 7.9% | 8.8% | 3.5% | 7.9% | 10.3% |
| $35-69.9K | 11.7% | 3.8% | 4.9% | 13.2% | 9.6% | - | 12.7% | 9.2% |
| $70-104.9K | 18.3% | 11.3% | 8.9% | 7.9% | 12.3% | 8.8% | 15.9% | 10.6% |
| $105-139.9K | 13.3% | 5.7% | 7.3% | 5.3% | 12.3% | 15.8% | 14.3% | 7.9% |
| $140-174.9K | 7.5% | 9.4% | 6.5% | 13.2% | 16.7% | 7.0% | 6.3% | 11.4% |
| $175-209.9K | 9.2% | 9.4% | 12.2% | 10.5% | 7.9% | 17.5% | 19.0% | 11.5% |
| $210-244.9K | 6.7% | 15.1% | 7.3% | 13.2% | 7.9% | 24.6% | 7.9% | 8.6% |
| $245-299.9K | 7.5% | 7.5% | 18.7% | 18.4% | 12.3% | 3.5% | 7.9% | 11.5% |
| $300-499.9K | 9.2% | 28.3% | 20.3% | 7.9% | 8.8% | 14.0% | 3.2% | 15.4% |
| $500K+ | 5.8% | 5.7% | 5.7% | 2.6% | 3.5% | 5.3% | 4.8% | 3.7% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **Overhead Rate** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| <9% | 13.8% | 9.8% | 15.7% | 2.7% | 14.6% | 5.4% | 14.1% | 10.0% |
| 9-14% | 13.8% | 9.8% | 8.7% | 13.5% | 11.7% | 16.1% | 7.8% | 8.1% |
| 15-20% | 13.8% | 5.9% | 14.8% | 8.1% | 11.7% | 12.5% | 18.8% | 10.7% |
| 21-26% | 8.6% | 15.7% | 4.3% | 8.1% | 8.7% | 7.1% | 7.8% | 10.0% |
| 27-32% | 8.6% | 7.8% | 15.7% | 5.4% | 12.6% | 10.7% | 10.9% | 10.5% |
| 33-38% | 13.8% | 11.8% | 11.3% | 16.2% | 3.9% | 8.9% | 3.1% | 14.1% |
| 39-44% | 8.6% | 9.8% | 7.0% | 13.5% | 7.8% | 7.1% | 7.8% | 11.4% |
| 45-50% | 6.9% | 15.7% | 13.0% | 21.6% | 14.6% | 16.1% | 10.9% | 12.4% |
| 51-56% | 2.6% | 3.9% | 3.5% | 5.4% | 3.9% | 3.6% | 7.8% | 3.7% |
| 57-62% | 4.3% | 3.9% | 3.5% | 2.7% | 1.0% | 8.9% | 4.7% | 3.5% |
| >62% | 5.2% | 5.9% | 2.6% | 2.7% | 9.7% | 3.6% | 6.3% | 5.7% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



## Starting and Current Salary Levels for Associates, Legal Assistants and Administrative Assistants/Secretaries by Years of Experience

**EXHIBIT 79:** DISTRIBUTIONS OF 2019 ADMINISTRATIVE ASSISTANT/SECRETARY, LEGAL ASSISTANT AND ASSOCIATE SALARIES BY YEARS OF EXPERIENCE

| | No Experience | | 3 Years Experience | | 5 Years Experience | | 10 Years Experience | |
|---|---|---|---|---|---|---|---|---|
| **Administrative Assistant/Secretaries** | **N** | **%** | **N** | **%** | **N** | **%** | **N** | **%** |
| <$25K | 111 | 42.9 | 40 | 15.6 | 21 | 8.2 | 18 | 5.3 |
| $25-27K | 44 | 17 | 58 | 22.6 | 33 | 12.8 | 19 | 5.6 |
| $28-30K | 39 | 15.1 | 42 | 16.3 | 38 | 14.8 | 27 | 8 |
| $31-33K | 19 | 7.3 | 31 | 12.1 | 33 | 12.8 | 36 | 10.7 |
| $34-36K | 18 | 6.9 | 19 | 7.4 | 30 | 11.7 | 51 | 15.1 |
| $37-39K | 9 | 3.5 | 24 | 9.3 | 26 | 10.1 | 30 | 8.9 |
| $40-42K | 6 | 2.3 | 16 | 6.2 | 22 | 8.6 | 28 | 8.3 |
| $43-45K | 5 | 1.9 | 11 | 4.3 | 14 | 5.4 | 26 | 7.7 |
| $46-48K | 2 | 0.8 | 5 | 1.9 | 13 | 5.1 | 17 | 5 |
| $49-51K | 1 | 0.4 | 4 | 1.6 | 12 | 4.7 | 28 | 8.3 |
| $52-54K | 2 | 0.8 | 1 | 0.4 | 7 | 2.7 | 13 | 3.9 |
| $55-57K | 1 | 0.4 | 4 | 1.6 | 2 | 0.8 | 11 | 3.3 |
| $58-60K | 1 | 0.4 | 1 | 0.4 | 3 | 1.2 | 10 | 3 |
| $61-63K | 1 | 0.4 | 1 | 0.4 | 2 | 0.8 | 8 | 2.4 |
| **Total** | **259** | **100** | **257** | **100** | **257** | **100** | **322** | **100** |

| | No Experience | | 3 Years Experience | | 5 Years Experience | | 10 Years Experience | |
|---|---|---|---|---|---|---|---|---|
| **Legal Assistants** | **N** | **%** | **N** | **%** | **N** | **%** | **N** | **%** |
| <$46K | 119 | 77.3 | 77 | 49 | 61 | 37.2 | 62 | 28% |
| $46-48K | 11 | 7.1 | 29 | 18.5 | 20 | 12.2 | 26 | 12% |
| $49-51K | 7 | 4.5 | 16 | 10.2 | 23 | 14 | 17 | 8% |
| $52-54K | - | - | 7 | 4.5 | 11 | 6.7 | 27 | 12% |
| $55-57K | 5 | 3.2 | 8 | 5.1 | 9 | 5.5 | 12 | 5% |
| $58-60K | - | - | 7 | 4.5 | 12 | 7.3 | 17 | 8% |
| $61-63K | - | - | - | 1.3 | 6 | 3.7 | 13 | 6% |
| $64-66K | 4 | 2.6 | 4 | 2.5 | 4 | 2.4 | 10 | 5% |
| $67-69K | - | - | - | 1.3 | 10 | 6.1 | 9 | 4% |
| $70-75K | - | - | - | 1.3 | - | 1.2 | 14 | 6% |
| $76-78K | - | - | - | 1.3 | - | 0.6 | 3 | 1% |
| $79-88K | - | - | - | - | - | 0.6 | 6 | 3% |
| >$88K | - | - | - | - | - | 0.6 | 5 | 2% |
| **Total** | **154** | **100%** | **157** | **100%** | **164** | **100%** | **221** | **100%** |

| | No Experience | | 3 Years Experience | | 5 Years Experience | | 10 Years Experience | |
|---|---|---|---|---|---|---|---|---|
| **Associates** | **N** | **%** | **N** | **%** | **N** | **%** | **N** | **%** |
| <$73K | 191 | 69.7 | 115 | 44.1 | 59 | 24.5 | 37 | 16.4 |
| $73-85K | 28 | 10.2 | 71 | 27.2 | 51 | 21.2 | 24 | 10.7 |
| $86-98K | 18 | 6.6 | 22 | 8.4 | 58 | 24.1 | 22 | 9.8 |
| $99-111K | 17 | 6.2 | 15 | 5.7 | 20 | 8.3 | 54 | 24 |
| $112-124K | 14 | 5.1 | 12 | 4.6 | 10 | 4.1 | 25 | 11.1 |
| $125-137K | 4 | 1.5 | 17 | 6.5 | 14 | 5.8 | 12 | 5.3 |
| $138-151K | - | - | 5 | 1.9 | 20 | 8.3 | 19 | 8.4 |
| $152-164K | - | - | - | - | 6 | 2.5 | 8 | 3.6 |
| $165-177K | - | - | - | - | - | - | 10 | 4.4 |
| $178-190K | - | - | - | - | - | - | 3 | 1.3 |
| $191-203K | - | - | - | - | - | - | 3 | 1.3 |
| $204-216K | - | - | - | - | - | - | 3 | 1.3 |
| **Total** | **259** | **100%** | **257** | **100%** | **241** | **100%** | **225** | **100%** |


OHIO STATE BAR
ASSOCIATION
Connect. Advance. Succeed.

## Associate and Legal Assistant Salaries by Firm Size and Office Location

**Exhibits 80 to 85** distribute associate, legal assistant and administrative assistant/ secretary salary levels in 2019 based on their level of experience by firm size and office location. Income is directly correlated with both firm size and years of experience.

**EXHIBIT 80:** DISTRIBUTIONS OF 2019 SALARY LEVELS OF ASSOCIATES BY LEVEL OF EXPERIENCE AND SIZE OF FIRM

| | Firm Size | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **No Experience** | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
| <$73K | 95% | 87% | 90% | 80% | 67% | 59% | 6% | 72% |
| $73-85K | 5% | 9% | 6% | 12% | 22% | 18% | 9% | 11% |
| $86-98K | - | 4% | 1% | 4% | 7% | 18% | 18% | 7% |
| $99-111K | - | - | 2% | - | - | 3% | 29% | 5% |
| $112-124K | - | - | 1% | - | 4% | - | 32% | 5% |
| $125-137K | - | - | - | 4% | - | 3% | 3% | 1% |
| $152-164K | - | - | - | - | - | - | 3% | 0% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| 3 Years Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$73K | 75% | 69% | 55% | 68% | 30% | 30% | - | 45% |
| $73-85K | 19% | 15% | 39% | 16% | 37% | 32% | 6% | 28% |
| $86-98K | - | 4% | 2% | 5% | 22% | 16% | 18% | 9% |
| $99-111K | - | 12% | 3% | 5% | 4% | 14% | 6% | 6% |
| $112-124K | - | - | 1% | - | - | 3% | 21% | 4% |
| $125-137K | - | - | - | - | - | 5% | 38% | 6% |
| $138-151K | - | - | - | 5% | 4% | - | 9% | 2% |
| $152-164K | - | - | - | - | 4% | - | 3% | 1% |
| $165-177K | 6% | - | - | - | - | - | - | - |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| 5 Years Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$73K | 47% | 44% | 38% | 18% | 12% | 13% | - | 25% |
| $73-85K | 33% | 11% | 27% | 47% | 15% | 21% | - | 22% |
| $86-98K | 7% | 22% | 26% | - | 58% | 32% | 9% | 25% |
| $99-111K | - | 6% | 7% | 18% | 4% | 11% | 15% | 9% |
| $112-124K | 7% | 11% | - | - | 4% | 13% | 3% | 4% |
| $125-137K | - | - | 1% | - | 4% | 5% | 21% | 5% |
| $138-151K | 7% | - | 1% | 12% | - | 5% | 36% | 8% |
| $152-164K | - | 6% | - | 6% | 4% | - | 9% | 3% |
| $165-177K | - | - | - | - | - | - | 3% | 0% |
| >$255K | - | - | - | - | - | - | 3% | 0% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| 10 Years Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$73K | 40.0% | 24.0% | 26.7% | 15.8% | - | 5.9% | - | 16.8% |
| $73-85K | 13.3% | 8.0% | 16.0% | 15.8% | 9.1% | 8.8% | - | 10.9% |
| $86-98K | 6.7% | 8.0% | 16.0% | 10.5% | 9.1% | 5.9% | - | 9.5% |
| $99-111K | 6.7% | 20.0% | 21.3% | 31.6% | 45.5% | 38.2% | 10.0% | 24.5% |
| $112-124K | 13.3% | 8.0% | 9.3% | 5.3% | 9.1% | 17.6% | 16.7% | 11.4% |
| $125-137K | 13.3% | 8.0% | 5.3% | - | 4.5% | 5.9% | 3.3% | 5.5% |
| $138-151K | 6.7% | 4.0% | 1.3% | - | 9.1% | 8.8% | 30.0% | 7.7% |
| $152-164K | - | - | 1.3% | 10.5% | - | 8.8% | 6.7% | 3.6% |
| $165-177K | - | 4.0% | 1.3% | 5.3% | - | - | 20.0% | 4.1% |
| $178-190K | - | - | - | - | 9.1% | - | - | 0.9% |
| $191-203K | - | 8.0% | - | - | - | - | 3.3% | 1.4% |
| $204-216K | - | 4.0% | - | - | 4.5% | - | 3.3% | 1.4% |
| $217-229K | - | - | 1.3% | - | - | - | 3.3% | 0.9% |
| $243-255K | - | - | - | 5.3% | - | - | - | 0.5% |
| >$255K | - | 4.0% | - | - | - | - | 3.3% | 0.9% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



Case: 3:19-cv-02434-JZ Doc #: 65-2 Filed: 03/12/20 95 of 124. PageID #: 945

**EXHIBIT 81:** DISTRIBUTIONS OF 2019 SALARY LEVELS OF ASSOCIATES BY LOCATION AND YEARS OF EXPERIENCE

| | Office Location | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **No Experience** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
| <$73K | 64.4% | 42.4% | 65.8% | 61.5% | 84.3% | 83.3% | 92.0% | 70.4% |
| $73-85K | 4.4% | 30.3% | 6.8% | 7.7% | 7.8% | 10.0% | 8.0% | 10.0% |
| $86-98K | 15.6% | 3.0% | 6.8% | 7.7% | 3.9% | 6.7% | - | 6.7% |
| $99-111K | 4.4% | 12.1% | 8.2% | 15.4% | 3.9% | - | - | 5.9% |
| $112-124K | 8.9% | 9.1% | 9.6% | - | - | - | - | 5.2% |
| $125-137K | 2.2% | 3.0% | 1.4% | 7.7% | - | - | - | 1.5% |
| $152-164K | - | - | 1.4% | - | - | - | - | 0.4% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **3 Years Experience** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| <$73K | 45.5% | 25.0% | 37.3% | 41.2% | 45.7% | 53.3% | 85.7% | 44.7% |
| $73-85K | 22.7% | 28.1% | 28.4% | 17.6% | 37.0% | 30.0% | 14.3% | 27.2% |
| $86-98K | 11.4% | 15.6% | 1.5% | 5.9% | 15.2% | 6.7% | - | 8.2% |
| $99-111K | 6.8% | - | 9.0% | 11.8% | 2.2% | 10.0% | - | 5.8% |
| $112-124K | 4.5% | 6.3% | 10.4% | - | - | - | - | 4.3% |
| $125-137K | 6.8% | 15.6% | 9.0% | 17.6% | - | - | - | 6.6% |
| $138-151K | 2.3% | 6.3% | 3.0% | - | - | - | - | 1.9% |
| $152-164K | - | - | 1.5% | 5.9% | - | - | - | 0.8% |
| $165-177K | - | 3.1% | - | - | - | - | - | 0.4% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **5 Years Experience** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| <$73K | 27.9% | 12.0% | 11.1% | 15.4% | 25.5% | 34.6% | 70.0% | 24.9% |
| $73-85K | 20.9% | 12.0% | 27.0% | 38.5% | 17.0% | 23.1% | 15.0% | 21.5% |
| $86-98K | 18.6% | 28.0% | 22.2% | 15.4% | 36.2% | 26.9% | 10.0% | 24.1% |
| $99-111K | 11.6% | 12.0% | 3.2% | - | 14.9% | 7.7% | 5.0% | 8.4% |
| $112-124K | 7.0% | 4.0% | 4.8% | 7.7% | 4.3% | - | - | 4.2% |
| $125-137K | 7.0% | 8.0% | 9.5% | - | - | 3.8% | - | 5.1% |
| $138-151K | 4.7% | 12.0% | 15.9% | 23.1% | 2.1% | 3.8% | - | 8.4% |
| $152-164K | - | 12.0% | 4.8% | - | - | - | - | 2.5% |
| $165-177K | 2.3% | - | - | - | - | - | - | 0.4% |
| >$255K | - | - | 1.6% | - | - | - | - | 0.4% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **10 Years Experience** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| <$73K | 21.6% | 4.2% | 6.9% | 8.3% | 15.6% | 32.0% | 36.4% | 16.6% |
| $73-85K | 13.5% | 4.2% | 8.6% | 16.7% | 15.6% | 8.0% | 9.1% | 10.8% |
| $86-98K | - | 12.5% | 13.8% | - | 6.7% | 16.0% | 18.2% | 9.9% |
| $99-111K | 21.6% | 29.2% | 20.7% | 25.0% | 33.3% | 24.0% | 13.6% | 24.2% |
| $112-124K | 16.2% | 12.5% | 3.4% | - | 20.0% | 12.0% | 9.1% | 11.2% |
| $125-137K | 5.4% | 12.5% | 5.2% | 8.3% | 4.4% | - | 4.5% | 5.4% |
| $138-151K | 13.5% | 12.5% | 12.1% | 16.7% | - | 4.0% | - | 8.1% |
| $152-164K | 5.4% | - | 5.2% | 8.3% | - | 4.0% | - | 3.1% |
| $165-177K | - | 8.3% | 10.3% | 16.7% | - | - | - | 4.5% |
| $178-190K | - | - | 3.4% | - | - | - | 4.5% | 1.3% |
| $191-203K | 2.7% | - | 1.7% | - | - | - | 4.5% | 1.3% |
| $204-216K | - | - | 3.4% | - | 2.2% | - | - | 1.3% |
| $217-229K | - | 4.2% | 1.7% | - | - | - | - | 0.9% |
| $243-255K | - | - | 1.7% | - | - | - | - | 0.4% |
| >$255K | - | - | 1.7% | - | 2.2% | - | - | 0.9% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



**EXHIBIT 82:** DISTRIBUTIONS OF 2019 SALARY LEVELS OF LEGAL ASSISTANTS BY LEVEL OF EXPERIENCE AND FIRM SIZE

| | Firm Size | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **No Experience** | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
| <$46K | 88% | 100% | 90% | 69% | 67% | 64% | 38% | 78% |
| $46-48K | 4% | - | 4% | 31% | - | 4% | 19% | 7% |
| $49-51K | 4% | - | 2% | - | 11% | 8% | 13% | 5% |
| $52-54K | - | - | 2% | - | 11% | - | 6% | 2% |
| $55-57K | - | - | 2% | - | 11% | 8% | 6% | 3% |
| $58-60K | 4% | - | - | - | - | 4% | 6% | 2% |
| $64-66K | - | - | - | - | - | 8% | 6% | 2% |
| $67-69K | - | - | - | - | - | 4% | - | 1% |
| >$88 | - | - | - | - | - | - | 6% | 1% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **3 Years Experience** | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| <$46K | 73.1% | 69.2% | 54.9% | 64.3% | 22.2% | 25.9% | 18.8% | 49.4% |
| $46-48K | 15.4% | 7.7% | 23.5% | 21.4% | 11.1% | 25.9% | 6.3% | 18.6% |
| $49-51K | 3.8% | 23.1% | 5.9% | 7.1% | 11.1% | 14.8% | 18.8% | 10.3% |
| $52-54K | - | - | 3.9% | - | 44.4% | - | 6.3% | 4.5% |
| $55-57K | - | - | 5.9% | - | - | 7.4% | 18.8% | 5.1% |
| $58-60K | 3.8% | - | 3.9% | - | 11.1% | 3.7% | 12.5% | 4.5% |
| $61-63K | - | - | 2.0% | - | - | 3.7% | - | 1.3% |
| $64-66K | - | - | - | 7.1% | - | 7.4% | 6.3% | 2.6% |
| $67-69K | - | - | - | - | - | 3.7% | - | 0.6% |
| $73-75K | - | - | - | - | - | 7.4% | - | 1.3% |
| $79-82K | 3.8% | - | - | - | - | - | 6.3% | 1.3% |
| >$88 | - | - | - | - | - | - | 6.3% | 0.6% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | 100% |

| **5 Years Experience** | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| <$46K | 55.6% | 64.3% | 39.2% | 58.8% | 9.1% | 15.4% | 11.8% | 37.4% |
| $46-48K | 11.1% | 7.1% | 15.7% | 11.8% | 27.3% | 7.7% | 5.9% | 12.3% |
| $49-51K | 11.1% | 21.4% | 23.5% | 5.9% | - | 11.5% | 5.9% | 14.1% |
| $52-54K | 7.4% | - | 2.0% | 11.8% | 9.1% | 15.4% | 5.9% | 6.7% |
| $55-57K | - | 7.1% | 5.9% | - | 9.1% | 7.7% | 11.8% | 5.5% |
| $58-60K | 3.7% | - | 7.8% | - | 27.3% | 11.5% | 5.9% | 7.4% |
| $61-63K | 3.7% | - | 3.9% | - | 9.1% | - | 11.8% | 3.7% |
| $64-66K | - | - | 2.0% | - | 9.1% | 3.8% | 5.9% | 2.5% |
| $67-69K | - | - | - | 11.8% | - | 19.2% | 17.6% | 6.1% |
| $70-72K | - | - | - | - | - | - | 5.9% | 0.6% |
| $76-78K | - | - | - | - | - | 3.8% | - | 0.6% |
| $79-82K | - | - | - | - | - | 3.8% | - | 0.6% |
| $83-85K | 3.7% | - | - | - | - | - | - | 0.6% |
| $86-88K | 3.7% | - | - | - | - | - | 5.9% | 1.2% |
| >$88K | - | - | - | - | - | - | 5.9% | 0.6% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **10 Years Experience** | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| <$46K | 42.2% | 50.0% | 27.5% | 40.0% | - | 7.4% | 5.3% | 28.1% |
| $46-48K | 15.6% | 19.2% | 13.0% | 5.0% | 6.7% | 7.4% | 5.3% | 11.8% |
| $49-51K | 6.7% | 3.8% | 14.5% | 5.0% | 6.7% | 3.7% | - | 7.7% |
| $52-54K | 8.9% | 3.8% | 14.5% | 15.0% | 20.0% | 14.8% | 10.5% | 12.2% |
| $55-57K | 6.7% | 3.8% | 7.2% | 10.0% | 6.7% | - | - | 5.4% |
| $58-60K | 11.1% | 3.8% | 5.8% | - | 6.7% | 14.8% | 10.5% | 7.7% |
| $61-63K | 4.4% | 3.8% | 4.3% | - | 20.0% | 11.1% | 5.3% | 5.9% |
| $64-66K | 2.2% | - | 4.3% | - | 20.0% | 3.7% | 10.5% | 4.5% |
| $67-69K | - | 3.8% | 1.4% | 15.0% | - | 11.1% | 5.3% | 4.1% |
| $70-72K | - | - | 1.4% | 5.0% | - | 14.8% | 5.3% | 3.2% |
| $73-75K | - | - | - | - | 13.3% | - | 21.1% | 2.7% |
| $76-78K | - | 3.8% | 2.9% | - | - | - | - | 1.4% |
| $79-82K | - | - | 2.9% | - | - | 3.7% | 10.5% | 2.3% |
| $83-85K | - | - | - | - | - | 3.7% | - | 0.5% |
| $86-88K | - | - | - | 5.0% | - | - | - | 0.5% |
| >$88 | 2.2% | 3.8% | - | - | - | 3.7% | 10.5% | 2.3% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



**EXHIBIT 83:** DISTRIBUTIONS OF 2019 SALARY LEVELS OF LEGAL ASSISTANTS BY LEVEL OF EXPERIENCE AND OFFICE LOCATION

| | Office Location | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **No Experience** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
| <$46K | 76.7% | 73.7% | 53.8% | 50.0% | 88.2% | 94.4% | 100.0% | 77.8% |
| $46-48K | 10.0% | - | 15.4% | 30.0% | 2.9% | - | - | 7.2% |
| $49-51K | 3.3% | 5.3% | 7.7% | - | 2.9% | 5.6% | - | 3.9% |
| $52-54K | - | - | 7.7% | 10.0% | - | - | - | 2.0% |
| $55-57K | 3.3% | 15.8% | 3.8% | - | - | - | - | 3.3% |
| $58-60K | - | - | 3.8% | 10.0% | 2.9% | - | - | 2.0% |
| $64-66K | 3.3% | 5.3% | 3.8% | - | 2.9% | - | - | 2.6% |
| $67-69K | 3.3% | - | - | - | - | - | - | 0.7% |
| >$88 | - | - | 3.8% | - | - | - | - | 0.7% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **3 Years Experience** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | |
|---|---|---|---|---|---|---|---|---|
| <$46K | 38.7% | 45.0% | 25.9% | 30.0% | 62.9% | 72.2% | 73.3% | 49.4% |
| $46-48K | 25.8% | 10.0% | 11.1% | 40.0% | 17.1% | 16.7% | 20.0% | 18.6% |
| $49-51K | 6.5% | 10.0% | 25.9% | - | 8.6% | 5.6% | 6.7% | 10.3% |
| $52-54K | 9.7% | 5.0% | 7.4% | - | 2.9% | - | - | 4.5% |
| $55-57K | - | 10.0% | 7.4% | 20.0% | 2.9% | - | - | 4.5% |
| $58-60K | 6.5% | 10.0% | 7.4% | - | - | 5.6% | - | 4.5% |
| $61-63K | 6.5% | - | - | - | - | - | - | 1.3% |
| $64-66K | 3.2% | 5.0% | 3.7% | - | 2.9% | - | - | 2.6% |
| $67-69K | - | 5.0% | 3.7% | - | - | - | - | 1.3% |
| $73-75K | 3.2% | - | - | 10.0% | - | - | - | 1.3% |
| $79-82K | - | - | 3.7% | - | 2.9% | - | - | 1.3% |
| >$88 | - | - | 3.7% | - | - | - | - | 0.6% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | 100% |

| **5 Years Experience** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | |
|---|---|---|---|---|---|---|---|---|
| <$46K | 27.3% | 12.5% | 16.7% | 18.2% | 55.3% | 68.4% | 56.3% | 37.4% |
| $46-48K | 9.1% | 25.0% | 6.7% | 27.3% | 7.9% | 10.5% | 18.8% | 12.3% |
| $49-51K | 21.2% | 6.3% | 13.3% | 18.2% | 7.9% | 10.5% | 25.0% | 14.1% |
| $52-54K | 6.1% | 6.3% | 16.7% | - | 7.9% | - | - | 6.7% |
| $55-57K | 3.0% | 6.3% | 10.0% | 9.1% | 5.3% | 5.3% | - | 5.5% |
| $58-60K | 12.1% | 18.8% | 6.7% | 9.1% | 5.3% | - | - | 7.4% |
| $61-63K | 6.1% | 12.5% | 3.3% | - | - | 5.3% | - | 3.7% |
| $64-66K | 3.0% | - | 6.7% | - | - | - | - | 1.8% |
| $67-69K | 9.1% | 12.5% | 10.0% | 9.1% | 2.6% | - | - | 6.1% |
| $70-72K | - | - | 3.3% | - | 2.6% | - | - | 1.2% |
| $76-78K | - | - | - | 9.1% | - | - | - | 0.6% |
| $79-82K | 3.0% | - | - | - | - | - | - | 0.6% |
| $83-85K | - | - | 3.3% | - | - | - | - | 0.6% |
| $86-88K | - | - | - | - | 5.3% | - | - | 1.2% |
| >$88K | - | - | 3.3% | - | - | - | - | 0.6% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **10 Years Experience** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | |
|---|---|---|---|---|---|---|---|---|
| <$46K | 20.0% | 10.7% | 17.4% | 19.0% | 28.8% | 62.5% | 55.0% | 28.1% |
| $46-48K | 6.7% | 17.9% | 2.2% | 14.3% | 17.3% | 16.7% | 10.0% | 11.8% |
| $49-51K | 10.0% | 7.1% | 10.9% | 9.5% | 5.8% | - | 10.0% | 7.7% |
| $52-54K | 20.0% | 10.7% | 4.3% | 14.3% | 13.5% | 12.5% | 15.0% | 12.2% |
| $55-57K | - | 7.1% | 6.5% | 4.8% | 9.6% | - | 5.0% | 5.4% |
| $58-60K | 10.0% | - | 13.0% | 9.5% | 11.5% | - | - | 7.7% |
| $61-63K | 3.3% | 10.7% | 10.9% | 4.8% | 3.8% | 4.2% | - | 5.9% |
| $64-66K | 10.0% | 14.3% | 2.2% | - | 1.9% | 4.2% | - | 4.5% |
| $67-69K | - | 7.1% | 8.7% | 9.5% | 1.9% | - | - | 4.1% |
| $70-72K | 10.0% | 3.6% | 2.2% | - | - | - | 5.0% | 2.7% |
| $73-75K | - | 3.6% | 8.7% | 4.8% | 1.9% | - | - | 3.2% |
| $76-78K | - | - | 4.3% | 4.8% | - | - | - | 1.4% |
| $79-82K | 6.7% | 7.1% | - | - | 1.9% | - | - | 2.3% |
| $83-85K | - | - | - | 4.8% | - | - | - | 0.5% |
| $86-88K | - | - | 2.2% | - | - | - | - | 0.5% |
| >$88 | 3.3% | - | 6.5% | - | 1.9% | - | - | 2.3% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | 100% |



OHIO STATE BAR
ASSOCIATION
Connect. Advance. Succeed.

**EXHIBIT 84:** PERCENT DISTRIBUTIONS OF 2019 ADMINISTRATIVE ASSISTANT/SECRETARY SALARY LEVELS BY FIRM SIZE

| | Firm Size | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **No Experience** | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
| <$25K | 70.7% | 42.9% | 46.1% | 35.0% | 26.3% | 11.5% | 6.3% | 43.0% |
| $25-27K | 10.3% | 17.9% | 19.1% | 40.0% | 10.5% | 19.2% | 6.3% | 17.2% |
| $28-30K | 3.4% | 21.4% | 12.4% | 10.0% | 36.8% | 38.5% | 6.3% | 15.2% |
| $31-33K | 5.2% | 10.7% | 9.0% | 10.0% | - | 3.8% | 12.5% | 7.4% |
| $34-36K | 3.4% | 3.6% | 7.9% | 5.0% | 10.5% | 7.7% | 18.8% | 7.0% |
| $37-39K | 3.4% | - | 2.2% | - | - | 11.5% | 12.5% | 3.5% |
| $40-42K | - | 3.6% | 1.1% | - | 5.3% | - | 12.5% | 2.0% |
| $43-45K | - | - | 1.1% | - | 5.3% | 3.8% | 6.3% | 1.6% |
| $46-48K | - | - | 1.1% | - | - | - | 6.3% | 0.8% |
| $49-51K | - | - | - | - | - | 3.8% | - | 0.4% |
| $52-54K | - | - | - | - | 5.3% | - | 6.3% | 0.8% |
| $58-60K | 1.7% | - | - | - | - | - | - | 0.4% |
| $61-63K | 1.7% | - | - | - | - | - | - | 0.4% |
| >$63K | - | - | - | - | - | - | 6.3% | 0.4% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **3 Years Experience** | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| <$25K | 37.7% | 17.9% | 10.3% | 13.6% | 4.5% | 3.6% | 6.3% | 15.6% |
| $25-27K | 28.3% | 25.0% | 28.7% | 22.7% | 18.2% | 7.1% | - | 22.7% |
| $28-30K | 3.8% | 21.4% | 20.7% | 27.3% | 9.1% | 25.0% | 6.3% | 16.4% |
| $31-33K | 9.4% | 10.7% | 16.1% | 13.6% | 13.6% | 10.7% | - | 12.1% |
| $34-36K | 5.7% | 7.1% | 4.6% | 4.5% | 13.6% | 17.9% | 6.3% | 7.4% |
| $37-39K | 3.8% | 7.1% | 6.9% | - | 22.7% | 14.3% | 31.3% | 9.4% |
| $40-42K | 3.8% | 7.1% | 4.6% | 9.1% | 4.5% | 10.7% | 12.5% | 6.3% |
| $43-45K | 3.8% | | 4.6% | 9.1% | 9.1% | - | 6.3% | 4.3% |
| $46-48K | - | - | 2.3% | - | - | - | 12.5% | 1.6% |
| $49-51K | | 3.6% | 1.1% | - | - | 3.6% | 6.3% | 1.6% |
| $52-54K | - | - | - | - | - | - | 6.3% | 0.4% |
| $55-57K | 3.8% | - | - | - | 4.5% | 3.6% | - | 1.6% |
| $58-60K | - | - | - | - | - | 3.6% | - | 0.4% |
| >$63K | - | - | - | - | - | - | 6.3% | 0.4% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **5 Years Experience** | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| <$25K | 26.9% | 7.1% | 4.6% | - | - | 3.3% | - | 8.2% |
| $25-27K | 26.9% | 17.9% | 9.2% | 19.0% | 4.8% | - | 5.9% | 12.9% |
| $28-30K | 13.5% | 14.3% | 19.5% | 19.0% | 14.3% | 10.0% | - | 14.8% |
| $31-33K | 5.8% | 14.3% | 18.4% | 14.3% | 14.3% | 10.0% | 5.9% | 12.9% |
| $34-36K | 5.8% | 10.7% | 12.6% | 19.0% | 9.5% | 23.3% | - | 11.7% |
| $37-39K | 5.8% | 3.6% | 13.8% | 4.8% | 14.3% | 20.0% | - | 10.2% |
| $40-42K | 7.7% | 17.9% | 6.9% | 9.5% | 14.3% | 6.7% | - | 8.6% |
| $43-45K | 3.8% | 3.6% | 5.7% | - | - | 10.0% | 17.6% | 5.5% |
| $46-48K | - | - | 4.6% | 4.8% | 14.3% | 6.7% | 17.6% | 5.1% |
| $49-51K | - | 10.7% | 2.3% | 4.8% | 4.8% | - | 23.5% | 4.3% |
| $52-54K | - | - | 2.3% | - | 4.8% | 3.3% | 17.6% | 2.7% |
| $55-57K | - | - | - | 4.8% | - | - | 5.9% | 0.8% |
| $58-60K | 3.8% | - | - | - | 4.8% | - | - | 1.2% |
| $61-63K | - | - | - | - | - | 3.3% | - | 0.4% |
| >$63K | - | - | - | - | - | 3.3% | 5.9% | 0.8% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **10 Years Experience** | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| <$25K | 17.4% | 2.2% | 1.0% | - | - | 3.1% | - | 5.4% |
| $25-27K | 9.3% | 6.7% | 5.8% | 4.0% | 4.2% | - | - | 5.7% |
| $28-30K | 10.5% | 13.3% | 9.6% | - | - | 3.1% | 5.3% | 8.1% |
| $31-33K | 15.1% | 13.3% | 8.7% | 16.0% | 8.3% | 6.3% | - | 10.7% |
| $34-36K | 12.8% | 15.6% | 21.2% | 16.0% | 12.5% | 9.4% | 5.3% | 15.2% |
| $37-39K | 8.1% | 6.7% | 11.5% | 16.0% | 12.5% | 3.1% | - | 9.0% |
| $40-42K | 8.1% | 13.3% | 4.8% | 8.0% | 4.2% | 21.9% | - | 8.4% |
| $43-45K | 3.5% | 2.2% | 12.5% | 12.0% | 8.3% | 9.4% | 5.3% | 7.8% |
| $46-48K | 2.3% | 2.2% | 7.7% | 4.0% | 12.5% | 6.3% | - | 5.1% |
| $49-51K | 5.8% | 4.4% | 8.7% | 8.0% | 8.3% | 15.6% | 15.8% | 8.4% |
| $52-54K | - | 6.7% | 1.0% | 4.0% | 8.3% | 3.1% | 21.1% | 3.6% |
| $55-57K | - | 2.2% | 1.9% | 8.0% | - | 9.4% | 15.8% | 3.3% |
| $58-60K | 2.3% | - | 1.9% | - | 8.3% | 3.1% | 15.8% | 3.0% |
| $61-63K | 1.2% | 2.2% | 1.9% | - | 8.3% | - | 5.3% | 2.1% |
| >$63K | 3.5% | 8.9% | 1.9% | 4.0% | 4.2% | 6.3% | 10.5% | 4.5% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



Case: 3:19-cv-02434-JZ Doc #: 65-2 Filed: 03/12/20 99 of 124. PageID #: 949

**EXHIBIT 85:** PERCENT DISTRIBUTIONS OF 2019 ADMINISTRATIVE ASSISTANT/SECRETARY SALARY LEVELS BY EXPERIENCE AND OFFICE LOCATION

| | Office Location | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **No Experience** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
| <$25K | 34.1% | 18.2% | 27.8% | 53.8% | 51.8% | 60.0% | 58.3% | 43.2% |
| $25-27K | 12.2% | 4.5% | 16.7% | 7.7% | 23.2% | 22.9% | 19.4% | 17.1% |
| $28-30K | 24.4% | 27.3% | 11.1% | 23.1% | 12.5% | 11.4% | 5.6% | 14.8% |
| $31-33K | 9.8% | 9.1% | 7.4% | 7.7% | 5.4% | 2.9% | 11.1% | 7.4% |
| $34-36K | 12.2% | 27.3% | 9.3% | - | 1.8% | - | 2.8% | 7.0% |
| $37-39K | 4.9% | 4.5% | 11.1% | - | - | - | - | 3.5% |
| $40-42K | - | 4.5% | 1.9% | - | 1.8% | 2.9% | 2.8% | 1.9% |
| $43-45K | - | 4.5% | 3.7% | 7.7% | 1.8% | - | - | 1.9% |
| $46-48K | - | - | 1.9% | - | 1.8% | - | - | 0.8% |
| $49-51K | 2.4% | - | - | - | - | - | - | 0.4% |
| $52-54K | - | - | 3.7% | - | - | - | - | 0.8% |
| $58-60K | - | - | 1.9% | - | - | - | - | 0.4% |
| $61-63K | - | - | 1.9% | - | - | - | - | 0.4% |
| >$63K | - | - | 1.9% | - | - | - | - | 0.4% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **3 Years Experience** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| <$25K | 7.5% | 9.1% | 8.0% | 6.7% | 30.5% | 10.8% | 25.0% | 15.7% |
| $25-27K | 20.0% | - | 14.0% | 40.0% | 20.3% | 35.1% | 37.5% | 22.7% |
| $28-30K | 15.0% | 9.1% | 16.0% | 6.7% | 22.0% | 24.3% | 9.4% | 16.5% |
| $31-33K | 12.5% | 13.6% | 8.0% | 20.0% | 8.5% | 18.9% | 12.5% | 12.2% |
| $34-36K | 15.0% | 9.1% | 8.0% | - | 8.5% | 2.7% | 3.1% | 7.5% |
| $37-39K | 10.0% | 27.3% | 8.0% | 13.3% | 5.1% | 2.7% | 9.4% | 9.0% |
| $40-42K | 7.5% | 18.2% | 14.0% | - | - | 2.7% | 3.1% | 6.3% |
| $43-45K | 2.5% | 13.6% | 8.0% | - | 1.7% | 2.7% | - | 3.9% |
| $46-48K | 2.5% | - | 6.0% | - | 1.7% | - | - | 2.0% |
| $49-51K | 5.0% | - | 2.0% | - | 1.7% | - | - | 1.6% |
| $52-54K | - | - | 2.0% | - | - | - | - | 0.4% |
| $55-57K | 2.5% | - | 4.0% | 6.7% | - | - | - | 1.6% |
| $58-60K | - | - | - | 6.7% | - | - | - | 0.4% |
| >$63K | - | - | 2.0% | - | - | - | - | 0.4% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **5 Years Experience** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| <$25K | 8.7% | - | 3.7% | - | 18.9% | - | 17.9% | 8.2% |
| $25-27K | 6.5% | 8.7% | 5.6% | 11.8% | 17.0% | 23.5% | 21.4% | 12.9% |
| $28-30K | 17.4% | - | 7.4% | 17.6% | 17.0% | 23.5% | 21.4% | 14.9% |
| $31-33K | 8.7% | - | 18.5% | 17.6% | 15.1% | 14.7% | 10.7% | 12.9% |
| $34-36K | 15.2% | 13.0% | 5.6% | 17.6% | 9.4% | 20.6% | 7.1% | 11.8% |
| $37-39K | 13.0% | 17.4% | 7.4% | 11.8% | 5.7% | 8.8% | 14.3% | 10.2% |
| $40-42K | 10.9% | 17.4% | 7.4% | 5.9% | 11.3% | - | 7.1% | 8.6% |
| $43-45K | 6.5% | 13.0% | 11.1% | - | - | 5.9% | - | 5.5% |
| $46-48K | 2.2% | 8.7% | 9.3% | 11.8% | - | 2.9% | - | 4.3% |
| $49-51K | 2.2% | 13.0% | 13.0% | - | 1.9% | - | - | 4.7% |
| $52-54K | 6.5% | 4.3% | 1.9% | - | 3.8% | - | - | 2.7% |
| $55-57K | - | 4.3% | 1.9% | - | - | - | - | 0.8% |
| $58-60K | - | - | 5.6% | - | - | - | - | 1.2% |
| $61-63K | 2.2% | - | - | - | - | - | - | 0.4% |
| >$63K | - | - | 1.9% | 5.9% | - | - | - | 0.8% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **10 Years Experience** | **Greater Cleveland** | **Greater Cincinnati** | **Greater Columbus** | **Greater Dayton** | **Northeast Region** | **Northwest Region** | **Southern Region** | **Ohio** |
|---|---|---|---|---|---|---|---|---|
| <$25K | 3.8% | - | 2.9% | 4.2% | 14.9% | - | 5.7% | 5.4% |
| $25-27K | 3.8% | 2.9% | 1.4% | 4.2% | 8.1% | 8.5% | 11.4% | 5.7% |
| $28-30K | 5.8% | - | 2.9% | - | 13.5% | 10.6% | 20.0% | 8.1% |
| $31-33K | 11.5% | - | 5.8% | 8.3% | 20.3% | 6.4% | 17.1% | 10.7% |
| $34-36K | 15.4% | 8.8% | 10.1% | 16.7% | 12.2% | 27.7% | 20.0% | 15.2% |
| $37-39K | 9.6% | 5.9% | 5.8% | 25.0% | 5.4% | 14.9% | 5.7% | 9.0% |
| $40-42K | 15.4% | 14.7% | 1.4% | 4.2% | 6.8% | 10.6% | 8.6% | 8.4% |
| $43-45K | 7.7% | 11.8% | 11.6% | 8.3% | 4.1% | 4.3% | 8.6% | 7.8% |
| $46-48K | 5.8% | 8.8% | 4.3% | 4.2% | 1.4% | 10.6% | 2.9% | 5.1% |
| $49-51K | 5.8% | 5.9% | 18.8% | 12.5% | 4.1% | 6.4% | - | 8.1% |
| $52-54K | 5.8% | 5.9% | 4.3% | - | 6.8% | - | - | 3.9% |
| $55-57K | 1.9% | 5.9% | 5.8% | 8.3% | 1.4% | - | - | 3.0% |
| $58-60K | 5.8% | 5.9% | 7.2% | - | - | - | - | 3.0% |
| $61-63K | - | 14.7% | 2.9% | - | 1.4% | - | | 2.4% |
| >$63K | 1.9% | 8.8% | 14.5% | 4.2% | - | - | - | 4.5% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

**Fusonie, Thomas H.**

| | |
|---|---|
| **From:** | Shuey, Daniel E. |
| **Sent:** | Wednesday, March 13, 2019 9:38 AM |
| **To:** | 'Emch, Dale' |
| **Cc:** | Herlihy, Kimberly Weber; Fusonie, Thomas H.; Ingram, Christopher L.; Syring, Paul; Granata, Eileen; Henderson, Karlene |
| **Subject:** | RE: LEBOR - Draft Agreed Order - Rule 408 Communication |

Dale,

I left you a voicemail, but wanted to follow up by email as well. I just saw that the Board of Elections is holding a special meeting today at 11 am to certify the LEBOR vote, so we need to get the agreed preliminary injunction issued today. Please let me know if we can submit the agreed order to the Court or if we need to contact chambers to set up a call with the Court.

Thanks,
Dan

**Daniel E. Shuey**
Partner

Vorys, Sater, Seymour and Pease LLP
52 East Gay Street | Columbus, Ohio 43215

Direct: 614.464.8277
Fax: 614.719.4616
Email: deshuey@vorys.com
*www.vorys.com*

---

**From:** Emch, Dale <Dale.Emch@toledo.oh.gov>
**Sent:** Thursday, March 07, 2019 4:03 PM
**To:** Shuey, Daniel E. <deshuey@vorys.com>
**Cc:** Herlihy, Kimberly Weber <KWHerlihy@vorys.com>; Fusonie, Thomas H. <thfusonie@vorys.com>; Ingram, Christopher L. <clingram@vorys.com>; Syring, Paul <Paul.Syring@toledo.oh.gov>; Granata, Eileen <Eileen.Granata@toledo.oh.gov>; Henderson, Karlene <Karlene.Henderson@toledo.oh.gov>
**Subject:** [EXTERNAL] RE: LEBOR - Draft Agreed Order - Rule 408 Communication

CAUTION: External Email.

Dear Mr. Shuey:

We will review the proposed order for preliminary injunction as well as the suggested scheduling order, and be back in touch early next week.

Very truly yours,

Dale Emch

Dale R. Emch

EXHIBIT 3

Director of Law
City of Toledo
One Government Center, Ste. 2250
Toledo, OH 43604
419-245-1020

---

**From:** Shuey, Daniel E. [mailto:deshuey@vorys.com]
**Sent:** Wednesday, March 06, 2019 4:19 PM
**To:** Emch, Dale
**Cc:** Herlihy, Kimberly Weber; Fusonie, Thomas H.; Ingram, Christopher L.
**Subject:** LEBOR - Draft Agreed Order - Rule 408 Communication

Dale,

Attached is a draft agreed order regarding a preliminary injunction for your review and comment.  We researched the minimum requirements for a preliminary injunction order under Rule 65 and attempted to keep it fairly bare-boned while still sufficient to stand up to any potential third-party challenge.  Please let us know your thoughts so we can get something to Judge Zouhary to enter on March 15, after certification of the vote.

We are also thinking of how to keep this case moving along, so that we can: (1) avoid LEBOR affecting planting season, which could lead to a damages claim added to our complaint; and (2) minimize attorney's fees on both sides to resolve this matter.  Assuming the PI is entered on March 15 as discussed with the Court, we intend to seek from the Court a briefing schedule on the merits.  We propose the following timeline:

- Drewes Farms files an MSJ / brief on the merits for a permanent injunction and declaratory relief by March 18, 2019
- The City files its response on April 1, 2019
- Drewes Farms files a reply on April 8, 2019.
- Drewes Farms believes that the Court should be able to determine the case on the papers without a hearing.  If not, we would ask the Court to hold a hearing on the permanent injunction and the merits during the week of April 8 or April 15.

Please let us know if this proposed schedule is amenable to the City or what you would propose.

Finally, during this process, we would be open to a mediation with a magistrate judge if the City thinks that might be fruitful.  We have mediated with magistrate judges in the northern district in the past, and have generally found it to be a helpful process.

Please feel free to reach out with any questions or to discuss further,

Dan



**Daniel E. Shuey**
Partner

Vorys, Sater, Seymour and Pease LLP
52 East Gay Street | Columbus, Ohio 43215

Direct: 614.464.8277
Fax: 614.719.4616
Email: deshuey@vorys.com
*www.vorys.com*

From the law offices of Vorys, Sater, Seymour and Pease LLP.

CONFIDENTIALITY NOTICE: This e-mail message may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately.



Vorys, Sater, Seymour and Pease LLP
Legal Counsel

52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008

614.464.6400 | www.vorys.com

Founded 1909

Thomas H. Fusonie
Direct Dial (614) 464-8261
Direct Fax (614) 719-4886
Email thfusonie@vorys.com

April 9, 2019

**VIA E-MAIL ONLY**

Gerald R. Kowalski
Sarah K. Skow
Spengler Nathanson P.L.L.
900 Adams Street
Toledo, Ohio 43604-5505

Re: *Drewes Farms Partnership v. Toledo* - Pre-Dispositive Motion Correspondence

Dear Counsel:

We write in accordance with Section 3 of Judge Zouhary's Civil Case Management Procedures (ECF No. 4), which requires parties to confer in good faith and exchange letters prior to filing a dispositive motion. We intend to file a Rule 12(c) motion for judgment on the pleadings. Not only do we write to comply with the Court's procedures, but to make another attempt to limit Toledo's exposure under 42 U.S.C. § 1988, to preserve the Court's and parties' time and resources, and to obtain a resolution before the growing season is in full swing.

Drewes Farms' complaint raises facial challenges to Toledo's Lake Erie Bill of Rights Charter Amendment under the United States Constitution, federal law, and state law. In its Answer, Toledo repeatedly agreed that "LEBOR" speaks for itself. Thus, we can agree that Drewes Farms' facial challenges can appropriately be addressed by a motion for judgment on the pleadings.

Although we look forward to receiving your position in response generally, we raise the following issues to determine whether there is a way to amicably resolve this matter without dispositive motions or, at least to reduce the number of disputed issues that are raised to the Court. Therefore, for each of the numbered issues below, please indicate whether: "Yes" the City will stipulate to it as correct, or "No" the City will dispute it:

EXHIBIT 4



1) LEBOR violates the First Amendment by stripping "corporations" (defined in LEBOR as "any business entity") of their First Amendment right to seek relief from the judiciary branch to pursue specific, and otherwise-valid claims in court.

2) LEBOR violates the First Amendment because it is a viewpoint restriction.

3) LEBOR violates the First Amendment's prohibition against laws that abridge the right to "petition the Government for redress of grievances."

4) LEBOR violates the Equal Protection Clause because it denies "corporations" equal protection of the laws.

5) LEBOR is void for its vagueness.

6) LEBOR violates procedural due process.

7) LEBOR violates substantive due process rights of "corporations" by denying "corporations" their rights under the First, Fifth, and Fourteenth Amendments.

8) LEBOR is preempted by federal law including that it attempts to regulate foreign affairs.

9) LEBOR regulates the portion of Lake Erie within Canada.

10) LEBOR regulates the portion of Lake Erie within New York.

11) LEBOR regulates the portion of Lake Erie within Pennsylvania.

12) LEBOR regulates the portion of Lake Erie within Michigan.

13) LEBOR regulates the portion of Lake Erie within Ohio that is outside of Lucas County, Ohio.

14) LEBOR regulates the portion of Lake Erie within Ohio that is outside of Toledo, Ohio.

15) LEBOR is preempted by Article XVIII, Section 3 of the Ohio Constitution because it conflicts with general laws of Ohio.



16) LEBOR is preempted by Article XVIII, Section 3 of the Ohio Constitution because it purports to nullify state authorizations to "corporations."

17) LEBOR is preempted by Ohio Revised Code Section 1506.10.

18) LEBOR's attempt to create new causes of action is invalid and unenforceable under the Ohio Constitution, Article XVIII, Section 3.

19) LEBOR violates Ohio Constitution, Article XVIII, Section 3 by attempting to create statutory standing to the "Lake Erie Ecosystem" by giving it the power to sue in the Court of Common Pleas in Lucas County, Ohio.

20) LEBOR violates Article XIII, Section 2 of the Ohio Constitution by attempting to diminish the "rights, powers, privileges, immunities, [and] duties" of "corporations."

21) LEBOR unlawfully denies privileges issued by agencies of the State of Ohio to "corporations."

22) LEBOR unlawfully denies privileges issued by agencies of the United States of America.

23) LEBOR must be permanently enjoined in its entirety as a matter of law.

24) The entirety of LEBOR must be invalidated as a matter of law.

Based on case law, common sense, and the history of similar litigation, it is hard to imagine that any of the foregoing issues can be seriously disputed. The State of Ohio's recent motion to intervene only adds additional credibility to Drewes Farms' position. We therefore encourage the City of Toledo to agree to resolve this matter short of additional litigation through a consent decree. Indeed, if the City agrees that any of the above issues are correct, it is in the best interest of Toledo to negotiate a consent decree as soon as possible with Drewes Farms.

Doing so will not only protect Toledo from incurring its own additional legal expenses and from being sued in a LEBOR suit by a citizen disgruntled with the City's own impact on the Lake Erie Ecosystem, but will also minimize the City's obligations to pay Drewes Farms' attorneys' fees under § 1988. As you may be aware, on March 31, 2019, the Western District of Pennsylvania required Grant Township to pay plaintiffs' attorneys' fees after one of CELDF's other local laws similar to LEBOR was found unlawful and unconstitutional. *See*



*Pennsylvania General Energy Co., LLC v. Grant Township*, Case No. 1:14-cv-00209, Memorandum Opinion (W.D. Penn. March 31, 2019).

We request Toledo's response by April 16, 2019, so that we can either move promptly to file a Rule 12(c) motion or negotiate the terms of a consent decree for the Court's consideration and approval.

Very truly yours,

Thomas H. Fusonie

THF/gjs

cc: Kimberly Herlihy
Daniel Shuey



Vorys, Sater, Seymour and Pease LLP
Legal Counsel

52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008

614.464.6400 | www.vorys.com

Founded 1909

Thomas H. Fusonie
Direct Dial (614) 464-8261
Direct Fax (614) 719-4886
Email thfusonie@vorys.com

June 28, 2019

**VIA E-MAIL**

Gerald R. Kowalski
Sarah K. Skow
Spengler Nathanson P.L.L.
900 Adams Street
Toledo, Ohio 43604-5505

Re: *Drewes Farms Partnership, et al. v. Toledo*

Dear Counsel:

We write in response to your June 25, 2019 email.

**A. Plaintiff has complied with the Court's Order.**

On May 20, 2019, Judge Zouhary ordered Plaintiff Drewes Farms Partnership to "disclose to Defendant documents on a rolling basis supporting Plaintiff's standing in this case, with the disclosures to be complete by Friday, June 7." ("Order," ECF No. 303.) Plaintiff made disclosures on May 28, 2019, May 31, 2019, and then, on June 7, 2019, pursuant to the Court's Order, counsel informed you that it was providing its "final disclosure of documents for Plaintiff Drewes Farms Partnership pursuant to the Court's May 20, 2019 order." The City has now inexplicably waited 18 days to raise its alleged issues with Plaintiff's disclosures, and then demanded a response in 3 business days.

Plaintiff has complied with the Court's Order and disclosed documents "supporting Plaintiff's standing in this case." Plaintiff's disclosed documents establishes that it is a partnership and that it farms in the Lake Erie watershed, which LEBOR seemingly purports to control (and which you have not denied). Plaintiff also produced the leases (which in turn contain fertilization requirements for various farms, *see, e.g.*, DFP000127) and grain contracts and fertilizer certificates referenced in the Verified Complaint and discussed in our call with the Court.

EXHIBIT 5



In our call with the Court, we already raised our disagreement with your suggestions as to what documents Plaintiff should disclose, and the Court ruled by requiring us to disclose only documents "supporting Plaintiff's standing in this case." Your demand that we disclose additional documents beyond the Court's order seems intended to unnecessarily drive up the cost of litigation for the Plaintiff and delay Toledo having to address the merits of LEBOR.

As a final note on standing, recent events have further confirmed Plaintiff's standing. As we're sure you are aware, Toledo citizens have now filed a lawsuit alleging that it violates LEBOR just to pursue litigation seeking to invalidate LEBOR (as Plaintiff is doing).[1]

To the extent that this case survives the motions for judgment on the pleadings, the judge holds a Case Management Conference and permits discovery, and the City propounds requests for production pursuant to Rule 34, Plaintiff will consider any such requests and make productions and objections pursuant to the Civil Rules as appropriate.

**B. The City's Request for Documents Regarding Payment of Plaintiff's Attorneys Fees, Including Engagement or Retention Agreements, is Meritless, Premature, and Intended to Harass.**

We also raised with the Court our disagreement with your suggestion that we disclose documents regarding the payment of Plaintiff's attorney's fees, including engagement or retention agreements. And again, the Court resolved this disagreement by declining to order us to disclose those documents. Plaintiff has no obligation to disclose those documents, especially not at this early juncture.

To be clear, these documents that you claim relate to the request for attorney's fees under 42 U.S.C. § 1988 have nothing to do with standing, because while attorney's fees and costs may be awarded to prevailing parties they do not constitute a claim. Thus, these documents are not and cannot be responsive to the Court's Order and need not be disclosed.

Beyond the lack of relation to standing, your claimed interest in the documents to determine the "real party in interest" is generally irrelevant to the analysis of fees under 42 U.S.C. § 1988. This statute awards fees to "the prevailing party." Here, it is indisputable that Drewes Farms Partnership is the party that brought this lawsuit and, if successful, would be the prevailing party.

---

[1] This raises obvious questions about whether these citizens, and any who knew of, aided, or abetted their lawsuit prior to its filing are in contempt of court for violating the Preliminary Injunction order.



Finally, even if there could be some argument that these documents could ever have any relevance, that relevance exists only after Plaintiff becomes a prevailing party. Your demand that Plaintiff disclose them now is premature.

The City's attempt to force Plaintiff to disclose confidential and irrelevant agreements with its counsel at this premature date seems crafted to harass and intimidate Plaintiff and to discourage others from bringing claims against the government in the future. The City's leveraging of its governmental power to attempt to chill challenging the City in court shares the same constitutional flaws and concerns as its LEBOR amendment and is unacceptable.

**C. It is the City of Toledo that has Failed to Comply with the Court's Order.**

Finally, while Plaintiff has compiled with the Order, the City of Toledo has violated it and continues to do so. The Judge ordered that the City of Toledo "shall respond to the questions posed by Plaintiff's April 9 letter," which include questions asking whether LEBOR complies with certain laws or regulates certain geographic areas. Contrary to the Court's Order, the City stated that it would not "answer" the questions, "because that would improperly amend or repeal LEBOR without a general vote of the people of Toledo on the same."

This response is nonsensical. Whether or not you believe that the City can take any action to amend or repeal LEBOR, that does not prohibit the City from complying with the Court's Order and answering whether LEBOR is constitutional or whether it regulates beyond the City of Toledo. It is also telling. The City's ongoing refusal to take a position the merits of this case, and its acknowledgement that taking a position on the merits would require amending or repealing LEBOR, has continued to unnecessarily drive up the cost of this litigation and cause the parties to incur additional fees. Despite the City of Toledo impliedly acknowledging that LEBOR must be amended or repealed, Plaintiff has had to continue to prosecute this action and file its Motion for Judgment on the Pleadings, without the benefit of your compliance with the Court Order. Unless the City brings itself into compliance, to the extent a conversation with the Court becomes necessary, that conversation will include the City's noncompliance with the Order and the associated harms that the City's noncompliance has caused to Plaintiff.

**Conclusion**

Plaintiff has attempted to fully and promptly respond within the expedited timeframe set forth in your delayed letter. Plaintiff has met its disclosure obligations established in the Order. To the extent this case continues past the pending motions, and any of these issues arise again in discovery, the parties should revisit them as appropriate and in compliance with the Federal Rules of Civil Procedure.



Case: 3:19-cv-00434-JZ Doc #: 65-2 Filed: 03/12/20 110 of 124. PageID #: 960

Gerald R. Kowalski
Sarah K. Skow
June 28, 2019
Page 4

Very truly yours,

Thomas H. Fusonie

THF/gjs

cc: Kimberly Herlihy
Daniel Shuey



**GERALD R. KOWALSKI**
GKOWALSKI@SNLAW.COM
419.252.6239

**SARAH K. SKOW**
SSKOW@SNLAW.COM
419.252.6235

May 9, 2019

*Via Electronic Mail Only*

Thomas H. Fusonie
Kimberly Herlihy
Daniel Shuey
Vorys, Sater, Seymore and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

RE: Drewes Farms Partnership's Intention to file a Rule 12(C) Motion
*Drewes Farms Partnership v. City of Toledo*, Case No. 3:19-cv-00434

Dear Counsel,

Pursuant to the Court's May 7, 2019 Order (Doc #23) and in accordance with the Court's local practice, we write in response to your letter dated April 9, 2019, and to again explain the City of Toledo's position regarding your intention to seek leave to file a Rule 12(C) motion at this stage of the litigation.

During our April 23, 2019 telephone call, Gerry explained the various factors as to why the City of Toledo cannot agree to the 24 issues to which you have proposed the City stipulate. As you are aware, the Lake Erie Bill of Rights Charter Amendment ("LEBOR") was passed by a duly-authorized citizens' initiative petition, and is now part of the City's Charter. Accordingly, the City cannot agree to the 24 issues you have proposed for a consent decree, because that would improperly amend or repeal LEBOR without a general vote of the people of Toledo on the same. *See*, Ohio Constitution, Article XVIII, §9, and City of Toledo Charter, Chapter V.

During our April 12th and 23rd phone calls, we explained the City's position that dispositive motions would be procedurally premature before all potential parties had entered the case. At the time you sent your April 9th letter and during the April 12th and 23rd telephone calls, motions to intervene had been filed by potential intervening defendant Toledoans for Safe Water ("TSW") and Lake Erie and then-potential intervening plaintiff State of Ohio.

EXHIBIT 6

As you know, the Court has since granted the State of Ohio's motion to intervene. But the State of Ohio has not filed its required pleading setting out its claims. See Doc. #21 at 2. And while the Court excused the State of Ohio's failure to submit its pleading along with its motion to intervene for purposes of deciding that motion, the record still does not contain the State of Ohio's required pleading. The State's Motion to Intervene establishes that the State of Ohio has different and divergent interests from Drewes Farms Partnership ("DFP"), and the State of Ohio must submit its pleading in the record so that the City may respond to it. The City should be able to respond to all claims against it before proceeding to any motion practice.

In light of the Court's May 7th ruling denying TSW and Lake Erie's motion to intervene, TSW and Lake Erie have now filed a motion to stay indicating they will appeal the Court's denial of their intervention. See Doc. #25. In the event that TSW and Lake Erie's appeal is successful, they too will have an interest in responding to and defending against your client's complaint and the State of Ohio's eventual complaint. The City does not believe it is in any party's interest to engage on the issues related to LEBOR in various courts or in piecemeal motion practice. Rather, to conserve the parties' and the Court's resources, the City believes that motion practice on pleadings should not be considered until all parties and all pleadings are before the Court.

Given the Stipulated Preliminary Injunction, DFP will not suffer any prejudice by not proceeding to submit a motion for judgment on the pleadings until all of the parties and their respective pleadings are before the Court.

In addition to the procedural reasons a motion on the pleadings is unwarranted at this juncture, the questions about whether DFP has standing to assert the claims in its complaint further establish that a Rule 12(C) motion is inappropriate.

DFP's complaint does not allege an injury in fact necessary to establish standing to pursue its claims; it fails to allege an actual or imminent, concrete and particularized injury. Rather, DFP repeatedly alleges that its farming practices are compliant with regulations and best practices, and that DFP takes extra measures beyond state and federal regulations to minimize runoff and pollution. It has not alleged that it has violated LEBOR in order to establish that any injury would be redressed by a favorable decision from this Court. DFP also cannot proceed on its foreign affairs preemption claim. It does not allege that it is a Canadian corporate citizen or that it even has Canadian operations. Accordingly, DFP fails to establish an injury of fact necessary to assert those claims in Count VI of the complaint. See Doc. #1 at ¶¶91-99. DFP's conclusory and speculative allegations that its constitutional rights are somehow violated by LEBOR do not sufficiently establish an injury in fact or otherwise satisfy standing requirements. *See Valley Forge Christian College v. Americans United for*

*Separation of Church and State*, 454 US 464, 472-75, 482-86 (1982). At least some discovery is needed to establish whether DFP has standing, whether DFP's status as a partnership precludes it from asserting the constitutional claims in its complaint, and whether DFP is the real party in interest for the attorney fee claim.

For the foregoing reasons, the City does not agree that the alleged facial challenges in DFP's complaint can or should be decided now under Rule 12(C).

Respectfully submitted,

SPENGLER NATHANSON, P.L.L.

Gerald R. Kowalski

Sarah K. Skow

cc: Daniel J. Martin, Esq. (via email)
Amanda M. Ferguson, Esq. (via email)
Gregg H. Bachmann, Esq. (via email)

GRK/SKS:acs

437811

**Fusonie, Thomas H.**

**From:** Sarah Skow <sskow@snlaw.com>
**Sent:** Friday, May 24, 2019 1:05 PM
**To:** Fusonie, Thomas H.; Herlihy, Kimberly Weber; Shuey, Daniel E.
**Cc:** Gerald Kowalski
**Subject:** [EXTERNAL] Drewes Farms Partnership v. City of Toledo -- Case No. 19 CV 434

CAUTION: External Email.
Good afternoon, Counsel.

We write to follow up regarding the information and documents related to the standing issues we discussed with the Court pertaining to Plaintiff Drewes Farms Partnership ("DFP"), and the Court's subsequent May 20th order about the production of such materials by June 7th.

The information and documents Defendant has requested relate to DFP's complaint and include:

. The governing documents for DFP's partnership, including any corporate or entity documents;
. Identification of each of DFP's locations;
. Documents related to the ownership of each of DFP's locations;
. Identification of each of DFP's tenants at each location;
. Documents related to the tenants at each DFP location, including the "numerous leases," and the manure fertilization applied by the Wood County dairy farm to the Farm Property;
. Documents regarding any fertilization requirements for any DFP location;
. All Fertilizer Application Certificate(s);
. Documents related to any edge of field study;
. Any referenced Contracts, including referenced production contracts;
. Documents related to the best practices referred to in the complaint, including the Variable Rate Technology and Tri-State Fertilizer Recommendations employed by DFP;
. Documents related to DFP's fertilization practices and the scientific recommendations made to DFP;
. Any certificates that DFP claims may be impacted by LEBOR;
. Documents related to the risk(s) the City of Toledo's actions have allegedly caused DFP;
. Documents regarding the alleged investment DFP has made in its fertilizer practices;
. Documents regarding the Ohio Department of Agriculture's recognition of DFP;
. Documents regarding DFP's certification under the Ohio Agricultural Stewardship Verification Program;
. All documents related to any real or perceived harm or damage DFP alleges may be due to LEBOR; and
. Documents regarding the payment of DFP's attorneys fees, including engagement or retention agreements.

Per the Court's May 20, 2019 Order, the City reiterates as it did in our May 9, 2019 correspondence to you and in our May 17th call with the Court, the City cannot agree to the questions and proposed stipulations you raised by your April 9th correspondence. Because LEBOR was passed by a duly-authorized citizens' initiative petition, and is now part of the City's Charter, the City cannot now answer or agree to the 24 issues you have proposed for a consent decree, because that would improperly amend or repeal LEBOR without a general vote of the people of Toledo on the same. See, Ohio Constitution, Article XVIII, §9, and City of Toledo Charter, Chapter V.

EXHIBIT 7

Please let us know when we can expect to begin receiving the rolling production of the requested information and documents.  Have a nice weekend.

Sincerely,

Sarah


Sarah K. Skow
Attorney at Law
Spengler Nathanson P.L.L.
900 Adams Street
Toledo, Ohio 43604
sskow@snlaw.com
http://www.snlaw.com

Phone: (419) 252-6235
Fax: (419) 241-8599

CONFIDENTIALITY NOTICE: This transmission is intended only for the addressee shown above. It may contain information that is privileged, confidential, or otherwise protected from disclosure. If you are not the intended recipient, please do not read, copy, or use it, and do not disclose it to others. Please notify the sender of the delivery error by replying to this message and then delete it from your system.

**Fusonie, Thomas H.**

| | |
|---|---|
| **From:** | Sarah Skow <sskow@snlaw.com> |
| **Sent:** | Friday, July 12, 2019 5:05 PM |
| **To:** | Fusonie, Thomas H.; Gerald Kowalski |
| **Cc:** | Herlihy, Kimberly Weber; Ingram, Christopher L.; Shuey, Daniel E.; Daniel J. Martin; Gregg H. Bachmann; Jennifer McHugh |
| **Subject:** | [EXTERNAL] RE: Drewes Farms Partnership, et al. v. Toledo |

CAUTION: External Email.

Dear Counsel,

Pursuant to the Court's July 9th Order, we write in response to your July 9th email.

Standing requires a concrete injury in fact. To establish standing, the United States Supreme Court requires the plaintiff invoking federal jurisdiction to bear "the burden of establishing the 'irreducible constitutional minimum' of standing by demonstrating (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robin*, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), as revised (May 24, 2016), at paragraph (a) of the syllabus, quoting *Lujan*, 504 U.S. at 556.

From the face of Drewes Farms Partnership's Complaint, it does not appear that DFP has suffered a concrete injury in fact, and the City's position is that DFP's speculation and fear of some future type of action against it does not provide sufficient standing or establish a concrete injury. To address your first standing-related question, farming crops in the Lake Erie Watershed alone does not establish that DFP has any concrete and particularized injury in fact. Nor does farming crops establish in and of itself that DFP falls within the scope of LEBOR. As we have previously explained and discussed with you, we believe that DFP's Complaint establishes its lack of standing because DFP has alleged that it employs best practices to reduce pollution and has been commended and recognized for its farming practices. DFP's Complaint before the Northern District Court of Ohio is based upon a fear of future damage. The U.S. Supreme Court has already found that this is not sufficient to create standing. A "'possible future injury,' which is the most [DFP has] alleged, even one that is concrete and particularized, is not imminent and does not confer standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013).

Although you do not identify the action, the lawsuit referred to in your second standing-related question is the *pro se* complaint for declaratory judgment filed against the State of Ohio (the sole defendant in that action); it is not part of and is unrelated to DFP's complaint and does not have bearing on DFP's standing in this action. The lawsuit *Ferner et al. v. State of Ohio*, Case No. 201902904, filed over four months <u>after</u> DFP filed this action, now pending before the Lucas County Court of Common Pleas, does not establish any concrete injury to DFP necessary to establish standing. DFP is not a party to the declaratory judgment action in Lucas County Common Pleas Court, and the nature of the claim in that action by Ohio citizens is based upon the right to self-government in the Ohio Constitution.

Regarding the 13 questions you have repeated from your prior list of 24, which are unrelated to the standing discovery issues, the City restates that it has answered that the text of LEBOR speaks for itself, and further maintains its prior position that it cannot answer the 13 questions. Because LEBOR was passed by a duly-authorized citizens' initiative petition, and is now part of the City's Charter, the City cannot now answer the 13 issues you have raised, because that would improperly amend or repeal LEBOR without a general vote of the people of Toledo on the same. See, Ohio Constitution, Article XVIII, §8 and 9, and City of Toledo Charter, Chapter I, Section 5, and Chapter VI, Section 86. Nor can the City provide an advisory opinion to DFP on these issues.

The City has done what it can to streamline this litigation and this standing discovery process. Within three weeks of DFP filing the Complaint, the City consented to a preliminary injunction, which remains in place today. The City

EXHIBIT 8

has not disputed DFP's filing of the motion for judgment on the pleadings as a procedural matter, and seeks only to assert its valid defenses to DFP's 12(c) motion, including the City's good-faith standing defense. The City will respond to DFP's pending 12(c) Motion, after the resolution of the standing discovery matters, because as you stated during the call with the Court the standing issues should be addressed in the City's response to DFP's 12(c) Motion.

We acknowledge receipt of the documents sent at 3:30 this afternoon. We have not yet had the chance to review those documents to determine if they are responsive to the requested categories or complete, and reserve the City's right to challenge or question the same or request supplementation. The City will agree to participate in next Wednesday's conference by telephone as proposed in Tom's email below, and suggest that the City send an email to Nancy copying all counsel on Monday morning, confirming that all parties will participate in the conference by phone. Please confirm your consent to our informing the Court of the parties' telephone participation for the July 17th conference. Thank you.

Have a nice weekend.

Sincerely,

Sarah

**Sarah K. Skow**
***Attorney at Law***

Spengler Nathanson P.L.L.
900 Adams Street
Toledo, Ohio 43604
**sskow@snlaw.com**

http://www.snlaw.com

Phone: **(419) 252-6235**
Fax: (419) 241-8599

CONFIDENTIALITY NOTICE: This transmission is intended only for the addressee shown above. It may contain information that is privileged, confidential, or otherwise protected from disclosure. If you are not the intended recipient, please do not read, copy, or use it, and do not disclose it to others. Please notify the sender of the delivery error by replying to this message and then delete it from your system.

---

**From:** Fusonie, Thomas H. [mailto:thfusonie@vorys.com]
**Sent:** Friday, July 12, 2019 3:26 PM
**To:** Sarah Skow; Gerald Kowalski
**Cc:** Herlihy, Kimberly Weber; Ingram, Christopher L.; Shuey, Daniel E.; Daniel J. Martin; Gregg H. Bachmann
**Subject:** Drewes Farms Partnership, et al. v. Toledo

Counsel,

Although Drewes Farms still questions the relevance and proportionately of Toledo's 11 categories, in a good faith effort to resolve the discovery dispute and move this matter along, please find the below FTP link to documents within the various 11 categories.

https://vorys.sharefile.com/f/foadf925-cb4a-4075-ae21-8bdf1903724b

Also, in the interest of efficiency, Drewes Farms requests that the City agree that all parties will agree to appear at next week's conference by telephone. Please let us know by 3:00 on Tuesday if the City agrees.

Tom

**Thomas H. Fusonie**
Attorney at Law

Vorys, Sater, Seymour and Pease LLP
52 East Gay Street | Columbus, Ohio 43215

Direct: 614.464.8261
Fax: 614.719.4886
Email: thfusonie@vorys.com
*www.vorys.com*

From the law offices of Vorys, Sater, Seymour and Pease LLP.

CONFIDENTIALITY NOTICE: This e-mail message may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately.

**Fusonie, Thomas H.**

**From:** Sarah Skow <sskow@snlaw.com>
**Sent:** Tuesday, June 25, 2019 5:38 PM
**To:** Shuey, Daniel E.; Daniel J. Martin; Gregg H. Bachmann; Gerald Kowalski
**Cc:** Fusonie, Thomas H.; Herlihy, Kimberly Weber; Ingram, Christopher L.
**Subject:** [EXTERNAL] RE: Drewes Farms Partnership, et al. v. Toledo

CAUTION: External Email.

Dear Counsel,

On May 24, 2019, following up on our May 17th conference call with the Court and the Court's May 20th Order, I wrote to confirm the information and documents that the City seeks in discovery pertaining to Drewes Farms Partnership's ("DFP") standing in this action; DFP did not object to the documents and information requested.

DFP's 3 partial productions do not contain many items which we requested that are related to issues pertaining to DFP's standing in this action.

Specifically, we do not believe that we have the following items which we previously requested:

- Documents related to the manure fertilization applied by the Wood County dairy farm to the Farm Property;
- All Documents regarding any fertilization requirements for any DFP location;
- Documents related to any edge of field study;
- Documents related to the best practices referred to in the complaint, including the Variable Rate Technology and Tri-State Fertilizer Recommendations employed by DFP;
- Documents related to DFP's fertilization practices and the scientific recommendations made to DFP;
- Any certificates that DFP claims may be impacted by LEBOR;
- Documents related to the risk(s) the City of Toledo's actions have allegedly caused DFP;
- Documents regarding the alleged investment DFP has made in its fertilizer practices;
- Documents regarding the Ohio Department of Agriculture's recognition of DFP;
- Documents regarding DFP's certification under the Ohio Agricultural Stewardship Verification Program; and
- All documents related to any real or perceived harm or damage DFP alleges may be due to LEBOR;

If any of the above items were produced in the May 28, May 31, or June 7 partial productions, please identify the Bates Numbers for the documents and the corresponding category above.

To date, we have not received any of the requested documents about the payment of DFP's attorneys fees, including engagement or retention agreements, which we requested during our conference call with Judge Zouhary and which pertain to the real party in interest and DFP's standing on the section 1988 claim. If DFP is dismissing its section 1988 claim for attorneys' fees please let us know and we will follow up accordingly.

We request that you provide us with these documents no later than Friday, June 28th. We would prefer not having to bring these issues to the Court, but will do so to ensure that the City has the documents it requested regarding DFP's standing before proceeding further in motion practice.

Thank you.

Sincerely,

Sarah

EXHIBIT 9



**Sarah K. Skow**
***Attorney at Law***

Spengler Nathanson P.L.L.
900 Adams Street
Toledo, Ohio 43604
**sskow@snlaw.com**

http://www.snlaw.com

Phone: **(419) 252-6235**
Fax: (419) 241-8599

CONFIDENTIALITY NOTICE: This transmission is intended only for the addressee shown above. It may contain information that is privileged, confidential, or otherwise protected from disclosure. If you are not the intended recipient, please do not read, copy, or use it, and do not disclose it to others. Please notify the sender of the delivery error by replying to this message and then delete it from your system.

---

**From:** Shuey, Daniel E. [mailto:deshuey@vorys.com]
**Sent:** Friday, June 07, 2019 4:23 PM
**To:** Daniel J. Martin; Gregg H. Bachmann; Sarah Skow; Gerald Kowalski
**Cc:** Fusonie, Thomas H.; Herlihy, Kimberly Weber; Ingram, Christopher L.
**Subject:** Drewes Farms Partnership, et al. v. Toledo

Counsel,

Please follow the below link to find the final disclosure of documents for Plaintiff Drewes Farms Partnership pursuant to the Court's May 20, 2019 order.

https://vorys.sharefile.com/f/foadf925-cb4a-4075-ae21-8bdf1903724b

**Daniel E. Shuey**
Partner

Vorys, Sater, Seymour and Pease LLP
52 East Gay Street | Columbus, Ohio 43215

Direct: 614.464.8277
Fax: 614.719.4616
Email: deshuey@vorys.com
***www.vorys.com***

From the law offices of Vorys, Sater, Seymour and Pease LLP.

CONFIDENTIALITY NOTICE: This e-mail message may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately.



One of America's Great Newspapers

# Lake Erie Bill of Rights ruled invalid by Judge Zouhary

2/27/2020
**BY TOM HENRY / THE BLADE**

•

U.S. District Judge Jack Zouhary, shown presiding over a naturalization ceremony in Toledo on Tuesday. Two days later, on Thursday night, he invalidated the Lake Erie Bill of Rights that city voters approved at a special election a year earlier.

THE BLADE/KURT STEISS
Buy This Image

The Lake Erie Bill of Rights was invalidated Thursday night by U.S. District Judge Jack Zouhary, who said in an eight-page ruling that his decision was "not a close call" because he believes the citizen-led referendum — though approved by a majority of Toledo voters in a special election last year — "is unconstitutionally vague and exceeds the power of municipal government in Ohio."

EXHIBIT 10

Judge Zouhary's ruling came exactly one year to the day since the lawsuit challenging the referendum's successful passage was filed by an agricultural corporation called Drewes Farms, which is based 40 miles southwest of Toledo near the Wood County town of Custar, Ohio.

LEBOR, as the Lake Erie Bill of Rights is often called, was approved by Toledo voters at a special election on Feb. 26, 2019. Hours later, on the morning of Feb. 27, 2019, the lawsuit challenging its constitutionality was filed by the group of farms.

"This is not a close call," Judge Zouhary wrote in his decision. "LEBOR is unconstitutionally vague and exceeds the power of municipal government in Ohio."

The lawsuit targeted the city of Toledo because the measure became part of the city's charter once voters approved it.

Dale Emch, Toledo city attorney, said it's too early to say if the city might appeal.

"We defended the Lake Erie Bill of Rights and the charter amendment aggressively. We always knew this would be a difficult legal challenge," Mr. Emch said. "We respect the court's decision and will discuss our options."

The city was represented in the case by Sarah K. Skow, an attorney with the Toledo-based Spengler Nathanson law firm. Several activists who fought to get LEBOR on last year's ballot and approved by voters lauded her efforts at a pivotal Jan. 28 court hearing before Judge Zouhary.

"I think the city did a ... good job. I hope ... they will appeal," Terry Lodge, the attorney representing Toledoans for Safe Water, the group behind the initiative, told The Blade on Thursday night.

The activist group's request to be a co-defendant in the case was denied last May by the judge, though he ended up allowing the DeWine administration to be a co-plaintiff with the agricultural firm.

"The judge really lowered the boom," Mr. Lodge said.

In his ruling, Judge Zouhary said Toledoans for Safe Water used language "that sounds powerful but has no practical meaning" when writing the Lake Erie Bill of Rights, and that the document's purported right to self-governance is "an aspirational statement, not a rule of law."

"Under even the most forgiving standard, the environmental rights identified in LEBOR are void for vagueness," he wrote.

Modeled after several other "rights of nature" movements across the world, LEBOR tried to assert that Lake Erie is entitled to rights as an ecosystem. The movement is in response to a controversial court case several years ago in which a judge ruled corporations have rights akin to those of citizens.

Markie Miller, who led the pro-LEBOR campaign on behalf of Toledoans for Safe Water, said the group has been frustrated by the lack of progress for western Lake Erie since an algal toxin from the lake poisoned Toledo's tap water for nearly three days the first weekend of August, 2014. That event made worldwide news and led to relief efforts by the Ohio National Guard. Nearly 500,000 people on the city's water system were told they should not drink or even touch their tap water that weekend.

Ms. Miller also said her group put LEBOR on the ballot to expose a legal system that is "not designed to protect us."

"LEBOR is about giving power back to the people," she said. "I am feeling very angry. LEBOR is not to be written off as poetry."

Thomas H. Fusonie, who argued the case in court on behalf of Drewes Farms, was pleased by the decision.

"We are happy the Court vindicated our client's clear constitutional rights," Mr. Fusonie, of Columbus-based Vorys, Sater, Seymour and Pease, wrote in an email. "As the Court told the City of Toledo in the opinion, it was not a close call."

Spokesmen for Drewes Farms and Ohio Attorney General Dave Yost could not be reached.

During the Jan. 28 court hearing before Judge Zouhary, Amanda M. Ferguson, a lawyer in the Ohio Attorney General's environmental enforcement section, said the state believes Toledo would assume too much power over Lake Erie if LEBOR was allowed to stand.

"The state has constitutionally protected rights, as well, because of its ownership of Lake Erie," Ms. Ferguson said back then. "It would strip the state of its ownership of these waters."

States have ownership of navigable water within the United States.

Mr. Fusonie said during that hearing he was particularly bothered by the open-endedness of LEBOR's claim that Lake Erie has a right to "exist, flourish, and evolve."

*Copyright 2020 The Blade. All rights reserved. This material may not be copied or distributed without permission.*